1  WILLIAM RUPERT
   P.O. Box 66403
2  Scotts Valley, CA 95067-6403
   Phone:   (831) 336-9520
3  Fax:     (831) 336-9528
   Email:  emfwtr@comcast.net
4
   Plaintiff
5  Pro Se

**Filed**

DEC - 6 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

8           UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA

10                SAN JOSE DIVISION

11 WILLIAM RUPERT,                          ) **Case No.: 5:12-cv-05292 LHK (HRL)**
                                            )
12              Plaintiff,                   ) _____
                                            )
13      vs.                                  ) **PLAINTIFF WILLIAM RUPERT'S**
                                            ) **MEMORANDUM OF POINTS AND**
14 SUSAN BOND; GILE R. DOWNES;              ) **AUTHORITIES IN OPPOSITION TO**
   EDWARD S. ZUSMAN;  MATTHEW               ) **MOTION TO DISMISS FOR LACK OF**
15 WHITMAN; MICHELLE JOHANSSON;             ) **PERSONAL JURISDICTION (FRCP**
   JAMES RUPERT; SCHULTE, ANDERSON,         ) **12(b)(2)), BY DEFENDANT DOWNES**
16 DOWNES, ARONSON & BITTNER, P.C.,         ) **AND DEFENDANT SCHULTE,**
   an Oregon Professional Corporation;      ) **ANDERSON, DOWNES, ARONSON &**
17 MARKUN ZUSMAN & COMPTON, LLP,            ) **BITTNER, P.C.**
   a Limited Liability Partnership Headquartered ) 
18 in California; CARTWRIGHT WHITMAN         ) 
   BAER PC, an Oregon Professional          ) **Date:    April 4, 2013**
19 Corporation; and DOES 1 to 20,           ) **Time:    1:30 p.m.**
                                            ) **Dept:    Courtroom 8**
20              Defendants.                  ) **Judge:   Hon. Lucy H. Koh**
                                            )
21                                          ) **Action Filed:  October 12, 2012**
                                            )
22 _____ )

**ORIGINAL**

23

24

25

---

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 12(b)(2) Motion
To Dismiss, By Defendants Downes And Schulte  [Case No. 5:12-cv-05292 LHK (HRL)]

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES . . . . . . . . iii

I.      STATEMENT OF ISSUES TO BE DECIDED . . . . 1

    A.      Is The Instant Federal Question RICO Action Prohibited By The
    Earlier Dismissal, Without Prejudice, For Lack Of Personal
    Jurisdiction, Of A Diversity Action For Interference With
    Economic Relations, Concerning Most Of The Same Defendants? . 1

    B.      Under 18 U.S.C. § 1965(b), Because A Multi-District Conspiracy
    Is Alleged, And One Of The Conspirators (Zusman), Is From
    This District, Should Personal Jurisdiction Be Established Over
    Downes And Schulte, Based Upon Their Contacts With The
    United States, To Serve The Ends Of Justice? . . . 1

    C.      Alternatively, Under California's Long-Arm Statute, Is Specific
    Jurisdiction Established By The FAC's Allegations Of Intentional,
    Targeted, And Knowingly Harmful Conduct, Aimed At The
    Plaintiff In California, Where The Effects Were Felt? . 2

MEMORANDUM OF POINTS AND AUTHORITIES . . . . 3

II.     STATEMENT OF RELEVANT FACTS . . . . . 3

    A.      The Allegations Of The FAC . . . . . . 3

    B.      The Procedural History Of This Case . . . . 7

III.    LEGAL ARGUMENT . . . . . . . 8

    A.      The Plaintiff's RICO Action Is Substantially Different Than The
    2009 Diversity Action, So The Dismissal Without Prejudice Of
    The 2009 Action Does Not Bar The Instant RICO Action . . 8

    B.      Under 18 U.S.C. § 1965(b), Defendant Downes And Defendant
    Schulte's Admitted Contacts With The United States Are
    Sufficient To Establish Personal Jurisdiction Over Them, Under
    The Interests Of Justice Standard, Because A Multi-District
    Conspiracy Is Alleged, And Defendant Zusman, Resides, Does
    Business, And Committed One Of The RICO Predicate Acts, In
    The Northern District Of California, And No Other District
    Would Have Jurisdiction Over All The RICO Defendants . . 11

i

1

## **TABLE OF CONTENTS (Continued)**

**Page(s)**

2    C.    Specific Personal Jurisdiction Exists Because Of The Fraudulent
3          Statements And Misrepresentations In Defendants' Demand
           Letters, Mailed And Wired To Plaintiff In California, Which
4          Threatened Plaintiff With The Wrongful Economic Harm He
           Ultimately Suffered, On January 4, 2011, Through Enforcement
5          Of The *In Terrorem* Provisions Irene E. Rupert Was Tricked Into
           Adopting  - When The Proper "Purposeful Direction" Standards
6          Are Utilized, Under The *Calder*-Effects Test, Which Is
           Appropriate For Tort Actions, Like The Instant Case     .     .     13
7

8    D.    The FAC Also Alleges Defendant Downes Conspired With
           Defendants Zusman And Bond To Obtain The Knowingly False
9          Declaration Of Irene Rupert, Which Misrepresented The
           Location Of Estate And Trust Assets, To Judge Fogel, Who
10         Relied Upon The Misrepresentations When He Granted The
           Earlier FRAP 12(b)(2) Motion To Dismiss, Without Prejudice     .     17
11

     E.    Jurisdiction In The Northern District Of California Comports
12         With Traditional Notions Of Fair Play And Substantial Justice,
           For This RICO Action     .     .     .     .     .     .     17
13

14   F.    The Defendants' Motion Misrepresents An Oregon  Pleading
           Containing Counter-Claims (Their Exhibit 3), And Its Purported
15         Dismissal By The Court, When The Truth Is That The Pleading
           Was Rejected For Filing By The Clackamas County Circuit Court
16         in 2009, And Thereafter: (1) It Was Never Amended By Plaintiff;
           (2) It Was Never At-Issue In The Case; And, (3) It Was Never
17         Adjudicated By Way Of A Judgment Or Any Dispositive Order     .     21

18   G.    Plaintiff Objects To Judicial Notice Being Taken Of Defendants'
           Exhibits, Because They Are Misleading And/Or Irrelevant, And,
19         Defendants' Exhibit #3 Is Being Misrepresented To The Court,
           In Deliberate Bad Faith, For An Improper Purpose  .     .     .     24
20

21   H.    Jurisdictional Discovery Upon Charles Schwab Institutional,
           In San Francisco, California, Is Requested, Concerning The
22         Assets  Transferred From Michigan To California, In 2009,
           Because Such Discovery Relates To Other Contacts With
23         The State Of California, By Defendants Downes And Schulte     .     25

24   IV.   CONCLUSION     .     .     .     .     .     .     .     .     25

25

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 12(b)(2) Motion
To Dismiss, By Defendants Downes And Schulte  [Case No. 5:12-cv-05292 LHK (HRL)]

1

## TABLE OF AUTHORITIES

2

**Page(s)**

**Cases**

3

Allen v. Hall,
4      328 Or. 276 (1999)     .     .     .     .     .     .     .     .     3

5

Beckwith v. Dahl,
       205 Cal.App.4[th] 1039 (2012) .     .     .     .     .     .     .     3
6

Boschetto v. Hansing
7      539 F.3d 1011, 1016  (9th Cir. 2008) .     .     .     .     .     .     18

8

Burger King Corp. v. Rudzewicz
9      471 U.S. 462, 478, 105 S.Ct. 2174, 2185 (1985)     .     .     .     .     15

10

Butcher's Union Local No. 498 v. SDC Investment, Inc.,
       788 F.2d 535, 539 (9th Cir. 1986)     .     .     .     .     .     .     12
11

Calder v. Jones
12       465 U.S. 783, 790, 104 S.Ct. 1482, 1487 (1984)     .     .     .     . 14,15,18

