1  WILLIAM RUPERT
   P.O. Box 66403
2  Scotts Valley, CA 95067-6403
   Phone: (831) 336-9520
3  Fax:    (831) 336-9528
   Email: emfwtr@comcast.net
4
   Plaintiff
5  Pro Se

**Filed**

FEB ? 2 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11 | WILLIAM RUPERT,                              | ) | **Case No.: 5:12-cv-05292 LHK (HRL)** |
   |                                              | ) |                                       |
12 |                          Plaintiff,         | ) | **PLAINTIFF WILLIAM RUPERT'S**        |
   |                                              | ) | **MEMORANDUM OF POINTS AND**          |
13 |              vs.                             | ) | **AUTHORITIES IN OPPOSITION TO**      |
   |                                              | ) | **MOTION FOR SANCTIONS UNDER**        |
14 | SUSAN BOND; GILE R. DOWNES;                  | ) | **RULE 11, BY DEFENDANT DOWNES**      |
   | EDWARD S. ZUSMAN;  MATTHEW                   | ) | **AND DEFENDANT SCHULTE,**            |
15 | WHITMAN; MICHELLE JOHANSSON;                 | ) | **ANDERSON, DOWNES, ARONSON &**       |
   | JAMES RUPERT; SCHULTE, ANDERSON,             | ) | **BITTNER, P.C.**                     |
16 | DOWNES, ARONSON & BITTNER, P.C.,             | ) |                                       |
   | an Oregon Professional Corporation;          | ) |                                       |
17 | MARKUN ZUSMAN & COMPTON, LLP,                | ) | Date:  July 18, 2013                  |
   | a Limited Liability Partnership Headquartered| ) | Time:  1:30 p.m.                      |
18 | in California; CARTWRIGHT WHITMAN            | ) | Dept:  Courtroom 8                    |
   | BAER PC, an Oregon Professional              | ) | Judge: Hon. Lucy H. Koh               |
19 | Corporation; and DOES 1 to 20,               | ) |                                       |
   |                                              | ) | Action Filed:  October 12, 2012       |
20 |                          Defendants.         | ) |                                       |
   |                                              | ) |                                       |
21 |                                              | ) |                                       |
   |                                              | ) | *ORIGINAL*                            |
22 |_____| ) |                                       |

23

24

25

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 11 Motion For
Sanctions, By Defendants Downes And Schulte [Case No. 5:12-cv-05292 LHK (HRL)]

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES . . . . . . . . iii

**MEMORANDUM OF POINTS AND AUTHORITIES** . . . . 1

I. PREFATORY STATEMENT RE: GRAVAMEN OF ACTION . . 1

II. STATEMENT OF ISSUES TO BE DECIDED . . . . 4

    A. Is The Plaintiff's FAC Baseless, And Was It Filed For An Improper Purpose, Such That It Is "Frivolous", And Warrants The Imposition Of Sanctions Under FRCP 11?. . . . 4

    B. Are There Grounds For Imposing A Federal Pre-Filing Order Upon The Plaintiff, Under Either FRCP 11 or 28 U.S.C. § 1651(a)? . 6

III. RESPONSE TO DEFENDANTS' "INTRODUCTION" AND "RELEVANT BACKGROUND AND FACTS" SECTIONS . . 7

    A. Response To Defendants' "The Prior California Litigation of Plaintiff's Claims" And "The Oregon Litigation" Section . . 7

    B. Response To Defendants' "Plaintiff is an Experienced Litigant With a Long History of Abusing the Judicial Process" Section . 20

IV. LEGAL ARGUMENT . . . . . . . . 21

    A. Plaintiff Incorporates by Reference: (1) His Previously Filed Memorandum (dkt. 29), Declaration & Exhibits #1-#14 (dkt. 30), In Opposition to the FRCP 12(b)(2) MTD by Defendant Downes and Defendant Schulte, Anderson, Downes, Aronson & Bittner, P.C.; (2) His Previously Filed Memorandum (dkt. 42), Declaration & Exhibits #15-#27 (dkt. 43), in Opposition to the FRCP 12(b)(2) MTD by Defendant Susan Bond and Defendant James Rupert; (3) His Previously Filed Memorandum (dkt. 46), Declaration & Exhibits #28-#40 (dkt. 48), In Opposition to the FRCP 12(b)(2) MTD by Defendant Whitman, Defendant Johansson and Defendant Cartwright Whitman Baer P.C.; and (4) His Previously Filed Memorandum (dkt. 56), Declaration & Exhibits #41-#56 (dkt. 58), Table of Exhibits #1-#56 (dkt. 57), and Request for Judicial Notice (dkt. 59), in Opposition to the FRCP 12(b)(6) MTD by Defendant Zusman and Defendant Markum Zusman & Compton, LLC . . . 21

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 11 Motion For Sanctions, By Defendants Downes And Schulte  [Case No. 5:12-cv-05292 LHK (HRL)]

### TABLE OF CONTENTS (Continued)

Page(s)

B.   The Motion for Sanctions Under Rule 11 is Frivolous, Because it
Overlooks the Colloquy Between Judge Jeremy Fogel and
Defendant Edward S. Zusman ("Zusman"), on January 8, 2010, in
*Rupert I,* And The Reporter's Transcript Of This Discussion Was
Brought to the Attention Of Defendants Downes and Schulte
Before The Instant Rule 11 Motion Was Filed, in Plaintiff's Letter
Dated February 4, 2013     .     .     .     .     .     .     22

C.   Among The New Jurisdictional Facts Alleged in the Instant
Case ("*Rupert II*"), the FAC Alleges Orders and Judgments were
Obtained in Oregon, during 2011, Using Manufactured Evidence
to Perpetrate A Fraud Upon The Oregon Courts, and Thereafter
Used to Interfere with Plaintiff's Ability to Administer the Samuel
J. Rupert Trust in California, Such That Specific Personal
Jurisdiction Exists, Under The "Effects" Test Set Forth in *Yahoo!,
Inc. v. La Lique Contre Le Racisme,* 433 F.3d 1199 (2006), As
Discussed By Judge Fogel And Defendant Zusman on January
8, 2010, at the Only Hearing in *Rupert I*     .     .     .     .     23

D.   Because the MTD Filed By Defendant Downes and Defendant
Schulte Lacks Merit, And Must Be Denied, Their Derivative
And Premature Motion For Sanctions Under Rule 11 Also Lacks
Merit, And Must Be Denied, Because the FAC is Not Baseless     .     23

E.   Because the FRCP 12(b)(6) MTD by Defendant Zusman and
Defendant Markun Zusman & Compton, LLP ("MZC") Does Not
Dispute This District Has General Personal Jurisdiction Over
Them, And Plaintiff Has Positively Averred That No Other District
Would Have Jurisdiction Over All Of The RICO Defendants and
Co-Conspirators, Venue And Jurisdiction Is Also Fitting And
Proper, In This District, Under 18 U.S.C. § 1965(a)(b)     .     .     24

V.   CONCLUSION     .     .     .     .     .     .     .     .     25

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 11 Motion For
Sanctions, By Defendants Downes And Schulte   [Case No. 5:12-cv-05292 LHK (HRL)]

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Buster v. Greisen,
104 F.3d 1186, 1190 (9th Cir. 1997) . . . . . . .   6

Butcher's Union Local No. 498 v. SDC Investment, Inc.,
788 F.2d 535, 539 (9th Cir. 1986) . . . . . . .   25

Cruze v. Hudler,
246 Or. App. 649, 267 P.3d 176 (2011) . . . .   2

De Long v. Hennessey,
912 F.2d 1144 (9th Cir. 1990) . . . . . . .   7

Donahue v. Shughart, Thomson & Kilroy, P.C.
900 S.W.2d 624, 627 (Mo. 1995) . . . . .   2

Edwards v. Centex Real Estate Corp.
(1997) 53 Cal.App.4th 15, 37, 61 Cal.Rptr.2d 518 . . . .   2

Estate of Giraldin,
55 Cal.4th 1058 (2012) . . . . . . .   2,3

Flatley v. Mauro,
39 Cal.4th 299 (2006) . . . . . . .   11

Granewich v. Harding,
329 Or. 47, 54, 985 P.2d 788 (1999) . . . . .   2

Huntair, Inc. v. Gladstone
774 F.Supp.2d 1035, 1039 (ND California 2011) . . .   25

