WILLIAM RUPERT
P.O. Box 66403
Scotts Valley, CA 95067-6403
Phone: (831) 336-9520
Fax: (831) 336-9528
Email: emfwtr@comcast.net

Plaintiff
Pro Se

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM RUPERT,<br><br>                         Plaintiff,<br><br>        vs.<br><br>SUSAN BOND; GILE R. DOWNES; EDWARD S. ZUSMAN; MATTHEW WHITMAN; MICHELLE JOHANSSON; JAMES RUPERT; SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER, P.C., an Oregon Professional Corporation; MARKUN ZUSMAN & COMPTON, LLP, a Limited Liability Partnership Headquartered in California; CARTWRIGHT WHITMAN BAER PC, an Oregon Professional Corporation; and DOES 1 to 20,<br><br>                         Defendants. | Case No.: 5:12-cv-05292 LHK (HRL)<br><br>**DECLARATION OF WILLIAM RUPERT IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED & SUPPLEMENTAL COMPLAINT**<br><br>Date: November 21, 2013<br>Time: 1:30 p.m.<br>Dept: Courtroom 8, 4th Floor<br>Judge: Hon. Lucy H. Koh<br><br>Action Filed: October 12, 2012 |

I, William Rupert, hereby declare as follows:

1.      I am a party, the plaintiff, in the above entitled action.  This declaration is submitted in support of Plaintiff's FRCP 15(a)(2),(d) Motion For Leave To File [Proposed] Second Amended & Supplemental Complaint.  I have personal knowledge of the facts stated in

1

this declaration and, if called to testify as a witness, could and would competently testify to them.

      2.     Exhibit 1, attached hereto, is a true and correct copy of the [Proposed] Second Amended & Supplemental Complaint which I seek permission to file and serve.

      3.     Exhibit 2, attached hereto, is a true and correct copy of pages 266 and 267, of the Reporter's Transcript of Susan Bond's cross-examination testimony, at the hearing on November 24, 2010, in Clackamas County, Oregon Circuit Court Case No. CV10030497 (as prepared for use in Oregon Court of Appeals No. A148714, which is still pending).

      4.     Exhibit 3, attached hereto, is a true and correct copy of pages 109 and 110, of the Reporter's Transcript of Gile R. Downes' cross-examination testimony, at the hearing on October 27, 2010, in Clackamas County, Oregon Circuit Court Case No. CV10030497 (as prepared for use in Oregon Court of Appeals No. A148714, which is still pending).

      5.     Exhibit 4, attached hereto, is a true and correct copy of pages 6-8 of the terms of the Samuel Rupert Trust, u/a/d November 1, 1995, wherein the provisions of Section 11(2) and Section 12(2) are set forth.

      I declare under penalty of perjury, under the laws of the United States and California, that the foregoing is true and correct.

      Executed this 11th Day of June, 2013, at Ben Lomond, California.


                                   __/s/_____

                                        William Rupert

Declaration of William Rupert In Support Of Motion For Leave To File [Proposed]
Second Amended & Supplemental Complaint [Case No. 5:12-cv-05292 LHK (HRL)]

# DECLARATION OF WILLIAM RUPERT

# EXHIBIT 1

WILLIAM RUPERT
P.O. Box 66403
Scotts Valley, CA 95067-6403
Phone:   (831) 336-9520
Fax:       (831) 336-9528
Email:   emfwtr@comcast.net

Plaintiff
Pro Se

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM RUPERT, | **Case No.: 5:12-cv-05292 LHK (HRL)** |
| Plaintiff, | _____ |
| vs. | **[PROPOSED] SECOND AMENDED AND SUPPLEMENTAL COMPLAINT** |
| SUSAN BOND; GILE R. DOWNES; EDWARD S. ZUSMAN;  KEVIN K. ENG; JESSICA R. MACGREGOR; KATE G. KIMBERLIN; MATTHEW WHITMAN; MICHELLE JOHANSSON; JAMES RUPERT; SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER, P.C., an Oregon Professional Corporation; MARKUN ZUSMAN & COMPTON, LLP, a Limited Liability Partnership Headquartered in California; LONG & LEVIT, LLP, a Limited Liability Partnership Headquartered in California; CARTWRIGHT WHITMAN BAER PC, an Oregon Professional Corporation; and DOES 1 to 20, | |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

I.     Jurisdiction   .     .     .     .     .     .     .     .     1

II.    Venue .     .     .     .     .     .     .     .     2

III.   Intradistrict Assignment     .     .     .     .     .     .     2

IV.   Parties and Relevant Non-Parties     .     .     .     .     .     2

      A.     Plaintiff     .     .     .     .     .     .     2

      B.     RICO Defendants     .     .     .     .     .     3

      C.     Remaining Defendants     .     .     .     .     .     7

      D.     Non-Party Co-Conspirators, Or Aiders And Abetters     .     10

V.     Introduction and Prefatory Statement Regarding Gravamen Of Action.     19

VI.    Statement of Facts     .     .     .     .     .     .     26

VII.   Federal Question Claims For Relief   .     .     .     .     .     65

      A.     1st Claim - (Violations of RICO, 18 U.S.C. § 1962(c))     .     65

           Stage 1 -     The Trustee *De Son Tort* RICO Enterprise
                     (wire fraud, mail fraud, bank fraud, interstate
                     transportation of stolen property, breach of trust)
                     (starting Oct. 13, 2008, and continuing)     .     66

           Stage 2 -     The Trustee *De Son Tort* RICO Enterprise &
                     The Associated *Schulte* RICO Enterprise
                     (wire fraud, mail fraud, extortion, conspiracy)
                     (starting May 20, 2009, and continuing)     .     71

           Stage 3 -     The Trustee *De Son Tort* RICO Enterprise &
                     The Associated *Schulte* RICO Enterprise &
                     The Associated *Markun* RICO Enterprise &
                     The Associated *Long & Levit* RICO Enterprise
                     (wire fraud, mail fraud, obstruction of justice)
                     (starting Nov. 4, 2009, and continuing)     .     74

           Stage 4 -     The Trustee *De Son Tort* RICO Enterprise &
                     The Associated *Schulte* RICO Enterprise &
                     The Associated *Cartwright* RICO Enterprise
                     (wire fraud, mail fraud, abuse of process)
                     (starting March 15, 2010, and continuing)     .     76

           Stage 5 -     The Trustee *De Son Tort* RICO Enterprise &
                     The Associated *Cartwright* RICO Enterprise
                     (wire fraud, mail fraud, abuse of process)
                     (starting May 19, 2011, and continuing)     .     78

           Stage 6 -     The Trustee *De Son Tort* RICO Enterprise &
                     The Associated *Schulte* RICO Enterprise &
                     The Associated *Long & Levit* RICO Enterprise &
                     The Associated *Cartwright* RICO Enterprise
                     (wire fraud, mail fraud, obstruction of justice)
                     (starting Nov. 21, 2012, and continuing)     .     79

           The RICO Patterns and Predicate Acts.     .     .     .     82

           The Continuity of the Various RICO Enterprises.     .     84

           Damage To Plaintiff's Property And Economic Interests     .     86

**TABLE OF CONTENTS (Continued)**

B.      2nd Claim - (Conspiracy to Violate RICO, 18 U.S.C. § 1962(d))      .      86
C.      3rd  Claim - (Conspiracy to Violate Civil Rights, 42 U.S.C. § 1985) .      95
D.      4th  Claim - (Declaratory Judgment, 28 U.S.C. §§ 2201, 2202)      .      97

VIII.   Pendent State Law Claims For Relief.      .      .      .      .      .      98

A.      5th Claim - (Misappropriation/Conversion of Trust Assets)  .      .      98
B.      6th Claim - (Abuse of Process)      .      .      .      .      .      100
C.      7th Claim - (Intentional Interference With Expected Inheritance)  .      103
D.      8th Claim - (Violations of The Oregon Racketeering Influenced
                And Corrupt Organizations Act) ("ORICO")      .      .      104
E.      9th Claim - (Conspiracy, to misappropriate, to abuse, to interfere,
                And to Violate ORICO) .      .      .      .      .      106

IX.     Prayer For Relief      .      .      .      .      .      .      .      .      107

Appendix A – RICO Predicate Acts Chart
            (Stages 1-6; 36 Predicate Acts Occasions;
            87 Individual Predicate Acts)

Appendix B – ORICO Predicate Acts Chart
            (Stages 1-6; 11 Predicate Acts Occasions;
            28 Individual Predicate Acts)

Appendix C –  RICO Enterprise Stages 1-6 &
            RICO Defendants  & Conspirators Chart

Plaintiff William Rupert ("William") for his Second Amended & Supplemental Complaint, alleges as follows:

## I.   Jurisdiction.

1.      This Court has subject matter jurisdiction over plaintiff  William's claims under both 28 U.S.C. §§ 1331 (federal question), and 1332 (diversity).  The federal question claims arise under 18 U.S.C. §§ 1964(c)(d) & 1965(b)[1], of the Racketeering Influenced and Corrupt Organizations Act (RICO), and under the conspiracy provisions of The Civil Rights Act of 1871, 42 U.S.C. § 1985.  Declaratory and/or injunctive relief is also sought as a potential remedy from the Court, under the provisions of 28 U.S.C. §§ 2201, and 2202. Plaintiff's William' state law claims (misappropriation/conversion of trust assets, abuse of process, intentional interference with expected inheritance (IIEI), violations of ORICO, and conspiracy), arise out of the same case or controversy as his federal law claims, as all claims in this action arise out of a common nucleus of operative facts, concerning the administration of estate and trust assets of the late Samuel and Irene Rupert, which were valued at nearly $900,000 in 2009.   Samuel and Irene Rupert died in Oregon in 2008 and 2010, but neither of them had their estates probated in the State of Oregon, or in any other state.  No state proceedings have been conducted where any asset inventories, or financial statements, or accountings were required, or submitted to a court, or approved by a court.  No state court has assumed and exercised *in rem* jurisdiction over any estate or trust assets.   Accordingly, the probate exception to federal jurisdiction is inapplicable in this case.  Thus, this Court also has supplemental jurisdiction over plaintiff William's state law claims under 28 U.S.C. § 1367.

---

[1]  There is no other district that would have personal jurisdiction over all the RICO Defendants, and co-conspirators, who reside in the States of California (4 RICO Defendants), Oregon (3 RICO Defendants), and Michigan (1 RICO Conspiracy Defendant).

## II.      Venue.

2.       Venue is proper in this District under 28 U.S.C. § 1391(b)(2), and under 18

U.S.C. § 1965(a), as most of the defendants reside or do business in this Northern District of

California, a substantial amount of the acts and omissions giving rise to this lawsuit took place

in the Northern District of California, and actions commenced in other districts and States

caused detrimental effects upon the plaintiff's vested and prospective property and economic

interests, which were felt within this Northern District of California.

## III.      Intradistrict Assignment.

3.       This lawsuit should be assigned to the San Jose Division of this Court because a

substantial part of the events or omissions which give rise to this lawsuit occurred in Santa Cruz

County, where plaintiff William Rupert was targeted, and suffered his damages, with regards to

his remainder beneficiary, and/or trusteeship, interests, in and under the Samuel J. Rupert Trust,

u/a/d 11/01/95, as Amended 01/26/04, and in and under the Irene E. Rupert Trust, u/a/d

11/01/95, as Amended 01/26/04.

## IV.      Parties and Relevant Non-Parties

### A.      Plaintiff

4.       Plaintiff  **William Rupert** ("William"), is a resident of the town of Ben Lomond,

in Santa Cruz County, California and is a 65 year old, semi-retired carpenter, and a former

independent paralegal, who is the second born, and middle child, of Samuel J. Rupert, who died

on October 12, 2008, and Irene E. Rupert, who died on March 12, 2010.  Plaintiff  William is

also one of the three Remainder Beneficiaries, of the Samuel J. Rupert Trust u/a/d November 1,

1995, as Amended January 26, 2004, in Michigan.   Plaintiff  William was also one of the three

Remainder Beneficiaries, of the Irene E. Rupert Trust u/a/d November 1, 1995, as Amended

January 26, 2004, in Michigan.  Samuel and Irene Rupert's original Michigan estate plans also included mirror image pour-over Wills, and Codicils executed on January 26, 2004.  These Michigan estate plans were the operative estate plans when Samuel Rupert died, and when the instant sibling rivalry family feud erupted, in April and May of 2009.  Both Samuel and Irene Rupert amended their Michigan estate plans on January 26, 2004, to state they wanted William to be their sole successor trustee, and sole personal representative, with defendant Susan their second choice, and defendant James their third choice (when it became time for one of the adult children to handle their financial affairs).

## B.    RICO Defendants

5.    The defendants listed in paragraphs 6 through 13 are the errant trustee *de son tort,* and the 7 lawyers (3 from Oregon and 4 from California), who have subsequently participated in fraudulent schemes to cover up and conceal the breaches of trust, the failure to account, and the unjust enrichment of the errant trustee *de son tort.*  These individuals have conspired to engage in a pattern of racketeering activity, have each committed numerous criminal acts as part of their scheme to defraud, extort, and damage plaintiff William, and have each participated in the operation or management of the overlapping criminal RICO Enterprises described herein.  These 8 individual defendants shall be referred to herein, collectively, as the "**RICO Defendants**".

6.    Defendant **Susan Bond** ("Susan"), is a resident of Portland, Oregon, and a 69 year old designer/renovator/homemaker, who is the first born child of the late Samuel J. Rupert and the late Irene E. Rupert.  Liability is sought against Susan based upon her wrongful intermeddling as a trustee *de son tort,* for both the Samuel Rupert Trust and the Irene Rupert Trust, for at least the first 7 months after the death of Samuel Rupert on 10/12/08, and

subsequently (and her subsequent failure to account, surrender all trust property, and make full restitution).   Defendant Susan is also the current Successor Trustee, and one of the three Remainder Beneficiaries, of the Irene E. Rupert Trust u/a/d June 9, 2009, as Amended July 23, 2009.  Additionally, plaintiff Susan is also the current Personal Representative of the Estate of Irene E. Rupert, Deceased, under the Will of Irene E. Rupert, u/a/d June 9, 2009.  Defendant Susan is additionally one of the three Remainder Beneficiaries of the Samuel J. Rupert (Family) Trust, u/a/d November 1, 1995, as Amended January 26, 2004.  Exercise of personal jurisdiction over defendant Susan is reasonable and proper in this District because defendant Susan's actions had significant effects in California, and because some of the wrongful actions that damaged plaintiff took place within the State of California.

7.     Defendant **Gile R. Downes** ("Downes"), is a resident of Portland, Oregon and an attorney at law licensed to practice in the State of Oregon.  He is a well-respected attorney, and considered an expert in estate planning matters.  He allegedly represented the late Irene E. Rupert, beginning in May of 2009, and prepared estate planning documents for her, in multiple conflicting capacities, such as the Settlor of her own trust, and also, simultaneously, in the conflicting capacity as the purported Successor Trustee of the Samuel J. Rupert Trust, u/a/d November 1, 1995, as Amended January 26, 2004.  However, this purported representation was a "sham".  The late Irene Rupert never was the Successor Trustee of the Samuel J. Rupert Trust, as she allowed defendant Susan to function in that capacity (in breach of trust), for at least 7 months, and the late Irene Rupert never accepted her nomination, within a reasonable time, or ever, by either notice or performance.  Downes also gave legal advice to defendant Susan, conspired with her, and aided and abetted her fraudulent breach of trust schemes to injure the plaintiff's economic relations and property interests (vested and prospective inheritance rights).

Exercise of personal jurisdiction over defendant Downes is reasonable and proper in this District because defendant Downes's actions targeted William in California, had significant effects in California, and because some of the wrongful actions that damaged plaintiff took place within the State of California.

8.      Defendant **Edward S. Zusman** ("Zusman"), is a resident of California and an attorney-at-law licensed to practice in California (and only in California). Defendant Zusman represented both defendant Susan and the late Irene E. Rupert, in the federal tort diversity action that plaintiff William commenced on June 20, 2009, as USDC NDCA Case No.: 5:09-cv-02758 JF (RS). Exercise of personal jurisdiction over defendant Zusman is reasonable and proper in this District because defendant Zusman resides in, and/or conducts his business affairs in, this Northern District of California, where the damaging effects of his fraudulent and criminal actions were felt.

8.      Defendant **Kevin K. Eng** ("Eng"), is a resident of California and an attorney-at-law licensed to practice in California. Defendant Eng, in collaboration with defendant Zusman, represented both defendant Susan and the late Irene E. Rupert, in the federal tort diversity action that plaintiff William commenced on June 20, 2009, as USDC NDCA Case No.: 5:09-cv-02758 JF (RS). Exercise of personal jurisdiction over defendant Eng is reasonable and proper in this District because defendant Eng resides in, and/or conducts his business affairs in, this Northern District of California, where the damaging effects of his fraudulent and criminal actions were felt.

10.     Defendant **Jessica R. MacGregor** ("MacGregor"), is a resident of California and an attorney-at-law licensed to practice in California (and only in California). Defendant MacGregor represented both defendant Downes and defendant Schulte, in the federal tort

diversity action that plaintiff William commenced on June 20, 2009, as USDC NDCA Case No.: 5:09-cv-02758 JF (RS).  Defendant MacGregor also is representing defendant Downes and defendant Schulte in the instant civil RICO action.  Exercise of personal jurisdiction over defendant MacGregor is reasonable and proper in this District because defendant MacGregor resides in, and/or conducts her business affairs in, this Northern District of California, where the damaging effects of her fraudulent and criminal actions were felt.

11.     Defendant **Kate G. Kimberlin** ("Kimberlin"), is a resident of California and an attorney-at-law licensed to practice in California (and only in California).  Defendant Kimberlin is one of the attorneys of record who is representing defendant Downes and defendant Schulte in the instant civil RICO action.  Exercise of personal jurisdiction over defendant MacGregor is reasonable and proper in this District because defendant Kimberlin resides in, and/or conducts her business affairs in, this Northern District of California, where the damaging effects of her fraudulent and criminal actions were felt.

12.     Defendant **Matthew Whitman** ("Whitman"), is a resident of Oregon and an attorney at law licensed to practice in the State of Oregon.  He is also a well-respected attorney, and considered an expert in probate litigation involving trusts and estates.  He represented defendant Susan, beginning in February of 2010, in her capacities as one of the three remainder beneficiaries, and the successor trustee, of the Irene E. Rupert Trust, u/a/d July 23, 2009, and as one of the three Remainder Beneficiaries of the Samuel J. Rupert (Family) Trust, u/a/d November 1, 1995, as Amended January 26, 2004.  Exercise of personal jurisdiction over defendant Whitman is reasonable and proper in this District because defendant Whitman's actions had significant effects in California, where William was targeted for harassment and unjustified economic harm, and because some of the wrongful actions that

damaged plaintiff took place within the State of California.

13.     Defendant **Michelle Johansson** ("Johansson"), is a resident of Oregon and an attorney at law licensed to practice in the State of Oregon _and_ in the State of California.  She also participated in the representation of defendant Susan, along with defendant Whitman, in the state court actions for declaratory judgments that were commenced in Oregon on March 15, 2010.  Defendant Johansson was responsible for wrongful collection activities that took place within the State of California, without compliance with the provisions of the California Sister-State Money Judgment Act.  Exercise of personal jurisdiction over defendant Johansson is reasonable and proper in this District because defendant Johansson's actions had significant effects in California, where William was targeted for harassment and unjustified economic harm, and because some of the wrongful actions that damaged plaintiff took place within the State of California.  As part of this targeting, defendant Johansson purposefully availed herself of the privileges of doing business in California, on May 27, 2011, by contracting with Eunice Attorney Services, a professional process serving company located in Santa Cruz, CA., who belongs to NAPPS (National Association of Professional Process Servers), to have Harmony Kelley personally serve William at his residence in Ben Lomond, CA., in his capacity as the Successor Trustee of the Samuel Rupert Trust, with a baseless Oregon Writ of Garnishment, dated May 19, 2011, which has no extra-territorial effect, within the State of California.

### C.     Remaining Defendants

14.     Defendant **James Rupert** ("James"), is a current resident of Lake Ann, Michigan, who is 59 years old and is/was an electrician by trade, and the youngest child of the late Samuel and Irene Rupert.  He is one of the three Remainder Beneficiaries of the Samuel J. Rupert (Family) Trust, u/a/d November 1, 1995, as Amended January 26, 2004.  Additionally,

he is one of the Remainder Beneficiaries of the Irene E. Rupert Trust, u/a/d/ June 9, 2009, as Amended July 23, 2009. Throughout all phases of the overlapping RICO schemes set forth herein, defendant James has conspired in, been supportive of, and aided and abetted, the efforts to defraud, extort, disinherit, and damage plaintiff William. His conspiratorial actions and support has resulted in his unjust enrichment, along with the other RICO Defendants (when they threw William under the disinheritance bus, and ran him over, causing William's civil death – resulting in his loss of standing to complain about Susan's overfunding of the Irene Rupert Trust, and a $300,000 pool of money to split up, between Susan, James, and the legions of attorneys they retained to aid and abet their breach of trust schemes). Exercise of personal jurisdiction over defendant James is reasonable and proper in this District because defendant James has been unjustly enriched through his receipt of misappropriated trust assets, which were located in California, and then misappropriated and converted by defendant Susan, as part of her wrongful intermeddling as a trustee *de son tort*. Also, defendant James was an active participant and conspirator in the underfunding of the Samuel Rupert Trust, and in the attempted extortion efforts, during June of 2009, that targeted William in California, where the damaging effects of the wrongful actions were felt.

15. Defendant **Schulte, Anderson, Downes, Aronson & Bittner, P.C.** ("Schulte"), is a professional corporation whose principal place of business is located in Portland, Oregon. Defendant Schulte employs defendant Downes, as a specialist in estate planning and estate settlement matters, and is liable for his fraudulent and illegal actions that damaged the plaintiff's property interests. Exercise of personal jurisdiction over defendant Schulte is reasonable and proper in this District because defendant Schulte's actions had significant effects in California, where plaintiff William was targeted for economic extortion, and because some of

the wrongful actions that damaged plaintiff took place within the State of California.

16.     Defendant **Markun Zusman & Compton, LLP** ("Markun"), is a Limited Liability Partnership which is Headquartered in San Francisco, California, where they employed defendant Zusman (as a partner), and defendant Kevin Eng (as a partner), at all times relevant to this action.   As such, Markun is liable for their fraudulent and illegal actions that damaged the plaintiff's property interests.  Exercise of personal jurisdiction over defendant Markun is reasonable and proper in this District because defendant Markun is located this Northern District of California, defendant Markun's actions had significant effects in California, and because some of the wrongful actions that damaged plaintiff took place within the State of California.

17.     Defendant **Long & Levit, LLP** ("Long & Levit"), is a Limited Liability Partnership which is Headquartered in San Francisco, California, where they employed defendant MacGregor (who is a partner) and defendant Kimberlin (who is an associate), at all times relevant to this action.   As such, Long & Levit is liable for their fraudulent and illegal actions that damaged the plaintiff's property interests.  Exercise of personal jurisdiction over defendant Long & Levit is reasonable and proper in this District because defendant Long & Levit is located this Northern District of California, defendant Long & Levit's actions had significant effects in California, and because some of the wrongful actions that damaged plaintiff took place within the State of California.

18.     Defendant **Cartwright Whitman Baer P.C.** ("Cartwright"), is a professional corporation whose principal place of business is located in Portland, Oregon.  Defendant Cartwright employs defendant Whitman, and defendant Johansson, in probate litigation, and enforcement of judgment matters.  As such, Cartwright is liable for their fraudulent and illegal

actions that damaged the plaintiff's property interests. Exercise of personal jurisdiction over defendant Cartwright is reasonable and proper in this District because defendant Cartwright's actions targeted plaintiff William in California, had significant effects which were felt in California, and because some of the wrongful actions that damaged plaintiff took place within the State of California. As part of this targeting, defendant Cartwright purposefully availed itself of the privilege of doing business in California, in May, 2011, by contracting with Eunice Attorney Services, a professional process server located in Santa Cruz, CA., who belongs to NAPPS (National Association of Professional Process Servers), to personally serve William at his residence in Ben Lomond, CA., in his capacity as the Successor Trustee of the Samuel Rupert Trust, with a baseless Oregon Writ of Garnishment, dated May 19, 2011, which has no extra-territorial effect, within the State of California.

### D.  Non-Party Co-Conspirators, Or Aiders And Abetters

19.  Certain other non-party individuals, business entities, and governmental entities played roles, direct or indirect, in the scheme to defraud, extort, and damage plaintiff William. Foremost among these individuals, business entities and governmental entities are the following:

a.  Ronald Eppler ("Eppler") of the Ann Arbor, Michigan brokerage business known as Beacon Investment Company, is a Financial Advisor who managed Samuel and Irene Rupert's separate trust and IRA accounts, while they resided in Michigan, and after they relocated to Oregon in 2006, until he was replaced in early 2009. The value of the assets which Eppler was managing shortly after Samuel J. Rupert died on October 12, 2008, as of October 31, 2008, was $441,729.71, consisting of the following specific investment and retirement accounts:

| Account Number | Type | Account Title | Account Value |
|---|---|---|---|
| XXXXX3643 | Investment | Samuel J. Rupert Trust | $ 93,419.80 |
| XXXXX3660 | Investment | Irene E. Rupert Trust | $107,840.34 |
| XXXXX3651 | Retirement | Samuel J. Rupert IRA | $214,461.76 |
| XXXXX2965 | Retirement | Irene E. Rupert IRA | $ 26,007.81 |
| | | | = $441,729.71 |

b.      This same Eppler issued a subsequent report, two months later, which showed

the value of the assets which Eppler was managing, as of December 31, 2008, was

$452,757.15, consisting of the following specific investment and retirement accounts:

| Account Number | Type | Account Title | Account Value |
|---|---|---|---|
| XXXXX3643 | Investment | Samuel J. Rupert Trust | $ 94,362.32 |
| XXXXX3660 | Investment | Irene E. Rupert Trust | $136,407.15 |
| XXXXX3651 | Retirement | Samuel J. Rupert IRA | $       19.64 |
| XXXXX2965 | Retirement | Irene E. Rupert IRA | $221,968.04 |
| | | | = $452,757.15 |

c.      Carol Dickman ("Dickman"), and Bill Barber ("Barber"), as agents, or

employees, or as an Officer of Umpqua Bank, an Oregon Financial Institution, where significant

assets belonging to Samuel and Irene Rupert were deposited, in a variety of accounts (savings,

checking, and certificates of deposit).  Carol Dickman is also an Oregon Notary Public and as

such, she notarized the void *ab initio* Amendment to Trust Agreement, dated January 11, 2009,

which purported to make defendant  Susan the sole trustee of the Irene E. Rupert Trust, u/a/d

November 1, 1995, in a document signed only by defendant Susan, which is not a legal or

enforceable trust amendment under Oregon Revised Statute ("ORS") § 130.505(5).  After

notarizing the void *ab initio* Amendment to Trust Agreement for defendant Susan, Dickman, as

an authorized agent or representative of Umpqua Bank, allowed defendant Susan full control

over all assets of Samuel and/or  Irene Rupert which were held by Umpqua Bank, and permitted

defendant Susan to freely transfer significant assets into, and between, Irene E. Rupert's

11
Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

accounts, that should have been transferred and funded into the Samuel J. Rupert Family Trust. Accounts that were opened and held as tenants-in-common were unreasonably regarded as if they had been opened and held as joint tenants with right of survivorship, due to the collaborations between defendant Susan, defendant Whitman, and Dickman.   Non-party co-conspirator Barber conspired with defendant Whitman to conceal and cover-up the mistakes by Dickman, after receiving letters from plaintiff William, that accused defendant Susan of bank fraud under 18 U.S.C. § 1344(2), for her fraudulent use of the illegal Amendment to Trust Agreement, dated January 11, 2009, by which she purported to unilaterally make herself the sole trustee of the Irene E. Rupert Trust, u/a/d November 1, 1995 (contrary to the terms of the trust instrument), and thereafter transferred, misappropriated and converted assets and large amounts of money that should have been funded into the Samuel J. Rupert Family Trust.

        d.      Kenneth A. Dillon ("Dillon"), president of the Jackson, Michigan company Dillon & Associates, Inc., is a Financial Advisor who is a close personal friend of defendant Susan, and her husband Robert Bond, who was selected by defendant Susan Bond, acting as an intermeddling trustee *de son tort,* to replace Eppler as the Financial Advisor, for the Family Assets that were invested in stocks and bonds, following Samuel J. Rupert's death. Dillon conspired with, or otherwise aided and abetted, defendant Susan in the interstate transfers of the four (4) Michigan brokerage accounts held by Beacon Investment Company, to Charles Schwab Institutional, located in San Francisco, California, where these assets were funded into only three (3) new brokerage accounts, in early 2009.  The inter-state transfer of these assets, in or about February and March of 2009, from Michigan to California, was orchestrated by Kenneth Dillon, under the 3 Power or Attorney agreements defendant Susan caused the late Irene E. Rupert to sign, while acting as a trustee *de son tort,*  which gave

Kenneth Dillon complete control over the 3 new accounts which were opened with Charles Schwab Institutional, by Kenneth Dillon, from Michigan. Given the manner in which Dillon is registered with the New York Stock Exchange, as a Financial Advisor with permission to give financial advice in five (5) states *other* than the State of Oregon, it is not currently clear if Dillon's financial advice to defendant Susan and the late Irene E. Rupert, while they were residents of Oregon, was legal or illegal.

       e.    Robert Bond, who is Susan Bond's husband, and who conspired with, and aided and abetted defendant Susan in: (1) her wrongful intermeddling as a trustee *de son tort;* (2) her misapplication of entrusted funds; (3) her cover-up and stonewall schemes; (4) her exploitation of the late Irene E. Rupert; (5) her suppression or destruction of evidence, consisting of Samuel and Irene Rupert's detailed estate plans (Schedule A trust asset inventory lists, and personal property inventory distribution lists); (6) her manufacture of fraudulent evidence, through the forged Samuel J. Rupert Trust Schedule A page, contained in the Exhibit #70 that defendants Susan and Whitman used to perpetrate a fraud upon the court, in Oregon, during 2010 and 2011;  (7) her conversion of assets that rightfully belonged to the Samuel J. Rupert Family Trust, and plaintiff William Rupert's vested interest to 1/3 of the Family Trust assets; and, (8) her intentional interference with plaintiff William Rupert's expected inheritance (under Samuel and Irene Rupert's estate plans which were in existence when Samuel J. Rupert died on October 12, 2008, and still in existence during April and May of 2009, when this sibling rivalry family feud first erupted between plaintiff William and defendant Susan (before any lawyers were involved, and any legal proceedings were commenced).

       f.    Irene E. Rupert, Deceased, ("Irene"), who was used as an unwitting pawn, and stooge, by some of the RICO Defendants (RICO Defendants Susan, Downes,

Zusman, Eng, and MacGregor), who exploited her, overcharged her, and used fraud and deceit to trick her into executing a false declaration, and/or drastically different estate plans. The new estate plan only benefited defendant Susan, not Irene E. Rupert, and her new Oregon Trust instrument contained draconian *in terrorem* provisions that were used to conceal defendant Susan's misconduct as an intermeddling successor trustee *de son tort,* and to disinherit plaintiff William, when he tried to obtain information about the assets and administration of the Samuel J. Rupert Trust (after he was put on "inquiry notice" by defendant Susan, of her conversion/ misappropriation of trust assets and breaches of trust), and to recover the misallocated trust assets that rightfully belonged to the Family Trust, not to defendant Susan, or Irene E. Rupert, or the Irene E. Rupert Trust, u/a/d June 9, 2009, as amended July 23, 2009. Had Irene E. Rupert been told the truth by RICO Defendant Susan, Downes, Zusman, Eng and MacGregor (about plaintiff William's absolute entitlement to the trust asset and administration information he requested, as a permissible distributee of an irrevocable trust, after he was put on "inquiry notice" by defendant Susan; and about defendant Susan's absolute duty to account for defendant Susan's seven months of trust administration as a mere trustee *de son tort,* from October 12, 2008 to May 12, 2009, at least), Irene never would have executed the new Oregon estate plans under which plaintiff William was ultimately disinherited, nor would she have executed the false declaration, that deceived Judge Fogel. If the Oregon Uniform Trust Code would have been accurately and honestly explained to Irene (by defendant Downes and defendant Schulte, who had a fiduciary duty to do so, or by District Court Judge Jeremy Fogel - if the first federal action would not have been dismissed because of a fraud upon the court), she would have instructed defendant Susan to prepare an accounting, turn over all the financial records and estate planning documents she seized on October 12, 2008, and to relinquish control to plaintiff

William, consistent with the controlling estate planning documents from January 26, 2004.  Irene E. Rupert was badly served by the legal professionals that defendant Susan recruited, and paid excessive legal fees, to aid and abet her conversion, squeeze-out, disinheritance, and cover-up schemes, to damage plaintiff William's property interests.

g.      Devin N. Robinson, who is the current attorney of record for defendant Susan in the instant action, and who knowingly, and/or recklessly (without an adequate investigation into the truth of what his client was asserting under penalty of perjury), allowed her to sign the Declaration of Susan Bond, dated November 30, 2012, which was electronically filed in USDC NDCA Case No. 5:12-cv-05292 LHK (HRL) on November 30, 2012, and served by mail upon William in California, wherein she falsely swore that the Charles Schwab Institutional accounts that pertain to the instant dispute, were opened by Irene E. Rupert in Oregon (at an undisclosed location, at an undisclosed date and time, in an undisclosed manner).  Said false declaration was filed with the knowledge that the existence, or non-existence, of disputed funds, that have been located in, and administered within, the State of California, is a material factual issue that the court will take into consideration, and give weight, in determining whether the exercise of personal jurisdiction, in the instant case, comports with traditional notions of fair play and substantial justice, under Due Process analysis.

h.      James C. Krieg, of Krieg, Keller, Sloan, Reilley & Roman, LLP, who is representing defendants Whitman, Johansson and Cartwright in the instant action.  Either knowingly, or recklessly, without an adequate investigation into the truth of what was to be asserted to a United States District Court Judge, he signed the Motion to Dismiss, and a Reply Memorandum, and caused them to be transmitted electronically to the Court, and by mail to plaintiff, despite the fact that they are infected with material misrepresentations of fact (by

contending William is seeking his 3rd bite of the litigation apple; Irene Rupert was the successor trustee of the Samuel Rupert Trust, and defendant Downes represented Irene Rupert as the successor trustee, until she died on March 12, 2010), and endeavors to influence a federal judicial officer to make rulings that would be a miscarriage of justice.

           i.      Former Oregon Clackamas County Circuit Court Judge Steven L. Maurer[2], who colluded with defendants Susan, Whitman, Johansson and Cartwright's scheme to abuse the legal process of the State of Oregon, while the Presiding Judge of the Clackamas County Circuit Court, by directing that plaintiff William should be subjected to a Bum's Rush, Ambush Expedited Bench Trial, through his actions on October 26, 2010, when he: (1) denied plaintiff William's written request for the required Settlement Conference, prior to trial; (2) denied plaintiff William's Motion for Designation as a Complex Case (based upon the intensive discovery required to establish all the factors necessary to prove undue influence by defendant Susan); and, (3) denied plaintiff William's Motion for Postponement of Trial (to conduct the necessary discovery, and to retain another attorney, to replace the attorney who withdrew from the case, and abandoned plaintiff William, a mere 7 days before trial).  Judge Maurer's decisions on October 26, 2010 were a result of the improper *ex parte* communications that defendant Whitman engaged in, through an improper phone call to the Court, to discuss the merits of the disinheritance action, and why the case should proceed, without a postponement. While there is no official record of these *ex parte* communications, defendant Whitman testified to having made these *ex parte* phone calls to the Court, during a hearing on March 23, 2011, where he successfully testified in support of an award of attorney fees, for his efforts in the

---

[2]  Although only one month into a new 6 year term, Steven L. Maurer announced his retirement on January 23, 2013.  His retirement became effective February 1, 2013.

case.  (See Reporter's Transcript, 03/23/11, Vol. IV, p. 514:20-25).  Unfortunately, the doctrine of absolute judicial immunity shields Judge Maurer from a lawsuit for damages, so he is not named as a party.  Judge Maurer also colluded with defendant Whitman's, defendant Cartwright's, defendant Susan's, and defendant James' scheme to abuse the legal process of the State of Oregon, on October 12, 2011, when they conspired to conduct another Bum's Rush Ambush Expedited Bench Trial, which was a "sham" trial, and thereafter enter another corrupt General Judgment, in a manner that violated plaintiff William's civil rights, and his entitlement to equal protection, to due process, and to his full and fair day in court, before an impartial and competent tribunal, before being deprived of protected property interests, under the 1st, 5th and 14th Amendments to the United States Constitution.

        j.      Oregon Circuit Court Senior Judge Elizabeth Welch, who colluded with defendants Susan, Whitman, Johansson and Cartwright, to act in the complete absence of subject matter jurisdiction (in Case No. CV10030497), and in the complete absence of any constitutional judicial power, due to the lack of both subject matter jurisdiction and a justiciable controversy (in Case No. CV10030498), to enter General Judgments against plaintiff  William. Senior Judge Welch carried out the Bum's Rush, Ambush Expedited Bench Trial, which commenced on October 27, 2010, pursuant to the determinations by Judge Maurer on October 26, 2010, after the *ex parte* communications from defendant Whitman were received, and either directly or indirectly conveyed to Judge Maurer (which deprived plaintiff William of his constitutional right to a full and fair trial, before an impartial and competent tribunal). Defendant Susan and defendant Whitman exploited Senior Judge Welch's mistaken and erroneous personal belief that a ripe controversy was not required to be alleged, or proven, to invoke the judicial power of the State of Oregon.   From May 12, 2010 to April 28, 2011, Senior

Judge Welch made a series of arbitrary and conscience shocking decisions that are contrary to the undisputed facts, and the relevant law. In fact, in Case CV10030498, she filed and entered a General Judgment that she never rendered in open court at any hearing, or in response to any dispositive motion. In one case she conducted a shameful Bum's Rush Ambush Expedited Bench Trial, for which there is no precedent, or authority. In the other case she didn't bother to schedule or conduct any type of trial, after the issues were joined by the pleadings on April 4, 2011, when plaintiff William timely filed his Answer & Affirmative Defenses. She conducted her court room, when plaintiff William was in it, as if it was the Make-A-Wish Foundation, where no rules of pleading or procedure were required. Senior Judge Welch's conduct of the matters concerning plaintiff William also included her findings that plaintiff William should be disinherited for challenging Irene E. Rupert's capacity, although the pleadings in the case show that no such challenge was made by plaintiff William. Senior Judge Welch committed both procedural and substantive due process violations, against plaintiff William, resulting in significant damages, in excess of $300,000.00, at the present time. According to Senior Judge Welch, the enforcement of the *in terrorem* conditions of the Irene E. Rupert Trust, u/a/d July 23, 2009, caused him to be regarded as if he died prior to Irene E. Rupert, and this finding of civil death resulted in the loss of the necessary "standing" to assert his Affirmative Defenses and Counter-Claims to the Petition seeking the declaration of disinheritance. Accordingly, her rulings, denying plaintiff William's Affirmative Defenses and his Counter-Claims, were only premised upon a narrow technical ground (lack of standing), and do not have any preclusive effect because they were not on the merits, after a full and fair trial, before an impartial and competent judicial officer. Although Senior Judge Welch is reputed to have a fine reputation in the Portland, Oregon legal community, she has not distinguished herself with her inexplicable

and unorthodox performance in the cases concerning plaintiff William.   The doctrine of

absolute judicial immunity shields Senior Judge Welch from a lawsuit for damages, so she is

not named as a party.

