United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM RUPERT,<br><br>Plaintiff,<br>v.<br><br>SUSAN BOND, et al.,<br><br>Defendants. | Case No.: 12-CV-05292-LHK<br><br>ORDER GRANTING MOTIONS TO DISMISS |

Plaintiff William Rupert ("Plaintiff") brings this racketeering action against his siblings, as well as several attorneys who allegedly represented and/or advised Plaintiff's family members. Specifically, Plaintiff brings this action against: (1) his sister, Susan Bond ("Susan"); (2) his brother, James Rupert ("James"); (3) attorney Gile R. Downes ("Downes"); and (4) the law firm of Schulte, Anderson, Downes, Aronson & Bitner, P.C. ("Schulte"). In addition, Plaintiff brings this action against: (5) attorney Edward S. Zusman ("Zusman"); and (6) the law firm of Markun Zusman & Compton, LLP ("MZC") (collectively the "MZC Defendants"). Further, Plaintiff brings this action against: (7) attorney Matthew Whitman ("Whitman"); (8) attorney Michelle Johansson ("Johansson"); and (9) the law firm of Cartwright Whitman Baer, PC ("Cartwright") (collectively

United States District Court
For the Northern District of California

the "Cartwright Defendants"). The Court refers to all Defendants collectively as "Defendants."[1] Plaintiff alleges that Defendants conspired to deprive him of his inheritance.

Before the Court are three Motions to Dismiss for lack of personal jurisdiction. *See* ECF No. 18 (filed by Defendants Downes and Schulte); ECF No. 33 (filed by siblings Susan and James); ECF No. 36 (filed by the Cartwright Defendants). In addition, the MZC Defendants move to dismiss for failure to state a claim upon which relief can be granted. *See* ECF No. 50.[2] Pursuant to Civil Local Rule 7-1(b), the Court found this matter appropriate for resolution without oral argument. Having considered the submissions of the parties and the relevant law, and for good cause shown, the Court hereby GRANTS Defendants' Motions to Dismiss without prejudice.

## I. BACKGROUND

This case arises out of a dispute between two siblings, Plaintiff William Rupert and Defendant Susan Bond, over the management of their parents' trusts. Plaintiff essentially alleges that, through a series of conspiracies involving his sister, Susan; his brother, James; and several Oregon and California attorneys, he was deprived of several hundred thousand dollars which rightfully belonged to him as part of his inheritance. According to Plaintiff, the facts of the alleged conspiracy are as follows:

### A. Creation of the Samuel and Irene Rupert Trusts in Michigan

Samuel Rupert ("Samuel") and Irene Rupert ("Irene") (both now deceased) lived their adult lives in Ann Arbor, Michigan. First Amended Complaint ("FAC") ¶ 23. On November 1, 1995, they had estate plans prepared by Alan Price ("Price"), a Michigan attorney. FAC ¶ 24. As part of these estate plans, their assets were placed into revocable trusts: the Samuel J. Rupert Trust ("Samuel's Trust") and the Irene E. Rupert Trust ("Irene's Trust"). FAC ¶ 24. Under the terms of these trusts, Samuel and Irene were to serve as trustee of their own respective trusts, and as successor trustees for each other's trust. *Id.* The terms of Samuel's trust included a provision that,

---

[1] In Plaintiff's Complaint, Plaintiff refers to his sister, Susan Bond, Oregon attorney Downes, California attorney Zusman, Oregon attorney Whitman, and Oregon attorney Johansson as the "RICO Defendants." *See* FAC ¶¶ 5-10.

[2] Defendants Downes and Schulte have also moved for sanctions pursuant to Federal Rule of Civil Procedure 11. *See* ECF No. 65. The Court will address the Motion for Sanctions separately.

if he died first, the assets of the trust would be transferred to a Family Trust for the benefit of Irene and their three children (Susan, William, and James). FAC ¶ 25. On January 26, 2004, Samuel and Irene had Price amend the estate plans to designate Plaintiff as the first nominated, sole successor trustee of both of their trusts and as their sole personal representative. FAC ¶ 27.

**B. Susan's Management of the Trusts in Oregon**

In 2006, Samuel and Irene relocated to Oregon. FAC ¶ 29. On October 12, 2008, Samuel died as a result of a head injury he sustained from falling in the shower. FAC ¶¶ 30-31. Following the death of Samuel, Susan and Plaintiff had a number of discussions concerning who was designated by their parent's estate plans to manage the estate. FAC ¶¶ 34-35, 40-46. During these conversations, Susan allegedly misrepresented that she possessed updated documents naming her as the sole trustee and permitting her to unilaterally amend the trust. FAC ¶¶ 40-41. In this position, as sole trustee, Plaintiff claims that Susan directed funds from the Family Trust to Irene's Trust and sold certain assets, the proceeds of which she retained for herself. FAC ¶ 101.

Around April of 2009, Plaintiff became concerned about how his parents' estate was being managed. FAC ¶ 48. Over the next few months, he repeatedly asked Susan for an accounting of the assets in the estate and began questioning the legitimacy of the documents placing her in charge of the estate. FAC ¶¶48-49. Finally, in May of 2009, Plaintiff demanded that Susan relinquish control of the estate and turn over all financial records and estate planning documents. FAC ¶ 50.

Susan retained the services of Defendant Downes of Schulte, Anderson, Downes, Aronson & Bittner, PC ("Schulte"), an Oregon law firm also named as a defendant in this action, to respond to Plaintiff's numerous letters and requests. FAC ¶ 51-52. On June 10, 2009, Downes sent a letter to Plaintiff informing him that his prospective inheritance rights had been reduced to pay for the legal fees charged by Downes, and that if he continued to make requests of Susan, his inheritance would be further reduced to account for future legal fees. FAC ¶¶ 59-60. Plaintiff was further instructed that he was required to sign an enclosed modification of trust agreement by June 19, 2009, and that failure to sign this agreement could potentially result in his being disinherited by Irene. FAC ¶ 60.

**C. Plaintiff's First Lawsuit in the Northern District of California**

On June 20, 2009, Plaintiff filed a lawsuit in the Northern District of California against Defendants Susan, Downes, and Schulte alleging interference with economic relations and conspiracy to deprive him of his rights with respect to his parent's estate. FAC ¶ 66. The action was amended on June 23, 2009, to add Irene as a defendant. *Id*. Defendants Markun, Zusman, and their law firm Markun Zusman & Compton, LLP ("MZC"), a California law firm also named as a defendant in this action, represented Susan, Downes, and Schulte in this action. *See* FAC ¶ 75. The case was dismissed by Judge Fogel on September 9, 2010, for lack of personal jurisdiction. FAC ¶ 73. As the events alleged concerned the planning of an estate in Oregon, Judge Fogel ruled that "none of the Defendants' alleged conduct has any nexus with California other than the fact that [Plaintiff] happens to reside in California." *See Rupert v. Bond*, 2010 WL 3618662, at *4 (N.D. Cal. Sept. 9, 2010) ("Rupert I"). Plaintiff alleges that the Defendants in *Rupert I*, through their attorneys, the MZC defendants, falsely represented to Judge Fogel that none of the disputed assets were located in California. FAC ¶¶ 73-74. In fact, Plaintiff contends, Susan transferred over $400,000 worth of assets to brokerage accounts held by Charles Schwab & Co., Inc. in their San Francisco headquarters. *Id*. But for this misrepresentation, Plaintiff claims, Judge Fogel would not have granted Defendants' motion to dismiss for lack of personal jurisdiction. FAC ¶ 74.

