WILLIAM RUPERT
P.O. Box 66403
Scotts Valley, CA 95067-6403
Phone:   (831) 336-9520
Fax:      (831) 336-9528
Email:   emfwtr@comcast.net

Plaintiff
Pro Se

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM RUPERT,<br><br>                        Plaintiff,<br><br>          vs.<br><br>SUSAN BOND; GILE R. DOWNES;<br>EDWARD S. ZUSMAN;  MATTHEW<br>WHITMAN; MICHELLE JOHANSSON;<br>JAMES RUPERT; SCHULTE, ANDERSON,<br>DOWNES, ARONSON & BITTNER, P.C.,<br>an Oregon Professional Corporation;<br>MARKUN ZUSMAN & COMPTON, LLP,<br>a Limited Liability Partnership Headquartered<br>in California; CARTWRIGHT WHITMAN<br>BAER PC, an Oregon Professional<br>Corporation; and DOES 1 to 20,<br><br>                        Defendants. | **Case No.: 5:12-cv-05292 LHK (HRL)**<br>_____<br><br>**PLAINTIFF WILLIAM RUPERT'S<br>MOTION FOR LEAVE TO FILE<br>MOTION FOR RECONSIDERATION<br>[OF ORDER GRANTING MOTIONS<br>TO DISMISS]; MEMORANDUM OF<br>POINTS AND AUTHORITIES<br>[NDCA L.R. 7-9(a),(b)(1)(3),(c)]**<br><br>Date:    No Hearing Required<br>Time:    No Hearing Required<br>Dept:    Courtroom 8<br>Judge:   Hon. Lucy H. Koh<br><br>Action Filed:   October 12, 2012 |

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES.......................................................................... iii

**MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**...... 1

**MEMORANDUM OF POINTS AND AUTHORITIES**......................................... 2

I.      STATEMENT OF FACTS................................................................ 2

      A.      Plaintiff Is No Longer A Vexatious Litigant In California................. 2

      B.      The Proceedings Upon The Motions To Dismiss.............................. 3

II.     GROUNDS FOR RECONSIDERATION....................................................... 5

      A.      The Sham Litigation Exception To *Noerr-Pennington* Is An Issue
            Of Fact, That Is Inappropriate To Resolve Upon A FRCP 12(b)
            Motion To Dismiss, At The Pleadings Stage, So The Adjudication
            Of This Issue Of Fact Was Premature, And Also Improvidently
            Determined, Contrary To Plaintiff's Proof He Was The Successor
            Trustee, Effective July 8, 2009, In California, Which The MZC
            Defendants Did Not Deny, Refute, Or Rebut..................................... 6

            1.      The Court's Findings And Determination.............................. 6

            2.      Determination Of The "Sham" Litigation Exception Issue
                  Concerns An Issue Of Fact, That Is Inappropriate For
                  Resolution Upon A FRCP 12(b) Motion To Dismiss.............. 7

            3.      The Court's Determinations Disregard The Competition
                  Between Susan And Plaintiff For The Trusteeship Of The
                  Samuel Rupert Trust, Which Was A Paid Position Under
                  The Terms Of The Trust (And A Business Relationship)....... 8

            4.      The  Court's Determinations Overlook Plaintiff's Evidence
                  That He Became The Successor Trustee Of The Samuel
                  Rupert Trust, Effective July 8, 2009, And Transferred The
                  Principal Place Of Administration To California.................... 9

            5.      The Alleged Misrepresentations To Judge Fogel, By The
                  MZC Defendants, Were Three-Fold, By Misrepresenting
                  The Identity Of The Successor Trustee, The Location Of
                  The Successor Trustee, And The Location Of The Trust
                  Assets........................................................................ 9

i
Plaintiff's Motion For Leave To File Motion For Reconsideration Of Order Granting
Motions To Dismiss [Case No. 5:12-cv-05292 LHK (HRL)]

**TABLE OF CONTENTS (Continued)**

Page(s)

C.  According To *Hanson v. Denckla,* 357 U.S. 235, 249 (1958), The
    Location Of Trust Assets, And The Trustee, Are Extremely
    Significant Jurisdictional Facts, And Judge Fogel Was Misled
    About Both Factors, Through The Knowingly False Declarations
    And Oral Argument By The MZC Defendants, Falsely Asserting
    The Late Irene Rupert Was The Successor Trustee Of The Samuel
    Rupert Trust, Which Is An Objectively Baseless Assertion, Made
    To Damage Plaintiff's Trusteeship Rights, In California...................   10

D.  The Declarations Filed, And The Argument Presented, To Judge
    Fogel, By The MZC Defendants in *Rupert I,* Had The Effect Of
    Depriving the Plaintiff Of *His* Petition Rights, And The Chance
    To Have Judge Fogel Declare That Plaintiff Was The Successor
    Trustee, And Defendant Downes Was Misrepresenting The Law
    And The Facts To The Late Irene Rupert, To Benefit Susan..............   14

E.  Jurisdiction Over A Partner And A Partnership Have To Be
    Separately Determined, And Defendant Zusman's Contacts With
    Oregon Are Not Sufficient, Pursuant To *Sher v. Johnson,* 911 F.2d
    1357 (9th Cir. 1990), To Allow Oregon To Exercise Personal
    Jurisdiction Over Him, So The Court Wrongly Determined: (1) 18
    U.S.C. § 1965(b) Was Inapplicable; and, (2) The Jurisdictional
    Contacts Have To Be Evaluated Under The 14th Amendment
    (Contacts With The State Of California), Instead Of Under The 5th
    Amendment (Contacts With The United States)..................................   17

F.  The Purported Mootness Of The Plaintiff's Motion For Leave To
    File Second Amended & Supplemental Complaint Should Also
    Be Reconsidered, Based Upon Plaintiff's Showing That He
    Became The Successor Trustee On July 8, 2009, Such That All
    Subsequent Declarations And Representations To Federal Judges,
    Asserting The Late Irene Rupert Was The Successor Trustee,
    Have Been Objectively Baseless, And Motivated By The Desire
    To Interfere With Plaintiff's Trusteeship Rights, For The Purpose
    Of Assisting Susan In Her Fraudulent Schemes................................   20

G.  The Decision To Deny Jurisdictional Discovery Should Also Be
    Reconsidered, Because Much Like Anti-Trust Cases, The Proof
    Lies Largely In The Hands Of The Defendants, As Detailed In
    The ESI Notice Plaintiff Provided To Defendants In July, 2013......   23

III.   CONCLUSION................................................................................   25

Plaintiff's Motion For Leave To File Motion For Reconsideration Of Order Granting
Motions To Dismiss [Case No. 5:12-cv-05292 LHK (HRL)]

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bell v. City of Boise
    709 F.3d 890, 897 (9th Cir. 2013)..................................................    23

California Motor Transp. Co. v. Trucking Unlimited
    404 U.S. 508, 512-513, (1972).....................................    11

Clipper Exxpress v.  Rocky Mountain Motor Tariff Bureau, Inc.
    690 F. 2d 1240, 1260 (9th Cir. 1982).............................    7,11

Ernest W. Hahn, Inc. v. Codding
    615 F.2d 830.835 (9th Cir. 1980)............................    24

Evans v. Galardi
    (1976) 16 Cal.3d 300, 308-09, 128 Cal.Rptr. 25, 546 P.2d 313......................    19

Hanson v. Denckla
    357 U.S. 235, 249 (1958).......................................    10-14,24

Hydranautics v. Film Tec Corp.
    70 F.3d 533, 537 (9th Cir. 1995)..............................    7

Kearney v. Foley & Lardner, LLP
    582 F. 3d 896 (9th Cir. 2009)...............................    23

Kougasian v. TMSL, Inc.
    359 F.3d 1136, 1140-41 (9th Cir. 2004).............................    23

Maldonado v. Harris
    370 F.3d 945, 950 (9th Cir. 2004)..............................    23

Noel v. Hall
    341 F.3d 1148, 1164 (9th Cir. 2003)............................    23

Poller v. Columbia Broadcasting
    368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)....................................    24

Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.,
    508 U.S. 49, 60n.5 (1993)..................................    6

Sher v. Johnson
    911 F.2d 1357 (9th Cir. 1990).............................    17,19

Plaintiff's Motion For Leave To File Motion For Reconsideration Of Order Granting
Motions To Dismiss [Case No. 5:12-cv-05292 LHK (HRL)]

1

## __TABLE OF AUTHORITIES__

__Page(s)__

2 __Statutes__

3    CALIFORNIA BUSINESS & PROFESSIONS CODE

4       § 6068(d)...................................................................    16

5    CALIFORNIA CODE OF CIVIL PROCEDURE
        § 391(b).................................................................    2

6       § 425.16................................................................    3