13

Dole Food Co. v. Watts
       303 F.3d 1104  (9th Cir. 2002)     .     .     .     .     .     . 14,15,20
14

Gordy  v. Daily News, L.P.
15       95 F.3d 829, 834 (9th Cir. 1996)     .     .     .     .     .     .     15,18

16

Gray & Co. v. Firstenberg Machinery Co., Inc.,
17       913 F.2d 758, 761 (9th Cir. 1990)     .     .     .     .     .     .     19

18

Harris Rutsky & Co., Ins. Serv. Inc. v. Bell & Clements Limited
       328 F.3d 1122, 1128-29 (9th Cir. 2003)     .     .     .     .     .     20
19

Huntair, Inc. v. Gladstone
20       774 F.Supp.2d 1035, 1039 (ND California 2011)     .     .     .     .     12

21

Lewis v. Fresne
22       252 F.3d 352, 359 (5th Cir. 2001)     .     .     .     .     .     .     15,18

23

Metropolitan Life Ins. Co. v. Neaves
       912 F.2d 1062, 1065   (9th Cir. 1990) .     .     .     .     .     .     16
24

Nelson v. Quimby Island Reclamation District,
25       491 F.Supp. 1364, 1378 (N.D. Cal. 1980)     .     .     .     .     .     12

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 12(b)(2) Motion
To Dismiss, By Defendants Downes And Schulte  [Case No. 5:12-cv-05292 LHK (HRL)]

## TABLE OF AUTHORITIES (Continued)

**Cases (Continued)**                                                           **Page(s)**

Roth v. Garcia Marquez
    942 F.2d 617, 623 (9th Cir. 1991)    .    .    .    .    .    .    18

Securities Investor Protection Corp. v. Vigman,
    764 F.2d 1309, 1315-1316 (9th Cir. 1985)    .    .    .    .    .    12

Shaffer v. Heitner
    433 U.S. 186, 208 (1977)    .    .    .    .    .    .    20

Sher. v. Johnson
    911 F.2d 1357, 1365 (9th Cir. 1990) .    .    .    .    .    21

Sibley v. Sup.Ct. (Carlsberg Mobile Home Properties, Ltd.-'72)
    16 Cal.3d 442, 128 CR 34 (1976)    .    .    .    .    .    15


**Statutes**

    FEDERAL RULES OF CIVIL PROCEDURE

        Rule 12(b)(2) .    .    .    .    .    .    .    5,7,9

    FEDERAL RULES OF EVIDENCE

        FRE Rule 201    .    .    .    .    .    .    24,25

    UNITED STATES CODE

        18 USC § 1961 *et seq.*    .    .    .    .    .    .    11
        18 USC § 1964(c)    .    .    .    .    .    .    4
        18 USC § 1964(d)    .    .    .    .    .    .    4
        18 USC § 1965(b)    .    .    .    .    .    . 1,2,11-13


**Other Authorities**

    Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV.
    PRO. BEFORE  TRIAL (The Rutter Group 2009); Chap.3, page 58,
    "[3:143] **Inconvenience alone not sufficient:**    .    .    .    21

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 12(b)(2) Motion
To Dismiss, By Defendants Downes And Schulte  [Case No. 5:12-cv-05292 LHK (HRL)]

1

**TABLE OF AUTHORITIES (Continued)**

2                                                                    **Page(s)**

**Other Authorities (Continued)**

3

4      Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV.
       PRO. BEFORE  TRIAL (The Rutter Group 2009); Chap.3, pp. 65-66

5      [3:168]  **Acts committed *outside* forum"causing effect" within:** .      15

6      Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV.
       PRO. BEFORE TRIAL (The Rutter Group 2009); Chapter 3, pages 65

7      [3:169]  **Intentional torts:** .      .      .      .      .      .      18

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

v

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 12(b)(2) Motion
To Dismiss, By Defendants Downes And Schulte  [Case No. 5:12-cv-05292 LHK (HRL)]

## I.   STATEMENT OF ISSUES TO BE DECIDED

### A.   Is The Instant Federal Question RICO Action Prohibited By The Earlier Dismissal, Without Prejudice, For Lack Of Personal Jurisdiction, Of A Diversity Action For Interference With Economic Relations, Concerning Most Of The Same Defendants?

Defendants Gile R. Downes ("Downes"), and Schulte, Anderson, Downes, Aronson & Bittner, P.C. ("Schulte"), argue an earlier diversity action, commenced on June 22, 2009, amended on July 23, 2009, and dismissed without prejudice on September 9, 2010, is substantially identical to the instant federal question RICO action, and no new facts have been alleged, such that the earlier dismissal without prejudice should bar the instant RICO action.

Plaintiff William Rupert ("William"), disagrees, contending the two actions are materially different (factually and legally), the earlier dismissal was obtained through a fraud upon the court[1], and significant new facts and causes of action have been alleged against defendants Downes and Schulte, that could not have been alleged in the earlier diversity action (because they were either unknown by plaintiff, or they had yet to transpire, or the cause of action had not yet accrued).

### B.   Under 18 U.S.C. § 1965(b), Because A Multi-District Conspiracy Is Alleged, And One Of The Conspirators (Zusman), Is From This District, Should Personal Jurisdiction Be Established Over Downes And Schulte, Based Upon Their Contacts With The United States, To Serve The Ends Of Justice?

---

[1] The fraud involved defendants Downes and Schulte, who conspired with California defendant Edward S. Zusman ("Zusman"), and defendant Susan Bond ("Susan"), to exploit the late Irene E. Rupert (as a vulnerable 90 year old with Alzheimer's Disease), and trick her into declaring there were no trust or estate assets located in California (See Decl. of William Rupert, Exhibit #3), at a time when there were more than $400,000.00 in assets located in San Francisco, California, in 3 brokerage accounts held by Charles Schwab Institutional. (See Decl. of William Rupert, Exhibits #8-#10) These assets were transferred from Michigan to California by defendant Susan Bond and/or non-party co-conspirator Kenneth Dillon, for Irene E. Rupert, in February and March of 2009, as they availed themselves of the opportunity to transact business in the State of California. (See Decl. of William Rupert, Exhibits #6-#11)

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 12(b)(2) Motion To Dismiss, By Defendants Downes And Schulte  [Case No. 5:12-cv-05292 LHK (HRL)]

The individual RICO Defendants include 4 defendants from Oregon (defendants Susan and Downes, plus defendant Matthew Whitman ("Whitman"), and defendant Michelle Johansson ("Johansson"), and 1 from California (defendant Zusman, who works out of a San Francisco office, as an attorney licensed solely by the State of California). The related and overlapping RICO Enterprises are alleged to have conducted business that targeted plaintiff William, and caused harmful effects to be felt in the State of California. Because no federal or state court in the State of Oregon, or any other state except for California, would have personal jurisdiction over defendant Zusman (who is only licensed to practice law by the State of California), the ends of justice provisions of 18 USC § 1965(b) should require that personal jurisdiction be exercised over the other defendants, based upon their sufficient contacts with the United States, independent of the California Long-Arm statute, according to plaintiff William.

The Motion to Dismiss filed by defendants Downes and Schulte, however, never discusses the fact that the instant case has been filed under the RICO statutes, or the fact that the instant case is a federal question action, not a diversity case.

**C.    Alternatively, Under California's Long-Arm Statute, Is Specific Jurisdiction Established By The FAC's Allegations Of Intentional, Targeted, And Knowingly Harmful Conduct, Aimed At The Plaintiff In California, Where The Effects Were Felt?**

Defendants Downes and Schulte contend their California contacts have been insufficient, when analyzed under the "purposeful availment" test. Plaintiff William contends their California contacts have been more than sufficient, when correctly analyzed under the "purposeful direction" test, and exercising personal jurisdiction over these Oregon defendants is not unreasonable, under the circumstances of the instant case, as alleged in the FAC.