King v. Johnston
178 Cal.App.4th 1488 (2009) . . . . .   2,3

Molinski v. Evergreen Dynasty Corp.,
500 F.3d 1047, 1057 (9th Cir. 2007) . . . . .   7

Moore v. Shaw,
116 Cal.App.4th 182 (2004) . . . . .   2,3

Pavicich v. Santucci,
(2000) 85 Cal.App.4th 382, 397-398, 102 Cal.Rptr.2d 125 . . .   2

iii

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 11 Motion For Sanctions, By Defendants Downes And Schulte  [Case No. 5:12-cv-05292 LHK (HRL)]

## TABLE OF AUTHORITIES (Continued)

**Page(s)**

**Cases (Continued)**

Pierce v. Lyman
(1991) 1 Cal.App.4th 1093, 1104-1106, 3 Cal.Rptr.2d 236   .   .   .   2

Reynolds v. Schrock,
341 Or. 338, 351, 142 P.3d 1062, 1069 (2006)   .   .   .   .   2

Yahoo!, Inc. v. La Lique Contre Le Racisme,
433 F.3d 1199 (2006) .   .   .   .   .   .   5,14,17,22,23

Wolf v. Mitchell, Silberberg & Knupp,
76 Cal.App.4th 1030, 90 Cal.Rptr.2d 792, 798 (1999)   .   .   .   3

**Statutes**

FEDERAL RULES OF CIVIL PROCEDURE
    Rule 11   .   .   .   .   .   .   .   3,4,6,7,22-25
    Rule 12(b)(2) .   .   .   .   .   .   13,14,19,21,24
    Rule 12(b)(6) .   .   .   .   .   .   .   19,21,24

UNITED STATES CODE
    18 U.S.C. § 1965(a)   .   .   .   .   .   .   24,25
    18 U.S.C. § 1965(b)   .   .   .   .   .   .   24,25
    28 U.S.C. § 1651(a)   .   .   .   .   .   .   6

CALIFORNIA BUSINESS & PROFESSIONS CODE

    Bus. & Prof. Code § 6068(d) .   .   .   .   .   .   24

CALIFORNIA CODE OF CIVIL PROCEDURE
    CCP § 391(b)(3)   .   .   .   .   .   .   20
    CCP § 391.8   .   .   .   .   .   .   .   20

CALIFORNIA PENAL CODE
    PC § 519(1)   .   .   .   .   .   .   .   11
    PC § 523   .   .   .   .   .   .   .   11

OREGON REVISED STATUTES
    ORS 18.655(1)(e)   .   .   .   .   .   .   19
    ORS 130.200(2)   .   .   .   .   .   .   10
    ORS 130.505(5)   .   .   .   .   .   .   9
    ORS 165.042 .   .   .   .   .   .   .   4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PREFATORY STATEMENT RE: GRAVAMEN OF ACTION

Contrary to the misrepresentations made throughout the Motion For Sanctions Under Rule 11, the gravamen of the First Amended Complaint ("FAC"), is for defendant Susan Bond's ("Susan"), wrongful misappropriation/conversion of trust assets, as an intermeddling trustee *de son tort,* who is alleged to be the primary tort-feasor.  Her initial wrongful conduct, from Oregon, is alleged to have been as an errant fiduciary (See, FAC, ¶¶ 33-51), who acted without any legal representation, legal advice, or legal authority, during the first 7 1/2 months after the death of Samuel J. Rupert on October 12, 2008 (at age 89, while domiciled in Oregon).  Defendant Susan is alleged to have breached the terms of Samuel J. Rupert's Michigan estate plans[1], to obtain control of nearly $900,000 in combined family assets, through fraud and deceit, practiced first against plaintiff William Rupert ("William"), in California (See, FAC, ¶¶ 33-36), and then against others, as necessary[2], to sustain and perpetuate her fraudulent schemes.

---

[1]  Samuel J. Rupert's Michigan estate plans, executed November 1, 1995, consisted of an *inter vivos* trust (dkt. 48, p. 22-34), and a pour-over will (dkt. 58, p. 112-113).  Both of these were amended on January 26, 2004, in an amendment (dkt. 48, p. 35), and in a codicil, both of which named plaintiff William instead of defendant Susan, to be his administrator).  Upon his death, his surviving spouse, the late Irene E. Rupert, if willing and able, was nominated as successor trustee, and she was the income beneficiary of the Family Trust that was to be funded with all his assets.  The three children (plaintiff William, defendant Susan and defendant James Rupert ("James") were the remainder beneficiaries, in equal shares.  The terms of the trust did not give any powers of appointment to anyone, and it did not contain any no contest clauses.  Unusually, the terms of the trust made all four beneficiaries (income and remainder), permissible distributees of principal, immediately, in the discretion of the then acting successor trustee, according to prescribed standards, which were to guide the administrator of the Family Trust. (dkt. 48, p. 26, Plts's Exh. #30, p. 8, Section 8(D)(2)).
[2]  On April 30, 2009, plaintiff William was put upon "inquiry notice" (See, FAC, ¶ 48), and started asking defendant Susan for documents and information he was entitled to receive (See, FAC, ¶ 50) (dkt. 58, p. 87-92, Pltf's Exh. 50), as a remainder beneficiary and a permissible distributee of an irrevocable trust. This required defendant Susan to enlist the aid of defendant Gile R. Downes ("Downes"), as the first lawyer to aid and abet her fraudulent schemes.

1    Four individual lawyers and three law firms, from Oregon and California are named as

2    secondary tort-feasors, based upon "exceptional circumstances"[3], involving conduct that is

3    alleged to have been independently wrongful, which render them errant lawyers[4], for

4    subsequently conspiring with, participating in, or otherwise aiding and abetting defendant

5    Susan's breaches of trust and fraudulent misappropriation/conversion schemes, despite having

6    clear knowledge that she was an intermeddling trustee *de son tort* who was in breach of the

7    terms of the irrevocable Samuel J. Rupert Trust[5].

8    As alleged in the FAC (See, FAC, ¶ 49), defendant Susan effectively looted the Samuel

9

---

[3] *See, Donahue v. Shughart, Thomson & Kilroy, P.C.* 900 S.W.2d 624, 627 (Mo. 1995); The exceptional circumstances rule provides "that an attorney may be liable to a third person for acts arising out of the attorney's representation of a client, if the attorney is guilty of 'fraud, collusion, or a malicious or tortious act'" fn. 11. *Id.* at 627. This case illustrates how the conditional, or qualified, immunity doctrine for lawyers is applied in Missouri. While not binding on this Court, it illustrates a reasonable place to draw the line on unprotected attorney misconduct, for which damages can be sought, and obtained, from errant lawyers.

[4] In California, an attorney may be liable to a trust beneficiary for the attorney's active participation in a trustee's breach of duty if the attorney acted in furtherance of his or her own financial gain, or committed actual fraud by making express misrepresentations to the beneficiary. (*Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1104-1106, 3 Cal.Rptr.2d 236); an attorney has "a duty to abstain from injuring [a third party] through express misrepresentation" (*Pavicich v. Santucci*, (2000) 85 Cal.App.4th 382, 397-398, 102 Cal.Rptr.2d 125); See also, *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 37, 61 Cal.Rptr.2d 518 – "We need not [condone] fraud in an effort to secure free access to the courts."; See also, *Moore v. Shaw*, 116 Cal.Appl4th 182, (2004); *King v. Johnston*, 178 Cal.App.4th 1488 (2009); and *Estate of Giraldin*, 55 Cal.4th 1058 (2012)

[5] Oregon also affords attorneys only a conditional or qualified privilege when claims of intentional interference with a contractual relationship and intentional interference with prospective economic advantage are asserted against an attorney by his client's adversary. In Oregon, an attorney who aids and abets a breach of trust is only privileged so long as he does not act outside the scope of the lawyer-client relationship. *See, Reynolds v. Schrock*, 341 Or. 338, 351, 142 P.3d 1062, 1069 (2006) ("common-law fraud is not among the acts that an attorney is privileged to commit." *Id.* at 351). See also, *Granewich v. Harding*, 329 Or. 47, 54, 985 P.2d 788 (1999); and *Cruze v. Hudler*, 246 Or. App. 649, 267 P.3d 176 (2011) – common-law fraud claim can be stated against attorney, as can a Racketeering claim under ORICO, for violations of ORS 165.042, which makes it a crime to "fraudulently obtain[] a signature if, with intent to defraud of injure another, the person obtains the signature of a person to a written instrument by knowingly misrepresenting any fact." *Id.* at 187.