20.     At all relevant times, each and every non-party named in paragraph 19 was

acting in concert with, or as an agent for, one or more of the RICO Defendants (or for RICO

Conspiracy defendant James), and, further, as described in more detail below, conspired with, or

aided and abetted, one or more of the other RICO Defendants (or RICO Conspiracy defendant

James), to perform the acts averred herein.

21.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as

Does 1 through 20, inclusive, and therefore sues these defendants by such fictitious names.

Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

Plaintiffs are informed and believe and thereon allege that each fictitiously named defendant

is responsible in some manner for the acts alleged herein.

### V.      Introduction and Prefatory Statement Regarding Gravamen Of Action

22.     The crucial issue in this case, which distinguishes it from garden variety breach

of trust actions against errant trustees, is the fact that Susan was an errant trustee of the worst

kind, she was an intermeddling trustee *de son tort*[3], or trustee *ex maleficio* without any lawful

---

[3]  Cases from Oregon, such as *Stephan v. Equitable S & L Assn.,* 268 Or. 544, 522 P.2d 478
(1974), and *Allen Trust Company v. Cowlitz Bank,* 210 Or. App. 648, 152 P.3d 974 (2007)
adopt the rule that a trustee *de son tort* is to be treated harshly by the Courts, obtaining all the
detriment, and none of the benefits, of a lawful trustee.  California also distinguishes between
lawful trustees, *i.e.,* either a trustee *de jure* (the lawful trustee)*,* or a trustee *de facto* (an acting
trustee, with a colorable right to be trustee)*,* and unlawful trustees, such as a trustee *ex
maleficio,* or a trustee *de son tort* (an intermeddler, with no colorable right to be the trustee; a
trespasser, or squatter, in the Office of the Trustee), where the person is only regarded as a
type of "trustee" for the purpose of imposing liability upon such a wrongdoer, and avoiding
their unjust enrichment, at the expense of the beneficiaries.  See *King v. Johnston,* 178
Cal.App.4[th] 1488, 1504-05 (2009); *England v. Winslow,* 196 Cal. 260 , 237 P. 542 (1925).

authority to occupy the Office of the Trustee, under the Michigan Trust Agreements of Samuel and Irene Rupert (or to occupy the Office of the Personal Representative, under the Michigan pour-over Wills of Samuel and Irene Rupert).  Susan is not entitled to be regarded as a trustee *de jure* or a trustee *de facto,* and the multiple lawyers and law firms who have subsequently conspired with, or aided and abetted, Susan's breaches of trust and fraudulent misappropriation schemes, with their own, independently wrongful fraudulent cover-up and abuse of process schemes, should have been more selective and discriminating, in picking their clients and collaborators.  Representation of, or collaboration with, a trustee *de son tort* who is wrongfully controlling $900,000 in trust assets, as in this case, by trusted Officers of the Court, requires that the Officer of the Court counsel the trustee *de son tort* to: (1) relinquish control to the proper trustee; (2) fully account; and, (3) make full restitution of any and all misappropriated assets. However, after Samuel Rupert died in 2008, and left an elderly, vulnerable surviving spouse with Alzheimer's Disease, Susan used wire fraud (against William), to become the acting trustee *de son tort,* and take possession of all estate and trust plans and confidential records. Subsequently, after William was put on "inquiry notice" and discovered Susan's reliance upon illegal documents, she has been able to avoid accountability, detection, and disgorgement of her ill-gotten gains, through her collaborations with 7 lawyers and 4 law firms, to abuse the legal process, obstruct justice, and shield her wrongdoing, through additional fraudulent cover-up schemes, practiced upon: (1) the late Irene Rupert; (2) United States District Court Judge Jeremy Fogel; (3) William; (4) Clackamas County, Oregon, Circuit Court Senior Judge Elizabeth Welch; (5) Clackamas County, Oregon, Circuit Court Judge Steven L. Maurer; (6)

---

Moreover, the fifth edition of Black's Law Dictionary defined a trustee *de son tort* as a "[p]erson who is treated as a trustee because of his wrongdoing with respect to property entrusted to him or over which he exercised authority which he lacked."  (Black's Law Dict., *supra,* p. 1357, col. 2.).

Eunice Attorney Services, Santa Cruz, CA.; (7) T.D. Ameritrade; (8) JP Morgan Chase Bank, N.A.; and, (9) United States District Court Judge Lucy H. Koh, in the instant case, in efforts to perpetuate and maintain defendant Susan's fraudulent scheme to misappropriate/convert trust assets, causing damages to William's property and economic interests.  It is the complexity of the fraudulent cover-up/stonewall/abuse of process/obstruction of justice schemes, in aid of an intermeddling trustee *de son tort,* through intrinsic and extrinsic fraud upon state and federal courts, by trusted Officers of the Court, that distinguishes the instant case, and renders it a proper RICO action.  Most attorneys-at-law, and all competent and ethical attorneys-at-law, would have counseled Susan to stop her misconduct, consistent with what is sometimes referred to as the 1st Law of Holes (when you find yourself in one, stop digging).  The lawyers and law firms in this case, however, starting with defendant Downes, actively participated in maintaining and perpetuating Susan's breaches of trust, and unjust enrichment, such that they are errant lawyers.  The instant case is intended to address some of the evils that can reasonably be expected to result from the unholy alliance of an errant trustee, with a series of errant lawyers, who are lacking a moral compass (and are willing to defile Temples of Justice, through fraudulent schemes, perjury, manufactured evidence, forgery, abuse of process, obstruction of justice, *ex parte* communications, and the use *in terrorem* clauses that are designed to insulate and shield breaches of trust, and to conceal misappropriated trust assets and property).

23.     Plaintiff William seeks to establish that errant attorneys who conspire with, or aid and abet, errant fiduciaries or trustees, in exchange for the excessive legal fees the errant fiduciaries or trustees are willing to pay, out of the ill-gotten gains they have wrongfully amassed and control, to the attorneys who conspire to help them avoid detection (and the duty to account, relinquish control, and make full restitution), are not engaged in the legitimate

practice of law, or a privileged activity, regardless of the deficiencies in the current version of the Oregon Uniform Trust Code, which only became effective in 2006.  It is not protected activity, under the crime and fraud exceptions to attorney privilege.  Nor is the misappropriation of trust assets protected by the Litigation Privilege, because it is non-communicative conduct. Therefore, the communicative conduct, and petitioning activity, that only took place during the latter cover-up phases of the misappropriation and conversion schemes (Stages 3-6), is incidental, or collateral, to the non-communicative conduct that is the gravamen of this complaint.  The gravamen of the instant action is for the misappropriation/conversion of trust assets, by an intermeddling trustee *de son tort* (defendant Susan)*,* who carried out her fraudulent scheme through predicate acts of wire fraud, mail fraud, bank fraud, and the interstate transportation of stolen property, during the first 7 months after Samuel Rupert died, prior to any involvement by any lawyers, or the commencement of any legal proceedings, federal or state*.*  (RICO Stage One)

24.     More specifically, this case illustrates that, in Oregon, an errant trustee *de son tort* can buy an errant lawyer, even one with an impeccable pedigree, for as little as $10.000.00, to assist the errant trustee *de son tort* in using fraud and deceit to get an elderly, vulnerable Settlor to adopt trust provisions, and *in terrorem* clauses, that will forever bury the information necessary for a qualified beneficiary to prove breaches of trust by the errant trustee *de son tort*. Oregon law makes it so easy to aid and abet errant trustees, that a top notch attorney with a good reputation, defendant Downes, was willing to sell out, and violate his ethical obligations and duties as a trusted Officer of the Court, by helping Susan isolate and exploit her own elderly, vulnerable Mother, and cheat William out of a prospective inheritance of $300,000.00, for a lousy $10,000.00 bribe.  Quite reasonably, when confronted with this option, Susan took it

and willingly agreed to overcompensate defendant Downes (out of the funds she was administering as a fiduciary, not out of her own funds), for his disguised representation of Susan's interests, through his "sham" representation of Irene Rupert (in multiple, conflicting capacities), and the new Oregon estate plans he prepared, that were designed to benefit Susan, damage William, damage the Samuel Rupert Trust, and overcharge Irene, for plans that provided her with no benefits, or added protections (when compared with her Michigan estate plans). In total, Susan ended up paying defendant Downes at least $13,000.00, for simple estate plans that any other top notch law firm would have prepared for $3,000 (or less), and which could have been obtained from low cost provider Legal Zoom for around $300.00.

25.    In the instant case, defendant Downes also tried to leverage Susan's overfunding of the Irene Rupert Trust, to Susan's advantage, by illusory suggestions to William that he might be able to avoid disinheritance by agreeing to modify the Samuel Rupert Trust, to make Susan the successor trustee, retroactive to June 9, 2009 (and to state that under no circumstances would William ever be the successor trustee).  Defendant Downes prepared such a Modification of Trust document, for the irrevocable Samuel Rupert Trust, and after obtaining the signatures of defendants Susan and James on the Modification document, he instructed William to sign it, get it notarized, and return it to Downes promptly, or else risk complete disinheritance (from the overfunded Irene Rupert Trust, which wrongfully held 90% of the combined Family Assets of roughly $900,000) , pursuant to the estate planning documents Downes stated he anticipated he would be asked to prepare, if William did not sign the modification document, promptly return it, and stop making his inquiries for information.

26.    This case also illustrates the fact that the seemingly aberrant behavior by defendants Downes, Whitman and Johansson, appears to be quite commonplace, throughout the

Oregon legal community, at the present time, as shown by all the other lawyers, who were practically falling over themselves, in their eagerness to jump on the disinheritance bus, that William was thrown under, resulting in a pool of nearly $300,000.00 in funds, to be split up by the occupants of the disinheritance bus (following the roadmap drawn by defendant Downes in 2009, when he drafted the *in terrorem* provisions).  The disinheritance bus was driven by defendant Whitman, and the other defendants who were along for the ride, so they could share in the $300,000 disinheritance pool of funds, included defendants Susan, James, Downes, Zusman, Eng, Johansson, Schulte, Markun and Cartwright.

27.     Plaintiff William Rupert also contends a RICO action is particularly appropriate, under the unique circumstances of the instant case (where the probate exception has no application), because it provides a potential remedy for the property and economic damages which were suffered by the plaintiff, as a result of the fraudulent representations which were made, not only to him (beginning on October 13, 2008), but also to: (1) his late mother, the late Irene E. Rupert, who reasonably relied upon the fraudulent representations which were made to her (by defendants Susan, Downes, Zusman and Eng; in 2009, using the mail); (2) Judge Jeremy Fogel, who reasonably relied upon the fraudulent representations which were made to him (by defendants Susan, Downes, the late Irene E. Rupert, Zusman, Eng and MacGregor; in 2009 and 2010, using the mail and electronic filing); (3) Clackamas County, Oregon, Senior Judge Elizabeth Welch, who reasonably relied upon the fraudulent representations which were made to her (by defendants Susan, Downes, Whitman and Johansson; in 2010 and 2011, using the mail and electronic filing); (4) Clackamas County, Oregon, Judge Steven L. Maurer, who reasonably relied upon the fraudulent representations, and the wrongful *ex parte* communications which were made to him (by defendants Susan, James, Whitman and

Johansson; in 2010 and 2011, using the mail, electronic filing, and the telephone); (5) Umpqua

Bank in Oregon, which reasonably relied upon the fraudulent representations which were made

to it (by defendant Susan and Whitman; beginning in 2009 and 2010, using the mail and

telephone); (6) Eunice Attorney Services, located in Santa Cruz, CA., which reasonably relied

upon defendant Johansson's fraudulent certification that her Oregon Writ of Garnishment, dated

May 19, 2011, could lawfully be served upon William at his residence in California, because his

California property was "lawfully subject to collection by this writ."; (7) JP Morgan Chase

Bank, N.A., Scotts Valley, CA Branch, which reasonably relied upon the fraudulent

representations which were made to it (by defendants Susan and Johansson; in 2011, using the

mail and fax transmissions as part of the scheme) ; (8) TD Ameritrade, located in Bellevue,

Nebraska, which reasonably relied upon the fraudulent representations which were made to it

(by defendants Susan and Johansson; in 2011, using the mail and fax transmissions as part of

the scheme).  All of these fraudulent schemes, where 3rd party reliance was obtained, were to

plaintiff William's extreme detriment[4].  The late Irene E. Rupert, following her formal diagnosis

with Alzheimer's Disease, was deceived by her own daughter (defendant Susan, who convinced

Irene that she and her late husband had supported William for his entire life, when that was not

the truth), and by her own attorneys (defendants Downes, Zusman and Eng).  Irene E. Rupert

was fraudulently induced to: (1) execute a false declaration (falsely claiming that Samuel J.

Rupert's estate had no assets located in California, that she had no assets located in California,

and she was the Successor Trustee of the Samuel Rupert Trust), which was used to corruptly

influence Judge Jeremy Fogel, and improperly derail plaintiff William's prior federal action (for

---

[4]  The United States Supreme Court recently determined that third-party reliance upon alleged
misrepresentations is all that is required to prove wire and mail fraud under the RICO statutes,
and it is not necessary for a plaintiff to plead and prove that the plaintiff relied upon the
alleged misrepresentation.  See *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 658-59
(2008).

lack of personal jurisdiction in a diversity suit); and, (2) to execute trust instruments, under

which plaintiff William Rupert was ultimately disinherited (for continuing to seek information

about the assets and administration of the Samuel J. Rupert Trust, after it became irrevocable on

October 12, 2008 and his interest as a remainder beneficiary and permissible distributee vested

– *and* Susan put him on "inquiry notice", in April and May of 2009).  In a normal civil action

for fraud, a plaintiff must allege and prove that *they* were deliberately given false or misleading

information, upon a material matter, and that *they* reasonably relied upon the false or misleading

information, to their detriment.  Accordingly, plaintiff William cannot bring a normal civil

action for fraud, to address the false and misleading information that was deliberately given to

the late Irene E. Rupert (by defendants Susan, Downes, Zusman and Eng), which she reasonably

relied upon, to the extreme detriment of the plaintiff.  However, mail and wire fraud under

RICO can be based upon third-party reliance, causing injury to another, such that it has a

broader scope, and does provide potential relief to plaintiff William, under the facts alleged in

the instant case.  Plaintiff William has been badly damaged by the unconscionable exploitation

of his late mother, under the fraudulent obstruction of justice scheme carried out by defendants

Susan, Downes, Zusman, Eng, and MacGregor, in 2009 and 2010.  Moreover, because the

schemes that commenced on October 13, 2008 were carried out through multiple acts of mail

fraud, wire fraud, bank fraud, interstate transportation of stolen property, and obstruction of

justice, trebled damages under RICO are entirely appropriate, and proper, in the instant case.

### STATEMENT OF FACTS

28.     In 1995, Michigan native Samuel J. Rupert had a revocable living trust

prepared, by an experienced estate planning attorney in Michigan, who also prepared a pour-

over Will, to ensure that one way or another, the Family Trust that he wanted to be created

after his death, would end up being funded with all of his assets, to the largest extent possible, unless tax considerations required a marital distribution to be made (as it turned out, no marital distribution was necessary).  For estate planning purposes, the assumption was made that Irene would probably live longer than her husband Samuel.  The Family Trust which was to be created after his death, and funded with all his assets, was to have Irene Rupert, because she survived him, as the life income beneficiary, and their 3 children were the remainder beneficiaries.  Unusually, all 4 beneficiaries were immediate permissible distributees of principal, in the discretion of the trustee.  No powers of appointment were given by the terms of the Trust, to anyone, and only the Grantor was allowed to amend the Trust.

29.     Separate, but similar, estate plans were also prepared for his spouse, Irene E. Rupert, by the same attorney, at the same time.  Both Trusts called for their spouse to be the first nominated successor trustee (if willing and able), and the alternate successor trustees were to be their 3 children, jointly, as co-alternate successor trustees, Susan, William and James.  Both Wills called for their spouse to be the first nominated personal representative (if willing and able), and the alternate personal representatives were to be their 3 children, jointly, as co-personal representatives, Susan, William and James.

30.     In 2004, both Samuel Rupert and Irene Rupert amended their estate plans, to state that they wanted William to be the sole alternate successor trustee, with Susan as the second choice, and James the third.  Similarly, both Samuel Rupert and Irene Rupert executed codicils to their pour-over wills, stating they wanted William to be the sole personal representative, with Susan as the second choice, and James as the third.

31.     In 2005, William made a special trip back to Michigan, and spent several days with Samuel and Irene Rupert, for the express purpose of discussing how they wanted

William to administer things, when the time came for him to take over control of their

financial affairs.  During this trip, William was shown where their confidential estate plans

and records were stored, and was assured that detailed plans already existed, so he did not

have to take any notes, when they discussed individual personal property items that they

wanted to go to specific family members.  For instance, William was told that Irene's Doll

collection was to go to Sarah Rupert, a granddaughter; the dining room table and chairs were

to go to William; and the silver items were to go to Susan.  Many other items were

discussed during this trip back to Michigan, but William took no notes, because of the

assurances he received from Samuel and Irene Rupert, that detailed written instructions

already existed.

32.    In 2006, Samuel and Irene Rupert moved from Michigan to the Portland,

Oregon area, renting an apartment at the Willamette View Retirement Community, located in

Clackamas County, Oregon to be close to Susan and her husband Robert Bond, who reside in

Multnomah County, Oregon, at 2430 Montgomery Drive, Portland, OR 97201.

33.    In January of 2008, Samuel and Irene Rupert signed durable power of attorney

documents that designated defendant Susan as their authorized representative, for health care

purposes.  Both the late Samuel Rupert and the late Irene Rupert had a "confidential

relationship", with defendant Susan, as evidenced by these power of attorney documents.

34.    On 10/12/08, Samuel J. Rupert died, in Oregon.  On 10/13/08, William tried to

step forward and take control (because Irene's memory problems, based upon her Alzheimer's

Disease, did not make her a suitable candidate to administer either trust, as she freely

acknowledged at the time, when she declined to accept her nomination to become the

Successor Trustee of the Samuel Rupert Trust), but was rebuffed by Susan, during a 23

minute telephone conversation (from California to Oregon).  Susan told William that she was "in charge", because she purportedly had more recent documents, subsequent to the 2004 amended estate plans.  Susan, and her husband Robert, seized all of Samuel and Irene Rupert's confidential estate plans and financial records, and took them to their residence in Multnomah County, which became the principal place of administration of both Trusts and Estates.

35.      On 11/13/10, Susan obtained Irene Rupert's signature upon another power of attorney document, that purported to give her the power *inter alia* to unilaterally amend Irene Rupert's estate plans.  However, the terms of Irene's Trust only allowed her to amend her Trust, and does not contain an explicit authorization allowing amendment under a power of attorney document.  This power of attorney document is further evidence of the "confidential relationship" that existed between the late Irene Rupert, and her daughter, defendant Susan.

36.      During December of 2008, a Michigan brokerage company named Beacon Investments Company, was instructed, by defendant Susan and/or by non-defendant co-conspirator Kenneth A. Dillon, to transfer all assets of the Samuel J. Rupert IRA account (roughly $220,000.00), to the much smaller Irene E. Rupert IRA account.  The brokerage company followed the instructions they were given, although the transaction raised red flags that cause the brokerage company to send out a letter of inquiry, to make sure the transaction was authorized and legitimate.  This letter was intercepted by Susan, so Irene never received it.

37.      On 01/11/09, Susan used fraud and deceit to trick William into drafting a document entitled Amendment to Trust Agreement, for the Irene Rupert Trust u/a/d 11/01/95, that purported to unilaterally make Susan the Successor Trustee of the Irene Rupert Trust, without Irene Rupert's knowledge or consent.  William drafted this document because Susan

showed William a 11/13/08 Power of Attorney document, signed by Irene Rupert, that

purported to grant such amendment powers.  Susan foisted off this document as having been

obtained from an attorney, so William presumed it was a valid and genuine power of attorney

document.  Accordingly, the face of the Amendment to Trust Agreement recites the specific

power of attorney document (11/13/08), and the specific subsections involved, as the purported

source for Susan's authority to unilaterally amend the Irene Rupert Trust.  What William did not

know at the time was that Oregon law, as embodied in ORS 130.505(5), only allows trust

amendments under a power of attorney _if_ the terms of the trust specifically state such

amendments can be made under a power of attorney.  In this case, the Irene Rupert Trust did not

allow amendments under a power of attorney, so the Amendment to Trust Agreement

document, dated January 11, 2009, is illegal and void _ab initio._

38.     In January of 2009, Susan sent emails to William wherein she admitted to

having the Amendment to Trust Agreement document notarized at a bank (the Umpqua Bank

branch at Willamette View), and using it to transfer funds into, and between, accounts for the

benefit of Irene Rupert's estate or trust.

39.     During February and March of 2009, defendant Susan and/or non-party co-

conspirator Kenneth A. Dillon, caused the four separate brokerage accounts from Beacon

Investment Company (Samuel J. Rupert Trust; Samuel J. Rupert IRA; Irene E. Rupert Trust;

and Irene E. Rupert IRA), to be transferred from Michigan to California, where they became

three accounts which were opened with Charles Schwab Institutional, located solely in San

Francisco, California (accounts for the Samuel J. Rupert Trust; the Irene E. Rupert Trust; and

the Irene E. Rupert IRA).  During this same general time period, defendant Susan also caused

the proceeds of Samuel J. Rupert's life insurance policies to be transferred to Irene E. Rupert's

Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

personal or trust account, instead of being funded into the Family Trust, as was intended by

Samuel J. Rupert's estate plans[5].

40.     William routinely spoke to Irene, on the phone, once or twice a week,

following the death of Samuel Rupert, and a common complaint from Irene was that Susan

was keeping her in the dark about how the finances were being administered by defendant

Susan and the new financial advisor, Kenneth Dillon.  After several months of hearing these

complaints, William agreed to talk to Susan, and remind her of her duties to be more

forthcoming with specific information, and submit periodic accountings.  Such a conversation

took place in late April of 2009, when Susan called William, after Irene began asking her if

William had called her yet.  Susan agreed to provide some information about her management

of estate and trust assets.

41.     After seven months of her secretive, informal administration, Susan provided

Irene with a "Financial Summary" document, and subsequently, on 05/12/09, sent copies of

this purported "accounting"  to William and to defendant James, along with a transmittal letter

she signed as the purported "Successor Trustee".  Her Accounting purported to show that

100% of the combined assets of Samuel and Irene Rupert, which she valued at $874,995, as of

03/31/09, had been transferred, or allocated to, the Irene Rupert Trust.  The Samuel J. Rupert

Family Trust, which was supposed to be created and funded after the Samuel J. Rupert Trust

became irrevocable, was not shown to even exist, in this so-called "accounting", by defendant

---

[5]  The terms of the trust include a Section 16, on page 8, wherein Samuel J. Rupert made it
clear that he was the owner of his life insurance policies, as opposed to the person he named
as the beneficiary (Irene), who was not named with a donative intent.  The terms of the trust
also includes other language where Samuel J. Rupert made it clear that he expected the
proceeds from the life insurance policies he owned to be funded, after his death, into the
Samuel Rupert Family Trust.

Susan[6].

42.     On 05/17/09, William objected to the so-called "accounting", as inadequate and insufficient, in writing, because *inter alia* it did not go back to 10/12/08, it shows the Irene Rupert Trust had been overfunded, and it did not show the compensation and gifts that Susan received, or account for the thousands of dollars that were generated by Susan, by selling off the personal property of Samuel and Irene Rupert (and keeping the proceeds for herself[7]).  This letter also informed Susan that her Amendment to Trust Agreement document, dated January 11, 2009, which she tricked William into drafting, was illegal and void *ab initio*.  William also asked Susan to produce the written documents she claimed to have (when they spoke on 10/13/08), while informing her that mere power of attorney documents did not trump Samuel and Irene Rupert's amended estate planning documents from 01/26/04. William let Susan know that if all she had were the power of attorney documents, she had to relinquish control to William, fully account for her actions, and make whatever restitution might be necessary, to rectify her breaches of trust (concerning the Samuel J. Rupert Trust). William further informed Susan that he hoped to be able to ratify Susan's actions, to the greatest extent possible, but she had to account more fully and completely.

---

[6]  This fact was confirmed by defendant Susan, during her cross-examination testimony on November 24, 2010, in the Oregon probate department trust proceedings for declaratory judgments, when she confirmed that the notation in her document entitled "Financial summary as of March 31, 2009", where it states "$83,371  Samuel-Irene Rupert Trust", was a reference to the Samuel Rupert Trust, which defendant Susan listed as belonging entirely to the Irene Rupert Trust.  (See Reporter's Transcript, 10/27/2010, Vol. II, p. 266:3-267:7)

[7]  Significantly, in the months after Samuel Rupert died, disability insurance payments of roughly $7,000 per month, to defendant Susan's husband, non-party co-conspirator Robert Bond were terminated.  The end of these disability payments created a severe financial hardship for defendant Susan and her husband Robert Bond.  Defendant Susan apparently dealt with this financial hardship by selling off much of Samuel and Irene Rupert's personal property, and keeping the proceeds for herself, contrary to Samuel and Irene Rupert's personal property inventory distribution lists, which Susan refuses to produce.

43.     Susan responded negatively, and told Irene she had to either support Susan in the disputes with William, or Susan would abandon her, and she could live out the rest of her life alone at the retirement home, without any visits, or help, from Susan.  Irene acknowledged this coercion by Susan, in one of William's last phone calls to Irene, in mid-May, 2009, when Irene told William that Susan was just "too strong", and Irene was afraid of the consequences to her, if she went against Susan's wishes, to stay "in charge" of the financial affairs, without any accountability, and without William looking over her shoulder. Irene freely admitted that the emotional cost would be too much, to her, unless she took Susan's side in Susan's disagreements with William.

44.     On 05/20/09, Susan called William, telling him that she and Irene had retained an attorney, who would be responding to William's letters of inquiry.  Susan then stated she did not trust William so she did not want to talk to him, and then she abruptly hung up on William.

45.     It turns out this attorney was defendant Downes, who initially spoke solely to Susan, during which time Susan let it be known that she had been functioning as a fiduciary, using power of attorney documents she obtained (which conflicted with Samuel and Irene Rupert's operative estate plans), to manage things following the death of Samuel J. Rupert on 10/12/08.  Susan further communicated that she was controlling nearly $900,000 in assets, and she had a captive Settlor (her elderly, vulnerable Mother who suffered from Alzheimer's Disease), who was completely under her control, and would sign whatever documents Susan told her to sign.

46.     Subsequently, upon examining the existing estate planning documents that Susan brought to him, and her various power of attorney documents, defendant Downes either

33

Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

knew, or should have known, that Susan was an errant trustee of the worst type, an

intermeddling trustee *de son tort,* who had an immediate duty to: (1) relinquish control, to

William; (2) fully account for her administration of assets going back to 10/12/08; and, (3)

make whatever restitution was necessary, to correct her overfunding of the Irene Rupert Trust

(100% of Family Assets), and corresponding underfunding of the Samuel Rupert Trust (0% of

Family Assets).

47.     Although Susan contacted defendant Downes seeking representation for

herself, because she did not want to relinquish control to William, account fully for her

actions, or make full restitution for the trust assets she misappropriated/converted, defendant

Downes suggested they mutually exploit elderly, vulnerable Irene Rupert, as part of the

scheme to cover up and conceal Susan's wrongdoing, and maintain her control of all assets

(without accountability), through a scheme to interfere with William's expected inheritance

(under the Michigan estate plans of Samuel and Irene Rupert).  The deal they worked out was

that Susan would pay a disguised bribe to defendant Downes, and in exchange he would

misrepresent the facts and the law to Irene Rupert, to make her think that it was William who

was being unreasonable by asking Susan to account, share information, and produce her

credentials to be in charge.  This false information made Irene Rupert think she needed to

execute new estate plans, to protect and shield Susan from William's "unreasonable attacks

and demands".  The truth, of course, is that William was a permissible distributee of the

Samuel Rupert Family Trust, so he was entitled to the accounting and trust information he

requested, and Susan, as the acting trustee for both trusts (which she combined in her

05/12/09 accounting), had a duty to provide the documents and trust administration

information William requested, under the terms of the Trusts, under Michigan law, under

Oregon law, and under California law.  Moreover, defendant Susan put William on "inquiry notice", when he received the defective and inadequate "accounting" from her in May of 2009, which imposed a duty upon William, to ask questions and investigate the matter.

48.     Irene Rupert relied upon defendant Downes' opinion and misrepresentation of fact, when he opined that William was making unjustified demands and attacks upon Susan. Irene agreed to take Susan's side against William, by taking him out of her Will, if necessary. Defendant Downes suggested Irene Rupert retain his services, to draft new estate plans for her, under the new Oregon Trust Code, which allows Settlors to limit the information trustees have to provide to qualified beneficiaries (more than any other state in the country) . Defendant Downes also suggested the new estate plans include *in terrorem* provisions, under which William would be disinherited if he continued seeking information and documents from Susan.  The price for this estate planning was grossly inflated by defendant Downes, who charged 4 or 5 times the normal rate for the services he provided, so as to disguise the bribe being paid to defendant Downes (for misrepresenting the facts and the law to his own purported client), which Susan willingly paid (without telling Irene the legal fees were 4 or 5 times the normal rates for such documents), out of the funds she was administering, in order to retain her wrongful control of all assets and all of Samuel Rupert's confidential estate planning documents (including his Schedule A files, listing the assets transferred to the trusts, from time to time, subsequent to 1995).

49.     On June 9, 2009, defendant Downes used the aforementioned fraud and deceit to cause Irene to execute a new Oregon trust agreement and a new Oregon will, under which defendant Susan became her trustee and first choice to be personal representative.  Defendant James was Irene's new second choice to be her Administrator, and the estate documents stated

35

Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

that under no circumstances would plaintiff William ever become the Administrator.

50.     On June 10, 2009, defendant Downes faxed and used the United States Postal Service to mail a threatening letter to plaintiff William, that included extortionate speech which is a violation of California's criminal extortion statutes, as the letter informed plaintiff William of a number of things, including the fact that the Samuel Rupert Trust had not, and was not going to be, fully funded in accordance with the late Samuel J. Rupert's express written intentions that all his assets be funded into the Family Trust.   Whereas the financial summary from defendant Susan showed 100% of the Family Assets being attributed to the Irene E. Rupert Trust, and 0% to the Family Trust, this June 10, 2009 letter represented that 10% of the Family Assets were going to be allocated to the Family Trust, and 90% to Irene E. Rupert's estate or trust.  This particular letter contains no fewer than 8 material misrepresentations of fact, and/or law, which were communicated to Irene Rupert, by defendant Downes and defendants Susan and James, to fraudulently induce her to execute drastically different Oregon estate plans (after her formal diagnosis of Alzheimer's Disease dementia), at great expense, for the illegal purpose of shielding an intermeddling trustee *de son tort* from her statutory and common law duty to: (1) relinquish control of trust assets and records, to William; (2) fully account for all assets and records; and, (3) make full and complete restitution of all misappropriated trust assets that should have been funded into the Samuel Rupert Family Trust.