**D. Susan and the Cartwright Defendants Commence Probate Proceedings in Oregon**

On March 12, 2010, Irene died. FAC ¶ 76. On March 15, 2010, Susan—along with defendants Whitman and Johansson of Cartwright, Whitman, Baer PC ("Cartwright"), an Oregon law firm also named as a defendant in this action—commenced probate proceedings in Oregon (the "Oregon Proceedings") for declaratory judgment concerning management and disbursal of Samuel and Irene's Trusts. FAC ¶ 77. Plaintiff claims that, during these proceedings, Defendants made fraudulent representations to the Oregon courts and that the court proceedings unfolded as a "Bum's Rush Ambush" in which he was provided only minimal notice of the relevant trial dates. FAC ¶¶ 77-79.

As a result of these alleged activities, Defendants were successful in obtaining a general judgment disinheriting Plaintiff, as well as attorney's fees and costs for the Oregon proceedings.

United States District Court
For the Northern District of California

FAC ¶¶ 79-85. During the course of this litigation, numerous filings were mailed between Defendants in Oregon and Plaintiff in California. FAC ¶ 82. Plaintiff timely appealed the judgment, and the appeal is currently pending before the Oregon Court of Appeals. FAC ¶ 81.

Following this judgment, Plaintiff claims that the Cartwright Defendants improperly issued writs of garnishment to JP Morgan Chase Bank attempting to collect on the judgment from the Oregon Proceedings. FAC ¶¶ 86-87. As a result of these improperly issued writs, Plaintiff claims $7,000 was wrongfully removed from his California checking account, and $6,000 was wrongfully removed from his T.D. Ameritrade Brokerage account located in Nebraska. FAC ¶¶ 87-88. Plaintiff also claims that Susan, possibly with the aid of the Cartwright Defendants, filed the judgment from the Oregon Proceedings with the Santa Cruz Superior Court and that this resulted in "wrongful collection activities." FAC ¶¶ 87-89.

**E. The Instant Proceedings**

Plaintiff filed the instant lawsuit on October 12, 2012, *see* Compl., ECF No. 1, and filed the operative FAC on October 26, 2012, *see* FAC, ECF No. 3. Plaintiff alleges that Defendants Susan, Downes, Zusman, Whitman, and Johansson have violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") through numerous acts of wire, bank, and mail fraud, interstate transportation of stolen property, attempted extortion, and obstruction of justice. FAC ¶ 95. Plaintiff also alleges that all Defendants, except James, have conspired to violate RICO. FAC ¶¶ 112-13. In addition, Plaintiff alleges several state law claims against Defendants for conversion of trust assets, intentional interference with expected inheritance ("IIEI"), violations of the Oregon Racketeer Influenced and Corrupt Organizations Act ("ORICO"), and conspiracy. FAC ¶¶ 114-133.

On November 21, 2012 Defendants Downes and Schulte filed a Motion to Dismiss for lack of personal jurisdiction. *See* Mot. to Dismiss FAC as against Downes and Schulte ("Downes Mot."), ECF No. 18. On November 30, 2012 Defendants Susan and James filed a Motion to Dismiss for lack of personal jurisdiction, *see* Motion to Dismiss FAC as against Susan and James ("Susan Motion"), ECF No. 23, which they subsequently amended, *see* Amended Motion to Dismiss FAC as against Susan and James ("Susan Amended Motion"), ECF No. 33. On December

United States District Court
For the Northern District of California

17, 2012, the Cartwright Defendants filed a Motion to Dismiss for lack of personal jurisdiction. *See* Mot. to Dismiss FAC as against Cartwright Defendants ("Cartwright Mot."), ECF No. 36. On January 7, 2013, the MZC Defendants filed a Motion to Dismiss for failure to state a claim upon which relief can be granted. *See* Mot. to Dismiss as against MZC Defendants ("MZC Mot."), ECF No. 50.

Plaintiff filed an opposition to each of these respective motions. *See* Opp'n to Downes Mot. ("Opp'n to Downes Mot."), ECF No. 29; Opp'n to Susan Am. Mot. ("Opp'n to Susan Am. Mot."), ECF No. 42; Opp'n to Cartwright Mot. ("Opp'n to Cartwright Mot."), ECF No. 46; Opp'n to MZC Mot. ("Opp'n to MZC Mot."), ECF No. 56.

Defendants filed replies in regard to each of their respective motions. *See* Reply Supp. Downes Mot. ("Downes Reply"), ECF No. 39; Reply Supp. Susan Am. Mot. ("Susan Reply"), ECF No. 41; Reply Supp. Cartwright Mot. ("Cartwright Reply"), ECF No. 55; Reply Supp. MZC Mot. ("MZC Reply"), ECF No. 61.

In addition, on February 2, 2013, Defendants Downes and Schulte moved for sanctions pursuant to Federal Rule of Civil Procedure 11. *See* Mot. for Sanctions ("Mot. for Sanctions"), ECF No. 65. Plaintiff also filed a Motion for Leave to File a Second Amended & Supplemental Complaint on June 11, 2013. *See* Mot. for Leave to File SA&SC ("Mot. to Amend"), ECF No. 78.

## II. LEGAL STANDARDS

### A. Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the

United States District Court
For the Northern District of California

non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Moreover, pro se pleadings are to be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).

Nonetheless, the Court need not accept as true allegations contradicted by judicially noticeable facts, and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.), *cert. denied*, 516 U.S. 964 (1995); *see Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nor is the Court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and citations omitted); *accord Iqbal*, 129 S. Ct. at 1950.

**B. Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction**

In a motion challenging personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, has the burden of establishing that jurisdiction exists. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the motion to dismiss constitutes a defendant's initial response to the complaint, the plaintiff need only make a prima facie showing that personal jurisdiction exists. *See Data Disc, Inc. v. Systems Tech Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). While a plaintiff cannot "'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true [and] [c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (quoting *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977), and citing *AT & T v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir. 1996)).

**C. Leave to Amend**

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). When dismissing a complaint for failure to state a claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* at 1130 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (internal quotation marks omitted)). Furthermore, the Court "has a duty to ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

Before the Court is a Motion to Dismiss for failure to state a claim upon which relief can be granted, filed by the MZC Defendants, and three Motions to Dismiss for lack of personal jurisdiction, filed by the remaining Defendants. The Court will first address the MZC Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted, and then will discuss all of the Motions to Dismiss for lack of personal jurisdiction collectively. [3]

[3] In his Opposition to Susan's Amended Motion, which Defendants bring pursuant to Federal Rule of Civil Procedure 12(b)(2), Plaintiff states that "the dishonest *res judicata* contentions (by defendants Susan, James, Downes and Schulte), arise under FRCP 12(b)(6), and are based upon matters beyond the FAC, so they should be treated as a FRCP 56 motion, and denied. (See FRCP 12(d))." Opp'n to Susan Am. Mot. at 9 (emphasis in original). In addition, Plaintiff states that "[t]he defendants' stealth summary judgment motion, based upon res judicata principles and supported by voluminous documentary evidence, should be viewed as a voluntary submission to the Court's jurisdiction, because such relief cannot properly be granted by a Court unless it has fundamental jurisdiction, both subject matter and personal jurisdiction." Opp'n to Susan Am. Mot. at 9 n.8. From these statements the Court gathers that Plaintiff is contending that the Motions to Dismiss have been effectively converted into a motion for summary judgment and should be treated by the Court as such. Plaintiff appears to present two bases in support of this argument. First, Plaintiff contends that Defendants James, Susan, Downes, and Schulte, by raising principles

United States District Court
For the Northern District of California

**A. Requests for Judicial Notice**

In connection with their Motion to Dismiss, Defendants Downes and Schulte have attached the following exhibits of which they assert the Court may properly take judicial notice: (1) Plaintiff's First Amended Complaint, filed in *Rupert I* (Downes Mot., Ex. 1); (2) Judge Fogel's Order Granting Motion to Dismiss for Lack of Personal Jurisdiction in *Rupert I* (Downes Mot., Ex. 2); (3) Response to Susan Bond's Petition for Instructions and to Compel Distribution, filed by William Rupert in the Circuit Court for the State of Oregon, County of Clackamas, Probate Dept., Case No. CV10030498 (Downes Mot., Ex. 3); (4) Declaration of Giles R. Downes in Support of Defendants' Motion to Dismiss, filed in *Rupert I* (Downes Mot., Ex. 4).