7    OREGON REVISED STATUTES
        § 9.160(1).............................................................    13

8       § 9.460(1)(2).........................................................    16

9    UNITED STATES CODE
        18 U.S.C. § 1965(b)................................................    1,4,17,19

10      42 U.S.C. § 1985(2)...............................................    22

11 __Rules__

12

13   FEDERAL RULES OF CIVIL PROCEDURE
        FRCP 11................................................................    2,16

14      FRCP 12(b)...........................................................    6,7
        FRCP 12(b)(2).......................................................    3,6

15      FRCP 12(b)(6).......................................................    3,5,7,17

16   FEDERAL RULES OF EVIDENCE
        FRE 201.................................................................    3

17

18   LOCAL RULES FOR THE NORTHERN DISTRICT OF CALIFORNIA
        NDCA L.R. 7-3(d)(1).............................................    5,19

19      NDCA L.R. 7-9(a),(b)(1)(3),(c)............................    1
        NDCA L.R. 7-9(b)(1)...........................................    5

20      NDCA L.R. 7-9(b)(3)...........................................    4,5

21 __Constitutions__

22   UNITED STATES CONSTITUTION
        1st Amendment....................................................    16

23      5th Amendment...................................................    17
        14th Amendment.................................................    14,17

24

25

Plaintiff's Motion For Leave To File Motion For Reconsideration Of Order Granting
Motions To Dismiss [Case No. 5:12-cv-05292 LHK (HRL)]

## MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION

The plaintiff William Rupert ("William") hereby moves the court for leave to file a Motion For Reconsideration of the Order Granting Motions To Dismiss (ECF 100), entered September 17, 2013, pursuant to NDCA L.R. 7-9(a)(b)(1)(3),(c), on the grounds that: (1) a material difference in law exists from that which was presented to the Court, which was not previously known by the plaintiff, despite his diligent efforts in the case, and these new legal authorities, when applied to the facts of this case, should cause the Court to rule differently on the Motions to Dismiss, and upon plaintiff's Motion For Leave to File Second Amended & Supplemental Complaint (which was denied as moot) (ECF 100; p. 31:1-3); and, (2) there were manifest failures by the Court to consider material facts or dispositive legal arguments which were presented to the Court before the Order Granting Motions To Dismiss was entered.

For example, reconsideration is sought upon rulings that include: (1) Oregon *may* have personal jurisdiction over Defendant Edward Zusman, based upon the presence of a partnership branch location in Oregon, so the provisions of 18 U.S.C. § 1965(b) cannot be invoked; (2) the location of the assets, and the trustee's identity and location, for the Samuel Rupert Trust, are not jurisdictionally significant facts, and weren't misrepresented to Judge Fogel; (3) the sham litigation exception to the *Noerr-Pennington* Doctrine cannot be relied upon; and, (4) plaintiffs motion for leave to file a Second Amended & Supplemental Complaint is denied as moot.

Plaintiff's motion is brought under NDCA L.R. 7-9(a)(b)(1)(3)(c), and is supported by the attached Memorandum of Points and Authorities, and all other papers, documents, and pleadings appearing of record herein.

Dated:  September 23, 2013

__/s/   William Rupert_____
William Rupert
Plaintiff     Pro Se

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      STATEMENT OF FACTS**

      **A.      Plaintiff Is No Longer A Vexatious Litigant In California**

In the Court's Order Denying Defendants' Motion For Rule 11 Sanctions, entered September 18, 2013 (ECF 101), the following is stated, in pertinent part:

> "This is in fact the third lawsuit he has filed against Defendants Downes and Schulte in an effort to hold Defendants' responsible for the same alleged actions. And, Plaintiff has previously been censured for his unrestrained and careless use of the court system by the California Judicial Council, which placed Plaintiff on the California Vexatious Litigant List pursuant to California Code of Civil Procedure § 391(b). RJN, ECF No. 66, Exhibit 5. . . . . . . . . . .
> . . . . . The Court takes this designation on the vexatious litigant list very seriously, and Plaintiff's numerous lawsuits are indeed troubling to this Court."
> (ECF 101, p. 9:24-10:16)

However, the above finding is not only inaccurate (not the third lawsuit, and not for the same claims), it is inconsistent with the Court's determination within its Order Granting Motions To Dismiss (ECF 100), wherein the Court declined to take judicial notice of the alleged second lawsuit (which Plaintiff denied filing within the Oregon trust proceedings for declaratory judgments, that Susan commenced[1]), and the Court stated the following:

> "Based on these conflicting exhibits, the Court finds that it is unclear whether or not this document was actually entered into the public record in connection with the Oregon Proceedings. Accordingly, the Court DENIES Defendants Downes and Schulte's Request for Judicial Notice of Exhibit 3."
> (ECF 100, p. 10:24-27)

More important, however, is the fact that Plaintiff's name was ordered removed from the

---

[1] Technically, the proceedings commenced by Susan in Oregon were not under the Oregon Probate Code (FAC; ¶ 77, p. 40:18-19), and thus were not probate proceedings concerning an estate. Rather, they were under the Oregon Trust Code, by Susan, for declaratory judgments upon limited issues, as reflected by the judgment document itself, which is before the Court, showing an advisory opinion was obtained, of an interlocutory nature, without joinder of the Trustee. (ECF 48, p. 42-43, Ex 32, General Judgment. However, no inventories were required, submitted or approved, and no accountings were required, submitted or approved.

California Judicial Council's Vexatious Litigant List, on May 29, 2013, in Santa Cruz County Superior Court Case No. 117792 (Exhibit 1, attached hereto), and, in fact, Plaintiff's name has been removed, as shown by page 41 of the California Judicial Council's Vexatious Litigant List published on September 3, 2013.  (Exhibit 2, attached hereto).

Judicial Notice is requested of these documents that have been entered into the public record, within the State of California, under FRE 201.

**B.      The Proceedings Upon The Motions To Dismiss**

On September 17, 2013, the Court granted the FRCP 12(b)(6) Motion To Dismiss filed by California defendants Zusman and MZC, and granted similar FRCP 12(b)(2) Motions to  Dismiss filed by the other 3 sets of out-of-state defendants.  (ECF 100).

The Court also graciously granted plaintiff leave to amend within 30 days.

However, the Court appears to have overlooked, or disregarded, the significance of the evidence which the plaintiff was compelled to produce, with regards to the MZC Defendants, because of the SLAPP motion they made under CCP § 425.16, which placed the burden upon plaintiff to produce some evidence to support his allegations, and establish "minimal merit".

To meet this burden, plaintiff presented evidence that he became the Successor Trustee of the Samuel Rupert Trust, effective July 8, 2009, as alleged in his pleading (FAC; ¶ 62), when his acceptance of trust papers were delivered to all the qualified beneficiaries, in the manner required by the terms of the Trust, and by governing Michigan Law.

The face of plaintiff's acceptance of trust document (ECF 48; p. 13-17; Ex 29, Notice of Acceptance, 07/06/09), states that one of the reasons for his acceptance is because the late Irene Rupert rejected her nomination, by failing to accept within a reasonable time, following the death of Samuel Rupert on October 12, 2008.  (ECF 48, p. 13)

Unfortunately, there appears to have been a manifest failure by the Court to consider this material fact (Plaintiff's trusteeship, in California, starting in July of 2009) (FAC, ¶ 62; p. 34:22-25) , within the meaning of NDCA L.R. 7-9(b)(3).[2]

Plaintiff's showing that he became the Successor Trustee on July 8, 2009, and lawfully transferred the principal place of administration to California at that time, has not been addressed, denied, rebutted, or refuted by any argument or evidence from the MZC Defendants, to show they did not make material misrepresentations to Judge Fogel, when they falsely asserted the late Irene Rupert was the Successor Trustee of the Samuel Rupert Trust, who was administering the Trust in Oregon, in November of 2009 and January of 2010.

Nonetheless, the Court ruled that no misrepresentations to Judge Fogel, by the MZC Defendants, had been established by plaintiff, and therefore the sham litigation exception to the *Noerr-Pennington* Doctrine was inapplicable.  Based thereupon, the Court ruled that plaintiff is barred from suing the MZC Defendants for their conduct in *Rupert I,* before Judge Fogel.

The Court also made another significant ruling concerning the MZC Defendants, by the Court's finding that "an Oregon court may have jurisdiction over all of the RICO defendants." (ECF 100, p. 21:16-17), including Defendant Zusman, because he is a partner in a limited liability partnership that happens to have a branch location in Portland, Oregon (even though no showing or claim was made that he has ever been affiliated with the partnership's Portland. Oregon branch location – and, in fact, he isn't).

This finding caused the Court to rule that 18 U.S.C. § 1965(b) is inapplicable, and the ends of justice do not require that all defendants be tried together in the Northern District of

---

[2]  The fact of Plaintiff's trusteeship, in California, was also clearly alleged by the factual allegations set forth by Plaintiff in the FAC he filed in  *Rupert I,* (ECF 18-2; p. 48:1-13, ¶ 93).