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 12(b)(2) Motion To Dismiss, By Defendants Downes And Schulte [Case No. 5:12-cv-05292 LHK (HRL)]

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## II.     STATEMENT OF RELEVANT FACTS

3

### A.     The Allegations Of The First Amended Complaint

4

Essentially, plaintiff's legal theory is that the various defendants violated federal law,

5

through fraudulent schemes and improper means, and also committed *inter alia* the tort of

6

Intentional Interference with Expected Inheritance ("IIEI")[2].  The improper means included

7

the Elder Abuse of the late Irene E. Rupert, a vulnerable 90 year old with Alzheimer's

8

Disease, who was exploited and duped, starting with RICO Phase 2, in May of 2009, as set

9

forth in the allegations that include 18 RICO Predicate Acts (between October 13, 2008 and

10

November 4, 2011), and another 9 ORICO Predicate Acts (between November 13, 2008 and

11

November 4, 2011), resulting in damages to plaintiff's property interests of roughly

12

$300,000.00 (after his disinheritance and civil death on January 4, 2011).

13

The operative pleading alleges that an errant successor trustee *de son tort*[3] (defendant

14

Susan Bond), fraudulently intermeddled and misappropriated trust assets for 7 months, and

15

16

---

17

[2] Significantly, the tort of IIEI is currently recognized in both Oregon and in California.  See
*Allen v. Hall*, 328 Or. 276 (1999); *Beckwith v. Dahl*, 205 Cal.App.4th 1039 (2012).

18

"In general, most states recognizing the tort adopt it with the following elements:

19

(1) An expectation of receiving an inheritance; (2) intentional interference with that
expectancy by a third party; (3) the interference was independently wrongful or
tortious; (4) there was a reasonable certainty that, but for the interference, the plaintiff

20

would have received the inheritance; and (5) damages. (Citation)  Most states prohibit
an interference action when the plaintiff already has an adequate probate remedy.

21

(Citation)."

*Beckwith v. Dahl*

22

          205 Cal.App.4th 1039, 1050 (2012).

23

[3] The distinction between a trustee *de son tort* and a trustee *de facto* makes a significant
difference in the instant case, as a matter of law.  A trustee *de facto* has a colorable claim to

24

function as the trustee, which was imperfectly accepted, without any bad faith conduct.  A
trustee *de son tort*, on the other hand, has no colorable claim, and had intermeddled in bad

25

faith.  In general, the law is required to treat a trustee *de son tort* harshly, with them getting all
the obligations (liability), and none of the benefits (compensation), of a proper trustee.

3

1   thereafter she schemed with a series of lawyers, starting in May 2009, to cover-up her

2   wrongdoing, silence the plaintiff, and avoid disgorgement of her ill-gotten gains, through

3   breaches of trust, the exploitation of her elderly Mother with Alzheimer's Disease, fraud upon

4   the United States District Court for the Northern District of California, fraud upon the

5   Clackamas County Circuit Court, State of Oregon, and fraud upon various financial

6   institutions, causing hundreds of thousands of dollars of damages to be suffered by plaintiff

7   William Rupert (and causing damages to the Samuel J. Rupert Trust and to Irene E. Rupert).

8       The operative pleading is the First Amended Complaint ("FAC"), filed October 26,

9   2012, which primarily alleges a federal question RICO action, seeking trebled damages under

10  18 USC § 1964(c)&(d), in the 1st and 2nd causes of action.  Secondarily, supplemental

11  jurisdiction over state law claims is sought, in the 3rd Cause of Action (Double Conversion

12  Damages), the 4th Cause of Action (Intentional Interference With Expected Inheritance)

13  ("IIEI"), the 5th Cause of Action (ORICO violations, based upon 9 new predicate acts, from

14  November 13, 2008 to November 4, 2011), and in the 6th Cause of Action (Conspiracy to

15  commit the state law torts).

16      The RICO causes of action allege that 5 individual defendants, and 3 law firms,

17  engaged in a multi-district conspiracy to unjustly enrich themselves, at the expense of the

18  Samuel J. Rupert Trust, Irene E. Rupert, and plaintiff William Rupert ("William"), through

19  the 18 predicate acts that are alleged to have been committed between October 13, 2008 and

20  November 4, 2011 (as set forth in both the FAC, from page 47:19 to page 58:21, ¶ 92 to ¶

21  110), and in the 9 page Appendix A attached to the FAC, which contains the detailed

22  information normally required by a RICO Case Statement).

23      The RICO enterprises (See FAC, 1st Cause of Action, 18 USC § 1964(c), page 47:19

4

to page 58:21, ¶ 92 to ¶ 110), are alleged to be overlapping RICO enterprises that developed and evolved in 4 distinct phases, with the common pattern element being that defendant Susan Bond ("Susan") participated in all phases, which were designed to benefit and unjustly enrich her and her co-conspirators by achieving wrongful objectives, through the following wrongful means and fraudulent schemes: (1) cover-up and conceal defendant Susan's embezzlement and misappropriation of assets as a mere trustee *de son tort,* during the first 7 months following the death of Samuel J. Rupert on October 12, 2008; (2) suppress and conceal Samuel J. Rupert's detailed estate plan documents, because they represent evidence of defendant Susan's wrongful breaches of trust; (3) submit a knowingly false Declaration of Irene E. Rupert, that misrepresents the location of significant assets, to Judge Fogel, supporting a FRCP 12(b)(2) Motion to Dismiss which was granted; (4) exploit the flaw in the Oregon Uniform Trust Code that allows qualified beneficiaries to be disinherited for seeking trust asset and administration information from an acting trustee; (5) submit a copy of a knowingly forged trust instrument (The Samuel J. Rupert Trust, u/a/d November 1, 1995), to the Clackamas County Circuit Court, obtaining favorable rulings thereupon; and, (6) retain, and share, the ill-gotten gains defendant Susan acquired through her wrongful actions as a mere trustee *de son tort,* through the fraud and deceit which was practiced first against plaintiff William (by defendant Susan), then against the late Irene E. Rupert (by defendants Susan, Downes and Zusman), then against the United States District Court for the Northern District of California (by defendants Susan, Zusman and Downes), then against the Clackamas County Circuit Court, State of Oregon (by defendant Susan and Whitman), and then against financial institutions (by defendant Susan and Johansson).

   *Phase One* of the RICO enterprises (*Intermeddling and Misappropriation),* is alleged

1 to have commenced on October 13, 2008, under the direction of defendant Susan, who

2 committed predicate acts #1-#7, between October 13, 2008 and May 12, 2009, as her

3 fraudulent schemes involved mail fraud, wire fraud, the inter-state transportation of stolen

4 property, bank fraud, and aggravated theft in the 1st Degree (under Oregon Law), based upon

5 actions that took place in Oregon, California and Michigan. (See FAC, page 51:21 to 52:5, ¶

6 101; and FAC, Appendix A, pages 1-4).

7

8 *Phase Two* of the RICO enterprises (*Stonewall and Cover-Up),* is alleged to have

9 commenced on June 10, 2009, 2008, under the direction of defendant Downes, who

10 committed or conspired with defendants Susan and Zusman to commit predicate acts #8-#10,

11 between June 10, 2009 and November 4, 2009 (and continuing), as the fraudulent schemes

12 involved mail fraud, wire fraud, the obstruction of justice, and aggravated theft in the 1st

13 Degree (under Oregon Law), based upon actions that took place in Oregon and California.

14 (See FAC, page 52:6 to 53:22, ¶ 102; and Appendix A, pages 4-5).

15 *Phase Three* of the RICO enterprises (*Disinheritance and Obstruction of Justice),* is

16 alleged to have commenced on March 15, 2010, under the direction of defendant Whitman,

17 who committed or conspired with defendants Susan, Downes and Zusman to commit

18 predicate acts #11-#16, between March 15, 2010 and July 22, 2010 (and continuing), as the

19 fraudulent schemes involved mail fraud, as well as forgery in the 1st degree, and possession of

20 a forged instrument in the 1st degree (under Oregon Law), based upon actions that took place

21 in Oregon and California. (See FAC, page 53:23 to 55:25, ¶ 103; and FAC, Appendix A,

22 pages 6-8).