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 11 Motion For Sanctions, By Defendants Downes And Schulte [Case No. 5:12-cv-05292 LHK (HRL)]

J. Rupert Family Trust[6], to the detriment of plaintiff William, who has been a remainder

beneficiary[7] _and_ a permissible distributee, since October 12, 2008. Plaintiff William also

became the lawful Successor Trustee, under the terms of the Samuel J. Rupert Trust, on July 8,

2009. (See, FAC, ¶ 62) & (dkt. 48, p. 13-17, Pltf's Exh. 29).

The instant Motion For Sanctions Under Rule 11 is by one of these secondary tort-

feasors, defendant Downes and defendant Schulte, Anderson, Downes, Aronson & Bittner, PC

("Schulte"). These lawyer defendants were the first to aid and abet the fraudulent schemes of

defendant Susan, as a trustee _de son tort_, but not the last[8].

Essentially, defendant Downes and defendant Schulte argue that: (1) personal

jurisdiction can never be established against them in this District, because of Judge Fogel's

dismissal order that was obtained through extrinsic fraud on September 9, 2010, to end the 2009

tort diversity action; and, (2) although defendant Susan was not their client, her late mother,

Irene E. Rupert, allegedly was, so their collaboration with defendant Susan and active

participation in furthering defendant Susan's fraudulent misappropriation schemes (of trust

assets, including the crucial, detailed, trust and estate records of Samuel J. Rupert), that

---

[6] According to the "accounting" prepared by defendant Susan, signed by her as "Successor Trustee" (See, FAC, ¶ 49) & (dkt. 58, p. 82-83, Pltf's Exh. 48), on May 12, 2009, all of Samuel and Irene Rupert's combined assets, valued at $874,995 on March 31, 2009, had been transferred to, and were assets of, the Irene E. Rupert Trust, u/a/d November 1, 1995; and the Samuel J. Rupert Trust was merely referenced as one such asset, by the reference to "$83,371 Samuel-Irene Rupert Trust".

[7] In California, trust beneficiaries have long enjoyed standing to bring actions against others, including attorneys, who are alleged to have actively participated in, and aided and abetted, a trustee's breaches of trust. (_Wolf v. Mitchell, Silberberg & Knupp,_ 76 Cal.App.4th 1030, 90 Cal.Rptr.2d 792, 798 (1999)); See also, _Moore v. Shaw,_ 116 Cal.App.4th 182 (2004); _King v. Johnston,_ 178 Cal.App.4th 1488 (2009); and _Estate of Giraldin,_ 55 Cal.4th 1058 (2012)

[8] However, the long term wisdom of _ever_ aiding and abetting a known trustee _de son tort,_ or accepting such a person as a client (unless the potential client is willing to fully account, relinquish control and make full restitution), is not readily apparent, and remains to be determined, by this Court, it is submitted.

3

damaged plaintiff's vested remainder interest in the Samuel J. Rupert Trust, and trusteeship, is privileged, and therefore it is frivolous to seek to hold them liable, because lawyers' actions are privileged, even when dishonest.

Plaintiff contends otherwise, asserting: (1) there is specific personal jurisdiction; and, (2) defendant Susan was not their client and aiding and abetting her breaches of trust and fiduciary duty, even if she had been a client, is not privileged, or even communicative conduct. Nor is the misappropriation/conversion of assets a privileged, or communicative action. Also, the FAC alleges common law fraud based upon knowing misrepresentations of fact and law, (See, FAC, ¶¶ 52, 55-60); and that defendant Downes' obtained the signature of Irene E. Rupert upon the Trust instrument that was used to disinherit plaintiff, under false pretenses, in a manner that is a crime in Oregon, under *inter alia* ORS 165.042. (See, FAC, ¶¶ 65, 67-70; App. B, p. 3, ORICO – Phase Two, Predicate Acts 4). As alleged in the FAC (See, FAC, ¶ 19), liability is only sought for the wrongful misconduct by the named errant lawyers, which falls under the crime and/or fraud exceptions to normal attorney privilege, as secondary tort-feasors.

## II. STATEMENT OF ISSUES TO BE DECIDED

### A. Is The Plaintiff's FAC Baseless, And Was It Filed For An Improper Purpose, Such That It Is "Frivolous", And Warrants The Imposition Of Sanctions Under FRCP 11?

Defendant Downes and defendant Schulte argue an earlier tort diversity action (*Rupert I*), commenced on June 20, 2009, amended on July 23, 2009, and dismissed without prejudice on September 9, 2010, is substantially identical to the instant federal question civil RICO action, and no new facts have been alleged, such that the earlier dismissal (without prejudice) bars the instant RICO action. Therefore, the Downes and Schulte defendants contend, the FAC is frivolous and filed for an improper purpose, such that FRCP 11 Sanctions are in order (which

4

should include a finding plaintiff William is a federal vexatious litigant, and the entry of a pre-filing order against plaintiff William, protecting defendant Downes and defendant Schulte in all federal California courts.

Plaintiff William disagrees, contending the Reporter's Transcript of the hearing before Judge Jeremy Fogel, on January 8, 2010, in *Rupert I,*[9] includes what should be the dispositive legal discussion upon the circumstances under which specific personal jurisdiction could and would be established, over this multi-district dispute, pursuant to the "effects" test set forth in *Yahoo!, Inc. v. La Lique Contre Le Racisme,* 433 F.3d 1199 (2006), and those exact circumstances are now alleged in the FAC in *Rupert II* (See, FAC, ¶¶ 77-81, 85-91), to have occurred during 2010-2011 (after defendant Downes, defendant Susan, and defendant Matthew Whitman ("Whitman") conspired on February 10-12, 2010, over the phone and in person (dkt. 30, p. 55, Pltf's Exh. #14) , to commence baseless and fraudulent litigation in Oregon, for an advisory opinion, concerning the Samuel J. Rupert Trust, as preemptive litigation, to protect and shield defendant Susan, just as soon as the late Irene E. Rupert died[10]. As alleged in the FAC, said baseless litigation for an advisory opinion was thereafter commenced on March 15, 2010 in Oregon (See, FAC, ¶ 77) & (dkt. 48, p. 19-21, Pltf's Exh. 30), against plaintiff, and orders and judgments were obtained in 2011 (dkt. 48, p. 42-43, Pltf's Exh. 32), that were used in California to interfere with plaintiff's ability to administer the Samuel J. Rupert Trust in California. (See, FAC, ¶¶ 85-88; App. A, p.9, RICO – Phase Four, Predicate Acts 17-18; App.

[9] The Reporter's Transcript of the hearing on January 8, 2010, before Judge Fogel, is before the Court, as Plaintiff's Exhibit #41 (dkt. 58, p. 12-37, Pltf's Exh. #41, p. 1-26), and plaintiff has requested that it be judicially noticed by the Court. (dkt. 59).

[10] According to the records before the Court, defendant Whitman began drafting a petition concerning the Samuel J. Rupert Trust, on February 12, 2010, and he did so in close collaboration with defendants Susan and Downes. (dkt. 30, p. 55, Pltf's Exh. 14, p. 1)

5

B, p. 6-7, ORICO – Phase Four, Predicate Acts 8-9). Accordingly, the plaintiff contends his FAC is neither frivolous[11] or filed for an improper purpose.