51.     More specifically, the 8 material misrepresentations of fact, and/or law, both explicit and implicit, which were reasonably relied upon by the late Irene E. Rupert, are set forth within the body of the letter dated June 10, 2009, by defendant Downes, and are as follows:

(A)     Irene Rupert is the trustee, and remains the trustee, of the Samuel Rupert Trust (explicit falsehoods);

36

Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

(B)     Irene Rupert is the trustee of the Irene Rupert Trust (explicit falsehood);

(C)     Irene Rupert ratified "all action taken with respect to either trust", by defendant Susan (explicit falsehood);

(D)     The Irene Rupert Trust "will have substantially all the family assets in it" (explicit falsehood);

(E)     The Samuel Rupert Trust has "less than $100,000," (explicit falsehood);

(F)     The document entitled "Amendment to Trust Agreement", dated January 11, 2009 (by which defendant Susan purported to illegally make herself the trustee of the Irene Rupert Trust, u/a/d 11/01/95, on a unilateral basis), is a document that actually pertained to the Samuel Rupert Trust (explicit falsehood);

(G)     Irene Rupert can, and will, take court action to modify the irrevocable Samuel Rupert Trust, to make Susan the trustee instead of William, if William refused to promptly sign and return the Modification of Trust document to defendant Downes, by 06/19/2009.   (explicit falsehood);

(H)     Plaintiff William Rupert was way out of line when he objected to the accounting defendant Susan sent him on 05/12/09, as the self-professed "successor trustee", and his requests for information and documents from Susan, in his 05/17/09 letter of objections (concerning her authority to be the acting trustee, and her administration of $900,000 in assets), can be correctly characterized as unreasonable "allegations, accusations and demands", which justify William's disinheritance, because they never should have been made by William. (implicit falsehood, to be drawn from the totality of the 06/10/09  extortion letter that defendant Downes signed, mailed and faxed to William, with copies of the letter mailed to Irene Rupert, and wired to defendant Susan, and to defendant James).

52.     The aforementioned 8 material misrepresentations of fact, and/or law, both explicit and implicit, were made by defendant Downes with full knowledge of the falsity of the assertions, or recklessly, without adequate or reasonable investigation into the truth of what was being asserted, for the following reasons:

(A)     Irene Rupert rejected her nomination to be the successor trustee of the Samuel Rupert Trust, by failing to accept (either formally, by notice, or informally, by performance and service as the successor trustee);

(B)     Irene Rupert also effectively resigned as trustee of the Irene Rupert Trust, when she allowed defendant Susan to become the acting trustee, when Susan and her husband Bob seized all estate plans and records, for both trusts, and relocated the principal place of administration of both trusts, to Susan's residence in Multnomah County, subsequent to the death of Samuel Rupert on 10/12/08;

(C)     Irene Rupert did not legally ratify "all action taken with respect to either trust", by defendant Susan, because defendant Susan never bothered to account for her actions, such that Irene Rupert's nonspecific blanket "ratificiation" is no ratification at all.  A lawful "ratification" requires specific knowledge, by the ratifier, of the specific transactions that are proposed to be ratified.  Both Trust instruments prepared by defendant Downes contain illegal, non-specific, "blanket" ratifications, of whatever defendant Susan may have done, or not done, while wrongfully intermeddling as a trustee *de son tort,* and misappropriating trust assets by overfunding the Irene Rupert Trust (100%), and underfunding the Samuel Rupert Family Trust (0%).  Moreover, following her formal diagnosis with Alzheimer's Disease Dementia, it is unreasonable to presume that the "blanket" ratifications in the Trust instruments were preceded with detailed and specific information regarding the transactions to be ratified, because

defendant Downes made no reasonable, independent investigation into the propriety of the

actions and inactions of defendant Susan, from 10/12/2008 to 05/12/09 (and continuing).

Instead, as part of the scheme with defendant Susan, defendant Downes chose to blindly accept

Susan's version of how and why the trust assets had been allocated so disproportionately,

instead of exercising the requisite oversight one would expect.  Defendant Downes acted

recklessly, fraudulently, and/or negligently and irresponsibly by allowing his purported client to

agree to become the successor trustee of the Samuel Rupert Trust, in May of 2009, to replace

defendant Susan (whose wrongful trusteeship had been exposed by William's 05/17/09 letter of

objection), without requiring defendant Susan to prepare "a final account", for her mistaken

period of trust administration, as required by Section 11(2) of the terms of the Trust.  Because

the whole purpose of defendant Downes' "sham" representation of Irene Rupert was to aid and

abet defendant Susan's desires not to fully "account", and that objective has been achieved (to

date), there was nothing of any substance, objectively, for the late Irene Rupert to be informed

of, and knowingly "ratify" and approve.  The purported "ratifications" are void *ab initio.*

      (D)    The Irene Rupert Trust would not have had "substantially all the family

assets in it", if the late Samuel J. Rupert's written estate plans had been recognized, honored,

and implemented, during the first 7 months after his death on 10/12/08.  This material

misrepresentation of the assets rightfully belonging to the Irene Rupert Trust, was either a

knowing falsehood, or recklessly made without a reasonable and/or adequate investigation into

the truth or falsity of the matters being asserted.  Either way, it was part of the scheme to aid

and abet, and/or conspire with, defendant Susan, in her breaches of trust, as an intermeddling

trustee *de son tort*;

      (E)    The Samuel Rupert Trust would not have had "less than $100,000,", if

the late Samuel J. Rupert's written estate plans would have been recognized, honored, and

implemented, during the first 7 months after his death on 10/12/08.  This material

misrepresentation of the assets rightfully belonging to the Samuel Rupert Trust, was either a

knowing falsehood, or recklessly made without a reasonable and/or adequate investigation into

the truth or falsity of the matters being asserted.  As defendant Downes testified on 10/27/2010,

he did not independently perform any type of due diligence to determine how the combined

assets of Samuel Rupert and Irene Rupert should have been allocated to their respective estates

and trusts (such as reviewing documents and financial records, or retaining a forensic

accountant for that purpose).  Instead, knowing full well that Susan had been an intermeddling

trustee *de son tort,* who was guilty of misfeasance, malfeasance and nonfeasance during the first

7 months after Samuel Rupert died, defendant Downes recklessly and unreasonably relied upon

Susan, as his source for how the combined family assets should, and would, be allocated.

Defendant Downes simply rubber-stamped, and whitewashed, the wrongful misconduct by

Susan, knowing full well that she had misappropriated trust assets and overfunded the Irene

Rupert Trust, to the detriment of the Samuel Rupert Trust, and William.  This statement by

defendant Downes was made as part of the scheme to aid and abet, and/or conspire with,

defendant Susan, in her breaches of trust, as an intermeddling trustee *de son tort.*

        (F)     The document entitled "Amendment to Trust Agreement", dated January

11, 2009 (by which defendant Susan purported to unilaterally make herself the trustee of the

Irene Rupert Trust, u/a/d 11/01/95), has nothing to do with the Samuel Rupert Trust, which is

not mentioned or referenced anywhere within the illegal Trust document, that defendant Susan

recklessly had notarized at Umpqua Bank, and then used to overfund the Irene Rupert Trust

(resulting in the underfunding of the Samuel Rupert Family Trust);

(G)     Under the Oregon Trust Code, Irene had no court options to pursue, because the law does not allow an irrevocable trust to be modified in a significant manner that is contrary to the terms of the trust, as was sought in this case, without the consent of all qualified beneficiaries.  The suggestion that Irene had any legal options that could reasonably and productively be pursued, in court, if William did not give his consent, was knowingly false.

(H)     Plaintiff William Rupert was put on "inquiry notice", by defendant Susan, in April and May of 2009, of her possible malfeasance, misfeasance and/or nonfeasance, while the acting trustee and occupant of the Office of the Trustee, for both the irrevocable Samuel Rupert Trust and the revocable Irene Rupert Trust, such that William's written requests for a full and legitimate accounting, and for defendant Susan to produce her credentials to be in charge, cannot reasonably, and accurately be described or characterized as unreasonable "allegations, accusations and demands", which justify William's disinheritance, because they never should have been made by William.  William's requests for trust asset and trust administration information, from the acting trustee who put him on "inquiry notice" of possible breaches of trust, were perfectly reasonable, and justified.  In fact, as a matter of law, William had a duty to investigate Susan's administration of the trust assets, after she put him on "inquiry notice", by mailing him her defective and inadequate accounting, on May 12, 2009.  Moreover, William shouldn't have been required to ask defendant Susan to provide him with this information, more than seven months after she became the acting trustee, because the terms of the Trusts, and the statutory law of the States of Michigan, and Oregon, require a trustee to identify themselves, and inform the qualified beneficiaries of the trust, within a reasonable time, after becoming the trustee of either an irrevocable trust, or a revocable trust (if not the Settlor).

53.     But for the 8 material misrepresentations of fact, and/or law, specified above,

which were obviously made to her prior to the letter to William, dated June 10, 2009, the late Irene E. Rupert would not have retained defendant Downes to prepare the drastically different Oregon estate plans, which she ultimately executed on 06/09/09 and on 07/23/09, and plaintiff would not have been disinherited from the 90% of the combined assets of the late Samuel and Irene Rupert, which defendant Susan wrongfully over-funded into the Irene Rupert Trust (and Downes failed to fully correct).

54.     William refused to be extorted into signing the insulting Modification of Trust document he received, which certainly did not represent his late Father's wishes and desires, and informed defendant Downes, in a letter, that Irene Rupert had Alzheimer's Disease, and was susceptible to Susan's influence, so he should void the documents he prepared, and return Irene Rupert's money to her.  William also advised defendant Downes that he was interfering with William's economic relations and prospective economic advantage, including his vested and prospective inheritance rights, through independently wrongful conduct (material misrepresentations to Irene Rupert, to induce her to execute the draconian estate plans under which William was able to be disinherited from the Irene Rupert Trust; for persisting in seeking the Trust asset and administration information, from defendant Susan, which she had a legal duty and obligation to provide, with regards to the Samuel Rupert Family Trust – after she put him on "inquiry notice" of her potential mismanagement of assets.

55.     In a continuing effort to fulfill his duty to investigate defendant Susan's administration of Samuel and Irene Rupert's assets and financial affairs, plaintiff William sent a letter of inquiry to the Michigan law firm, and attorney (Alan Price), that prepared the 1995 estate plans, and the 2004 amendments and codicils naming William as the child to be in charge, ahead of Susan.  William sent copies of this letter of inquiry to defendant Susan, but not

to defendant Downes.  Upon receiving her copy of the letter of inquiry, defendant Susan

immediately contacted defendant Downes (by either email, fax or phone), and he immediately

wired and mailed his own letter to the Michigan law firm, wherein he fraudulently asserted that:

(1) the late Irene E. Rupert was the successor trustee of the Samuel Rupert Trust; (2) he

represented Irene E. Rupert in her capacity as the successor trustee of the Samuel Rupert Trust;

and, (3) the Michigan law firm was instructed not to share any information with plaintiff

William.  The Michigan law firm subsequently mailed a polite letter to plaintiff William, which

acknowledged they had been instructed not to share any information with plaintiff William, and

stated they were going to comply with the instructions from defendant Downes.  Plaintiff was

advised to seek legal representation, from a qualified Oregon attorney-at-law.

56.     In response, on 06/20/09, a tort lawsuit was commenced by plaintiff William, as

a federal diversity action for interference with economic relations, and conspiracy, as USDC

NDCA Case No.5:09-cv-02758 JF (RS), seeking damages and punitive damages from

defendant Susan, defendant Downes and defendant Schulte.  Upon commencing this action,

William did not obtain any summons, and the Complaint was not served upon any of the

defendants.  This was because William realized the federal court would not be able to grant all

the relief he sought (concerning the occupancy of the Office of the Trustee, for the Samuel

Rupert Trust, after it became irrevocable), unless Irene Rupert was joined as a party.

57.     On 07/08/09, William's acceptance of trust notices were delivered to the

qualified beneficiaries of the Samuel J. Rupert Trust, and William became the lawful

occupant of the Office of the Trustee, which had been vacant, after the death of Samuel J.

Rupert on 10/12/08.  As a matter of law, it was vacant while occupied by Susan, because her

status as a mere intermeddling trustee *de son tort* only made her a trespasser, or squatter; but

she had never been the lawful occupant of the Office of the Trustee.  Nor did Irene ever

become a lawful occupant of the Office of the Trustee, for the Samuel J. Rupert Trust,

through her lawful acceptance (either formally, by notice, or informally, by performance), and

service as the successor trustee.  Unfortunately, after William's acceptance of trust, Susan still

refused to cooperate, or speak, or communicate in any way with William.  She also refused to

turn over the late Samuel Rupert's confidential financial records and estate plans, including

his Schedule A files, listing the assets of the Trusts.  Susan had a duty to turn over the

Schedule A files, because she told William she had them in her possession, and that it was a

thick file, during the conversation William had with Susan on 01/12/09, in her kitchen, when

William was first shown a copy of the terms of the trust for the Irene Rupert Trust, and he

noticed that it had a blank Schedule A page, and expressed concern that the trust may not

have been properly funded.

     58.     Around this same time, in late June or early July of 2009, defendant James

discovered the existence of the federal diversity tort action William commenced on June 20,

2009 (but never served), while searching for information on the internet.  Defendant James

conveyed this information to Defendant Susan, either electronically (wire) or by mail.  In turn,

defendant Susan contacted defendant Downes, and they conferred upon how to respond to this

new development.  Defendant Downes suggested they further deceive the late Irene Rupert,

by telling her William's federal lawsuit was unfounded, baseless and outrageous, and

thereupon persuading her it would be in her best interest to amend her Oregon Trust

instrument to expand the *in terrorem* provisions, by making the service of the complaint in the

federal lawsuit another disinheritance event.

     59.     On 07/23/09, defendant Downes prepared an amended Trust agreement, and

through his continued misrepresentation of material facts, and the relevant laws of the State of Michigan and the State of Oregon, to his "sham" client Irene E. Rupert, he and defendant Susan were able to obtain her signature upon the amended trust instrument.  The major revision in this amended Trust instrument was the expanded *in terrorem* clause, which was now designed to be triggered by William's mere service of a summons and his complaint, in the federal tort lawsuit William commenced on June 20, 2009 (accusing Susan of breaches of trust and fraud and deceit, as an intermeddling trustee *de son tort*).  Once again, defendant Downes charged 4 or 5 times the going legal rate (from a top notch estate planning law firm), and defendant Susan willingly paid it, out of the funds she was administering in a fiduciary capacity.

60.     Significantly, during Irene E. Rupert's "sham" trusteeship of the Samuel Rupert Trust, which was fraudulently asserted by defendant Downes, she never sent any notices to any of the beneficiaries and permissible distributees.  No accountings were prepared, not even the annual account which is required by both Michigan and Oregon law, from all successor trustees of irrevocable trusts.  Irene E. Rupert was fraudulently led to believe that she had something to fear, if plaintiff William acquired the same information that defendant Susan had; and she was also fraudulently led to believe that defendant Susan was entitled to all the powers of a fiduciary representative, without any of the burdens and obligations of a fiduciary representative, to account fully to the beneficiaries and permissible distributees, for her actions.

61.     Also on 07/23/09,  plaintiff William filed his First Amended Complaint ("FAC"), in the federal lawsuit, while Irene E. Rupert was still alive, and she was made a party to the amended pleadings' Declaratory Relief cause of action.  Only the declaratory relief remedy within the FAC named Irene E. Rupert (against whom damages were not sought), as William sought to resolve *inter alia* the disputes over: (1) who, if anybody, had legally occupied

the Office of the Trustee, for the Samuel Rupert Trust, from 10/12/2008 to 07/08/09;  (2) who

was the lawful occupant of the Office of the Trustee, for the Samuel J. Rupert Trust, subsequent

to July 8, 2009; and (3) did defendant Susan have "unclean hands", based upon her wrongful

intermeddling as a trustee *de son tort.*

62.     William caused the FAC to be served upon all named defendants, and took

special care to ensure that constructive service was made upon the late Irene Rupert, so as to

avoid any embarrassment to her.  Personal service was made upon the other defendants, in

USDC NDCA Case No.: 5:09-cv-02758 JF (RS).

63.     However, the FAC which was filed on July 23, 2009 in USDC NDCA Case

No.: 5:09-cv-02758 JF (RS) never got past the pleadings stage, as all defendants in that action

(defendant Susan, the late Irene Rupert, defendant Downes, and defendant Schulte; as

represented by current defendants Zusman, Eng and Markun, and by current defendants

MacGregor and Long & Levit, respectively), participated in a joint Motion to Dismiss, which

asserted the exercise of personal jurisdiction over them would be unreasonable, because they

had insufficient contacts with the State of California.  In support of their joint Motion to

Dismiss, under FRCP § 12(b)(2), knowingly false declarations were procured and filed with the

Court by defendants Zusman, Eng and MacGregor, wherein it was contended that there hadn't

been any trust administration activity in California, because all assets were located in Oregon

(and at the time this assertion was made, William did not have access to the information

showing these representations were deliberate, or recklessly made, falsehoods).  Ninety (90)

year old, Alzheimer Disease stricken Irene E. Rupert was deceived and used as a stooge and

pawn, when she was deceived into executing a sworn declaration in support of the motion,

wherein she falsely swore that all assets were in Oregon, none of the disputed or relevant assets

were located in California, and she was the Successor Trustee of the Samuel Rupert Trust.

64.     More specifically, on November 4, 2009, RICO defendants Zusman, Eng and defendant Markun, knowingly, or recklessly (without a reasonable investigation or grounds to belief the truth of what was being asserted), electronically filed, and served by mail, the Declaration of Irene E. Rupert, and the Declaration of Susan Bond, both of which falsely claimed there were no trust activities, or disputed or relevant assets, in California.  RICO defendants Zusman, Eng, and defendant Markun either knew, or should have known, that Irene E. Rupert owned substantial assets located in San Francisco, California (held by Charles Schwab Institutional), and that The Samuel J. Rupert Family Trust also owned substantial assets located in San Francisco, California (held by Charles Schwab Institutional), such that they either knew, or should have known, that the Declaration of Irene E. Rupert, and the Declaration of Susan Bond, were both dishonest, untruthful and inaccurate, upon a material fact.  Irene E. Rupert's signature upon this false declaration was obtained by material misrepresentations of fact (direct or implied), by her own attorneys, defendants Zusman, Eng, and defendant Markun (in conspiracy with defendants Susan, Downes, MacGregor, Schulte, and Long & Levit).

65.     The Joint Motion to Dismiss was also supported by the Declaration of  Gile R. Downes, wherein he falsely swore to the fact that Irene Rupert was the Successor Trustee of the Samuel Rupert Trust, and that he represented her in her capacity as the Successor Trustee of the Samuel Rupert Trust.  However, there has never been one scintilla of evidence to show that the late Irene Rupert ever lawfully became the Successor Trustee, after the death of Samuel Rupert, by either notice, or performance.  RICO Defendants MacGregor and Long & Levit either knowingly, or recklessly, without any reasonable basis to believe Irene Rupert had ever been the Successor Trustee, mailed the false Declaration of Gile R. Downes, to William and

Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

electronically filed it with the federal court in San Jose, California.

66.     On 01/08/10, Judge Jeremy Fogel conducted a hearing on the motions to dismiss, in the federal tort lawsuit, for lack of personal jurisdiction over the Oregon defendants.  During these proceedings, upon the joint motion to dismiss, all defendants continued to argue that all trust assets, and all trust administration activity, had been in Oregon, not California.  In arguing the motion, defendants Zusman and MacGregor falsely argued *inter alia* that Irene Rupert was the successor trustee of the Samuel Rupert Trust (without a reasonable investigation or grounds to belief the truth of what was being asserted), whose actions all took place in Oregon. Defendant Zusman further argued that the "cease and desist" type letters that William received from defendant Downes were insufficient to create personal jurisdiction under the modified *Calder*-effects test of *Yahoo!, Inc. v. La Lique Contre Le Racisme,* 433 F.3d 1199 (2006), because they were not combined with any legal instrumentalities from Oregon, that were attempted to be used against William in California.  Judge Fogel heard the motion and took it under submission, while commenting that the matter was a close call.  Pursuant to the stipulation that was agreed to by all parties, or their legal representatives, ADR mediation efforts were to be pursued first, prior to Judge Fogel rendering his ruling upon the motion.

67.     Also during the month of January, 2010,  91 year old Irene Rupert, who had never been a smoker, was diagnosed with terminal, stage 4, lung cancer.   William agreed to travel to the Portland, Oregon area, voluntarily, after learning that Irene Rupert could not travel, for mediation efforts that were to be conducted by Senior Ninth Circuit Justice Edward Leavy. A preliminary phone conference was conducted, but ultimately the mediation efforts fell apart, following the death of Irene Rupert on March 12, 2010.  No mediation sessions were conducted.

68.     On 02/10/10, defendant Downes and defendant Susan met with defendant

Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

Whitman, over the phone and in person, to start plotting and scheming how to misuse the law

(as a bludgeon), and abuse the legal process in Oregon, against William, preemptively, as soon

as Irene E. Rupert passed away; and her "sham" trusteeship of the Samuel Rupert Trust could

no longer be used to shield defendant Susan's wrongdoing, from William's scrutiny.  Defendant

Whitman was recruited, in part, because of his reputation as an aggressive litigator, and one of

the premier probate litigation experts in the State of Oregon.  Defendant Whitman also

possessed the appropriate eagerness to jump on the disinheritance bus, that defendants Susan

and Downes wanted him to recklessly drive, using the *in terrorem* clauses drafted by defendant

Downes, on 07/23/09 (which are clearly contrary to Public Policy), as the roadmap, and the

mechanism to use to throw William under the disinheritance bus, and run him over.  Defendant

Whitman also possessed the appropriate "errant lawyer" mindset, in that he sees nothing wrong

with crafting *in terrorem* provisions as a part of a scheme to insulate stolen property from

recovery by its rightful owner.  Accordingly, he saw nothing wrong with the *in terrorem*

provisions crafted by defendant Downes, which were designed to kill William, to destroy his

standing to complain about Susan's breaches of trust, misappropriations of trust assets[8], and the

resultant overfunding of the Irene Rupert Trust (90%), at the expense of the Samuel Rupert

---

[8]  In fact, during his closing arguments on 11/24/10, in the Oregon disinheritance action
concerning the Irene Rupert Trust, u/a/d 07/23/09, defendant Whitman made the following
revealing, and disturbing, comments, upon his view of the proper role of *in terrorem* clauses:

> "If his mother had taken something from him, something of value, if she had stolen a
> valuable necklace worth $2,000 from him, she could have said, 'And, by the way, I
> stole 2000 - a $2,000 necklace from my son, William, and if he takes any action,
> whatsoever, to get it back, I disinherit him from my estate.'  Because a testamentary
> plan is a plan of gifting, and you can put any condition, whatsoever, on a gift.
>
>  Mr. Downes testified that he discussed exactly that with Irene Rupert in their first
> meeting on May 18th, . ."

(See Reporter's Transcript, 11/24/10, Vol. III-b; pp. 360:23-361:7; Clackamas Co. Cir.
Ct. Case No. CV10030498; Oregon Court of Appeals Case No. A148529 (Control))

Family Trust (10%), and William's remainder beneficiary interest therein.

69.     On March 12, 2010, the late Irene E. Rupert died, on a Friday.

70.     On March 15, 2010, defendant Susan, defendant Whitman and defendant Cartwright commenced two probate department proceedings, for declaratory judgments (not formal probate proceedings).  One such action was entitled *In the Matter of the Irene E. Rupert Trust, u/a/d July 23, 2009,* which was assigned Case No. CV10030497; and the other action was entitled *In the Matter of the Samuel J. Rupert Trust, u/a/d November 7, 1995,* which was assigned Case No. CV10030498.  Both probate department pleadings were verified under penalty of perjury by defendant Susan, and served upon defendant William by mail.  In Case No. CV10030498, defendant Susan falsely verified, under penalty of perjury, the allegation that the principal place of administration of the Samuel J. Rupert Trust was still in Clackamas County, Oregon, as of March 15, 2010.  However, the truth is that plaintiff William unilaterally transferred the principal place of administration of the Samuel J. Rupert Trust to California, as permitted by controlling Michigan law at the time, when he formally accepted his appointment to be the successor trustee, effective July 8, 2009.   Moreover, the truth is also that both trusteeships left Clackamas County, Oregon, immediately upon the death of Samuel Rupert on October 12, 2008, when defendant Susan began her intermeddling as a trustee *de son tort,* which included her unilateral transfer of the principal place of administration of both Trusts, to her residence at 2430 SW Montgomery Drive, Portland, OR 97201, which is located in Multnomah County, Oregon.

71.     Thereafter, defendants Susan, Downes and Whitman schemed to wrongfully use, and in fact did wrongfully use, both extrinsic and intrinsic fraud to obtain corrupt probate department declaratory judgments, in the wrong county, that only adjudicated very limited

matters[9]; although defendant Whitman used gamesmanship to improperly secure judicial

documents mislabeled as "General Judgments".  Under Oregon law, a judicial document labeled

as a "General Judgment" (as opposed to a "Limited Judgment" or a "Supplemental Judgment"),

is regarded as proof that all issues in the case were fully adjudicated and finally determined, on

the merits.  Additionally, under Oregon law, a general judgment from a probate department,

directing final distribution of an estate (trust or probate), is not supposed to be entered until and

unless a final accounting is submitted and approved by the Court.  Under the abuse of process

---

[9]  In the *Irene Rupert Trust* case, William's "civil death" was declared; and his affirmative
defenses and counterclaims were dismissed, for lack of standing, without reaching or
addressing the merits. In the *Samuel Rupert Trust* cases, an "advisory opinion" was given that
the trust assets should be distributed, when appropriate; William was removed and replaced
by Susan; and the trust assets were declared to be only a brokerage account worth
"approximately $90,000".  However, no accountings were submitted, or approved by the
court, in either trust proceeding.  There is no credible support for the finding of only $90,000
in the Samuel Rupert Trust.  This finding is only supported by the fraudulent 06/10/09 letter
from defendant Downes, and the manufactured evidence that defendants Whitman and Susan
submitted to the Oregon Courts as their forged Schedule A page of their Exhibit #70, which
they foisted off as a true and correct copy of the Samuel J. Rupert Trust, u/a/d 11/01/95,
throughout 2010, 2011, and most of 2012.  Defendant Downes discussed this forged Schedule
A page, showing a Charles Schwab account that never existed during Samuel Rupert's
lifetime, during his cross-examination testimony on 10/27/2010, when asked if he had seen
any Schedule A documents that were not blank.  Significantly, in the Response defendant
Whitman filed in Oregon trial court proceedings to settle the transcripts on appeal, on
08/21/12, defendant Whitman finally admitted the Exhibit #70 he submitted as evidence at
trial, and defendant Downes discussed in his testimony, was not genuine or accurate, because
his client in the action, defendant Susan, at an unspecified time and place, made the
forged alteration to the Schedule A page of the original Trust instrument (without adding the
date, and/or her initials, as should have been done, at a minimum), before it was mailed to
William, and entered into evidence, and relied upon by the Oregon Courts.  Defendant
Susan's forged alteration of the crucial Schedule A page of the original Samuel J. Rupert
Trust, u/a/d 11/01/95 document makes it look as if Samuel J. Rupert funded his Trust with
only "Schwab One Trust Account #2704-5804", during his lifetime.  However, it is
undisputed that the specific brokerage account listed on the schedule A page of Susan's
Exhibit #70 was not opened until 02/26/09, more than 4 months after the death of Samuel J.
Rupert, so it is clearly a forgery.  Defendants Susan and Whitman used the United States
Postal Service to transmit the forged Trust instrument to William, after the death of the late
Irene E. Rupert, on March 12, 2010.  Defendants Susan, Whitman and Downes used a copy of
the manufactured evidence to perpetrate a fraud upon the Oregon Courts, causing damage to
the Samuel Rupert Trust, and William.

Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

scheme, corrupt General Judgments were to be obtained, so they could be used to shield defendants Susan's wrongful conduct, through misapplication of preclusion principles, such as *res judicata,* or collateral estoppel, and/or the *Rooker-Feldman* doctrine, to prevent William from ever getting his 1st day in court, to address the merits of the allegations that defendant Susan has "unclean hands", due to her wrongful intermeddling as a trustee *de son tort* and misappropriation of trust assets.  The wrongful ulterior motive was to rush these trust proceedings to trial as fast as possible (while lulling William into thinking no trial was on the horizon)[10], while litigating few issues, and then game the system to obtain probate department general judgments from an eccentric part-time, retired judge, with an unorthodox judicial philosophy[11] (no ripe controversy required to be alleged, and no *prima facie* case required to be shown, for a trust beneficiary to obtain coercive relief against an out-of-state trustee's discretionary actions), that could be used to create the false impression that William received his full and fair day in Court, upon all disputed issues, as guaranteed by the petition rights of the First Amendment to the United States Constitution.  In other words, the scheme was to abuse and misuse the Clackamas County Circuit Court, in Oregon, to deprive William of his constitutional right to a full and fair trial, on the merits, before an impartial and competent tribunal, upon *inter alia* the issues related to defendant Susan's alleged  "unclean hands", as an

---

[10]  Throughout the summer of 2010, defendant Whitman mailed letters to William, that were not filed with the Court, wherein he repeatedly made the deliberately false representation that Clackamas County would require a Settlement Conference to be conducted prior to trial; while scheming with the Clackamas County Circuit Court to rush the Irene Rupert Trust matter to a trial without any Settlement Conference being conducted, and without any advance notice of trial being provided to William, by the Oregon Court.

[11]  This Senior Judge from Oregon ran an unusual courtroom, several Wednesdays per month, where no ripe justiciable controversy was required to be alleged, and no *prima facie* case was required to be shown, for a trust beneficiary to obtain coercive relief against an out-of-state trustee's discretionary actions.  Her unprecedented judicial style involved proceedings that shared many similarities with the "Make-A-Wish Foundation", but few with how the constitutional judicial power is supposed to be exercised, in state and federal courts.

intermeddling trustee *de son tort,* who misappropriated trust assets disproportionately, and overfunded the Irene Rupert Trust (100%), while underfunding the Samuel Rupert Family Trust (0%), during the 7 month period after the death of Samuel Rupert, between 10/12/08 and 05/12/09.

72.     Meanwhile, by Order dated September 9, 2010, United States District Court Judge Jeremy Fogel granted the motions to dismiss, in a well-reasoned ruling that relied upon the false representations that Irene Rupert was the Successor Trustee of the Samuel Rupert Trust, and there were no disputed or relevant assets located in California, to find that the exercise of personal jurisdiction by California, in the action founded upon diversity jurisdiction, would not be reasonable, because there were not sufficient contacts with the forum state.  The dismissal was not on the merits, and has no preclusive effect upon the instant case, which is premised upon "federal question", not "diversity" jurisdiction (and new facts are alleged).

73.     Additionally, as shown by the subsequent state court papers and pleadings defendant Susan, defendant Whitman and defendant Cartwright filed in Oregon, and/or mailed to plaintiff William in California, as part of the informal discovery production they made at the end of July, 2010[12], significant assets, in excess of  $400,000.00, have been located in the State of California, since February and March of 2009, in brokerage accounts held with Charles Schwab Institutional.   Accordingly, the dismissal of Case No.: 5:09-cv-02758 JF (RS) was due

---

[12]  Unfortunately, the key documents were buried among the 2,044 pages of documents which were all scanned onto a CD, and mailed to William.  By the time William laboriously slogged through all 2,044 pages on the CD, and discovered the misrepresentations concerning the location of trust assets, Judge Fogel had entered his Order granting the joint motion to dismiss, for lack of personal jurisdiction.  Shortly thereafter, Judge Fogel took his leave of absence, from the bench, to accept an administrative role in Washington, D.C.  His unavailability affected William's decision not to seek permission to file a Motion for Reconsideration, as did the death of Irene Rupert on March 12, 2010, 6 months before Judge Fogel entered his order dismissing the case for lack of personal jurisdiction.

Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

to a successful fraud upon the court, and upon William, through the materially false Declarations of Irene E. Rupert[13], Susan Bond, and Gile R. Downes, which were electronically filed in the case by defendants Zusman, Eng, and MacGregor, in support of their joint Motion to Dismiss, and served by mail upon William.

74.     Meanwhile, in the Oregon litigation concerning the Irene Rupert Trust, Case No. CV10030497, plaintiff William filed an Answer, Affirmative Defenses, and Counter-Claims, during July of 2010, which included *inter alia,* claims of conversion, and which requested an accounting with a tracing of assets, and the imposition of a constructive trust, due to defendant Susan's alleged "unclean hands" as an intermeddling trustee *de son tort*.

75.     The case proceeded to a Bum's Rush Ambush court trial on October 27, 2010, without any unambiguous notice of trial, in advance, from the state court, and only two days trial notice from defendant Susan, who was the petitioner in that case. William only learned about the planned bench trial on October 20, 2010, when he was abandoned by the attorney he had retained a week earlier, to represent him at the Case Management Conference he thought was going to be conducted on October 27, 2010. This attorney, Victoria Blachly, informed William a trial was scheduled, and after her office communicated over the phone with defendant Whitman, she was not going to honor the retainer agreement William had signed (although she kept most of the initial retainer deposit). Upon learning of the planned trial, William made

---

[13] While the Declaration of Irene E. Rupert, dated November 3, 2009 asserted that Irene had "never owned any property located in California" and that "All the property in my late husband's estate is located in Oregon. No estate property is located in California.", neither of those statements were truthful or accurate. At the time she made the false declaration, which her attorneys filed, and Judge Fogel relied upon, the truth is that Irene Rupert owned two brokerage accounts located in San Francisco, California, held by Charles Schwab Institutional, and her late husband's estate included another brokerage account located in San Francisco, California, held by Charles Schwab Institutional. The combined value of these accounts, which were transferred to from either Michigan or Ohio, to California, in February and March of 2009, was well in excess of $400,000.00.

54
Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

motions for a settlement conference, for designation as a complex case, and for postponement of trial. All of these motions were denied on October 26, 2011, by Clackamas County Circuit Court Judge Steven L. Maurer, following defendant Whitman's abuse of process through the wrongful *ex parte* contact he had with the Clackamas County Circuit Court on October 26, 2010, over the phone, either directly with Judge Maurer, or indirectly, which was conveyed to Judge Maurer, and which reflected upon the purported merits of the case, from defendant Whitman's point of view. This wrongful and improper *ex parte* communication clearly influenced Judge Maurer's decisions on October 26, 2010, when he exercised his discretion to allow the Bum's Rush Ambush Expedited Bench Trial to proceed, to William's extreme detriment.[14] It appears that former Judge Maurer relied upon defendant Whitman's personal opinion that William's disinheritance was a slam-dunk, no-brainer type of case, and William was going to lose no matter what, so any error would be harmless, if William's constitutional right to a full and fair trial was violated by the Oregon Court.