In connection with the MZC Defendants' Motion to Dismiss, the MZC Defendants have also filed a request for judicial notice for the same documents identified by Defendants Downes and Schulte as Exhibits 1 and 2. *See* MZC Defendants' Request for Judicial Notice, ECF No. 51.

Furthermore, in connection with the Cartwright Defendants' Motion to Dismiss, the Cartwright Defendants have requested that the Court take judicial notice of the following exhibit: Plaintiff's First Amended Complaint filed in the Instant Proceeding. Cartwright Defendants' RJN Exh. A, ECF No. 37-1, 37-2.

---

of res judicata in support of their Motions to Dismiss, have raised matters outside the pleadings and thus Federal Rule of Civil Procedure 12(d) mandates that the motions now be treated as motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Second, Plaintiff argues that so much evidence has been submitted into the record that these motions have in effect become motions for summary judgment. The Court is not persuaded by any of these arguments. First, the motions brought by Defendants James, Susan, Downes, and Schulte are brought pursuant to Rule 12(b)(2), not Rule 12(b)(6). In the context of a motion to dismiss for lack of jurisdiction, a trial court may rule on the issue of personal jurisdiction by "relying on affidavits and discovery materials without holding an evidentiary hearing," though "dismissal is appropriate only if the plaintiff has not made a prima facie showing of personal jurisdiction." *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). Therefore, the fact that Defendants have sought to attach exhibits to their motions to dismiss for lack of jurisdiction does not, in and of itself, necessarily convert their motions into ones for summary judgment. Second, for purposes of these motions, the Court only takes judicial notice of exhibits that are referenced in the complaint or matters in the public record, and thus, does not convert the motions into summary judgment motions. *See Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Therefore, the Court rejects Plaintiff's contention that these Motions to Dismiss must be treated as motions for summary judgment.

Although a district court generally may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion, a court may take judicial notice of documents referenced in the complaint, as well as matters in the public record, without converting a motion to dismiss into one for summary judgment. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). A matter may be judicially noticed if it is either "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).

Plaintiff objects to the Court taking judicial notice of these exhibits. However, Exhibits 1, 2, and 4 are all documents filed in *Rupert I*. As such they are documents in the public record, and the Court may properly take judicial notice of them to determine the validity of Defendants' arguments. *Del Puerto Water Dist. v. United States Bureau of Reclamation*, 271 F. Supp. 2d 1224, 1233 (E.D. Cal May 13, 2003) ("Judicially noticed facts often consist of matters of public record, such as prior court proceedings"); *Chrisanthis v. United States*, 2008 WL 4848764, at *1 (N.D. Cal Nov. 7, 2008) ("[D]ocuments publicly filed in [a] prior suit are proper subjects of judicial notice"). However, the Court does not take judicial notice of disputed facts contained within the First Amended Complaint filed in *Rupert I*. *Lee*, 250 F.3d at 689-90.

Plaintiff has stated that Exhibit 3, which is presented by Downes and Schulte as Plaintiff's responsive pleading in the Oregon Proceedings, *see* Downes Mot. at 5n.3, was ultimately rejected by the Oregon Courts "for perceived defects of form, substance, and insufficient filing fees," *see* Opp'n to Downes Mot. at 22. Plaintiff has presented the Court with a letter from the Oregon courts explaining that his responsive pleading in the Oregon Proceeding was deficient because Plaintiff failed to pay sufficient filing fees and because Plaintiff incorrectly denoted several "third-party complaints" as "counterclaims." *See* Decl. in Support of Opp'n to Downes Mot., Ex. 12, ECF No. 30. Based on these conflicting exhibits, the Court finds that it is unclear whether or not this document was actually entered into the public record in connection with the Oregon Proceedings. Accordingly, the Court DENIES Defendants Downes and Schulte's Request for Judicial Notice of Exhibit 3.

In addition, Plaintiff has objected to the Court taking judicial notice of the Cartwright Defendants' RJN Exhibit A. *See* Opp'n to Cartwright Mot. at 7. However, this exhibit is a copy of the FAC in this case. *See* Cartwright Defendants' RJN Exh. A, ECF No. 37-1, 37-2. As such, it is already part of the record in this case. In fact it is the operative complaint which is the source of these Motions to Dismiss. Accordingly, the Courts GRANTS the Cartwright Defendants' request for judicial notice but does not take judicial notice of any disputed facts contained within the exhibit. *Lee*, 250 F.3d at 689-90.[4]

**B. MZC Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)**

First, the MZC Defendants move to dismiss Plaintiff's FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff claims that the MZC Defendants either violated, or conspired to violate, RICO. FAC ¶¶ 92-113. The MZC Defendants contend that the only acts of misconduct Plaintiff has alleged with any specificity concern their role representing Susan and Irene in *Rupert I*. *See* MZC Mot. at 1. As such, the MZC Defendants argue that this conduct is privileged petitioning activity and cannot form the basis of a viable claim for relief. *See* MZC Mot. at 2. The MZC Defendants further argue that all additional acts of misconduct Plaintiff has alleged have not been pled with sufficient particularity to satisfy the heightened pleading standards required by Federal Rule of Civil Procedure 9(b) in cases brought under RICO. *See* MZC Reply at 3.[5]

For the following reasons, the Court agrees with the MZC Defendants and hereby grants their Motion to Dismiss for failure to state a claim upon which relief can be granted.

**1. RICO Claims**

**a. Plaintiff's Claims Arising from *Rupert I* are barred by the *Noerr-Pennington* Doctrine**

Plaintiff alleges that the MZC Defendants violated, or conspired to violate, RICO when they made false representations to Judge Fogel in *Rupert I*. According to Plaintiff, the MZC

[4] In addition to the exhibits for which the Court denied judicial notice, the Court does not rely on the exhibits that are the subject of all other pending requests for judicial notice, *see* ECF No. 59 & 63, and thus the Court denies these judicial notice requests as moot.

[5] MZC Defendants also assert that Plaintiff's state law causes of action should be dismissed. *See* MZC Mot. at 12. In light of the Court's finding the Plaintiff's claims arising from *Rupert I* are barred by the *Noerr-Pennington* Doctrine, the Court does not need to address these additional arguments.

Defendants represented to the court, in both declarations and oral arguments, that there were no disputed or relevant assets in California when in fact they were aware of more than $400,000 worth of assets located in brokerage accounts in San Francisco. FAC ¶ 75; Opp'n to MZC Mot. at 21. However, Plaintiff's allegations relate solely to the MZC Defendants' involvement as representatives for Susan and Irene in *Rupert I*. As such, the MZC Defendants argue that such representation constitutes protected petitioning activities under the *Noerr-Pennington* Doctrine.

"Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).[6] This doctrine derives from the First Amendment's guarantee of "the right of the people . . . to petition the Government for a redress of grievances." U.S. CONST. AMEND. I. Protected petitioning activities include representing another in court proceedings and filing papers with the court. *See, e.g. Winters v. Jordan*, No. 09-00522, 2010 WL 2838634, *8 (E.D. Cal., July 20, 2010) (holding that plaintiffs' claims were barred under the *Noerr-Pennington* doctrine when they arose out of "[defendant's] representation of [his client], which include[d] acts of representing [client] in court proceedings, filing papers with the court on [client's] behalf, and communications with the Nevada County district attorney's office."). Moreover, while the *Noerr-Pennington* doctrine arose in the antitrust context, the Ninth Circuit has expressly stated that it is no longer limited to antitrust actions. *See Sosa*, 437 F.3d at 931 ("we conclude that the *Noerr-Pennington* doctrine stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause."). Specifically, the Ninth Circuit has applied the *Noerr-Pennington* doctrine to claims brought under RICO. *See, e.g. Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643-48 (9th Cir. 209); *Sosa*, 437 F.3d at 929-32.