Plaintiff's Motion For Leave To File Motion For Reconsideration Of Order Granting
Motions To Dismiss [Case No. 5:12-cv-05292 LHK (HRL)]

California.[3]

Plaintiff's Motion For Leave To File A Second Amended & Supplemental Complaint (ECF 78), calendared for hearing on November 21, 2013, was denied as moot.

Now, on a variety of grounds, including the ground that the sham litigation issue is a question of fact, which should not have been reached, if no evidence was going to be considered by the Court, in ruling upon the MZC Defendants' FRCP 12(b)(6) motion, plaintiffs seeks permission to file a Motion For Reconsideration, wherein the grounds set forth below will be presented in more detail, if the Court deems further briefing, by the Plaintiff, to be necessary, appropriate, or potentially helpful.

## II.     GROUNDS FOR RECONSIDERATION

This motion is brought pursuant to NDCA L.R. 7-9(b)(1)(3), which states the following, in pertinent part:

"The moving party must specifically show:
(1)     That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought.  The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or

.      .      .      .      .      .      .      .      .

(3)     A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order."

NDCA L.R. 7-9(c) requires that a party applying for leave to file a motion for

---

[3]  Significantly, the suggestion that personal jurisdiction would exist in Oregon over Defendant Zusman, was not made by Defendant Zusman, or any of the MZC Defendants. Rather, it was suggested by the Downes and Schulte Defendants, for the first time, in the Reply Memorandum they filed on December 20, 2012 (ECF 39; p.5:2-3).  In response to this sandbagging by the Downes and Schulte Defendants, Plaintiff timely filed his "Objection To Reply Evidence Submitted By Defendant Downes,", on December 26, 2012 (ECF 44), under NDCA L.R. 7-3(d)(1).  However, Plaintiff's Objection was not ruled upon in the Order Granting Motions For Dismissals, which relied upon the Reply evidence.

reconsideration not repeat arguments previously presented to the Court.

Based thereupon, the plaintiff asserts the following new grounds and legal arguments, or manifest failures by the Court, as grounds for granting leave to file a motion for reconsideration.

**A.   The Sham Litigation Exception To *Noerr-Pennington* Is An Issue Of Fact, That Is Inappropriate To Resolve Upon A FRCP 12(b) Motion To Dismiss, At The Pleadings Stage, So The Adjudication Of This Issue Of Fact Was Prematurely Reached, And Also Improvidently Determined, Contrary To Plaintiff's Proof He Was The Successor Trustee, Effective July 8, 2009, Which The MZC Defendants Did Not Deny, Refute, Or Rebut**

**1.   The Court's Findings And Determinations**

In the Court's Discussion Section III.(B)(1)(a), on pages 11-13, discussing the RICO claims against the MZC Defendants, the Court concluded that Plaintiff's claims arising from *Rupert I* are barred by the *Noerr-Pennington* Doctrine, as protected petitioning activity.

By way of further explanation, the Court's Discussion Section III.(B)(1)(b), on pages 13-15, concludes that the "Sham" litigation exception to the *Noerr-Pennington* Doctrine does not apply. A variety of factors are given for this conclusion, including:

(1) "Plaintiff has made only bare assertions that the MZC Defendants actions in *Rupert I* were baseless and a concealed attempt to interfere with his business relationships. *See* MZC Opp'n at 23." (ECF 100; p. 13:24-26);

(2) "Moreover, the MZC Defendants successfully obtained a dismissal of Plaintiff's case. *See Rupert I.* Therefore, there appears to have been sound basis for asserting this defense, and Plaintiff cannot demonstrate that the MZC Defendants actions were objectively baseless. *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.,* 508 U.S. 49, 60n.5 (1993) ('A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham')" (ECF 100; p. 13:26-14:3)[4];

(3) "Plaintiff's interest in his inheritance, however, has no relationship to market competition or business. Rather, it is a personal financial relationship. Accordingly, the

---

[4]  This overlooks the fact that a winning lawsuit results in a judgment, after a trial on the merits. Whereas, an Order granting a FRCP 12(b)(2) motion to dismiss, without any discovery, or adjudication of any facts, is hardly comparable to a judgment on the merits.

Plaintiff's Motion For Leave To File Motion For Reconsideration Of Order Granting
Motions To Dismiss [Case No. 5:12-cv-05292 LHK (HRL)]

Court finds that this is not a business relationship for purposes of the *Noerr-Pennington* doctrine."  (ECF 100; p. 14:13-16);

(4)  "While Plaintiff has alleged that the MZC Defendants made fraudulent declarations to Judge Fogel, 'vague allegations of misrepresentation "are . . .  insufficient to overcome *Noerr-Pennington* protection."'  *Kottle,* 1436 F.3d at 1064."
(ECF 100; p. 14:18-20);

(5)  "Accordingly, Plaintiff has not provided sufficient evidence that the accounts are located in California, or that the MZC Defendants knowingly made misrepresentations when they submitted declarations stating that the assets were not located in California."
(ECF 100; p. 14:28-15:2);

(6)  "The Court is, therefore, not convinced that Judge Fogel's decision would have changed even if the assets were in fact located in California.  As such, given that there is no proof that a misrepresentation was made, or that this alleged misrepresentation would have undermined the legitimacy of the prior litigation, this exception does not apply."
(ECF 100; p. 15:9-12); and

(7)  "Therefore, the 'sham' litigation exception does not apply, and Plaintiff's *Rupert I-*based claims are barred by the *Noerr-Pennington* doctrine."
(ECF 100; p. 15:13-14);

## 2.   Determination Of The "Sham" Litigation Exception Issue Concerns An Issue Of Fact, That Is Inappropriate For Resolution Upon A FRCP 12(b) Motion To Dismiss

The 9th Circuit has determined that the "Sham" litigation question presents an issue of fact for the Court to resolve.  (See *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F. 2d 1240, 1253 (9th Cir. 1982).

As such, the 9th Circuit has also established that determining whether particular litigation was a sham should not be determined at the pleadings stage.  (See *Hydranautics v. Film Tec Corp.*, 70 F.3d 533, 537 (9th Cir. 1995) (determining whether particular litigation was a sham "could not properly be resolved against Hydranautics on the basis of the pleadings.  The outcome will depend on evidence."  (*Id.* at 537).

Because the Court declined to consider evidence in ruling upon the FRCP 12(b) Motions

Plaintiff's Motion For Leave To File Motion For Reconsideration Of Order Granting
Motions To Dismiss [Case No. 5:12-cv-05292 LHK (HRL)]

to Dismiss, it should not have made any findings upon the subject. The "sham" litigation issue should have been reserved for later proceedings, where it will be appropriate to consider evidence submitted by the parties. Therefore, the Court prematurely determined that:

> "Therefore, the 'sham' litigation exception does not apply, and Plaintiff's *Rupert I*-based claims are barred by the *Noerr-Pennington* doctrine."
> (ECF 100; p. 15:13-14)

### 3. The Court's Determinations Disregard The Competition Between Susan And Plaintiff For The Trusteeship Of The Samuel Rupert Trust, Which Was A Paid Position Under The Terms Of The Trust (And A Business Relationship)

Both *Rupert I,* and the instant action are about much more than just the Plaintiff's state law claim for Intentional Interference with Expected Inheritance ("IIEI"). Plaintiff's trusteeship rights also vested when Samuel Rupert died on October 12, 2008.

As alleged in the FAC, both Susan and the Plaintiff were in competition for the role of Successor Trustee of the Samuel Rupert Trust. (FAC, ¶¶ 33-35).

The Michigan Trust instrument is before the Court (ECF 48; Ex. 40; p. 63-75), and the terms of the trust establish that the occupant of the Office of the Trustee is entitled to be compensated, in the same manner as "corporate fiduciaries". (ECF 48; p. 70, Section 11(3))

Accordingly, this was a dispute that involved the Plaintiff's economic relations, and the business of performing as a paid fiduciary, for the Samuel Rupert Trust.

There appears to have been a manifest failure to recognize the Plaintiff's economic interests, in California, that were allegedly being interfered with, although they were recognized by Judge Fogel in *Rupert I,* as revealed by the Reporter's Transcript of the proceedings before Judge Fogel. (ECF 58; Ex. 41; p. 15:17-25; p. 16:4-8)

Leave to file a motion for reconsideration should be granted, under these circumstances it is submitted.