23

24 *Phase Four* of the RICO enterprises (*Wrongful Collection Activities),* is alleged to

25 have commenced on October 19, 2011, under the direction of defendant Johansson, who

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 12(b)(2) Motion
To Dismiss, By Defendants Downes And Schulte [Case No. 5:12-cv-05292 LHK (HRL)]

committed or conspired with defendants Susan and Whitman, to commit predicate acts #17-#18, between October 19, 2011 and November 4, 2011 (and continuing), as the fraudulent schemes involved mail fraud, wire fraud, bank fraud, and the inter-state transportation of stolen property, based upon actions that took place in Oregon, California and Nebraska. (See FAC, page 56:01 to 56:9, ¶ 104; and FAC, Appendix A, page 9).

In the FAC's 2nd Cause of Action, for Conspiracy to Violate RICO, the same individual RICO Defendants (defendants Susan, Downes, Zusman, Whitman and Johansson), are named, along with the 3 law firm defendants (Schulte, Markun and Cartwright), as the conspirators who caused the damages alleged by the 1st Cause of Action. (See FAC, page 58:22 to page 59:11, ¶ 111 to ¶ 113).

### B. The Procedural History Of This Case

The wrongful course of conduct alleged in the RICO Causes of Action covers the period of time from October 13, 2008 to November 4, 2011, and continuing. The instant case was commenced on October 12, 2012, within the 4 year statute of limitations for the schemes that are alleged to have begun on October 13, 2008.

On October 26, 2012, plaintiff William filed his First Amended Complaint ("FAC"), which is substantially identical to the initial Complaint, but supplemented with the additional details set forth in the attached Appendix A and Appendix B, which are incorporated by reference into the FAC. Appendix A details the 4 RICO phases and 18 predicate acts, and presents the detailed information normally required to be set forth in a RICO Case Statement. Appendix B details additional violations of the ORICO statutes, and another 9 predicate acts under ORICO, which are alleged in detail.

Defendants Downes and Schulte initially filed and served their FRCP 12(b)(2) Motion

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 12(b)(2) Motion To Dismiss, By Defendants Downes And Schulte  [Case No. 5:12-cv-05292 LHK (HRL)]

to Dismiss on November 21, 2012, with a hearing date of January 8, 2013, before Magistrate

Judge Howard R. Lloyd. The Motion to Dismiss was subsequently re-noticed, for hearing by

District Judge Lucy H. Koh, on April 4, 2013, following the assignment of the case to her.

The Motion to Dismiss, filed by defendants Downes and Schulte, is opposed by

plaintiff William on the following basis.

### III.   LEGAL ARGUMENT

#### A.   The Plaintiff's RICO Action Is Substantially Different Than The 2009 Diversity Action, So The Dismissal Without Prejudice Of The 2009 Action Does Not Bar The Instant RICO Action

The defendants' motion is premised upon the following misleading argument and

conclusory statment:

> "Plaintiff's allegations against Defendants remain – at least in substance – unchanged from the original 2009 complaint."
> (See Downes & Schulte's Motion to Dismiss; 9:6-7)

In fact, the allegations against defendants Downes and Schulte include many new

allegations of wrongdoing, and the allegations detail a much longer course of conduct, that

has wrongfully inflicted much larger damages upon plaintiff William, which justify new and

additional relief under new legal remedies (RICO and IIEI, for instance), as explained below.

Initially, it is true that an earlier federal diversity tort action was commenced on June

22, 2009, by plaintiff William, in this District (against defendants Downes, Schulte and

Susan, but not against the late Irene E. Rupert, for intentional interference with economic

relations, conspiracy, and punitive damages). Thereafter, a First Amended Complaint

("FAC") was filed on July 23, 2009 (See Motion To Dismiss, Exhibit #1), against Oregon

defendants that included current defendants Downes and Schulte, defendant Susan Bond, and

the late Irene E. Rupert. The FAC alleged causes of action for intentional interference with

8

economic relations, conspiracy, punitive damages and for declaratory relief[4].

      All defendants in that action filed a joint Motion to Dismiss under FRCP 12(b)(2) (See

Decl. of William Rupert, Exhibit #5), and they all relied upon *inter alia* a Declaration of

Susan Bond[5] and a Declaration of Irene E. Rupert.  The Declaration of Irene E. Rupert falsely

stated none of the disputed assets, or transactions, had any nexus with the State of California[6].

The joint motion was heard and taken under submission by District Court Judge Jeremy Fogel

on January 8, 2010, who commented that the personal jurisdiction issue was a close call[7].

---

[4] Irene E. Rupert was only named as a defendant in the FAC's Declaratory Relief Cause of Action, which sought to have a federal judge inform Irene E. Rupert that defendant Downes had misrepresented the law to her, and fraudulently induced her to execute the drastically different estate plans that contained draconian *in terrorem* conditions, aimed at plaintiff.  The misrepresentations by defendant Downes were *inter alia* that: (1) plaintiff, although a permissible distributee, was not entitled to trust asset and administration information regarding the irrevocable Samuel J. Rupert Trust; and, (2) defendant Susan had no duty to fully account for her administration of assets for the first 7 months after Samuel J. Rupert died; such that it was unreasonable for plaintiff to ask defendant Susan to account, and plaintiff deserved to be disinherited, for making his unreasonable demands.

[5] The Declaration of Susan Bond, dated November 3, 2009, stated the following:
      "5.   I have never been a California resident.  I have never lived in California, have never owned any property located in California, and have never worked or done any business in California."  (See Decl. of William Rupert, Exhibit #4)

[6] The Declaration of Irene E. Rupert, dated November 3, 2009, stated the following:
      "5.   I have never been a resident of California.  I have never lived in California, have never owned any property located in California, and have never worked or done any business in California.  .    .    .    .    .    .
      7.   In May 2009, I retained Gile Downes as my attorney for advice on my estate planning and to advise me of my duties as administrator of my late husband's trust.  All the property in my late husband's estate is located in Oregon.  No estate property is located in California."  (See Decl. of William Rupert, Exhibit #3)

[7] The Transcript of the hearing on January 8, 2010 shows that Judge Fogel told the parties he considered the personal jurisdiction issue to be a close call, as he stated the following:
      "I think this is an interesting problem and I think it's a close question as to whether there is personal jurisdiction.  But I think Mr. Rupert has articulated a cognizable or at least a colorable argument, one that the court has to take seriously, that there is a deliberate and conspiratorial, that's what's he's alleging here, that his rights and obligations are in California."
      (See Transcript, Jan. 8, 2010, Case No. 5:09-cv-02758, 5:17 to 6:24)

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 12(b)(2) Motion
To Dismiss, By Defendants Downes And Schulte  [Case No. 5:12-cv-05292 LHK (HRL)]

1      Significantly, at the time the FAC was filed in the 2009 interference and declaratory

2   relief action, on July 23, 2009, the pleading reflects the fact that plaintiff William was being

3   stonewalled, and denied trust asset and administration information, while Irene E. Rupert was

4   still alive.  Moreover, there was no opportunity for discovery prior to the January 8, 2010

5   hearing before Judge Fogel, which was the only hearing ever conducted in the case.

6      Accordingly, plaintiff William had no way of knowing that defendant Susan's

7   misappropriation and transfer of assets, with her agent Kenneth Dillon, included the 3

8   brokerage accounts which were opened with Charles Schwab Institutional, located at 211

9

10  Main Street, San Francisco, CA 94105 (See Decl. of William Rupert, Exhibits #6-#11), in

11  February and March of 2009 (through the alleged inter-state transfer of stolen property from

12  Michigan to California, which they orchestrated).

13      The initial FAC was filed while Irene E. Rupert was still alive, but before plaintiff had

14  an opportunity to see the Trust instruments she signed on June 9, 2009 and July 23, 2009,

15  under false pretenses.  Limited additional information only became available to plaintiff

16  William in July of 2010 (through a voluntary informal discovery disclosure CD containing

17  2,044 pages, produced by defendants Susan and Whitman on July 20, 2010).