**B.    Are There Grounds For Imposing A Federal Pre-Filing Order Upon The Plaintiff, Under Either FRCP 11 or 28 U.S.C. § 1651(a)?**

Defendant Downes and defendant Schulte suggest that: (1) the FAC in the instant case is "only the most recent in a long line of abusive litigation filed by Plaintiff." (*See,* Deft's Memorandum, 5:12-13); (2) "This Court has authority to issue a pre-filing order both under Rule 11 and under 28 U.S.C. § 1651(a), the All Writs Act." (*See,* Deft's Memorandum, 14:24-25); (3) "plaintiff has demonstrated a disregard for the judicial process by 'preempt[ing] the use of the judicial process that properly could be used to consider the meritorious claims of other litigants'" (*See,* Deft's Memorandum, 14:27-28); and, (4) "the Court has sufficient information to determine that Plaintiff's FAC was filed both frivolously and for a harassing purpose." (*See,* Deft's Memorandum, 15:8-9)

Plaintiff William disagrees, contending: (1) there is not a long line of abusive litigation filed by Plaintiff, and Judge Fogel's comments on January 8, 2010[12] showed he did not consider *Rupert I* to be abusive litigation; (2) sufficient grounds for invoking either Rule 11 or 28 U.S.C. § 1651(a) have not been alleged or established by defendants; (3) no disregard for the judicial process has been shown or demonstrated by the plaintiff in either *Rupert I,* or in the instant case; and, (4) the self-serving, conclusory statements by defendants Downes and Schulte do not provide sufficient information to allow the Court to determine that Plaintiff's FAC was filed frivolously, or for a harassing purpose, and that the imposition of a pre-filing order is warranted,

---

[11]  "Frivolous filings are those that are both [(1)] baseless and [(2)] made without a reasonable and competent inquiry." *Buster v. Greisen,* 104 F.3d 1186, 1190 (9th Cir. 1997)

[12]   At the January 8, 2010 hearing, Judge Fogel complimented the plaintiff for the quality of the opposition papers he prepared and filed with the Court. (dkt. 58, p. 33:15-21; Pltf's Exh. #41, p. 22:15-21).

6

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 11 Motion For Sanctions, By Defendants Downes And Schulte [Case No. 5:12-cv-05292 LHK (HRL)]

under either *Molinski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007)[13], or *De Long v. Hennessey,* 912 F.2d 1144 (9th Cir. 1990)[14].

## III.   RESPONSE TO DEFENDANTS' "INTRODUCTION" AND "RELEVANT BACKGROUND AND FACTS" SECTIONS

### A.   Response to Defendants' "The Prior California Litigation of Plaintiff's Claims" And "The Oregon Litigation" Sections

This is the second (not third), lawsuit plaintiff William has filed that seeks to hold

defendant Downes and defendant Schulte liable for their collaborations with plaintiff's sister,

defendant Susan, following her intermeddling as a trustee *de son tort,* and misappropriation/

conversion of trust assets that should have been funded into the Samuel J. Rupert Trust, after the

death of Samuel J. Rupert on October 12, 2008, pursuant to the terms of his Trust.  The late

---

[13] This case concerned a litigant, paralyzed from the chest down, who needs a wheelchair to get around, who filed about 400 lawsuits in the federal courts within the districts in California, asserting claims under the ADA and California law.  In finding Jarek Molski to be a vexatious litigant and entering a pre-filing order, the district court noted that his complaints were all textually and factually similar (*Id.* at 1051), and made a specific finding that the allegations in Molski's numerous and similar complaints were "contrived and not credible" (*Id.* at 1051). The district court noted that Molski had filed thirteen separate complaints for essentially identical injuries allegedly sustained during one five-day period (*Id.* at 1051-52). In particular, Molski had alleged that, at each establishment, he injured his "upper extremities" while transferring himself to a non-ADA-compliant toilet. (*Id.* at 1052).  These circumstances bear no relation to the instant case, where the two actions filed against defendant Downes are not identical.
[14] This case sets forth the four prong test which is used in the Ninth Circuit, to assess whether to declare a party a federal vexatious litigant and enter a pre-filing order.  These factors are: (1) notice and an opportunity to be heard; (2) the creation of an adequate record; (3) findings of frivolousness or harassment; and, (4) that the order be narrowly tailored.  Concerning the second prong, "An adequate record for review should include a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed." (*Id.* at 1147).  Concerning the third prong, the district court must look at both the number and content of the filings as indicia of the frivolousness of the litigant's claims.  Also, an injunction cannot issue merely upon a showing of litigiousness.  The plaintiff's claims must not only be numerous, but also patently without merit.  However, in the instant case, the Motion for Sanctions Under Rule 11 is premised upon conclusory statements, and lacks sufficient specific factual grounds to allow the Court to create an adequate record, or make the substantive findings of frivolousness or harassment that are required.

1  Samuel and Irene Rupert's amended estate plans, from January 26, 2004, showed they both

2  wanted the plaintiff to the sole successor trustee (dkt. 48, p. 35-36, Pltf's Exh. #30, p. 17-18),

3  ahead of defendant Susan, if the surviving spouse was unwilling or unable to perform in those

4  capacities. After the death of Samuel J. Rupert, Irene E. Rupert was 89 years old and suffering

5  from Alzheimer's disease, so she declined to accept the role of administrator. Instead,

6  defendant Susan used fraud and deceit to become the trustee *de son tort,* by telling plaintiff

7  William, on October 13, 2008, during a 23 minute phone conversation (See, FAC, ¶¶ 33-35) &

8  (dkt. 58, p. 57-59, Pltf's Exh. #44, p. 2), that she had seen the amended estate plans from

9  
10  January 26, 2004, but she had more recent estate planning documents that put her in charge, and

11  made her the successor trustee of the Samuel J. Rupert Trust.

12  On January 11, 2009, defendant Susan further deceived plaintiff William and tricked

13  him into drafting an illegal Amendment to Trust Agreement document (See, FAC, ¶¶ 40-41) &

14  (dkt. 58, p. 75, Pltf's Exh. 46), that unilaterally made her the successor trustee of the Irene E.

15  Rupert Trust (without Irene E. Rupert's knowledge or consent). Thereafter, defendant Susan

16  used the illegal Amendment to Trust Agreement document to transfer funds to Irene E. Rupert's

17  accounts held by Umpqua Bank in Oregon (dkt. 58, p. 106-107, Pltf's Exh. #58). Defendant

18  Susan and non-party co-conspirator Kenneth A. Dillon also caused brokerage accounts to be

19  transferred from Michigan to Charles Schwab Institutional, in San Francisco, California. (See,

20  FAC, ¶ 47) (dkt. 43, p. 51-85; Pltf's Exhs. #24,25,26 & 27).

21  
22  In April of 2009, the late Irene E. Rupert recruited plaintiff William, who spoke to

23  defendant Susan and reminded her of her duty to account for her administration of both Trusts,

24  and not keep everybody in the dark, as she had been doing. (See, FAC, ¶ 48).

25  Subsequently, on May 12, 2009, defendant Susan sent a purported accounting to

plaintiff William, and to another brother, defendant James (See, FAC, ¶ 49) & (dkt. 58, p. 82-83, Pltf's Exh. 48), which revealed Samuel J. Rupert's wishes were not being honored, because the Samuel J. Rupert Family Trust had not been funded with all his assets, as he intended (dkt. 48, p. 25; Pltf's Exh. #30, p. 7, Section 8 & Section 8(B)), and, in fact, the Family Trust was not shown to even exist as an independent entity. Instead, all assets ($874,995.00) were shown as having been transferred to, and belonging to, the Irene E. Rupert Trust.

Having been put on "inquiry notice" of possible mismanagement by defendant Susan, plaintiff William did some research into Oregon's laws, and discovered the January 11, 2009 Amendment to Trust Agreement was illegal, and void *ab initio,* pursuant to ORS 130.505(5), because the terms of the Irene E. Rupert Trust (dkt. 58, p. 61-73, Pltf's Exh. #45, p. 3, Section 5), did not allow amendments to be made to her Trust, based upon a power of attorney document. Plaintiff William also began to suspect that inferior power of attorney documents were all that defendant Susan had been relying upon, all along.

Accordingly, in a letter dated May 17, 2009 (dkt. 58, p. 87-92, Pltf's Exh. #50), plaintiff William: (1) objected to the purported "Accounting" as defective and insufficient; (2) informed defendant Susan the January 11, 2009 Amendment to Trust Agreement was illegal, and void *ab initio*; (3) demanded that defendant Susan produce her credentials to be in charge; and, (4) demanded that defendant Susan relinquish control to plaintiff William, if all she had were inferior power of attorney documents.