76.    Ultimately, in the Irene Rupert Trust case, the state court ruled that plaintiff William should be disinherited under the *in terrorem* clause contained in Irene E. Rupert's July 23, 2009 trust agreement, and treated as if he died prior to Irene E. Rupert. The state court further ruled that this finding of "civil death", had the effect of destroying plaintiff William's "standing" to maintain the Affirmative Defenses, and Counter-Claims which he had filed in the state court action. Accordingly, the merits of plaintiff William's Affirmative Defenses and Counter-Claims were not addressed, considered, or adjudicated, in the Oregon state court

---

[14]  Significantly, defendant Whitman admitted to this improper *ex parte* phone contact, to stop the Bum's Rush Ambush Expedited Bench Trial from being postponed by Judge Maurer, during his testimony on March 23, 2011, before Senior Judge Welch, at the hearing on defendant Susan's request for a Supplemental Judgment awarding her attorney fees in the case concerning the Irene Rupert Trust. (See Reporter's Transcript, March 23, 2011, Vol. IV, p. 514:20-25)

proceedings.  A General Judgment was entered in this case on January 4, 2011.  No trust accountings were required or submitted by any party during this state court proceeding.  The plaintiff William filed a Motion to Vacate the General Judgment, which contended the judgment is void *ab initio,* based upon *inter alia,* the failure to join defendant James as a party in the declaratory judgment action, as required by well settled Oregon law, if subject matter jurisdiction is to be acquired.  The Motion to Vacate was denied, and is currently on appeal to the Oregon Court of Appeals, as Appeal A148714.   The Supplemental Judgment (Attorney Fees) is also on appeal, in the same appellate proceeding, where the briefing stage just concluded, on June 3, 2013.

77.     During the Bum's Rush Ambush Expedited Bench Trial that was conducted in Case No. CV10030497, regarding the Irene E. Rupert Trust, u/a/d July 23, 2009, defendant Susan testified that Samuel J. Rupert apparently forgot to ever fund his trust, and that she did not have any Schedule A, trust asset schedule files.  However, this is contrary to what she told plaintiff William on January 12, 2009, during the conversation that took place in her kitchen, when plaintiff William first expressed concern that Samuel and Irene Rupert's trusts may not have been properly funded, when he was shown copies of the terms of the trusts that had blank Schedule A pages.  At that time, defendant Susan told him not to worry, because she had a separate file of the numerous Schedule A, trust asset schedules, which Samuel J. Rupert prepared over the years, subsequent to 1995, for both of their Trusts.  As such, defendant Susan has engaged in wrongful conduct that amounts to either the spoliation, or suppression, or wrongful destruction, of evidence, in collaboration with defendants Whitman and Cartwright.

78.     In Case No. CV10030498, where plaintiff William was named as both a remainder beneficiary and as the nominated Successor Trustee of the Samuel Rupert Trust, he

also filed an Answer, and a number of Affirmative Defenses that contested subject matter jurisdiction over the Michigan Trust (and the Michigan Trust's California assets), and personal jurisdiction over plaintiff William, who was administering the Michigan Trust's non-Oregon assets, in California.  Eight days after plaintiff William timely filed and served his Answer and Affirmative Defenses, defendant Whitman, the attorney for defendant Susan in that case, where she was again the petitioner, improperly mailed a corrupt General Judgment to the Court, although no judgment had been rendered in open court, and Senior Judge Welch had ruled on March 23, 2011 that the case was not over, and discovery was still open in the case (when she calendared William's anticipated motion to compel production of documents for hearing on May 11, 2011).  Unfortunately, defendant Whitman's efforts at gaming the system were successful, and the General Judgment document was unwittingly signed by the part-time, senior judge who was assigned to the case, non-party co-conspirator Senior Judge Welch, although no trial had been scheduled or conducted upon the disputed issues of law and fact that were joined by the pleadings, on April 4, 2011.  This General Judgment was entered on April 28, 2011, which purports to render the advisory opinion that the trust assets should be distributed as soon as reasonably possible (without making any findings of fact or conclusions of law, although they had been timely requested by plaintiff William on October 27, 2010, under ORCP 62 A).  No trust accountings were required or submitted by any party during this state court proceeding.  The General Judgment was timely appealed by plaintiff William, on May 5, 2011, and the appeal is pending before the Oregon Court of Appeals, as Appeal No. A148529.  The briefing stage for this appeal ended on June 8, 2013.

79.     Defendant James fully supported all activities which defendant Susan engaged in, and he has ratified and expressed his support for defendant Susan's actions, in total, in

57

Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

written documents which have been filed in yet another probate department proceeding[15], in the

courts of Oregon, in Case No. CV10105251, which was commenced on May 11, 2011.  In this

most recent proceeding, where both defendant James and defendant Susan are the petitioners, in

another declaratory judgment action, they obtained another Bum's Rush Ambush Expedited

Bench Trial, this time from non-party co-conspirator Judge Maurer, who granted them a

judgment that purports to remove plaintiff William as successor trustee, and declare that the

assets of the Samuel J. Rupert Trust consist of only the one Charles Schwab Institutional

brokerage account, consistent with the forged trust instrument and manufactured evidence

which was submitted to the Clackamas County Circuit Court, on October 27, 2010, by

defendant Susan, defendant Whitman and defendant Cartwright, as Exhibit #70.  Plaintiff

William also filed a timely appeal from this judgment, which was assigned Appeal No.

A150014, before it was consolidated with Appeal No. A148529.  The consolidated appeal is

currently pending before the Oregon Court of Appeals, where the briefing stage ended on June

8, 2013.

80.    After defendant Susan obtained her first judgment for attorney fees, on April 28,

2011, in Clackamas County Case No. CV10030497, she collaborated with defendants Whitman

and Johansson to engage in wrongful enforcement of judgment collection activities.  These

wrongful collection activities commenced on May 11, 2011, when defendant Whitman signed

and mailed a document to plaintiff William which was entitled "Petitioner's Notice of Demand

---

[15]  James also participated in the conspiratorial scheme to underfund the Samuel Rupert Trust, and overfund the Irene Rupert Trust, by way of the email he sent to William, wherein he fraudulently asserted that the Samuel Rupert Family Trust had only been intended to be a small Family Trust.  He also denied that William had been stonewalled by defendants Susan and Downes, an apparent reference to the forged Schedule A page of the original Samuel Rupert Trust, u/a/d 11/01/1995 instrument, that defendants Susan and Whitman mailed to William, shortly after Irene Rupert died, where the forged Schedule A page falsely made it appear that the Trust was only intended to be a small trust.

to Pay Judgment".  This notice demanded payment within 10 days, pursuant to Oregon Revised

Statute ("ORS") 18.265(1)(a).  However, ORS 18.265(1)(a) has no extra-territorial effect,

outside the State of Oregon.  To lawfully enforce an Oregon judgment in the State of California,

the Oregon judgment is require to be domesticated in California, pursuant to the provisions of

the California Sister-State Money Judgment Act (CCP §§ 1710.10 to 1710.65).

81.     Shortly thereafter, defendants Whitman, Susan, Johansson and Cartwright

conspired upon a scheme to abuse the garnishment process of the State of Oregon, and a process

serving company located in the State of California, by foisting off Ms. Johansson's self-issued

Writs of Garnishment, dated May 19, 2011, on May 27, 2011, in dealings with Eunice Attorney

Services, 212 Laurel Street, Suite 207, Santa Cruz, CA 95060, wherein this professional process

serving company (a member of NAPPS), was fraudulently, and in bad faith, given assurances

by defendant Johansson that the Oregon Writs of Garnishment could lawfully be served upon

William Rupert, at his residence in Ben Lomond, California, in his individual capacity, *and in*

*his capacity as the trustee of the Samuel Rupert Trust*, because the property he was controlling

in the State of California was "lawfully subject to collection by this writ."  Eunice Attorney

Services reasonably relied upon Ms. Johansson's fraudulent certification, and personally served

the Oregon Writs of Garnishment on plaintiff William.  Had Eunice Attorney Services been told

the truth, that the Oregon Writs of Garnishment had no extra-territorial effect, outside of the

State of Oregon, they would not have served the Writ of Garnishment upon William.  As part of

the scheme to deceive Eunice Attorney Services, so they would harass William by serving

invalid documents upon him, defendant Johansson used the telephone, or email, or fax, or the

postal service, to contract with the California process serving company, and to physically

transmit the Oregon Writs of Garnishment to Santa Cruz, CA, which were personally served

upon William.

82.    On August 5, 2011, William mailed a letter to defendant Johansson, with copies to defendants Susan, Whitman and James, wherein he alerted these defendants to the facts that: (1) the Supplemental Judgment (Attorney Fees) was void *ab inito*; (2) even if valid, the Supplemental Judgment was not directly enforceable in California, until it was domesticated in California under the California Sister-State Money Judgment Act; and, (3) even if domesticated in California, William would be entitled to a stay of enforcement, upon his request, due to his pending appeal from the Supplemental Judgment in Oregon Court of Appeals No. A148714. The letter asked that defendant Johansson stop annoying William with her improper, illegal and foolish enforcement efforts, that did not comport with either Oregon or California law.

83.    Nonetheless, ignoring the fact that Oregon Writs of Garnishment have no legal effect upon financial institution branches holding funds located outside of the State of Oregon, pursuant to ORS 18.655(1)(e), defendants Susan, Johansson, Whitman and Cartwright schemed to misuse another Oregon Writ of Garnishment, dated October 19, 2011, which was self-issued by defendant Johansson, and initially delivered to a branch office of T.D. Ameritrade, in the State of Oregon, although William had never opened any T.D. Ameritrade accounts in the State of Oregon.  As planned by the defendants, this scheme was initiated in Oregon, but it was aimed at the assets held by T.D. Ameritrade in Nebraska, which related to the account William had opened at a T.D. Ameritrade branch located in Soquel, California.  The defendants' scheme was successful, and they foisted off their Oregon Writ of Garnishment to wrongfully reach assets controlled by plaintiff William which were held by T.D. Ameritrade, located in Nebraska, without compliance with the Nebraska Uniform Enforcement of Foreign Judgments Act.  These wrongful collection activities resulted in plaintiff William losing access to more than $5,000.00

in assets, and control over the brokerage account.  The United States Postal Service was utilized

to carry out these wrongful collection activities, wherein defendant Johansson falsely certified

that the funds in Nebraska were "lawfully subject to collection by this writ.".

84.     On November 3, 2011, in collaboration with defendants Whitman and

Johansson, who had knowledge of her plans, 0defendant Susan filed the Oregon money

judgment for attorney fees she obtained in Clackamas County Circuit Court Case No.

CV10030497, concerning the Irene E. Rupert Trust, and commenced proceedings in the State of

California, Santa Cruz County Superior Court, under the California Sister-State Money

Judgment Act (as an In Pro Per litigant).  Upon filing her application, which had a copy of the

Oregon money judgment attached, defendant Susan obtained a Clerk's Judgment, issued in

Santa Cruz County Superior Court Case No. CISCV172524.  Thereafter, she was required by

statute to promptly serve the Clerk's Judgment, and a Summons, upon plaintiff William, who

was entitled to a safe harbor period of 30 days (after the personal service of the Clerk's

Judgment and Summons), within which time to seek a stay or an order vacating and setting

aside the Clerk's Judgment, before defendant Susan could lawfully obtain a Writ of Execution

upon the Clerk's Judgment.  Once defendant Susan was armed with a Writ of Execution, she

would thereafter be in a position to give it to the County Sheriff, with instructions to levy upon

plaintiff's property, such as any known bank accounts.

85.     However, instead of following the correct procedures, to reach assets of plaintiff

William which were held by financial institutions located in California, under the California

Sister-State Money Judgment Act, defendants Susan, Johansson, Whitman and Cartwright

schemed to abuse the process of the State of Oregon, and the State of California, by having

defendant Johansson self-issue multiple Oregon Writs of Garnishment, which defendant

Johansson knew, or should have known, had no extra-territorial validity beyond the State of Oregon, and they were fraudulently foisted off upon J.P. Morgan Chase Bank, N.A., as legal process that required them to levy upon funds of plaintiff William, which were held at the Scotts Valley, California branch, of J.P. Morgan Chase Bank, N.A..  The Writs of Garnishment were self-issued by defendant Johansson on November 4, 2011, and on November 8, 2011, copies were faxed and mailed to plaintiff William, in California.

86.     The initial delivery of 2 Writs of Garnishment to J.P. Morgan Chase Bank, N.A., on November 4, 2011, at a Portland, Oregon branch, took place in a state where William never had a bank account.  Although these enforcement actions were initiated in Oregon, they were aimed at William's funds that were held by the Scotts Valley, California branch of J.P. Morgan Chase Bank, N.A. (the account number of the California checking account was listed on the Writs of Garnishment, along with William's residential address and mailing address, in California).  These efforts were initiated with the expectation that the illegal enforcement efforts would cause wrongful levies to be made upon funds which were held in plaintiff William's Scotts Valley, California checking account.  The wrongful levies were indeed made, on November 4, 2011, and November 7, 2011.  These wrongful levies resulted in roughly $7,000.00 being transferred out of plaintiff William's California checking account, and sent to defendants Susan, Johansson, Whitman and  Cartwright, in Oregon.  Another damaging result of the wrongful collection activities of defendants Susan, Johansson, Whitman and Cartwright was that J.P. Morgan Chase Bank, N.A. placed a hold on plaintiff William's California checking account, on November 10, 2011, in the amount of $9,999,999.99, which is not set to expire until December 31, 2099.  This hold has resulted in plaintiff William being unable to access Social Security payments that were directly deposited into the California checking

account in November and December of 2011.

87.     Following notification from J.P. Morgan Chase Bank, N.A., to plaintiff William, on or about November 10, 2011, that defendants Susan, Johansson, Whitman and Cartwright had caused wrongful levies to be made upon funds held in plaintiff William's California checking account, plaintiff William checked the on-line records for the State of California, Santa Cruz County Superior Court, and he discovered defendant Susan had obtained a Clerk's Judgment on November 3, 2011, when she commenced Santa Cruz County Superior Court Case No. CISCV172524, under the California Sister-State Money Judgment Act.

88.     Thereafter, plaintiff William promptly applied for, and obtained, an *ex parte* Order Staying Enforcement Of Sister-State Judgment, Pending Appeal, which was entered in Santa Cruz County Superior Court Case No. CISCV172524 on November 17, 2011, signed by Santa Cruz County Superior Court Judge Timothy  R. Volkman.  No undertaking was required, as a condition for this stay order.

89.     Accordingly, if defendants Susan, Johansson, Whitman and Cartwright would have fully complied with the California Sister-State Money Judgment Act, and the Nebraska Uniform Enforcement of Foreign Judgments Act, stays of enforcement (pending appeal), could have been, and would have been, promptly obtained by plaintiff William, and he would not have lost roughly $7,000.00 in funds from his California checking account, or roughly $5,000.00 in funds from the T.D. Ameritrade brokerage account in Nebraska.

90.     During October of 2012, William's FAC was served upon defendant Susan, in the instant case, and she responded with another knowingly false Declaration of Susan Bond, filed in support of her Motion to Dismiss under FRCP 12(b)(2), for lack of personal jurisdiction, filed electronically on November 30, 2012, and mailed to William in California, wherein she

falsely claims that the relevant Charles Schwab Institutional brokerage accounts, which were

opened during early 2009, had been opened by the late Irene E. Rupert in Oregon (not in

California, as plaintiff William alleges in support of the argument that there is a sufficient nexus

between the State of California, the parties and the causes of action, to make the exercise of

personal jurisdiction reasonable, in this forum).  This assertion is knowingly false, because

defendant Susan and defendant Whitman made a limited voluntary production of documents

and some financial records in July 2010 that conclusively establish the late Irene E. Rupert's

only involvement was making non-party co-conspirators Kenneth A. Dillon and/or  Dillon &

Associates, Inc., her attorney-in-fact, under a withdrawal power of attorney, in early February of

2009; and thereafter, the Power of Attorney was used by Dillon & Associates, Inc. (Kenneth A.

Dillon), to open the 3 new Charles Schwab Institutional accounts, in San Francisco, California,

from Jackson, Michigan, as a Registered Investment Advisor who was eligible to open such

accounts[16].  After opening the 3 Charles Schwab Institutional accounts,  non-party co-

conspirators Kenneth A. Dillon and/or  Dillon & Associates, Inc., also caused the accounts to be

funded with assets that were transferred out of 4 brokerage accounts from either Ann Arbor,

Michigan (if the funds are considered to have been held at the location of Beacon Investment

Company, in Ann Arbor, Michigan), or Cincinnati, Ohio (if the funds are considered to have

been held at the location of National Financial Services, Inc., in Cincinnati, Ohio) , to San

Francisco, California, in February and March of 2009.


///

///

---

[16]  Because the late Irene Rupert was not a Registered Investment Advisor, she was not
eligible to directly open any Charles Schwab Institutional brokerage accounts.

Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

## VII.   Federal Question Claims For Relief

**A.   First Claim For Relief  (Violations of RICO, 18 U.S.C. § 1962(c))**
**(Against RICO Defendants - Susan, Downes, Zusman, Eng, MacGregor, Kimberlin,**
**Whitman, and Johansson)**

91.     Plaintiff William re-alleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

92.     At all relevant times, plaintiff William is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

93.     At all relevant times, each RICO Defendant (Susan, Downes, Zusman, Eng, MacGregor, Kimberlin, Whitman, and Johansson), was a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

94.     Plaintiff William seeks damages against these RICO Defendants, for the damages to plaintiff's property and economic interests, according to proof, as established by the evidence, at trial, based upon the fraudulent schemes that were utilized through overlapping and constantly changing patterns of racketeering activities which included numerous predicate acts of wire fraud, mail fraud, bank fraud, interstate transportation of stolen property, attempted extortion, and obstruction of justice (destruction or suppression of evidence, forgery and manufacture of false evidence, and perjury, to corruptly influence, or endeavor to corruptly influence United States District Court Judges), during the last four years, by these overlapping, associated RICO enterprises, whose activities have had an effect upon interstate commerce.

95.     Over the course of several years, as part of schemes that commenced on October 13, 2008, defendant Susan and her co-defendants and co-conspirators have managed to defraud, embezzle, extort, squeeze-out, and otherwise tortuously injure plaintiff William's property interest (vested and prospective), and economic relations, by means of a plan they conceived

and executed through actions that had significant effects which were felt in the States of Michigan, Ohio, Oregon, Nebraska, and California.  It has been carried out by an Oregon/California based association-in-fact consisting of five individual racketeering enterprises, which have combined in various combinations, at various times, as needed to maintain and perpetuate defendant Susan's unjust enrichment though her wrongful intermeddling as a Trustee *de son tort* and misappropriation of trust assets.  The common link, throughout the 6 RICO Enterprise Stages that are detailed herein, is that defendant Susan participated in all 6 RICO Enterprise Stages, as she directed the Trustee *De Son Tort* RICO Enterprise, through wrongful means, for a wrongful purpose, in a fraudulent manner (to William's extreme detriment, whose civil death has been declared in the Oregon proceedings, which are currently on appeal).

The wrongful activities of this association-in-fact RICO Enterprise are as follows:

### RICO Stage One - The Trustee *De Son Tort* RICO Enterprise

96.    RICO Stage One concerns the misappropriation/conversion of trust assets, and breaches of trust, by an intermeddling trustee *de son tort,* defendant Susan, following her fraudulent and deceitful statements to William, during an interstate telephone conversation on October 13, 2008, the day after the late Samuel J. Rupert died.  As part of her fraudulent schemes, Susan has engaged in wire fraud, mail fraud, bank fraud, and the interstate transportation of stolen property.  Her false claim to be the authorized Successor Trustee caused William not to immediately accept his nominations to be in charge, under the amended estate plans Samuel and Irene Rupert executed on January 26, 2004.  Her false claim to have more recently amended estate plans, that trumped William's amended estate plans from 2004, allowed her to gain control of approximately $900,000 in assets, none of which was real estate, belonging to the late Samuel Rupert and his surviving spouse at the time, Irene Rupert.

Defendant Susan also gained complete control and possession of Samuel and Irene Rupert's estate plans and confidential financial records.  Significant portions of these records, such as Samuel Rupert's thick Schedule A file (listing the assets assigned to the Trusts, at various times, subsequent to 1995), are still being wrongfully concealed and suppressed by defendant Susan; and/or she has destroyed the Schedule A file, to conceal what would be further evidence of her breaches of trust, as expressed in the totality of Samuel Rupert's estate plans, and the terms of his Trust.

A.      RICO Stage One concerns the Trustee *De Son Tort* RICO Enterprise, as directed by defendant Susan, with assistance from: (1) her husband Robert Bond, as a non-party co-conspirator; and, (2) non-party co-conspirators Dillon & Associates, Inc., and Kenneth A. Dillon, who is a Registered Financial Advisor, located in Jackson, Michigan.  Plaintiff William reasonably relied upon defendant Susan's deceitful statements concerning the thrust of Samuel Rupert's estate plans (everything to Irene, nothing to any child until Irene died), and which adult child was designated in Samuel and Irene Rupert's operative estate plans as the adult child to be in charge of their financial affairs, given that the late Irene Rupert did not want to be in charge, with her faulty memory and Alzheimer's Disease.  Defendant Susan falsely told William that she had amended estate plans which put her in charge, and which trumped William's amended estate plans from January 26, 2004, so William allowed defendant Susan to commence her occupancy of the Office of the Trustee, for both the Samuel Rupert Trust and the Irene Rupert Trust, under the mistaken belief that she had legal authority to act in this fiduciary capacity. However, things did not go smoothly, and this sibling rivalry family feud, initially between just a sister (Susan), and a brother (William), finally erupted into a controversy, approximately 7 months after the death of their father, the late Samuel J. Rupert, due to the

inept administration of defendant Susan.  It turns out that defendant Susan wrongfully self -

appointed herself to be the administrator of Samuel and Irene Rupert's assets, which were worth

approximately $900,000 at the time.  Apparently, defendant Susan thought she should be in

charge, as the first born child, seemingly believing in a form of Primogeniture.  However,

Samuel and Irene Rupert's operative estate plans (separate trusts and pour-over wills, prepared

and amended in Michigan in 1995 and 2004[17]), stated William was the adult child they wanted

to be their administrator (successor trustee and personal representative), with Susan the second

choice, and their youngest son, James, the third choice (if Irene was unwilling or unable to

perform, which turned out to be the case due to Irene's age, 89, and her faulty memory due to

her Alzheimer's Disease).  Accordingly, Susan's actions and inactions were all wrongfully

taken, without any legal authority, as an intermeddling trustee *de son tort,* whom the law only

regards as a type of "trustee", for the purpose of imposing liability and obligations upon the

wrongdoer.  All of Susan's actions represent constructive fraud, by one wrongfully acting in a

fiduciary capacity, as a matter of well settled law.

        B.      Significantly, during this RICO Stage One, defendant Susan openly held

herself out to be the Successor Trustee, in mailed documents and electronic communications,

who was informally administering all of the combined Family Assets belonging to either the

late Samuel Rupert, or his surviving spouse at the time, Irene Rupert.  Importantly, defendant

Susan had no legal representation or assistance during this initial 7 month period of time, during

---

[17]  Both Samuel and Irene Rupert, in their Michigan estate plans, named their 3 children as
remainder beneficiaries, who were to receive equal shares, upon the final distribution of the
estate and trust assets.  No restrictions were put upon the remainder beneficiaries access to
trust administration information.  These Michigan estate plans did not contain any *in terrorem*
clauses.  These estate plans clearly express a mutual desire, by Samuel and Irene Rupert, that
their respective Estates and Trusts be administered by any personal representative, or
successor trustee, in an open, and transparent manner.

which she overfunded the Irene Rupert Trust (100% of assets), and underfunded the Samuel

Rupert Trust (0% of assets).  Susan, and/or non-party co-conspirator Kenneth Dillon, caused the

transfer of assets from 4 Michigan brokerage accounts, which were used to fund 3 new

California brokerage accounts with Charles Schwab Institutional.  Susan also transferred funds

to, and between, various accounts at an Oregon Bank (Umpqua Bank), using an illegal and void

*ab initio* Amendment to Trust Agreement document, dated January 11, 2009, under which she

purported to unilaterally make herself the Successor Trustee of the Irene Rupert Trust, u/a/d

11/01/1995 (without Irene Rupert's knowledge or consent).  Pursuant to Oregon Revised Statute

130.505(5), Susan's Amendment to Trust Agreement document is illegal because it was made

under the authority of a power of attorney document's unenforceable amendment powers (they

are unenforceable because the terms of the Irene Rupert Trust do not permit amendments under

a power of attorney, or by anybody other than Irene Rupert.  As previously mentioned, the

problems in this sibling rivalry family feud simmered for 7 months, until a full blown

controversy erupted after Susan provided a purported accounting, on May 12, 2009, to which

William objected.  William's written letter of objection, dated May 17, 2009, also informed

Susan her Amendment to Trust Agreement document was void *ab initio,* and she needed to

relinquish control to William, if all she had were inferior power or attorney documents, which is

what William suspected, by that time (which did not trump William's amended estate planning

documents from January 26, 2004 – even if they were more recent).  William's written letter of

objection also asked Susan to fully account for all her actions subsequent to Samuel Rupert's

death, in a proper accounting, and to provide him with copies of Samuel and Irene Rupert's

complete estate plans and financial records, along with her credentials to be in charge.

        C.        Only at this point (after Susan put William on "inquiry notice" of her

breaches of trust, and he thereafter made the reasonable inquires that were required of him, to investigate the matter), did Susan begin to seek legal assistance and representation, by contacting defendant Downes, to discuss her legal rights and obligations, and/or to solicit his assistance in resisting and deflecting William's inquiries.  Susan's collaboration with defendant Downes, and the Schulte law firm, signified the end of RICO Stage One, and the transition to RICO Stage Two, with the first of her collaborations with 7 errant attorneys-at-law, and the 4 law firm RICO Enterprises named herein, all of which shared the same goal of covering up, concealing, maintaining and perpetuating Susan's fraudulent misappropriation/conversion schemes, as an intermeddling trustee *de son tort* (in exchange for a share of the ill-gotten gains and misappropriated assets she extracted, and controlled, through her RICO Phase One actions and inactions).  These sequential attorney cover-up schemes have evolved, as necessary, to thwart William's continuing efforts to hold defendant Susan accountable for her "unclean hands", based upon her misappropriation/conversion of trust assets as an intermeddling trustee *de son tort,* whose fraudulent schemes relied upon wire fraud, mail fraud, bank fraud and the interstate transportation of stolen property, resulting in damages to the property and economic interests of William, and the Samuel Rupert Family Trust.  In order to hold on to her ill-gotten gains, and maintain control of all assets, without accountability, defendant Susan solicited errant lawyers who helped her thwart William's efforts to investigate her administration, and gain control of the Family Assets.  These cover-up/stonewall phases involved the 7 lawyer defendants, in various combinations of various RICO defendants, who acted in association with the Trustee *De Son Tort* RICO Enterprise, as directed by defendant Susan.  The first of these association-in-fact RICO Enterprises formed around May 20, 2009, and is described below.

///

### RICO Stage Two - The Trustee *De Son Tort* RICO Enterprise &
### The Associated *Schulte* RICO Enterprise

97.     RICO Stage Two was the first cover-up/stonewall phase, concerning the Schulte

RICO Enterprise, as directed by defendant Downes (in association with the Trustee *De Son Tort*

Enterprise, as directed by defendant Susan), wherein defendants Downes, Susan and James

conspired to isolate the late Irene Rupert from William, and thereafter to exploit 90 year old

Alzheimer's Disease stricken Irene Rupert, by fraudulently convincing her she needed to

execute drastically different estate plans, which were exorbitantly expensive, to shield and

protect defendant Susan from plaintiff William's written requests for information and

documents.  All of these defendants grossly misrepresented William's "inquiry notice"

investigation efforts, to the late Irene Rupert, as if William was making unjustified,

unreasonable, and socially intolerable "attacks and demands" upon defendant Susan (which

Susan was thereafter justified in resisting).  The late Irene Rupert was led to believe that she

should protect defendant Susan, and William should be disinherited to do so, unless he stopped

asking Susan to account, and share the estate plans and financial records in her possession.

Through such a disinheritance scheme, in the State of Oregon, they calculated, plaintiff William

would lose the necessary "standing" to be heard to complain about the administration of the

overfunded Irene Rupert Trust, and would be entitled to no information.  The late Irene Rupert

was fraudulently induced to sign new Oregon estate plans, at great expense, on June 9, 2009,

which contained specially crafted *in terrorem* provisions, which were designed to shield and

benefit defendant Susan, so she would never have to account for her wrongful intermeddling as

a trustee *de son tort* who misappropriated/converted trust assets.

A.     Additionally, defendants Susan, James and Downes all conspired to

attempt to extort William's consent to the modification of the Samuel Rupert Trust (through use

71

Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

of the mail and by fax), in an effort to retroactively make defendant Susan the Successor

Trustee, effective June 9, 2009, and to eliminate the possibility that William could ever become

the Successor Trustee, of the Samuel Rupert Trust.  Defendant Downes faxed and mailed his

attempted extortion letter to William, on June 10, 2009.  This extortion letter from defendant

Downes also fraudulently asserted *inter alia* that: (1) defendant Susan had not been the

Successor Trustee of the Samuel Rupert Trust, because the late Irene Rupert was the Successor

Trustee, so defendant Susan had no duty to account; (2) William was not entitled to see any of

Samuel Rupert's estate plans and confidential financial records; (3) all of Susan's actions had

been ratified by the late Irene Rupert; and, (4) the Irene Rupert Trust held 90% of the Family

Assets, and only 10% of the Family Assets was being allocated to the Samuel Rupert Trust.

Defendant Downes subsequently faxed and mailed a second threatening attempted extortion

letter to William, and, in conspiracy with defendant Susan, he wrongfully interfered with

William's efforts to obtain information from the Michigan law firm, and the Michigan attorney

(Alan Price), who drafted and amended Samuel and Irene Rupert's estate plans.  Defendant

Downes did this through his own faxed and mailed communication to the Michigan law firm,

wherein it was falsely stated that the late Irene Rupert was the successor trustee of the Samuel

Rupert Trust, defendant Downes represented her in that capacity, and they did not want the

Michigan law firm to share any information with plaintiff William.  The Michigan law firm

reasonably relied upon this fraudulent letter from defendant Downes, in refusing to share any

information with plaintiff William.  Thereafter, plaintiff William commenced a diversity action

for the tort of intentional interference with economic relations, and conspiracy, as USDC

NDCA Case No. 5:09-cv-02758 JF, on June 20, 2009, against defendants Susan, Downes and

Schulte.

Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

B.      On July 8, 2009, plaintiff William's acceptance of trust papers were delivered to the late Irene Rupert, and to defendants Susan, James and Downes, for the Samuel Rupert Trust, wherein plaintiff William gave notice that he was filling the vacancy in the Office of the Trustee, and the principal place of administration of the trust was going to be located at plaintiff William's residence, in Ben Lomond, California, with a mailing address of P.O. Box 66403, Scotts Valley, CA 95067-6403.

C.      On July 23, 2009, plaintiff William filed a First Amended Complaint ("FAC"), in the federal action, which sought a new declaratory relief remedy from the federal court, and which named the late Irene Rupert as an additional defendant, solely with regards to the declaratory relief remedy.  This new declaratory relief remedy asked the Court to make a declarations that: (1) defendant Susan had "unclean hands" as an intermeddling trustee *de son tort*; (2) the Office of the Trustee, for the Samuel Rupert Trust, was technically vacant, as a matter of law, while occupied by defendant Susan, for the first 7 months, as an intermeddling trustee *de son tort;* (3) the late Irene Rupert never was the Successor Trustee of the Samuel Rupert Trust; and, (4) William effectively became the lawful Successor Trustee of the Samuel Rupert Trust on July 8, 2009, when he filled the vacancy that followed the death of Samuel Rupert on October 12, 2008.

D.      Also, on July 23, 2009, the late Irene Rupert was again exploited and fraudulently induced, by defendants Susan, Downes, James and Schulte, to sign an amended Oregon trust instrument, again at great expense, with expanded *in terrorem* provisions that could trigger his disinheritance, which were expanded to include William's service of his federal complaint and/or a summons on the federal complaint which was filed on June 20, 2009. However, the original federal complaint was never served.  Instead, plaintiff William caused the

FAC to be served upon all named defendants, and they all responded with a joint motion to

dismiss for lack of personal jurisdiction, which was sent electronically to the Court, and mailed

to plaintiff William, on November 4, 2009.  This federal tort action marked the end of RICO

Stage Two, and the beginning of the litigation stages, RICO Stages Three through Six, which

are the obstruction of justice and abuse of process stages, concerning the errant attorneys.

**RICO Stage Three -  The Trustee *De Son Tort* RICO Enterprise &**
**The Associated *Schulte* RICO Enterprise &**
**The Associated *Markun* RICO Enterprise &**
**The Associated *Long & Levit* RICO Enterprise**

98.     RICO Stage Three, was the second cover-up/stonewall phase, and the first

obstruction of justice/abuse of process phase, concerning the Markun RICO Enterprise, as

directed by defendants Zusman and Eng, which collaborated with the Long & Levit RICO

Enterprise, as directed by defendant MacGregor (in association with the Trustee *De Son Tort*

RICO Enterprise, as directed by defendant Susan, and in association with the Schulte RICO

Enterprise, as directed by defendant Downes), wherein the late Irene Rupert was again

exploited, and fraudulently induced to sign a declaration that falsely represented she was the

Successor Trustee of the Samuel Rupert Trust, and all assets and administration activities had

been located in Oregon (when she had never become the Successor Trustee, and more than

$400,000 in assets were located in California at the time).  This false declaration was wired to

the federal court and mailed to plaintiff William (who had no way of knowing its falsity, at the

time, with regard to the location of assets), and it corruptly influenced Judge Jeremy Fogel, who

relied upon the false representations of material facts (as presented in false and misleading

declarations by the late Irene Rupert, and by defendants Susan and Downes), when he ruled the

Northern District of California lacked personal jurisdiction over the Oregon defendants, and

dismissed plaintiff William's diversity action for interference with economic relations,

74

Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

conspiracy, and declaratory relief.

A.      Defendants Zusman, Eng and Markun represented both the late Irene Rupert and defendant Susan, in this earlier federal action, despite the obvious conflict of interests, and in the papers they filed electronically with the Court and mailed to plaintiff William, defendants Zusman, Eng and Markun falsely represented that Irene Rupert was the successor trustee of the Samuel Rupert Trust, without any reasonable basis for making that claim in the written papers they filed with the Court.  Defendant Zusman repeated this material misrepresentation in his oral arguments upon the motion to dismiss, made to Judge Jeremy Fogel, at the motion hearing on January 8, 2010.

B.      Defendants MacGregor and Long & Levit represented defendants Downes and Schulte, in this earlier federal action, and in the papers they filed electronically with the Court, and mailed to plaintiff William, defendants MacGregor and Long & Levit also falsely represented that Irene Rupert was the successor trustee of the Samuel Rupert Trust, without any reasonable basis for making that claim in the written papers they filed with the Court.  Defendant MacGregor repeated this material misrepresentation in her oral arguments upon the motion to dismiss, made to Judge Jeremy Fogel, at the hearing on January 8, 2010.

C.      Judge Fogel heard the motion to dismiss, and then took it under submission, until mediation could take place, prior to his ruling upon the motion.  However, unfortunately, the late Irene Rupert was diagnosed with terminal stage four lung cancer later in January of 2010, and she died on March 12, 2010, before any mediation took place.  Ultimately, 8 months after taking the motion under submission, Judge Fogel granted the motion to dismiss, in an order dated September 9, 2010, wherein Judge Fogel explained that there was not a sufficient "nexus" between California, and the trust assets and trust administration activities, all

of which were located in, or took place in, Oregon.  His Order seems to imply that he believed

the 4 attorneys who all falsely stated Irene Rupert was the Successor Trustee of the Samuel

Rupert Trust.  The impending death of Irene Rupert, in January of 2010, was another event that

caused additional lawyers to be recruited, by defendants Susan and Downes, to aid and abet

defendant Susan's breaches of trust, by using the law as a bludgeon against William, to obtain a

declaration of his civil death, and cause his resultant loss of standing to be heard to complain

about defendant Susan's actions, and loss of standing to obtain any information from defendant

Susan.