Here, Plaintiff is seeking to hold the MZC Defendants liable, under RICO, for their conduct representing parties in a court proceeding and for filing papers with the court. FAC ¶ 102. As the

---

[6] The *Noerr-Pennington* doctrine emerged in the context of two antitrust cases: *Eastern Railroad Presidents' Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965).

MZC Defendants' alleged involvement in the RICO conspiracy is based on protected petitioning activity, Plaintiff has not stated a viable claim against them.

**b. The "Sham" Litigation Exception to the *Noerr-Pennington* Doctrine Does Not Apply**

Plaintiff disputes that the *Noerr-Pennington* doctrine bars his claim because he alleges the MZC Defendants' petitioning activities were part of a "sham" litigation, and therefore are not protected by *Noerr-Pennington* immunity. *See* Opp'n to MZC Mot. at 22-23. As the Ninth Circuit stated in *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180 (9th Cir. 2005), "[w]hile *Noerr-Pennington* immunity is broad, it is not so broad as to cover all litigation: 'Sham' petitions don't fall within the protection of the doctrine." *Id.* at 1183-84. There are three formulations of the sham exception:

> First, if the alleged anticompetitive behavior consists of bringing a single sham lawsuit (or a small number of such suits), the antitrust plaintiff must demonstrate that the lawsuit was (1) objectively baseless, and (2) a concealed attempt to interfere with the plaintiff's business relationships.
>
> Second, if the alleged anticompetitive behavior is the filing of a series of lawsuits, "the question is not whether any one of them has merit-some may turn out to, just as a matter of chance-but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival."
>
> Finally, in the context of a judicial proceeding, if the alleged anticompetitive behavior consists of making intentional misrepresentations to the court, litigation can be deemed a sham if "a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy."

*Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir.1998) (citations omitted). Plaintiff concedes that the second exception does not apply to this case. *See* MZC Opp'n at 23.

The Court does not find that the first formulation of the "sham exception" applies to Plaintiff's case. Importantly, Plaintiff has made only bare assertions that the MZC Defendants' actions in *Rupert I* were baseless and a concealed attempt to interfere with his business relationships. *See* MZC Opp'n at 23. Moreover, the MZC Defendants successfully obtained a dismissal of Plaintiff's case. *See Rupert I*. Therefore, there appears to have been sound basis for asserting this defense, and Plaintiff cannot demonstrate that the MZC Defendants actions were

objectively baseless. *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60n.5 (1993) ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham").

In addition, while Plaintiff claims that the MZC Defendants' actions in *Rupert I* interfered with his business relationships, the "sham" litigation exception generally centers on the use of baseless litigation as an "anti-competitive weapon" or as a means of harming a market rival. *See, e.g.*, *Amarel v. Connell*, 102 F.3d 1494, 1518 (9th Cir. 1996) (stating that the "sham" exception "requires the court to determine 'whether the baseless lawsuit conceals 'an attempt to interfere directly with the business relationships of a competitor . . .' through the 'use [of] the governmental process . . . as an anticompetitive weapon.'") (citations omitted); *USS-POSCO Indus. v. Contra Costa Cnty Bldg. & Const. Trades Council AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994) (stating that, in the context of the second formulation, courts look to whether lawsuits are brought "for the purpose of injuring a market rival"). Plaintiff's interest in his inheritance, however, has no relationship to market competition or business. Rather, it is a personal financial relationship. Accordingly, the Court finds that this is not a business relationship for purposes of the *Noerr-Pennington* doctrine.

The Court also does not find that the third formulation of the "sham exception" applies to Plaintiff's case. While Plaintiff has alleged that the MZC Defendants made fraudulent declarations to Judge Fogel, "vague allegations of misrepresentation 'are . . . insufficient to overcome *Noerr-Pennington* protection.'" *Kottle*, 146 F.3d at 1064. Plaintiff argues that the brokerage accounts were opened with a specialized department of Charles Schwab, called Charles Schwab Institutional, which is headquartered in San Francisco. Opp'n to Susan Am. Mot. at 11-12. Based on this evidence, Plaintiff claims that the accounts are located in San Francisco. *Id*. However, the FAC alleges no facts suggesting that Susan or Irene were in California at the time the accounts were allegedly opened. *See* MZC Mot. at 6. Furthermore, aside from his conclusory statement that the accounts must be located in California, Plaintiff has provided no support for the proposition that simply because a department is headquartered in California, all accounts with that department are held there as well. Accordingly, Plaintiff has not provided sufficient evidence that the accounts

are located in California, or that the MZC Defendants knowingly made misrepresentations when they submitted declarations stating that the assets were not located in California.

Moreover, even if the accounts were located in California, Plaintiff has not set forth how hiding this information from Judge Fogel deprived the litigation in *Rupert I* of its legitimacy. In Judge Fogel's Order Granting the Motions to Dismiss in *Rupert I*, Judge Fogel did not rely on the location of the assets. Rather, Judge Fogel remarked that the actions Plaintiff alleged in *Rupert I* concerned Oregon residents, their Oregon attorneys, and estate planning decisions made in Oregon. *See Rupert I*, at *4. Thus, Judge Fogel's decision relied on the Oregon-based activities of the *Rupert I* defendants. *See id*. The Court is, therefore, not convinced that Judge Fogel's decision would have changed even if the assets were in fact located in California. As such, given that there is no proof that a misrepresentation was made, or that this alleged misrepresentation would have undermined the legitimacy of the prior litigation, this exception does not apply.

Therefore, the "sham" litigation exception does not apply, and Plaintiff's *Rupert I*-based claims are barred by the *Noerr-Pennington* doctrine.

**2. Plaintiff's Additional Claims for Violations of RICO or Conspiracy to Violate RICO Have Not Been Stated with Sufficient Specificity**

In addition to his claims alleging violations of RICO which involve the MZC Defendants' petitioning activities in *Rupert I*, Plaintiff also makes several statements throughout his FAC and in his Opposition to the MZC Defendants' Motion which allege that the MZC Defendants violated RICO in other ways. First, in his Opposition to the MZC Defendants' Motion to Dismiss, Plaintiff raises a new allegation, not raised in his complaint, that the MZC Defendants "participate[d] in defendant Susan Bond's fraudulent trust asset misappropriation schemes." *See* Opp'n to MZC Mot. at 6. Second, in his FAC, Plaintiff states that the alleged RICO violations which occurred during the Oregon Proceedings "also included defendant Zusman." *See* FAC ¶ 103.

Federal Rule of Civil Procedure 9(b), which requires that a party "state with particularity the circumstances constituting fraud," FED. R. CIV. P. 9(b), governs claims brought under RICO. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) ("We have applied the particularity requirements of Rule 9(b) to RICO claims"). As explained below, because these two

claims have not been pled with the sufficient specificity required by Rule 9(b), the Court dismisses these additional claims against the MZC Defendants, for alleged violations of RICO, which are separate from Plaintiff's *Rupert I*-based RICO claims.