Plaintiff's Motion For Leave To File Motion For Reconsideration Of Order Granting Motions To Dismiss [Case No. 5:12-cv-05292 LHK (HRL)]

**4.    The  Court's Determinations Overlook Plaintiff's Evidence That He Became The Successor Trustee Of The Samuel Rupert Trust, Effective July 8, 2009, And Transferred The Principal Place Of Administration To California**

Within the Plaintiff's FAC, the following is alleged, in Paragraph 62:

"62.    On July 8, 2009, plaintiff William caused his formal appointment & acceptance papers to be delivered to Irene E. Rupert, defendant Susan and defendant James, whereby he formally accepted his nomination to become the Successor Trustee of the Samuel Rupert Trust, and the Personal Representative under the Will of Samuel J. Rupert."
(FAC, ¶ 62, p. 34:22-25)

The Plaintiff's acceptance of trust document is before the Court (ECF 48; p. 13-17; Ex. 29, Notice of Acceptance, 07/06/09), and it shows that Plaintiff accepted under controlling Michigan Law, and that he transferred the principal place of administration to California, in conjunction with his acceptance of the Trusteeship of the Michigan Trust.

The Court's manifest failure to consider this material fact warrants reconsideration, it is respectfully submitted.

**5.    The Alleged Misrepresentations To Judge Fogel  By The MZC Defendants Were Three-Fold, By Misrepresenting The Identity Of The Successor Trustee, The Location Of The Successor Trustee, And The Location Of The Trust Assets**

Although the Plaintiff's opposition arguments admittedly failed to clearly delineate that the alleged obstruction of justice by the MZC Defendants had three components to it, a close reading of the FAC, shows that the material misrepresentations to Judge Fogel had three components, not just the location of trust assets.

Judge Fogel was deceived about: (1) the identity of the trustee of the Samuel Rupert Trust (by being told it was the late Irene Rupert, when there has never been one scintilla of evidence to support the claim; while there is evidence showing Plaintiff became the Successor

9

Trustee of the Samuel Rupert Trust on July 8, 2009)[5]; (2) the location of the trustee (by being told it was in Oregon, at a time when it was really in California[6]; and, (3) the location of the trust assets (by being told all assets were located in Oregon, at a time when the trust assets were located in California).

The Court's manifest failure to consider the effect of the injurious falsehood concerning the late Irene Rupert being the Successor Trustee, when the evidence shows Plaintiff was actually the Successor Trustee, justifies reconsideration, it is respectfully submitted.

        **C.   According To *Hanson v. Denckla,* 357 U.S. 235, 249 (1958), The Location Of Trust Assets, And The Trustee, Are Extremely Significant Jurisdictional Facts, And Judge Fogel Was Misled About Both Factors, Through The Knowingly False Declarations And Oral Argument By The MZC Defendants, Falsely Asserting The Late Irene Rupert Was The Successor Trustee Of The Samuel Rupert Trust, Which Is An Objectively Baseless Assertion, Made To Damage Plaintiff's Trusteeship Rights, In California**

In the case of *Hanson v. Denckla,* 357 U.S. 235, 249 (1958), the United States Supreme Court determined that the location of trust assets and the location of the trustee, are extremely significant jurisdictional facts.  In *Hanson v. Denckla,* the high court rejected the "domicile at death" ground, when the question was Florida's fundamental jurisdiction over a trust, the trust assets (in Delaware), and the trust's trustee (in Delaware), in an action brought by beneficiaries and legatees in Florida, where the settler had been domiciled when she died.

The dispute reached the high court after: (1) Florida relied upon the "domicile at death" ground, for asserting jurisdiction over the Delaware assets and the Delaware trustee,

---

[5]  (ECF 48; Ex 29; p. 13-17; Notice of Acceptance) (FAC; ¶ 62).
[6]  Defendant Zusman stated the following to Judge Fogel, at the hearing on January 8, 2010:
    "Irene Rupert is still alive.  And she is still the trustee of the two trusts with all the rights, powers and authorities of a person in that position."
    (ECF 58; Ex 41; Reporter's Transcript; p. 21:18-21)

Plaintiff's Motion For Leave To File Motion For Reconsideration Of Order Granting Motions To Dismiss [Case No. 5:12-cv-05292 LHK (HRL)]

even though the trustee had not been joined as a party in the action (*Id.* at 238); and, (2) the

courts in Delaware refused to give the Florida judgment full faith and credit, because the

trustee had not been joined as a party in the Florida action. (*Id.* at 238).

The jurisdictional facts in the instant case are very similar to those that were presented

in *Hanson v. Denckla,* 357 U.S. 235, 249 (1958), except the connections between the late

Samuel Rupert, and Oregon, are much weaker than the connections between Florida and the

settler in *Hanson v. Denckla,* which were still found to be insufficient, by the United States

Supreme Court, as will be explained below.

*First,* as stated within the Opinion issued in *Hanson v. Denckla,* 357 U.S. 235 (1958),

that case concerned the right to part of the corpus of a trust established in Delaware by a

settler who later became domiciled in Florida. (*Id.* at 238).

Similarly, in the instant case, Susan filed an action in Oregon, as a remainder

beneficiary of a Michigan Trust (FAC, ¶ 77), for a declaratory judgment, alleging she was

entitled to the "immediate" distribution of her share, upon the death of Irene Rupert[7].   (ECF

48; Ex 30; Petition; p. 19:25-20:2).

///

_____

[7]  However, the claim is baseless, because the Samuel Rupert Trust, was attached to her
pleading (ECF 48; Ex 30; pp. 22-34), and it clearly shows there is no entitlement to any
"immediate" distribution, so the pleading is baseless and a "sham", because filed for the
improper purpose of creating a false judicial record of the late Irene Rupert being the
Successor Trustee of the Samuel Rupert Trust, from October 12, 2008 to March 12, 2010.
The purpose of this false judicial record is to cover-up and conceal Susan's wrongful
intermeddling as a trustee *de son tort*, during at least the first 7 months after Samuel Rupert
died on October 12, 2008.  As such, Susan's Oregon pleading, regarding the Samuel Rupert
Trust, qualifies as a "sham" pleading, under the federal standards that have been established
for "sham" pleadings which are outside the protective scope of the *Noerr-Pennington*
Doctrine.  (See *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F. 2d
1240, 1261 (9th Cir. 1982); *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S.
508, 512-513, (1972)).

Plaintiff's Motion For Leave To File Motion For Reconsideration Of Order Granting
Motions To Dismiss [Case No. 5:12-cv-05292 LHK (HRL)]

*Second,* after the settler in *Hanson v. Denckla* moved to Florida, she executed a Will there, and after her death, her will was admitted to probate in Florida.  (*Id.* at 238-239).

In the instant case, however, the late Samuel Rupert's estate plans from Michigan also included a pour-over Will (ECF 58; Ex 56; Will; p. 112-113), but it was not admitted to probate in Oregon, following his death in 2008. (FAC, ¶ 77; p. 40:18-19).   Nor did the late Samuel Rupert ever execute any new estate planning documents while domiciled in Oregon. In fact, no evidence was produced by Susan to show the late Samuel Rupert ever administered his Trust in Oregon, after moving there in 2006.  As such, no evidence has been produced, in any proceeding, to show that the late Samuel Rupert, as Trustee of his own Trust, ever availed himself of the privileges of conducting business in the State of Oregon.

*Third,* when the settler in *Hanson v. Denckla* moved to Florida, her Trust assets remained in Delaware, where the Trustees were also located. (*Id.* at 247).

Similarly, in the instant case, when the late Samuel Rupert moved to Oregon, the brokerage account in the name of the Trust remained in Michigan (FAC, ¶ 39).  Also, after Samuel Rupert's death, Susan and Michigan Financial Advisor Dillon & Associates, Inc. caused the brokerage account to be transferred from Michigan to Charles Schwab Institutional, in San Francisco, California, not to Oregon. (FAC, ¶ 47).

*Fourth,* after the settler in *Hanson v. Denckla* died in Florida, certain beneficiaries and legatees commenced proceedings in Florida, but the Delaware Trustees were not joined as parties (by either service of process, or voluntary appearance). (*Id.* at 241).

Similarly, in the instant case, after Samuel Rupert died in Oregon, remainder beneficiaries Susan and James have commenced proceedings in Oregon (FAC, ¶¶ 77,84), and obtained purported judgment documents, without making the trustee a party to the action, or

creating *in rem* jurisdiction over the trust assets, through the service of a summons upon the out-of-state trustee.  Nor has the trustee, who can only lawfully appear through a licensed attorney-at-law, made a voluntary appearance in the case.  As a matter of law, all appearances by the Plaintiff in the Oregon proceedings were in his individual capacity as one of the three remainder beneficiaries, because he cannot appear *Pro Se,* as the Trustee, without committing the crime of the unauthorized practice of law, which is prohibited by ORS 9.160(1).  Nor would it be a proper judicial function to allow an unlicensed trustee to engage in the unauthorized practice of law.