18      On September 9, 2010, Judge Fogel granted the joint motion and the FAC was

19  dismissed without prejudice, based upon a finding that it would be unreasonable for

20  California to exercise personal jurisdiction over any of the Oregon defendants, because, *inter*

21  *alia,* all of the disputed trust or estate assets had been located, and administered, by

22  defendants Susan, Irene or Downes, in Oregon, not in California. (See Motion To Dismiss,

23  Exhibit #2, page 5:25-6:5).  Judge Fogel found there was not a sufficient "nexus" between the

24

25  State of California and the activities alleged in the 2009 FAC, for the exercise of personal

1    jurisdiction over the Oregon defendants to be reasonable.

2         Now however, new facts exist, and new facts have been alleged, which could not have

3    been presented to Judge Fogel, who certainly would have ruled differently if he would have

4    understood that more than $400,000.00 in allegedly misappropriated funds were transferred

5    from Michigan to California in early 2009, and were still located in California (along with

6    pertinent business records and relevant witnesses from Charles Schwab Institutional), when

7    he ruled that there was not a sufficient nexus between the parties, the causes of action alleged,

8    and the State of California.

9

10        Therefore, there should be no res judicata effect from the earlier tainted ruling by

11   Judge Fogel, even if new facts and new law were not alleged.  However, new facts have been

12   alleged.  Equally important, but unaddressed by defendants Downes and Schulte, new law is

13   alleged, in this federal question action, which arises primarily under the RICO statutes.

14        The RICO statutes include a provision for nationwide service of process, under the

15   circumstances of the instant case.  Application of 18 USC § 1965(b) is discussed below.

16        **B.   Under 18 U.S.C. § 1965(b), Defendant Downes And Defendant
               Schulte's Admitted Contacts With The United States Are**
17             **Sufficient To Establish Personal Jurisdiction Over Them, Under
               The Interests Of Justice Standard, Because A Multi-District**
18             **Conspiracy Is Alleged, And Defendant Zusman Resides, Does
               Business, And Committed One Of The RICO Predicate Acts, In**
19             **The Northern District Of California, And No Other District Would
               Have Jurisdiction Over All The RICO Defendants**
20

21

22        The defendants' motion is also premised upon arguments that discuss "Personal

23   jurisdiction in diversity cases" (See Motion To Dismiss, 9:23), although the instant case is not

24   based upon diversity jurisdiction.  Rather the instant case is based upon federal question

25   jurisdiction, under the RICO statutes (18 USC § 1961 *et seq.*).

One of the RICO statutes (18 USC § 1965(b)), permits nationwide service of process[8],

and personal jurisdiction over defendants from other Districts, when the "ends of justice" test

is passed. In order to pass this test a potential RICO plaintiff must establish: (1) the District

has personal jurisdiction over at least one of the RICO defendants; and, (2) no other District

would have personal jurisdiction over all the RICO defendants.

This "ends of justice" test is well explained in the following case, where a similar

motion to dismiss, and similar opposition arguments were presented and discussed, in a RICO

action:

> "Moser first moves to dismiss this case under Federal Rule of Civil Procedure
> 12(b)(2) for lack of personal jurisdiction. Plaintiffs contend that this Court has
> specific jurisdiction over Moser based on his contacts with California and that,
> independently, 18 U.S.C. § 1965(b) also confers jurisdiction. (fn. 2).
> Section 1965(b) allows courts to exercise jurisdiction over non-resident defendants
> who allegedly violated RICO by participation in a multidistrict conspiracy. For this
> provision to apply, "the court must have personal jurisdiction over at least one of the
> participants in the alleged multidistrict conspiracy and the plaintiff must show that
> there is no other district in which a court will have personal jurisdiction over all of the
> alleged co-conspirators. *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788
> F.2d 535, 539 (9th Cir. 1986). Here, Plaintiffs have stated only that they 'are not
> aware of any other district in which a court would have personal jurisdiction over all
> of the defendants.' Opp'n at 9 n. 3. This conclusory assertion is insufficient to meet
> Plaintiffs' burden to demonstrate that jurisdiction under § 1965(b) would be
> appropriate."
> Huntair, Inc. v. Gladstone
>      774 F.Supp.2d 1035, 1039 (ND California 2011)

In the instant case, however, plaintiff William can meet the "interests of justice" test

because the RICO Defendants consist of 4 Oregon residents and 1 California resident

(defendant Edward S. Zusman), who transacts his affairs in this District (as an attorney at law

---

[8] The law is well settled that if a federal statute authorizes nationwide service of process (as
18 USC § 1965(b) permits), then the necessary "contacts", to establish the reasonableness of
personal jurisdiction, only have to be with the United States, not with a particular State. See
*Nelson v. Quimby Island Reclamation District*, 491 F.Supp.1364, 1378 (N.D. Cal. 1980); &
*Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1315-1316 (9th Cir. 1985).

12

who is exclusively licensed by the State of California).  Because any District in Oregon would

lack personal jurisdiction over defendant Zusman, there is no District, other than the Northern

District of California, which would have personal jurisdiction over all of the named RICO

Defendants and alleged co-conspirators.

Moreover, the existence of the nationwide conspiracy is well documented by the

records supporting the motion for attorney fees that defendants Susan and Whitman made in

one of the Oregon probate actions for a declaratory judgment (See Decl. of William Rupert,

Exhibit #14), as his time entries show repeated contact and interaction between and among

defendant Downes (in Oregon), defendant Zusman (in California), defendant James (in

Michigan), non-party co-conspirator Kenneth Dillon (in Michigan), and non-party co-

conspirator Ronald Eppler (in Michigan), as part of the nationwide misappropriation

conspiracy alleged in the instant RICO action.

Accordingly, based upon the special nationwide service of process provisions of 18

USC § 1965(b), the Motion to Dismiss should be denied, and personal jurisdiction should be

established in this District, over all RICO Defendants and co-conspirators (and also over

Defendant James, who is alleged to have received misappropriated/converted funds and to

have been unjustly enriched by his collaboration with the RICO Defendants and co-

conspirators in this case), based upon the interests of justice provisions.

        **C.**    **Specific Personal Jurisdiction Exists Because Of The Fraudulent Statements And Misrepresentations In Defendants' Demand Letters, Mailed And Wired To Plaintiff In California, Which Threatened Plaintiff With The Wrongful Economic Harm He Ultimately Suffered, On January 4, 2011, Through Enforcement Of The *In Terrorem* Provisions Irene E. Rupert Was Tricked Into Adopting – If The Proper "Purposeful Direction" Standards Are Utilized, Under The *Calder*-Effects Test, Which Is Appropriate For Tort Actions, Like The Instant Case**

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 12(b)(2) Motion
To Dismiss, By Defendants Downes And Schulte  [Case No. 5:12-cv-05292 LHK (HRL)]

The Defendants' Motion neglects to adequately discuss the *"Calder*-effects" test from Calder v. Jones, 465 U.S. 783 (1984); or the "Purposeful Direction" aspect of the "Purposeful Availment" doctrine, which is the appropriate aspect to use when a tort action is involved[9], as in the instant case.  Instead, they devote page after page to their own erroneous version of the "purposeful availment" standard.

The defendants' motion is premised upon the following misleading argument, that unreasonably adds a new element to normal "purposeful availment" analysis, a requirement that the "California legal system" be resorted to, as they state:

> "Because Downes and Schulte Anderson did not purposefully avail
> themselves of the privileges of California legal system, this claim does not
> arise from any activity based in California, and exercise of jurisdiction would
> be unreasonable, this Court lacks specific personal jurisdiction over
> Defendants."
> (See Downes & Schulte Motion to Dismiss; 14:12-15)

Additionally, defendants Downes and Schulte overlook the fact that the FAC in the instant case alleges that they conspired with defendants Susan and Zusman to perpetrate a fraud upon Judge Fogel (See FAC, ¶'s 73-74) , through the false declarations that led him to believe that none of the allegedly misappropriated funds had any nexus with the State of California (and no witnesses or significant documentary evidence, were to be found in California).