On May 20, 2010, defendant Susan called plaintiff William and told him that she and Irene E. Rupert had retained an attorney, and this unnamed attorney would be responding to the concerns which plaintiff William had expressed in a series of letters addressed to defendant Susan. (See, FAC, ¶ 51). Then defendant Susan stated she did not trust plaintiff William, so she

9

refused to talk to him, about anything, and she then abruptly hung up the phone on him.

It turned out that defendant Downes was the attorney who met with defendant Susan and the late Irene E. Rupert (who by now was 90 years old, and had been formally diagnosed with Alzheimer's Disease). Among the legal advice given to the late Irene E. Rupert, who normally spoke to plaintiff William once or twice a week on the phone, was to stop talking to him.

On June 9, 2009, the late Irene E. Rupert was tricked into signing drastically new estate planning documents, drafted by defendant Downes, which included the Irene E. Rupert Trust, u/a/d June 9, 2009, and the Will of Irene E. Rupert, u/a/d June 9, 2009 (See, FAC, ¶¶ 55-58). Unlike her prior Michigan Trust instrument, the new Oregon Trust instrument contained a draconian *in terrorem* clause, which was tailored to be triggered unless plaintiff William stopped asking defendant Susan to: (1) account for her administration of trust assets; (2) produce her credential to be in charge; and, (3) relinquish control if all she had were inferior power of attorney documents. The Oregon Trust also included language whereby plaintiff William's prospective remainder beneficiary share, if any, was to be charged for defendant Downes legal fees, including any future fees that might be incurred if plaintiff William keep seeking information about the assets and administration of either Trust.

Also on June 9, 2009, defendant Downes drafted a "Modification of Trust" document (dkt. 30, p. 11-14, Pltf's Exh. #1, p. 3-6), for the by now irrevocable Samuel J. Rupert Trust, under which the original Michigan Trust was to become an Oregon Trust, with defendant Susan as the successor trustee, and it included language stating that, "Under no circumstances shall William Rupert be trustee." This Modification document shows it was prepared under the provisions of ORS 130.200(2), which permits irrevocable trust instruments to be modified if all the qualified beneficiaries agree, and ask a probate court for the modification. Accordingly, this

10

Modification document had eight signature lines, for all four qualified beneficiaries, and for the four children of defendant Susan and defendant James.

On June 10, 2009, defendant Downes sent the letter that Judge Jeremy Fogel and defendant Edward S. Zusman ("Zusman"), referred to as a "cease and desist letter" (dkt. 30, p. 9-14; Pltf's Exh. #1)  (which may or may not include extortionate speech, as a matter of law, under California Penal Code §§ 519(1) & 523, and *Flatley v. Mauro*, 39 Cal.4th 299 (2006)), wherein defendant Downes introduced himself as solely the attorney for Irene E. Rupert (not defendant Susan), although in multiple, conflicting, capacities for the late Irene E. Rupert. Defendant Downes stated he was representing Irene E. Rupert both individually, as the settlor of her own estate plans, and also as the purported Successor Trustee of the Samuel J. Rupert Trust, which she wanted to modify/amend.  Among other things, defendant Downes informed plaintiff William that: (1) he had drafted new estate plans for Irene E. Rupert, that made defendant Susan the successor trustee, and which charged all of his legal fees against plaintiff Williams prospective remainder beneficiary share, if any; (2) only a single brokerage account was being restored to the Samuel J. Rupert Family Trust, worth less than $100,000.00, while the other 90% of the combined assets of Samuel and Irene Rupert were being retained by the newly created Irene E. Rupert Trust, u/a/d June 9, 2009; (3) because Irene E. Rupert was the successor trustee of the Samuel J. Rupert Trust, plaintiff William had no right to an accounting, or any information about the assets, records or administration of the Samuel J. Rupert Trust, and, (4) plaintiff William needed to sign the Modification of Trust document, so the Samuel J. Rupert Trust could be modified/amended, then have it notarized in California, and return it to defendant Downes in Oregon by no later than June 19, 2009, or risk complete disinheritance from the Irene E. Rupert Trust, which was holding 90% of the combined assets of the late Samuel J.

11

Rupert, and Irene E. Rupert.

Plaintiff William responded with a letter that informed defendant Downes the late Irene E. Rupert had been formally diagnosed with Alzheimer's Disease, so she was not a suitable client, and he should refund any and all fees he had obtained from her. (See, FAC, ¶ 61).

On June 19, 2009, defendant Downes sent another threatening letter from Oregon to plaintiff William in California, strongly advising plaintiff William to sign the Modification of Trust document, without further delay, because he had a lot to lose. (dkt. 30, p. 16-17; Pltf's Exh. #2).

It was at this point that plaintiff William commenced USDC NDCA Case No. 5:09-cv-02758 JF (RS), the case known as *Rupert I,* on June 20, 2009, under the Court's diversity jurisdiction, as a tort action for intentional interference with economic relations, and conspiracy, against defendant Susan, defendant Downes and defendant Schulte. (See, FAC, ¶ 66). The late Irene E. Rupert was not named as a defendant in the original complaint.

After commencing the action, the original complaint was never served, because plaintiff's continued research, introspection, and examination of the terms of the Samuel J. Rupert Trust caused him to realize it would be to his advantage to formally accept his nomination to become the Successor Trustee, before he proceeded.

On July 6, 2009, plaintiff mailed his formal acceptance of trust papers (See, FAC, ¶ 62) & (dkt. 48, p. 13-17; Pltf's Exh. #29), to all of the qualified beneficiaries, who received the documents on July 8, 2009.

Defendant James, through independent internet research, happened to discover the existence of the legal action known as *Rupert I,* and so informed defendant Susan.

In response, on July 23, 2009, defendant Downes again tricked Irene E. Rupert into

12

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 11 Motion For Sanctions, By Defendants Downes And Schulte [Case No. 5:12-cv-05292 LHK (HRL)]

1  signing an Amended Irene E. Rupert Trust, u/a/d July 23, 2009, with an expanded *in terrorem*

2  clause, designed to be triggered by service of the complaint in *Rupert I*. (See, FAC, ¶ 67).

3  However, the original complaint in *Rupert I* was never served upon any party.

4  Instead, on July 23, 2009, plaintiff William filed his First Amended Complaint ("FAC")

5  in *Rupert I*, which added a new cause of action, or remedy, for declaratory relief, which asked

6  the Court to declare that: (1) plaintiff William's acceptance papers (See, FAC, ¶ 62) & (dkt. 48,

7  p. 13-17; Pltf's Exh. #29), made him the Successor Trustee of the Samuel J. Rupert Trust,

8  effective July 8, 2009; (2) Irene E. Rupert had never been the Successor Trustee, because she

9  never accepted formally, or informally by performance, and she allowed defendant Susan to

10  function as the Successor Trustee; and, (3) the Office of the Trustee had been vacant, as a matter

11  of law, during the time of defendant Susan's wrongful occupancy as an intermeddling trustee *de*

12  *son tort,* from October 12, 2008 until July 8, 2009. Because Irene E. Rupert was a necessary

13  party, concerning the request for declaratory relief, she was named as an additional defendant,

14  solely in the cause of action for declaratory relief. No damages were sought against the late

15  Irene E. Rupert. (See, FAC, ¶ 66).

16  After the FAC in *Rupert I* was served, defendant Susan and the late Irene E. Rupert

17  retained defendant Zusman and defendant MZC to retain them. Defendants Downes and

18  defendant Schulte retained Jessica MacGregor, of the Long and Levit, LLP law firm to

19  represent them. Together, these defendants filed a joint Motion to Dismiss under FRCP

20  12(b)(2), which was supported by declarations by the late Irene E. Rupert (dkt. 30, p. 19-20;

21  Pltf's Exh. #3), by defendant Susan (dkt. 30, p. 22-23; Pltf's Exh. #4), and defendant Downes.

22  The combined effect of these three declarations was that they created the false impression that

23  none of the trust assets, trust administration, potential witnesses, or potential evidence had any

13

1    connection, or nexus, to California. (See, FAC, ¶ 73).