### RICO Stage Four - The Trustee *De Son Tort* RICO Enterprise & The Associated *Schulte* RICO Enterprise & The Associated *Cartwright* RICO Enterprise

99.     RICO Stage Four, was the third cover-up/stonewall phase, and the second

obstruction of justice/abuse of process phase, this time concerning the Cartwright RICO

Enterprise, as directed by defendants Whitman and Johansson (in association with the Trustee

*De Son Tort* RICO Enterprise, as directed by defendant Susan; and in association with the

Schulte RICO Enterprise, as directed by defendant Downes).  The planning for this RICO Stage

Four began on February 10, 2010, in anticipation of the death of the late Irene Rupert.  The

scheme that was agreed upon was to commence baseless and unfounded litigation, and abuse

the legal process of the State of California, preemptively, in the Clackamas County Circuit

Court, State of Oregon, as soon as the late Irene Rupert died.  In order to commence the planned

actions in Clackamas County, Oregon, instead of Multnomah County, Oregon, defendant Susan

agreed to perjure herself, by falsely swearing that the principal place of administration, of both

trusts, had remained in Clackamas County after Samuel Rupert died (when the truth is that

defendant Susan unilaterally moved the principal place of administration of both trusts to her

residence in Multnomah County, immediately after the death of Samuel Rupert).  Moreover,

the principal place of administration of the Irene Rupert Trust, u/a/d July 23, 2009 was still at

Susan's residence, in Multnomah County, Oregon, on March 15, 2010, when she commenced

her actions concerning both the Samuel Rupert Trust and the Irene Rupert Trust (which was the

next business day, a Monday, following the death of the late Irene Rupert on March 12, 2010,

because that day fell on a Friday).

        A.     In both probate department trust proceedings for declaratory judgments,

there was an abuse of process by which General Judgments were obtained, contrary to the

normal rules of procedure when no final accounting is submitted to the Probate Department for

approval, under which only Limited Judgments should have been entered.  Fraudulent, corrupt,

and tainted proceedings were orchestrated by defendants Susan and Whitman.[18]  Corruptly,

manufactured evidence was submitted to the Oregon courts, by way of the copy of defendant

Susan's forged version of the Schedule A page of the original Samuel J. Rupert Trust, u/a/d

_____

[18]  In the Irene Rupert Trust case, defendant Whitman used the mails to send fraudulent letters
to plaintiff William, that set him up for a surprise, Bum's Rush Ambush Expedited Bench
Trial, at only the 2nd hearing in the case, on only 7 days' notice, obtained indirectly by
plaintiff William, when he was abandoned by the attorney he retained a week earlier, to
represent him in the Oregon litigation, and at the hearing plaintiff William had been led to
believe would only be a Status Conference, or a Case Management Conference, by defendant
Whitman's fraudulent letters, during the Summer of 2010.
  In the Samuel Rupert Trust case, there wasn't any trial, as defendant Whitman gamed the
system by submitting a General Judgment document that had never been rendered, through
the mails, which was unwittingly and inadvertently signed by the part time, eccentric Senior
Judge assigned to the case.  Defendant Whitman then further gamed the system, again
utilizing the mails, to obtain another corrupt General Judgment, in reliance upon defendant
Susan's corrupt Exhibit #70 and the forged Schedule A page that purports to under fund the
Samuel Rupert Trust, through an impossibility.  The impossibility is the suggestion and
appearance that Samuel Rupert only funded his Trust with a single Charles Schwab
Institutional brokerage account, although this specific brokerage account never existed at any
time during Samuel Rupert's lifetime.  Clearly, a successful fraud upon the Oregon Courts
was perpetrated by defendants, Whitman, Susan, James and Cartwright, using the mails, to the
detriment of plaintiff William and the Samuel Rupert Family Trust.

Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

11/01/1995, which was received into evidence in the Clackamas County proceedings as defendant Susan's Exhibit #70[19].  This manufactured evidence was transmitted to plaintiff William through the mail, and in reliance upon Susan's Exhibit #70, and its forged Schedule A page, corrupt General Judgments were obtained in Oregon that grossly understate the assets of the Samuel Rupert Trust.

B.    Additionally, the disinheritance action against William was used to shield defendant Susan from having to account for her "unclean hands" due to her wrongful intermeddling as a trustee *de son tort*, as defendant Whitman successfully argued to the Oregon trial court that William's disinheritance required the procedural dismissal of William's Affirmative Defenses and Counterclaims (for lack of "standing", as a dead person), without reaching the merits of the allegations that defendant Susan had "unclean hands", due to her wrongful intermeddling as a trustee *de son tort* and underfunding of the Samuel Rupert Trust.

### RICO Stage Five - The Trustee *De Son Tort* RICO Enterprise & The Associated *Cartwright* RICO Enterprise

100.    RICO Stage Five, was the third fraudulent abuse of process phase, again concerning the Cartwright RICO Enterprise, as directed by defendants Whitman and Johansson (in association with the Trustee *De Son Tort* RICO Enterprise, as directed by defendant Susan). After corrupt General Judgments were obtain in Oregon, wrongful and fraudulent collection activities were commenced on May 11, 2011, through the abuse and misuse of the Oregon garnishment process, by defendant Johansson, which utilized electronic communications and mailed documents, to wrongfully extract thousands of dollars from plaintiff William's

---

[19]  Significantly, as part of the fraud upon the Oregon Court, defendant Downes, during his cross-examination testimony on October 27, 2010, made it a point to comment upon the forged Schedule A page of Petitioner Susan's Exhibit #70, and note that it listed a single Charles Schwab account, as the only asset of the Samuel Rupert Trust.  (See 10/27/2010 Reporter's Transcript, Vol. II, p. 142:17-18)

California bank account, in November of 2011, contrary to Oregon law (which gives no extra-territorial effect to Writs of Garnishment served upon financial institutions, pursuant to ORS 18.655(1)(e)).  These wrongful and fraudulent extractions also took place in violation of the California Sister-State Money Judgment Act, which defendant Johansson should have been aware of, because she is licensed by both the State of Oregon and the State of California, as an attorney-at-law (and the law has been well settled in this regard since the early 1800's).

Similarly, in October of 2011, defendant Johansson misused an Oregon Writ of Garnishment to wrongfully and illegally extract funds from a T.D. Ameritrade brokerage account, and cause stolen funds to be transmitted from Nebraska to Oregon.  In response to the cumulative damages to his property and economic relations, caused by RICO Stages One through Five, William commenced the instant action on October 12, 2012.  This was another event that caused defendant Susan to recruit yet another lawyer, her sixth (non-party co-conspirator Devin Robinson), to aid and abet her continuing efforts to avoid accountability for her "unclean hands" as an intermeddling trustee *de son tort,* who has been unjustly enriched, at the expense of the Samuel Rupert Family Trust, and plaintiff William's property interests and economic relations.

**RICO Stage Six - The Trustee *De Son Tort* RICO Enterprise &**
**The Associated *Schulte* RICO Enterprise &**
**The Associated *Long & Levit* RICO Enterprise &**
**The Associated *Cartwright* RICO Enterprise**

101.    RICO Stage Six, is a supplemental phase, based upon the actions taken by various defendants, after the FAC was served, in the instant case.  It is the fourth cover-up/stonewall phase, the third obstruction of justice, and the fourth abuse of process phase; once again concerning the Trustee *De Son Tort* RICO Enterprise, as directed by defendant Susan (in association with the Schulte RICO Enterprise, as directed by defendant Downes; in association

with the Long & Levit RICO Enterprise, as directed by defendants MacGregor and Kimberlin; and in association with the Cartwright RICO Enterprise, as directed by defendants Whitman and Johansson).  In this RICO Stage Six, the prior material misrepresentations of fact that were made in bad faith to Judge Jeremy Fogel, in late 2009 and early 2010, and which were relied upon by Judge Fogel (concerning: (1) all trust assets and administration activities being in Oregon; (2) Irene Rupert being the Successor Trustee of the Samuel Rupert Trust; and (3) defendant Downes representing the late Irene Rupert in her purported capacity as the Successor Trustee of the Samuel Rupert Trust), have again been repeated and re-alleged by defendants Susan, Downes, Schulte, MacGregor, Kimberlin, Long & Levit, Whitman, Johansson and Cartwright[20].

A.      All these RICO defendants (with the exception RICO Defendants Zusman, Eng and Markun), are corruptly endeavoring to influence Judge Lucy H. Koh, and cause her to believe the late Irene Rupert must have been the Successor Trustee of the Samuel Rupert Trust, simply because so many lawyers are repeating the claim, and lawyers are supposed to tell the truth to the Court.  However, there has never been one scintilla of evidence to support this claim, because there is not one scintilla of evidence that shows the late Irene Rupert ever accepted her nomination, by either notice, or by actual performance, following the death of Samuel Rupert on October 12, 2008.

B.      Moreover, within the Declaration of Susan Bond that supports her FRCP 12(b)(2) Motion to Dismiss, which was filed herein on November 30, 2012, defendant Susan

---

[20]  Significantly, defendants Zusman, Eng and Markun are no longer contending, in the instant case, that their former client, the late Irene Rupert, was the successor trustee of the Samuel Rupert Trust, or that defendant Downes represented Irene Rupert in that capacity.  Although they knowingly, or recklessly, alleged as much to Judge Jeremy Fogel, in *Rupert I*, they have not repeated the same falsehood in *Rupert II*.  For this reason, defendants Zusman, Eng and Markun are not named as RICO Defendants, or co-conspirators, in RICO Stage Six.

now swears that the 3 Charles Schwab Institutional brokerage accounts that were opened during early 2009 were opened by the late Irene Rupert "in Oregon". However, this is another impossibility, because Charles Schwab Institutional is only located in San Francisco, California, and has no branch locations anywhere in Oregon. Nor would it have been possible for the late Irene Rupert to independently open an account with Charles Schwab Institutional, because only professionals, such as Registered Financial Advisors, were eligible to open accounts with Charles Schwab Institutional, at the time these accounts were opened[21]. Moreover, documents previously produced by defendants Susan and Whitman conclusively show that these California brokerage accounts were opened by non-party co-conspirator Kenneth Dillon (of Dillon & Associates, Inc.), who is a Registered Investment Advisor, located in Jackson, Michigan. These previously produced documents clearly show that the California brokerage accounts were opened by Kenneth Dillon, from Michigan, pursuant to another of the power of attorney documents the late Irene Rupert was fraudulently induced to sign, by defendant Susan, as part of her fraudulent schemes to misappropriate/convert trust assets, as an intermeddling trustee *de son tort.*

        C.     Additionally, defendants Downes, Schulte, MacGregor, Kimberlin, Long & Levit, Susan, Whitman, Johansson and Cartwright are also corruptly endeavoring to influence Judge Lucy H. Koh, with their false claims that William is seeking his 3rd bite of the litigation apple. This false assertion is premised upon requesting Judicial Notice of an unfiled proposed responsive pleading, which included counterclaims, which was prepared by William, and

---

[21] At the time these brokerage accounts were opened, in early 2009, "Charles Schwab Institutional" was a specialized, stand-alone division, headquartered in San Francisco, California, within the corporation known as Charles Schwab & Co. Inc.. The purpose of this specialized division was to cater to independent investment advisors, such as those with the title of "Registered Investment Advisor". Subsequently, a corporate reorganization took place, and "Charles Schwab Institutional" was renamed "Schwab Advisor Services".

served, but never legally filed in Oregon, because it was rejected by the Clerk's Office, pursuant to ORS 21.100 which states documents shall not be filed unless all of the filing fees are paid (or a waiver of fees is sought). In Clackamas County Oregon Case No. CV10030498, William declined to pay the filing fees necessary to file his counterclaims against third party defendants Downes and Whitman. Similarly, neither Downes of Whitman paid the filing fee necessary to appear as third party defendants (as shown by the fact that the checks they tendered were returned to them, un-negotiated, by the Clerk's Office). As a matter of Oregon statutory law, because the filing fees were not paid, William's counterclaims were never filed (or litigated, or "dismissed", as the defendants' falsely contend). Accordingly, these defendants' arguments and requests for Judicial Notice of an unfiled pleading document, to support a corrupt *res judicata* argument that is not properly part of the FRCP 12(b)(2) Motions to Dismiss, amounts to the obstruction of justice, which has been carried out by acts of mail fraud and wire fraud.

### The RICO Patterns and Predicate Acts

102. The RICO Defendants' conduct violates the Racketeer Influenced and Corrupt Organizations Act, 28 U.S.C. § 1961 *et seq.,* with predicate acts of mail and wire fraud, bank fraud, interstate transportation of stolen property, extortion, and obstruction of justice, among others. Plaintiff William incorporates by reference the attached Appendix A, which sets forth, in Chart form, RICO Stages 1-6, 36 Predicate Acts occasions, and 87 individual Predicate Acts, that have occurred during the 4 years before the initial Complaint was filed, or subsequently, during the course of the instant litigation, which represent violations of the RICO statute. The Appendix A Chart provides 5 categories of information: (1) Name of Defendant or Defendants & Predicate Acts; (2) Statements, Documents or Misrepresentations; (3) Time, Place and Persons Responsible; (4) Content and Manner in Which Victims Were Misled; and, (5) What

Defendants Gained by the Alleged Fraud.

103.   The RICO Defendants and their co-conspirators (and/or aiders and abetters), constitute an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  Each of the RICO Defendants participated in the operation or management of the Enterprise, at various times, as dictated by the needs that arose to perpetuate and maintain the fraudulent schemes, and retain the ill-gotten gains that came at the expense of the Samuel Rupert Trust, and plaintiff William's property interests (vested and prospective).

104.   At all relevant times, the associated RICO Enterprises were engaged in, and their activities in this dispute affected, interstate commerce within the meaning of 18 U.S.C. § 1962(c).

105.   As illustrated in the Predicate Act Chart attached hereto as Appendix A, the RICO Defendants, and co-conspirators, conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c), to wit:

A.   Numerous instances of mail fraud, within the meaning of 18 U.S.C. § 1341,  within the past 4 years, by defendants Susan, Downes, Zusman, Eng, MacGregor, Kimberlin, Whitman and Johansson;

B.   Numerous instances of wire fraud, within the meaning of 18 U.S.C. § 1343,  within the past 4 years, by defendants Susan, Downes, James, Zusman, Eng, MacGregor, Kimberlin, Whitman, and Johansson;

C.   Numerous instances of bank fraud, within the meaning of 18 U.S.C. § 1344(2),  within the past 4 years, by defendants Susan, Whitman, and Johansson;

D.    Multiple instances of interstate transportation of stolen property, under 18 U.S.C. § 2314,  within the past 4 years, by defendants Susan, Whitman, and Johansson;

E.    Numerous instances of obstruction of justice (destruction or suppression of evidence, forgery and manufacture of false evidence, and corrupt endeavors to influence 2 United States District Court Judges, through material misrepresentations of fact), within the meaning of 18 U.S.C. § 1503, or 18 U.S.C. § 1505, within the past 4 years, by defendants Susan, Downes,  Zusman, Eng, MacGregor, Kimberlin, Whitman, and Johansson.

106.    At the times material to this Complaint, plaintiff William was, *inter alia,* engaged in attempting to administer, in California, the Samuel J. Rupert (Family) Trust, u/a/d November 1, 1995, as Amended January 26, 2004, which is a Michigan trust which had assets, or intended assets, in Michigan and Oregon, when Samuel J. Rupert died on October 12, 2008, but the  assets in 4 Michigan (or Ohio) brokerage accounts were transferred to San Francisco, California in February and March of 2009, where they became the assets of 3 new California brokerage accounts, pursuant to the actions by defendant Susan and/or non-defendant co-conspirators Kenneth A. Dillon and Ronald Eppler.  As the intended administrator of an irrevocable trust, with its principal place of administration located Ben Lomond, California, with assets in multiple states, which ultimately are to be distributed to remainder beneficiaries located in the States of Michigan, Oregon and California, plaintiff William has been engaged in fiduciary activities that affect interstate commerce.

**The Continuity of the Various RICO Enterprises**

107.    With regards to the attorney RICO defendants (Downes, Zusman, Eng, MacGregor, Kimberlin, Whitman and Johansson), and the RICO Enterprises they managed (the Schulte RICO Enterprise, the Markun RICO Enterprise, the Long & Levit RICO Enterprise, and

84
Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

the Cartwright RICO Enterprise, respectively), their exploitation of Oregon's pro-scoundrel version of the Uniform Trust Code, to aid and abet errant trustees in hiding evidence of their misconduct (so as to avoid the duty to make restitution), in exchange for excessive and/or unnecessary legal fees (representing a co-conspirators share of the ill-gotten gains extracted by the errant trustees), are continuing, open-ended racketeering activities.  These 7 attorney RICO Defendants are likely to continue to specialize in aiding and abetting errant trustees, whenever possible (because it is such a profitable niche to serve), through improper means that are either fraudulent or illegal, for the improper purpose of unjustly enriching the errant trustees, and themselves, at the expense of the qualified beneficiaries, by depriving the qualified beneficiaries of the information necessary to protect their beneficial interests, or to obtain relief from the Courts for the errant trustee's breaches of trust.  This continuing, open-ended nature of the lawyer racketeering activities is well illustrated by another collaboration between the Schulte RICO Enterprise, the Cartwright RICO Enterprise, and defendant Whitman, in the representation of another faithless trustee who exploited an elderly, vulnerable individual who had Alzheimer's Disease, to the detriment of the qualified beneficiaries of the trust, in State of Oregon, Multnomah County Circuit Court Case No. 050707686, and in Oregon Court of Appeals No. A138032 (opinion filed December 19, 2012)[22].

---

[22]  Similarly, in this other case, defendant Whitman (and the Schulte RICO Enterprise, and the Cartwright RICO Enterprise), argued that the errant trustee's failure to account for the assets and administration of the trust, upon request by a qualified beneficiary, was justified, because the broadly worded disinheritance clause (which the errant trustee caused the vulnerable Settlor to adopt), had allegedly been violated, by the qualified beneficiary, when issues were raised concerning the capacity of the Settlor and possible undue influence which had been exerted upon the vulnerable Settlor, which, according to the errant trustee, as argued by defendant Whitman (and the Schulte RICO Enterprise and the Cartwright RICO Enterprise), destroyed Jon Frakes's "standing" to seek and obtain any information concerning the assets and administration of the trust, from the errant and faithless trustee, Tim Nay.

108.    With regards to defendant Susan, her racketeering activities are not similarly open-ended, and will presumably come to an end when the late Samuel and Irene Rupert's trust and estate assets are finally, and properly, distributed.  However, her close-ended racketeering activities have gone on for a substantial period of time, as they commenced on October 13, 2008, and her most recent alleged predicate act took place on November 30, 2012, more than 4 years later (by way of the false declaration she filed in support of her FRCP 12(b)(2) motion to dismiss, in the instant case).  Accordingly, sufficient continuity exists, with regards to defendant Susan's pattern of racketeering activities, which commenced more than 4 years ago, and continue, unabated, at the present time.

### Damage to Plaintiff's Property and Economic Interests

109.    Plaintiff William has suffered damages to his property interests (vested and prospective), employment opportunities, and economic relations, in excess of $300,000.00, due to the wrongful activities of the RICO defendants and their co-conspirators, for which the RICO defendants should be held jointly and severably liable for trebled damages, according to proof at trial, plus punitive damages for the conscience shocking behavior the above named defendants engaged in, in deliberate bad faith (fraud and deceit that caused the unconscionable exploitation of grief-stricken 90 year old Irene E. Rupert, following the loss of her husband of 67 years, and her formal diagnosis with Alzheimer's Disease, as the defendants capitalized on Irene E. Rupert's vulnerability, for their own gain).

### B.    Second Claim For Relief

**(Conspiracy to Violate RICO, Violation of 18 U.S.C. § 1962(d))**
**(Against Defendants Susan, James, Downes, Schulte, Zusman, Eng, Markun, MacGregor, Kimberlin, Long & Levit, Whitman, Johansson, and Cartwright)**

110.    Plaintiff William re-alleges and incorporates herein by reference each and every

foregoing paragraph of this Complaint as if set forth in full.

111.   During RICO Stage 2, by the time defendant Susan had her first discussions with defendant Downes, on or about May 20, 2009, she had been the acting Successor Trustee *de son tort*, for both the Samuel Rupert Trust and for the Irene Rupert Trust, for more than 7 months. At that point in time, there was no lawful way for the late Irene Rupert to turn back the clock 7 months, and accept her nomination to become the Successor Trustee of the Samuel Rupert Trust.   Nonetheless, defendant Susan and defendant Downes agreed to falsely assert that the late Irene Rupert was somehow the Successor Trustee, and had been all along.   At first this material misrepresentation was just told to William and the late Irene Rupert, during RICO Stage 2.

112.   During RICO Stage 3, the above material misrepresentation of fact (the false assertion that Irene Rupert was the Successor Trustee of the Samuel Rupert Trust, after Samuel Rupert died) was repeated by defendants Susan, Downes, Schulte, Zusman, Eng, Markun, MacGregor and Long & Levit, in the motions and declarations filed electronically, and served by mail on William, in the proceedings before Judge Fogel concerning *Rupert I*.   Additionally, at the hearing on their Joint Motion to Dismiss, defendants Zusman and MacGregor again asserted falsely that Irene Rupert was the Successor Trustee (while also misrepresenting where the disputed trust assets were located).   These were corrupt endeavors to influence Judge Jeremy Fogel, and obstructions of justice, by the above named 8 defendants, whose Joint Motion to Dismiss, and Supporting Declarations that were filed with the federal Court, represent evidence of this conspiracy to obstruct justice, in USDC NDCA Case No. 5:09-cv-02758 JF (RS), so as to deny William his full and fair day in federal court, in front of Judge Fogel.   The reason why it is evidence of a conspiracy is because there has never been one scintilla of evidence to support the contention that the late Irene Rupert was the Successor Trustee after the death of Samuel

Rupert.  If there was any evidence to support the contention, then independent review could cause the same conclusion to be reached.  However, for Susan, 4 attorneys, and 3 law firms to assert the same falsehood, in the complete absence of any evidence, is a situation that supports the reasonable inference that they engaged in a conspiracy, to obstruct justice, and perpetrate a fraud upon Judge Jeremy Fogel.

113.    During RICO Stage 4, the above material misrepresentation of fact (the false assertions that Irene Rupert was the Successor Trustee of the Samuel Rupert Trust, after Samuel Rupert died), was repeated by defendants Susan, James, Downes, Schulte, Whitman, Johansson and Cartwright, in the petitions, papers, motions and declarations filed or transmitted electronically, and/or served by mail on William, regarding the Clackamas County, Oregon Circuit Court proceedings before Senior Judge Elizabeth Welch and former Judge Steven L. Maurer.  In these Oregon proceedings, during 2010 and 2011, the above named 7 defendants also corruptly relied upon Susan's forged Schedule A page of her Petitioner's Exhibit #70, to claim the Samuel Rupert Trust was only designed to be a small Family Trust.  These were corrupt endeavors to influence the Oregon judicial officers and an abuse of the legal process of the State of Oregon.  The petitions, motions, declarations, testimony given, and other papers filed, or electronically transmitted in these Oregon proceedings are evidence of the conspiracy to abuse the legal process in the State of Oregon, and this fraudulent scheme was carried out through multiple acts of mail fraud and wire fraud, by the above named 7 defendants.

114.    During RICO Stage 6, the recurring material misrepresentation of fact (the false assertion that Irene Rupert was the Successor Trustee of the Samuel Rupert Trust, after Samuel Rupert died) has been repeated by defendants Susan, Downes, Schulte, MacGregor, Long & Levit, Whitman, Johansson and Cartwright, in the motions and declarations filed electronically,

and served by mail on William, in the current proceedings before the Honorable Lucy H. Koh,

concerning *Rupert II*.  These were corrupt endeavors to influence Judge Koh, and obstructions

of justice, by the above named 8 defendants, in their various Motions to Dismiss, and

supporting Declarations that were filed and served by mail, which represent evidence of the

conspiracy to obstruct justice, in USDC NDCA Case No. 5:12-cv-05292 LHK (HRL).  Once

again, the reason why it is evidence of a conspiracy is because there has never been one scintilla

of evidence to support the contention that the late Irene Rupert was the Successor Trustee after

the death of Samuel Rupert.  If there was any evidence to support the contention, then

independent review could cause the same conclusion to be reached.  However, for Susan, 4

attorneys, and 3 law firms to assert the same falsehood, in the complete absence of any

evidence, is a situation that supports the reasonable inference that they are engaging in a

conspiracy, to obstruct justice, and perpetrate a fraud upon the Honorable Lucy H. Koh, in the

instant proceedings.

     115.     Also during RICO Stage 6, an additional material misrepresentation of fact has

been made (the false assertion that William filed counterclaims against defendants Downes and

Whitman in the Oregon action involving the Samuel Rupert Trust, and Downes and Whitman

filed Responses that resulted in a dismissal), to support multiple requests for Judicial Notice of

William's proposed pleading, which was never legally filed, pursuant to Oregon statutory law

(ORS 21.100), because the filing fees for a third party complaint were not paid by William, and

no filing fees were ever paid by either Downes or Whitman.  William's unfiled pleading was

not "filed", litigated, or dismissed.  Nonetheless, defendants Susan, James, Downes, Schulte,

MacGregor, Kimberlin, Long & Levit, Whitman, Johansson and Cartwright, in the motions,

declarations, and requests for Judicial Notice, filed electronically, and served by mail on

William, in support of their various Motions to Dismiss under FRCP 12(b)(2), in *Rupert II*, all corruptly endeavor to influence the Honorable Lucy H. Koh, and cause her to believe William is seeking his 3rd bite of the apple (when the truth is he is seeking his 1st bite of the apple, upon the issue of Susan's "unclean hands" as an intermeddling trustee *de son tort* who misappropriated hundreds of thousands of dollars of assets that should have been funded into the Samuel Rupert Family Trust).  These efforts to deprive William of his petition rights, through corrupt means, represent an additional obstruction of justice, by the above named 10 defendants (Susan and James, 5 lawyers, and 3 law firms), in their various Motions to Dismiss, supporting Declarations, and Requests for Judicial Notice, that were electronically filed and served by mail, in the instant case, USDC NDCA Case No. 5:12-cv-05292 LHK (HRL).

116.    Known contacts among and between RICO Defendants Susan, Downes, Zusman and Whitman, and defendant James, and non-party co-conspirator Kenneth Dillon, and non-party co-conspirator Umpqua Bank's Bill Barber, as part of the RICO Stage 3 -Disinheritance and Obstruction of Justice Cartwright RICO Enterprise activities, that were directed by defendant Whitman, include the following contacts, listed by date, defendants and/or non-party co-conspirators involved, and modes of communication:

(a)  February 11, 2010; defendants Whitman, Susan & Downes; telephone call, and conference - billed as taking up 42 minutes of defendant Whitman's time;

(b)  February 12, 2010; defendants Whitman, Susan & Downes; phone conferences - billed as taking up 36 minutes of defendant Whitman's time;

(c)  March 15, 2010; defendants Whitman, Susan & Downes; Email to Downes from Whitman, phone conferences with Downes and Susan - billed as taking up 1 hour and 42 minutes of defendant Whitman's time;

(d)  March 22, 2010; defendants Whitman & Susan; phone conference - billed as taking up 18 minutes of defendant Whitman's time;

(e)  March 24, 2010; defendants Whitman, Susan & Downes; Email to Downes, phone conferences with Downes and Susan; phone conference with Charles Schwab - billed as taking up 30 minutes of defendant Whitman's time;

(f)  March 25, 2010; defendant Whitman; phone call from non-party co-conspirator Kenneth Dillon ("Dillon"), phone call to Charles Schwab - billed as taking up 18 minutes of defendant Whitman's time;

(g)  April 5, 2010; defendants Whitman, Susan, Downes & Zusman; Emails to Downes, to Susan, and to Zusman, Email from Downes, phone conference with Susan - billed as taking up 51 minutes of defendant Whitman's time;

(h)  April 6, 2010; defendants Whitman & Susan; Email to Susan, Email from Susan - billed as taking up 24 minutes of defendant Whitman's time;

(i)  April 8, 2010; defendants Whitman, Susan & Downes; Email to Downes and to Susan, Email from Susan - billed as taking up 18 minutes of defendant Whitman's time;

(j)  April 12, 2010; defendants Whitman & Susan; Phone conference with Susan - billed as taking up 1 hour and 15 minutes of defendant Whitman's time;

(k)  April 15, 2010; defendants Whitman, Susan, Downes & Zusman; Emails to Susan & to Zusman, Email from Downes, phone call from Susan - billed as taking up 51 minutes of defendant Whitman's time;

(l)  April 16, 2010; defendants Whitman & Susan; Phone conference with Susan - billed as taking up 9 minutes of defendant Whitman's time;

(m)  April 29, 2010; defendants Whitman & Susan; Phone conference with Susan - billed as taking up 6 minutes of defendant Whitman's time;

(n)  May 12, 2010; defendants Whitman, Susan & Downes; conference with

Downes, conference with Susan - billed as taking up 1 hour and 18 minutes of defendant

Whitman's time;

(o)  May 14, 2010; defendants Whitman & Susan; meeting with Susan - billed as

taking up 1 hour and 18 minutes of defendant Whitman's time;

(p)  May 18, 2010; defendants Whitman & Susan; Email to Susan - billed as

taking up 36 minutes of defendant Whitman's time;

(q)  May 20, 2010; defendants Whitman & Susan; meeting with Susan - billed as

taking up 6 minutes of defendant Whitman's time;

(r)  May 28, 2010; defendants Whitman & Susan; Phone conference with Susan -

billed as taking up 24 minutes of defendant Whitman's time;

(s)  June 3, 2010; defendants Whitman & Downes; Phone conference with

Downes - billed as taking up 18 minutes of defendant Whitman's time;

(t)  June 9, 2010; defendants Whitman & Susan; Phone conference with Susan,

conference with Susan - billed as taking up 12 minutes of defendant Whitman's time;

(u)  June 10, 2010; defendants Whitman & Downes; Phone conference with

Downes' legal assistant Patti McIhagga, email from Ms. McIhagga, regarding Downes' file

regarding taxes - billed as taking up 3 minutes of defendant Whitman's time;

(v)  July 6, 2010; defendants Whitman, Susan & Zusman; Phone conference with

Susan, Email to Zusman - billed as taking up 12 minutes of defendant Whitman's time;

(w)  July 7, 2010; defendants Whitman, Susan & Downes; Emails to Susan and

to Downes - billed as taking up 6 minutes of defendant Whitman's time;

(x)  July 16, 2010; defendants Whitman, Susan & Zusman; Phone conferences

with Susan & Zusman - billed as taking up 12 minutes of defendant Whitman's time;

(y)  July 22, 2010; defendants Whitman, Susan & Zusman; Phone conferences

with Susan & Zusman - billed as taking up 2 hours and 6 minutes of defendant Whitman's time;

(z)  July 23, 2010; defendants Whitman & Downes; Review documents at Downes' office - billed as taking up 1 hour and 42 minutes of defendant Whitman's time;

(aa)  July 26, 2010; defendants Whitman, Susan & Downes; Phone conferences with Susan & Downes' assistant, Patti McIhagga - billed as taking up 2 hours and 42 minutes of defendant Whitman's time;

(ab)  July 27, 2010; defendants Whitman, Susan & Downes; Phone conferences with Susan & Downes - billed as taking up 2 hours and 6 minutes of defendant Whitman's time;

(ac)  August 2, 2010; defendants Whitman, Susan & James; Phone conferences with Susan & James - billed as taking up 33 minutes of defendant Whitman's time;

(ad)  August 4, 2010; defendants Whitman & Susan; Email to Susan, Email from Susan - billed as taking up 9 minutes of defendant Whitman's time;

(ae)  August 11, 2010; defendant Whitman and non-party co-conspirator Umpqua Bank; Phone conference with Bill Barber - billed as taking up 15 minutes of defendant Whitman's time;

(af)  September 2, 2010; defendants Whitman & Susan; Meet with Susan - billed as taking up 45 minutes of defendant Whitman's time;

(ag)  September 7, 2010; defendants Whitman, Downes & non-party co-conspirator Umpqua Bank; Phone conference with Downes, phone messages to and from Bill Barber - billed as taking up 18 minutes of defendant Whitman's time;

(ah)  September 8, 2010; defendants Whitman, Cartwright & Downes; Conference with James R. Cartwright, Emails to and from Downes's attorney Dave Williams - billed as taking up 24 minutes of defendant Whitman's time;

(ai)  September 13, 2010; defendants Whitman & Susan; Phone conference with Susan - billed as taking up 48 minutes of defendant Whitman's time;

(aj)  October 5, 2010; defendants Whitman, Susan and Cartwright; Conferences

with Susan and James R. Cartwright - billed as taking up 2 hours and 6 minutes of defendant Whitman's time;

(ak)  October 8, 2010; defendants Whitman & Downes; Meet with Downes, Email to Susan - billed as taking up 24 minutes of defendant Whitman's time;

(al)  October 19, 2010; defendants Whitman & Downes; Emails to and from Downes and Downes' attorney Dave Williams - billed as taking up 48 minutes of defendant Whitman's time;

(am)  October 22, 2012; defendants Whitman & Susan; Phone conference with Susan - billed as taking up 2 hours and 12 minutes of defendant Whitman's time;

(an)  October 25, 2012; defendants Whitman, Susan & Downes; Meet with Downes and Downes' attorney Dave Williams, meet with Susan - billed as taking up 7 hours and 36 minutes of defendant Whitman's time;

(ao)  October 26, 2010; defendants Whitman & Susan; *Ex Parte* phone contact with Clackamas County Circuit Court & Judge Maurer (by defendant Whitman); Phone conference with Susan - billed as taking up 5 hours and 54 minutes of defendant Whitman's time;

(ap)  October 29, 2010; defendants Whitman & Susan; Phone conference with Susan - billed as taking up 24 minutes of defendant Whitman's time;

(aq)  November 29, 2010; defendants Whitman, Susan & Downes; Phone conferences with Susan and Downes' attorney Dave Williams - billed as taking up 2 hours and 12 minutes of defendant Whitman's time;

(ar)  December 15, 2010; defendants Whitman, Susan & Downes; Phone conferences with Susan and Downes - billed as taking up 30 minutes of defendant Whitman's time.

117.    But for the conspiratorial conduct and intentional interference set forth above,

94

by Defendants Susan, James, Downes, Schulte, Zusman, Eng, Markun, MacGregor, Kimberlin, Long & Levit, Whitman, Johansson, and Cartwright (as aided and abetted by the non-party co-conspirators listed in Paragraph 15 of this SAC), plaintiff William would not have been damaged in his property interests (vested and prospective), as set forth herein.

118.    Plaintiff William seeks trebled damages against the RICO Conspiracy Defendants named herein (defendants Susan, James, Downes, Schulte, Zusman, Eng, Markun, MacGregor, Kimberlin, Long & Levit, Whitman, Johansson and Cartwright, for their conspiratorial misconduct that caused him to suffer severe financial damages to his property (vested and prospective), employment opportunities, and economic relations -  according to proof, as established by the evidence, at trial.  Joint and severable liability is sought, against all joint tortfeasors.