First, the Court addresses Plaintiff's allegation that the MZC Defendants "participate[d] in defendant Susan Bond's fraudulent trust asset misappropriation schemes." *See* Opp'n to MZC Mot. at 6. Throughout his complaint, Plaintiff described the alleged misappropriation of trust assets as involving Defendants Susan, James, Downes, Schulte, and the Cartwright Defendants. *See* FAC. Plaintiff did not mention any involvement by the MZC Defendants in Bond's trust asset misappropriation schemes. *Id.* Now, in his Opposition to the MZC Defendants' Motion to Dismiss, Plaintiff makes broad statements that the MZC Defendants somehow aided their co-Defendants in committing the allegedly illegitimate activities. *See* Opp'n to MZC Mot. at 6-7 ("The MZC Defendants are charged with *inter alia* participating in the RICO Phase Two-Cover Up and Stonewall activities, that aided and abetted the breaches of trust by defendant Susan Bond, through the assistance they gave in helping her evade and avoid her duty to account fully and completely, for her administration of assets . . ."); 21-22 ("the MZC Defendants . . . aid[ed] and abet[ted] Defendant Susan Bond's cover-up and stonewall objectives"). Not only are these statements merely conclusory, they are not supported by any evidence. As such, these allegations are not stated with sufficient particularity as required by Federal Rule of Civil Procedure 9(b). *See Swartz v. KPMG LLP*, 476 F.3d 756. 764 (9th Cir. 2007) ("where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'") (citations omitted). These statements ultimately do not suffice to establish the MZC Defendants' involvement in Bond's alleged trust misappropriation schemes.

Second, the Court addresses Plaintiff's broad assertion that the alleged RICO violations which occurred during the Oregon Proceedings "also included defendant Zusman." *See* FAC ¶ 103. Although, throughout his complaint, Plaintiff described the Oregon Proceedings as involving Defendants Susan, James, Downes, Schulte, and the Cartwright Defendants, *see* FAC, the only reference to MZC's involvement in the Oregon Proceedings is the one statement in the FAC that

the Oregon Proceedings "also included defendant Zusman," who is a named partner of MZC. *See* FAC ¶ 103. This lone statement does not satisfy the particularity required by Federal Rule of Civil Procedure 9(b). Moreover, this allegation involves the right to petition the government, and thus is subject to a heightened pleading standard under the *Noerr-Pennington* doctrine. *See Or. Natural Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991) ("Where a claim involves the right to petition governmental bodies under *Noerr-Pennington*, however, we apply a heightened pleading standard."). Plaintiff's scant allegation similarly does not satisfy the heightened pleading standard under the *Noerr-Pennington* doctrine, as Plaintiff does not provide any underlying facts to support this claim nor elaborates on it in any fashion.

Because the Plaintiff's additional RICO claims separate from his *Rupert I*-based claims against MZC Defendants have not been pled with sufficient specificity, the Court DISMISSES them. However, as this is only Plaintiff's First Amended Complaint and because the Court dismisses Plaintiff's claims, in part, for failure to meet the heightened pleading standard of Rule 9(b), the Court dismisses Plaintiff's claims with leave to amend so that he may cure these defects.

**3. Plaintiff's Remaining State Law Claims Against MZC Defendants**

Plaintiff has alleged only two federal claims: violation of RICO and conspiracy to violate RICO. The FAC alleges that the Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over all of Plaintiff's remaining claims, which arise under California and Oregon law. *See* FAC ¶¶ 1, 114-133.

The federal supplemental jurisdiction statute provides: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Because the Court dismisses the federal law claims against the MZC Defendants, the Court declines to exercise supplemental jurisdiction over the state law claims against the MZC Defendants pursuant to 28 U.S.C. § 167(c). *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over state-law claims once it has dismissed all claims over which it has original jurisdiction."); *see also San Pedro Hotel Co. v. City of L.A.*, 159 F.3d 470, 478 (9th Cir. 1998) (district court not required to provide explanation when declining jurisdiction under 28 U.S.C. § 1367(c)(3)).

**4. Conclusion**

Because Plaintiff's RICO claims against the MZC Defendants are either barred by the *Noerr-Pennington* doctrine or have not been pled with sufficient specificity under Federal Rule of Civil Procedure 9(b), the Court GRANTS WITHOUT PREJUDICE the MZC Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.

**C. Defendants' Motions to Dismiss Pursuant to Rule 12(b)2**

Defendants Susan, James, Downes, Schulte, and the Cartwright Defendants also move to dismiss Plaintiff's FAC based on lack of personal jurisdiction. In his FAC and various Oppositions, Plaintiff has described a series of acts of misconduct by Defendants through which they violated or conspired to violate RICO. Plaintiff contends that these acts were directed at causing him harm in California, and that accordingly personal jurisdiction is proper in California. Defendants contest this argument. Each Defendant contends that they are residents of either Oregon or Michigan, and thus do not have substantial contacts with California to give rise to general jurisdiction. Further, Defendants argue that the various acts Plaintiff has alleged were directed at their home states of Oregon and Michigan, and were not directed at harming Plaintiff in California.

Plaintiff's theory for why personal jurisdiction is proper is based on different acts of misconduct with regards to each Defendant. However, Plaintiff contends that each of these acts is

United States District Court
For the Northern District of California

part of the same chain of events directed at causing him harm in California. Moreover, there is considerable overlap between the various Defendants and nearly all of the alleged acts of misconduct involve multiple Defendants. Accordingly, the Court deems it appropriate to address all of these motions together.

To determine the propriety of asserting personal jurisdiction over a nonresident defendant, the Court examines whether such jurisdiction is permitted by the applicable state's long-arm statute and comports with the demands of federal due process. *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 919 (9th Cir. 2011). Because California's long-arm statute, California Civil Procedure Code § 410.10, is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. *See* CAL. Civ. PROC. CODE § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). As such, "[f]or a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 800 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In addition, "the defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there."' *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World–Wide Volkwagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A court may exercise either general or specific jurisdiction over a nonresident defendant. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995). General jurisdiction exists where a nonresident defendant's activities in the state are "continuous and systematic" such that said contacts approximate physical presence in the forum state. *See Schwarzenegger*, 374 F.3d at 801 (internal quotation marks and citation omitted). Where general jurisdiction is inappropriate, a court may still exercise specific jurisdiction where the nonresident defendant's "contacts with the forum give rise to the cause of action before the court." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).

### 1. General Jurisdiction

Here, Plaintiff has not addressed whether any of the Defendants bringing Motions to Dismiss for lack of personal jurisdiction are subject to general jurisdiction in California. *See* Downes Reply at 9; Cartwright Reply at 10. However, none of these Defendants are residents of California and there is no evidence that any of them have substantial business connections with California. *See* FAC ¶¶ 5-14. Only one of the attorney defendants, Johansson, has a license to practice law in California. FAC ¶¶ 6-7, 9-10; *but see Crea v. Busby*, 48 Cal. App. 4th 509, 515 (1996) (maintenance of a California law license alone is insufficient to confer general jurisdiction in California). The law firm defendants, Schulte and Cartwright, do not have offices or any employees in California, and both they and their employees have either nonexistent or sporadic contacts with California. FAC ¶¶ 12-14. Susan has only visited California on vacation, and James has never visited California. Susan Am. Mot. at 8. Accordingly, none of the defendants, other than the MZC Defendants, a California law firm, has the kind of "continuous and systematic" contacts with California to give rise to general jurisdiction.

**2. Specific Jurisdiction**

**a. Plaintiff Has Not Pled Sufficient Facts to Demonstrate Personal Jurisdiction Under 18 U.S.C. § 1965(b)**

Plaintiff has alleged that, as Defendants are participants in a RICO conspiracy, 18 U.S.C. § 1965(b) permits this Court to exercise personal jurisdiction over them. *See, e.g.*, Opp'n to Downes at 11-13. Under 18 U.S.C. § 1965(b), a court may exercise jurisdiction over non-resident participants in a RICO conspiracy, even if those parties would not otherwise be subject to personal jurisdiction in that court. *See* 18 U.S.C. § 1965(b). However, "the court must have personal jurisdiction over at least one of the participants in the alleged multi-district conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *See Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 539 (9th Cir. 1986).