> *Fifth,* in the case of *Hanson v. Denckla*, the Florida courts ruled that they could exercise subject matter jurisdiction over the Delaware assets and the trustees located in Delaware, based upon the fact that the settler was domiciled in Florida, and executed a Will in Florida, which was probated in Florida, after she died.  (*Id.* at 247).  However, Delaware refused to give full faith and credit to the judgment from Florida (*Id.* at 238), and it was the Delaware courts who were upheld, while the Florida judgment was invalidated, by the *Hanson v. Denckla* Court.  (*Id.* at 250-251, 255).

> Similarly, the courts of Oregon entered a judgment, concerning the Samuel Rupert Trust (ECF 48, p. 42-43, General Judgment), which shows upon its face that Plaintiff only appeared in his capacity as a remainder beneficiary, because he appeared as an in pro per litigant.  For Plaintiff to have made a lawful appearance in his capacity as the Trustee, he would have been required to appear through a licensed attorney-at-law.  Therefore, the face of the General Judgment shows an indispensable party, the Trustee, was not joined as a party during the course of the litigation Susan commenced in Oregon.

> *Sixth,* in the *Hanson v. Denckla* matter, the United States Supreme Court reversed the

Plaintiff's Motion For Leave To File Motion For Reconsideration Of Order Granting
Motions To Dismiss [Case No. 5:12-cv-05292 LHK (HRL)]

ruling by the Supreme Court of Florida, and ruled that the ground of domicile at death, by a settler, is not enough, when a trust is concerned, to make it reasonable, and comport with "fair play and substantial justice", for the state where the settler had been domiciled, to exercise subject matter, personal, and *in rem* jurisdiction, over trust assets and the trustee, located in Delaware.  (*Id.* at 251).

Similarly, the results should be the same in the instant case, and the Oregon judgments affecting the Samuel Rupert Trust should also be invalidated, because Oregon's exercise of fundamental jurisdiction, over the Samuel Rupert Trust, without joining the Plaintiff, in his capacity as the Trustee, in the action (who can only appear through counsel), also does not comport with due process under the 14th Amendment to the United States Constitution.

Accordingly, reconsideration should be granted, so another Decision can be issued, that is in harmony with *Hanson v. Denckla,* 357 U.S. 235 (1958), by recognizing that the identity of the trustee, the location of the trustee, and the location of the trust assets, are all extremely significant jurisdictional facts -  which were deliberately, or recklessly, misrepresented to Judge Fogel, by the MZC Defendants (ECF 58; Ex 41; Reporter's Transcript; p. 21:18-21), and by Defendants Downes and Schulte (ECF 18-5; Ex 4; Decl. of Downes; p. 4:5-7, p. 4:12-13) (along with non-party co-conspirators Eng, MacGregor, and Long & Levit, LLP), during November of 2009 and January of 2010.

> **D.  The Declarations Filed, And The Argument Presented, To Judge Fogel, By The MZC Defendants in *Rupert I,* Had The Effect Of Depriving the Plaintiff Of *His* Petition Rights, And The Chance To Have Judge Fogel Declare That Plaintiff Was The Successor Trustee, And Defendant Downes Was Misrepresenting The Law And The Facts To The Late Irene Rupert, To Benefit Susan**

The plaintiff's primary purpose, for the litigation he commenced in *Rupert I,* was to

14

drive a stake through the heart of the "Big Lie", first told by Defendant Downes, in his letter

dated June 10, 2009 (ECF 30; Ex 1, Downes Letter; p. 10) wherein he stated, with regards to the

Samuel Rupert Trust, "[i]n my opinion your mother remains the trustee of that trust.", and he

was her attorney in that capacity, as well as in other capacities.  This "Big Lie" was such an

injurious falsehood, designed and intended to interfere with the plaintiff's vested trusteeship

rights, concerning the Samuel Rupert Trust, that the plaintiff commenced *Rupert I,* on June 22,

2009, a mere 12 days after the injurious falsehood was first made, targeting the Plaintiff in

California, using the mails and a fax transmission from Oregon to California.

Plaintiff wanted a federal judge to tell his mother that the attorney Susan Bond had

found for her, defendant Downes,  was not telling her the truth, and his lies were designed to

benefit Susan, to the detriment of William, and the Samuel Rupert Trust, at her expense.

More specifically, in *Rupert I,* the Prayer of the FAC sought damages and also

declaratory judgments upon various controversies, establishing *inter alia* that:

> (1)   Plaintiff was entitled to the information he sought, concerning Susan's
> administration of their parent's estates and trusts, after Samuel Rupert died
> on October 12, 2008,
> > (ECF 18-2; FAC in *Rupert I,* Prayer, 4(B), p. 32:19-22);
> (2)   The Office of the Trustee, for the Samuel Rupert Trust, was vacant from October
> 12, 2008, until it was filled by William Rupert on July 8, 2009,
> > (ECF 18-2; FAC in *Rupert I,* Prayer, 4(C), p. 32:23-33:5);
> (3)   Susan Bond has "unclean hands" as a trustee *de son tort*, for intermeddling
> with Plaintiff's trusteeship,
> > (ECF 18-2; FAC in *Rupert I,* Prayer, 4(E), p. 33:13-17); and,
> (4)   Susan Bond's Amendment to Trust Agreement, in January 2009, for the Irene
> Rupert Trust, is illegal, and void *ab initio,*
> > (ECF 18-2; FAC in *Rupert I,* Prayer, 4(G), p. 33:23-25).

But for the misrepresentations told to Judge Fogel, plaintiff William might have

obtained his day in court before the late Irene Rupert passed away, and she certainly would have

rescinded the Oregon Trust instruments Defendants Susan and Downes tricked her into signing,

Plaintiff's Motion For Leave To File Motion For Reconsideration Of Order Granting
Motions To Dismiss [Case No. 5:12-cv-05292 LHK (HRL)]

in 2009, if Plaintiff had not been deprived of the opportunity to expose Defendant Downes, as an errant attorney, who was intentionally misrepresenting both the facts and the law to her.

As such, it is entirely inequitable to prematurely grant *Noerr-Pennington* doctrine benefits to litigants who have misused and abused the judicial process, and violated their statutory obligations as trusted Officers of the Court (FRCP Rule 11, Cal. Bus. & Prof. Code § 6068(d), and ORS 9.460(1)(2)), in order to deprive the Plaintiff of his petition rights under the 1st Amendment to the United States Constitution, it is respectfully submitted.

The "unclean hands" of these attorneys should estop them from claiming the benefits of the *Noerr-Pennington* doctrine, it is submitted.  Otherwise, the Plaintiff is never going to get his day in court, *his first day in court*, and the opportunity to have a court of competent jurisdiction declare who was the lawful successor trustee of the Samuel Rupert Trust, if anybody, between October 12, 2008 (when Samuel died), and March 12, 2010 (when Irene died).

The Plaintiff was disinherited in Oregon, from his mother's overfunded Trust, for continuing to pursue his claim he became the Successor Trustee, of the Samuel Rupert Trust, on July 8, 2009.  The Oregon courts declined to address the issue, (ECF 48, p. 42-43, Ex 32, General Judgment), in the proceedings where Plaintiff appeared, and tried to raise the issue, as an In Pro Per litigant, in his capacity as a remainder beneficiary of the Trust, but not as the Successor Trustee (who would have to appear through counsel).

Having been disinherited over the issue, the Plaintiff should at least get his first full an dfair day in court upon the issue.  The application of the *Noerr-Pennington* doctrine, in the instant case, does not further its objectives, because it tramples upon Plaintiff's 1st Amendment Petition rights, by depriving him of his first full and fair day in court, concerning his late father's Michigan Trust, and the trusteeship over the Trust he alleges he established in

California, on July 8, 2009.

        **E.**    **Jurisdiction Over A Partner And A Partnership Have To Be Separately Determined, And Defendant Zusman's Contacts With Oregon Are Not Sufficient, Pursuant To *Sher v. Johnson,* 911 F.2d 1357 (9th Cir. 1990), To Allow Oregon To Exercise Personal Jurisdiction Over Him, So The Court Wrongly Determined: (1) 18 U.S.C. § 1965(b) Was Inapplicable; and, (2) The Jurisdictional Contacts Have To Be Evaluated Under The 14th Amendment (Contacts With The State Of California), Instead Of Under The 5th Amendment (Contacts With The United States)**

       In ruling that Plaintiff could not rely upon the provisions of 18 U.S.C. § 1965(b), the

Order Granting Motions To Dismiss states the following, on page 21:

> "Despite Plaintiff's claims that no other district will have jurisdiction over Zusman, the FAC states that he was a member of a conspiracy with six Oregon defendants, *see* FAC ¶ 8, and that his involvement in the conspiracy was his representation of two Oregon residents in connection with an estate established under Oregon law, *id.* Moreover, Zusman's law firm has an office in Oregon. *See* Downes Reply at 4. Accordingly, the Court finds that an Oregon court may have jurisdiction over all of the RICO defendants. As such, jurisdiction under 18 U.S.C. § 1965(b) is inappropriate, and these motions must turn on traditional personal jurisdiction analysis."
> (ECF 100, p. 21:12-18)

       There are 3 problems with the above finding by the Court.