A leading practice guide provides the following useful discussion of the "Effect" test,

_____

[9] The *Dole* Court (infra),  stated the following, concerning the *"Calder*-effects" test:
> "Based on these interpretations of *Calder,* the 'effects' test requires that the
> defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the
> forum state, (3) causing harm that the defendant knows is likely to be suffered in the
> forum state."
> Dole Food Co., Inc. v. Watts
>          303 F.3d 1104, 1111 (9th Cir. 2002)

14

1    when, as in the instant case, acts committed outside the forum are alleged to have caused

2    "effects" within the forum.

3              "[3:168] **Acts committed *outside* forum"causing effect" within:**  If the
              nonresident defendant operates entirely outside the forum state, the mere fact
4             that its acts 'cause an effect' within the state, or even that such effect was
              'foreseeable,' is *not* enough by itself to support local personal jurisdiction.
5

6              Rather, the three-part test of limited jurisdiction must be met (¶3:116). i.e., it
              must be shown that the act was '*purposeful*', that the lawsuit *arises* from such
7             act; and that the exercise of jurisdiction 'comports with fair play and
              substantial justice.' [*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462,
8             478, 105 S.Ct. 2174, 2185; and see *Sibley v. Sup.Ct. (Carlsberg Mobile Home
              Properties, Ltd.-'72)* (1976) 16 Cal.3d 442, 128 CR 34]
9

10        (a)   [3:169] **Intentional torts:**   If a nonresident, acting outside the state,
              intentionally causes injuries within the state, local jurisdiction is
11            *presumptively not unreasonable*:  Under such circumstances, defendant
              must 'reasonably anticipate' being haled into court in the forum state.
12            [*Calder v. Jones* (1984) 465 U.S. 783, 790, 104 S.Ct. 1482, 1487;
              *Gordy v. Daily News, L.P.*(9th Cir. 1996) 95 F.3d 829, 834]
13

14            In such cases, ' (a) single act by a defendant can be enough to confer
              personal jurisdiction if that act gives rise to the claim being asserted.'
15            [*Lewis v. Fresne* (5th Cir. 2001) 252 F.3d 352, 359]

16            1)   [3:169.1]  **Requirements:**  'Purposeful availment' is satisfied
              where:
17                   -- defendant committed a *wrongful intentional act*;
                     -- *expressly aimed* at the forum state;
18                   -- causing harm that defendant *knew or should have known* was
                        likely to be suffered in the forum state.  [*Dole Food Co., Inc. v.
19                      Watts* (9th Cir. 2002) 303 F.3d 1104, 1111
                        a)   [3:169.2] **Wrongful intentional act:**  Examples of
20                         wrongful tortious acts aimed at forum residents that have
                           subjected non-resident actors to local jurisdiction include:
21                                 .    .    .    .    .    .    .
22                         -- fraudulent communications intended to induce
                              California managers into detrimental contract
23                            arrangements. [*Dole Food Co., Inc. v. Watts*, supra, 303
                              F.3d at 1112"
24
              Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV.
25            PRO. BEFORE  TRIAL (The Rutter Group 2009); Chapter 3, pages 65-66

                                         15

In the instant case, much like the *Dole* Case, fraudulent communications are alleged, which were intended to induce the California plaintiff into detrimental contract arrangements (which would have resulted if Plaintiff would have followed Defendants' directions and signed their proposed Modification of Trust document).

According to the case of <u>Metropolitan Life Ins. Co. v. Neaves,</u> 912 F.2d 1062, 1065 (9th Cir. 1990), a single fraudulent letter sent to a plaintiff in the forum state was express aiming, and was a sufficient contact to establish specific personal jurisdiction.

Accordingly, under proper "purposeful direction" analysis, the facts alleged and established in the instant case show that specific personal jurisdiction over defendants Downes and Schulte appears to be reasonable, under the circumstances.

After all, the fraudulent letters they sent to plaintiff William in California in June 2009 demanded that he take actions detrimental to his own property interests, under threat of the very disinheritance which was visited upon plaintiff William on January 4, 2011. (See Decl. of William Rupert, Exhibits #1 & #2). Whether Irene E. Rupert was fraudulently induced to sign the July 23, 2009 Trust instrument which was used to disinherit plaintiff William, and cause him financial harm which he felt in California, on January 4, 2011, should quite reasonably be adjudicated in this District.

Such litigation in this District is particularly appropriate because plaintiff William was denied the opportunity to litigate the issue of defendant Susan Bond's "unclean hands", in the Oregon litigation (where it was alleged she conspired with defendants Downes and Schulte to trick Irene E. Rupert into executing the Oregon Trust instruments which were used as part of the misappropriation schemes that damaged plaintiff William). The merits of plaintiff William's "unclean hands" arguments were never reached, as the Oregon court accepted the

16

arguments of defendants Susan and Whitman that plaintiff William's declaration of civil

death deprived him of the necessary "standing" to maintain his defenses and counterclaims, so

they had to be dismissed.

Accordingly, the instant case does not attempt to re-litigate any issues that were

previously adjudicated, or any issues that were capable of being litigated in the Oregon

probate proceedings for declaratory judgments, which were commenced by defendants Susan

and Whitman, and participated in by defendants Downes and Schulte, during 2010 and 2011.

(See Decl. of William Rupert, Exhibit #12).

**D.   The FAC Also Alleges Defendant Downes Conspired With Defendants Zusman And Bond To Obtain The Knowingly False Declaration Of Irene Rupert, Which Misrepresented The Location Of Estate And Trust Assets, To Judge Fogel, Who Relied Upon The Misrepresentations When He Granted The Earlier FRCP 12(b)(2) Motion To Dismiss, Without Prejudice**

As stated in the FAC, defendants Downes and Schulte fully participated in the fraud

upon the court (Judge Fogel), through the joint motion to dismiss that relied upon the false

declarations of defendant Susan and the late Irene E. Rupert. (See FAC, ¶'s 73-74)

As such, the obstruction of justice issues would appear to be particularly well suited

for adjudication in this same District, where the obstructions are alleged to have been made

(through the exploitation of a vulnerable 90 year old woman with Alzheimer's Disease, who

was provided with a false declaration, which she dutifully signed) (See FAC, ¶'s 52, 58, 67-

68, 102, & 123).

**E.   Jurisdiction In The Northern District Of California Comports With Traditional Notions Of Fair Play And Substantial Justice, For This RICO Action**

In the instant case, no evidentiary hearing has been requested by the Defendants, or set

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 12(b)(2) Motion
To Dismiss, By Defendants Downes And Schulte  [Case No. 5:12-cv-05292 LHK (HRL)]

1   by the Court, so the favorable prima facie showing standards apply. (See *Boschetto v.*

2   *Hansing* (9th Cir. 2008) 539 F.3d 1011, 1016). When these standards are applied to the instant

3   case, it is clear that the Plaintiff has made a sufficient showing.