2        Because defendant Susan and defendant Downes had all the estate plans and financial

3    records at the time, which they would not share with plaintiff William, and no discovery had

4    been permitted in the case, he did not know the truth, so he reasonably relied upon their

5    representations, and assumed they were being truthful, about the location of assets.

6        On January 8, 2010, the hearing was held on the Joint MTD under FRCP 12(b)(2), and

7    the Reporter's Transcript of the hearing (dkt. 58, p. 12-37; Pltf's Exh. #41), shows that Judge

8    Jeremy Fogel was also deceived by the misleading declarations which supported the Joint MTD,

9    as he stated throughout the hearing that he understood all trust assets to be in Oregon and all

10   trust administration activity to have taken place in Oregon.

11       Nonetheless, Judge Fogel stated that he considered the case to be a close call, under the

12   *Calder*-effects test, as it evolved in *Yahoo!, Inc. v. La Lique Contre Le Racisme,* 433 F.3d 1199

13   (2006), which is a Ninth Circuit opinion that affirmed Judge Fogel's trial court ruling that

14   specific personal jurisdiction could be established based upon the effects of cease and desist

15   letters from France, that were combined with foreign judgments and orders from France, that

16   caused an effect, and harm, in California.

17       The Reporter's Transcript shows that Judge Fogel and defendant Zusman both regarded

18   the letters from defendant Downes, to be equivalent "cease and desist" type contacts, but

19

20   defendant Zusman argued that the "cease and desist" letters, standing alone, shouldn't create

21   specific personal jurisdiction in *Rupert I,* because no legal instrumentalities were involved,

22   unlike the *Yahoo!* case. (dkt. 58, p. 23:2-24:10; Pltf's Exh. #41, p. 12:2-13:10).

23

24       Judge Fogel and defendant Zusman then agreed that specific personal jurisdiction over

25   the Oregon defendants would be established, "If the defendants in this case got a court order in

14

Oregon that precluded Mr. Rupert from exercising any of the rights he claims under this 2004 trust agreement" (dkt. 58, p. 23:2-24:10; Pltf's Exh. #41, p. 12:2-13:10).

Judge Fogel took the matter under submission, and then conducted a Case Management Conference wherein he got all parties to agree to hold off on litigation activities, until ADR Mediation efforts were pursued. (dkt. 58, p. 29:16-36:17; Pltf's Exh. #41, p. 18:16-25:17).

Subsequently, the late Irene E. Rupert was diagnosed with terminal lung cancer.

On February 10, 2010 defendant Susan and defendant Downes telephoned defendant Matthew Whitman ("Whitman"), and then the three of them met in person (dkt. 30, p. 55; Pltf's Exh. #14, p. 1), which resulted in defendant Susan retaining defendant Whitman and defendant Cartwright Whitman Baer, P.C. ("Cartwright"), with the blessings and assistance of defendant Downes, to represent her in Oregon litigation which was to be commenced against plaintiff William as soon as the late Irene E. Rupert died.

On March 12, 2010, the late Irene E. Rupert died.

On March 15, 2010, defendant Bond and defendant Whitman commenced a baseless action regarding the Samuel J. Rupert Trust, against plaintiff William, in State of Oregon, Clackamas County Circuit Court Case No. CV10030498 (See, FAC, ¶ 77), which was captioned as a "Petition For Instructions and to Compel Distribution" (dkt. 48, p. 19-21; Pltf's Exh. #30, p. 1-3). No formal probate proceedings were opened in Oregon, as only a limited probate department trust proceeding for a declaratory judgment, and an advisory opinion, was commenced.

The baseless pleading filed to commence Case No. CV10030498 falsely stated that the principal place of administration was still in Clackamas County, Oregon (dkt. 48, p. 20; Pltf's Exh. #30, p. 2:16-18), although plaintiff William transferred the principal place of

15

1  administration to California on July 8, 2009. (dkt. 48, p. 13-17; Pltf's Exh. #29).

2      The baseless pleading also falsely asserted that; (1) the late Irene E. Rupert had been the

3  Successor Trustee from October 12, 2008 until her death on March 12, 2010; (2) plaintiff

4  William was nominated to succeed Irene E. Rupert; and, (3) defendant Bond was entitled to an

5  immediate and unconditional distribution of her share immediately upon the death of Irene E.

6  Rupert. (dkt. 48, p. 19-21; Pltf's Exh. #30, p. 2:1). However, the terms of the trust were

7  attached to the pleading (dkt. 48, p. 22-34; Pltf's Exh. #30, p. 1-13), and they fail to provide for

8  any immediate and unconditional distribution to defendant Susan, or anyone else. Neither the

9  death of Irene E. Rupert, or any other event, triggered the immediate and unconditional right to

10  a distribution, for anyone, according to the terms of the trust.

11      In July of 2010, plaintiff William attempted to file a responsive pleading that included

12  an Answer, Affirmative Defenses and Counterclaims, and named defendants Downes and

13  Schulte and defendants Whitman and Cartwright as third party cross-defendants, however, on

14  August 23, 2010, the Clerk's Office rejected this pleading, and refused to process it unless it

15  was amended in matters that went to both form and content, and additional filing fees were

16  submitted. (dkt. 30, p. 45-46; Pltf's Exh. #12).

17      Also in late July of 2010, defendant Whitman mailed a Compact Disc ("CD") to plaintiff

18  William, onto which he had scanned 2,044 pages of financial records, bank statements, and

19  other matters of his choosing, and defendant Whitman asserted the CD contained evidence that

20  showed the disproportionate allocation of assets, 90% to the Irene E. Rupert Trust, but only

21  10% to the Samuel J. Rupert Trust, was how Samuel and Irene Rupert set up their affairs,

22  because all their assets were owned and held as Joint Tenants With Right of Survivorship

23  ("JTWROS"). (See, FAC, App. A, p. 7, RICO – Phase Three, Predicate Acts 15).

16

Plaintiff William started diligently reviewing the CD in late July, 2010, but did not finish this tedious task until early October, 2010.

In the meantime, with regards to *Rupert I*, after Irene E. Rupert died, and the Oregon litigations were commenced by defendant Susan, the ADR Mediation efforts fell apart, and no sessions were ever conducted. Accordingly, on September 9, 2010, Judge Fogel finally ruled on the Joint MTD which had been under submission since January 8, 2010, and the motion was granted. (See, FAC, ¶ 73). In the Order, Judge Fogel made it clear that he still understood all trust assets to be in Oregon and all trust administration activity to have taken place in Oregon, not in California. This Order (Deft's RJN, Exh. 3), appears to show that Judge Fogel ultimately agreed with the argument presented by defendant Zusman, at the hearing on January 8, 2010, when he argued that the "cease and desist" letters from defendant Downes, standing alone, without any legal instrumentalities from Oregon directed at plaintiff William, were not sufficient to create specific personal jurisdiction over the Oregon defendants, pursuant to *Yahoo!, Inc. v. La Lique Contre Le Racisme,* 433 F.3d 1199 (2006).

In early October, 2010, plaintiff William finished his tedious review of the CD that had 2,044 pages scanned onto it. Significantly, plaintiff William did not find support for the contention that all assets had been held as JTWROS, and found evidence to the contrary, as a $250,000 CD clearly was not opened and held in that manner. (dkt. 58, p. 85; Pltf's Exh. #49). Two bank accounts, containing less than $100,000.00, were opened as JTWROS, but nothing else.

Financial records were also included from Charles Schwab Institutional, and non-party co-conspirator Kenneth A. Dillon, that showed significant trust assets, in excess of $400,000.00, had been located and held in San Francisco, CA., contrary to what Judge Fogel and plaintiff

17

William were earlier led to believe.  (See, FAC, ¶ 74).

At a hearing on October 27, 2010, regarding the two Oregon litigations commenced by defendant Susan, defendant Downes testified as a witness for her, and defendant Susan and defendant Whitman also submitted manufactured evidence to the court, as their Petitioner's Exhibit #70, which has a forged Schedule A page (dkt. 48, p. 75; Pltf's Exh. #40, p. 13), that purports to show that Samuel J. Rupert only funded his trust with a single brokerage account, during his lifetime.  However, the brokerage account listed is with Charles Schwab Institutional, and it wasn't opened until February 26, 2009 (dkt. 48, p. 58-59; Pltf's Exh. #38), months after his death on October 12, 2008,  so the Schedule A page is an obvious forgery.