## C.    Third Claim For Relief

### (Conspiracy to Violate Civil Rights, 42 U.S.C. § 1985)
### (Against Defendants Susan, James, Whitman, Johansson, and Cartwright)

119.    Plaintiff William re-alleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

120.    During the RICO Stage 4 activities, with regards to the Oregon proceedings to disinherit William from the Irene Rupert Trust, u/a/d July 23, 2009, in Clackamas County, Oregon Circuit Court Case No. CV10030497, the Bum's Rush Ambush trial that was orchestrated by defendants Susan, Whitman, and Cartwright, through *inter alia* defendant Whitman's fraudulent schemes and improper *ex parte* telephone communications with former Judge Steven L. Maurer, on October 26, 2010, also resulted in the deprivation of William's rights to a full and fair trial, before an impartial and competent tribunal, under the 1st, 5th and 14th Amendments to the United States Constitution, before he was deprived of his prospective inheritance of roughly $300,000.00.

121.    Also during the RICO Stage 4 activities, with regards to the first baseless action concerning the Samuel Rupert Trust, Clackamas County, Oregon Circuit Court Case No. CV10030498, defendants Susan, Whitman, and Cartwright conspired to perpetrate a fraud upon Senior Judge Welch, by submitting a General Judgment document to the Court, on or about April 7, 2011, although no judgment had been rendered by Senior Judge Welch, in open court, at any hearing, after the case became at-issue on April 4, 2011.  The fraudulent scheme, which was successful, had the effect of depriving William of his right to a full and fair trial, before an impartial and competent tribunal, under the 1st, 5th and 14th Amendments to the United States Constitution, upon his Affirmative Defenses, which included Oregon's lack of fundamental jurisdiction over the Michigan Trust's non-Oregon assets, and William, as the Successor Trustee who was administering the Michigan Trust in California, and Susan's "unclean hands" as an intermeddling trustee *de son tort* who misappropriated trust assets by underfunding the Samuel Rupert Trust, and overfunding the Irene Rupert Trust, during the first 7 months after Samuel Rupert died on October 12, 2008.

122.    Additionally, also during the RICO Stage 4 activities, with regards to the second baseless action concerning the Samuel Rupert Trust, Clackamas County, Oregon Circuit Court Case No. CV11050251, defendants Susan, James, Whitman, Johansson and Cartwright, conspired with former Judge Steven L. Maurer, on October 12, 2011, to deprive William of his right to a full and fair trial, before an impartial and competent tribunal, under the 1st, 5th and 14th Amendments to the United States Constitution, upon his Affirmative Defenses (which included Oregon's lack of fundamental jurisdiction over the Michigan Trust's non-Oregon assets, and William, as the Successor Trustee who was administering the Michigan Trust in California, and Susan's "unclean hands" as an intermeddling trustee *de son tort* who misappropriated trust

Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

assets by underfunding the Samuel Rupert Trust, and overfunding the Irene Rupert Trust, during the first 7 months after Samuel Rupert died on October 12, 2008), before being removed as Successor Trustee of the Samuel Rupert Trust, and former Judge Steven L. Maurer's arbitrary and capricious determination that the assets of the Samuel Rupert Trust were only those shown on Susan's forged Schedule A page of her manufactured evidence, her corrupt Exhibit #70.

123.    By conspiring with former Judge Steven L. Maurer, and Senior Judge Welch, to deprive William of his petition rights under the United States Constitution, before being deprived of his prospective inheritance, before coercive judgments were entered, and before being purportedly removed as Successor Trustee, defendants Susan, James, Whitman, Johansson and Cartwright caused damages to William in excess of $300,000.00.

### D.    Fourth Claim For Relief

**(Declaratory Judgment, 28 U.S.C. §§ 2201, 2202)**
**(Against Defendants Susan, James, Downes, Schulte, Zusman, Eng, Markun, MacGregor, Kimberlin, Long & Levit, Whitman, Johansson, and Cartwright)**

124.    Plaintiff William re-alleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

125.    An actual controversy exists between plaintiff William, and defendants Susan, James, Downes, Schulte, Zusman, Eng, Markun, MacGregor, Kimberlin, Long & Levit, Whitman, Johansson, and Cartwright, as to whether the late Irene Rupert was the Successor Trustee of the Samuel Rupert Trust, after Samuel Rupert died on October 12, 2008.  William claims Irene Rupert was never the Successor Trustee, while the above named 13 defendants have all maintained, at one time or another, that Irene Rupert was the Successor Trustee of the Samuel Rupert Trust.

126.    A determination of this controversy is necessary, to determine what trust

administration information, if any, William was entitled to receive, after the Samuel Rupert

Trust became irrevocable, on October 12, 2008.

127.    An actual controversy also exists between plaintiff William, and defendants

Susan, James, Downes, Schulte, Zusman, Eng, Markun, MacGregor, Kimberlin, Long & Levit,

Whitman, Johansson, and Cartwright, as to whether William lawfully became the Successor

Trustee of the Samuel Rupert Trust, on July 8, 2009, when his acceptance papers were delivered

to the late Irene Rupert, and to defendants Susan, James and Downes.  William claims he filed a

vacancy in the Office of the Trustee (because defendant Susan's occupancy was only as an

intermeddling trustee *de son tort,* and not a lawful occupancy), when he became the Successor

Trustee on July 8, 2009, while the above named 13 defendants all disagree, by contending that

the late Irene Rupert was the Successor Trustee from October 12, 2008 until March 12, 2010.

128.    A determination of this controversy is necessary, to determine if William became

the lawful Successor Trustee on July 8, 2009, and whether defendant Susan's prior occupancy

of the Office of the Trustee, was as a mere intermeddling trustee *de son tort* who underfunded

the Samuel Rupert Trust, such that she has "unclean hands", and has been unjustly enriched, at

the expense of the Samuel Rupert Trust, and William's remainder beneficiary interest, and

trusteeship interest, in the Samuel Rupert Trust.

### VIII.   Pendent State Law Claims For Relief

#### A.      Fifth Claim For Relief
#### (Misappropriation/Conversion of Trust Assets)
#### (Against defendant Susan and defendant James)

129.    Plaintiff William re-alleges and incorporates herein by reference each and every

foregoing paragraph of this Complaint as if set forth in full.

130.    The terms of the Samuel J. Rupert Trust, u/a/d November 1, 1995, as Amended

Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

January 26, 2004, clearly state that it is to be governed by Michigan Law.

131.    Michigan law contains a statutory provision, in Michigan Compiled Laws ("MCL") § 700.7813(4)  which permits a trustee, or trust beneficiary, to recover double the value of any trust assets which can be shown to have been wrongfully converted, if the wrongfully converted trust assets are not returned following demand that they be returned. California has a similar statute, which is Probate Code § 859.

132.    Plaintiff William first demanded that all misallocated trust assets, which had not been funded into the Samuel Rupert (Family) Trust, in accordance with the express written intentions of Samuel J. Rupert, be returned at once, in a letter he sent to defendant Susan and defendant James, and to Irene E. Rupert, dated June 24, 2009.  Subsequently, plaintiff William has sent numerous other demand letters to defendant Susan and defendant James, subsequent to the death of Irene E. Rupert on March 12, 2010, in dual capacities as the Successor Trustee and a remainder beneficiary, wherein plaintiff William continued to demand the return of the misallocated and wrongfully converted assets of the Samuel J. Rupert (Family) Trust.  Another demand letter was dated June 17, 2011, and it informed defendant Susan and defendant James, who it was mailed to, that it was their last chance to return all of the ill-gotten gains which they had either received, or were going to receive, based upon plaintiff Williams disinheritance in Case No. CV10030497.  This last demand letter also advised them of the provisions of MCL § 700.7813(4), which states the following remedies for wrongful conversion, or embezzlement of trust property:

"(4)  If a person embezzles or wrongfully converts trust property, or refuses, without colorable claim of right, to transfer possession of trust property to the current trustee upon demand, the person is liable in an action brought by the current trustee, or the beneficiary of the trust for the benefit of the trust, for double the value of any property embezzled, converted, or wrongfully withheld from the current trustee."

133.    Neither defendant Susan or defendant James have returned any of the wrongfully converted trust assets (including Samuel Rupert's thick Schedule A file, showing all the assets

that were transferred to the various Trusts, from time to time, subsequent to 1995[24]), that were

misappropriated and not funded into the Samuel J. Rupert Trust, as had been intended by the

late Samuel J. Rupert, as clearly expressed in his estate plans (Trust and pour-over Will).

134.    Plaintiff William estimates that roughly $500,000.00 in assets were

misappropriated/converted by defendants Susan and James, and seeks statutorily doubled trust

asset conversion damages, under MCL § 700.7813(4), and/or under California Probate Code §

859 (because there is no conflict of laws, between the Michigan and California statutory

provisions), against defendant Susan and defendant James, according to proof, as established by

the evidence at trial; or by the presumption that evidence willfully withheld would be adverse to

the party willfully withholding the evidence (such as Samuel Rupert's thick Schedule A file, of

property transferred to the Samuel Rupert Trust and/or to the Irene Rupert Trust, at various

times, between November 1, 1995 and October 12, 2008; and Samuel and Irene Rupert's

personal property inventory distribution lists – both of which defendant Susan has been

willfully withholding, for nearly 4 years).

### B.    Sixth Claim For Relief
### (Abuse of Process)
### (Against defendants Susan, James, Whitman, Johansson and Cartwright)

135.    Plaintiff William re-alleges and incorporates herein by reference each and every

foregoing paragraph of this Complaint as if set forth in full.

---

[24] Defendant Susan admitted she had Samuel Rupert's thick Schedule A file in her
possession, at her residence at 2430 SW Montgomery Drive, Portland, OR 97201, during a
discussion with William, in her kitchen, on the morning of January 12, 2009, prior to any
dispute, when William expressed concern that the Trusts may not have been funded, when
Susan first showed him a copy of the terms of the Irene Rupert Trust, u/a/d 11/01/1995, and
he noticed the blank Schedule A page.  Defendant Susan told William not to worry, because
Samuel Rupert had a thick Schedule A file, which Susan found when she and her husband,
non-party co-conspirator Robert Bond, wrongfully seized all of Samuel and Irene Rupert's
estate plans, and confidential financial records, immediately after the death of Samuel Rupert
on October 12, 2008.

136.    During RICO Stage 4 (as detailed on pages 76-78, herein), defendants Susan, Whitman, and Cartwright abused the legal process of the State of Oregon, by the commencement and litigation of Clackamas County Circuit Court Case No. CV10030497, regarding the Irene Rupert Trust, u/a/d July 23, 2009, because their objective was not to fairly resolve the disputed issues of fact that were joined by the pleadings in July of 2010.  Instead, defendants Susan, Whitman, and Cartwright used improper means (*ex parte* phone communications with former Judge Steven L. Maurer on October 26, 2010), to orchestrate an unconstitutional Bum's Rush Ambush Expedited Bench Trial, where only the disinheritance issue was adjudicated (against William), while William's Affirmative Defenses[25] and Counterclaims were dismissed on procedural grounds, at the end of the "sham" trial court proceedings (for lack of standing following the Court's declaration of William's civil death).

137.    Also during RICO Stage 4 (as detailed on pages 76-78, herein), defendants Susan, Whitman, and Cartwright abused the legal process of the State of Oregon, by the commencement and litigation of Clackamas County Circuit Court Case No. CV10030498, regarding the Samuel Rupert Trust, u/a/d November 1, 1995, as Amended January 26, 2004, because their objective was not to fairly resolve the disputed issues of fact that were joined by the pleadings on April 4, 2011.  Instead, defendants Susan, Whitman, and Cartwright used improper means (the unauthorized submission of a General Judgment document, on or about April 7, 2011, although no judgment had been rendered in open court by Senior Judge Welch), to obtain a corrupt General Judgment, that fails to adjudicate any of the disputed issues of fact, or any of William's Affirmative Defenses (including Susan's "unclean hands", as an

---

[25]  William's Affirmative Defenses included Susan's "unclean hands", as an intermeddling trustee *de son tort* who misappropriated trust assets by underfunding the Samuel Rupert Trust, causing damage to William's remainder beneficiary interests in the Trust.

intermeddling trustee *de son tort* who misappropriated trust assets by underfunding the Samuel Rupert Trust, causing damage to William's remainder beneficiary interests in the Trust).

138.    Additionally, also during RICO Stage 4 (as detailed on pages 76-78, herein), defendants Susan, James, Whitman, Johansson, and Cartwright abused the legal process of the State of Oregon, by the commencement and litigation of Clackamas County Circuit Court Case No. CV11050251, regarding the Samuel Rupert Trust, u/a/d November 1, 1995, as Amended January 26, 2004, because their objective was not to fairly resolve the disputed issues of fact that were joined by the pleadings on September 23, 2011.  Instead, defendants Susan, James, Whitman, Johansson, and Cartwright used improper means (persuading former Judge Steven L. Maurer to conduct an impromptu trial, without any advance notice to William, at a motion hearing that William gave notice he would not attend, because his reconsideration motion had been rendered moot, by the responsive pleading he filed on September 23, 2011), to obtain another corrupt General Judgment, that failed to adjudicate all of the disputed issues of fact which were joined by the pleadings, or any of William's Affirmative Defenses (including Susan's "unclean hands", as an intermeddling trustee *de son tort* who misappropriated trust assets by underfunding the Samuel Rupert Trust, causing damage to William's remainder beneficiary interests in the Trust).

139.    During RICO Stage 5 (as detailed on pages 78-79, herein), defendants Susan, Whitman, Johansson, and Cartwright abused the legal process of the State of Oregon, by way of their post-judgment enforcement efforts, wherein Oregon Writs of Garnishment were fraudulently utilized to cause funds to be wrongfully extracted from a T.D. Ameritrade brokerage account in Nebraska, in October, 2011, and from William's checking account in Scotts Valley, California, in November, 2011 (in violation of the California Sister-State Money

Second Amended & Supplemental Complaint  [5:12-cv-05292 LHK (HRL)]

Judgment Act).  Although defendants Whitman, Johansson and Cartwright either knew, or

should have known, that the Oregon Writs of Garnishment had no extra-territorial effect,

outside the State of Oregon, they foisted off these self-issued Oregon Writs of Garnishment, as

if they were effective throughout the United States, causing significant financial damages to

William, when these bogus Writs were reasonably relied upon, and honored by T.D. Ameritrade

and J.P. Morgan Chase Bank, N.A..

**C.      Seventh Claim For Relief**
**(Intentional Interference With Expected Inheritance)**
**(Against Defendants Susan, James, Downes, Zusman, Eng, MacGregor,**
**Whitman, Johansson, Schulte, Markun, Long & Levit, and Cartwright)**

140.    Plaintiff William re-alleges and incorporates herein by reference each and

every foregoing paragraph of this Complaint as if set forth in full.

141.    The above named defendants (Susan, James, Downes, Zusman, Eng, MacGregor,

Whitman, Johansson, Schulte, Markun, Long & Levit, and Cartwright), had full knowledge of

Samuel and Irene Rupert's estate plans, consisting of trust agreements and pour-over wills,

which were executed on November 1, 1995 and amended on January 26, 2004, in Michigan.

142.    The above named defendants also knew plaintiff William stood to inherit

roughly $300,000.00 under the above Michigan estate plans, and that he was the first adult child

of Samuel and Irene Rupert who they wanted to be the sole administrator of their trusts and

estates (for which he was entitled to be compensated under the terms of the trusts).

143.    Nonetheless, the above named defendants wrongfully interfered with plaintiff

William's vested and prospective inheritance rights under these Michigan estate plans, through

improper means that were independently wrongful, to either: (1) trick Irene E. Rupert into

executing drastically new estate plans that were designed to disinherit plaintiff William, based

upon material misrepresentations of fact and law (to a vulnerable, confused, 90 year old woman

103

with Alzheimer's Disease), so defendant Susan would not have to account for her wrongful

intermeddling as a trustee *de son tort* who overfunded the Irene Rupert Trust (100% of Samuel

and Irene Rupert's assets), and badly underfunded the Samuel Rupert Trust (0% of Samuel and

Irene Rupert's assets); or, (2) prevent William from getting his day in court before Judge

Jeremy Fogel (through the obstruction of justice), while the late Irene Rupert was still alive, so

he could tell Irene Rupert that she was not the Successor Trustee of the Samuel Rupert Trust,

and defendants Susan and Downes were not giving her truthful or accurate information,

concerning the terms of the Samuel Rupert Trust, Oregon law, and Michigan law; or, (3) obtain

enforcement of the *in terrorem* provisions contained in the Irene Rupert Trust, u/a/d July 23,

2009, by the orchestration of the Bum's Rush Ambush Expedited Bench Trial that was foisted

off on William during October and November of 2010.

144.    The above named defendants' wrongful actions resulted in damages in excess of

$300,000.00, pursuant to the General Judgment which was entered on January 4, 2011, in State

of Oregon, Clackamas County Circuit Court Case No. CV10030497.

145.    Plaintiff William seeks the recovery of the IIEI damages he suffered, through the

wrongful actions of the above named defendants.

### D.    Eighth Claim For Relief
**(Violations of The Oregon Racketeering Influence And Corrupt Organizations Act)**
**(Against Defendants Susan, James, Downes, Zusman, Whitman,**
**Johansson, Schulte, Markun, and Cartwright)**

146.    Plaintiff William re-alleges and incorporates herein by reference each and every

foregoing paragraph of this Complaint as if set forth in full.

147.    The wrongful conduct of the above named defendants has included deliberate

and intentional violations of the Oregon Racketeering Influence And Corrupt Organizations Act

(ORICO) (ORS 166.715 to ORS 166.735), which have cause substantial damages to plaintiff

William's property interests, beginning on October 13, 2008, and continuing.

148.     Predicate acts under ORICO, by the above named defendants, subsequent to

October 12, 2008, have included wrongful and damaging violations of ORS 162.065 (perjury),

ORS 162.075 (false swearing), ORS 162.325 (hindering prosecution), ORS 164.057

(aggravated theft in the first degree, ORS 164.085 (theft by deception), ORS 164.095 (theft by

receiving), ORS 165.013 (forgery in the first degree); ORS 165.022 (criminal possession of a

forged instrument in the first degree); ORS 165.037 (criminal simulation); and ORS 165.042

(fraudulently obtaining a signature), ORS 165.080 (falsification of business records), ORS

165.095 (misapplication of entrusted funds), and ORS 165.102 (obtaining execution of

documents by deception), that have resulted in substantial damages being suffered by plaintiff

William, to his property interests.  Plaintif William incorporates by reference the attached

Appendix B, which sets forth particular predicate acts that have occurred subsequent to October

12, 2008, which represent violations of the ORICO statute, in the form of an 8 page Chart, that

details 11 Predicate Acts occasions, when 28 individual Predicate Acts were committed.

149.     Plaintiff William seeks trebled damages, according to proof at trial, pursuant to

ORS 166.725(7)(a), and also punitive damages for the conscience shocking behavior

(deception that relied upon the exploitation of grief-stricken 90 year old Irene E. Rupert,

following the loss of her husband of 67 years, and her diagnosis with Alzheimer's Disease),

which the above named defendants engaged in, or capitalized upon, in deliberate bad faith.

150.     Pursuant to ORS 166.725(1)(a), the above named defendants who are either

individual attorneys, or law firms, should be ordered to make a trebled divestiture of all attorney

fees which have been received for their participation in the ill-advised schemes to aid and abet

defendant Susan's trustee *de son tort* activities.  All attorney's fees received from either

defendant Susan, or from the late Irene E. Rupert, should be trebled, and then disgorged, and returned (to either the estate or trust of the late Irene E. Rupert, or to the estate or trust of the late Samuel J. Rupert), by the individual attorneys, or law firms, named as defendants in this cause of action.

### E. Ninth Claim For Relief
### (Conspiracy)
**(Against Defendants Susan, James, Downes, Zusman, Eng, MacGregor, Kimberlin, Whitman, Johansson, Schulte, Markun, Long & Levit and Cartwright)**

151.    Plaintiff William re-alleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

152.    The above named defendants conspired with one another, in various combinations, as necessary, to: (1) convert, and/or wrongfully retain, trust assets that should have been funded into the Samuel J. Rupert Trust, pursuant to the terms of his Trust or pour-over will; (2) to abuse the legal process of the State of Oregon, through improper means, and for an improper purpose, with a wrongful ulterior motive; (3) to intentionally interfere with plaintiff William's expected inheritance (and performance as successor trustee), through improper means, or for an improper purpose; and, (4) violate ORICO, for the purpose of wrongfully damaging the property interests (vested and prospective), of plaintiff William, and to cause the unjust enrichment of the various defendants, at William's expense, or at the expense of the late Irene Rupert's Estate or Trust, or at the expense of the late Samuel Rupert's Estate or Trust.

153.    Plaintiff William seeks joint and severable liability, against the above named defendants, for their wrongful conspiratorial actions, according to proof, at trial.


///


///

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment as hereinafter set forth.

**Upon the Federal Claims**

1.     For a money judgment for trebled damages, according to proof, together with interest on said amounts, for violations of the RICO statutes, causing injury to plaintiff Williams property interests and economic relations, against the RICO Defendants (Susan, Downes, Zusman, Eng, MacGregor, Kimberlin, Whitman, and Johansson), and the defendant co-conspirators (James, Schulte, Markun, Long & Levit, and Cartwright); plus punitive damages against these RICO Defendants and defendant co-conspirators, in an amount to be determined by the Court, and a determination that all of the RICO Defendants and defendant co-conspirators, are jointly and severally liable, as joint tortfeasors;

2.     For a money judgment for damages, according to proof, against defendants Susan, James, Whitman, Johansson and Cartwright, based upon their conspiracy to Violate William's civil rights, and deny him a full and fair trial before an impartial and competent tribunal, contrary to the provisions of 42 U.S.C. § 1985, through egregious violations of his rights to petition for a redress of grievances, and to due process of law, under the 1st, 5th, and 14th Amendments to the United States Constitution.

3.     For a declaratory judgment establishing that: (1) Irene Rupert was never the Successor Trustee of the Samuel Rupert Trust; (2) the Office of the Trustee, for the Samuel Rupert Trust, was vacate after Samuel Rupert died, until William accepted his nomination on July 8, 2009; and, (3) while the Office of the Trustee, for the Samuel Rupert Trust, was occupied by Susan Bond, from at least October 12, 2008 to May 12, 2009, it was technically and legally vacant, because her occupancy was merely as an intermeddling trustee *de son tort,*

which was not a lawful occupancy, such that she has "unclean hands" in the matter, based upon her wrongful intermeddling and unjust enrichment, through her wrongful conduct.

### Upon the Pendent State Claims

4.      For statutorily doubled trust asset conversion damages, according to proof, against defendant Susan and defendant James, under MCL § 700.7813(4) or under California Probate Code § 859, plus punitive damages in an amount to be determined by the Court, for their wrongful conversion of assets rightfully belonging to the Samuel J. Rupert Trust (and plaintiff William's 1/3 interest therein);

5.      For a money judgment for damages, according to proof, against defendants Susan, James, Whitman, Johansson and Cartwright, based upon their abuse of the legal process of the State of Oregon.

6.      For a money judgment awarding all appropriate damages to plaintiff William, according to proof at trial, for intentional interference with expected inheritance (IIEI), against defendants Susan, James, Downes, Schulte, Zusman, Eng, Markun, MacGregor, Kimberlin, Long & Levit, Whitman, Johansson, and Cartwright, plus punitive damages in an amount to be determined by the Court.

7.      For a money judgment for trebled damages, and trebled disgorgement of all attorney fees received, according to proof, together with interest on said amounts, for violations of the ORICO statutes, causing injury to plaintiff Williams property interests (or to the Estates, or Trusts, of the late Samuel and Irene Rupert), against defendants Susan, James, Downes, Schulte, Zusman, Eng, Markun, MacGregor, Kimberlin, Long & Levit, Whitman, Johansson, and Cartwright, plus punitive damages in an amount to be determined by the Court.

///

8.      For a determination that defendants Susan, James, Downes, Schulte, Zusman, Eng, Markun, MacGregor, Kimberlin, Long & Levit, Whitman, Johansson, and Cartwright, are jointly and severally liable, as co-conspirators and joint tortfeasors, for any and all damages awarded under the pendent state law causes of action for conspiracy to convert assets, or to abuse the legal process, or to commit the tort of intentional interference with expected inheritance (IIEI), or for conspiracy to violate ORICO.

9.      For costs of suit incurred;

10.     For reasonable attorney fees, if an attorney is retained; and

11.     For such other relief as is just and proper.

Dated:  June 10, 2013

By:     /s/_____
        William Rupert
        Plaintiff, Pro Se
        P.O. Box 66403,
        Scotts Valley, CA 95067-6403
        (831) 336-9520
        emfwtr@comcast.net

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Susan Bond<br><br>18 USC § 1961(1)(B)<br>Wire Fraud<br>18 USC § 1343<br><br><br>**RICO - Stage 1, Predicate Acts 1** | Susan Bond's material misrepresentations to William Rupert, made during a 23 minute phone conversation, which had been initiated by William Rupert | **Oct. 13, 2008;**<br>Ben Lomond, CA and Portland, OR<br><br>Susan Bond<br><br>William Rupert's 23 minute phone call from California, to Susan Bond in Oregon, to discuss administration of Samuel Rupert's affairs, following his death on October 12, 2008 | Susan Bond falsely claimed that under the late Samuel Rupert's estate plans: (1) all assets went to his surviving spouse at the time, the late Irene Rupert, and no distributions to the remainder beneficiaries were possible; & (2) she had amended estate planning documents, signed by Samuel and Irene Rupert after they moved to Oregon in 2006, which put her in charge, and which trumped the amended estate planning documents dated January 26, 2004, by which Samuel and Irene Rupert designated William Rupert to be the adult child they wanted to be their sole administrator | Susan Bond gained possession of all estate planning documents and financial records, & control of all assets of Samuel and Irene Rupert's estates and trusts, which were worth around $900,000.00 at the time; Susan Bond also gained occupancy of the Office of the Trustee & Personal Representative, for Samuel and Irene Rupert's trusts and estates.  In reliance upon what he had been told, William Rupert failed to take the steps necessary to accept his appointments as the Personal Representative, and Successor Trustee, for the Estates and Trusts of Samuel and Irene Rupert |
| Susan Bond<br><br>18 USC § 1961(1)(A)<br>Aggravated Theft in the 1st Degree -ORS 164.057<br><br>18 USC § 1961(1)(B)<br>Wire Fraud<br>18 USC § 1343<br><br>**RICO - Stage 1, Predicate Acts 2** | Constructive fraud, or fiduciary fraud, through the failure to inform Beacon Investment Company, that Samuel Rupert died on October 12, 2008, and after his trust became irrevocable, the monthly draw of $2,000.00, for Samuel Rupert's living expenses, was no longer authorized, and had to be curtailed | **Nov., 2008 - March, 2009;** Portland, OR, Jackson, MI & Ann Arbor, MI<br><br>Susan Bond, Kenneth A. Dillon, Ronald Eppler | Beacon Investments was deceived by Susan Bond's intermeddling as a trustee *de son tort*, and tricked into honoring the instructions which Susan Bond, or her agent Kenneth A. Dillon, caused to be given to Ronald Eppler (to continue the monthly draws for living expenses, although Samuel Rupert was dead, his Trust was irrevocable, and the monthly draws represented a breach of the terms of his Trust ) | Susan Bond gained recognition and control over the assets held by Beacon Investment Company (when William Rupert should have been in charge).  At least $10,000.00 was improperly withdrawn and converted, from the assets that rightfully belonged to the Samuel Rupert Family Trust (& 1/3 to William Rupert), for the immediate benefit of Irene Rupert or her Trust, and for the ultimate benefit of Susan Bond and James Rupert |

APPENDIX A

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Susan Bond<br><br>18 USC § 1961(1)(A)<br>Aggravated Theft in the 1st Degree -ORS 164.057<br><br>18 USC § 1961(1)(B)<br>Wire Fraud<br>18 USC § 1343, and/or<br>Mail Fraud<br>18 USC § 1341<br>**RICO - Stage 1, Predicate Acts 3** | Statement and directions to Beacon Investment Company to transfer all assets in Samuel Rupert's IRA Account to Irene Rupert's IRA Account (in reliance upon a Beneficiary Designation form that did not pertain to the IRA Account which was held by Beacon Investment Company) | **Dec. , 2008;**<br>Portland, OR,<br>Jackson, MI &<br>Ann Arbor, MI<br><br>Susan Bond,<br>Kenneth A. Dillon,<br>Ronald Eppler | Beacon Investments was deceived by Susan Bond's intermeddling as a trustee *de son tort*, and the instructions she, or her agent Kenneth A. Dillon, caused to be given to them.  These fund were supposed to be ultimately funded into the Samuel  J. Rupert (Family) Trust, pursuant to this estate plans | More than $220,000.00 was improperly transferred and converted, through this improper transfer, which was contrary to the late Samuel Rupert's estate plans (Trust and pour-over Will), and concerned assets that rightfully belonged to the Samuel Rupert Family Trust (& 1/3 to William Rupert).  Ultimately, this has caused the unjust enrichment of Susan Bond and James Rupert, at William's expense |
| Susan Bond<br><br>18 USC § 1961(1)(A)<br>Aggravated Theft in the 1st Degree -ORS 164.057<br><br>18 USC § 1961(1)(B)<br>Wire Fraud<br>18 USC § 1343, and/or<br>Mail Fraud<br>18 USC § 1341<br><br><br><br>**RICO - Stage 1, Predicate Acts 4** | Email messages exchanged between Susan Bond and William Rupert | **Jan 12-13, 2009;**<br>Portland, OR,<br>Ben Lomond, CA<br><br>Susan Bond,<br>Carol Dickman | William Rupert's email from California memorialized his mistaken belief, the day before, concerning Irene Rupert's estate plans naming different administrators, which was the motivation for the illegal Amendment to Trust Agreement document he was tricked into drafting for Susan Bond, making her the trustee for the Irene Rupert Trust;  the reply email from Susan Bond failed to correct this erroneous belief that there had been an inconsistency problem, regarding Irene Rupert's estate plans.  This was constructive fraud, or fiduciary fraud, because she had a duty to correct William. | William Rupert was tricked into thinking Irene Rupert's estate plans were inconsistent with the November 13, 2009 POA agreement Susan Bond tricked her into signing.  Based thereupon, William Rupert was tricked into drafting an illegal Amendment to Trust document, which purported to unilaterally make Susan Bond the sole Successor Trustee of the Irene Rupert Trust, u/a/d November 1, 1995.  After Susan Bond had the illegal document notarized by Carol Dickman, she gained further control of all assets of Samuel and Irene Rupert, which were held by Umpqua Bank, and/or, by Beacon Investment Co. |

APPENDIX A

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Susan Bond<br><br>18 USC § 1961(1)(B)<br>Wire Fraud<br>18 USC § 1343<br><br><br>**RICO - Stage 1,<br>Predicate Acts 5** | Email message from Susan Bond to William Rupert | **Jan 17, 2009;**<br>Portland, OR,<br>Ben Lomond, CA<br><br><br>Susan Bond | Informed William Rupert that the table and 8 chairs he was to inherit, had been sold by Susan Bond (without mentioning that she kept the proceeds); which created the false impression that assets were being properly disposed of, according to the estate plans for the late Samuel Rupert and for Irene Rupert | Susan Bond gained the proceeds from the sale, as she kept the money for herself ($2,700), instead of transferring it to the Family Trust, as required by the estate plans for the late Samuel Rupert and for Irene Rupert, which were in existence at the time.  Additional assets, in an amount currently unknown, were also sold by Susan Rupert, who kept the entire proceeds from the sales of Samuel and Irene Rupert's personal property |
| Susan Bond<br><br>18 USC § 1961(1)(A)<br>Aggravated Theft in the 1st Degree -ORS 164.057<br><br>18 USC § 1961(1)(B)<br>Wire Fraud (18 USC § 1343); and/or Mail Fraud (18 USC § 1341); Bank Fraud (18 USC § 1344(2); Interstate Transportation of Stolen Property (18 USC § 2314)<br>**RICO - Stage 1,<br>Predicate Acts 6** | Email or other electronic messages, and/or letters which may have been mailed to Beacon Investment Company; and/or to Charles Schwab & Co. Inc., and/or to Umpqua Bank | **Feb. - March, 2009;**<br>Portland, OR,<br>Jackson, MI,<br>Ann Arbor, MI,<br>San Francisco, CA<br><br>Susan Bond,<br>Kenneth A. Dillon,<br>Carol Dickman | Beacon Investments was deceived by Susan Bond's intermeddling as a trustee *de son tort*, and the instructions she caused to be given to them, to transfer 4 accounts in Michigan into 3 new accounts with Charles Schwab & Co., Inc., located in California.  Umpqua Bank was also tricked into transferring assets to the accounts Susan Bond controlled (which should have been funded into the Samuel Rupert Family Trust), based on the illegal Amendment to Trust document that Susan Bond tricked William Rupert into drafting for her | Susan Bond gained control over hundreds of thousands of dollars of assets, which were wrongfully funded into Irene Rupert's Trust or other personal accounts held in Irene Rupert's name (but controlled by Susan Bond, under the illegal Amendment to Trust document she tricked William Rupert into drafting for her, on January 11, 2009).  Through her actions, and inactions, hundreds of thousands of dollars in assets that Samuel Rupert wanted to be funded into the Samuel Rupert Family Trust, were wrongfully misappropriated, through Susan Bond's breaches of trust |

APPENDIX A

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Susan Bond<br><br>18 USC § 1961(1)(A)<br>Aggravated Theft in the 1st Degree -ORS 164.057<br><br>18 USC § 1961(1)(B)<br>Mail Fraud<br>18 USC § 1341<br><br>**RICO - Stage 1, Predicate Acts 7** | Financial Summary document, prepared by Susan Bond and her husband Robert Bond, purporting to show the assets of the Irene Rupert Trust, as of March 31, 2009 & the 05/12/2009 transmittal letter signed by Susan Bond, as Successor Trustee, which was mailed to William Rupert and James Rupert | **May 12, 2009;**<br>Portland, OR, Ben Lomond, CA, Lake Leelanau, MI<br><br>Susan Bond, Robert Bond | Purported Financial Summary document showed all assets of the late Samuel Rupert and Irene Rupert, valued at  $874,995, were assets of the Irene Rupert Trust (as administered by Susan Bond).  The meager remaining assets of the Samuel Rupert Trust were also shown as having been funded into the Irene Rupert Trust (following 7 months of Susan Bond's fraudulent administration, as a trustee *de son tort*).  However,  Susan Bond did not account for all of her actions going back to October 12, 2008, or reveal her compensation, or the purported "gifts" she received | Susan Bond gained the ability to maintain her secrecy about her compensation and gifts, and she also concealed how she had administered the assets for 7 months, in a manner that was contrary to the terms of the irrevocable Samuel Rupert Trust, and his pour-over Will |
| Gile R. Downes; Susan Bond<br><br>18 USC § 1961(1)(A)<br>Aggravated Theft in the 1st Degree -ORS 164.057<br><br>18 USC § 1961(1)(B)<br>Wire Fraud (18 USC § 1343) & Mail Fraud (18 USC § 1341)<br><br>**RICO - Stage 2, Predicate Acts 8** | Threatening Letter, and proposed Modification of Trust document for the Samuel Rupert Trust, which were premised upon fraudulent misrepresentations, sent by Fax to William Rupert, and by regular mail, to William Rupert and to Irene Rupert | **June 10, 2009;**<br>Portland, OR, Ben Lomond, CA<br><br>Gile R. Downes, Susan Bond, James Rupert | The demand letter falsely stated that: (1) Irene Rupert  was the Successor Trustee of the Samuel Rupert Trust; (2) the assets of the Samuel Rupert Trust were less than $100,000.00; (3) the January 12, 2009 Amendment to Trust document concerned the Samuel Rupert Trust; and, (4) Irene Rupert could modify the Samuel Rupert Trust, under Oregon Law, even if William Rupert did not sign the Modification of Trust document, along with Susan Bond, James Rupert, and their children | Mr. Downes was over paid by at least $10,000.00, by Susan Bond, out of Irene Rupert's funds, for an unnecessary trust instrument that was signed by Irene Rupert based upon fraudulent statements that William Rupert was not entitled to trust asset and trust administration information, for the Samuel Rupert Trust.  Susan Bond kept her sole control of all assets of the late Samuel  Rupert and Irene Rupert, while avoiding her duty to account, as demanded by William Rupert, as a Permissible Distributee |