Plaintiff has identified Susan, Downes, Zusman, Whitman, and Johansson as the "RICO Defendants" who allegedly violated RICO. *See* FAC ¶¶ 6-10. As such, the Court may exercise jurisdiction over these Defendants only if Plaintiff can demonstrate that the Court has jurisdiction

**United States District Court**
For the Northern District of California

over at least one of these Defendants and that no other district exists where a court will have jurisdiction over all of the RICO Defendants.

Here, the Court has jurisdiction over Zusman as he is a California resident. FAC ¶ 8. The remaining RICO Defendants, however, are all Oregon residents. FAC ¶¶ 6-7, 9-10. While Plaintiff has alleged that no other district will have jurisdiction over Zusman, *see* Opp'n to Downes at 13, a plaintiff must do more than merely assert that there is no other district in which a court will have jurisdiction over all of the alleged co-conspirators. *See Huntair, Inc. v. Gladstone*, 774 F. Supp. 2d 1035, 1039-40 (N.D. Cal. 2011) (holding that plaintiffs' statement that they "were not aware of any other district in which a court would have personal jurisdiction over all of the defendants" was "conclusory" and "insufficient to meet Plaintiffs' burden to demonstrate that jurisdiction under § 1965(b) would be appropriate.").

Despite Plaintiff's claims that no other district will have jurisdiction over Zusman, the FAC states that he was a member of a conspiracy with six Oregon defendants, *see* FAC ¶ 8, and that his involvement in the conspiracy was his representation of two Oregon residents in connection with an estate established under Oregon law, *id*. Moreover, Zusman's law firm has an office in Oregon. *See* Downes Reply at 4. Accordingly, the Court finds that an Oregon court may have jurisdiction over all of the RICO defendants. As such, jurisdiction under 18 U.S.C. § 1965(b) is inappropriate, and these motions must turn on traditional personal jurisdiction analysis.

**b. Plaintiff Has Not Pled Sufficient Minimum Contacts With California to Demonstrate Specific Jurisdiction**

Plaintiff asserts that he has pled sufficient minimum contacts to demonstrate the existence of specific personal jurisdiction over all of the defendants. *See* Opp'n to Downes at 13-14. To determine whether a defendant's contacts with the forum state are sufficient to establish specific jurisdiction, the Ninth Circuit employs a three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). Plaintiff bears the burden of satisfying the first two prongs. *Sher*, 911 F.2d at 1361. If Plaintiff does so, then the burden shifts to Defendants to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *CollegeSource, Inc. v. AcademyOne, Inc*., 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

The first prong is satisfied by either purposeful availment or purposeful direction. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). For suits sounding in contract, courts typically apply the "purposeful availment" test, which asks whether the defendant has "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Sher*, 911 F.2d at 1361 (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988)). By contrast, for cases involving tortious conduct, courts most often employ a purposeful direction analysis, which asks whether the defendant has "'purposefully direct[ed] his activities at the forum state, applying an "effects" test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum.'" *CollegeSource*, 653 F.3d at 1077 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)). As this case involves claims against Defendants for interfering with and depriving Plaintiff of his inheritance, it sounds in tort. Accordingly, the Court analyzes this case under the purposeful direction test.

The Ninth Circuit evaluates purposeful direction using the three-part "*Calder*-effects" test. *See Schwarzenegger*, 374 F.3d at 803; *see also Calder v. Jone*, 465 U.S. 783 (1984). Under this test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc.*, 433 F.3d at 1206 (internal quotation marks omitted). The Ninth Circuit construes "intent" as "referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger,* 374 F.3d at 806. In addition, "[t]here is no requirement that the defendant have any physical contacts with the forum." *Brayton Purcell*, 606 F.3d at 1128.

United States District Court
For the Northern District of California

Plaintiff has alleged the following intentional acts:

(1) Susan, with the assistance of Downes and Schulte, mismanaged and misappropriated assets from Samuel's Trust and Irene's Trust, FAC ¶¶ 101-102;

(2) James accepted and failed to return assets misappropriated from these trusts, FAC ¶¶ 117-118;

(3) Susan transferred over $400,000 worth of assets to brokerage accounts held by Charles Schwab in San Francisco, California, FAC ¶ 74;

(4) Susan, Downes, and the Cartwright Defendants mailed papers and pleadings from the Oregon Proceedings to Plaintiff in California, FAC ¶ 72;

(5) the Cartwright defendants improperly issued writs of garnishment on a Portland, Oregon branch of JP Morgan resulting in funds being levied from accounts held by Plaintiff in Nebraska and California, FAC ¶¶ 87-88; and

(6) Susan, potentially with the aid of the Cartwright Defendants, filed a judgment from the Oregon proceeding in Santa Cruz Superior Court resulting in wrongful collection activities in California, FAC ¶ 86.

The Court will address each of these acts in turn.

**i. Susan, With the Assistance of Downes and Schulte, Mismanaged and Allegedly Misappropriated Trust Assets**

With regard to the alleged management of the trusts, Judge Fogel ruled in *Rupert I* that these activities were directed at the management of an estate in Oregon and were therefore not directed at California.[7] *See Rupert I,* at 4. The Court agrees with Judge Fogel. Susan's alleged

[7] Defendants Susan, Downes, and Schulte contend that both issue preclusion and principles of res judicata prevent Plaintiff from asserting, in this action, that jurisdiction is appropriate in California because this issue was already decided in *Rupert I*. *See* Susan Am. Mot. at 5-6; Downes Mot. at 5-6. Issue preclusion bars re-litigation of issues adjudicated in an earlier proceeding if three requirements are met: (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be re-litigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006). "Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised *or could have been raised* in the prior action." *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997) (emphasis added); *accord Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). Res judicata is applicable whenever there is: "(1) an identity of claims[;] (2) a final judgment on the merits[;] and (3) identity or privity between parties." *W. Radio Servs. Co.*, 123 F.3d at 1192 (citing *Blonder-Tongue Lab. v. Univ. of Ill. Found.*, 402 U.S. 313, 323-24 (1971)). While the Court acknowledges that Plaintiff's

mismanagement of trust assets occurred in Oregon, FAC ¶¶ 32-72, and any assistance Downes and Schulte provided to Susan took place in Oregon, FAC ¶¶ 52-72. Furthermore, while Susan and Downes sent letters and called Plaintiff in California, their communications concerned the estate planning decisions of Irene, an Oregon resident. FAC ¶¶ 33-72. Accordingly, all of Susan, Downes, and Schulte's trust management activities were aimed at Oregon and not California.[8]

**ii. James Accepted Trust Assets**

To the extent James benefited from the management of these trusts, he did so in Michigan. *See* FAC ¶¶ 11, 118. Plaintiff appears to assert that jurisdiction is proper over James because he performed an intentional act, receipt of funds in Michigan, which caused harm to Plaintiff in California, and that James was aware that Plaintiff was a resident of California. *See* FAC ¶ 11. However, when James accepted funds from his parents' trusts, his express aim was obtaining a benefit in Michigan. Accordingly, James's actions are not sufficient to constitute express aiming at California. *See Schwarzenegger*, 374 F.3d at 807 ("It may be true that [plaintiff's] intentional act eventually caused harm to [defendant] in California, and [plaintiff] may have known that

---

present action is based on a similar nexus of facts as *Rupert I*, neither the doctrines of issue preclusion or res judicata are applicable in this case. First, Plaintiff has alleged new jurisdictional facts. For example, he has now alleged events concerning the Oregon Proceeding and the filing of a judgment in California. As such the question of personal jurisdiction, in this action, is not identical to the question of personal jurisdiction in *Rupert I*. Accordingly the first requirement of issue preclusion has not been satisfied, and therefore, the doctrine does not apply in this case. Second, unlike Plaintiff's present action, his action in *Rupert I* did not include claims for violations of RICO. As such, there is not an identity of claims between this action and *Rupert I*. Accordingly, the first requirement of res judicata has not been satisfied and therefore the doctrine does not apply.