       *First,* the above finding does not represent a fair reading of Paragraph 8, of the FAC,

wherein the FAC identifies Defendant Zusman, and states the following:

> "8.     Defendant Edward S. Zusman ("Zusman"), is a resident of California and an attorney-at-law licensed to practice in California. Zusman represented both defendant Susan and the late Irene E. Rupert, in their individual capacities, in the federal tort diversity action that plaintiff William commenced on June 20, 2009, as USDC NDCA Case No.: 5:09-cv-02758 JF (RS). As part of this representation, he participated in a successful motion to dismiss, under FRCP 12(b)(2), which was largely premised upon the false claims that Irene E. Rupert had never owned any property located in California, and none of Samuel J. Rupert's estate consisted of any property located in California. A knowingly false Declaration of Irene E. Rupert was procured by Mr. Zusman, falsely stating there were no relevant assets located in California, and this false Declaration was served by mail and electronically filed in the case on November 4, 2009. Exercise of personal jurisdiction over defendant Zusman is reasonable and proper in this District because defendant Zusman's actions had significant effects in

Plaintiff's Motion For Leave To File Motion For Reconsideration Of Order Granting Motions To Dismiss [Case No. 5:12-cv-05292 LHK (HRL)]

California, and because some of the wrongful actions that damaged plaintiff took place within the State of California."
(ECF 3; FAC, ¶ 8,  p. 4:5-20).

Paragraph 8 makes no reference to "an estate established under Oregon law", and in fact, elsewhere in the FAC, the Plaintiff makes it clear that there were no formal probate proceedings that were initiated by Susan in Oregon (See FAC, ¶ 77, p. 40:18-19).  It appears the Court merely adopted the argument presented by Defendants Downes and Schulte, practically word for word, without bothering to actually read Paragraph 8 of the FAC.

Instead of assuming the truth of the factual allegations of the FAC, the Court apparently assumed the truth of the arguments presented by the Defendants.  However, the Defendants materially misrepresented the allegations of the FAC[8] to the Court.

*Second,* the Court went outside the pleadings, and relied upon the Exhibit 1 attached to the Reply Memorandum filed by Defendants Downes and Schulte, on December 20, 2012, (ECF 39), wherein on pages 3- 4 of the Reply the following is stated:

"For example, Plaintiff has pled that Zusman is a conspirator with six Oregon defendants and that the basis for Zusman's involvement in the conspiracy is his representation of an Oregon client (Irene Rupert) regarding an estate established under Oregon law.  (FAC, ¶ 8)  Plaintiff also excludes from his complaint the fact that Zusman's firm (in which he is a principal), has an Oregon office. (fn. 1)."
(ECF 39, p. 3:27-4:3)

The footnote 1 states the following:

"Attached hereto as Exhibit 1 is a screen shot from MZC's website demonstrating that the firm has an Oregon presence."
(ECF 39; p. 4:28)

---

[8]  This is the same unfortunate, for Plaintiff, but understandable procedure that was utilized by Judge Fogel, when he disregarded the Plaintiff's detailed factual allegations in the FAC, in Paragraph 93 (ECF 18-2; p. 15:1-13; *Rupert I* FAC, ¶ 93), in favor of the common misrepresentations made by a group of attorneys-at-law, in support of their FRCP 12(b)(2) Motions to Dismiss.  Although lawyers are supposed to tell the truth, especially to judges, they sometimes do not, as this case, and *Rupert I,* seem to indicate.

Unfortunately, there appears to have been a manifest failure by the Court to consider the Plaintiff's "Objection To Reply Evidence Submitted By Defendant Downes", which was timely filed, under NDCA L.R. 7-3(d)(1), on December 26, 2012 (ECF 44), wherein the Plaintiff objected to consideration of the Exhibit 1 attached to the Reply, and pointed out that it was not dispositive in any event, because personal jurisdiction over a partnership does not necessarily create personal jurisdiction over an individual partner. (ECF 44; p. 3:2-11).

*Third,* the case of *Sher v. Johnson,* 911 F.2d 1357 (9th Cir. 1990) confirms that Plaintiff was correct in pointing out that personal jurisdiction over a partnership does not automatically create personal jurisdiction over an individual partner. In *Sher,* the court found personal jurisdiction over a partnership, but not the individual partners (*Id.* at 1365-66), even though there had been some contact between two of the partners and the forum state.

Similarly, California case law also confirms that personal jurisdiction over partnerships and individual partners has to be separately determined. (See *Evans v. Galardi,* (1976) 16 Cal.3d 300, 308-09, 128 Cal.Rptr. 25, 546 P.2d 313.)

Reconsideration appears to be justified, so the Court can act upon the Plaintiff's Objection to the Reply Evidence offered by Defendant Downes (ECF 44), and revisit the issue of the applicability of 18 U.S.C. § 1965(b), in that there is no reasonable basis to presume that Defendant Zusman, licensed in California (FAC ¶ 8), has any affiliation with the branch location in Portland, Oregon.

The proper application of 18 U.S.C. § 1965(b) is crucially important to the Plaintiff, and he seeks leave to file a motion for reconsideration, so the Court can revisit this issue, with the guidance that is provided by the cases of *Sher v. Johnson,* 911 F.2d 1357 (9th Cir. 1990) and *Evans v. Galardi,* (1976) 16 Cal.3d 300, 308-09, 128 Cal.Rptr. 25, 546 P.2d 313.

Under these cases, when Defendant Zusman was sought out by Oregon residents, to represent and defend them in civil proceedings within California, brought by a resident of California, concerning the Michigan Trust he was administering in California, for intentional interference with economic relations, conspiracy to interfere, and declaratory relief, Defendant Zusman's representational activities, in California, do not establish sufficient contacts with Oregon, to allow Oregon to exercise personal jurisdiction over him, with regards to an action that arises from his California representation of the Oregon residents, in an action alleging interference with a trusteeship in California, it is respectfully submitted.

      **F.**      **The Purported Mootness Of The Plaintiff's Motion For Leave To File Second Amended & Supplemental Complaint Should Also Be Reconsidered, Based Upon Plaintiff's Showing That He Became The Successor Trustee On July 8, 2009; Such That All Subsequent Declarations And Representations To Federal Judges, Asserting The Late Irene Rupert Was The Successor Trustee, Have Been Objectively Baseless, And Motivated By The Desire To Interfere With Plaintiff's Trusteeship Rights, For The Purpose Of Assisting Susan In Her Fraudulent Schemes**

Although the Plaintiff certainly appreciates the fact that the Court graciously granted him leave to amend, that act alone does not completely moot all aspects of the Plaintiff's Motion For Leave To File Second Amended & Supplemental Complaint.  (ECF 78).

The Plaintiff's motion which was denied as moot (ECF 100; p. 31:1-3), more clearly sets forth and explains that the location of trust assets is not the most important misrepresentation that was made to Judge Fogel (or to the Court in the instant case).  Rather, the "Big Lie", which Plaintiff has been diligently trying to dispel through appropriate legal proceedings since June 22, 2009, is the "Big Lie" first told by Defendant Downes in the letter he wired and mailed to Plaintiff in California on June 10, 2009 (FAC; ¶ 59) (ECF 30, Ex 1; p. 9-10), wherein he falsely

Plaintiff's Motion For Leave To File Motion For Reconsideration Of Order Granting
Motions To Dismiss [Case No. 5:12-cv-05292 LHK (HRL)]

stated that the late Irene Rupert had magically become the Successor Trustee of the Samuel Rupert Trust, along with other material misrepresentations.

The Plaintiff's FAC unfortunately downplays the "Big Lie" and puts too much emphasis on the trust asset location issue, which has been harder for the Plaintiff to prove, because the defendants have the proof he needs (and jurisdictional discovery has not been allowed).

However, with regards to the "Big Lie"; Plaintiff has submitted proof to support his allegation that he became the Successor Trustee of the Samuel Rupert Trust on July 8, 2009 (FAC; ¶ 62) (ECF 48; p. 13-17; Ex 29, Notice of Acceptance, 07/06/09). However, none of the Defendants have addressed this issue, by presenting any reasoned argument, or any evidence, to support the claim that the late Irene Rupert was the Successor Trustee of the Samuel Rupert Trust, on January 8, 2010, as Defendant Zusman argued to Judge Fogel.[9]

Significantly, this is the most important, and damaging, material misrepresentation that was made to Judge Fogel, by the MZC Defendants, and Defendants Downes and Schulte, in November of 2009 and January of 2010 - the false claim that Plaintiff was not the Successor Trustee of the Samuel Rupert Trust, when they knew full well that the late Irene Rupert rejected her nomination for the first 7 months (when Susan was intermeddling as a trustee *de son tort*) (ECF 58; p. 82-83; Ex 48), and never accepted thereafter, by either notice or actual performance.