4        Additionally, the Defendants' motion makes an inadequate showing of the alleged

5   "unreasonableness" they complain about, to overcome the fact that local jurisdiction is

6   *presumptively not unreasonable,* in the instant case, where intentional torts are alleged by the

7   Plaintiff[10].

8        The "reasonableness" test is the third prong of the *Calder*-effects" test, and it involves

9
10  consideration of the following 7 factors:

11          "The third and final prong is whether the exercise of jurisdiction would
            'comport with fair play and substantial justice,' or, in other words, 'be
12          reasonable.' *Id.* The Court must balance several factors to determine 'whether
            the exercise of jurisdiction over a nonresident defendant satisfies the
13          reasonableness test':
                  1) the extent of the defendant's purposeful interjection into the forum
14                state's affairs; 2) the burden on the defendant; 3) conflicts of law
                  between the forum and defendant's home jurisdiction; 4) the forum's
15                interest in adjudicating the dispute; 5) the most efficient judicial
                  resolution of the dispute; 6) the plaintiff's interest in convenient and
16                effective relief; and 7) the existence of an alternative forum."
17          <u>Roth v. Garcia Marquez</u>
                  942 F.2d 617, 623 (9th Cir. 1991)
18
19       All 7 factors are not discussed in the defendants Motion to Dismiss, as they

20  ---
    [10]    (a)     [3:169] **Intentional torts:**    If a nonresident, acting outside the state,
21          intentionally causes injuries within the state, local jurisdiction is *presumptively*
            *not unreasonable*:  Under such circumstances, defendant must 'reasonably
22          anticipate' being haled into court in the forum state. [*Calder v. Jones* (1984)
            465 U.S. 783, 790, 104 S.Ct. 1482, 1487; *Gordy v. Daily News, L.P.* (9th Cir.
23          1996) 95 F.3d 829, 834]  In such cases, ' (a) single act by a defendant can be
            enough to confer personal jurisdiction if that act gives rise to the claim being
24          asserted.' [*Lewis v. Fresne* (5th Cir. 2001) 252 F.3d 352, 359]
            Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE
25          TRIAL (The Rutter Group 2009); Chapter 3, pages 65

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 12(b)(2) Motion
To Dismiss, By Defendants Downes And Schulte [Case No. 5:12-cv-05292 LHK (HRL)]

1  inaccurately summarize a 9th Circuit case by representing that it only lists the following 4

2  factors, as they argue the following:

3
4  "Finally, exercise of jurisdiction in California would be unreasonable and
   unduly burdensome for Downes and Schulte Anderson. *Gray & Co. v.*
   *Firstenberg Machinery Co., Inc.,* 913 F.2d 758, 761 (9th Cir. 1990)
5  (reasonableness determined by several factors including the plaintiff's
   interests in the forum, the burden on the defendant to defend the suit in the
6  chosen forum, the forum state's interest in the dispute, and the location of the
   witnesses who would testify)."
7  (See Motion To Dismiss, 14:2-7)

8
9  Just to set the record straight, the *Gray v. Firstenberg* Court listed the same 7

10 reasonableness factors, on page 761 of the opinion, as were listed by the *Roth v. Garcia*

11 *Marquez* Court, on page 623 of their opinion.

12 In any event, Plaintiff William disagrees with the defendants' self-serving conclusory

13 statements, which fail to traverse all relevant "reasonableness" considerations. For instance,

14 defendants fail to address the issue of an alternative forum, presumably because one does not

15 exist, where all the defendants could be sued in one action, and they do not want to admit they

16 are arguing for a fragmented, piecemeal litigation approach, which would not be an efficient

17 use of judicial resources.

18 The slight additional expense and inconvenience, for the Oregon defendants, would

19 not be "unduly burdensome", it is submitted. Air travel between Portland, Oregon and San

20 Jose, California is relatively quick, convenient and economical, but for the most part this case

21 can be adjudicated efficiently through the marvels of modern electronic communication, and

22 potentially dispositive summary judgment motions. Telephonic appearances are possible for

23 many matters. Also, the nature of this case (misappropriation of trusteeships and trust assets)

24
25 lends itself to motion practice, because: (1) it primarily will turn upon the review of written

documents (estate plans and financial records of the late Samuel and Irene Rupert), and the

testimony of witnesses can be presented in declarations supporting dispositive motions; and,

(2) plaintiff William has not demanded a jury trial, so that the judicial efficiencies of a bench

trial can be realized. Accordingly, the additional burden upon the Oregon Defendants appears

to be slight, and not an undue burden.

Also, the new factual matters alleged in the FAC (See ¶'s 73-74) show that witnesses,

and financial records and documents from Charles Schwab Institutional, in San Francisco,

California, will be crucial in proving or disproving the RICO claims for alleged

misappropriation, and interstate transportation of stolen property.

Furthermore, adjudication in California would also be in keeping with the state's

strong interest, as shown by the following cases:

> "California has a strong interest in providing a forum for its residents and
> citizens who are tortiously injured. *See Panavision,* 141 F.3d at 1323."
> Dole Food Co. v. Watts
> 303 F.3d 1104 (9th Cir. 2002)

> "We next consider the extent of California's interest in adjudicating the suit.
> 'California maintains a strong interest in providing an effective means of
> redress for its residents [who are] tortiously injured.' *Sinatra,* 854 F.2d at
> 1200."
> Harris Rutsky & Co., Ins. Serv. Inc. v. Bell & Clements Limited
> 328 F.3d 1122, 1128-29 (9th Cir. 2003)

> "The State's strong interests . . . in providing a procedure for peaceful
> resolution of disputes about the possession of that property would also support
> jurisdiction, as would the likelihood that important records and witnesses will
> be found in the State."
> Shaffer v. Heitner
> 433 U.S. 186, 208 (1977)

Therefore, the Defendants' fatuous assertion that "California has no interest in the

litigation;" (See Motion to Dismiss, page 14, line 7), which is an unsupported contention for

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 12(b)(2) Motion
To Dismiss, By Defendants Downes And Schulte  [Case No. 5:12-cv-05292 LHK (HRL)]

1  obvious reasons (because it is a false statement that misrepresents the law), must be

2  disregarded.

3      Accordingly, it is the Defendants who have not, and cannot, show any

4  unreasonableness that rises to a Constitutional dimension, by adjudicating the Plaintiff's FAC,

5  which sounds in tort, in the Northern District of California, at the San Jose Division.

6      The following discussion, from a leading practice guide, explains why this is so.

7

8          "[3:143] **Inconvenience alone not sufficient:** The mere fact local
           litigation is inconvenient (or some other forum more convenient) is not
9          enough. Litigation locally must be so gravely difficult that it puts the
           defendant to a *severe disadvantage* in comparison to his or her
10         opponent. Requiring the nonresident to defend locally is not
           constitutionally unreasonable 'in this era of fax machines and discount
11         air travel.' [*Sher v. Johnson* (9th Cir. 1990) 911 F.2d 1357, 1365]"

12         Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV.
           PRO. BEFORE TRIAL (The Rutter Group 2009); Chap.3, page 58

13

14     Therefore, the Plaintiff has passed the *"Calder-*effects" test, and met his burden of

15  proof concerning the first two-prongs of the "Purposeful Direction" test, and the Defendants

16  have not, and cannot, overcome the presumption of reasonableness, and the reality of

17  reasonableness, if this tort action, were to be litigated in California, where the Plaintiff was

18  targeted and harmed by the Defendants wrongful conspiratorial actions (and where relevant

19  property, witnesses and documents are now known to exist).

20         **F.    The Defendants' Motion Also Misrepresents An Oregon
                   Pleading Containing Counter-Claims (Their Exhibit 3), And
21                 Its Purported Dismissal By The Court, When The Truth Is That
                   The Pleading Was Rejected For Filing By The Clackamas County
22                 Circuit Court in 2009, And Thereafter: (1) It Was Never Amended
                   By Plaintiff; (2) It Was Never At-Issue In The Case; And, (3) It
23                 Was Never Adjudicated By Way Of A Judgment Or Any
                   Dispositive Order**
24

25     The defendants' opening statement, to the effect that the plaintiff's operative pleading,

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 12(b)(2) Motion
To Dismiss, By Defendants Downes And Schulte [Case No. 5:12-cv-05292 LHK (HRL)]

1    the First Amended Complaint ("FAC"), "is the third complaint filed against defendants . . .

2    that arises out of the same underlying facts and allegations . ." (Mot. To Dismiss, page 3, lines

3    3-6), is incorrect, both because of the significantly different underlying facts and allegations,

4    and also because the pleading the defendants are trying to foist off as the 2nd complaint

5    against them, the Exhibit #3 supporting their motion, was not filed with the court, was never

6    at issue in the case, was never adjudicated in the case and it was not dismissed by the court.

7

8        The truth is that the proposed pleading was served on the defendants, but the proposed

9    pleading was ultimately rejected by the Clerk's Office, for perceived defects of form,

10   substance, and insufficient filing fees. The rejection letter from the Clerk's Office, dated

11   August 23, 2010 (See Exhibit #12), make it clear the responsive pleading and counterclaims

12   were not filed with the court.