Recently, defendant Whitman has admitted the forgery was by his client, defendant Susan. (dkt. 58, p. 77-80; Pltf's Exh. #47, p. 2).  However, he has offered no explanation for why his client neglected to date her entry on Schedule A, and put her initials down next to the entry; nor why he neglected to inform Senior Judge Welch, or Judge Maurer, that their Petitioner's Exhibit #70 had been altered by defendant Bond, so it was not evidence of how Samuel J. Rupert had funded his trust during his lifetime.

Within Oregon Case No. CV10030498, plaintiff William ultimately timely filed a responsive pleading, on April 4, 2011, which was his Answer & Affirmative Defenses. (dkt. 43, p. 11-24; Pltf's Exh. #16).   Among the Affirmative Defenses, it was asserted that defendant Susan had "unclean hands" as a trustee *de son tort*.  (dkt. 43, p. 18-21; Pltf's Exh. #16, p. 8-11).

On April 28, 2011, Senior Judge Welch mistakenly signed a General Judgment, in Case No. CV10030498 (dkt. 48, p. 42-43; Pltf's Exh. #32), which defendant Whitman took the liberty to prepare and submit to the court, along with other orders he had been instructed to submit after a hearing on March 23, 2011 (although no hearings had been conducted, and no

18

judgment had been rendered by Senior Judge Welch, after the case finally became at-issue, on April 4, 2011). (See, FAC, ¶ 81). Also, the "unclean hands" issue was not determined.

Plaintiff William timely filed a Notice of Appeal on May 5, 2011, from the Oregon General Judgment, which was assigned Oregon Court of Appeals No. A148529, and is still in the briefing stage (following a 21 month delay having the transcripts prepared and settled).

On November 4, 2011, defendant Michelle Johansson ("Johansson") self-issued Oregon Writs of Garnishment, which are only legally effective to reach assets held by a financial institution within the State of Oregon, pursuant to ORS 18.655(1)(e), and fraudulently foisted them off on financial institutions, and brokerage companies, to reach assets held in plaintiff William's California checking account (See, FAC, ¶¶ 86-87), and in a Nebraska brokerage account which was controlled by plaintiff William, in his capacity as Successor Trustee of the Samuel J. Rupert Trust (See, FAC, ¶ 88).

The instant civil RICO action, *Rupert II,* was filed on October 12, 2012, within the 4 year statute of limitations, so as to include the initial fraud and deceit by defendant Susan, on October 13, 2008, when she told plaintiff William his services as the administrator would not be needed, because she had more recent estate planning documents that trumped plaintiff William's from January 26, 2004. (See, FAC, ¶¶ 33-36).

Plaintiff William filed his FAC on October 26, 2012, and all defendants have appeared.

All defendants have responded with MTD's, under either FRCP 12(b)(2) or FRCP 12(b)(6). The common theme in all of these potentially dispositive motions is that they seek to cast *Rupert I* and *Rupert II,* as identical actions, such that *Rupert II* is barred by *res judicata,* and/or the Litigation Privilege.

Now, defendant Downes also suggests that he is being unreasonably harassed by

19

plaintiff William, against whom a federal pre-filing order should be entered by the

Court. In response to defendant Downes *ad hominem* attacks upon plaintiff William, he will

briefly discuss a few aspects of his 1991 entry upon the California Vexatious Litigant List.

### B. Response To Defendants' "Plaintiff is an Experienced Litigant With a Long History of Abusing the Judicial Process" Section

Defendant Downes has misconstrued the FAC, because plaintiff William does not admit

he has professional legal training. Rather, the FAC states that plaintiff William is a "retired

carpenter and independent paralegal". (See, FAC, ¶ 4). The term "retired" applies to both

capacities, and was meant to apply to his former status as a self-taught "Independent Paralegal",

during the 1980's. California no longer allows "Independent Paralegals" to exist.

Defendant Downes has also made an incorrect assumption, in concluding that plaintiff

William "has filed so many unsuccessful complaints in California state courts that he has been

on the Vexatious Litigant List in this State since 1991." In fact, plaintiff William made the list

under the completely subjective provisions of CCP § 391(b)(3), that have nothing to do with a

litigant's success rate, and which provides a vexatious litigant can be a person who:

> "In any litigation while acting in propria persona, repeatedly filed unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay."

Moreover, a copy of the 1991 Pre-Filing Order is before the Court, (Plaintiff's Exh.

#58, filed concurrently), and it shows no findings were made, or explanation given, by the trial

court, as to why the decision was made to label plaintiff William a vexatious litigant under CCP

§ 391(b)(3).

Additionally, until recently there has been no way for a person to get their name

removed from the Vexatious Litigant List. Currently, however, CCP § 391.8 provides a

20

procedure that can be utilized to be removed from the Vexatious Litigant List, and plaintiff

William plans to make such a motion in the near future, because the only state court action he

has filed since 1991 was a single small claims court action in 2007, for which he sought and

obtained permission from the Presiding Judge of the Santa Cruz County Superior Court.

Accordingly, plaintiff William disputes defendant Downes' conclusory statement that he

has "a long history of abusing the judicial process."

## IV. LEGAL ARGUMENT

**A. Plaintiff Incorporates by Reference: (1) His Previously Filed Memorandum (dkt. 29), Declaration & Exhibits #1-#14 (dkt. 30), In Opposition to the FRCP 12(b)(2) MTD by Defendant Downes and Defendant Schulte, Anderson, Downes, Aronson & Bittner, P.C.; (2) His Previously Filed Memorandum (dkt. 42), Declaration & Exhibits #15-#27 (dkt. 43), in Opposition to the FRCP 12(b)(2) MTD by Defendant Susan Bond and Defendant James Rupert; (3) His Previously Filed Memorandum (dkt. 46), Declaration & Exhibits #28-#40 (dkt. 48), In Opposition to the FRCP 12(b)(2) MTD by Defendant Whitman, Defendant Johansson and Defendant Cartwright Whitman Baer P.C.; and (4) His Previously Filed Memorandum (dkt. 56), Declaration & Exhibits #41-#56 (dkt. 58), Table of Exhibits #1-#56 (dkt. 57), and Request for Judicial Notice (dkt. 59), in Opposition to the FRCP 12(b)(6) MTD by Defendant Zusman and Defendant Markum Zusman & Compton, LLC**

For ease of the court, rather than repeating the arguments that have already been made in

opposition to the pending MTD's that are currently before the Court, plaintiff William hereby

incorporates by this reference: (1) his previously filed Memorandum (dkt. 29), Declaration &

Exhibits #1-#14 (dkt. 30), in opposition to the FRCP 12(b)(2) MTD by defendant Downes and

defendant Schulte, Anderson, Downes, Aronson & Bittner, P.C.; (2) his previously filed

Memorandum (dkt. 42), Declaration & Exhibits #15-#27 (dkt. 43), in opposition to the FRCP

12(b)(2) MTD by defendant Susan Bond and defendant James Rupert; (3) his previously filed

Memorandum (dkt. 46), Declaration & Exhibits #28-#40 (dkt. 48), in opposition to the FRCP

21

12(b)(2) MTD by defendant Whitman, defendant Johansson and defendant Cartwright Whitman

Baer P.C.; and (4) his previously filed Memorandum (dkt. 56), Declaration & Exhibits #41-#56

(dkt. 58), Table of Exhibits #1-#56 (dkt. 57), and Request for Judicial Notice (dkt. 59), in

opposition to the FRCP 12(b)(6) MTD by defendant Zusman and defendant Markum Zusman &

Compton, LLC, as though fully set forth at length herein.