APPENDIX A

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Gile R. Downes; Susan Bond<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343) & Mail Fraud (18 USC § 1341)<br><br>**RICO – Stage 2, Predicate Acts 9** | Letter to the Michigan law firm, and attorney, Alan Price, who drafted Samuel and Irene Rupert's estate plans in 1995, and amended them in 2004 | **June 16, 2009;** Portland, OR,<br><br>Gile R. Downes, Susan Bond | The Michigan law firm was misled by the purported instructions not to share any information with William, as these instructions were based upon the fraudulent claims that: (1) the late Irene Rupert was the successor trustee of the Samuel Rupert Trust; and, (2) Gile R. Downes represented Irene Rupert, in her capacity as the successor trustee of the Samuel Rupert Trust.  In fact, Irene Rupert was never the successor trustee. | The fraudulent communication to the Michigan law firm prevented William from obtaining any information concerning the estate plans which this law firm prepared in 1995, and amended in 2004. This wrongful interference helped conceal and suppress evidence that would have revealed Susan's "unclean hands" as a trustee *de son tort,* and would have shown the 6/10/09 letter from Downes to be inaccurate and fraudulent. |
| Gile R. Downes; Susan Bond<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343) & Mail Fraud (18 USC § 1341)<br><br>**RICO - Stage 2, Predicate Acts 10** | 2nd threatening letter, premised upon fraudulent misrepresentations, sent by Fax to William Rupert, and by regular mail, to William Rupert and to Irene Rupert | **June 16, 2009;** Portland, OR, Ben Lomond, CA<br><br>Gile R. Downes, Susan Bond, James Rupert | Again repeated the deliberate misrepresentation of law and fact, concerning William Rupert not being entitled to trust asset and administration information for the Samuel Rupert Trust.  Irene Rupert was again fraudulently led to believe that: (1) William Rupert was acting unreasonably; (2) Susan Bond had no duty to account for her actions as a trustee *de son tort;* and, (3) Irene Rupert's "sham" successor trusteeship (over the Samuel Rupert Trust), was legitimate, despite her failure to accept her nomination, either formally or informally (through performance), within a reasonable time, or ever | Gile Downes gained the continued representation of Irene Rupert, and the excessive legal fees Susan Bond was willing to pay him (out of Irene Rupert's funds), for deceiving Irene Rupert, and for his help in concealing and suppressing Susan Bond's intermeddling misconduct as a trustee *de son tort.*  Susan Bond kept her sole  control of all assets of the late Samuel  Rupert and Irene Rupert, while avoiding her duty to account, as demanded by William Rupert, as a Permissible Distributee.  Susan Bond and James Rupert gained  by the prospects that William could be disinherited in the future, giving them a windfall, at his expense. |

APPENDIX A

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Edward S. Zusman; Kevin K. Eng;<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); Mail Fraud (18 USC § 1341); & Obstruction of Justice (18 USC § 1503 and/or 18 USC § 1505)<br><br>**RICO - Stage 3, Predicate Acts 11** | Joint Motion to Dismiss, for Lack of Personal Jurisdiction, under FRCP 12(b)(2).   Declaration of Irene E. Rupert.  Both, served by mail and electronically filed in the United States District Court for the Northern District of California, Case No. 5:09-cv-02758 JR (RS) | **November 3-4, 2009;** Portland, OR, San Francisco, CA San Jose, CA & Scotts Valley, CA<br><br>Edward S. Zusman, Kevin K. Eng Susan Bond, | The knowingly false Declaration of Irene Rupert was electronically filed with the federal district court in San Jose, CA and mailed to plaintiff William Rupert's Post Office Box in Scotts Valley, CA.  90 year old, Alzheimer's Disease stricken Irene Rupert was allowed to falsely claim she was the Successor Trustee of the Samuel Rupert Trust; and that she had "never owned any property located in California", at a time when she owned or controlled over $400,000.00, in California assets | Defendants Susan, Downes, Zusman and Eng gained a dismissal of plaintiff Williams federal lawsuit, based on lack of personal jurisdiction; thereby concealing from the late Irene E. Rupert the fact that defendant Downes and defendant Susan tricked her into executing new estate plans, through  misrepresentations of fact and law, including her "sham" trusteeship, that never existed, as a matter of law and fact.  If the truth had been known, Irene Rupert would have rescinded the new Oregon estate plans |
| Susan Bond;<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); Mail Fraud (18 USC § 1341); & Obstruction of Justice (18 USC § 1503 and/or 18 USC § 1505)<br><br>**RICO - Stage 3, Predicate Acts 12** | Declaration of Susan Bond, served by mail and electronically filed in the United States District Court for the Northern District of California, Case No. 5:09-cv-02758 JR (RS) | **November 3-4, 2009;** Portland, OR, San Francisco, CA San Jose, CA & Scotts Valley, CA<br><br>Susan Bond; Edward S. Zusman, Kevin K. Eng | The knowingly false Declaration of Susan Bond was electronically filed with the federal district court in San Jose, CA and mailed to plaintiff William Rupert's Post Office Box in Scotts Valley, CA. , wherein Susan Bond falsely claimed she had not transacted any business in, or with, the State of California.  This false statement of fact deceived Judge Fogel, and caused him to believe personal jurisdiction would be unreasonable, due to an insufficient "nexus", between California, the parties, and the causes of action alleged. | Defendants Susan, Downes, Zusman and Eng gained a dismissal of plaintiff Williams federal lawsuit, based on lack of personal jurisdiction; thereby concealing from the late Irene E. Rupert the fact that defendant Downes and defendant Susan tricked her into executing new estate plans, through  misrepresentations of fact and law.  If the truth had been known, Irene Rupert would have rescinded the new estate plans. These defendants perpetrated a fraud on the court, that damaged the plaintiff's property interests. |

APPENDIX A

Rupert v. Bond, et al.   Case No. 5:12-cv-05292 LHK (HRL)
RICO - Predicate Acts Chart                    **PAGE 6**
2ND Amended & Supplemental Complaint

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Gile R. Downes;<br><br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); Mail Fraud (18 USC § 1341); & Obstruction of Justice (18 USC § 1503 and/or 18 USC § 1505)<br><br>**RICO - Stage 3, Predicate Acts 13** | Declaration of Gile R. Downes,  served by mail and electronically filed in the United States District Court for the Northern District of California, Case No. 5:09-cv-02758 JR (RS) | **November 3-4, 2009;** Portland, OR, San Francisco, CA San Jose, CA & Scotts Valley, CA<br><br>Gile R. Downes; Susan Bond, Jessica MacGregor | The knowingly false Declaration of Gile R. Downes  was electronically filed with the federal district court in San Jose, CA and mailed to plaintiff William Rupert's Post Office Box in Scotts Valley, CA. , wherein defendant Downes  falsely claimed the late Irene Rupert had been the Successor Trustee of the Samuel Rupert Trust, and he falsely claimed to have represented the late Irene Rupert in her capacity as the Successor Trustee.  This false statement of fact was relied upon by Judge Fogel, causing a dismissal. | Defendants gained a corrupt dismissal of plaintiff Williams federal lawsuit, based on lack of personal jurisdiction; thereby concealing from the late Irene E. Rupert the fact that defendant Downes and defendant Susan tricked her into executing new estate plans, through misrepresentations of fact and law.  If the truth had been known, Irene Rupert would have rescinded the new estate plans.  These defendants perpetrated a fraud on the court, that damaged the plaintiff's property interests. |
| Jessica R. MacGregor;<br><br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); Mail Fraud (18 USC § 1341); & Obstruction of Justice (18 USC § 1503 and/or 18 USC § 1505)<br><br>**RICO - Stage 3, Predicate Acts 14** | Joint Motion to Dismiss, for Lack of Personal Jurisdiction, under FRCP 12(b)(2).  Declaration of Gile R. Downes,  served by mail and electronically filed in the United States District Court for the Northern District of California, Case No. 5:09-cv-02758 JR (RS) | **November 3-4, 2009;** Portland, OR, San Francisco, CA San Jose, CA & Scotts Valley, CA<br><br>Jessica R. MacGregor; Gile R. Downes; Susan Bond, | The knowingly false Declaration of Gile R. Downes  was electronically filed with the federal district court in San Jose, CA and mailed to plaintiff William Rupert's Post Office Box in Scotts Valley, CA. , wherein defendant Downes  falsely claimed the late Irene Rupert had been the Successor Trustee of the Samuel Rupert Trust, and he falsely claimed to have represented the late Irene Rupert in her capacity as the Successor Trustee.  This false statement of fact was relied upon by Judge Fogel, causing a dismissal. | Defendants gained a corrupt dismissal of plaintiff Williams federal lawsuit, based on lack of personal jurisdiction (because assets in California were concealed); resulting in the late Irene E. Rupert not being informed that defendants Downes and Susan tricked her into executing new estate plans.  If the truth had been known, Irene Rupert would have rescinded the new estate plans.  These defendants perpetrated a fraud on the court, to aid Susan and damage the plaintiff's property interests. |

APPENDIX A

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Edward S. Zusman; Jessica R. MacGregor;  18 USC § 1961(1)(B) Obstruction of Justice (18 USC § 1503 and/or 18 USC § 1505)  **RICO - Stage 3, Predicate Acts 15** | Oral argument before Judge Jeremy Fogel , in the United States District Court for the Northern District of California, Case No. 5:09-cv-02758 JR (RS), upon a Joint Motion to Dismiss under FRCP 12 (b)(2), for lack of personal jurisdiction. | **January 8, 2010;** San Jose, CA   Jessica R. MacGregor; Edward S. Zusman, | Judge Jeremy Fogel was misled by defendants false representations that: (1) the late Irene Rupert was the successor trustee of the Samuel Rupert Trust; (2) Gile R. Downes represented the late Irene Rupert in her capacity as the successor trustee of the Samuel Rupert Trust; (3) none of the disputed assets were located in California; and (4) none of the trust administration activities had been conducted in California. Judge Fogel relied upon these false statements, to find an insufficient "nexus" with the State of California | By depriving plaintiff William of his day in court to litigate the issue of defendant Susan's "unclean hands" as an intermeddling trustee *de son tort,* who misappropriated trust assets, and then conspired with defendant Downes to fraudulently induce the late Irene Rupert to execute new estate plans that lacked a lawful objective, or any benefit to Irene Rupert.  The defendants perpetuated Susan's fraudulent schemes.  Otherwise, Irene Rupert would have rescinded her Oregon Trust, and William would not have been disinherited. |
| Matthew Whitman; Susan Bond  18 USC § 1961(1)(B) Mail Fraud (18 USC § 1341)  **RICO - Stage 4, Predicate Acts 16** | Petition For Instructions, filed to commence CV10030497, verified by Susan Bond; Petition For Instructions and to Compel Distribution, filed to commence CV10030498, verified by Susan Bond; Both pleadings were served by mail upon plaintiff William Rupert | **March 15, 2010;** Portland, OR, Scotts Valley, CA   Matthew Whitman; Susan Bond; Gile R. Downes; | In CV10030497, the pleading verified by Susan Bond falsely swore the principal place of administration of the Irene E. Rupert Trust was still in Clackamas County (when it was really in Multnomah County, at Susan Bond's residence);  Concerning CV10030498, the pleading verified by Susan Bond falsely swore the principal place of administration of the Samuel J.  Rupert Trust was still in Clackamas County (when it was really in Santa Cruz County, California, at William Rupert's residence | Venue in Clackamas County, Oregon, and a corrupt Bum's Rush Ambush Expedited Bench Trial, without adequate and reasonable notice of trial (without any case management activity, or the Settlement Conference that was required, by the Court's own local rules), as directed by former  Judge Maurer, and as carried out by Senior Judge Welch.  The rush to trial deprived William Rupert of the opportunity to conduct reasonable and necessary discovery, resulting in corrupt General Judgments, and attorney fee judgments against him |

APPENDIX A

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Matthew Whitman; Susan Bond<br><br>18 USC § 1961(1)(A) Forgery in the 1st Degree -ORS 165.013; Criminal Possession of a Forged Instrument in the 1st Degree<br><br>18 USC § 1961(1)(B) Mail Fraud (18 USC § 1341)<br><br>**RICO - Stage 4, Predicate Acts 17** | The Original Trust instrument for the Samuel J. Rupert Trust, u/a/d November 1, 1995, with a forged Schedule A page (as forged by Susan Bond), which grossly understated the assets of the Samuel Rupert Trust.  The forged Trust instrument was mailed to plaintiff William Rupert | **March 29, 2010** Portland, OR, Scotts Valley, CA<br><br>Matthew Whitman; Susan Bond; James Rupert; Gile R. Downes; | The original trust document's Schedule A (asset inventory page), was forged by Susan Bond to make it appear that Samuel J. Rupert had funded his trust with Charles Schwab Brokerage Account #XXXX-5804, and with no other assets, prior to his death on October 12, 2008 (when the truth is that this particular brokerage account never existed during the lifetime of Samuel J. Rupert); this forged document was mailed to William Rupert in California.  This facilitated the scheme to suppress the entire Schedule A file, which Susan told William she had in her possession, when they spoke in her kitchen on January 12, 2009. | Purported evidentiary support for the fabricated story, first invented by Downes, that it had been Samuel and Irene Rupert's intentions to allocate only 10% of their combined assets to the Samuel J. Rupert (Family) Trust, and 90% of their combined assets to the Irene E. Rupert Trust.  The forged Trust instrument was used to perpetrate a fraud upon Senior Judge Welch and former Judge Maurer, resulting in corrupt General Judgments and a judgments for attorney fees, against William Rupert.  The actual Schedule A files possessed by Susan Bond, were suppressed, and she still will not produce them |
| Matthew Whitman;<br><br>18 USC § 1961(1)(B) Mail Fraud (18 USC § 1341<br><br>**RICO - Stage 4, Predicate Acts 18** | Letter drafted by defendant Whitman, on the Cartwright law firm letterhead, which was not filed with the Court. | **May 18, 2010;** Portland, OR, Scotts Valley, CA<br><br>Matthew Whitman; Susan Bond, Gile R. Downes; | Matthew Whitman falsely promised to make discovery documents "flow freely" to plaintiff William, and make formal discovery unnecessary, as soon as the Oregon lawsuits were at issue | In reasonable reliance, William Rupert postponed the commencement of his formal discovery, and the retention of an Oregon attorney, until such time as the promised documents could be examined and analyzed, to see if Mr. Whitman's story was true. William was skeptical, but he gave Mr. Whitman the benefit of the doubt, because he was an Officer of the Court. |

APPENDIX A

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Matthew Whitman;<br><br>18 USC § 1961(1)(B)<br>Mail Fraud<br>(18 USC § 1341<br><br>**RICO - Stage 4, Predicate Acts 19** | Letter drafted by defendant Whitman, on the Cartwright law firm letterhead, which was not filed with the Court. | **May 28, 2010;**<br>Portland, OR,<br>Scotts Valley, CA<br><br>Matthew Whitman;<br>Susan Bond,<br>Gile R. Downes; | Matthew Whitman again falsely promised to make discovery documents "flow freely" to plaintiff William, and make formal discovery unnecessary, as soon as the Oregon lawsuits were at issue | Once again, in reasonable reliance, William Rupert postponed the commencement of his formal discovery, and the retention of an Oregon attorney, until such time as the promised documents could be obtained, examined and analyzed, to see if Mr. Whitman's story was true. |
| Matthew Whitman;<br>Susan Bond<br><br>18 USC § 1961(1)(B)<br>Mail Fraud<br>(18 USC § 1341<br><br>**RICO - Stage 4, Predicate Acts 20** | Transmittal letter drafted by defendant Whitman, on the Cartwright law firm letterhead, which accompanied a CD disc containing 2,044 pages of scanned documents, which represented the promised voluntary production of all relevant documents, after a responsive pleading was filed by William Rupert, in the Oregon proceedings. This letter was not filed with the Court, nor was the CD containing 2,044 pages of scanned documents. | **July 20, 2010;**<br>Portland, OR,<br>Scotts Valley, CA<br><br>Matthew Whitman;<br>Susan Bond;<br>Gile R. Downes; | Matthew Whitman falsely asserted the documents scanned onto the enclosed CD provided support for his story that Samuel and Irene Rupert intended only 10% of their combined assets to go to the Samuel J. Rupert Trust, with the other 90% intended for the Irene E. Rupert Trust.  The scanned documents, which took months to examine and analyze, actually contradict the story told by Mr. Whitman, showing that only about 10% of Samuel and Irene Rupert's assets were held as Joint Tenants With Right of Survivorship. | Once again, in reasonable reliance, William Rupert postponed the commencement of his formal discovery, and the retention of an Oregon attorney, until such time as the 2,044 pages of scanned documents were examined and analyzed, in detail.  Mr. Whitman's false assertions were part of the scheme to take William Rupert by surprise, thru a  surprise, ambush trial, conducted before reasonable and necessary formal discovery could be completed,  by William Rupert. |

APPENDIX A

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Matthew Whitman; Susan Bond<br><br>18 USC § 1961(1)(B) Mail Fraud (18 USC § 1341<br><br><br><br>**RICO - Stage 4, Predicate Acts 21** | Transmittal letter drafted by defendant Whitman, on the Cartwright law firm letterhead, which accompanied Susan Bond's Response to plaintiff William Rupert's Counterclaims in Case No. CV 10030497, which was not filed with the Court. | **July 22, 2010;** Portland, OR, Scotts Valley, CA<br><br>Matthew Whitman; Susan Bond; Gile R. Downes; | Mr. Whitman's transmittal letter falsely stated, "We will end up doing a judicial settlement conference in these cases anyway, so isn't all this fighting about venue pointless?" Mr. Whitman's false statement caused William Rupert to think the Oregon proceedings were not going to be rushed to trial, and he still had plenty of time to retain an attorney, for the purpose of conducting formal discovery, if necessary, after review of the 2,044 pages of informal discovery documents. In fact, as things turned out, no judicial settlement conference was ever scheduled or conducted, and the cases were corruptly rushed to a Bum's Rush Ambush Expedited Bench Trial, at only the second hearing in the cases | William Rupert's postponement of his retention of an Oregon attorney, to commence formal discovery  - as Mr. Whtiman's false statement caused  William Rupert to think he would still have plenty of time to conduct formal discovery, and/or hire an Oregon attorney, if his review of the 2,044 pages scanned onto the CD disc ultimately failed to show there was support for Mr. Whitman's story, concerning why Samuel and Irene Rupert's assets were allocated by Susan Bond, and Gile R. Downes, with only 10% going to the Samuel J. Rupert (Family) Trust.  Plaintiff William was falsely led to believe the cases would not be rushed to trial, until after the required judicial settlement conference was conducted.  Given Mr. Whitman's representations during May and July of 2009, William Rupert reasonably entertained the belief that he might be telling the truth, as a trusted Office of the Court, such that William Rupert felt he had to review all of the informal discovery documents, prior to deciding whether to retain an attorney, or a forensic accountant |

APPENDIX A

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| James Rupert<br><br>18 USC § 1961(1)(B)<br>Wire Fraud<br>(18 USC § 1343)<br><br><br><br><br><br>**RICO - Stage 4, Predicate Acts 22** | Email message with an undated letter as an attachment | **August 31, 2010; 8:42 a.m.**<br>Lake Leelanau, MI<br><br><br>James Rupert | The undated letter attached to the Email message berates William for being greedy, and proclaims James' support for all of Susan's actions as an intermeddling trustee *de son tort*.  The undated letter from James also grossly misrepresents the purpose of the Samuel Rupert Family Trust, by falsely alleging, "This was a small family trust intended primarily for the care of a surviving spouse." The letter also falsely alleges: "You weren't stonewalled, you were wrong." | The false assertion that Samuel Rupert only intended the Samuel Rupert Family Trust to be a "small family trust", provided a sense of legitimacy to the forged Schedule A page that is part of the Exhibit #70 that was used to perpetrate a fraud upon the Clackamas County Circuit Court, during 2010 and 2011.  It also creates the false impression that Susan has not suppressed, concealed, or destroyed, the Schedule A files, that were among Samuel Rupert's confidential financial records, that she seized. |
| Matthew Whitman<br><br>18 USC § 1961(1)(B)<br>Wire Fraud (18 USC § 1343)<br><br>**RICO - Stage 4, Predicate Acts 23** | Wrongful *ex parte* communication, over the phone, to oppose William's Motion for Postponement of Trial; Motion for Designation as a Complex Case; and Request for a Settlement Conference – which former Judge Maurer had to decide, as the Presiding Judge at the time. | **October 26, 2010;**<br>Portland, Or, Oregon City, Or<br><br>Matthew Whitman; Former Clackamas County, Oregon, Circuit Court Judge Steven L. Maurer | Former Judge Maurer was led to believe,  based upon Whitman's wrongful *ex parte* communication, that the issue of William's disinheritance was a "no brainer", and the merits of the case required his disinheritance, and no amount of discovery could alter the ultimate outcome, on the merits, such that William would suffer no prejudice by being denied a fair trial, and the opportunity to hire another attorney, and conduct discovery, and any error would be harmless error, given the overwhelming case in favor of William's disinheritance. | A Bum's  Rush Ambush Expedited Bench Trial, which forced William to go to trial: (1)without reasonable and adequate advance notice of trial; (2)  without legal representation by an Oregon attorney; and, (3)  before his reasonable and necessary discovery was complete.  William was deprived of his constitutional right to a fair trial, including the right to obtain *inter alia* the late Irene Rupert's medical records from Susan, concerning the late Irene Rupert's Alzheimer's Disease diagnosis in early 2009, before she executed new Oregon estate plans. |

APPENDIX A

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Michelle Johansson; Susan Bond<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); and/or Mail Fraud (18 USC § 1341);<br><br>**RICO - Stage 5 Predicate Acts 24** | Ms. Johansson self-issued An Oregon Writ of Garnishment, naming William in his capacity as trustee of the Samuel Rupert Trust, and mailed, wired, or otherwise transmitted the document to Eunice Attorney Services, 212 Laurel Street, Suite 207, Santa Cruz, CA 95060, for personal service upon William Rupert, at his residence in Ben Lomond, California. | **May 27, 2011** Portland, OR; Santa Cruz, CA; Ben Lomond, CA<br><br>Michelle Johansson; Susan Bond; Matthew Whitman; | The California process serving company, and Harmony Kelley, Registration #75 Santa Cruz, CA., were erroneously led to believe that Ms. Johansson's self-issued Oregon Writ of Garnishment was legitimate process that could lawfully be served upon William Rupert at his residence in Ben Lomond, Ca., in order to directly enforce the Supplemental Judgment for attorney fees which was entered in Clackamas County, Oregon Circuit Court Case No. CV10030497, on April 28, 2011 | Harassment of William Rupert, by a reputable process serving company that belongs to NAPPS (National Association of Professional Process Servers), which would have declined to serve the Oregon Writ, but for Ms. Johansson's false certification of the Writ. The resulting personal service created the false impression that the judgment for attorney fees, issued by an Oregon Court, could be directly enforced in California, without compliance with the California Sister-State Money Judgment Act. |
| Michelle Johansson; Susan Bond<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); and/or Mail Fraud (18 USC § 1341); Bank Fraud (18 USC § 1344(2); Interstate Transportation of Stolen Property (18 USC § 2314)<br><br>**RICO - Stage 5 Predicate Acts 25** | Oregon Writ Of Garnishment, self-issued by Michelle Johansson; used to wrongfully reach assets located in a Nebraska brokerage account which was controlled by William Rupert, facilitated by electronic messages and transfers, and/or through the United States Postal Service | **October 19, 2011;** Portland, OR; Bellevue, NE Scotts Valley, CA<br><br>Michelle Johansson; Susan Bond; Matthew Whitman; | T.D. Ameritrade was falsely led to believe they had a duty to honor an Oregon Writ of Garnishment, and levy upon funds in a brokerage account controlled by William Rupert, located in Nebraska (without compliance with, and in violation of, the Nebraska Uniform Enforcement of Foreign Judgments Act (Revised Statutes § 25-1587.01 to 25-1587.09) | More than $5,000.00 was wrongfully and illegally levied upon (or otherwise seized), and transmitted from Bellevue, Nebraska to Michelle Johansson and Susan Bond, in Portland, OR, through the abuse of Oregon's legal process, within the State of Nebraska, to defeat the purposes of the Nebraska Uniform Enforcement of Foreign Judgments Act (under which William Rupert could have obtained a stay of enforcement, pending appeal, had he been informed in advance, as required by Nebraska Law) |

APPENDIX A

Rupert v. Bond, et al.   Case No. 5:12-cv-05292 LHK (HRL)
RICO - Predicate Acts Chart
2ND Amended & Supplemental Complaint

PAGE 13

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Michelle Johansson; Susan Bond<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); and/or Mail Fraud (18 USC § 1341); Bank Fraud (18 USC § 1344(2); Interstate Transportation of Stolen Property (18 USC § 2314)<br><br>**RICO - Stage 5, Predicate Acts 26** | Oregon Writ Of Garnishment, self-issued by Michelle Johansson, for Case No. CV10030497; designed to reach assets located in California, although a California Writ of Execution was required; Required service of the Writ upon  William Rupert was made by mail and fax, on November 8, 2011, which was 4 days after delivery of the Writ to the financial institution | **November 3-8, 2011;** Portland, OR; Scotts Valley, CA<br><br>Michelle Johansson; Susan Bond; Matthew Whitman; | J.P. Morgan Chase Bank, N.A.  was falsely led to believe, on November 4, 2011, they had a duty to levy upon William Rupert's funds located in a checking account located in Scotts Valley, CA, without compliance with, and in violation of, the California Sister-State Money Judgment Act (CCP § 1710.10 to 1710.65) | More than $6,000.00 was wrongfully and illegally levied upon, and transmitted from Scotts Valley, California to Michelle Johansson and Susan Bond, in Portland, OR, through the abuse of Oregon's legal process, within the State of California, contrary to, and in violation of, the California Sister-State Money Judgment Act.  The levy was also illegal because it came during the 30 day safe-harbor period, following Susan Bond's domestication of the Oregon judgment on Nov. 3, 2011. |
| Michelle Johansson; Susan Bond<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); and/or Mail Fraud (18 USC § 1341); Bank Fraud (18 USC § 1344(2); Interstate Transportation of Stolen Property (18 USC § 2314)<br><br>**RICO - Stage 5, Predicate Acts 27** | Oregon Writ Of Garnishment, self-issued by Michelle Johansson, for Case No. CV10030498; designed to reach assets located in California, although a California Writ of Execution was required; Required service of the Writ upon  William Rupert was made by mail and fax, on November 8, 2011, which was 4 days after delivery of the Writ to the financial institution | **November 4-8, 2011;** Portland, OR; Scotts Valley, CA<br><br>Michelle Johansson; Susan Bond; Matthew Whitman; | J.P. Morgan Chase Bank, N.A.  was falsely led to believe, on November 4, 2011, they had a duty to levy upon William Rupert's funds located in a checking account located in Scotts Valley, CA, without compliance with, and in violation of, the California Sister-State Money Judgment Act (CCP § 1710.10 to 1710.65) | Additional funds were wrongfully and illegally levied upon, and transmitted from Scotts Valley, California to Michelle Johansson and Susan Bond, in Portland, OR, through the abuse of Oregon's legal process, within the State of California, contrary to, and in violation of, the California Sister-State Money Judgment Act.  The wrongful enforcement actions also caused J.P. Morgan Chase Bank, N.A. to place a hold upon William's checking account, in the amount of $9,999,999.00, which will not expire until December 31, 2099. |

APPENDIX A

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Gile R. Downes; Jessica MacGregor; Kate G. Kimberlin<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); Mail Fraud (18 USC § 1341); & Obstruction of Justice (18 USC § 1503 and/or 18 USC § 1505)<br><br>**RICO - Stage 6, Predicate Acts 28** | FRCP 12(b)(2) Motion to Dismiss; Memorandum of Points and Authorities (p. 3:3-7; 3:16-23; 4:2-3; 4:11-12; 5:4-9, fn.3; 7 fn. 5; 12:22-24;); Request for Judicial Notice; Declaration of Gile R. Downes (3:18-20; 3:21; 3:26-27) | **November 21, 2012** Portland, OR, San Jose, CA & Scotts Valley, CA<br><br>Gile R. Downes; Jessica MacGregor; Kate Kimberlin<br><br>Documents served by mail and electronically filed with the Court | This bad faith motion corruptly endeavors to influence the Court, through the following material misrepresentations:  (1) William filed and litigated similar counter-claims in Oregon;  (2) plaintiff William is trying to obtain his 3rd bite of the apple; (3) the late Irene Rupert was the successor trustee of the Samuel Rupert Trust, after Samuel Rupert died, until March 12, 2010; and, (4) Downes represented the late Irene Rupert, in her capacity as successor trustee of the Samuel Rupert Trust (from May 2009 until her death, on March 12, 2010). | Formidable arguments that go beyond the personal jurisdiction issues presented by a FRCP 12(b)(2) motion to dismiss; by suggesting plaintiff William's action should also be barred upon preclusion grounds, because plaintiff William has already had his full and fair day in Court, to air his grievances over how things were administered, following the death of Samuel J. Rupert, on October 12, 2008, by the trio of Susan Bond, Gile R. Downes, and/or the late Irene Rupert.  If the *res judicata* argument was valid, the Court would be more inclined to dismiss. |
| Susan Bond; James Rupert<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); Mail Fraud (18 USC § 1341); & Obstruction of Justice (18 USC § 1503 and/or 18 USC § 1505)<br><br>**RICO - Stage 6, Predicate Acts 29** | FRCP 12(b)(2) Motion to Dismiss; Memorandum of Points and Authorities p. 4:10-15; 5 fn.4; 10:1-4; 14:9-10; 15:24-26; 16:13-16;16:23-24;  Request for Judicial Notice (4 fn. 2); Declaration of Susan Bond (2:17-19 ¶ 8);  Declaration of James Rupert | **November 30, 2012;** Portland, OR, San Jose, CA & Scotts Valley, CA<br><br>Susan Bond, Devin N. Robinson James Rupert<br><br>Documents served by mail and electronically filed with the Court | This bad faith motion corruptly endeavors to influence the Court, through the following material misrepresentations:  (1) William filed and litigated similar counter-claims in Oregon;  (2) plaintiff William is trying to obtain his 3rd bite of the apple; (3) the Charles Schwab Institutional accounts that Judge Jeremy Fogel never heard about in *Rupert I,* were opened by the late Irene Rupert, in Oregon. Judicial Notice is corruptly sought of a proposed pleading, which was never filed or litigated in Oregon. | Defendants  Susan, James, and non-party co-conspirator Devin Noah Robinson, gained a formidable (but false),  argument to present in support of their FRCP 12(b)(2) Motion to Dismiss for lack of personal jurisdiction; and they gained a fraudulent defense to RICO – Stage 3, Predicate Acts #11 & #12, which charges defendants Susan, Eng and Zusman with filing a similar false declaration, which was used to perpetrate a fraud upon Judge Fogel  in 2009 and 2010. |

APPENDIX A

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Susan Bond; James Rupert<br><br><u>18 USC § 1961(1)(B)</u> Wire Fraud (18 USC § 1343); Mail Fraud (18 USC § 1341); & Obstruction of Justice (18 USC § 1503 and/or 18 USC § 1505)<br><br>**RICO - Stage 6, Predicate Acts 30** | Amended FRCP 12(b)(2) Motion to Dismiss; Memorandum of Points and Authorities p. 4:10-15; 5 fn.4; 10:1-4; 14:9-10; 15:24-26; 16:13-16;16:23-24; ;  Request for Judicial Notice (4 fn. 2) | **December 7, 2012;** Portland, OR, San Jose, CA & Scotts Valley, CA<br><br>Susan Bond, Devin N. Robinson James Rupert<br><br>Documents served by mail and electronically filed with the Court | This bad faith motion corruptly endeavors to influence the Court, through the following material misrepresentations:  (1) William filed and litigated similar counter-claims in Oregon;  (2) plaintiff William is trying to obtain his 3rd bite of the apple; (3) the Charles Schwab Institutional accounts that Judge Jeremy Fogel never heard about in *Rupert I*, were opened by the late Irene Rupert, in Oregon. Judicial Notice is corruptly sought of a proposed pleading, which was never filed or litigated in Oregon. | Defendants  Susan, James, and non-party co-conspirator Devin Noah Robinson, gained a formidable (but false),  argument to present in support of their FRCP 12(b)(2) Motion to Dismiss for lack of personal jurisdiction; and they gained a fraudulent defense to RICO – Stage 3, Predicate Acts #11 & #12, which charges defendants Susan, Eng and Zusman with filing a similar false declaration, which was used to perpetrate a fraud upon Judge Fogel  in 2009 and 2010. |
| Matthew Whitman; Michelle Johansson;<br><br><u>18 USC § 1961(1)(B)</u> Wire Fraud (18 USC § 1343); Mail Fraud (18 USC § 1341); & Obstruction of Justice (18 USC § 1503 and/or 18 USC § 1505)<br><br>**RICO - Stage 6, Predicate Acts 31** | FRCP 12(b)(2) Motion to Dismiss; Memorandum of Points and Authorities (8:27-9:16); Request for Judicial Notice; Declaration of Matthew Whitman; Declaration of Michelle Johansson | **December 17, 2012;** Portland, OR, San Jose, CA & Scotts Valley, CA<br><br>Matthew Whitman, Michelle Johansson; James C. Krieg<br><br>Documents served by mail and electronically filed with the Court | This bad faith motion corruptly endeavors to influence the Court, through arguments that Ms. Johansson's Oregon Writs of Garnishment were not aimed at William in California and William's California bank account located in Scotts Valley, CA, simply because she initiated the garnishment process in Oregon.  Her own evidence, Exhibits  D and E, on pages 2 & 3, show she provided William's home address and mailing address in California, and she provided William's California checking account number.  The aim was at William, in California. | Formidable, but false, arguments that Ms. Johansson's self-issued Oregon Writs of Garnishment were not aimed at William, and at William's property, in California. Similarly, they created the false impression that the legal process of the State of Oregon, was not misused to illegally reach across state lines and extract money from within the State of California, even though ORS 18.655(1)(e) limits the effect of an Oregon Writ of Garnishment, which is served upon a financial institution, to funds on hand at branches  within the State of Oregon. |