[8] Plaintiff has also argued that the doctrine of judicial estoppel should bar Defendant Susan from arguing that he received his "full and fair day in court" during the Oregon Proceedings. *See* Opp'n to Susan Am. Mot. at 9-10. Plaintiff contends that, during the Oregon Proceedings, his counterclaims were dismissed for lack of standing. *Id*. As such, the Oregon courts did not reach the merits of his claim. *Id*. Based on these arguments, the Court gathers that Plaintiff is arguing that Susan should not be able to claim a preclusive effect on the current proceedings based on the judgment in the Oregon Proceedings. The Court notes, however, that Susan's issue preclusion argument is based on the judgment in *Rupert I*, not the Oregon Proceedings. *See* Susan Am. Mot. at 5-6. Moreover, as the Court holds that Plaintiff's claims in this action are not precluded by any of his prior judgments, *see supra* note 7, Plaintiff's argument for judicial estoppel is therefore moot, and the Court need not rule on it.

[defendant] lived in California. But this does not confer jurisdiction, for [plaintiff's] express aim was local.").

**iii. Susan Transferred Assets to California**

With regards to Susan's alleged transfer of assets to California, it is not clear how Plaintiff suffered harm in California from this activity. Both the management of assets and the Oregon Proceedings—the actions which allegedly deprived Plaintiff of his inheritance—occurred in Oregon. *See* FAC. Regardless of where Susan may have allegedly transferred these assets, it would not have impacted the outcome of these events. As such, the location of the assets has no bearing on Plaintiff's inheritance.[9]

Plaintiff has also argued that Judge Fogel was unaware that Susan may have transferred assets to California when he issued his ruling in *Rupert I*. FAC ¶ 74. Had Judge Fogel known this, Plaintiff claims, he "certainly would have ruled differently." Opp'n to Downes at 11. However, as discussed above, Judge Fogel's decision did not rely upon the location of the trust assets, *see Rupert I* at 4, and thus the Court does not agree that this information would have altered Judge Fogel's decision.

**iv. Susan, Downes, and the Cartwright Defendants Mailed Papers and Pleadings from the Oregon Proceedings to Plaintiff in California**

[9] Plaintiff has also requested that he be permitted to conduct jurisdictional discovery on either Defendant Susan Bond or Charles Schwab Institutional in San Francisco, California, regarding the assets allegedly transferred to California. *See* Opp'n to Downes Mot. at 25; Opp'n to Susan Am. Mot. at 17-19. Plaintiff argues that information about these assets, specifically their location, "promises to be dispositive upon the issue of personal jurisdiction." *See* Opp'n to Susan Am. Mot. at 19. "Discovery may appropriately be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977). However, "[i]n granting discovery, the trial court is vested with broad discretion." *Id.* "[A] refusal [to grant jurisdictional discovery] is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977). Here, as discussed above, the location of the assets, even if Susan transferred them to California, does not have any bearing on the harm Plaintiff suffered in California. As such, were Plaintiff to obtain evidence through discovery demonstrating that assets were transferred to California, it would not be sufficient to establish personal jurisdiction. Moreover, Plaintiff has already attached, as Exhibit Numbers 7, 8, 9, and 10 to his Declaration in Support of his Opposition to Downes's Motion, numerous documents regarding these accounts, including letters between Charles Schwab and Irene, Monthly Billing Statements, and Quarterly Billing Statements. *See* ECF No. 30, Ex. Nos. 7, 8, 9, 10. Therefore, it is unclear what additional documents Plaintiff hopes to obtain by conducting discovery. Accordingly, Plaintiffs request for jurisdictional discovery is DENIED.

United States District Court
For the Northern District of California

As for the mailing of papers and pleadings from the Oregon Proceedings to Plaintiff in California, Oregon law required Defendants to mail notices to Plaintiff regarding the Oregon Proceedings. *See* OR. REV. STAT. § 130.035 (2010). Moreover, all of these documents concerned ongoing litigation in Oregon over the rights of Plaintiff and his siblings to an Oregon estate. FAC ¶ 82. Accordingly, the fact that Plaintiff received papers in California does not convert these Oregon-based activities into express aiming at California.

**v. The Cartwright Defendants Issued Writs of Garnishment; Susan, Potentially with the Cartwright Defendants, Filed a Judgment in Santa Cruz Superior Court, Resulting in Wrongful Collection Activities Against Plaintiff**

As for the issuing of writs of garnishment by the Cartwright Defendants and the filing of the Oregon judgment in California, these activities were intended to collect a money judgment from Plaintiff in California, and resulted in funds being taken from his checking account in California. *See* FAC ¶¶ 86-87. As such, they may in fact satisfy the *Calder* effects test.

However, under the second prong of the personal jurisdiction analysis, to provide a basis for jurisdiction, a "claim must be one which arises out of or relates to the defendant's forum-related activities." *Schwarzenegger*, 374 F.3d at 802. "In determining whether [a plaintiff's] claims arise out of [a defendant's] forum-related conduct, 'the Ninth Circuit follows the 'but for' test.' Hence, [a plaintiff] must show that he would not have suffered an injury 'but for' [a defendant's] forum-related conduct." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

Here, the issuing of writs of garnishment and the filing of a judgment are not the source of the harm that Plaintiff suffered. Rather, any harm which occurred to Plaintiff occurred during the Oregon Proceedings when an Oregon Court ordered him to pay attorney's fees and costs. *See* FAC ¶ 85. As already stated, this litigation occurred in Oregon and concerned rights to an Oregon estate. Like the pleadings and papers, the mere fact that Plaintiff is a California resident does not alter the fact that this litigation was aimed at Oregon. Susan and the Cartwright Defendants merely sought to enforce a valid judgment. As such, they did not create any additional harm to Plaintiff by their actions. Merely seeking to enforce a valid judgment is not sufficient to confer personal jurisdiction on Susan or the Cartwright Defendants. *See Menken*, 503 F.3d at 1061 (holding that

when defendant filed an out-of-state judgment in Arizona in order to collect a money judgment, "the simple domestication of a foreign judgment in Arizona, standing alone, is unlikely sufficient to confer personal jurisdiction on the judgment creditor.").

To the extent Plaintiff has alleged that these Defendants acted improperly when they attempted to collect the Oregon judgment, this is merely a legal conclusion and does not demonstrate that these actions caused Plaintiff to suffer harm in California. *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden."). Under Oregon law, an attorney, like the Cartwright Defendants, "who is an active member of the Oregon State Bar may issue a writ for the purpose of enforcing . . . a judgment that requires payment of money." OR. REV. STAT. § 18.635 (2008). Accordingly, the issuing of these writs was appropriate procedure in Oregon following a final judgment.

Furthermore, in *Menken v. Emm*, the Ninth Circuit suggested that the mere filing of a judgment most likely will not give rise to jurisdiction unless a party used the judgment tortiously to cause harm in the forum state. *See Menken*, 503 F.3d at 1061. In *Menken*, defendant obtained a judgment against plaintiff, an Arizona resident, in the United States District Court for the District of Nevada. *Id.* at 1054. Defendant then sought to recover the Nevada judgment in Arizona. However, he demanded an amount in excess of the judgment, and attempted to "extract the judgment payoff" by recording an invalid lien on plaintiff's property. *Id.* The Ninth Circuit held that the defendant had engaged in sufficient wrongful conduct targeted at the plaintiff in Arizona, and thus personal jurisdiction was proper in Arizona. *Id.* at 1059-61. Plaintiff asserts that *Menken* supports the exercise of personal jurisdiction over Susan based on her filing of a judgment in California. *See* Opp'n to Susan Am. Mot. at 14-16. However, Plaintiff has alleged, in his FAC, only that Susan failed to follow proper procedure for filing an out-of-state judgment as dictated by the California Sister-State Money Judgment Act. *See* FAC ¶¶ 85-91. Chiefly, he states that she failed to provide him with proper notice that the judgment had been filed. *Id.* According to Plaintiff, this resulted in funds being wrongfully levied from his accounts because, had he been given proper notice, he claims he would have been able to obtain a stay preventing enforcement of

the Oregon judgment. *See id*. However, merely failing to provide plaintiff with proper notice that a judgment was filed does not rise to the level of tortious activity described in *Menken*. *Menken*, 503 F.3d at 1061. Consequently, this is not sufficient to confer personal jurisdiction on Susan.