---

[9]  Defendant Zusman stated the following to Judge Fogel, at the hearing on January 8, 2010:
      "Irene Rupert is still alive.  And she is still the trustee of the two trusts with all the
       rights, powers and authorities of a person in that position."
      (ECF 58; Ex 41; Reporter's Transcript; p. 21:18-21)
However, Defendant Zusman's claim is also contradicted by the June 10, 2009 letter from
Defendant Downes (FAC, ¶¶ 59-60) (ECF 30, p. 9, Ex 1), wherein Defendant Downes states:
      "She has amended her trust to name your sister Susan Bond as trustee of her trust,"

Plaintiff's Motion For Leave To File Motion For Reconsideration Of Order Granting
Motions To Dismiss [Case No. 5:12-cv-05292 LHK (HRL)]

Because the [Proposed] Second Amended & Supplemental Complaint more clearly explains the full nature of the material misrepresentations that were made to Judge Fogel, the Court should revisit the "Sham" litigation exception issue, regarding this issue where Plaintiff has presented evidence to support his allegations, but the Defendants refuse to discuss the matter, or even explain their position, as to how and when the late Irene Rupert accepted her nomination to become the Successor Trustee of the Samuel Rupert Trust.

Every attorney who told Judge Fogel that the late Irene Rupert was the Successor Trustee of the Samuel Rupert Trust (without a scintilla of evidence), is guilty of obstruction of justice. The same goes for every attorney who has repeated the "Big Lie" in the instant case, by representing to the Honorable Lucy H. Koh that the late Irene Rupert had been the Successor Trustee of the Samuel Rupert Trust.

Plaintiff's request for permission to file a supplemental complaint should be revisited, it is respectfully submitted.

The [Proposed] Second Amended & Supplemental Complaint also sought permission to add another federal question cause of action, under 42 U.S.C. § 1985(2), for conspiracy to violate Plaintiff's civil rights (based upon Plaintiffs membership in 2 disfavored classes, in pro per litigants, and persons on the California vexatious litigant list), through the manner in which the Oregon judgments were procured by the Cartwright Defendants, and Susan and James (*ex parte* communication, manufactured evidence, Bum's Rush Ambush trials, and both intrinsic and extrinsic fraud).

The objective of this new federal question action includes obtaining a declaration that the Oregon judgments are not entitled to full faith and credit (especially the judgments concerning the Samuel Rupert Trust, where personal jurisdiction over the Plaintiff in his

Plaintiff's Motion For Leave To File Motion For Reconsideration Of Order Granting
Motions To Dismiss [Case No. 5:12-cv-05292 LHK (HRL)]

capacity as successor trustee was never obtained, because he never appeared through counsel, as shown by the face of the judgment. (ECF 48, p. 42-43; Ex 32).

Plaintiff's attacks on these state court judgments, on grounds amounting to extrinsic fraud, is not barred by the *Rooker-Feldman* doctrine, pursuant to cases such as *Kougasian v. TMSL, Inc.,* 359 F.3d 1136, 1140-41 (9th Cir. 2004)[10]; *Maldonado v. Harris,* 370 F.3d 945, 950 (9th Cir. 2004); *Noel v. Hall,* 341 F.3d 1148, 1164 (9th Cir. 2003); and *Bell v. City of Boise,* 709 F.3d 890, 897 (9th Cir. 2013), and it should be allowed in the instant case.

Leave to file a motion for reconsideration should be granted, based upon the manifest failure by the Court to consider Plaintiff's request to be allowed to add another federal question action, vindicating his civil rights and invalidating the Oregon judgments that were obtained by extrinsic fraud.

### G. The Decision To Deny Jurisdictional Discovery Should Also Be Reconsidered, Because Much Like Anti-Trust Cases, The Proof Lies Largely In The Hands Of The Defendants, As Detailed In The ESI Request Plaintiff Provided To Defendants In July, 2013

The Court's Order Granting Motions To Dismiss ruled against the Plaintiff on a number of issues, because it determined that sufficient support had not been shown.  Pursuant to *Kearney v. Foley & Lardner, LLP,* 582 F. 3d 896 (9th Cir. 2009), this appears to have been a mistake. ("At the motion to dismiss stage, it was error to require such support." *Id.* at 906.)

Moreover, Plaintiff sought permission to engage in jurisdictional discovery, for the purpose of establishing were the trust assets were located, and, crucially, for the purpose of

---

[10]  The *Kougasian* Court explained this as follows:
  "Extrinsic fraud on a court is, by definition, not an error by that court, it is, rather, a wrongful act committed by the party or parties who engaged in the fraud.  *Rooker-Feldman* therefore does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud."  (*Id.* at 1141)

exposing Susan's lack of credibility, for her statement under oath that the Charles Schwab

Institutional accounts in question "were opened in Oregon by Irene Rupert" (ECF 26, p. 2:17-

19).  If she isn't telling more lies to another judge, a Federal District Court Judge, she should

have the means at her disposal, to provide documentation that shows she has been truthful.  If

she cannot produce such documentation, she has been guilty of obstruction of justice, within the

instant case, and should be treated accordingly.

Unfortunately, for Plaintiff, the Court denied the request for jurisdictional discovery.

(ECF 100; p. 25:18-28, fn. 9).  However, the denial was based upon the mistaken belief that the

location of the trust assets was not a significant jurisdictional fact.  Now that the case of *Hanson

v. Denckla,* 357 U.S. 235, 249 (1958) has been brought to the Courts attention, the request for

jurisdictional discovery should be revisited, it is submitted.

Additionally, the 9th Circuit has noted that "there is a policy disfavoring the pre-trial

dismissal of antitrust actions because the proof lies largely in the hands of the defendants."

(*Ernest W. Hahn, Inc. v. Codding,* 615 F.2d 830.835 (9th Cir. 1980) (citing *Poller v. Columbia

Broadcasting,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)).

The allegations of the FAC include allegations concerning stonewall tactics (FAC; ¶

102), by Susan and the other defendants, such that they also have the proof the Plaintiff needs

to obtain to show their culpability for the damages they inflicted upon his trusteeship rights

and his inheritance interests.

As such, jurisdictional discovery would appear to be justified in the instant case.

Moreover, in early July, 2013, the Plaintiff sent a notice to the defendants with regards

to Electronically Stored Information ("ESI") in their possession which the Plaintiff was aware

of, which they should be sure to retain, and not destroy.  A true and correct copy of this ESI

Plaintiff's Motion For Leave To File Motion For Reconsideration Of Order Granting
Motions To Dismiss [Case No. 5:12-cv-05292 LHK (HRL)]

Notice is attached hereto as Exhibit 3.

Plaintiff seeks leave to file a motion for reconsideration, so the court can revisit the issue of jurisdictional discovery, and potentially grant Plaintiff permission to engage in jurisdictional discovery, from Susan, and also for the purpose of obtaining the Emails listed in the ESI Notice (Exhibit 3, attached hereto), from Defendant Whitman.

**III.   CONCLUSION**

Based upon all of the matters stated above, the Plaintiff should be allowed to file a motion for reconsideration, upon whatever terms and schedule the Court might deem appropriate, in the exercise of its considerable discretion (including construing this motion for leave as a sufficient motion for reconsideration, and directing the Defendants to file their opposition memorandums.

Reconsideration is also in order, so that the Plaintiff's FAC may be viewed in a fresh light, without the stigma that naturally attaches, and undoubtedly influences the Court, when it is evaluating a pleading from a litigant who the Court believes is listed on the California Judicial Council's Vexatious Litigant List.  Although the Plaintiff was removed from the List before these motions were to be heard on July 18, 2013, when the hearing date was vacated by the Court, Plaintiff lost the opportunity to inform the Court that his name was one of the few, and possibly the first, to be removed from the California Vexatious Litigant List.

Based upon the totality of the circumstances set forth in this Motion For Leave To File Motion For Reconsideration, it should be granted, it is respectfully submitted.