13       The rejection letters show that copies were sent to defendants attorneys, and their

14   filing fee checks were returned to them. Accordingly, the defendants know full well that the

15   counterclaims were not dismissed, or adjudicated, because they were never legally filed.

16       Nonetheless, the defendants' make the following misleading statements:

17
             "Plaintiff filed and served objections to the proposed distribution and
18           counterclaims against Susan and third party claims against Downes and
             defendant Mathew Whitman. (fn.3)  As in his first California action, Plaintiff
19           again alleged that Downes was liable for conspiring with Susan to interfere
             with his rights as the proper trustee of the Samuel J. Rupert Trust.  (Id.)
20           Plaintiff's claims were ultimately dismissed as to Downes and Whitman and
             judgment was entered against Plaintiff as to Susan.  (FAC, ¶ 81.)"
21           (Mot. To Dismiss, page 5, lines 4-9)

22

23       In fact, after the plaintiff's responsive pleading that included counterclaims, in the

24   Samuel J. Rupert Trust Case, was rejected for filing by the Clerk's Office (See Decl. of

25   William Rupert, Exhibits #12), plaintiff changed his litigation strategy, and challenged

                                                22

1   fundamental jurisdiction in the motions he filed with the court (challenging subject matter,

2   personal, and *in rem* jurisdiction). When the motions to dismiss were denied, plaintiff filed an

3   Answer, that again challenged fundamental jurisdiction. A judgment in favor of Susan Bond

4   was thereafter entered without any hearing, which was timely appealed by plaintiff, and that

5   appeal, Oregon Court of Appeals No. A148529 (Control), is still pending, in the briefing stage

6
7   (having been delayed by transcriber problems).

8       In a companion Oregon case commenced by defendant Susan, regarding the Irene E.

9   Rupert Trust u/a/d July 23, 2009, the Trust instrument was an Oregon instrument, prepared by

10  defendants Downes and Schulte, so similar jurisdictional challenges were not in order.

11      Accordingly, plaintiff William filed a responsive pleading, consisting of his answer,

12  affirmative defenses, and counterclaims, in the Irene E. Rupert Trust Case, that alleged

13  defendant Susan's "unclean hands" and misappropriation of assets as an intermeddling trustee

14  *de son tort.*

15      In response, defendants Susan and Whitman filed a Petitioner's Response to

16  Respondent's Counterclaims document (See Decl. of William Rupert, Exhibit #13), that

17  exclusively argued that the *in terrorem* provisions drafted by defendants Downes and Schulte

18  required the declaration of plaintiff William's civil death, prior to Irene Rupert, which

19  destroyed his rights, and standing to maintain his affirmative defenses and counterclaims,

20
21  which the Court was required to dismiss (for lack of standing).

22      At the trial in CV10030497, the Irene E. Rupert Trust Case, on November 24, 2010,

23  defendant Whitman argued consistently with the argument in the Response document, to the

24  effect that the *in terrorem* provisions caused plaintiff to lose all of his rights, and dismissal

25  was required, due to his civil death.

1   When Senior Judge Elizabeth Welch rendered judgment she stated that she was

2   adopting Mr. Whitman's arguments, as her findings "in their entirety".

3       Accordingly, the issue of defendant Susan's alleged "unclean hands" and

4   misappropriation of assets, some of which were transferred into California, has not been

5   previously adjudicated in the State of Oregon.  Defendants Susan, Whitman and Downes

6   blocked plaintiff William's efforts to litigate the issues in CV10030497, through their

7   successful legal arguments concerning how the *in terrorem* provisions should be interpreted

8   and applied to plaintiff William.  Defendants Downes and Schulte were actively involved in

9   the litigation strategy and adjudication of the Irene E. Rupert Trust case, as shown by the time

10  records for the case kept by defendant Whitman. (See Decl. of William Rupert, Exhibit #14)

11      Under these circumstance, where defendants Downes and Schulte participated in the

12  schemes that blocked plaintiff William from getting his full and fair day in an Oregon Court,

13  upon the issues of misappropriated assets and the unclean hands by defendant Susan, it is

14  entirely reasonable to now permit plaintiff William to have his full and fair day in court in

15  proceedings in the Northern District of California, to adjudicate these issues, and all related

16  issues arising out of the matters alleged in the FAC.

17  **G.   Plaintiff Objects To Judicial Notice Being Taken Of Defendants'
        Exhibits, Because They Are Misleading And/Or Irrelevant, And,
        Defendants' Exhibit #3 Is Being Misrepresented To The Court, In
        Deliberate Bad Faith, For An Improper Purpose**

18

19

20

21      The defendants' Motion to Dismiss discusses a prior pleading and a prior order, which

22  are attached as defendants' Exhibit #1 & #2, on page 4, lines 22-24.  This discussion includes

23  footnote 2, where it is stated, "These prior pleadings are the proper subject of judicial notice

24  under Federal Rule of Evidence 201.  The defendants' Motion to Dismiss also includes a

25  
24

footnote 3, on page 5, where they state, "A true and correct copy of the Oregon pleading is attached hereto as Exhibit 3 and is the proper subject of judicial notice under FRE 201" (See Motion to Dismiss, 5:28).

Out of an abundance of caution, if the Court construes these footnote comments as a Request for Judicial Notice, plaintiff William objects to judicial notice being taken, because the exhibits attached to the defendants' motion are either irrelevant (Defendants' Exhibits #1, #2 & #4 -because they are inconclusive and not dispositive of the current matter), or the document is irrelevant and a misrepresentation to the Court (Defendants' Exhibit #3 - because it is only a proposed pleading, which was never legally filed, at-issue, or adjudicated).

> **H.    Jurisdictional Discovery Upon Charles Schwab Institutional, In San Francisco, California, Is Requested, Concerning The Assets Transferred From Michigan To California, In 2009, Because Such Discovery Relates To Additional Contacts With The State Of California, By Defendants Downes And Schulte**

Also out of an abundance of caution, plaintiff William requests the opportunity to conduct jurisdictional discovery, if necessary, upon Charles Schwab Institutional, to obtain information concerning additional California contacts defendants Downes and Schulte are believed to have had, starting in 2009, in connections with their purported representation of the late Irene E. Rupert (and her purported administration of the Samuel J. Rupert Trust).

**IV.    CONCLUSION**

The Motion to Dismiss should be denied, or held in abeyance while plaintiff William is permitted to conduct jurisdictional discovery upon Charles Schwab Institutional.

Dated: December 4, 2012

By: _William Rupert_

William Rupert
Plaintiff
Pro Se

25

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 12(b)(2) Motion To Dismiss, By Defendants Downes And Schulte  [Case No. 5:12-cv-05292 LHK (HRL)]

## PROOF OF SERVICE BY MAIL
### William Rupert v. Susan Bond et al.,
### Case No. 5:12-cv-05292 LHK (HRL)

I, the undersigned, state that I am a citizen of the United States and a resident of the

County of Santa Cruz, State of California; that I am over the age of eighteen years and not a

party to the above-entitled action; that my business and mailing address is P.O. Box 66403,

Scotts Valley, CA 96067-6403.

On **December 5, 2012,** I served true and correct copies of the following:

**PLAINTIFF WILLIAM RUPERT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (FRCP 12(b)(2)), BY DEFENDANT DOWNES AND DEFENDANT SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER, P.C.**

on the persons and/or entities

listed below, by placing said copies enclosed in a sealed envelope with postage thereon fully

prepaid, in the United States Post Office at Santa Cruz, California, addressed as follows:

LONG & LEVIT LLP
ATTN: KATE G. KIMBERLIN
465 California Street, 5th Floor
San Francisco, CA 94104

Law Offices of Devin Robinson, P.C.
ATTN: DEVIN NOAH ROBINSON
6110 N. Lombard Street, Suite B
Portland, OR 97203

I declare under penalty of perjury that the foregoing is true and correct. Executed on the

5th Day of December, 2012, at Ben Lomond, California.

_Carol Slater_
Carol Slater