> **B.** **The Motion for Sanctions Under Rule 11 is Frivolous, Because it Overlooks the Colloquy Between Judge Jeremy Fogel and Defendant Edward S. Zusman ("Zusman"), on January 8, 2010, in *Rupert I*, , And The Reporter's Transcript Of This Discussion Was Brought to the Attention Of Defendants Downes And Schulte Before The Instant Rule 11 Motion Was Filed, in Plaintiff's Letter Dated February 4, 2013**

In response to the draft Motion for Sanctions Under Rule 11 which was served upon the

plaintiff, he drafted a letter, dated February 4, 2013, addressed to Kate Kimberlin of Long &

Levit, LLP (and copied to Jessica MacGregor and counsel for all of the other defendants

herein)[15], which was mailed by Priority Mail on February 5, 2013, and delivered on February 7,

2013 to the Long & Levit, LLP law firm.

In this letter, plaintiff directed the defendants herein to the Reporter's Transcript of the

January 8, 2010 hearing before Judge Fogel, in *Rupert I*, and the colloquy that took place

between Judge Fogel and defendant Zusman, regarding the "effects" test which is set forth in

the case of *Yahoo!, Inc. v. La Lique Contre Le Racisme*, 433 F.3d 1199 (2006). (dkt. 58, p.

23:2-24:10; Pltf's Exh. #41, p. 12:2-13:10).

As explained in the February 4, 2013 letter (Pltf's Exh. #57), both Judge Fogel and

---

[15] A true and correct copy of this letter is attached to the Declaration of William Rupert in Opposition to Motion for Sanctions Under Rule 11, as Plaintiff's Exhibit #57. Only two exhibits are attached to the Declaration, they are numbered as Exh. #57 & Exh. #58 for ease of the Court, and parties, to avoid confusion at the hearing on April 4, 2013.

Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 11 Motion For Sanctions, By Defendants Downes And Schulte [Case No. 5:12-cv-05292 LHK (HRL)]

defendant Zusman were in agreement that if the Oregon defendants in *Rupert I* "got a court order in Oregon that precluded Mr. Rupert from exercising any of the rights he claims under this 2004 trust agreement," the case of *Yahoo!, Inc. v. La Lique Contre Le Racisme*, 433 F.3d 1199 (2006) would be directly on-point, and specific personal jurisdiction over the Oregon defendants would exist in this Northern District of California, for a tortious interference action. (dkt. 58, p. 23:2-24:10; Pltf's Exh. #41, p. 12:2-13:10).

> **C. Among The New Jurisdictional Facts Alleged in the Instant Case ("*Rupert II*"), the FAC Alleges Orders and Judgments were Obtained in Oregon, during 2011, Using Manufactured Evidence to Perpetrate A Fraud Upon The Oregon Courts, and Thereafter Used to Interfere with Plaintiff's Ability to Administer the Samuel J. Rupert Trust in California, Such That Specific Personal Jurisdiction Exists, Under The "Effects" Test Set Forth in *Yahoo!, Inc. v. La Lique Contre Le Racisme*, 433 F.3d 1199 (2006), As Discussed By Judge Fogel And Defendant Zusman on January 8, 2010, at the Hearing in *Rupert I*.**

As previously explained above, legal instrumentalities were obtained by the Oregon defendants during 2011, from the Oregon courts, which were used against plaintiff William, in California, to his detriment (See, FAC, ¶¶ 86-87), and these new circumstances clearly create specific personal jurisdiction over the Oregon defendants, pursuant to *Yahoo!, Inc. v. La Lique Contre Le Racisme*, 433 F.3d 1199 (2006).

Moreover, defendant Whitman produced documentation, to support his successful post judgment requests for attorney fees, that shows defendant Downes was an integral part of defendant Susan's legal team, throughout the litigation of the baseless Oregon case against plaintiff William, regarding the Samuel J. Rupert Trust. (dkt. 30, p. 55; Pltf's Exh. #14, p. 1).

> **D. Because the MTD Filed By Defendant Downes and Defendant Schulte Lacks Merit, And Must Be Denied, Their Derivative Motion For Sanctions Under Rule 11 Also Lacks Merit, And Must Be Denied**

23

The instant Motion For Sanctions Under Rule 11 presupposes that defendant Downes' MTD under FRCP 12(b)(2) will be granted by the Court. Either defendant Downes was supremely confident, or he did not want to pass up the opportunity to mount an *ad hominem* attack upon plaintiff William, by misrepresenting the meaning and effect of his being place on the California Vexatious Litigant List in 1991, based upon litigation activities in the 1980's.

Regardless of defendant Downes's motivation, the instant Motion For Sanctions Under Rule 11 cannot be granted unless the Court first grants defendant Downes's MTD under FRCP 12(b)(2). Resultantly, because defendant Downes's MTD under FRCP 12(b)(2) lacks merit and must be denied, this derivative Motion For Sanctions Under Rule 11 must also be denied.

> **E.  Because the FRCP 12(b)(6) MTD by Defendant Zusman and Defendant Markun Zusman & Compton, LLP ("MZC") Does Not Dispute This District Has General Jurisdiction Over Them, And Plaintiff Has Positively Averred That No Other District Would Have Jurisdiction Over All The RICO Defendants and Co-Conspirators - Venue And Jurisdiction Is Also Fitting And Proper, In This District, Under 18 U.S.C. § 1965(a)(b)**

Additionally, the responsive MTD under FRCP 12(b)(6) which was filed by defendant Zusman and defendant MZC on January 7, 2013 (dkt. 50), does not contest that this Court has general personal jurisdiction over them. This fact lends credence to the argument that federal question venue and jurisdiction under 18 U.S.C. § 1965(a)(b) is also fitting and proper in this District, based upon defendant Downes contacts with the United States.

The Motion For Sanctions Under Rule 11 attempts to mislead the Court, contrary to FRCP 11 itself, and Cal. Bus. & Professions Code § 6068(d), by falsely stating that:

> "Here, Plaintiff has alleged only that **he does not believe** defendant Zusman is subject to personal jurisdiction in Oregon. Plaintiff offers no evidence or facts to support this bald assertion."          (bold emphasis added)
> (See, Deft. Downes' Mem. of Pt's & Auth's, 10:10-12).

1    In fact, the FAC alleges that defendant Zusman is licensed to practice law in the State of

2    California, and that he conducts his business in this District, such that there is jurisdiction over

3    him in this District. (See, FAC, ¶ 8). This creates the reasonable inference that he would not

4    also be subject to personal jurisdiction in the State of Oregon.

5    Moreover, in plaintiff William's opposition memorandum to defendant Downes's MTD

6    under FRCP 12(b)(2), filed December 6, 2012, he affirmatively states the following:

7

8    "In the instant case, however, plaintiff William can meet the "interests of justice"
     test because the RICO Defendants consist of 4 Oregon residents and 1 California
     resident (defendant Edward S. Zusman), who transacts his affairs in this District (as an

9    attorney at law who is exclusively licensed by the State of California). Because any
     District in Oregon would lack personal jurisdiction over defendant Zusman, there is no

10   District, other than the Northern District of California, which would have personal
     jurisdiction over all of the named RICO Defendants and alleged co-conspirators."

11   (See dkt. 29, Plaintiff's Opp. Memorandum, p. 12:19-13:4)

12   Accordingly, jurisdiction is proper under 18 U.S.C. § 1965(a)(b), pursuant to

13   *Butcher's Union Local No. 498 v. SDC Investment, Inc.,* 788 F.2d 535, 539 (9th Cir. 1986) and

14   *Huntair, Inc. v. Gladstone,* 774 F.Supp.2d 1035, 1039 (ND California 2011), and this is

15   another reason why the Motion For Sanctions Under Rule 11 lacks merit and must be denied.

16

17   **V.    CONCLUSION**

18   Based upon all of the foregoing matters and arguments presented above, as supported by

19   the Reporter's Transcript of the January 8, 2010 hearing before Judge Fogel in *Rupert I* (dkt. 58,

20   p. 12-37; Pltf's Exh. #41, p. 1-26), the Declaration of William Rupert, and plaintiff's Request

21   for Judicial Notice, the Motion For Sanctions Under Rule 11 must be denied.

22   Dated: February 20, 2013

23                                    By:    *William Rupert*

24                                           William Rupert
                                             Plaintiff
25                                           Pro Se

                                             25
     Plaintiff's Memorandum Of Points And Authorities In Opposition To FRCP 11 Motion For
     Sanctions, By Defendants Downes And Schulte  [Case No. 5:12-cv-05292 LHK (HRL)]