APPENDIX A

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Gile R. Downes; Jessica MacGregor; Kate G. Kimberlin<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); Mail Fraud (18 USC § 1341); & Obstruction of Justice (18 USC § 1503 and/or 18 USC § 1505)<br><br>**RICO - Stage 6, Predicate Acts 32** | Reply Memorandum of Points and Authorities; (See p. 1:5; 12:16-24; | **December 20, 2012 & December 21, 2013** Portland, OR, San Jose, CA & Scotts Valley, CA<br><br>Gile R. Downes; Jessica MacGregor; Kate Kimberlin<br><br>Documents served by mail and electronically filed with the Court | The Reply repeats the following material misrepresentations:  (1) William filed and litigated similar counter-claims in Oregon.  (2) plaintiff William is trying to obtain his 3rd bite of the apple.  However, William's counter-claims were never filed, or dismissed, in Oregon, because ORS 21.100 states that a document shall only be "filed", if all filing fees are paid. It is undisputed that no filing fees were paid by Downes or Whitman, and William declined to pay the filing fees necessary to pursue his counter-claims, in Oregon | Formidable arguments that go beyond the personal jurisdiction issues presented; by suggesting plaintiff William's action should also be barred upon preclusion grounds, because plaintiff William has already had his full and fair day in Court, to air his grievances over how things were administered, following the death of Samuel J. Rupert, on October 12, 2008, by the trio of Susan Bond, Gile R. Downes, and/or the late Irene Rupert.  If the *res judicata* argument was valid, the Court would be more inclined to dismiss. |
| Susan Bond; James Rupert<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); Mail Fraud (18 USC § 1341); & Obstruction of Justice (18 USC § 1503 and/or 18 USC § 1505)<br><br>**RICO - Stage 6, Predicate Acts 33** | Reply Memorandum of Points and Authorities (6:2-5; 10:9-10); | **December 31, 2012;** Portland, OR, San Jose, CA & Scotts Valley, CA<br><br>Susan Bond, Devin N. Robinson James Rupert<br><br>Documents served by mail and electronically filed with the Court | The Reply is infected with material misrepresentations, including:  (1) William filed and litigated similar counter-claims in Oregon; (2) William is trying to obtain his 3rd bite of the apple.  However, William's counter-claims were never filed, or dismissed, in Oregon; because ORS 21.100 states that a document shall only be "filed", if all filing fees are paid. It is undisputed that no filing fees were paid by Downes or Whitman, and William declined to pay the filing fees necessary to pursue his counter-claims, in Oregon. | Formidable arguments that go beyond the personal jurisdiction issues presented; by suggesting plaintiff William's action should also be barred upon preclusion grounds, because plaintiff William has already had his full and fair day in Court, to air his grievances over how things were administered, following the death of Samuel J. Rupert, on October 12, 2008, by the trio of Susan Bond, Gile R. Downes, and/or the late Irene Rupert.  If the *res judicata* argument was valid, the Court would be more inclined to dismiss. |

APPENDIX A

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Matthew Whitman; Michelle Johansson;<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); Mail Fraud (18 USC § 1341); & Obstruction of Justice (18 USC § 1503 and/or 18 USC § 1505)<br><br>**RICO - Stage 6, Predicate Acts 34** | Reply Memorandum of Points and Authorities; Page 2:27-28, footnote 2<br><br>Electronically filed with the Court in San Jose, CA., and served by mail upon plaintiff, in California | **January 9, 2013;** Portland, OR, San Jose, CA & Scotts Valley, CA<br><br>Matthew Whitman, Michelle Johansson; James C. Krieg<br><br>Documents served by mail and electronically filed with the Court | These defendants incorporate the motion filed by defendants Downes, MacGregor and Kimberlin (See **RICO – Stage 6, Predicate Acts 28**), so as to corruptly endeavors to use dishonest means to cause the Court to believe *inter ali:* (1) plaintiff William is trying to obtain his 3rd bite of the apple, instead of his 1st; (2) the late Irene Rupert was the successor trustee of the Samuel Rupert Trust, after Samuel Rupert died; and, (3) Downes represented the late Irene Rupert as successor trustee of the Samuel Rupert Trust. | Formidable arguments that go beyond the personal jurisdiction issues presented; by suggesting plaintiff William's action should also be barred upon preclusion grounds, because plaintiff William has already had his full and fair day in Court. The false claim that Irene Rupert was the successor trustee of the Samuel Rupert Trust obscures Susan's role as a trustee *de son tort,* and William's role as lawful Successor Trustee, effective July 8, 2009. If the *res judicata* argument was valid, the Court would be more inclined to dismiss. |
| Gile R. Downes; Jessica MacGregor; Kate Kimberlin<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); Mail Fraud (18 USC § 1341); & Obstruction of Justice (18 USC § 1503 and/or 18 USC § 1505)<br><br>**RICO - Stage 6, Predicate Acts 35** | Motion for FRCP Rule 11 Sanctions; Memorandum of Points and Authorities (p. 2:1; 2:9; 3:4-6; 3:14-15; 3:23-24;4:1-4; 4:23-5:4; 5:13-17; 5 fn. 5; 13:12-14; Request for Judicial Notice; Declaration of Kate Kimberlin; | **February 8, 2013;** Portland, Or, San Francisco, CA San Jose, CA Scotts Valley, CA<br><br>Gile R. Downes; Jessica MacGregor; Kate Kimberlin<br><br>Documents served by mail and electronically filed with the Court | This bad faith motion corruptly endeavors to influence the Honorable Lucy H. Koh, through dishonest means, including *inter ali:* (1) misrepresenting an unfiled pleading, as if it had been litigated in Oregon; (2) falsely claiming William is trying to obtain his 3rd bite of the litigation apple; (3) falsely claiming Irene Rupert was the successor trustee of the Samuel Rupert Trust, after Samuel Rupert died; and, (4) falsely claiming Downes represented Irene Rupert as successor trustee of the Samuel Rupert Trust. | Defendants gained a fraudulent pretext and basis for the application of preclusion principles in the instant case (such as res judicata, collateral estoppel, and/or the Rooker-Feldman Doctrine), to support the pending FRCP 12(b)(2) Motions to Dismiss. Similarly, a fraudulent pretext and basis for the FRCP Rule 11 Motion for Sanctions was gained, as Downes is trying to perpetrate a fraud upon Judge Koh, so she will find William a federal vexatious litigant, for allegedly seeking a 3rd bite of the litigation apple. |

APPENDIX A

Rupert v. Bond, et al.   Case No. 5:12-cv-05292 LHK (HRL)
RICO - Predicate Acts Chart
2ND Amended & Supplemental Complaint

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Gile R. Downes; Jessica MacGregor; Kate Kimberlin<br><br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); Mail Fraud (18 USC § 1341); & Obstruction of Justice (18 USC § 1503 and/or 18 USC § 1505)<br><br>**RICO - Stage 6, Predicate Acts 36** | Reply Memorandum of Points and Authorities (p. 1:26-27; 2 fn. 1; 7:17-18) | **March 1, 2013;** Portland, Or, San Francisco, CA San Jose, CA Scotts Valley, CA<br><br>Gile R. Downes; Jessica MacGregor; Kate Kimberlin<br><br>Documents served by mail and electronically filed with the Court | This bad faith Reply memorandum corruptly endeavors to influence the Honorable Lucy H. Koh, through dishonest means, by falsely asserting *inter ali:* (1) unfiled pleadings, for which filing fees were not paid, by either William, Downes or Whitman, were, nonetheless, filed and litigated, and dismissed, in Oregon; (2) William is trying to obtain his 3rd bite of the litigation apple (when the truth is he is still looking for his 1st bite of the litigation apple, against Susan, Downes, and Schulte). This bad faith, corrupt argument overlooks and ignores ORS 21.100, which clearly states that no documents shall be filed in any Circuit Court unless, and until, all required filing fees are paid. | Formidable arguments that go beyond the personal jurisdiction issues presented; by falsely suggesting plaintiff William's action should also be barred upon preclusion grounds, because plaintiff William has already had his full and fair day in Court, to air his grievances over how the Samuel J. Rupert Trust was administered, following the death of Samuel J. Rupert, on October 12, 2008, by the trio of Susan Bond, Gile R. Downes, and/or the late Irene Rupert. If the *res judicata* argument was valid, the Court would be more inclined to grant the Rule 11 Motion for Sanctions. |

APPENDIX A

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Susan Bond<br><br>ORS 166.715(6)(a)(P)<br>ORS 165.042 - Fraudulently Obtaining a Signature)<br>ORS 165.715(6)(a)(Q)<br>ORS 165.102 - Obtaining Execution Of Documents By Deception<br><br>**ORICO - Stage One, Predicate Acts 1** | Power of Attorney (POA), Document, purporting to give Susan Bond the authority, *inter alia,* to unilaterally amend Irene Rupert's estate planning documents | **Nov. 13, 2008**, Portland, OR, Milwaukie, OR<br><br>Susan Bond, | The overbroad and largely unenforceable POA agreement purported to give Susan Bond broad powers, including the right to unilaterally amend Irene E. Rupert's estate plans.  Irene E. Rupert was falsely led to believe her existing estate plans needed to be augmented with this agreement, and that this was a lawful POA agreement, when the amendment powers were illegal pursuant to ORS 130.050(5) | Susan Bond gained purported authority and control over Irene E. Rupert's financial affairs, and apparent authority to control assets held by Beacon Investment Company, Umpqua Bank, and various insurance companies, pursuant to the illegal POA agreement Irene E. Rupert was tricked into signing, through Susan Bond's direct, or indirect, misrepresentations of fact and law, to obtain her signature |
| Susan Bond<br><br>ORS 166.715(6)(a)(K)<br>ORS 164.085 - Theft By Deception<br>ORS 164.098 - Theft By Receiving<br><br>ORS 166.715(6)(a)(Q)<br>ORS 165.102 - Obtaining Execution Of Documents By Deception<br><br>**ORICO – Stage One, Predicate Acts 2** | Amendment To Trust, u/a/d Jan. 11, 2009, which Susan Bond tricked William Rupert into drafting, which purported to unilaterally amend the Irene E. Rupert Trust, u/a/d November 1, 1995 (without Irene Rupert's knowledge or consent), to make Susan Bond the sole successor trustee (whereas, the original terms of the trust made Susan Bond, William Rupert & James Rupert co-successor trustees, if Irene Rupert could not manage her own affairs) | **Jan. 12, 2009, to May, 12, 2009;** Portland, OR, Milwaukie, OR, Ann Arbor, MI, Jackson, MI<br><br>Susan Bond, Ronald Eppler, Carol Dickman, Kenneth A. Dillon, | William Rupert was deceived by Susan Bond, when she chose to show him: (1) her illegal POA agreement from November 13, 2009; and, (2) Irene Rupert's Will and Trust, from 1995, without the January 26, 2004 Codicil and Amendment to Trust.   The 3 misleading documents created the false impressions that: (1) Irene Rupert had signed a valid POA; (2) there was a conflict among Irene Rupert's estate plans; and, (3) the POA gave  Susan Bond the power to unilaterally amend the Irene Rupert Trust instrument, to name herself the sole trustee, to resolve the apparent inconsistencies among the estate plans | Susan Bond gained apparent authority to administer the Irene Rupert Trust, u/a/d November 1, 1995, as the sole successor trustee. After Susan Bond had the illegal Amendment to Trust document notarized by Umpqua Bank employee Carol Dickman, it was used  to transfer assets to  Irene E. Rupert or her Trust, that were supposed to be funded into  the Samuel J. Rupert Family Trust. Susan Bond gained apparent authority, which was recognized by brokerage companies, banks, and insurance companies, to the detriment of the Samuel Rupert Family Trust, and William Rupert's vested interest in the Family Trust |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Gile R. Downes; Susan Bond; Schulte law firm<br><br>ORS 166.715(6)(a)(K)<br>ORS 164.085 - Theft By Deception<br>ORS 164.098 - Theft By Receiving<br><br>ORS 166.715(6)(a)(P)<br>ORS 165.042 - Fraudulently Obtaining a Signature)<br><br>ORS 166.715(6)(a)(Q)<br>ORS 165.102 - Obtaining Execution Of Documents By Deception<br><br>ORS 166.715(6)(a)(Q)<br>ORS 165.095 - Misapplication Of Entrusted Funds<br><br><br>**ORICO – Stage Two, Predicate Acts 3** | Irene Rupert Trust, u/a/d 06/09/2009;<br>Will of Irene E. Rupert, u/a/d 06/06/2009 | **June 9, 2009;**<br>Portland, OR<br><br><br>Gile R. Downes, Susan Bond, Schulte law firm, James Rupert | Trust instrument executed for the primary purposes of using *in terrorem* clauses to extort William Rupert's agreement to modify the Samuel Rupert Trust (making Susan Bond trustee), and shielding Susan Bond from having to ever account for her action as a trustee *de son tort.*  The signature of Irene Rupert  was fraudulently obtained, through: (1) the knowingly false statements of Gile R. Downes, that William Rupert had no right to any documents or information regarding the Samuel Rupert Trust, and Susan Bond had no duty to account for her actions, involving her administration of the Samuel Rupert Trust; (2) Susan Bond's misrepresentations to 90 year old, Alzheimer's Disease stricken Irene Rupert, that Samuel and Irene Rupert had supported William Rupert for his entire life; and, (3) the coercive pressure that was placed upon Irene E. Rupert, by Susan Bond (and her children), and by James Rupert (and his children), to execute new and drastically different estate plans, that favored Susan Bond and James Rupert, at the expense of William Rupert | Gile R. Downes, and the Schulte law firm, gained excessive legal fees, as more than $8,000.00 was paid for a simple trust agreement worth no more than $2,000.00, at the most.  They received the extra fees, paid by Susan Bond out of Irene Rupert's funds, in exchange for misleading Irene Rupert about: (1) Susan Bond's duty to account, and William Rupert's right to trust asset and trust administration information, as a permissible distributee of the Samuel Rupert Trust; and, (2) the glaring conflict of interest among the various capacities in which Gile R. Downes was purporting to represent Irene Rupert.  Susan Bond gained the ability to suppress and conceal her misapplication of entrusted funds. Susan Bond also gained by the provisions that were included to indemnify her, for any legal fees which she might incur.  Susan Bond and James Rupert gained from the prospective disinheritance of William Rupert, because they stood to gain his 1/3 share of the assets claimed to belong to the Irene Rupert Trust, which were looted from the Samuel  Rupert Trust |

APPENDIX B

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Gile R. Downes; Susan Bond; Schulte law firm<br><br>ORS 166.715(6)(a)(K)<br>ORS 164.085 - Theft By Deception<br>ORS 164.098 - Theft By Receiving<br><br>ORS 166.715(6)(a)(P)<br>ORS 165.042 - Fraudulently Obtaining a Signature)<br><br>ORS 166.715(6)(a)(Q)<br>ORS 165.102 - Obtaining Execution Of Documents By Deception<br><br>ORS 166.715(6)(a)(Q)<br>ORS 165.095 - Misapplication Of Entrusted Funds<br><br><br>**ORICO – Stage Two, Predicate Acts 4** | Irene Rupert Trust, u/a/d 07/23/2009 | **July 23, 2009;**<br>Portland, OR<br><br><br>Gile R. Downes, Susan Bond, Schulte law firm, James Rupert | Amended Trust instrument executed to expand the scope of the *in terrorem* clause, to include service of a federal lawsuit upon Susan Bond or Gile R. Downes, which alleged breaches of fiduciary duty (by Susan Bond), and interference with economic relations (by Susan Bond and Gile R. Downes).  Once again, Irene Rupert's signature was obtained through deception and knowingly false statements, regarding: (1) Gile R. Downes' statement  that William Rupert had no right to any documents or information, so it was unreasonable for him to ask Susan Bond to account for her actions, as a trustee *de son tort,* concerning the Samuel Rupert Trust; (2) William Rupert being supported his entire life by Samuel and Irene Rupert; and (3) Irene Rupert could lawfully claim to be the successor trustee of the Samuel Rupert Trust (without any duty to honor the terms of the Trust).  Had Irene Rupert not been misled and pressured by Susan Bond and James Rupert (and their children), she would not have signed the Oregon estate plans. | Gile Downes and the Schulte law firm gained additional excessive legal fees, in excess of $4,000.00 for a simple amended trust agreement worth no more than $1,000.00, at the most.  They received the extra fees, paid by Susan Bond out of Irene Rupert's funds, for continuing to  mislead Irene Rupert about Susan Bond's duty to account, and whether it was Susan Bond or William Rupert who was being unreasonable.  Susan Bond gained increased protection  from ever having to account for her intermeddling as a trustee *de son tort,* through the amended  *in terrorem* provisions (which would be triggered by service of William Rupert's federal lawsuit against Susan Bond and Gile R. Downes).  Susan Bond gained the ability to conceal her misapplication of entrusted funds.  Susan Bond and James Rupert gained from the prospective disinheritance of William Rupert, because they stood to gain his 1/3 share of the assets claimed to belong to the Irene Rupert Trust, which were wrongfully converted from the Samuel  Rupert Trust |

APPENDIX B

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Edward S. Zusman; Kevin K. Eng; Markun law firm; Susan Bond; Gile R. Downes; Schulte law firm; Jessica MacGregor; Long & Levit<br><br>ORS 166.715(6)(a)(P)<br>ORS  165.042 - Fraudulently Obtaining a Signature<br><br>ORS 166.715(6)(a)(Q)<br>ORS 165.102 - Obtaining Execution Of Documents By Deception<br><br>ORS 166.715(6)(a)(B)<br>ORS 162.065 - Perjury<br><br><br><br>**ORICO – Stage Three, Predicate Acts 5** | Declaration Of Irene E. Rupert executed on November 3, 2009. Declaration of Gile R. Downes executed on November 3, 2009. Declaration of Susan Bond, executed on November 3, 2009. | **November 3, 2009,** Portland, OR.<br><br>Edward S. Zusman; Kevin K. Eng; Markun law firm; Susan Bond; Gile R. Downes; Schulte law firm; Jessica MacGregor; Long & Levit law firm. | The declarations were signed in Oregon, to support a joint Motion to Dismiss (for lack of personal jurisdiction), which was filed in USDC NDCA Case No. 5:09-cv-02758 JF (RS).  Irene Rupert, as a 90 year old with Alzheimer's Disease was coerced and tricked into: (1) thinking there was no conflict of interest in having Zusman, Eng, and the Markum law firm represent both her and Susan Bond; (2) falsely stating that she was the Successor Trustee of the Samuel Rupert Trust; (3) falsely stating neither she, or her late husband, the late Samuel Rupert, had ever owned any property located in California; when the truth was that more than $400,000.00 in assets were located in San Francisco, CA, at the time.  The declaration of Gile R. Downes falsely stated that Irene Rupert was the Successor Trustee of the Samuel Rupert Trust, and that Downes represented Irene Rupert in that capacity.  These knowingly false declarations misled Judge Jeremy Fogel , and influenced him to dismiss the case for a perceived lack of personal jurisdiction. | Susan,  Zusman, Eng, Downes and MacGregor, and the associated law firms, gained a dismissal of William federal lawsuit, based on a lack of personal jurisdiction; thereby concealing from the late Irene E. Rupert the fact that Susan and Downes tricked her into executing her new estate plans, through misrepresentations of fact and law, as William's Declaratory Relief remedy, contained in the FAC he filed on July 23, 2009, would have established, if it had proceeded to a determination on the merits.  The defendants avoided having a federal judge tell Irene Rupert that: (1) she was not the successor trustee of the Samuel Rupert Trust, because of her failure to accept her nomination, formally or informally, within a reasonable time, or ever; (2) William Rupert became the successor trustee of the Samuel Rupert Trust on July 8, 2009; and, (3) Gile R. Downes had been misrepresenting both the law and the facts to her, to favor Susan Bond, at the expense of William Rupert and the Samuel J. Rupert Family Trust, in bad faith. |

APPENDIX B

Rupert v. Bond, et al.   Case No. 5:12-cv-05292 LHK (HRL)
ORICO - Predicate Acts Chart                    **PAGE  4**
2nd Amended & Supplemental Complaint

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Susan Bond;<br><br>ORS 166.715(6)(a)(B)<br>ORS 162.065 - Perjury<br><br><br>**ORICO – Stage Four, Predicate Acts 6** | Petition For Instructions, filed to commence Oregon Case No. CV10030497, verified under penalty of perjury, by Susan Bond; Petition For Instructions and to Compel Distribution, filed to commence Oregon Case No. CV10030498, verified under penalty of perjury, by Susan Bond | **March 15, 2010;**<br>Portland, OR,<br>Scotts Valley, CA<br><br>Susan Bond;<br>Matthew Whitman;<br>Cartwright law firm; | In Case No. CV10030497, the pleading verified by Susan Bond falsely swore under penalty of perjury that the principal place of administration of the Irene E. Rupert Trust was still in Clackamas County (when it was really in Multnomah County, at Susan Bond's residence).  In Case No. CV10030498, the pleading verified by Susan Bond falsely swore under penalty of perjury that the principal place of administration of the Samuel J.  Rupert Trust was still in Clackamas County (when it was really in Santa Cruz County, California, at William Rupert's residence), although the truth is that it stopped being in Clackamas County on October 12, 2008, when Samuel Rupert died and Susan Bond started administering the Trust as a trustee *de son tort,* at her residence in Multnomah County (prior to William Rupert's acceptance of his nomination to be the sole successor trustee of the Samuel J. Rupert Trust, which became effective on July 8, 2009, when his acceptance papers were delivered to all permissible distributees of the Trust) | Venue in Clackamas County, Oregon, and a corrupt Bum's Rush Ambush Expedited Bench Trial, without adequate and reasonable notice of trial (without any case management activity, or the Settlement Conference that was required, by the Court's own local rules), as directed by  Judge Maurer, and as carried out by Senior Judge Welch.  The rush to trial deprived William Rupert of the opportunity to conduct reasonable and necessary discovery, resulting in corrupt General Judgments, and attorney fee judgments against him.  Through the fraud upon the court, regarding the location of the principle place of administration of the trusts, the defendants gained an assignment to a friendly judge, Senior Judge Welch, whose erroneous personal belief that no ripe controversy had to be alleged or proven, to invoke the judicial power of the State of Oregon, caused her to conduct the proceedings before her as if she was presiding over the Make-A-Wish Foundation, instead of a court of law (to the extreme detriment of William Rupert). |

APPENDIX B

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Susan Bond; Matthew Whitman; Cartwright law firm<br><br>ORS 166.715(6)(a)(K)<br>ORS 164.085 - Theft By Deception<br>ORS 164.098 - Theft By Receiving<br>ORS 166.715(6)(a)(P)<br>ORS 165.037 - Criminal Simulation<br>ORS 165.080 - Falsification Of Business Records<br>**ORICO – Stage Four, Predicate Acts 7** | Copy of forged original of the Samuel J. Rupert Trust, u/a/d November 1, 1995, which was submitted to the Clackamas County Circuit Court, and received into evidence on October 27, 2010 by Senior Judge Welch, as Susan Bond's Exhibit #70, in the proceedings Senior Judge Welch conducted in Case No. CV10030497 and Case No. CV10030498 | **October 27, 2010;** Portland, OR, Oregon City, OR.;<br><br>Susan Bond; Matthew Whitman; Cartwright law firm; | The Clackamas County Circuit Court, State of Oregon, and both Senior Judge Welch and Judge Maurer, were falsely led to believe, by forged Exhibit #70, that there was evidentiary support for the story that: (1) Samuel and Irene Rupert intended only 10% of their combined assets to go to the Samuel J. Rupert Trust, with the other 90% intended for the Irene E. Rupert Trust; and, (2) no other Attachment A, trust inventory schedules were ever prepared by the late Samuel J. Rupert, or in the possession of Susan Bond | A General Judgment, granting Susan Bond's Petition For Instructions and to Compel Distribution, entered on April 28, 2011, in Case No. CV10030498, by Senior Judge Welch; and also the General Judgment, entered on October 12, 2011, by Judge Maurer in Case No. CV11050251, declaring the assets of the Samuel J. Rupert Trust were only the assets in Charles Schwab brokerage account XXXX-5804, of roughly $90,000.00 (consistent with the forged Schedule A that was part of Susan Bond's Exhibit #70) |
| Michelle Johansson; Cartwright law firm; Susan Bond<br><br>ORS 166.715(6)(a)(K)<br>ORS 164.085 - Theft By Deception<br>ORS 164.098 - Theft By Receiving<br><br><br>**ORICO – Stage Five, Predicate Acts 8** | Oregon Writ Of Garnishment (or some other form of Oregon process), self-issued by Michelle Johansson, designed to wrongfully reach assets, or wrongfully gain control of assets, located in a Nebraska brokerage account which was controlled by William Rupert | **October 19, 2011;** Portland, OR; Bellevue, NE<br><br>Michelle Johansson; Matthew Whitman; Cartwright law firm; Susan Bond | T.D. Ameritrade was falsely led to believe they had a duty to levy upon (or otherwise seize), funds in a brokerage account controlled by William Rupert, located in Nebraska (without compliance with, and in violation of, the Nebraska Uniform Enforcement of Foreign Judgments Act (Revised Statutes § 25-1587.01 to 25-1587.09) | Roughly $6,000.00 was wrongfully and illegally levied upon (or seized), and transmitted to Michelle Johansson, Matthew Whitman, the Cartwright law firm and Susan Bond, in Portland, OR, through the abuse of Oregon's legal process, to defeat the purposes and provisions of the Nebraska Uniform Enforcement of Foreign Judgments Act (under which a stay of enforcement can be obtained by a judgment debtor, if an appeal is pending in the state which entered the judgment) |

APPENDIX B

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Michelle Johansson; Cartwright law firm; Susan Bond<br><br>ORS 166.715(6)(a)(K)<br>ORS 164.085 - Theft By Deception<br>ORS 164.098 - Theft By Receiving<br><br>**ORICO – Stage Five, Predicate Acts 9** | Oregon Writs Of Garnishment, self-issued by Michelle Johansson, for Case No. CV10030497 & Case No. CV10030498; designed to wrongfully reach assets held by a California Financial Institution, although a California Writ of Execution was required, under the circumstances | **November 4, 2011;**<br>Portland, OR;<br>Scotts Valley, CA<br><br>Michelle Johansson;<br>Matthew Whitman;<br>Cartwright law firm;<br>Susan Bond | J.P. Morgan Chase Bank, N.A. was falsely led to believe they had a duty to levy upon William Rupert's funds located in a checking account located in Scotts Valley, CA, without compliance with, and in violation of, the California Sister-State Money Judgment Act (CCP § 1710.10 to 1710.65) | Roughly $7,000.00 was wrongfully and illegally levied upon, and transmitted from Scotts Valley, California to Michelle Johansson, Matthew Whitman, the Cartwright law firm, and Susan Bond, in Portland, OR, through the abuse of Oregon's legal process, to defeat the purposes of the California Sister-State Money Judgment Act, which entitled William Rupert to a stay of enforcement, pending his appeals before the Oregon Court of Appeals. Such a Stay was obtained on November 17, 2011, from the Superior Court of Santa Cruz County, California, but the stolen funds, obtained through deception, were not returned, despite William Rupert's demands for restitution. |
| Gile R. Downes; Schulte law firm; Jessica MacGregor; Kate Kimberlin; Long & Levit law firm<br><br>ORS 166.715(6)(a)(B)<br>ORS 162.065 - Perjury<br><br>**ORICO – Stage Six, Predicate Acts 10** | Declaration of Gile R. Downes, executed in Oregon and served by mail and electronically filed in the United States District Court for the Northern District of California, Case No. 5:12-cv-05292 LHK (HRL) | **November 21, 2012;**<br>Portland, OR,<br>San Jose, CA &<br>Scotts Valley, CA<br><br>Susan Bond,<br>Devin N. Robinson | The Declaration of Gile R. Downes falsely swore under penalty of perjury that the late Irene Rupert had been the Successor Trustee of the Samuel Rupert Trust, and that Downes had represented her in that capacity from May 2009 until her death on March 12, 2010. | Defendants Downes, Schulte, MacGregor, Kimbelin and Long & Levit gained a baseless and fraudulent legal argument to present in support of Downes FRCP 12(b)(2) Motion to Dismiss for lack of personal jurisdiction, which obscures the role that Susan played, during her wrongful occupancy of the Office of the Trustee, for the Samuel Rupert Trust, in 2008 and 2009. |

APPENDIX B

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Susan Bond;<br><br>ORS 166.715(6)(a)(B)<br>ORS 162.065 - Perjury<br><br>**ORICO – Stage Six, Predicate Acts 11** | Declaration of Susan Bond, served by mail and electronically filed in the United States District Court for the Northern District of California, Case No. 5:12-cv-05292 LHK (HRL) | **November 30, 2012;**<br>Portland, OR,<br>San Jose, CA &<br>Scotts Valley, CA<br><br>Susan Bond,<br>Devin N. Robinson | The Declaration of Susan Bond falsely swore under penalty of perjury that certain brokerage accounts which were opened with Charles Schwab Institutional, which is located in San Francisco, California (without any branches in the State of Oregon), were opened in 2009, by the late Irene E. Rupert, in the State of Oregon, not in the State of California. | Defendant  Susan, and non-party co-conspirator Devin N. Robinson, gained a baseless and fraudulent legal argument to present in support of Susan Bond's FRCP 12(b)(2) Motion to Dismiss for lack of personal jurisdiction. |

APPENDIX B

APPENDIX C

RICO Enterprise Stages 1-6 & RICO Defendants or Co-Conspirators Chart

 Rupert v. Bond, et al.      Case No. 5:12-cv-05292 LHK (HRL)

| RICO Defendant Or Co-Conspirator, Or Enterprise | RICO Stage 1 10/13/2009 & continuing | RICO Stage 2 05/20/2009 & continuing | RICO Stage 3 11/04/2009 & continuing | RICO Stage 4 03/15/2010 & continuing | RICO Stage 5 05/19/2011 & continuing | RICO Stage 6 11/21/2012 & continuing |
|---|---|---|---|---|---|---|
| Susan Bond | X | X | X | X | X | X |
| Trustee *De Son Tort* RICO Enterprise | X | X | X | X | X | X |
| Gile R. Downes, Esq. | | X | X | X | | X |
| Schulte RICO Enterprise | | X | X | X | | X |
| James Rupert | | X | | X | | X |
| Edward S. Zusman, Esq. | | | X | | | |
| Kevin K. Eng, Esq. | | | X | | | |
| Markun RICO Enterprise | | | X | | | |
| Jessica MacGregor, Esq. | | | X | | | X |
| Long & Levit RICO Enterprise | | | X | | | X |
| Matthew Whitman, Esq. | | | | X | X | X |
| Michelle Johansson, Esq. | | | | X | X | X |
| Cartwright  RICO Enterprise | | | | X | X | X |
| Kate G. Kimberlin, Esq. | | | | | | X |

APPENDIX C

# DECLARATION OF WILLIAM RUPERT

# EXHIBIT 2

```
 1                         P-R-O-C-E-E-D-I-N-G-S

 2                  THE COURT:  Sir?

 3                  MR. RUPERT:  Okay.  I believe we were discussing

 4      Exhibit 6 attached to your responses to admissions, the first

 5      quarter 2009 financial summary as of March 31st, 2009.

 6                  MR. WHITMAN:  Your request for admissions are in the

 7      pleadings spindle in front of you.  The lower sticky note is

 8      attached to the request for admission, and he's talking about

 9      Exhibit 6 --

10                  THE WITNESS:  Okay.

11                  MR. WHITMAN:  -- to the -- that request for

12      admissions.

13      BY MR. RUPERT:

14           Q.   And this summary listed various categories and shows

15      that --

16           A.   I'm not there yet, Bill.

17           Q.   Okay.

18                      (Pause in the proceedings.)

19                  THE WITNESS:  Okay.  I am now.

20      BY MR. RUPERT:

21           Q.   Okay.  And this shows the total assets were $874,995

22      as of March 31st, 2009; is that correct?

23           A.   That's correct.

24           Q.   Okay.  And this -- this appears to be the assets of

25      both Samuel and Irene, the family assets; is that correct?
```

1       A.    Yes.

2       Q.    Because I noticed there's a -- there's a -- one of

3    the -- okay, one, two, three, four, five, six, seven, eight --

4    there's eight different entries, and the sixth one down is

5    labeled "Samuel - Irene Rupert trust, 83,371.

6             Is that the Samuel J. Rupert trust?

7       A.    Yes.

8       Q.    Okay.  So is it fair to say that the administration

9    following Dad's death was as if the trusts were combined and

10   consolidated?

11      A.    No.  It's fair to say I didn't know what I was doing

12   when I wrote this.

13      Q.    Okay.  And then -- okay.

14            You gave this to Mother first, didn't you, around

15   May 6, 2009?

16      A.    No.  It says March 31st.  She was -- would have

17   gotten it at the same time.

18      Q.    Well, it doesn't say it was prepared on the 31st,

19   but are you -- you're --

20      A.    Oh, okay.  I -- I don't know when that -- when.  It

21   was after our phone conversation that I --

22      Q.    Did you give it to Mother before you sent the copies

23   to me and Jim, our younger brother?

24      A.    I do not know.

25      Q.    Okay.  The -- the next -- well, Exhibit 6 is a

# DECLARATION OF WILLIAM RUPERT

# EXHIBIT 3

1     the Samuel J. Rupert Trust?

2          A     I looked -- I looked at the Samuel J. Rupert

3     Trust.  I told her that you stepped in if she resigned.

4     I told her that she -- she's named as successor trustee

5     to her husband.  If she resigned from that capacity or

6     did not serve in that capacity, the way his trust was

7     written, you stepped in.  I told her that.

8          Q     No.  My question is in terms of your advice

9     to her that she was the trustee how did you -- what did

10    you see that led you to believe that she had become the

11    trustee other than being nominated?

12         A     The provision in the trust that says

13    something to the effect that, "Upon my death, my wife,

14    Irene, shall be trustee of this trust."  I mean, you --

15    you -- you probably have the trust there.  You can look

16    at it.

17         Q     So your testimony seems to imply that if

18    somebody is nominated they automatically become the

19    trustee.  Is that what you're trying to say?

20         A     I'm saying when somebody is named as

21    successor and they take the position of trustee they're

22    the trustee.

23         Q     What led you to believe that Irene Rupert had

24    taken the position of trustee of the Samuel J. Rupert

25    Trust?

1        A    Well, when I explained to her the terms of

2   her husband's trust she, in effect, said, "I will be

3   the trustee of this trust.  If my daughter can't be

4   without -- without a modification of the trust I

5   will be."

6        Q    She said, "I will be."  Did she say she had

7   been?

8        A    I don't recall "had been," "will be."  It was

9   clear to me that she understood that she had to be the

10  trustee of this trust unless she was willing for you to

11  be.

12       Q    So you didn't think it was necessary for her

13  to send out notices to inform the other qualified

14  beneficiaries that she was performing as the successor

15  trustee?

16       A    I don't think I -- I don't think I told her,

17  "Send out some notice."

18       Q    Doesn't the Oregon Trust Code require that, a

19  duty to inform and report?

20       A    It may.

21       Q    You did not advice her to comply with the

22  Oregon Uniform Trust Code?

23       A    Not in those words.  I don't think any lawyer

24  would say, "Now, Mrs. Rupert, comply with the terms of

25  the Oregon Trust Code."