Therefore, none of the acts Plaintiff has alleged are sufficient to constitute "minimum contacts" with California. As such, Plaintiff has not met his burden of demonstrating that the Court has personal jurisdiction over defendants Susan, James, Downes, Schulte, or the Cartwright Defendants.[10]

**3. Reasonableness**

Furthermore, under the third prong of the personal jurisdiction analysis, "exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. In determining whether or not the exercise of jurisdiction is reasonable the Court considers seven factors: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Menken*, 503 F.3d at 1060. "None of these factors is dispositive," and the court "must balance the seven." *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991).

[10] Plaintiff has also alleged that the Cartwright Defendants filed a false proof of service of process. Opp'n to Cartwright Mot. at 6. According to Plaintiff, the Cartwright Defendants filed a Certificate of Service claiming that service of process was made by express mail on December 17, 2012. *Id.* However, the records of the United States Postal Service ("USPS") indicate that the papers with which Plaintiff was eventually served were not received until 4:00 p.m. on December 18, 2012. *See* Decl. in Support of Opp'n to Cartwright Mot., Ex. 28 pg 4. Thus, Plaintiff claims that the Certificate of Service is false. *See* Opp'n to Cartwright Mot. at 6. The Cartwright Defendants contend that the Certificate of Service is not false, and that the records of USPS merely indicate that the motion was processed the day after it was delivered. *Id.* The Court is persuaded by the Cartwright Defendants. First, given that the Certificate of Service and the records of USPS differ by only one day, the most likely explanation is that the service of process was delivered to the post office on December 17, 2012 and processed the following day. Second, Plaintiff has not stated what relief he is requesting in the event the Court was persuaded that this proof of service was false. Accordingly, the Court does not find that the Cartwright Defendants filed a false proof of service.

**United States District Court**
For the Northern District of California

In light of the Court's prior analysis that the Defendants do not have sufficient minimum contacts with California, the Court finds it need not rule on whether these factors support the exercise of jurisdiction. Nevertheless, the Court does believe that these factors further weigh in favor of declining to exercise jurisdiction. Most significantly, all of the Defendants who have filed motions to dismiss for lack of personal jurisdiction are residents of either Oregon or Michigan and have only minimal, if any, connections with California. *See* FAC. As such, they will likely face a substantial burden if they are haled into court in California. Moreover, the vast majority of the events asserted by Plaintiff occurred in Oregon and concern parties, trusts, and an estate in Oregon. *See Id*. As such, there is both an alternative forum, an Oregon Court, which exists to hear Plaintiff's case, and the interests of judicial efficiency are served by resolving this case in Oregon. Accordingly, while the Court does not rule on the reasonableness of exercising jurisdiction over Defendants, the Court notes that this seven factor test strongly supports not exercising jurisdiction.

**4. Transfer to the District of Oregon**

Plaintiff has requested that, as an alternative to dismissal, the Court should transfer this action to the District of Oregon. Opp'n to Susan Am. Mot. at 23-25; Opp'n to Cartwright Mot. at 24-25. Plaintiff contends that the first predicate act of his alleged RICO conspiracy is a claim for wire fraud against Susan which occurred on October 13, 2008. Opp'n to Susan Am. Mot. at 23. Actions under RICO are subject to a four-year statute of limitations. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987) (holding that four-year statute of limitations applied to RICO civil enforcement actions). As such, if the Court dismisses Plaintiff's action, he will not be able to reallege this claim should he decide to re-file this action in a court with proper jurisdiction.

The Ninth Circuit has stated that "it would not be in the interests of justice to transfer [an action]" when it "smacks of harassment and bad faith on the plaintiff's part in that it appears that [plaintiff] filed it here after repeatedly losing on at least some similar claims in [the forum to which transfer was requested]." *King v. Russell*, 963 F.2d 1301, 1304-5 (9th Cir. 1992). While the Court does not go so far as to say that Plaintiff's claim "smacks of harassment," the source of his action seems to be his apparent disfavor "after repeatedly losing on at least some similar claims" in

United States District Court
For the Northern District of California

Oregon and California. The fact that this constitutes Plaintiff's second suit in the Northern District of California related to this matter, and the fact that he has repeatedly sued opposing counsel in each of his respective lawsuits, suggests that Plaintiff is bringing this action in "bad faith" in response to the California and Oregon judgments.

Accordingly, at least at this time, the Court finds that transferring this case to the District of Oregon would not be "in the interests of justice." Plaintiff's alternative request to transfer is DENIED.[11]

**5. Conclusion**

The Court GRANTS Defendants Downes and Schulte's Motion to Dismiss, Defendants Susan and James' Motion to Dismiss, and the Cartwright Defendants' Motion to Dismiss. As this is Plaintiff's First Amended Complaint, the Court dismisses without prejudice so that Plaintiff may have the opportunity to cure his complaint by pleading additional jurisdictional facts.

## IV. CONCLUSION

Accordingly, the Court GRANTS WITHOUT PREJUDICE the MZC Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted; Defendants Downes and Schulte's Motion to Dismiss for lack of personal jurisdiction; Defendants Susan and James' Motion to Dismiss for lack of personal jurisdiction; the Cartwright Defendants' Motion to Dismiss for lack of personal jurisdiction.

Because the Court determines that the First Amended Complaint may be cured by additional factual allegations, Plaintiff is granted leave to amend. Should Plaintiff elect to file a Second Amended Complaint curing the deficiencies discussed herein, he shall do so within 30 days of the date of this Order. Failure to meet the 30 day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice. Plaintiff may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

---

[11] The Court does, however, note that Plaintiff could have filed, and perhaps still may re-file, his complaint in Oregon instead of the Northern District of California.

United States District Court
For the Northern District of California

Plaintiff has also filed a Motion for Leave to File a Second and Supplemented Complaint. ECF No. 78. In light of the fact that the Court dismisses Plaintiff's FAC without prejudice, the Court DENIES this motion as moot.[12]

**IT IS SO ORDERED.**

Dated: 9/17/2013

LUCY H. KOH
United States District Judge

[12] In Plaintiff's Motion for Leave to File a Second Amended and Supplemented Complaint, which Defendants oppose, Plaintiff has requested leave to add four additional defendants: Jessica MacGregor, Kate Kimberlin, Kevin Eng, and the law firm of Long & Levit, LLP. These parties however, are all representing Defendants in the instant proceeding. Moreover, Plaintiff's claim against them appears to be based entirely on their involvement as representatives for Defendants in either the instant proceeding or in *Rupert I*. As discussed above, representing a party in a court proceeding is a protected petitioning activity under the *Noerr-Pennington* doctrine. As such, Plaintiff's alleged claims against these parties are not actionable. Furthermore, the Court has granted Defendants' Motions to Dismiss, which were presented to the Court, in part, by these parties. As in *Rupert I*, the fact that these parties have been successful in their efforts before the Court is strong evidence that this litigation is not a sham. Accordingly, Plaintiff's Motion for Leave to Amend is hereby denied. Plaintiff will have the opportunity to amend his complaint by adding additional factual allegations. However, he will not be permitted to add any additional defendants or claims without a stipulation from the Court or the parties.