Dated: September 23, 2013

        __/s/___William Rupert_____
           William Rupert
           Plaintiff  Pro Se

Plaintiff's Motion For Leave To File Motion For Reconsideration Of Order Granting Motions To Dismiss [Case No. 5:12-cv-05292 LHK (HRL)]

1  William Rupert
   P.O. Box 66403
2  Scotts Valley, CA 95067-6403
   (831) 336-9520
3
   Plaintiff
4  In Pro Per

5

6

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                   FOR THE COUNTY OF SANTA CRUZ

9                        Santa Cruz Branch

10

11  WILLIAM RUPERT, an individual,        )  Case No.: 117792
                                          )
12              Plaintiff,                )  [Proposed] Order Vacating Pre-Filing Order
            vs.                           )  And Ordering Removal Of Name From The
13                                        )  Judicial Council's List Of Vexatious Litigants
                                          )  [CCP § 391.8(c)]
14  LELAND & MARIAN ZEIDLER, as trustees  )
    of the Zeidler Living Trust (UTA dated 1-25- )  Date:    May 24, 2013
15  85),; and Doing Business as LeMarCo, Old )  Time:    8:30 a.m.
    Sash Mill, Sash Mill, Farmer's Exchange, Izzy )  Dept.:   4
16  Liebowitz Co., Inc., California Living Annex, )  Judge:  Hon. Rebecca Connolly
    Potrero Plaza; and DOES 1 to 20, inclusive, )
17                                        )  Date filed:  May 1, 1991
              Defendants.                 )  Trial date:  none
18                                        )
                                          )
19                                        )

20        GOOD CAUSE having been shown, the Court ORDERS that the Vexatious Litigant Pre-

21  Filing Order against Plaintiff William Rupert, filed August 2, 1991, is VACATED, and his name

22  is hereby ORDERED removed from the Judicial Council's list of vexatious litigants.

23  Dated: May 27, 2013

24
                              The Honorable Robert B. Atack
25                            Santa Cruz County Superior Court Judge
                                           1
          [Proposed] Order Vacating Pre-Filing Order And Ordering Removal of Name
            From The Judicial Council List of Vexatious Litigants  [No.: 117792]
                                                        EXHIBIT 1
                                                        Page  1

VEXATIOUS LITIGANT LIST
Prepared and Maintained by the Administrative Office of the Courts
From Prefiling Orders Received from California Courts
(Orders prohibiting future filings entered through September 3, 2013)

| LAST NAME | FIRST NAME | MIDDLE | COURT | CASE NO. | DATE | COMMENTS |
|---|---|---|---|---|---|---|
| RUDDER | Wayne Ricky | Elson | Los Angeles Superior Court | BC068964 | 04/14/93 | |
| RUDDLESDIN | Bruce | | Contra Costa Superior Court | C1102322 | 01/20/12 | |
| RUSSELL | Eunice | | Los Angeles Superior Court | BC063674 | 01/22/93 | |
| RUSSELL | Thomas | | San Diego Superior Court | GIC859968 | 04/04/06 | |
| RUTHER | L. | | San Francisco Superior Court | 937699 | 06/05/92 | |
| SAAJ | Darrell | E. | Los Angeles Municipal Court | 95C18837 | 03/28/96 | |
| SAIGH | Terry M. | | Napa Superior Court | 2656624 | 09/12/11 | |
| SAKENTOOSI | Hashem | | San Diego Superior Court | 675007 | 07/05/94 | |
| SALDANA | Armando | | Santa Clara Superior Court | DC98360556 | 03/18/99 | |
| SALZMAN | Lawrence | | Orange County Superior Court | 05CC07899 | 09/19/05 | |
| SAMPLE | Felita | | San Francisco Superior Court | CGC12523705 | 03/06/13 | |
| SANCHEZ (SIGALA) | Gloria | | Imperial Superior Court | 88S27 | 03/18/05 | |
| SAND SHIP COMPANY | | | Court of Appeal, 2nd Dist, Div 5 | B089723 | 11/28/95 | |
| SANDERS | Donald | R. | San Francisco Superior Court | 259017 | 05/07/03 | |
| SANDERS | Phillip | | Fresno Superior Court | 11CECG00976 | 06/08/11 | |
| SANDERS (CDCR #H80090) | Phillip | C. | Imperial Superior Court | ECU02742 | 04/17/06 | |
| SANDOVAL | Grace | L. | San Diego Superior Court | IC867785 | 09/28/06 | |
| SANDOVAL | Grace | L. | San Diego Superior Court | IC867786 | 09/28/06 | |
| SANDOVAL | Grace | L. | San Diego Superior Court | IC870765 | 09/28/06 | |
| SANDOVAL | Grace | L. | San Diego Superior Court | IC868173 | 09/28/06 | |
| SANTOS | Shonda | | Santa Clara Superior Court | 106FL132442/DEPT74 | 05/01/12 | |
| SANTOS | Sylvia | | San Diego Superior Court | 37201100084130CUFRCTL | 09/20/11 | |
| SARASUA | Joseph | James | San Mateo Superior Court | CIV477735 | 01/16/09 | |
| SARGENT | Matt | | Santa Clara Superior Court | 107CV085893 | 02/19/08 | |
| SAUNDERS | Jason | | Los Angeles Superior Court | MC022017 | 03/17/11 | |
| SAY & SAY, INC. | | | Court of Appeal, 2nd Dist, Div 5 | B076762 | 12/16/93 | |
| SCALISI | Thomas | | San Benardino Superior Court | VFLVS035658 | 07/14/11 | |
| SCHAEFER | J. | Michael | San Diego Municipal Court | 585961 | 02/04/97 | |
| SCHIEBERL | Jan | Marie | Contra Costa Superior Court | CIVMSC0903516 | 11/10/10 | |
| SCHMIDT | Kathryn | Michelle | Orange County Superior Court | 04D004515 | 02/11/09 | |
| SCHOOLER | Jane | | San Diego Superior Court | 3720080015081 7PRTRNC | 05/14/13 | Also see Katherine Schooler Kerns |
| SCHOOLER | Jane | | San Diego Superior Court | 37200700101775PRTRCTL | 05/14/13 | Also see Katherine Schooler Kerns |
| SCONIERS | Janet | | Fresno Superior Court | 6433106 | 01/04/00 | |
| SCOTT | Manning | | Sacramento Superior Court | 01AS03815 | 12/14/01 | |
| SCOTT | Manning | R. | Sacramento Superior Court | 01AS03815 | 12/14/01 | |
| SCOTT | Ralph | | Sacramento Superior Court | 01AS03815 | 12/14/01 | |

Vexatious Litigant List
BOLD = Added names

41

9/3/2013

EXHIBIT 2
Page 1

CHART OF ELECTRONICALLY STORED INFORMATION ("ESI"),

(27 KNOWN EMAIL TRANSMISSIONS), WHICH THE DEFENDANTS HAVE A DUTY TO PRESERVE

USDC NDCA Case No. 5:12-cv-05292 LHK (HRL) - William Rupert v. Susan Bond, et al.

| DATE OF EMAIL | SENDER OF EMAIL | RECIPIENT OF EMAIL |
|---|---|---|
| March 15, 2010 | Matthew Whitman | Gile R. Downes |
| March 24, 2010 | Matthew Whitman | Gile R. Downes |
| April 5, 2010 | Matthew Whitman | Gile R. Downes |
| April 5, 2010 | Matthew Whitman | Susan Bond |
| April 5, 2010 | Matthew Whitman | Edward S. Zusman |
| April 5, 2010 | Gile R. Downes | Matthew Whitman |
| April 6, 2010 | Matthew Whitman | Susan Bond |
| April 6, 2010 | Susan Bond | Matthew Whitman |
| April 8, 2010 | Matthew Whitman | Susan Bond |
| April 8, 2010 | Susan Bond | Matthew Whitman |
| April 15, 2010 | Matthew Whitman | Susan Bond |
| April 15, 2010 | Matthew Whitman | Edward S. Zusman |
| April 15, 2010 | Susan Bond | Matthew Whitman |
| May 18, 2010 | Matthew Whitman | Susan Bond |
| June 10, 2010 | Patti McIhagga, legal assistant for Gile R. Downes | Matthew Whitman |
| July 6, 2010 | Matthew Whitman | Edward S. Zusman |
| July 7, 2010 | Matthew Whitman | Susan Bond |
| July 7, 2010 | Matthew Whitman | Gile R. Downes |
| August 4, 2010 | Matthew Whitman | Susan Bond |
| August 4, 2010 | Susan Bond | Matthew Whitman |
| September 8, 2010 | Matthew Whitman | Dave Williams, attorney for Gile R. Downes |
| September 8, 2010 | Dave Williams, attorney for Gile R. Downes | Matthew Whitman |
| October 8, 2010 | Matthew Whitman | Susan Bond |
| October 19, 2010 | Matthew Whitman | Gile R. Downes |
| October 19, 2010 | Matthew Whitman | Dave Williams, attorney for Gile R. Downes |
| October 19, 2010 | Gile R. Downes | Matthew Whitman |
| October 19, 2010 | Dave Williams, attorney for Gile R. Downes | Matthew Whitman |

EXHIBIT 3
Page 1