WILLIAM RUPERT
P.O. Box 66403
Scotts Valley, CA 95067-6403
Phone:   (831) 336-9520
Fax:       (831) 336-9528
Email:   emfwtr@comcast.net

Plaintiff
Pro Se

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

WILLIAM RUPERT,

                Plaintiff,

      vs.

SUSAN BOND; GILE R. DOWNES;
EDWARD S. ZUSMAN;  MATTHEW
WHITMAN; MICHELLE JOHANSSON;
JAMES RUPERT; SCHULTE, ANDERSON,
DOWNES, ARONSON & BITTNER, P.C., an
Oregon Professional Corporation; MARKUN
ZUSMAN COMPTON, LLP, a Limited Liability
Partnership Headquartered in California; ;
CARTWRIGHT WHITMAN BAER PC, an
Oregon Professional Corporation; and
DOES 1 to 20,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No.: 5:12-cv-05292 LHK (HRL)**
_____

***CORRECTED*  SECOND AMENDED
COMPLAINT**

1

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.    Jurisdiction . . . . . . . . . 1
II.   Venue . . . . . . . . . . 2
III.  Intradistrict Assignment . . . . . . . 2
IV.  Parties and Relevant Non-Parties . . . . . 2
    A.    Plaintiff . . . . . . . . 2
    B.    RICO Defendants . . . . . . . 3
    C.    Remaining Defendants . . . . . . 8
    D.    Non-Party Co-Conspirators, Or Aiders And Abetters . . 11
V.   Introduction and Summary Of Civil RICO Stages 1-5 . . . 24
VI.  Statement of Facts . . . . . . . 33
VII. Federal Question Claims For Relief . . . . . 76
    A.    1st Claim - (Violations of RICO, 18 U.S.C. § 1962(c)) . . 76
        Stage 1 -  Fraud and Deceit, Misappropriation of Trust Assets,
                   Interference With Plaintiff's Trusteeship Interest,
                   Extrinsic Fraud By Fiduciary (Refusal To Account)
                   (RICO Defendant Susan)
                   (starting Oct. 13, 2008, and continuing) . . 80
        Stage 2 -  Interference With Plaintiff's Trusteeship And
                   Expected Inheritance Interests
                   (RICO Defendants Susan And Downes)
                   (starting May 20, 2009, and continuing) . . 82
        Stage 3 -  Obstruction Of Justice And Extrinsic Fraud By
                   Fiduciary In *Rupert I,* Before Judge Fogel
                   (starting Nov. 4, 2009, and continuing)
                   (RICO Defendant Susan, Downes And Zusman). . 84
        Stage 4 -  Abuse Of Process And Extrinsic Fraud By Fiduciary
                   During Oregon Trust Proceedings For Limited
                   Declaratory Judgments
                   (RICO Defendant Susan, Downes, Zusman,
                   Whitman and Johansson)
                   (starting March 15, 2010, and continuing) . . 86
        Stage 5 -  Abuse Of Process (Oregon's), To Levy Upon Funds
                   Known To Be Located In California, Or Nebraska,
                   Contrary To The Laws Of Those States
                   (RICO Defendant Susan, Whitman And Johansson)
                   (starting May 19, 2011, and continuing) . . 87

        The RICO Patterns and Predicate Acts. . . . 88
        The Continuity of the Various RICO Enterprises. . . 90
        Damage To Plaintiff's Property And Economic Interests . 92

    B.    2nd Claim - (Conspiracy to Violate RICO, 18 U.S.C. § 1962(d)) . 92

**TABLE OF CONTENTS (Continued)**

VIII.   Pendent State Law Claims For Relief .     .     .     .     .     .     99

       A.     3rd Claim - (Misappropriation/Conversion of Trust Assets)  .     .     99
       B.     4th Claim - (Intentional Interference With Expected Inheritance)   .     102
       C.     5th Claim - (Violations of The Oregon Racketeering Influenced
                And Corrupt Organizations Act) ("ORICO")   .     .     103
       D.     6th Claim - (Conspiracy, to misappropriate, to abuse, to interfere,
                And to Violate ORICO) .     .     .     .     .     105

IX.     Prayer For Relief     .     .     .     .     .     .     .     .     107


Appendix A – RICO Predicate Acts Chart
            (RICO Stages 1-5; 25 RICO Predicate Acts Events;
            54 Individual RICO Predicate Acts)

Appendix B – ORICO Predicate Acts Chart
            (ORICO Stages 1-5; 9 ORICO Predicate Acts Events;
            28 Individual ORICO Predicate Acts)

Plaintiff William Rupert ("William") for his Second Amended Complaint, alleges:

## I.     Jurisdiction.

1.     This Court has subject matter jurisdiction over plaintiff William's claims under both 28 U.S.C. §§ 1331 (federal question), and 1332 (diversity). The federal question claims arise under 18 U.S.C. §§ 1964(c)(d) & 1965(b)[1], of the Racketeering Influenced and Corrupt Organizations Act (RICO). Plaintiff's William' state law claims (misappropriation/ conversion of trust assets, intentional interference with expected inheritance (IIEI), violations of ORICO, and conspiracy), arise out of the same case or controversy as his federal law claims, as all claims in this action arise out of a common nucleus of operative facts, concerning the trusteeships, and the administration of trust assets, of the late Samuel and Irene Rupert, which were valued at nearly $900,000 in 2009. Samuel and Irene Rupert died in Oregon in 2008 and 2010, but neither of them had their wills admitted to probate, in the State of Oregon, or in any other state. No state proceedings have been conducted where any asset inventories, or financial statements, or accountings were required, or submitted to a court, or approved by a court. No state court has assumed and exercised *in rem* jurisdiction over any trust assets belonging to the Samuel Rupert Trust. Accordingly, the probate exception to federal jurisdiction is inapplicable in this case. Thus, this Court also has supplemental jurisdiction over plaintiff William's state law claims under 28 U.S.C. § 1367.

---

[1] There is no other district that would have personal jurisdiction over all of the individual RICO Defendants, and co-conspirators, who reside in the States of California (1 RICO Defendant), Oregon (4 RICO Defendants), and Michigan (1 RICO Conspiracy Defendant). In particular, Oregon would not have jurisdiction over Defendant Zusman, as a California attorney who was sought out in California, by clients from Oregon (Defendant Susan Bond and the late Irene Rupert), for representation in proceedings in the United States District Court for the Northern District of California, which arose out of the Plaintiff's trusteeship activities, in California, which the Plaintiff was seeking to gain legal recognition of, through the declaratory relief remedy he sought, in his capacity as a remainder beneficiary. (See *Sher v. Johnson,* 911 F.2d 1357 (1990).

1

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

## II.      Venue.

2.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2), and under 18 U.S.C. § 1965(b), as some of the defendants reside or do business in this Northern District of California (such as Defendant Zusman), a substantial amount of the acts and omissions giving rise to this lawsuit took place in the Northern District of California, and actions commenced in other districts and States caused detrimental effects upon the plaintiff's vested and prospective property and economic interests, including his trusteeship rights in California, which were felt within this Northern District of California.

### III.      Intradistrict Assignment.

3.      This lawsuit should be assigned to the San Jose Division of this Court because a substantial part of the events or omissions which give rise to this lawsuit occurred in Santa Cruz County, where plaintiff William Rupert was targeted, and suffered his damages, with regards to his remainder beneficiary, and/or trusteeship, interests, in and under the Samuel J. Rupert Trust, u/a/d 11/01/95, as Amended 01/26/04, and in and under the Irene E. Rupert Trust, u/a/d 11/01/95, as Amended 01/26/04.

### IV.      Parties and Relevant Non-Parties

#### A.      Plaintiff

4.      Plaintiff **William Rupert** ("William"), is a resident of the town of Ben Lomond, in Santa Cruz County, California and is a 66 year old, semi-retired carpenter, and a former independent paralegal, who is the second born, and middle child, of Samuel J. Rupert, who died on October 12, 2008, and Irene E. Rupert, who died on March 12, 2010.  Plaintiff William was born and raised in Michigan, but moved to California in 1980, and has continually resided in California ever since.  Plaintiff  William is one of the three Remainder Beneficiaries, of the

Samuel J. Rupert Trust u/a/d November 1, 1995, as Amended January 26, 2004, in Michigan.

Plaintiff  William was also one of the three Remainder Beneficiaries, of the Irene E. Rupert

Trust u/a/d November 1, 1995, as Amended January 26, 2004, in Michigan.  Samuel and Irene

Rupert's original Michigan estate plans were executed in 1995 and amended in 2004.  These

Michigan estate plans were the operative estate plans when Samuel Rupert died, and when the

instant sibling rivalry family feud erupted, on or about May 12, 2009.  Both Samuel and Irene

Rupert amended their Michigan estate plans on January 26, 2004, to state they wanted William,

as a resident of California, to be their sole successor trustee, and sole personal representative,

with defendant Susan (in Oregon), their second choice, and defendant James (in Michigan),

their third choice (when it became time for one of the adult children to handle their financial

affairs).   Plaintiff William effectively became the Successor Trustee of the Samuel Rupert Trust

on July 8, 2009.  However, this action is not brought by Plaintiff, as the Successor Trustee

(which would require him to retain an attorney-at-law, to make a lawful appearance).  Rather,

Plaintiff is appearing Pro Se as a remainder beneficiary, to allege misconduct by other

remainder beneficiaries, Defendants Susan Bond and James Rupert (as assisted by various

errant attorneys), which has resulted in damages to both the Samuel Rupert Trust, and the

Plaintiff's remainder interest therein.  These types of damages, through fiduciary misconduct

that damages an irrevocable Trust, can be asserted by either the Trustee, or by a remainder

beneficiary (as there is a community of interests, in achieving the same outcome).  In this case,

at this time, Plaintiff choses to only appear Pro Se, in his capacity as a remainder beneficiary, of

the Samuel Rupert Trust (so as to minimize the litigation expenses which are incurred).

### B.      RICO Defendants

5.       The Defendants listed in paragraphs 6 through 10 are the errant trustee *de son*

*tort,* and the 4 lawyers (3 from Oregon and 1 from California), who have subsequently participated in fraudulent schemes to cover up and conceal the breaches of trust, the failure to account, and the unjust enrichment of the errant trustee *de son tort.*  These individuals have conspired to engage in a pattern of racketeering activity, have each committed numerous wrongful acts as part of their scheme to defraud, extort, and damage Plaintiff William's vested trusteeship interests in the Samuel Rupert Trust (and expected inheritance interests), and have each participated in the operation or management of the overlapping civil RICO Enterprises described herein.  These 5 individual Defendants shall be referred to herein, collectively, as the "**RICO Defendants**".

6.     Defendant **Susan Bond** ("Susan"), is a resident of Portland, Oregon, and a 69 year old designer/renovator/homemaker, who is the first born child of the late Samuel J. Rupert and the late Irene E. Rupert.  Liability is sought against Susan, as a faithless fiduciary, based upon her assumption of fiduciary responsibilities as a trustee, for both trusts, and then her wrongful misappropriation of trust assets, and her self-dealing for personal gain, which was followed by her stonewall and cover-up schemes that have included obstruction of justice and abuse of process in California and Oregon, and extrinsic frauds (by a fiduciary, and by Officer's of the Court), on the courts, in California and Oregon.   Exercise of personal jurisdiction over Defendant Susan is reasonable and proper in this District, under either the "ends of justice" provisions of 18 U.S.C. § 1965(b), or because Defendant Susan's actions and inactions had significant effects in California, targeted the Plaintiff in California, and because some of the wrongful actions or inactions that damaged Plaintiff's property interests and economic relations, took place within the State of California, as will be further explained below.

7.     Defendant **Gile R. Downes** ("Downes"), is a resident of Portland, Oregon and an

attorney at law licensed to practice in the State of Oregon.  He is a well-respected attorney, and

considered an expert in estate planning matters.  He came up with the "Big Lie" that has been so

damaging to Plaintiff's trusteeship interests in the Samuel Rupert Trust, sometime after May 20,

2009, when he and Susan schemed to cover-up Susan's misconduct, and stonewall Plaintiff's

requests for information and an accounting from Susan, through the injurious falsehood that the

late Irene Rupert "remains" the Successor Trustee of the Samuel Rupert Trust, and he was

representing her in that capacity.  However, this purported representation was a "sham".  The

late Irene Rupert never became the Successor Trustee of the Samuel J. Rupert Trust, as she

allowed Defendant Susan to function in that capacity (in breach of trust), for at least 7 months,

and the late Irene Rupert never accepted her own nomination, within a reasonable time, or ever,

by either notice (formal or informal), or by actual performance, thereafter.  Downes also gave

legal advice to Defendant Susan, conspired with her, and aided and abetted her fraudulent

breach of trust schemes to injure the Plaintiff's economic relations and property interests

(vested and prospective inheritance rights plus trusteeship rights[2]).  Exercise of personal

jurisdiction over Defendant Downes is reasonable and proper in this District, under either the

"ends of justice" provisions of 18 U.S.C. § 1965(b), or because Defendant Downes's actions

and inactions targeted William in California, and had significant negative effects in California,

through the wrongful interference with Plaintiff's trusteeship rights.  Also, he has repeated the

"Big Lie" (Irene Rupert was the trustee of the Samuel Rupert Trust), to United States District

Court Judges in the Northern District of California, although there has never been a scintilla of

---

[2]  Under the terms of the Samuel Rupert Trust, the occupant of the Office of the Trustee is
entitled to be compensated in the same manner as a "corporate fiduciary".  Accordingly, the
sibling rivalry competition between Plaintiff and Susan, was for a part-time job, which they
both coveted.  During Susan's initial administration, she routinely paid herself $200.00 per
month, for her actions as the purported Successor Trustee, administering both Trusts.

evidence to support the "Big Lie", which the RICO Defendants have schemed to turn into a legal truth, through extrinsic frauds upon numerous state and federal courts.

8.     Defendant **Edward S. Zusman** ("Zusman"), is a resident of California and an attorney-at-law licensed to practice in California (and only in California).  Defendant Zusman is a partner in the law firm of Markun Zusman Compton, LLP, ("MZFC"), who is only affiliated with the San Francisco, California partnership branch location.  Although MZFC also has a partnership branch located in Portland, Oregon, only attorneys Amir Tadjedin and Andrew Harris work out of that branch, and plaintiff has no reason to believe these Oregon attorneys, or the Oregon partnership branch, has any involvement in the matters alleged herein.  Defendant Zusman represented both defendant Susan and the late Irene E. Rupert, in the federal tort diversity action that plaintiff William commenced on June 22, 2009, as USDC NDCA Case No.: 5:09-cv-02758 JF (RS).  In that action Defendant Zusman made material misrepresentations of significant jurisdictional facts (concerning a state's ability to exercise jurisdiction over an out-of-state trustee and over out-of-state trust assets, as established in the case of *Hanson v. Denckla,* 357 U.S. 235 (1958)), to Judge Fogel, by joining with, and adopting the "Big Lie" arguments presented by Defendant Downes in his supporting declaration, and asserting to Judge Fogel that the late Irene Rupert was the trustee of both trusts, at a time when she was not the trustee of either trust[3].  Through his knowingly false and misleading arguments to Judge Fogel, Defendant Zusman helped his other client in the case, Defendant Susan, avoid her fiduciary duty of full and complete disclosure to the Court, that there were significant assets which were located in California (and Irene Rupert wasn't the trustee of either Trust).  As such,

---

[3]  On January 8, 2010, when Defendant Zusman presented his false argument to Judge Fogel, the Trustee of the Irene Rupert Trust, u/a/d July 23, 2009, was Susan.  The Trustee of the Samuel Rupert Trust, u/a/d 11/01/1995, as Amended 01/26/2004, was Plaintiff, after he filled the vacancy in the Office of the Trustee, by his Acceptance of Trust, effective July 8, 2009.

extrinsic fraud was practiced upon Judge Fogel, by the fiduciary's suppression and concealment of the location of significant trust assets (and the true identities of the respective trustees). Exercise of personal jurisdiction over defendant Zusman is reasonable and proper in this District, under either the "ends of justice" provisions of 18 U.S.C. § 1965(b), or because Defendant Zusman resides in, and/or conducts his business affairs in, this Northern District of California, where the damaging effects of his fraudulent and wrongful actions were felt. Defendant Zusman's contacts with the State of Oregon are not sufficient to allow that state to exercise personal jurisdiction over him.

9.      Defendant **Matthew Whitman** ("Whitman"), is a resident of Oregon and an attorney at law licensed to practice in the State of Oregon.  He is also a well-respected attorney, and considered an expert in litigation involving trusts and estates, in Oregon.  He represented Defendant Susan, beginning in February of 2010, in her capacities as one of the three remainder beneficiaries, and the successor trustee, of the Irene E. Rupert Trust, u/a/d July 23, 2009, and as one of the three Remainder Beneficiaries, and a former trustee *de son tort,* for the Samuel J. Rupert (Family) Trust, u/a/d November 1, 1995, as Amended January 26, 2004. Defendant Whitman also represented Defendant James Rupert, beginning in May of 2011, in his capacity as one of the three remainder beneficiaries of the Samuel J. Rupert (Family) Trust, u/a/d November 1, 1995, as Amended January 26, 2004.  Exercise of personal jurisdiction over Defendant Whitman is reasonable and proper in this District, under either the "ends of justice" provisions of 18 U.S.C. § 1965(b), or because Defendant Whitman's actions and inactions had significant effects in California, where Plaintiff William was targeted for harassment and unjustified economic harm, and because some of the wrongful actions that damaged Plaintiff took place within the State of California.

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

10.     Defendant **Michelle Johansson** ("Johansson"), is a resident of Oregon and an attorney at law licensed to practice in the State of Oregon _and_ in the State of California.  She also participated in the representation of Defendant Susan, and Defendant James Rupert, along with Defendant Whitman, in the state court actions for declaratory judgments that were commenced in Oregon on March 15, 2010 and on May 11, 2011.   Defendant Johansson was responsible for wrongful post-judgment collection activities that took place within the State of California, without compliance with the provisions of the California Sister-State Money Judgment Act.  Exercise of personal jurisdiction over Defendant Johansson is reasonable and proper in this District, under either the "ends of justice" provisions of 18 U.S.C. § 1965(b), or because Defendant Johansson's actions had significant effects in California, where William was targeted for harassment and unjustified economic harm, and because some of the wrongful actions that damaged Plaintiff took place within the State of California.  As part of this targeting, Defendant Johansson purposefully availed herself of the privileges of doing business in California, on May 27, 2011, by contracting with Eunice Attorney Services, a professional process serving company located in Santa Cruz, CA., who belongs to NAPPS (National Association of Professional Process Servers), to have Harmony Kelley personally serve William at his residence in Ben Lomond, CA., purportedly in his capacity as the Successor Trustee of the Samuel Rupert Trust, with a baseless Oregon Writ of Garnishment, dated May 19, 2011, which has no extra-territorial effect, within the State of California.

### C.      Remaining Defendants

11.     Defendant **James Rupert** ("James"), is a current resident of Lake Ann, Michigan, who is 59 years old and is/was an electrician by trade, and the youngest child of the late Samuel and Irene Rupert.  He is one of the three remainder beneficiaries of the Samuel J.

Rupert (Family) Trust, u/a/d November 1, 1995, as Amended January 26, 2004.  Additionally, he is one of the remainder beneficiaries of the Irene E. Rupert Trust, u/a/d/ June 9, 2009, as Amended July 23, 2009.  Throughout all phases of the overlapping RICO schemes set forth herein, Defendant James has conspired in, been supportive of, and aided and abetted, the efforts to defraud, extort, disinherit, interfere with, and damage Plaintiff William's economic interests. His conspiratorial actions and support has resulted in his unjust enrichment, along with the other RICO Defendants.  Exercise of personal jurisdiction over Defendant James is reasonable and proper in this District, under either the "ends of justice" provisions of 18 U.S.C. § 1965(b), or because  Defendant James has been unjustly enriched through his receipt of misappropriated trust assets, which were located in California, and then misappropriated and converted by Defendant Susan, as part of her wrongful intermeddling as a trustee *de son tort*.  Also, Defendant James was an active participant and conspirator in the underfunding of the Samuel Rupert Trust, and in the attempted extortion efforts, during June of 2009, that targeted William in California, where the damaging effects of the wrongful actions were felt.

12.    Defendant **Schulte, Anderson,  Downes, Aronson & Bittner, P.C.** ("Schulte"), is a professional corporation whose principal place of business is located  in Portland, Oregon. Defendant Schulte employs Defendant Downes, as a specialist in estate planning and estate settlement matters, and is liable for his fraudulent and illegal actions that damaged the plaintiff's property interests.  Exercise of personal jurisdiction over Defendant Schulte is reasonable and proper in this District, under either the "ends of justice" provisions of 18 U.S.C. § 1965(b), or because Defendant Schulte's actions or inactions had significant effects in California, where Plaintiff William was targeted for economic extortion, and because some of the wrongful actions that damaged Plaintiff took place within the State of California.

13.    Defendant **Markun Zusman Compton, LLP** ("Markun"), is a Limited Liability Partnership which is headquartered in San Francisco, California, where they employed defendant Zusman (as a partner), and non-party co-conspirator Kevin Eng (as a partner), at all times relevant to this action.   As such, Markun is liable for their fraudulent and illegal actions that damaged the plaintiff's property interests.  Exercise of personal jurisdiction over Defendant Markun is reasonable and proper in this District, under either the "ends of justice" provisions of 18 U.S.C. § 1965(b), or because defendant Markun is located in this Northern District of California, defendant Markun's actions had significant effects in California, and because some of the wrongful actions that damaged plaintiff took place within the State of California. Although Markun also has a branch in Portland, Oregon, neither that location, or the two attorneys affiliated with the Portland, Oregon branch (Amir Tadjedin and Andrew Harris), have been involved in this controversy.  Moreover, Defendant Edward Zusman has no affiliation with the Portland Oregon branch location.  Also, the managing general partner, David Markun, is affiliated with the Los Angeles branch location.

14.    Defendant **Cartwright Whitman Baer P.C.** ("Cartwright"), is a professional corporation whose principal place of business is located in Portland, Oregon.  Defendant Cartwright employs Defendant Whitman, and Defendant Johansson, in litigation involving estates and trusts, and enforcement of judgment matters.  As such, Cartwright is liable for their fraudulent and illegal actions that damaged the Plaintiff's property interests.  Exercise of personal jurisdiction over defendant Cartwright is reasonable and proper in this District, under either the "ends of justice" provisions of 18 U.S.C. § 1965(b), or because Defendant Cartwright's actions targeted Plaintiff William in California, had significant effects which were felt in California, and because some of the wrongful actions that damaged Plaintiff took place

within the State of California.  As part of this targeting, Defendant Cartwright purposefully availed itself of the privilege of doing business in California, in May, 2011, by contracting with Eunice Attorney Services, a professional process server located in Santa Cruz, CA., who belongs to NAPPS (National Association of Professional Process Servers), to personally serve William at his residence in Ben Lomond, CA., purportedly in his capacity as the Successor Trustee of the Samuel Rupert Trust, with a baseless Oregon Writ of Garnishment, dated May 19, 2011, which has no extra-territorial effect, within the State of California.

### D.    Non-Party Co-Conspirators, Or Aiders And Abetters

15.    Certain other non-party individuals, business entities, governmental entities, and/or judicial actors,  played roles, direct or indirect, intentionally or inadvertently, in the scheme to defraud, extort, and damage Plaintiff William's property interests.  Foremost among these individuals, business entities and governmental entities are the following:

a.    Ronald Eppler ("Eppler") of the Ann Arbor, Michigan brokerage business known as Beacon Investment Company, is a Financial Advisor who managed Samuel and Irene Rupert's separate trust and IRA accounts, while they resided in Michigan, and after they relocated to Oregon in 2006, until Susan caused him to be replaced in early 2009.  The value of the assets which Eppler was managing shortly after Samuel J. Rupert died on October 12, 2008, as of October 31, 2008, was $441,729.71, consisting of the following specific investment and retirement accounts:

| **Account Number** | **Type** | **Account Title** | **Account Value** |
|---|---|---|---|
| XXXXX3643 | Investment | Samuel J. Rupert Trust | $  93,419.80 |
| XXXXX3660 | Investment | Irene E. Rupert Trust | $107,840.34 |
| XXXXX3651 | Retirement | Samuel J. Rupert IRA | $214,461.76 |
| XXXXX2965 | Retirement | Irene E. Rupert IRA | $  26,007.81 |
| | | | = $441,729.71 |

11

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

b.      This same Eppler issued a subsequent report, two months later, which showed

the value of the assets which Eppler was managing, as of December 31, 2008, was

$452,757.15, consisting of the following specific investment and retirement accounts:

| Account Number | Type | Account Title | Account Value |
|---|---|---|---|
| XXXXX3643 | Investment | Samuel J. Rupert Trust | $  94,362.32 |
| XXXXX3660 | Investment | Irene E. Rupert Trust | $136,407.15 |
| XXXXX3651 | Retirement | Samuel J. Rupert IRA | $       19.64 |
| XXXXX2965 | Retirement | Irene E. Rupert IRA | $221,968.04 |
| | | | = $452,757.15 |

c.      Carol Dickman ("Dickman"), and Bill Barber ("Barber"), as agents, or

employees, or as an Officer of Umpqua Bank, an Oregon Financial Institution, where significant

assets belonging to Samuel and Irene Rupert were deposited, in a variety of accounts (savings,

checking, and certificates of deposit). Carol Dickman is also an Oregon Notary Public and as

such, she notarized the void *ab initio* Amendment to Trust Agreement, dated January 11, 2009,

which purported to make defendant Susan the sole trustee of the Irene E. Rupert Trust, u/a/d

November 1, 1995, in a document signed only by defendant Susan, which is not a legal or

enforceable trust amendment under Oregon Revised Statute ("ORS") § 130.505(5). After

notarizing the void *ab initio* Amendment to Trust Agreement for defendant Susan, Dickman, as

an authorized agent or representative of Umpqua Bank, allowed defendant Susan full control

over all assets of Samuel and/or  Irene Rupert which were held by Umpqua Bank, and permitted

defendant Susan to freely transfer significant assets into, and between, Irene E. Rupert's

accounts, that should have been transferred and funded into the Samuel J. Rupert Family Trust.

Accounts that were opened and held as tenants-in-common were unreasonably regarded as if

they had been opened and held as joint tenants with right of survivorship, due to the

collaborations between defendant Susan, defendant Whitman, and Dickman.  Non-party co-

conspirator Barber conspired with Defendant Whitman to conceal and cover-up the mistakes by Dickman, after receiving letters from plaintiff William, that accused Defendant Susan of bank fraud under 18 U.S.C. § 1344(2), for her fraudulent use of the illegal Amendment to Trust Agreement, dated January 11, 2009, by which she purported to unilaterally make herself the sole trustee of the Irene E. Rupert Trust, u/a/d November 1, 1995 (contrary to the terms of the trust instrument), and thereafter transferred, misappropriated and converted assets and large amounts of money that should have been funded into the Samuel J. Rupert Family Trust (in accordance with his operative Schedule A listing of trust assets, and related instructions, which Susan has concealed and suppressed).

        d.      Kenneth A. Dillon ("Dillon"), president of the Jackson, Michigan company Dillon & Associates, Inc., is a Financial Advisor who is a close personal friend of defendant Susan, and her husband Robert Bond, who was selected by defendant Susan Bond, acting as an intermeddling trustee *de son tort,* to replace Eppler as the Financial Advisor, for the Family Assets that were invested in stocks and bonds, following Samuel J. Rupert's death. Dillon conspired with, or otherwise aided and abetted, defendant Susan in the interstate transfers of the four (4) Michigan brokerage accounts held by Beacon Investment Company, to Charles Schwab Institutional, located solely in San Francisco, California, where these assets were funded into only three (3) new brokerage accounts, in early 2009. The inter-state transfer of these assets, in or about February and March of 2009, from Michigan to California, was orchestrated by Kenneth Dillon, under the 3 Power or Attorney agreements defendant Susan caused the late Irene E. Rupert to sign, while acting as a trustee *de son tort,* which gave Kenneth Dillon complete control over the 3 new accounts which were opened with Charles Schwab Institutional, by Kenneth Dillon, from Michigan. Given the manner in which Dillon is

registered with the New York Stock Exchange, as a Financial Advisor with permission to give

financial advice in five (5) states *other* than the State of Oregon, it is not currently clear if

Dillon's financial advice to defendant Susan and the late Irene E. Rupert, while they were

residents of Oregon, was legal or illegal.

      e.   Robert Bond, who is Susan Bond's husband, and who conspired with,

and aided and abetted defendant Susan in: (1) her wrongful intermeddling as a trustee *de son*

*tort;* (2) her misapplication of entrusted funds; (3) her cover-up and stonewall schemes; (4) her

exploitation of the late Irene E. Rupert; (5) her suppression or destruction of evidence,

consisting of Samuel and Irene Rupert's detailed estate plans (Schedule A trust asset inventory

lists, and personal property inventory distribution lists); (6) her manufacture of fraudulent

evidence, through the forged Samuel J. Rupert Trust Schedule A page, contained in the Exhibit

#70 that defendants Susan and Whitman used to perpetrate a fraud upon the court, in Oregon,

during 2010 and 2011;  (7) her conversion of assets that rightfully belonged to the Samuel J.

Rupert Family Trust, and plaintiff William Rupert's vested interest to 1/3 of the Family Trust

assets; and, (8) her intentional interference with plaintiff William Rupert's trusteeship rights and

his expected inheritance (under Samuel and Irene Rupert's estate plans which were in existence

when Samuel J. Rupert died on October 12, 2008, and still in existence during April and on

May 12, 2009, when this sibling rivalry family feud competition first erupted between Plaintiff

William and Defendant Susan (before any lawyers were involved, and any legal proceedings

were commenced).

      f.   Irene E. Rupert, Deceased, ("Irene"), who was used as an unwitting

pawn, and stooge, by some of the RICO Defendants (RICO Defendants Susan, Downes and

Zusman, ), who exploited her, overcharged her, and used fraud and deceit to trick her into

executing a false declaration, and/or drastically different estate plans.  The new estate plans only

benefited Defendant Susan, not Irene E. Rupert, and her new Oregon Trust instrument contained

draconian *in terrorem* provisions that were used to conceal Defendant Susan's misconduct as an

intermeddling successor trustee *de son tort,* and to disinherit Plaintiff  William, when he tried to

obtain information about the assets and administration of the Samuel J. Rupert Trust (after he

was put on "inquiry notice" by Defendant Susan, of her conversion/ misappropriation of trust

assets and breaches of trust), and to recover the misallocated trust assets that rightfully belonged

to the Family Trust, not to Defendant Susan, or Irene E. Rupert, or the Irene E. Rupert Trust,

u/a/d June 9, 2009, as amended July 23, 2009.  Had Irene E. Rupert been told the truth by RICO

Defendant Susan, Downes and Zusman (about plaintiff William's absolute entitlement to the

trust asset and administration information he requested, as a permissible distributee of an

irrevocable trust, after he was put on "inquiry notice" by Defendant Susan; and about Defendant

Susan's absolute duty to account for Defendant Susan's seven months of trust administration as

a mere trustee *de son tort,* from October 12, 2008 to May 12, 2009, at least), Irene never would

have executed the new Oregon estate plans under which Plaintiff William was ultimately

disinherited (and declared civilly dead, in Oregon), nor would she have executed the false

declaration, that contributed to the fraud upon Judge Fogel.  If the Oregon Uniform Trust Code

would have been accurately and honestly explained to Irene (by Defendant Downes and

Zusman, who had a fiduciary duty to do so, or by District Court Judge Jeremy Fogel - if *Rupert*

*I* would have progressed past the pleadings stage), Irene Rupert would have instructed

defendant Susan to honor her fiduciary obligations to prepare an accounting, turn over all the

financial records and estate planning documents she seized on October 12, 2008, and to

relinquish control to Plaintiff  William.  Irene E. Rupert was badly served by the legal

professionals that Defendant Susan recruited, and paid excessive legal fees, to aid and abet her

conversion, squeeze-out, disinheritance, and cover-up schemes, to damage Plaintiff William's

property interests and his economic relations.

g.      Kevin K. Eng, who was another one of the attorneys of record for

Defendant Susan and the late Irene E. Rupert, who was employed by Defendant Markun, in

the federal tort diversity action that Plaintiff William commenced on June 22, 2009, as USDC

NDCA Case No.: 5:09-cv-02758 JF (RS), alleging, *inter alia,* breach of fiduciary duties by

Defendant Susan, as a mere trustee *de son tort,* and wrongful interference with his economic

relations (vested and prospective inheritance, and lost successor trustee compensation).  As

part of this legal representation, they made a successful joint motion to dismiss, under FRCP

12(b)(2), which was largely premised upon the false claims that Irene E. Rupert had been, and

still was, the Successor Trustee of the Samuel Rupert Trust, and she and all trust property

were located in Oregon, not California.  A knowingly false Declaration of Irene E. Rupert was

procured, falsely stating she was the Successor Trustee of the Samuel Rupert Trust, and there

were no relevant assets located in California, and this false Declaration was served and filed

in the case on November 4, 2009, in support of the Joint Motion to Dismiss.  The Court relied

upon this false declaration (along with other misleading declarations and attorney arguments),

in granting the motion to dismiss, without prejudice.

h.      Joseph P. McMonigle, who was one of the attorneys of record for

Defendants Downes and Schulte, as an agent or employee for the law firm Long & Levit,

LLP, in the federal tort diversity action that Plaintiff William commenced on June 22, 2009,

as USDC NDCA Case No.: 5:09-cv-02758 JF (RS), alleging, *inter alia,* breach of fiduciary

duties by Defendant Susan, as a mere trustee *de son tort,* and wrongful interference by

Defendants Susan, Downes and Schulte, with his economic relations (vested and prospective inheritance, and lost successor trustee compensation).  As part of this legal representation, they made a successful joint motion to dismiss, under FRCP 12(b)(2), which was largely premised upon the false claims that Irene E. Rupert had been, and still was, the Successor Trustee of the Samuel Rupert Trust, and she and all trust property were located in Oregon, not California.  A knowingly false Declaration of Gile R. Downes was procured, falsely stating Irene Rupert was the Successor Trustee for the Samuel Rupert Trust, and he represented her in that capacity as the administrator.  The Court relied upon, and was influenced by these representations (along with the similarly misleading Declarations of Susan Bond and the late Irene Rupert), in determining there was not a sufficient "nexus" between the State of California and the presumed trustee in Oregon, and the trust administration and assets, in Oregton.  Based upon the insufficient "nexus", Judge Fogel eventually granted the Joint Motion to Dismiss.    Plaintiff submits that Judge Fogel's "nexus" calculation would have produced a different result, if he would have been correctly informed that Plaintiff was the lawful Successor Trustee of the Samuel Rupert Trust, in California, and there were significant trust assets located in California as well.  Judge Fogel's Order Granting Joint Motion to Dismiss was procured by extrinsic fraud (for a fiduciary's failure to disclose information).

> i. Jessica R. MacGregor, who was also one of the attorneys of record for Defendants Downes and Schulte, as an agent or employee for the law firm Long & Levit, LLP, in the federal tort diversity action that Plaintiff William commenced on June 22, 2009, as USDC NDCA Case No.: 5:09-cv-02758 JF (RS), alleging, *inter alia,* breach of fiduciary duties by Defendant Susan, as a mere trustee *de son tort,* and wrongful interference by Defendants Susan, Downes and Schulte, with his economic relations (vested and prospective

inheritance, and lost successor trustee compensation).  As part of this legal representation,

they made a successful joint motion to dismiss, under FRCP 12(b)(2), which was largely

premised upon the false claims that Irene E. Rupert had been, and still was, the Successor

Trustee of the Samuel Rupert Trust, and she and all trust property were located in Oregon, not

California.  A knowingly false Declaration of Gile R. Downes was procured, falsely stating

Irene Rupert was the Successor Trustee for the Samuel Rupert Trust, and he represented her

in that capacity as the administrator.  The Court relied upon, and was influenced by these

representations (along with the similarly misleading Declarations of Susan Bond and the late

Irene Rupert), and by the misleading arguments presented by Jessica R. MacGregor at the

hearing on January 8, 2010, in determining there was not a sufficient "nexus" between the

State of California, the presumed trustee in Oregon, and the trust administration and assets, in

Oregon.  Based upon the insufficient "nexus", Judge Fogel eventually granted the Joint

Motion to Dismiss.  Plaintiff submits that Judge Fogel's "nexus" calculation would have

produced a different result, if he would have been correctly informed that Plaintiff was the

lawful Successor Trustee of the Samuel Rupert Trust, in California, and there were significant

trust assets located in California as well.  Judge Fogel's Order Granting Joint Motion to

Dismiss was procured by extrinsic fraud (for a fiduciary's failure to disclose information).

        j.      John S. Hong, who was also one of the attorneys of record for

Defendants Downes and Schulte, as an agent or employee for the law firm Long & Levit,

LLP, in the federal tort diversity action that Plaintiff William commenced on June 22, 2009,

as USDC NDCA Case No.: 5:09-cv-02758 JF (RS), alleging, *inter alia,* breach of fiduciary

duties by Defendant Susan, as a mere trustee *de son tort,* and wrongful interference by

Defendants Susan, Downes and Schulte, with his economic relations (vested and prospective

inheritance, and lost successor trustee compensation).  As part of this legal representation,

they made a successful joint motion to dismiss, under FRCP 12(b)(2), which was largely

premised upon the false claims that Irene E. Rupert had been, and still was, the Successor

Trustee of the Samuel Rupert Trust, and she and all trust property were located in Oregon, not

California.  A knowingly false Declaration of Gile R. Downes was procured, falsely stating

Irene Rupert was the Successor Trustee for the Samuel Rupert Trust, and he represented her

in that capacity as the administrator.  The Court relied upon, and was influenced by these

representations (along with the similarly misleading Declarations of Susan Bond and the late

Irene Rupert), in determining there was not a sufficient "nexus" between the State of

California and the presumed trustee in Oregon, and the trust administration and assets, in

Oregton.  Based upon the insufficient "nexus", Judge Fogel eventually granted the Joint

Motion to Dismiss.

             k.       Long & Levit, LLP, as the law firm that provided the legal

representation to Defendants Downes and Schulte, through their agents or employees Joseph

P. McMonigle, Jessica R. MacGregor, and John S. Hong, in the federal tort diversity action

that Plaintiff William commenced on June 22, 2009, as USDC NDCA Case No.: 5:09-cv-

02758 JF (RS), alleging, *inter alia,* breach of fiduciary duties by Defendant Susan, as a mere

trustee *de son tort,* and wrongful interference by Defendants Susan, Downes and Schulte, with

his economic relations (vested and prospective inheritance, and lost successor trustee

compensation).  As part of this legal representation, a successful joint motion to dismiss,

under FRCP 12(b)(2), was filed and served, which was largely premised upon the false claims

that Irene E. Rupert had been, and still was, the Successor Trustee of the Samuel Rupert

Trust, and she and all trust property were located in Oregon, not California.  A knowingly

false Declaration of Gile R. Downes was procured, falsely stating Irene Rupert was the Successor Trustee for the Samuel Rupert Trust, and he represented her in that capacity as the administrator.  The Court relied upon, and was influenced by these representations (along with the similarly misleading Declarations of Susan Bond and the late Irene Rupert), in determining there was not a sufficient "nexus" between the State of California and the presumed trustee in Oregon, and the trust administration and assets, in Oregon.  Based upon the insufficient "nexus", Judge Fogel eventually granted the Joint Motion to Dismiss.  Plaintiff submits that Judge Fogel's "nexus" calculation would have produced a different result, if he would have been correctly informed that Plaintiff was the lawful Successor Trustee of the Samuel Rupert Trust, in California, and there were significant trust assets located in California as well.  Judge Fogel's Order Granting Joint Motion to Dismiss was procured by extrinsic fraud (for a fiduciary's failure to disclose information).

    1.   Former Oregon Clackamas County Circuit Court Judge Steven L. Maurer[4], who was inadvertently and unwittingly involved in Defendants Susan, Downes, Zusman, Whitman, Johansson and Cartwright's scheme to abuse the legal process of the State of Oregon, while the Presiding Judge of the Clackamas County Circuit Court, when he relied upon the fraudulent representations which were made by Defendant Whitman on October 26, 2010, through *ex parte* phone communication with the court, that caused plaintiff William to be subjected to a Bum's Rush, Ambush Expedited Bench Trial, which commenced on October 27, 2010.  Based upon Defendant Whitman's fraudulent claims, former Judge Maurer was led to believe the Plaintiff, a California Vexatious Litigant, had effectively committed

---

[4] One month into a new 6 year term, former Clackamas County Circuit Court Judge Steven L. Maurer announced his retirement, on January 23, 2013.  The retirement became effective February 1, 2013.  Former Judge Maurer returned to private practice, as an attorney-at-law.

suicide[5], and his ultimate disinheritance was a foregone conclusion, under the circumstances

outlined by Defendant Whitman.  As such, depriving the Plaintiff of a full and fair trial would

be harmless error, former Judge Maurer was led to believe, and result in a significant savings

of judicial resources, by "fast tracking" the cases concerning the Plaintiff.  Based thereupon,

former Judge Maurer:  (1) denied Plaintiff William's written request for the required

Settlement Conference, prior to trial; (2) denied Plaintiff William's Motion for Designation as

a Complex Case (based upon the intensive discovery required to establish all the factors

necessary to prove undue influence by defendant Susan); and, (3) denied Plaintiff William's

Motion for Postponement of Trial (to conduct the necessary discovery, and to retain another

attorney, to replace the attorney who withdrew from the case, and abandoned Plaintiff

William, a mere 7 days before trial – after also being influenced by material

misrepresentations from Defendant Whitman, on October 19, 2010).  While there is no

official record of these *ex parte* communications, Defendant Whitman testified to having

made these *ex parte* phone calls to the Court, during a hearing on March 23, 2011, where he

successfully testified in support of an award of attorney fees, for his efforts in the case.  (See

Reporter's Transcript, 03/23/11, Vol. IV, p. 514:20-25).  The doctrine of absolute judicial

immunity shields former Judge Maurer from a lawsuit for damages, so he is not named as a

party.  Judge Maurer also was inadvertently and unwittingly involved with Defendant

Whitman's, Defendant Cartwright's, Defendant Susan's, and Defendant James' scheme to

again abuse the legal process of the State of Oregon, on October 12, 2011, when they

---

[5]  The knowingly false story told by Defendant Whitman is that Plaintiff challenged his
mother's testamentary capacity in both *Rupert I*, and in the Oregon actions, and that he had
her personally served with process in the community dining room of the retirement
community where she resided.  None of these assertions has any basis in fact.  However,
Defendant Whitman made it sound like Plaintiff had tried to force a conservatorship upon his
mother, and lost, and was disinherited by his mother, as a result of his "suicidal" actions.

conspired to obtain, and did obtain, another corrupt judgment, purportedly concerning the

Samuel Rupert Trust, through extrinsic fraud upon the court, and upon the Plaintiff.

m.      Oregon Circuit Court Senior Judge Elizabeth Welch, who was

inadvertently and unwittingly involved with Defendants Susan, Downes, Zusman, Whitman,

Johansson and Cartwright's schemes to file baseless actions for advisory opinions, or otherwise

use extrinsic fraud upon the court, to obtain corrupt judgments that interfered with Plaintiff's

trusteeship rights in California, and his expected inheritance under his late parents Michigan

estate plans.  Senior Judge Welch carried out the Bum's Rush, Ambush Expedited Bench Trial,

which commenced on October 27, 2010, pursuant to the determinations by Judge Maurer on

October 26, 2010, after the *ex parte* communications from Defendant Whitman were received,

and either directly or indirectly conveyed to Judge Maurer (which deprived plaintiff William of

his constitutional right to a full and fair trial, before an impartial and competent tribunal, after

Plaintiff was smeared with the Vexatious Litigant label[6], and falsely accused of other actions he

did not take, by Defendant Whitman[7]).  Defendant Susan and Defendant Whitman capitalized

---

[6]  It is true that the Plaintiff was placed on the California Vexatious Litigant List on August 2, 1991, under the entirely subjective standards set forth in CCP § 391(b)(3); not for lack of success or re-litigation of issues.  At the time of the Oregon litigations which were commenced by Defendants Susan and Whitman, the California Vexatious Litigant statutes did not establish any way to have one's name removed from the List.  Effective January 1, 2012, CCP § 391.8(c) established a procedure, and grounds, for bringing a motion to have one's name removed from the List.  Plaintiff made such a motion, which was granted on May 29, 2013, and his name has been removed from the California Vexatious Litigant List.

[7]  Senior Judge Welch was misled by Defendant Whitman's false claims that Plaintiff William challenged his late Mother's testamentary capacity, and had his mother personally served with a Summons in the community dining room of the retirement community where she resided, to trigger the *in terrorem* clauses contained in the Oregon Trust instruments which were prepared by Defendant Downes.  In fact, Plaintiff never challenged his late mother's testamentary capacity, in any pleading he filed in any court, and he also made special arrangements to have substituted service upon the staff at the retirement community where his late mother resided (after Plaintiff regrettably realized he had to join her as a party in *Rupert I,* or Judge Fogel could not grant a declaratory judgment as a remedy).

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

upon Senior Judge Welch's view that a ripe controversy is not required to be alleged, or proven, to invoke the judicial power of the State of Oregon, to grant coercive relief.  From May 12, 2010 to April 28, 2011, Senior Judge Welch was influenced by Defendant Susan and Defendant Whitman's extrinsic fraud, as Susan concealed information she had a duty to disclose (concerning her fiduciary role for the initial 7 months after Samuel Rupert died).  In fact, in Case CV10030498, concerning the Samuel Rupert Trust, Senior Judge Welch unwittingly filed and entered a General Judgment that she never rendered in open court at any hearing, or in response to any dispositive motion.  At the last hearing she conducted, on March 23, 2011, Senior Judge Welch denied Plaintiff's renewed motion to dismiss, and thereafter clearly informed Defendants Susan and Whitman that the case was not over, and discovery was also not closed, as she calendared Plaintiff's anticipated Motion to Compel for hearing on May 11, 2011. The Plaintiff then filed his responsive pleading, his answer and affirmative defenses, on April 4, 2011.  However, without any further proceedings, or directions from the Court, Defendants Susan and Whitman took it upon themselves to submit a proposed General Judgment document to the Clerk's Office, which was unwittingly signed by Senior Judge Welch, and entered in the case, based upon extrinsic fraud (no trial was ever commenced by Senior Judge Welch, for the Samuel Rupert Trust case, and no judgment was ever rendered, by Senior Judge Welch, for the Samuel Rupert Trust case, and no hearings were ever conducted, after the case became at-issue, on April 4, 2011).

16.     At all relevant times, each and every non-party named in paragraph 15 was acting in concert with, or as an agent for, one or more of the RICO Defendants (or for RICO Conspiracy defendant James), and, further, as described in more detail below, conspired with, or aided and abetted, one or more of the other RICO Defendants (or RICO Conspiracy Defendant

James), to perform the acts averred herein.

17.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1 through 20, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each fictitiously named defendant is responsible in some manner for the acts alleged herein.

### V.     Introduction and Summary Of Civil RICO Stages 1-5

18.     This case concerns an errant and faithless fiduciary (RICO Defendant Susan), who: (1) wrongfully appointed herself as Successor Trustee of her late parent's Trusts (thereby establishing a fiduciary relationship, and a confidential relationship, with Plaintiff, who was a remainder beneficiary of the Trusts she wrongfully and ineptly administered); and, (2) engaged in much more serious cover-up activities, with a series of errant lawyers, whereby they obstructed justice and abused the legal process in California and Oregon, to achieve a sort of legal "alchemy", by converting the "Big Lie" that was first fabricated by Defendant Downes[8], into a legal truth, through the creation of a false judicial record.  The false judicial record (of Irene Rupert remaining the trustee of the Samuel Rupert Trust), was created, in Oregon, as part of the fraudulent scheme to hide Defendant Susan's misappropriations.  The lawyers conspired with, and aided and abetted, Susan in her efforts to avoid having to ever fully and completely

---

[8]  The "Big Lie" was first asserted by Defendant Downes, in his June 10, 2009 letter addressed to Plaintiff (and copied to the late Irene Rupert, Susan and James), wherein he stated, with regards to the Samuel Rupert Trust, "[i]n my opinion your mother remains the trustee of that trust."  Plaintiff asserts the contention that the late Irene Rupert was ever the Successor Trustee of the Samuel Rupert Trust, is an objectively baseless contention, made for the improper purpose of interfering with Plaintiff's trusteeship of the Samuel Rupert Trust, which became effective July 8, 2009.  The alleged Irene Rupert Trusteeship is a "sham" assertion, made within the competition between Plaintiff and Susan, for the part-time job of being the paid administrator, for their late parents estate and trust assets.

account for her administration of nearly $900,000.00 in trust assets.  Susan mismanaged and

misappropriated trust and estate assets of her late father and mother for the first 7 months after

Samuel Rupert died (on October 12, 2008), and then submitted a woefully deficient "Financial

Summary[9]" to the beneficiaries of the Trust (her mother and 2 brothers), on May 12, 2009.  One

of the brothers (Plaintiff William, in California), was so alarmed by his sister's concealment of

basic information she had a duty to disclose, that he considered himself to be on "inquiry

notice", and he commenced efforts to obtain the Trust asset and administration information

necessary to evaluate the performance of Defendant Susan, during the first 7 months.  These

first 7 months comprise the RICO Stage 1 activities.  Over 4 and ½ years later, the Plaintiff's

investigation is still incomplete, as Susan, to date, has been able to avoid and evade, her duty to

properly account for her actions as a fiduciary, from October 12, 2008 to May 12, 2009, and to

share Samuel and Irene Rupert's detailed estate plans (the Schedule A file and the personal

property distribution instructions list, which Defendant Susan wrongfully seized and removed,

following the death of Samuel Rupert, on October 12, 2008).

      19.     Although Defendant Susan stonewalled Plaintiff's efforts to obtain information

and documents from her, and refused to speak to him on the phone, or respond to his letters, the

Plaintiff was initially able to gather some information from his mother, during his frequent

---

[9]  For instance, the "Financial Summary" was simply a listing of 8 categories of assets (bank accounts, Certificates of Deposit, insurance policies and brokerage accounts), with Defendant Susan's valuations as of March 31, 2009 ($874,995.00).  The report was in the nature of a "position statement" or "balance sheet", showing only the total value of the specified asset categories, after 5 months and 19 days of Susan's open administration, as the acting Successor Trustee.  However, Susan failed to disclose all of the transactions that occurred during the first 5 months and 19 days of her administration.  The Financial Summary also failed to list any of the individual stocks or bonds which were held in the various brokerage accounts.  Additionally, Susan failed to disclose the income and expenses, during the period, or the compensation and "gifts" she received, during the period, while she was openly functioning in a fiduciary capacity, as the self-appointed Successor Trustee, for both Trusts.

phone calls to her, before she was isolated by Defendants Susan and Downes, and pressured to stop speaking to the Plaintiff.  In a phone conversation on or about May 12, 2009, between Plaintiff and his mother, the late Irene Rupert, his mother told him that Susan had caused her to sign some power-of-attorney documents, from time to time; but she and her late husband never amended their Michigan estate planning documents  (separate trusts and pour-over wills), following the amendments they made in Michigan, on January 26, 2004, to nominate Plaintiff as their first choice to be successor trustee and personal representative (among their 3 adult children, with Susan the second choice, and James the third).

20.     Plaintiff William researched Oregon statutory law, and discovered that the Oregon Trust Code, effective 2006, includes ORS 130.505(5), which limits the effectiveness of power-of-attorney documents, over Trust instruments, by making them unenforceable, unless the terms of the trust explicitly state that the Trust can be modified, amended, or controlled, by a subsequent power-of-attorney document.  Plaintiff then reviewed the terms of his parents' trusts, and saw that they lacked an explicit provision permitting modification, amendment, or control, under a power-of-attorney document.

21.     Upon discovering how Oregon law prohibits trusts from being controlled through power-of-attorney documents, Plaintiff sent Susan a letter dated May 8, 2009, which informed her of this fact.  Plaintiff further informed Susan that her Amendment to Trust Agreement document, dated January 11, 2009, by which she purported to unilaterally make herself the Successor Trustee of the Irene Rupert Trust, u/a/d 11/01/1995, was illegal and void *ab initio*.

22.     Between May 11, 2009 and May 18, 2009, Susan received a series of letters from Plaintiff, wherein Plaintiff demanded she fully and completely account for all of her actions as a fiduciary, going back to October 12, 2008; and that she relinquish control to Plaintiff, if all she

had were inferior power-of-attorney documents, and the illegal Amendment to Trust Agreement document, which was void *ab initio*. These correspondences marked the end of the RICO Stage 1 activities. Defendant Susan refused to speak to Plaintiff on the phone, and she never responded in writing to any of the letters she received from Plaintiff, seeking trust asset and administration information.

23. Susan failed and refused to provide a legitimate accounting. Instead, she embarked upon ill-advised cover-up and stonewall activities, as suggested by Defendant Downes (whom she recruited as a conspirator, to begin the RICO Stage 2 activities, which were centered on exploiting Susan's influence over the late Irene Rupert), which were designed and intended to conceal the information Susan had a duty to disclose, through the objectively baseless assertion that Susan's mother, Irene Rupert, had been the trustee (not Susan), after Samuel Rupert died. However, Defendant Downes failed to have the late Irene Rupert take any of the actions necessary for her to accept her previously rejected nomination to become the successor trustee of the Samuel Rupert Trust[10]. Irene Rupert failed to accept by notice (either informal or formal), or by performance of the duties of the successor trustee (such as

---

[10] In the cross-examination testimony Defendant Downes gave in the Oregon actions, he testified that he met with the late Irene Rupert, and Defendant Susan, beginning around May 20, 2009, and informed them that the controlling Michigan estate plans in effect at the time called for Plaintiff to be in charge, not Susan. Defendant Downes exact cross-examination testimony was as follows:

> "A.    Well, when I explained to her the terms of her husband's trust she, in effect, said, 'I will be the trustee of this trust. If my daughter can't be without – without a modification of the trust I will be.'"
> (Reporter's Transcript, October 27, 2010, p. 110:1-5)

However, what Defendant Downes neglected to tell the late Irene Rupert, is that the Oregon Trust Code does not allow a second chance to accept a nomination to become a trustee, after it has initially been rejected by an individual. Defendant Downes had a duty, because of his confidential relationship with Irene Rupert, to inform her that it was too late for her to accept her nomination, because she rejected it for the first 7 months, when Susan was allowed to function as the fiduciary, and successor trustee, although she was merely an intermeddling trustee *de son tort*.

preparation of annual reports, to the beneficiaries).

24.     On June 22, 2009, Plaintiff commenced USDC NDCA Case No. 5:09-cv-02758 JF (RS)  ("*Rupert I*"), in this district, before Judge Fogel, as a federal tort action for interference with economic relations, and conspiracy, under the court's diversity jurisdiction, against Defendants Susan, Downes and Schulte.

25.     On July 8, 2009, Plaintiff's Acceptance of Trust papers were delivered to the beneficiaries, and Plaintiff effectively became the Successor Trustee of the Samuel Rupert Trust, pursuant to the terms of the Trust, and pursuant to controlling Michigan Law.

26.     On July 23, 2009, Plaintiff filed his First Amended Complaint ("FAC"), in *Rupert I,* which added a new declaratory relief remedy, and added Irene Rupert as an additional defendant, solely with regards to the declaratory relief remedy (so the Court would be able to declare that: (1) Plaintiff was the Successor Trustee; (2) Irene Rupert had never been the Successor Trustee; and, (3) Susan has a duty to account for her administration of the trust assets, for the initial 7 months, even though she was only an intermeddling trustee *de son tort*.

27.     Unfortunately, for Plaintiff, the merits of *Rupert I,* were not addressed, as the case never got past the pleadings stage, due to the extrinsic fraud that was practiced upon Judge Fogel, by Defendants Susan, Downes, Schulte, Zusman and MZC (during the RICO Stage 3 activities).  The extrinsic fraud was of the second species, that is discussed in the case of *Lazzarone v. Bank of America,* 181 Cal.App.3d 581 (1986)[11].  Judge Fogel was deliberately

---

[11]     "A second species of extrinsic fraud has also been found where fiduciaries have concealed information they have a duty to disclose.  (Citations.).  This variety of extrinsic fraud recognizes that, even if a potential objector is not kept away from the courthouse, the objector cannot be expected to object to matters not known because of concealment of information by a fiduciary."
Lazzarone v. Bank of America,
        181 Cal.App.3d 581 (1986)

misled about the crucial *Hanson v. Denckla,* 357 U.S. 235 (1958), jurisdictional factors (identity

of trustee, location of trustee, and location of trust assets), through concealment of information

the fiduciary (Susan), and her attorney (Zusman), had a duty to disclose honestly, accurately

and completely (to both Judge Fogel and to Plaintiff).  The extrinsic fiduciary fraud upon the

court caused Judge Fogel to grant a Joint FRCP 12(b)(2) Motion to Dismiss, which most likely

would have been denied, if Judge Fogel had realized that he was being misled by an Oregon

fiduciary (Susan), an Oregon lawyer (Downes), by 5 California lawyers[12] (including Defendant

Zusman), and by 2 California law firms[13] (including Defendant MZC).   The Joint FRCP

12(b)(2) Motion to Dismiss represents "sham" litigation, as it was based upon the objectively

baseless assertions that Irene Rupert, located in Oregon, was the Successor Trustee of the

Samuel Rupert Trust, and the trustee of her own Trust, and no trust assets were located in

California.  Moreover, the objectively baseless assertion was made for the improper purpose of

aiding and abetting Susan's efforts to conceal information she has a duty to disclose, regarding

her performance as a self-appointed fiduciary, following Samuel Rupert's death in 2008.

   28.     On March 12, 2010, Irene Rupert died, while Judge Fogel was still deliberating

upon the FRCP 12(b)(2) Motion to Dismiss, which he took under submission, after hearing oral

argument on January 8, 2010.

   29.     On March 15, 2010, Susan commenced more sham litigation, and abused the

judicial process of the State of Oregon, through both intrinsic fraud and more extrinsic fraud, to

obtain corrupt declaratory judgments regarding both trusts.  These were the RICO Stage 4

activities.  During the litigation of these proceedings, Defendants Whitman and Susan embraced

---

[12]  Non-party co-conspirators Kevin K. Eng, Joseph P. McMonigle, Jessica R. MacGregor,
and John S. Hong are the other California attorneys-at-law, whose names appear upon the
misleading motion papers and declarations which were filed in the action.
[13]  Non-party co-conspirator Long & Levit, LLP is the other law firm located in California.

and expanded the "Big Lie" which was first fabricated by Defendant Downes (as they alleged the late Irene Rupert had been the successor trustee of her late husband's Trust, from October 12, 2008 until March 12, 2010), and they fabricated new falsehoods, by alleging that Plaintiff challenged Irene Rupert's testamentary capacity in his pleadings in *Rupert I,* and that Plaintiff had his mother personally served with process in the community dining room at the retirement community where she resided in Oregon[14].  According to the false story told by Defendant Whitman, Plaintiff's actions arising from *Rupert I,* were comparable to the situation where a remainder beneficiary child tries unsuccessfully to force a conservatorship upon his mother, and ends up being disinherited by the mother, as a result.  Defendant Whitman told this story to Oregon attorney Anthony Dal Ponte, on or about October 19, 2010, which caused Mr. Dal Ponte, and Oregon attorney Victoria Blachly, of the Oregon law firm Samuels, Kantor, Yoelin, LLP, to abandon the Plaintiff as a client, without even talking to him, on October 20, 2010, a mere 7 days before the hearing which was scheduled for October 27, 2010.  Plaintiff told his Oregon attorneys, on October 13, 2010, that the hearing was a status conference, because that is what he genuinely believed, in reliance upon Defendant Whitman's repeated letters stating that the case could not go to trial until the required Settlement Conference was conducted.  However, when Defendant Whitman spoke on the phone to Mr. Dal Ponte, he told him the hearing on October 27, 2010 was going to be the trial on the merits, not merely a status conference.   The false representations by Defendant Whitman caused the attorneys from Samuels, Kantor, Yoelin, LLP to corruptly sell out the Plaintiff's interest to the other side, by their abrupt withdrawal, and abandonment of their client, on the eve of trial.

///

---

[14]  In fact, the FAC in *Rupert I,* did not challenge Irene Rupert's testamentary capacity, and Plaintiff caused it to be served by substituted service upon the retirement community staff.

30.     Defendant Whitman also repeated this fabricated story, about Plaintiff's purported challenge to his mother's testamentary capacity, and personal service in the community dining room, during prohibited *ex parte* communications with former Oregon Judge Steven L. Maurer, during a phone call on October 26, 2010, which caused Plaintiff's Motion For Postponement of Trial to be denied.  Former Judge Maurer relied upon what Defendant Whitman told him, to conclude that Plaintiff's disinheritance from his mother's trust was a no-brainer (because the Plaintiff had committed suicide, and caused his own disinheritance), so there was no need to take the time necessary to provide the Plaintiff with a fair and full trial, because any error would be harmless error (given the Plaintiff's alleged challenge to his mother's testamentary capacity, and the alleged personal service he caused to be made upon his mother, in the community dining room).

31.     In the Oregon actions she commenced, Susan concealed information she had a duty to disclose, with regards to her initial mistaken actions as a fiduciary, for both trusts (between October 12, 2008 and May 12, 2009), and with regards to Plaintiff becoming the lawful successor trustee of the Samuel Rupert Trust, on July 8, 2009 (and his simultaneous transfer of the principal place of administration of the Trust to California, at that time, without any objections from any of the beneficiaries in Oregon or Michigan).  Instead of disclosing the truthful history of the occupancy of the Office of the Trustee, for the Samuel Rupert Trust, Susan filed pleadings that falsely alleged the late Irene Rupert had been the one and only successor trustee, from October 12, 2008 to March 12, 2010.  The Oregon trust proceedings for declaratory judgments were successful, but only because of the extrinsic frauds upon the Oregon Courts (as explained in more detail, later in this SAC).  As such, they may be set aside, in an independent suit, because the Plaintiff was prevented from exhibiting fully his case, during

the unorthodox proceedings in Oregon, that resulted in miscarriages of justice.  This Second

Amended Complaint is that independent action, seeking *inter alia* declarations that none of the

Oregon Judgments are entitled to full faith and credit in the State of California, or elsewhere,

because they were obtained through extrinsic frauds upon the court (and thus represent no

judgments at all, because of the manner in which they were procured).

32.     Following the entry of the Oregon judgments that were obtained through

extrinsic fraud, judgments for attorney fees thereupon where also obtained, against Plaintiff.

Thereafter, during RICO Stage 5, Oregon Writs of Garnishment were properly issued by

Defendant Johansson, in Oregon, but the process of the State of Oregon was abused and

misused thereafter, as the writs were used to extract funds from Plaintiff's bank account in

Scotts Valley, California, without compliance with the California Sister-State Money Judgment

Act (which is the only way to lawfully levy upon funds held by a bank branch in California).

Also, the Oregon Writ of Garnishment is limited by statute, to funds on deposit at a branch

located within the State of Oregon.  By design, Oregon Writs of Garnishment have no extra-

territorial effect.  Nonetheless, Defendant Johansson abused these writs, beyond the territorial

limits of the State of Oregon, in October and November of 2011, to extract funds from

Plaintiff's California checking account, and from a brokerage account that was controlled by

Plaintiff in Nebraska.

33.     Plaintiff's total damages to his trusteeship interests, and his expected inheritance,

are in excess of $300,000.00, not to mention the litigation expenses incurred by Plaintiff due to

the baseless litigation in Oregon, where judgments were obtained by extrinsic fraud.

34.     The initial fraudulent schemes by Susan, the fraudulent "Big Lie" scheme

concocted by Defendant Downes, the extrinsic fraud by Defendant Zusman and others upon

Judge Fogel, the extrinsic fraud by Defendants Whitman, Susan and James, upon Oregon Judges Maurer and Welch, and the wrongful collection activities by Defendant Johansson, were all accomplished through reliance upon the United States Postal Service, Emails, and Fax transmissions.  Additionally, hundreds of thousands of dollars were transferred from Michigan to either California or Oregon, and bank funds were transferred by Susan, using an illegal Amendment to Trust Agreement document that is void *ab initio.*  As such, the above RICO Defendants have engaged in a sustained course of wrongful conduct, which has included mail fraud, wire fraud, bank fraud, inter-state transportation of stolen property, obstruction of justice, extrinsic fraud, and abuse of process.   Trebled damages under the RICO statutes is sought, for the total amount of damage to Plaintiff's property interests (trusteeship and inheritance), and economic relations.  Punitive damages are also sought, by the Plaintiff, based upon the following factual allegations.

## STATEMENT OF FACTS

35.     In 1995, Michigan native Samuel J. Rupert had a revocable living trust prepared, by an experienced estate planning attorney in Michigan, who also prepared a pour-over Will, to ensure that one way or another, the Family Trust that he wanted to be created after his death, would end up being funded with all of his assets, to the largest extent possible, unless tax considerations required a marital distribution to be made (as it turned out, no marital distribution was necessary).  For estate planning purposes, the assumption was made that Irene would probably live longer than her husband Samuel.  The Family Trust which was to be created after his death, and funded with all his assets, was to have Irene Rupert (if she survived her husband), as the life income beneficiary, and their 3 children were the remainder beneficiaries.  Unusually, all 4 beneficiaries were immediate permissible distributees of

principal, in the discretion of the trustee.  No powers of appointment were given by the terms

of the Trust, to anyone, and only the Grantor was allowed to amend the Trust.

36.     Separate, but similar, estate plans were also prepared for his spouse, Irene E.

Rupert, by the same attorney, at the same time.  Both Trusts called for their spouse to be the

first nominated successor trustee (if willing and able), and the alternate successor trustees

were to be their 3 children, jointly, as co-alternate successor trustees, Susan, William and

James.  Both Wills called for their spouse to be the first nominated personal representative (if

willing and able), and the alternate personal representatives were to be their 3 children,

jointly, as co-personal representatives, Susan, William and James.

37.     In 2004, both Samuel Rupert and Irene Rupert amended their estate plans, to

state that they wanted William to be the sole alternate successor trustee, with Susan as the

second choice, and James the third.  Similarly, both Samuel Rupert and Irene Rupert executed

codicils to their pour-over wills, stating they wanted William to be the sole personal

representative, with Susan as the second choice, and James as the third.

38.     In 2005, William made a special trip back to Michigan, and spent several days

with Samuel and Irene Rupert, for the express purpose of discussing how they wanted

William to administer things, when the time came for him to take over control of their

financial affairs.  During this trip, William was shown where their confidential estate plans

and records were stored, and was assured that detailed plans already existed, so he did not

have to take any notes, when they discussed individual personal property items that they

wanted to go to specific family members.  For instance, William was told that Irene's Doll

collection was to go to Sarah Rupert, a granddaughter; the dining room table and chairs were

to go to William; and much of their silverware items were to go to Susan.  Many other

personal property items and artwork were discussed during this trip back to Michigan, but William took no notes, because of the assurances he received from Samuel and Irene Rupert, that detailed written instructions already existed.

39.     The existence of detailed, written records and estate planning documents was entirely in keeping with the type of organized, conscientious, people that Samuel and Irene Rupert had been for their entire life.  Samuel Rupert was trained as an aeronautical engineer at the University of Michigan, while Irene was a nursing student at the University of Michigan Hospital.  After he graduated, Samuel Rupert worked as an engineer, and started a number of companies on his own, concerning automatic assembly machines, and eventually blow molding plastics machinery (like the machines that make plastic milk bottles).  During his career he received approximately 19 patents, and he was very much a paperwork kind of person.  In fact, when he moved to Oregon, he brought corporate records from some of the companies he had been involved in starting, back in the 1950's.  Plaintiff saw these old corporate records, when Susan made them available for brief inspection, during the weekend when the Memorial Service was held for Samuel Rupert, in Oregon, on October 26, 2008.

40.     In 2006, Samuel and Irene Rupert moved from Michigan to the Portland, Oregon area, renting an apartment at the Willamette View Retirement Community, located in Clackamas County, Oregon to be close to Susan and her husband Robert Bond (and their extended family), who reside in Multnomah County, Oregon, at 2430 Montgomery Drive, Portland, OR 97201.

41.     In January of 2008, Samuel and Irene Rupert signed durable power of attorney documents that designated defendant Susan as their authorized representative, for health care purposes.  Both the late Samuel Rupert and the late Irene Rupert had a "confidential

relationship", with defendant Susan, as evidenced by these power of attorney documents.

42.     On 10/12/08, Samuel J. Rupert died, in Oregon.  On 10/13/08, William tried to step forward and take control (because Irene's memory problems, based upon her soon to be diagnosed Alzheimer's Disease, did not make her a suitable candidate to administer either trust, as she freely acknowledged at the time, when she declined to accept her nomination to become the Successor Trustee of the Samuel Rupert Trust), but was rebuffed by Susan, during a 23 minute telephone conversation (from California to Oregon).  Susan told William that she was "in charge", because she purportedly had more recent documents, subsequent to the 2004 amended estate plans.  Susan, and her husband Robert, seized all of Samuel and Irene Rupert's confidential estate plans and financial records, and took them to their residence in Multnomah County, which became the *de facto* principal place of administration of both Trusts.

43.     On 11/13/10, Susan obtained Irene Rupert's signature upon another power of attorney document, that purported to give her the power *inter alia* to unilaterally amend Irene Rupert's estate plans.  However, the terms of Irene's Trust only allowed her to amend her Trust, and does not contain an explicit authorization allowing amendment under a power of attorney document.  This power of attorney document is further evidence of the "confidential relationship" that existed between the late Irene Rupert, and her daughter, Defendant Susan.

44.     During December of 2008, a Michigan brokerage company named Beacon Investments Company, was instructed, by defendant Susan and/or by non-defendant co-conspirator Kenneth A. Dillon, to transfer all assets of the Samuel J. Rupert IRA account (roughly $220,000.00), to the much smaller Irene E. Rupert IRA account.  The brokerage company followed the instructions they were given, although the transaction raised red flags

that caused the brokerage company to send out a letter of inquiry, to make sure the transaction was authorized and legitimate.  This letter was intercepted by Susan, so Irene never received it.

45.     On 01/11/09, Susan used fraud and deceit to trick William into drafting a document entitled Amendment to Trust Agreement, for the Irene Rupert Trust u/a/d 11/01/95, that purported to unilaterally make Susan the Successor Trustee of the Irene Rupert Trust, without Irene Rupert's knowledge or consent.  William drafted this document because Susan showed William a 11/13/08 Power of Attorney document, signed by Irene Rupert, that purported to grant such amendment powers.  Susan foisted off this document as having been obtained from an attorney, so William presumed it was a valid and genuine power of attorney document.  Accordingly, the face of the Amendment to Trust Agreement references the specific power of attorney document (11/13/08), and the specific subsections involved, as the purported source for Susan's authority to unilaterally amend the Irene Rupert Trust[15].  What William did not know at the time was that Oregon law, as embodied in ORS 130.505(5), only allows trust amendments under a power of attorney _if_ the terms of the trust specifically state such amendments can be made under a power of attorney.  In this case, the Irene Rupert Trust did not allow amendments under a power of attorney, so the Amendment to Trust Agreement document, dated January 11, 2009, is illegal and void _ab initio_.

46.     In January of 2009, Susan sent emails to William wherein she admitted to having the Amendment to Trust Agreement document notarized at a bank (the Umpqua Bank branch at Willamette View), and using it to transfer funds into, and between, accounts for the

---

[15]  Because the Plaintiff had no opinion on the enforceability of the amendment powers that were purportedly granted by the power-of-attorney document, and was not allowed adequate time to research the issue, when he drafted the Amendment to Trust Agreement document, he used language which was intended to make the ultimate validity of the Amendment entirely dependent upon the validity of the underlying power-of-attorney amendment powers.

_Corrected_ Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

benefit of Irene Rupert and her trust.  In other Emails she asked for, and obtained, the social security numbers of Plaintiff William and Defendant James, in her capacity as Successor Trustee.  Her actions created a confidential relationship with Plaintiff William and Defendant James, through her actual performance in a fiduciary capacity, during the initial 7 months after Samuel Rupert died on October 12, 2008.

47.     During February and March of 2009, Defendant Susan and/or non-party co-conspirator Kenneth A. Dillon, caused the four separate brokerage accounts from Beacon Investment Company (Samuel J. Rupert Trust; Samuel J. Rupert IRA; Irene E. Rupert Trust; and Irene E. Rupert IRA), to be transferred from Michigan to California, where they became three accounts which were opened with Charles Schwab Institutional, located solely in San Francisco, California (accounts for the Samuel J. Rupert Trust; the Irene E. Rupert Trust; and the Irene E. Rupert IRA).  During this same general time period, Defendant Susan also caused the proceeds of Samuel J. Rupert's life insurance policies to be transferred to Irene E. Rupert's personal or trust account, instead of being funded into the Family Trust, as was intended by Samuel J. Rupert's estate plans[16].

48.     William routinely spoke to his mother, Irene, on the phone, once or twice a week, following the death of Samuel Rupert, and a common complaint from Irene was that Susan was keeping her in the dark about how the finances were being administered by defendant Susan and the new financial advisor, Kenneth Dillon.  After several months of

---

[16]  The terms of the trust include a Section 16, on page 8, wherein Samuel J. Rupert made it clear that he was the owner of his life insurance policies, as opposed to the person he named as the beneficiary (Irene), who was not named with a donative intent.  The terms of the trust also includes other language where Samuel J. Rupert made it clear that he expected the proceeds from the life insurance policies he owned to be funded, after his death, into the Samuel Rupert Family Trust.

hearing these complaints, William agreed to talk to Susan, and remind her of her duties to be more forthcoming with specific information, and submit periodic accountings.  Such a conversation took place in late April of 2009, when Susan called William, after Irene began asking her if William had called her yet.  Susan agreed to provide some information about her management of the Family Assets.

49.     After seven months of her secretive, informal administration, Susan provided Irene with a "Financial Summary" document, and subsequently, on 05/12/09, sent copies of this purported "accounting"  to William and to defendant James, along with a transmittal letter she signed as the purported "Successor Trustee".  Her Accounting purported to show that 100% of the combined assets of Samuel and Irene Rupert, which Susan valued at $874,995, as of 03/31/09, had been transferred, or allocated to, the Irene Rupert Trust.  The Samuel J. Rupert Family Trust, which was supposed to be created and funded after the Samuel J. Rupert Trust became irrevocable, was not shown to even exist, in this so-called "accounting", by defendant Susan[17].

50.     On 05/17/09, William objected to the so-called "accounting", as inadequate and insufficient, in writing, because *inter alia*: (1) it did not go back to 10/12/08; (2) it shows the Irene Rupert Trust had been overfunded; and, (3) it did not show the compensation and gifts that Susan received, or account for the thousands of dollars that were generated by Susan, by selling off the personal property of Samuel and Irene Rupert (and keeping the

---

[17]  This fact was confirmed by defendant Susan, during her cross-examination testimony on November 24, 2010, in the Oregon trust proceedings for declaratory judgments, when she confirmed that the notation in her document entitled "Financial summary as of March 31, 2009", where it states "$83,371  Samuel-Irene Rupert Trust", was a reference to the Samuel Rupert Trust, which defendant Susan listed as belonging entirely to the Irene Rupert Trust. (See Reporter's Transcript, 10/27/2010, Vol. II, p. 266:3-267:7)

proceeds for herself[18]).  This letter also informed Susan that her Amendment to Trust

Agreement document, dated January 11, 2009, which she tricked William into drafting, was

illegal and void *ab initio*.  William also asked Susan to produce the written documents she

claimed to have (when they spoke on 10/13/08), while informing her that mere power of

attorney documents did not trump Samuel and Irene Rupert's amended estate planning

documents from 01/26/04.  William let Susan know that if all she had were the power of

attorney documents, she had to relinquish control to William, fully account for her actions,

and make whatever restitution might be necessary, to rectify her breaches of trust (concerning

the Samuel J. Rupert Trust).  William further informed Susan that he hoped to be able to ratify

Susan's actions, to the greatest extent possible, but she had to account more fully and

completely, before he could ratify any of her actions.

      51.     Susan responded negatively, and told Irene she had to either support Susan in

the disputes with William, or Susan would abandon her, and she could live out the rest of her

life alone at the retirement home, without any visits, or help, from Susan.  Irene

acknowledged this coercion by Susan, in one of William's last phone calls to Irene, on or

about May 12, 2009, when Irene told William that Susan was just "too strong", and Irene was

afraid of the consequences to her, if she went against Susan's wishes, to stay "in charge" of

the financial affairs, without any accountability, and without William looking over her

shoulder.  Irene freely admitted that the emotional cost would be too much, to her, unless she

_____

[18] Significantly, in the months after Samuel Rupert died, disability insurance payments of roughly $7,000 per month, to defendant Susan's husband, non-party co-conspirator Robert Bond were terminated.  The end of these disability payments created a severe financial hardship for defendant Susan and her husband Robert Bond.  Defendant Susan apparently dealt with this financial hardship by selling off much of Samuel and Irene Rupert's personal property, and keeping the proceeds for herself, contrary to the terms of their Trusts, and contrary to Samuel and Irene Rupert's personal property inventory distribution lists, which Susan refuses to produce, or share with Plaintiff.

took Susan's side, in Susan's dispute with William.

52.     On 05/20/09, Susan called William, telling him that she and Irene had retained an attorney, who would be responding to William's letters of inquiry.  Susan then stated she did not trust William so she did not want to talk to him, and then she abruptly hung up on William.

53.     It turns out this attorney was Defendant Downes, who initially spoke solely to Susan, during which time Susan let it be known that she had been functioning as a fiduciary, using power of attorney documents she obtained (which conflicted with Samuel and Irene Rupert's operative estate plans), to informally manage things following the death of Samuel J. Rupert on 10/12/08.  Susan further communicated that she was controlling nearly $900,000 in assets, and she had a captive Settler (her elderly, vulnerable Mother who suffered from Alzheimer's Disease), who was completely under her control, and would sign whatever documents Susan told her to sign.

54.     Subsequently, upon examining the existing estate planning documents that Susan brought to him, and her various power of attorney documents, Defendant Downes either knew, or should have known, that Susan was an errant trustee of the worst type, an intermeddling trustee *de son tort,* who had an immediate duty to: (1) relinquish control, to William; (2) fully account for her administration of assets going back to 10/12/08; and, (3) make whatever restitution was necessary, to correct her overfunding of the Irene Rupert Trust (100% of Family Assets), and corresponding underfunding of the Samuel Rupert Trust (0% of Family Assets).

55.     Although Susan contacted defendant Downes seeking representation for herself (because she did not want to relinquish control to William, account fully for her

actions, or make full restitution for the trust assets she misappropriated/converted), Defendant

Downes suggested they mutually exploit elderly, vulnerable Irene Rupert, as part of the

scheme to cover up and conceal Susan's wrongdoing, and maintain Susan's control of all

assets and records (without accountability), through a scheme to interfere with William's

trusteeships and expected inheritance (under the Michigan estate plans of Samuel and Irene

Rupert). The deal they worked out was that Susan would pay a disguised bribe to Defendant

Downes, and in exchange he would misrepresent the facts and the law to Irene Rupert, to

make her think that it was William who was being unreasonable by asking Susan to account,

share information, and produce her credentials to be in charge. This false information made

Irene Rupert think she needed to execute new estate plans, to protect and shield Susan from

William's "unreasonable attacks and demands". The truth, of course, is that William was a

permissible distributee of the irrevocable Samuel Rupert Family Trust, so he was entitled to

the accounting and trust information he requested, and Susan, as the acting trustee for both

trusts (which she combined in her 05/12/09 accounting), had a duty to provide the documents

and trust administration information William requested, under the terms of the Trusts, under

Michigan law, under Oregon law, and under California law. Moreover, defendant Susan put

William on "inquiry notice", when he received the defective and inadequate "accounting"

from her, on May 12, 2009, which imposed a duty upon William, to ask questions and

investigate the matter.

56.     Irene Rupert relied upon Defendant Downes' opinion and misrepresentations

of law and fact, when he opined that William was making unjustified demands and attacks

upon Susan, and that Irene "remains" the trustee of the Samuel Rupert Trust. Irene agreed to

take Susan's side against William, by taking him out of her Will, if necessary. Defendant

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

Downes had Irene Rupert sign a retainer agreement, hiring him to draft new estate plans for her, under the new Oregon Trust Code. Defendant Downes also suggested the new estate plans include *in terrorem* provisions, under which William would be disinherited if he continued seeking information and documents from Susan. The price for this estate planning was grossly inflated by Defendant Downes, who charged 4 or 5 times the normal rate for the services he provided, so as to disguise the bribe being paid to Defendant Downes (for misrepresenting the facts and the law to his own purported client), which Susan willingly paid (without telling Irene the legal fees were 4 or 5 times the normal rates for such documents), out of the funds she was administering, in order to retain her wrongful control of all assets and all of Samuel Rupert's confidential estate planning documents (including his Schedule A files, listing the assets transferred to the trusts, from time to time, subsequent to 1995).

57.    On June 9, 2009, Defendant Downes used the aforementioned fraud and deceit to cause Irene to execute a new Oregon trust agreement and a new Oregon will, under which Defendant Susan became her trustee and first choice to be personal representative. Defendant James was Irene's new second choice to be her Administrator, and the estate documents stated that under no circumstances would Plaintiff William ever become the Administrator.

58.    On June 10, 2009, Defendant Downes faxed and used the United States Postal Service to mail a threatening and fraudulent letter to Plaintiff William, that included extortionate speech which is a violation of California's criminal extortion statutes, as the letter informed Plaintiff William of a number of things, including the fact that the Samuel Rupert Trust had not, and was not going to be, fully funded in accordance with the late Samuel J. Rupert's express written intentions that all his assets be funded into the Family Trust. Whereas the financial summary from Defendant Susan showed 100% of the Family Assets being

43

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

attributed to the Irene E. Rupert Trust, and 0% to the Family Trust, this June 10, 2009 letter represented that 10% of the Family Assets were going to be allocated to the Family Trust, and 90% to Irene E. Rupert's estate or trust.  This particular letter contains no fewer than 8 material misrepresentations of fact, and/or law, which were communicated to Irene Rupert, by Defendant Downes and Defendants Susan and James, to fraudulently induce her to execute drastically different Oregon estate plans (after her formal diagnosis of Alzheimer's Disease dementia), at great expense, for the illegal purpose of shielding an intermeddling trustee *de son tort* from her statutory and common law duty to: (1) relinquish control of trust assets and records, to William; (2) fully account for all assets and records; and, (3) make full and complete restitution of all misappropriated trust assets that should have been funded into the Samuel Rupert Family Trust.

59.    More specifically, the 8 material misrepresentations of fact, and/or law, both explicit and implicit, which were reasonably relied upon by the late Irene E. Rupert, are set forth within the body of the letter dated June 10, 2009, by defendant Downes, and are as follows:

(A)    Irene Rupert is the trustee, and remains the trustee, of the Samuel Rupert Trust (explicit falsehoods);

(B)    Irene Rupert is the trustee of the Irene Rupert Trust (explicit falsehood);

(C)    Irene Rupert ratified "all action taken with respect to either trust", by defendant Susan (explicit falsehood);

(D)    The Irene Rupert Trust "will have substantially all the family assets in it" (explicit falsehood);

(E)    The Samuel Rupert Trust has "less than $100,000," (explicit falsehood);

(F)    The document entitled "Amendment to Trust Agreement", dated January 11, 2009 (by which defendant Susan purported to illegally make herself the trustee of the Irene

Rupert Trust, u/a/d 11/01/95, on a unilateral basis), is a document that actually pertained to the Samuel Rupert Trust (explicit falsehood);

        (G)      Irene Rupert can, and will, take court action to modify the irrevocable Samuel Rupert Trust, to make Susan the trustee instead of William, if William refused to promptly sign and return the Modification of Trust document to defendant Downes, by 06/19/2009.  (explicit falsehood);

        (H)      Plaintiff William Rupert was way out of line when he objected to the accounting defendant Susan sent him on 05/12/09, as the self-professed "successor trustee", and his requests for information and documents from Susan, in his 05/17/09 letter of objections (concerning her authority to be the acting trustee, and her administration of $900,000 in assets), can be correctly characterized as unreasonable "allegations, accusations and demands", which justify William's disinheritance, because they never should have been made by William. (implicit falsehood, to be drawn from the totality of the 06/10/09  extortion letter that defendant Downes signed, mailed and faxed to William, with copies of the letter mailed to Irene Rupert, and wired to defendant Susan, and to defendant James).

    60.    The aforementioned 8 material misrepresentations of fact, and/or law, both explicit and implicit, were made by defendant Downes with full knowledge of the falsity of the assertions, or recklessly, without adequate or reasonable investigation into the truth of what was being asserted, for the following reasons:

        (A)      Irene Rupert rejected her nomination to be the successor trustee of the Samuel Rupert Trust, by failing to accept, within a reasonable time, or ever (either formally, by notice, or informally, by her actual performance of the duties of the successor trustee);

        (B)      Irene Rupert also effectively resigned as trustee of the Irene Rupert Trust,

when she allowed defendant Susan to become the acting trustee, when Susan and her husband Bob seized all estate plans and records, for both trusts, and relocated the principal place of administration of both trusts, to Susan's residence in Multnomah County, subsequent to the death of Samuel Rupert on 10/12/08;

(C)     Irene Rupert did not legally ratify "all action taken with respect to either trust", by defendant Susan, because defendant Susan never bothered to account for her actions, such that Irene Rupert's nonspecific blanket "ratification" is no ratification at all.  A lawful "ratification" requires specific knowledge, by the person purporting to be doing the ratifying, of the specific transactions that are being ratified.  Both Trust instruments prepared by defendant Downes contain illegal, non-specific, "blanket" ratifications, of whatever Defendant Susan may have done, or not done, while wrongfully intermeddling as a trustee *de son tort,* and misappropriating trust assets by overfunding the Irene Rupert Trust (100%), and underfunding the Samuel Rupert Family Trust (0%).  Moreover, following her formal diagnosis with Alzheimer's Disease Dementia, it is unreasonable to presume that the "blanket" ratifications in the Trust instruments were preceded with detailed and specific information regarding the transactions to be ratified, because Defendant Downes made no reasonable, independent investigation into the propriety of the actions and inactions of Defendant Susan, from 10/12/2008 to 05/12/09 (and continuing).  Instead, as part of the scheme with Defendant Susan, Defendant Downes chose to blindly accept Susan's version of how and why the trust assets had been allocated so disproportionately, instead of exercising the requisite oversight one would expect.  Defendant Downes acted recklessly, fraudulently, and/or negligently and irresponsibly by asserting his purported client had become the successor trustee of the Samuel Rupert Trust, when there has never been one scintilla of evidence to show a lawful acceptance.  Moreover,

arguing *arguendo,* for the late Irene Rupert to replace defendant Susan (whose wrongful trusteeship had been exposed by William's 05/17/09 letter of objection), would have triggered the requirements of Section 11(2) of the terms of the Trust, under which Defendant Susan had a duty to prepare "a final account", for her mistaken period of trust administration.  Because the whole purpose of Defendant Downes' "sham" representation of Irene Rupert was to aid and abet Defendant Susan's desires not to fully "account", and that objective has been achieved (to date), there was nothing of any substance, objectively, for the late Irene Rupert to be informed of, and knowingly "ratify" and approve.  The purported "ratifications" are void *ab initio.*

(D)   The Irene Rupert Trust would not have had "substantially all the family assets in it", if the late Samuel J. Rupert's written estate plans had been recognized, honored, and implemented, during the first 7 months after his death on 10/12/08.  This material misrepresentation of the assets rightfully belonging to the Irene Rupert Trust, was either a knowing falsehood, or recklessly made without a reasonable and/or adequate investigation into the truth or falsity of the matters being asserted.  Either way, it was part of the scheme to aid and abet, and/or conspire with, Defendant Susan, in her breaches of trust, as an intermeddling trustee *de son tort*;

(E)   The Samuel Rupert Trust would not have had "less than $100,000,", if the late Samuel J. Rupert's written estate plans would have been recognized, honored, and implemented, during the first 7 months after his death on 10/12/08.  This material misrepresentation of the assets rightfully belonging to the Samuel Rupert Trust, was either a knowing falsehood, or recklessly made without a reasonable and/or adequate investigation into the truth or falsity of the matters being asserted.  As Defendant Downes testified on 10/27/2010, he did not independently perform any type of due diligence to determine how the combined

assets of Samuel Rupert and Irene Rupert should have been allocated to their respective estates and trusts (such as reviewing documents and financial records, or retaining a forensic accountant for that purpose).  Instead, knowing full well that Susan was unreliable and had been an intermeddling trustee *de son tort,* who was guilty of misfeasance, malfeasance and nonfeasance during the first 7 months after Samuel Rupert died, Defendant Downes recklessly and unreasonably relied upon Susan, as his source for how the combined family assets should, and would, be allocated, within the Oregon estate planning documents he prepared.  Defendant Downes simply rubber-stamped, and whitewashed, the wrongful misconduct by Susan, knowing full well that she was unreliable and had misappropriated trust assets and overfunded the Irene Rupert Trust, to the detriment of the Samuel Rupert Trust, and William.  The ratification claim by Defendant Downes was made as part of the scheme to aid and abet, and/or conspire with, Defendant Susan, in her breaches of trust, as an intermeddling trustee *de son tort.*

(F)     The document entitled "Amendment to Trust Agreement", dated January 11, 2009 (by which defendant Susan purported to unilaterally make herself the trustee of the Irene Rupert Trust, u/a/d 11/01/95), has nothing to do with the Samuel Rupert Trust, which is not mentioned or referenced anywhere within the illegal Trust document, that Defendant Susan recklessly had notarized at Umpqua Bank, and then used to overfund the Irene Rupert Trust (resulting in the underfunding of the Samuel Rupert Family Trust);

(G)     Under the Oregon Trust Code, Irene had no court options to pursue, because the law does not allow an irrevocable trust to be modified in a significant manner that is contrary to the terms of the trust, as was sought in this case, without the consent of *all* qualified beneficiaries.  The suggestion that Irene had any legal options that could reasonably and productively be pursued, in court, if William did not give his consent, was knowingly false.

1           (H)    Plaintiff William Rupert was put on "inquiry notice", by defendant

2    Susan, in April and May of 2009, of her possible malfeasance, misfeasance and/or nonfeasance,

3    while the acting trustee and occupant of the Office of the Trustee, for both the irrevocable

4    Samuel Rupert Trust and the revocable Irene Rupert Trust, such that William's written requests

5    for a full and legitimate accounting, and for Defendant Susan to produce her credentials to be in

6    charge, cannot reasonably, and accurately be described or characterized as unreasonable

7    "allegations, accusations and demands", which justified William's disinheritance.  William's

8    requests for trust asset and trust administration information, from the acting trustee who put him

9    on "inquiry notice" of possible breaches of trust, were perfectly reasonable, and justified.  In

10   fact, as a matter of law, William had a duty to investigate Susan's administration of the trust

11   assets, after she put him on "inquiry notice", by mailing him her defective and inadequate

12   accounting, on May 12, 2009.  Moreover, William shouldn't have been required to ask

13   Defendant Susan to provide him with this information, more than seven months after she

14   became the acting trustee, because the terms of the Trusts, and the statutory law of the States of

15   Michigan, and Oregon, require a trustee to identify themselves, and inform the qualified

16   beneficiaries of the trust, within a reasonable time, after becoming the trustee of either an

17   irrevocable trust, or a revocable trust (if not the Settlor).

18          61.    But for the 8 material misrepresentations of fact, and/or law, specified above,

19   which were obviously made to Irene Rupert, prior to Defendant Downes' threatening letter to

20   William, dated June 10, 2009, the late Irene E. Rupert would not have retained Defendant

21   Downes to prepare the drastically different Oregon estate plans, which she ultimately executed

22   on 06/09/09 and on 07/23/09, and Plaintiff would not have been disinherited from the 90% of

23   the combined assets of the late Samuel and Irene Rupert, which Defendant Susan wrongfully

49

over-funded into the Irene Rupert Trust (and Downes failed to fully correct, by making full restitution to the Samuel Rupert Family Trust).

62.    William refused to be extorted into signing the insulting Modification of Trust document he received, which certainly did not represent his late Father's wishes and desires, and informed defendant Downes, in a letter, that Irene Rupert had Alzheimer's Disease, and was susceptible to Susan's influence, so he should void the documents he prepared, and return Irene Rupert's money to her.  William also advised defendant Downes that he was interfering with William's economic relations and prospective economic advantage, including his vested and prospective inheritance rights, and his trusteeship interests (as a paid position), through independently wrongful conduct (material misrepresentations to Irene Rupert, to induce her to execute the draconian estate plans under which William was able to be disinherited from the Irene Rupert Trust; for persisting in seeking the Trust asset and administration information, from Defendant Susan, which she had a legal duty and obligation to provide, with regards to the Samuel Rupert Family Trust – after she put him on "inquiry notice" of her egregious mismanagement of assets).

63.    In a continuing effort to fulfill his duty to investigate Defendant Susan's administration of Samuel and Irene Rupert's assets and financial affairs, Plaintiff William sent a letter of inquiry to the Michigan law firm, and attorney (Alan Price), that prepared the 1995 estate plans, and the 2004 amendments and codicils naming William as the child to be in charge, ahead of Susan.  William sent copies of this letter of inquiry to Defendant Susan, but not to Defendant Downes.  Upon receiving her copy of the letter of inquiry, Defendant Susan immediately contacted defendant Downes (by either email, fax or phone), and he immediately wired and mailed his own letter to the Michigan law firm, wherein he fraudulently asserted that:

(1) the late Irene E. Rupert was the Successor Trustee of the Samuel Rupert Trust; (2) he represented Irene E. Rupert in her capacity as the Successor Trustee of the Samuel Rupert Trust; and, (3) the Michigan law firm was instructed not to share any information with Plaintiff William.  The Michigan law firm subsequently mailed a polite letter to Plaintiff William, which acknowledged they had been instructed not to share any information with Plaintiff William, and stated they were going to comply with the instructions from Defendant Downes.  Plaintiff was advised to seek legal representation, from a qualified Oregon attorney-at-law.

64.     In response, on 06/22/09, a tort lawsuit was commenced by plaintiff William, as a federal diversity action for interference with economic relations, and conspiracy, as USDC NDCA Case No.5:09-cv-02758 JF (RS), seeking damages and punitive damages from Defendant Susan, Defendant Downes and Defendant Schulte.  Upon commencing this action, William did not obtain any summons, and the Complaint was not served upon any of the defendants.  This was because William realized the federal court would not be able to grant all the relief he sought (concerning the occupancy of the Office of the Trustee, for the Samuel Rupert Trust, after it became irrevocable), unless Irene Rupert was joined as a party, and unless Plaintiff formally accepted his nomination.

65.     On 07/08/09, William's acceptance of trust notices were delivered to all of the qualified beneficiaries of the Samuel J. Rupert Trust, and William became the lawful occupant of the Office of the Trustee, which had been legally vacant, after the death of Samuel J. Rupert on 10/12/08.  As a matter of law, it was vacant while occupied by Susan, because her status as a mere intermeddling trustee *de son tort* only made her a trespasser, or squatter; but she had never been the lawful occupant of the Office of the Trustee.  Nor did Irene ever become a lawful occupant of the Office of the Trustee, for the Samuel J. Rupert

Trust, through her lawful acceptance (either formally, by notice, or informally, by the actual performance of the duties of the Successor Trustee).  Unfortunately, after William's acceptance of trust, Susan still refused to cooperate, or speak, or communicate in any way with William.  She also refused to turn over the late Samuel Rupert's confidential financial records and estate plans, including his Schedule A files, listing the assets of the Trusts.  Susan had a duty to turn over and disclose the Schedule A files, because she told William she had them in her possession, and that it was a thick file, during the conversation William had with Susan on 01/12/09, in her kitchen, when William was first shown a copy of the terms of the trust for the Irene Rupert Trust, and he noticed that it had a blank Schedule A page, and expressed concern that the trust may not have been properly funded.

66.     Around this same time, in late June or early July of 2009, Defendant James discovered the existence of the federal diversity tort action William commenced on June 22, 2009 (but never served), while searching for information on the internet.  Defendant James conveyed this information to Defendant Susan, either electronically (wire) or by mail.  In turn, Defendant Susan contacted Defendant Downes, and they conferred upon how to respond to this new development.  Defendant Downes suggested they further deceive the late Irene Rupert, by telling her William's federal lawsuit was unfounded, baseless and outrageous, and thereupon persuading her it would be in her best interest to amend her Oregon Trust instrument to expand the *in terrorem* provisions, by making the act of service of the complaint in the federal lawsuit (*Rupert* I), another disinheritance event.

67.     On 07/23/09, Defendant Downes prepared an amended Trust agreement, and through his continued misrepresentation of material facts, and the relevant laws of the State of Michigan and the State of Oregon, to his "sham" client Irene E. Rupert, he and Defendant Susan

were able to obtain her signature upon the amended trust instrument.  The major revision in this amended Trust instrument was the expanded *in terrorem* clause, which was now designed to be triggered by William's mere service of a summons and his complaint, in the federal tort lawsuit William commenced on June 22, 2009 (in *Rupert I,* accusing Susan of breaches of trust and fraud and deceit, as an intermeddling trustee *de son tort*).  Once again, defendant Downes charged 4 or 5 times the going legal rate (from a top notch estate planning law firm), and Defendant Susan willingly paid it, out of the funds she was administering in a fiduciary capacity.  Defendant Susan paid Defendant Downes roughly $13,000.00, for preparing the Oregon Trust instruments in June and July of 2009.  The reasonable value of the services required to prepare these two Oregon Trust instruments is only around $3,000.00,  at the most. In effect, Defendant Susan overpaid Defendant Downes by around $10,000.00, as a hidden bribe, so Defendant Downes would make his material misrepresentations of law and fact to Irene Rupert, and induce her to execute the new Oregon estate plans that benefited Defendant Susan, and damaged Plaintiff William.

68.    Significantly, during Irene E. Rupert's "sham" trusteeship of the Samuel Rupert Trust, which was fraudulently asserted by Defendant Downes (and many other attorneys-at-law over the last 4 years), she never sent any notices to any of the beneficiaries and/or permissible distributees.  No accountings were prepared, not even the annual account which is required by both Michigan and Oregon law, from all successor trustees of irrevocable trusts.  Irene E. Rupert was fraudulently led to believe that she had something to fear, if Plaintiff William acquired the same information that Defendant Susan had; and she was also fraudulently led to believe that Defendant Susan was entitled to all the powers of a fiduciary representative, without any of the burdens and obligations of a fiduciary representative, to account fully to the

beneficiaries and permissible distributees, for her actions.

69.     Also on 07/23/09,  plaintiff William filed his First Amended Complaint ("FAC"), in the federal lawsuit known as *Rupert I*, while Irene E. Rupert was still alive, and she was made a party to the amended pleadings' Declaratory Relief remedy.  Only the declaratory relief remedy within the FAC named Irene E. Rupert (against whom damages were not sought), as William sought to resolve *inter alia* the disputes over: (1) who, if anybody, had legally occupied the Office of the Trustee, for the Samuel Rupert Trust, from 10/12/2008 to 07/08/09; (2) who was the lawful occupant of the Office of the Trustee, for the Samuel J. Rupert Trust, subsequent to July 8, 2009; (3) did Defendant Susan have "unclean hands", based upon her wrongful intermeddling as a trustee *de son tort;* and, (4) was Defendant Susan required to fully account for her administration of Trust assets, as demanded by Plaintiff.

70.     William caused the FAC to be served upon all named defendants, and took special care to ensure that constructive service was made upon the late Irene Rupert, so as to avoid any embarrassment to her.  Personal service was made upon the other defendants, in USDC NDCA Case No.: 5:09-cv-02758 JF (RS).

71.     However, the FAC which was filed on July 23, 2009 in USDC NDCA Case No.: 5:09-cv-02758 JF (RS) never got past the pleadings stage, as all defendants in that action (Defendant Susan, the late Irene Rupert; as represented by current Defendants Zusman, Markun and non-party co-conspirator Eng; and Defendant Downes, and Defendant Schulte, as represented by non-party co-conspirators McMonigle, MacGregor, Hong and Long & Levit, LLP, respectively), participated in a Joint Motion to Dismiss, which asserted the exercise of personal jurisdiction over them would be unreasonable, because they had insufficient contacts with the State of California.  In support of their Joint Motion to Dismiss, under FRCP §

12(b)(2), knowingly false declarations were procured and filed with the Court, wherein it was contended that there hadn't been any trustee, or trust administration activity, in California, because the trustee, and all trust assets had been located in Oregon (and at the time this assertion was made, William did not have access to the information from Charles Schwab Institutional, which subsequently showed these representations were deliberate, or recklessly made, falsehoods).  Ninety (90) year old, Alzheimer Disease stricken Irene E. Rupert was deceived and used as a stooge and pawn, when she was deceived into executing a sworn declaration in support of the motion, wherein she falsely swore that she was the Successor Trustee of the Samuel Rupert Trust, all assets were in Oregon, and none of the disputed or relevant assets were located in California.

72.     More specifically, on November 4, 2009, RICO Defendant Zusman and Defendant Markun, knowingly, or recklessly (without a reasonable investigation or grounds to belief the truth of what was being asserted), electronically filed, and served by mail, the Declaration of Irene E. Rupert, and the Declaration of Susan Bond, both of which falsely claimed, or implied, that the trustee was Irene Rupert, and the assets, of the Samuel Rupert Trust were located in Oregon, not California.  RICO defendant Zusman, and defendant Markun, either knew, or should have known, that the trustee (William Rupert), and the assets (Charles Schwab Institutional brokerage account 2724-XXXX), were located in California, not Oregon. The location of a trust's assets and the identity and location of the trust's trustee, are significant and material jurisdictional facts, as established by the case of *Hanson v. Denckla,* 357 U.S. 235, 250-51 (1958).[19]  Irene E. Rupert's signature upon her false declaration was obtained by

---

[19]  In this case, the high court rejected the "domicile at death" ground, for Florida's purported exercise of jurisdiction over out-of-state trust property and a trustee in Delaware, after Delaware's refusal to give the Florida judgment full faith and credit landed the dispute in the

material misrepresentations of fact (direct or implied), by her own attorneys, Defendant

Zusman, non-party co-conspirator  Eng, and Defendant Markun (in conspiracy with Defendants

Susan, Downes, and Schulte, and non-party co-conspirators Eng, McMonigle, MacGregor,

Hong and Long & Levit).

73.     The Joint Motion to Dismiss was also supported by the Declaration of  Gile R.

Downes, wherein he falsely swore to the fact that Irene Rupert was the Successor Trustee of the

Samuel Rupert Trust, and that he represented her in her capacity as the Successor Trustee of the

Samuel Rupert Trust.  However, there has never been one scintilla of evidence to show that the

late Irene Rupert ever lawfully became the Successor Trustee, after the death of Samuel Rupert,

by either notice, or performance.  Non-party co-conspirators McMonigle, MacGregor, Hong

and Long & Levit either knowingly, or recklessly, without any reasonable basis to believe Irene

Rupert had ever been the Successor Trustee of the Samuel Rupert Trust, mailed the false

Declaration of Gile R. Downes, to William and electronically filed it with the federal court in

San Jose, California.

74.     On 01/08/10, Judge Jeremy Fogel conducted a hearing on the motions to dismiss,

in the federal tort lawsuit, for lack of personal jurisdiction over the Oregon defendants.  During

these proceedings, upon the joint motion to dismiss, all defendants continued to argue that the

trustee, the trust assets, and all trust administration activity, had been in Oregon, not California.

In arguing the motion, Defendant Zusman and non-party co-conspirator MacGregor falsely

---

United States Supreme Court. Ultimately, the high court ruled against Florida, even though
the trust's settlor had been domiciled in Florida at death, and a will she executed in Florida
was admitted to probate in Florida.  In the instant case, Oregon's connections with the Samuel
Rupert Trust are weaker than the settlers connections to Florida in *Hanson v. Denckla,*
because the late Samuel Rupert never executed any Oregon Estate plans, and his Will was
never admitted to probate in Oregon.  Nor was Irene Rupert's Will admitted to probate in
Oregon.

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

argued *inter alia* that Irene Rupert was the successor trustee of the Samuel Rupert Trust[20]

(without a reasonable investigation or grounds to belief the truth of what was being asserted),

whose actions all took place in Oregon.  Defendant Zusman further argued that the "cease and

desist" type letters that William received from Defendant Downes were insufficient to create

personal jurisdiction under the modified *Calder*-effects test of *Yahoo!, Inc. v. La Lique Contre*

*Le Racisme,* 433 F.3d 1199 (2006), because they were not combined with any legal

instrumentalities from Oregon, that were attempted to be used against William in California.

Judge Fogel heard the motion and took it under submission, while commenting that the matter

was a close call.  Pursuant to the stipulation that was agreed to by all parties, or their legal

representatives, ADR mediation efforts were to be pursued first, prior to Judge Fogel rendering

his ruling upon the motion.

      75.     Also during the month of January, 2010,  91 year old Irene Rupert, who had

never been a smoker, was diagnosed with terminal, stage 4, lung cancer.   William agreed to

travel to the Portland, Oregon area, voluntarily, after learning that Irene Rupert could not travel.

Plaintiff agreed to participate in mediation efforts that were to be conducted by Senior Ninth

Circuit Justice Edward Leavy.  During phone conferences with ADR coordinator Daniel

Bowling, Defendant Zusman stated that Defendant Whitman was going to attend, and

participate, as part of the Defense team, so he could be a resource, as an expert upon trust

litigation in Oregon.  Ultimately, a pre-mediation phone conference was conducted, by Senior

Judge Leavy, but ultimately the mediation efforts fell apart, following the death of Irene Rupert

on March 12, 2010.  No mediation sessions were conducted.

---

[20]  Defendant Zusman stated the following to Judge Fogel, at the hearing on January 8, 2010:
      "Irene Rupert is still alive.  And she is still the trustee of the two trusts with all the
      rights, powers and authorities of a person in that position."
      (Reporter's Transcript; January 8, 2010; p. 21:18-21)

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

76.     On 02/10/10, defendant Downes and defendant Susan met with defendant Whitman, over the phone and in person, to start plotting and scheming how to misuse Oregon law (as a bludgeon), and abuse the legal process in Oregon, against William, preemptively, as soon as Irene E. Rupert passed away; and her "sham" trusteeship of the Samuel Rupert Trust could no longer be used to shield Defendant Susan's wrongdoing, from William's scrutiny. Defendant Whitman was recruited, in part, because of his reputation as an aggressive litigator, and one of the premier trust litigation experts in the State of Oregon.  Defendant Whitman also possessed the appropriate eagerness to board the disinheritance bus, that Defendants Susan and Downes wanted him to recklessly drive, using the *in terrorem* clauses drafted by Defendant Downes, on 07/23/09 (which are clearly contrary to Public Policy), as the roadmap, and the mechanism to use to throw William under the disinheritance bus, and run him over.  Defendant Whitman also possessed the appropriate "errant lawyer" mindset, in that he sees nothing wrong with crafting *in terrorem* provisions as a part of a scheme to insulate stolen property from recovery, and the duty to make restitution.  Accordingly, he saw nothing wrong with the *in terrorem* provisions crafted by defendant Downes[21], which were designed to: (1) interfere with Plaintiff's ability to effectively function as the Successor Trustee of the Samuel Rupert Trust; and, (2) cause William's "civil death", to destroy his standing to complain about Susan's

---

[21]  In fact, during his closing arguments on 11/24/10, in the Oregon disinheritance action concerning the Irene Rupert Trust, u/a/d 07/23/09, defendant Whitman made the following revealing, and disturbing, comments, upon his view of the proper role of *in terrorem* clauses:

> "If his mother had taken something from him, something of value, if she had stolen a valuable necklace worth $2,000 from him, she could have said, 'And, by the way, I stole 2000 - a $2,000 necklace from my son, William, and if he takes any action, whatsoever, to get it back, I disinherit him from my estate.'  Because a testamentary plan is a plan of gifting, and you can put any condition, whatsoever, on a gift.

> Mr. Downes testified that he discussed exactly that with Irene Rupert in their first meeting on May 18[th], . . ."

(See Reporter's Transcript, 11/24/10, Vol. III-b; pp. 360:23-361:7; Clackamas Co. Cir. Ct. Case No. CV10030498; Oregon Court of Appeals Case No. A148529 (Control))

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

breaches of trust, misappropriations of trust assets, and the resultant overfunding of the Irene

Rupert Trust (90%), at the expense of the Samuel Rupert Family Trust (10%), and William's

remainder beneficiary interest therein.

77.     On March 12, 2010, the late Irene E. Rupert died, on a Friday.

78.     On March 15, 2010, defendant Susan, defendant Whitman and defendant

Cartwright commenced two limited trust proceedings, for declaratory judgments (not formal

probate proceedings, where a Will is admitted to probate).  One such action was entitled *In the

Matter of the Irene E. Rupert Trust, u/a/d July 23, 2009,* which was assigned Case No.

CV10030497; and the other action was entitled *In the Matter of the Samuel J. Rupert Trust,

u/a/d November 7, 1995,* which was assigned Case No. CV10030498.  Both pleadings under the

Oregon Trust Code were verified under penalty of perjury by Defendant Susan, and copies of

the pleadings were sent to Plaintiff by regular mail (without personal service of a summons).  In

Case No. CV10030498, Defendant Susan falsely verified, under penalty of perjury, the

allegation that the principal place of administration of the Samuel J. Rupert Trust was still in

Clackamas County, Oregon, as of March 15, 2010.  However, the truth is that Plaintiff William

unilaterally transferred the principal place of administration of the Samuel J. Rupert Trust to

California, as permitted by controlling Michigan law at the time, when he formally accepted his

appointment to be the successor trustee, effective July 8, 2009.   Moreover, the truth is also that

both trusteeships left Clackamas County, Oregon, immediately upon the death of Samuel Rupert

on October 12, 2008, when Defendant Susan began her intermeddling as a trustee *de son tort,*

which included her *de facto* unilateral transfer of the principal place of administration of both

Trusts, to her residence at 2430 SW Montgomery Drive, Portland, OR 97201, which is located

in Multnomah County, Oregon.

79.     Thereafter, Defendants Susan, Downes, Whitman and Zusman schemed (as evidenced by the Emails that were sent back and forth for a number of months, through Defendant Whitman), to wrongfully use, and in fact did wrongfully use, both extrinsic and intrinsic fraud[22] to obtain corrupt Oregon Trust Code declaratory judgments, concerning both Trusts.

80.     The first General Judgment obtained by extrinsic fraud came in Case No. CV10030497, concerning the Oregon Irene Rupert Trust, u/a/d July 23, 2009.   In that case, Defendant Whitman fraudulently told Plaintiff a number of things, that turned out to be false, and which combined to prevent Plaintiff from fully presenting his case, when it was rushed to an ambush trial on October 27, 2010, at only the second hearing in the case.  For instance, at the first hearing in the case, on May 12, 2010, Defendant Whitman fraudulently proclaimed that he would make formal discovery unnecessary (as soon as a responsive pleading was filed), by voluntarily producing the documents necessary to show that the late Samuel and Irene Rupert

---

[22]  Although the intrinsic fraud is not sufficient to support an independent action to invalidate the Oregon General Judgments, it is mentioned because it shows the bad faith, and malicious intent to abuse the legal process of the State of Oregon, to aid Susan in her trusteeship competition with Plaintiff.  For instance, Susan perjured herself when she verified the pleading concerning the Samuel Rupert Trust, that falsely stated the principal place of administration was still in Clackamas County, Oregon, on March 15, 2010 (when it had been transferred to California by Plaintiff, on July 8, 2009, when he effectively accepted his nomination to become the Successor Trustee of the Samuel Rupert Trust).  Also, Susan forged the Schedule A page of the copy of the Samuel Rupert Trust she submitted to the court as her Exhibit 70, which was admitted into evidence in Oregon, to make it look as if the late Samuel Rupert had only funded his Trust with a single brokerage account during his lifetime (thereby providing a basis for allocating 90% of the family assets to the Irene Rupert Trust, but only 10% to the Samuel Rupert Trust).  However, the single brokerage account in question, with Charles Schwab Institutional, was only opened in February of 2009, months after Samuel Rupert died, so the Schedule A page is an obvious forgery.  During post-judgment proceedings to settle the Reporter's Transcripts, before former Judge Maurer, Defendant Whitman filed papers that admitted the forgery was made by his client, Defendant Susan, before the forged Trust instrument was mailed to Plaintiff (after the death of Irene Rupert in March of 2010).

had purposefully arranged to hold all investments as Joint Tenants With Right of Survivorship ("JTWROS") (except for one brokerage account belonging to the Samuel Rupert Trust), and these documents would explain why the assets had been allocated so disproportionately between the Irene Rupert Trust and the Samuel Rupert Trust, by Defendants Susan and Downes. This fraudulent promise was repeated in letters Defendant Downes sent to Plaintiff during the summer of 2010. However, after Plaintiff filed his responsive pleading, the voluntary production of documents that took place in late July of 2010, consisted of a CD onto which 2,044 pages of largely irrelevant documents had been scanned. The Plaintiff reasonably considered that Defendant Whitman might be telling the truth, and if he was, the Plaintiff was willing to accept the manner in which his late parents had arranged their financial affairs. Because of the uncertainty which was created by Defendant Whitman's fraudulent statements, inside and outside of court, the Plaintiff postponed his search for an Oregon lawyer to represent him, or for a Forensic Accountant, to assist in the case, until he had the opportunity to review all 2,044 pages which were scanned onto the CD that was mailed to him in California.

81.     Meanwhile, in *Rupert I,* by Order dated September 9, 2010, United States District Court Judge Jeremy Fogel granted the Joint Motions to Dismiss, in a well-reasoned ruling that relied upon the false representations that Irene Rupert, located in Oregon, was the Successor Trustee of the Samuel Rupert Trust, and there were no disputed or relevant assets located in California, to find that the exercise of personal jurisdiction by California, in the action founded upon diversity jurisdiction, would not be reasonable, because there were not sufficient contacts, and a sufficient "nexus" with the forum state (California). The dismissal was not on the merits, and has no preclusive effect upon the instant case, which is premised upon "federal question", not "diversity" jurisdiction (and new facts are alleged).

82.     A couple weeks later, Plaintiff finished his intensive review of the documents which were scanned onto the CD that Defendant Whitman provided him in late July, 2010. When the review was complete, many questions remained unanswered, and the records only showed that the late Samuel and Irene Rupert had owned 2 small bank accounts in Oregon as JTWROS, and these 2 accounts only made up about 10% of the Family Assets ($85,664.00). Additional fraudulent representations, by Defendant Whitman, took place in the series of letters he mailed to Plaintiff (but did not file with the Court), during the summer of 2010, wherein he fraudulently stated that the case could not, and would not, proceed to trial until the mandatory Settlement Conference was conducted.  In reliance upon the fraudulent representations from Defendant Whitman, in the letters he mailed to Plaintiff, when Plaintiff received a "Notice of Scheduled Court Proceedings", dated September 3, 2010, which advised Plaintiff a "Hearing" was scheduled for October 27, 2010, the Plaintiff reasonably believed it was a status conference, or a case management conference, where the required Settlement Conference might be discussed.

83.     Also, Plaintiff's review of the CD showed that there had been extrinsic fraud upon the court, in the *Rupert I* proceedings before Judge Fogel, because Defendant Susan, and her attorney Defendant Zusman, concealed important information Susan had a fiduciary duty to disclose, concerning the important *Hanson v. Denckla,* 357 U.S. 235 (1958) jurisdictional factors (identity of trustee, location of trustee and location of trust assets).  The CD included documents that showed significant assets, in excess of  $400,000.00, had been located in the State of California, since February and March of 2009, in brokerage accounts held with Charles Schwab Institutional, contrary to what Judge Fogel was led to believe at the hearing on January 8, 2010, by the arguments presented by Defendant Zusman and non-party co-conspirator Jessica

R. MacGregor, in bad faith[23].   Accordingly, the dismissal of Case No.: 5:09-cv-02758 JF (RS) was due to the extrinsic fiduciary fraud upon the court, and upon William, through the materially false Declarations of Irene E. Rupert[24], of Defendant Susan, and of Defendant Downes, which were electronically filed in the case by defendant Zusman, in support of the joint Motion to Dismiss, and served by mail upon William.

84.     Plaintiff also realized that formal discovery would be necessary in the Oregon actions.  On or about October 13, 2010, Plaintiff retained the services of Oregon lawyers Anthony Dal Ponte and Victoria Blachly, of the law firm Samuels, Yoelin, Kantor, LLP. Plaintiff thereafter signed their retainer agreement and sent them an initial retainer check for $1,500.00 (until Plaintiff could sell some stock and provide them with a larger retainer amount). Ms. Blachly told Plaintiff that undue influence cases required extensive discovery, so a significant retainer was required, in the case.  Plaintiff also made arrangements with his new lawyers, whereby they were going to attend the status conference on October 27, 2010, without the Plaintiff personally traveling to Oregon, for this initial status conference in the case.

85.     However, on October 19, 2010, a 48 minute phone conversation took place between Defendant Whitman and Anthony Dal Ponte, wherein Defendant Whitman explained that a full blown trial was going to be conducted on October 27, 2010 (not a status conference),

---

[23]  Willful ignorance is a type of bad faith misconduct, by an attorney-at-law.

[24]  While the Declaration of Irene E. Rupert, dated November 3, 2009 asserted that Irene had "never owned any property located in California" and that "All the property in my late husband's estate is located in Oregon.  No estate property is located in California.", neither of those statements were truthful or accurate.  At the time she made the false declaration, which her attorneys filed, and Judge Fogel relied upon, the truth is that Irene Rupert owned two brokerage accounts located in San Francisco, California, held by Charles Schwab Institutional, and her late husband's property included another brokerage account located in San Francisco, California, held by Charles Schwab Institutional.  The combined value of these accounts, which were transferred from either Michigan or Ohio, to California, in February and March of  2009, was well in excess of $400,000.00.

and he also fraudulently represented that: (1) Plaintiff challenged his late mother's testamentary capacity in the pleadings he filed in *Rupert I,* and/or, in the Oregon pleading he filed; and, (2) Plaintiff caused his mother to be personally served with process, in *Rupert I,* in the community dining room of the retirement community where she resided – such that his disinheritance from his Mother's Oregon trust was inevitable, and richly deserved.  However, both assertions were knowingly false.  In reliance upon the misrepresentations by Defendant Whitman, Oregon lawyer Victoria Blachly faxed and mailed a withdrawal letter to Plaintiff on October 20, 2010, wherein she informed him that: (1) the October 27, 2010 hearing wasn't a status conference, it was the full blown trial on the merits in the case; and, (2) Plaintiff was on his own, because they were withdrawing from the case, and abandoning the Plaintiff, only a week before the trial date (although they were going to keep 80% of the $1,500.00 retainer check, which they did).

86.     When Plaintiff's efforts to obtain a postponement of trial were unsuccessful, the Plaintiff was unable to fully present his defense to the Court, due to: (1) lack of time to conduct reasonable and necessary discovery; (2) Susan's concealment of documents and materials she had a fiduciary duty to disclose and share with the Plaintiff; and, (3) the fact that Plaintiff was forced to proceed without representation by a qualified and experienced Oregon law firm, due to Defendant Whitman's wrongful and fraudulent interference with Plaintiff's attorney-client relationship with the Samuels, Yoelin, Kantor LLP law firm.  The wrongful ulterior motive was to rush these trust proceedings to trial as fast as possible (while lulling William into thinking the disproportionate allocation of assets between the Trusts may have been proper, and that no trial was on the horizon, because no settlement conference had been scheduled or conducted), in order to take the Plaintiff unfairly by surprise, and deprive him of the opportunity to gather and obtain the necessary documents, financial records, and medical reports that he needed in order

to exhibit fully his case, through representation by an Oregon law firm[25].  As such, extrinsic

fraud was utilized to obtain the General Judgment which was entered on January 4, 2011,

declaring Plaintiff's civil death in the State of Oregon, prior to the death of Irene Rupert on

March 12, 2010.

       87.     Additionally, upon learning of the planned trial proceedings, on October 20,

2010, Plaintiff made motions for a settlement conference, for designation as a complex case,

and for postponement of trial.  All of these motions were denied on October 26, 2011, by

Clackamas County Circuit Court Judge Steven L. Maurer, following Defendant Whitman's

wrongful and fraudulent *ex parte* contact with the Clackamas County Circuit Court on October

26, 2010, over the phone.  This wrongful and improper *ex parte* communication clearly

influenced Judge Maurer's decisions on October 26, 2010, when he exercised his discretion to

allow the Bum's Rush Ambush Expedited Bench Trial to proceed, to William's extreme

detriment.[26]  It appears that former Judge Maurer relied upon Defendant Whitman's false

recital of facts, which, if they would have been true, would have made William's eventual

---

[25]  As a result of Defendant Whitman's interference with Plaintiff's attorney-client
relationship with the Samuels, Yoelin, Kantor, LLP law firm, the voluntary appearances that
were made by Plaintiff in the Oregon proceedings, as an In Pro Per litigant, were only as a
remainder beneficiary of the Trusts.  However, Plaintiff, in his capacity as the Successor
Trustee of the Samuel Rupert Trust, never made any voluntary appearances in the cases,
because trustees are required to be represented by an attorney-at-law, and cannot represent
themselves as In Pro Per litigants.  Additionally, Plaintiff, in his capacity as the Successor
Trustee of the Samuel Rupert Trust, was never personally served with a Summons, with
regards to the cases which were commenced by Susan and James in Oregon, involving the
Samuel Rupert Trust.
[26]  Significantly, defendant Whitman admitted to this improper *ex parte* phone contact, to stop
the Bum's Rush Ambush Expedited Bench Trial from being postponed by Judge Maurer,
during his testimony on March 23, 2011, before Senior Judge Welch, at the hearing on
defendant Susan's request for a Supplemental Judgment awarding her attorney fees in the case
concerning the Irene Rupert Trust.  (See Reporter's Transcript, March 23, 2011, Vol. IV, p.
514:20-25)

disinheritance a slam-dunk, no-brainer type of situation[27], and if William was going to lose no matter what, any error would be harmless, even if William's constitutional right to a full and fair trial was violated by the Oregon Court.

88.    Moreover, in the Irene Rupert Trust case, the state court ruled that plaintiff William should be disinherited under the *in terrorem* clause contained in Irene E. Rupert's July 23, 2009 trust agreement, and treated as if he died prior to Irene E. Rupert.  The state court further ruled that this finding of "civil death", had the effect of destroying plaintiff William's "standing" to maintain the Affirmative Defenses, and Counter-Claims which he had filed in the state court action.  Accordingly, the merits of Plaintiff William's Affirmative Defenses and Counter-Claims were not addressed, considered, or adjudicated, in the Oregon state court proceedings.  A General Judgment was entered in this case on January 4, 2011.  No trust accountings were required or submitted by any party during this state court proceeding.  The plaintiff William filed a Motion to Vacate the General Judgment, which contended the judgment is void *ab initio,* based upon *inter alia,* the failure to join defendant James as a party in the declaratory judgment action, as required by well settled Oregon law, if subject matter jurisdiction is to be acquired.  The Motion to Vacate was denied, and is currently on appeal to the Oregon Court of Appeals, as Appeal A148714.  The Supplemental Judgment (Attorney Fees) is also on appeal, in the same appellate proceeding, where the appellate judgment has not

---

[27] The story concocted by defendant Whitman was that plaintiff William challenged the late Irene Rupert's capacity, in his federal lawsuit, and that he had the federal lawsuit personally served upon his late Mother in the dining room of the retirement community where she resided.  Neither assertion is true, but they were made because there are many cases where children have been disinherited for unsuccessful efforts to force a conservatorship upon their parents.  Defendant Whitman tricked former Judge Maurer into thinking William committed "suicide", and deserved to be disinherited, for making similar challenges to his late Mother's capacity, when the truth is that William never filed a pleading that challenged his late Mother's testamentary capacity, in either federal or state court.

yet issued, and the decision entered on September 5, 2013, Affirmed Without Opinion, is currently under reconsideration, by the Oregon Court of Appeals.

89.     Another corrupt General Judgment was also obtained, again through extrinsic fraud, in Oregon Case No. CV10030498, which was commenced by Defendants Susan and Whitman, by way of her pleading that falsely alleged the late Irene Rupert had been the Successor Trustee of the Samuel Rupert Trust for the entire 17 month period of time, between the death of Samuel Rupert on October 12, 2008, and the death of Irene Rupert on March 12, 2010[28].  In so doing, Defendant Susan breached her fiduciary duty to disclose: (1) that she had been the acting Successor Trustee of the Samuel Rupert Trust for the initial 7 months after her father died; and, (2) Plaintiff effectively became the Successor Trustee on July 8, 2009 (at which time he transferred the principal place of administration of the Samuel Rupert Trust to California).

90.     The extrinsic fraud further manifested itself, in Case No. CV10030498, after hearings were held on October 27, 2010, November 24, 2010, and March 23, 2011, before Senior Judge Elizabeth Welch, at which Defendant Susan was unable to prove the Samuel Rupert Trust was ready for final distribution.  Senior Judge Welch explicitly stated, at the hearing on March 23, 2011, after denying Plaintiff's renewed Motion to Dismiss for lack of fundamental jurisdiction, that the case was not over, and discovery was not closed in the case. Consistent with these findings, Senior Judge Welch even set a hearing date of May 11, 2011, for

---

[28]  Defendant Susan's pleading also falsely asserted she was entitled to the "immediate" distribution of her remainder beneficiary share, upon the death of Irene Rupert.  However, the terms of the Samuel Rupert Trust were attached to her pleading, and the terms of the Trust did not support her allegation, because the death of Irene Rupert did not trigger any entitlements to any "immediate and unconditional" distributions to Susan, or to anyone else.  As such, the pleading filed by Defendants Susan and Whitman, to commence Case No. CV10030498, is a "sham" pleading, which is objectively baseless, and which was filed for an improper motive, to interfere with Plaintiff's trusteeship in California, by a competitor in Oregon.

the motion to compel production of documents that Plaintiff anticipated would be necessary, to

address the issue of Samuel Rupert's missing Schedule A files, where the trust assets transferred

to his Trust, during his lifetime, were listed.  Subsequently, on April 4, 2011, Plaintiff filed his

Answer & Affirmative Defenses in the case (but not any counterclaims seeking relief).

However, the issues which were joined by the pleadings, on April 4, 2011, were never

adjudicated at a trial, or by way of a dispositive motion.  Instead, Defendant Whitman took it

upon himself to prepare and submit a General Judgment document to the Clerk's Office, which

was inadvertently and unwittingly signed by Senior Judge Welch.  Through this artifice, the

Plaintiff was denied the opportunity to have his full and fair day in court.  In fact, Plaintiff has

obtained the complete Reporter's Transcripts for every second of every hearing before Senior

Judge Welch, and these Reporter's Transcripts conclusively show that: (1) Senior Judge Welch

never announced the commencement of a trial, for Case No. CV10030498; (2) Senior Judge

Welch never rendered judgment in favor of Defendant Susan, in Case No. CV10030498; and,

(3) Senior Judge Welch never concluded any hearing by instructing Defendant Whitman to

submit a General Judgment to the Court, for her signature.  Under these circumstances, the

General Judgment which was improvidently signed and entered on April 28, 2011 was obtained

by Defendant Susan's and Defendant Whitman's extrinsic fraud upon the Court.

   91. The Plaintiff timely filed a Notice of Appeal, and the appellate judgment has not

yet issued.  A Decision was entered on September 5, 2013, whereby the lower court was

Affirmed Without Opinion.  That Decision is currently under reconsideration, by the Oregon

Court of Appeals.

   92. Yet another corrupt General Judgment was also obtained, again through extrinsic

fraud, in Oregon Case No. CV11050251, which was commenced by Defendants Susan and

James, on May 11, 2011, by way of their pleading that sought to remove the Plaintiff, in his capacity as Successor Trustee, without bothering to join him as a party in the action (in the capacity as Successor Trustee), where the Plaintiff only made a single appearance, in his capacity as a remainder beneficiary.  As such, he appeared as an In Pro Per litigant, upon a Motion to Dismiss, and objected to Oregon's exercise of fundamental jurisdiction over the Michigan Trust's non-Oregon assets, and over the Successor Trustee in California, based upon insufficient pre-litigation contacts with Oregon.  An examination of the procedural posture of this case reveals the extrinsic fraud upon the court, because of the following events: (A) after the August 31, 2011 hearing upon Plaintiff's Motion to Dismiss for lack of fundamental jurisdiction, which was denied by former Judge Maurer, the Plaintiff filed a Motion For Reconsideration, and Defendant Downes requested a hearing date from the Clerk's Office, for the purpose of taking Plaintiff's default, because no responsive pleading had been filed; (B) on or about September 17, 2011, the Clerk's Office sent out a Notice of Scheduled Court Proceedings, that informed the parties a "Hearing" was going to be conducted on October 12, 2011; (C) on September 23, 2011, the Plaintiff effectively abandoned his Motion for Reconsideration (and mooted Defendant Whitman's efforts to obtain Plaintiff's default), by filing his Answer & Affirmative Defenses, so that the case would be at issue, and his default could not be entered on October 12, 2011; (D) on September 26, 2011, the Plaintiff filed a Motion For Summary Judgment, which included a Request For Oral Argument; (E) Defendants Susan, James and Whitman never filed any opposition to the Motion for Summary Judgment; (F) the Clerk's Office never notified Plaintiff, in advance, that the Motion For Summary Judgment would be heard on October 12, 2011; (G) the Clerk's Office never notified Plaintiff, in advance, that a bench trial was going to be conducted on October 12, 2011.  Nonetheless,

former Judge Maurer was led to believe all matters were properly before him, and he summarily denied the motion for summary judgment, and then he conducted a purported bench trial, in the absence of the Plaintiff.  Former Judge Maurer signed another General Judgment, at the hearing on October 12, 2011, which was entered on October 14, 2011.  However, because of the lack of advance notice of trial to the Plaintiff (and the failure to join him as a party in the case, through service of process upon him in his capacity as the Successor Trustee), he did not travel to Oregon, and the resulting General Judgment which was entered was obtained by extrinsic fraud[29].

93.     Once again, the Plaintiff timely filed a Notice of Appeal, and the appellate judgment has not yet issued.  A Decision was entered on September 5, 2013, whereby the lower court was Affirmed Without Opinion.  That Decision is currently under reconsideration, by the Oregon Court of Appeals.

94.     Defendant James fully supported all of the Oregon litigation activities which Defendants Susan and Whitman engaged in, and he has ratified and expressed his support for their actions, in total, in written documents which were filed in Case No. CV11050251.[30]

---

[29]  One of the ulterior motives for filing the Petition in this case, was Defendant Susan and James desire to create a false judicial record of the late Samuel and Irene Rupert holding 100% of their property as Joint Tenants With Right Of Survivorship ("JTWROS"); except for a single brokerage account held in the name of the Samuel Rupert Trust.  However, Defendant Susan and Defendant Whitman's voluntary production of 2,044 pages of documents and financial records, on or about July 20, 2010, showed that only about 10% of their assets were held as JTWROS (2 bank accounts at Umpqua Bank, worth $85,664.00, combined).

[30]  James also participated in the conspiratorial scheme to underfund the Samuel Rupert Trust, and overfund the Irene Rupert Trust, by way of the Email he sent to William, wherein he also fraudulently asserted that the Samuel Rupert Family Trust had only been intended to be a small Family Trust.  He also denied that William had been stonewalled by defendants Susan and Downes, an apparent reference to the forged Schedule A page of the original Samuel Rupert Trust, u/a/d 11/01/1995 instrument, that Defendants Susan and Whitman mailed to William, shortly after Irene Rupert died, where the forged Schedule A page falsely made it appear that the Trust was only intended to be a small trust.

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

95.     After defendant Susan obtained her first judgment for attorney fees, on April 28, 2011, in Clackamas County Case No. CV10030497, she collaborated with Defendants Whitman and Johansson to engage in wrongful enforcement of judgment collection activities.  These wrongful collection activities commenced on May 11, 2011, when Defendant Whitman signed and mailed a document to plaintiff William which was entitled "Petitioner's Notice of Demand to Pay Judgment".  This notice demanded payment within 10 days, pursuant to Oregon Revised Statute ("ORS") 18.265(1)(a).  However, ORS 18.265(1)(a) has no extra-territorial effect, outside the State of Oregon.  To lawfully enforce an Oregon judgment in the State of California, the Oregon judgment is require to be domesticated in California, pursuant to the provisions of the California Sister-State Money Judgment Act (CCP §§ 1710.10 to 1710.65).

96.     Shortly thereafter, Defendants Whitman, Susan, Johansson and Cartwright conspired and agreed upon a scheme to abuse the garnishment process of the State of Oregon, and a process serving company located in the State of California, by foisting off Defendant Johansson's self-issued Writs of Garnishment, dated May 19, 2011, on May 27, 2011, in dealings with Eunice Attorney Services, 212 Laurel Street, Suite 207, Santa Cruz, CA 95060, wherein this professional process serving company (a member of NAPPS), was fraudulently, and in bad faith, given assurances by Defendant Johansson that the Oregon Writs of Garnishment could lawfully be served upon William Rupert, at his residence in Ben Lomond, California, in his individual capacity, *and in his capacity as the trustee of the Samuel Rupert Trust*, because Defendant Johansson certified that the property Plaintiff was controlling in the State of California was "lawfully subject to collection by this writ."  Eunice Attorney Services reasonably relied upon Defendant Johansson's fraudulent certification, and personally served the Oregon Writs of Garnishment on plaintiff William.  Had Eunice Attorney Services been told

the truth, that the Oregon Writs of Garnishment had no extra-territorial effect, outside of the State of Oregon, they would not have served the Writ of Garnishment upon William. As part of the scheme to deceive Eunice Attorney Services, so they would harass William by serving invalid documents upon him, Defendant Johansson used the telephone, or email, or fax, or the postal service, to contract with the California process serving company, and to physically transmit the Oregon Writs of Garnishment to Santa Cruz, CA, which were personally served upon William.

97.     On August 5, 2011, William mailed a letter to Defendant Johansson, with copies to Defendants Susan, Whitman and James, wherein he alerted these defendants to the facts that: (A) the Supplemental Judgment (Attorney Fees) was void *ab inito*; (B) even if valid, the Supplemental Judgment was not directly enforceable in California, until it was domesticated in California under the California Sister-State Money Judgment Act; and, (C) even if domesticated in California, William would be entitled to a stay of enforcement, upon his request, due to his pending appeal from the Supplemental Judgment in Oregon Court of Appeals No. A148714. The letter asked that Defendant Johansson stop annoying William with her improper, illegal and foolish enforcement efforts, that did not comport with either Oregon or California law.

98.     Nonetheless, ignoring the fact that Oregon Writs of Garnishment have no legal effect upon financial institution branches holding funds located outside of the State of Oregon, pursuant to ORS 18.655(1)(e), Defendants Susan, Johansson, Whitman and Cartwright schemed to misuse another Oregon Writ of Garnishment, dated October 19, 2011, which was self-issued by Defendant Johansson, and initially delivered to a branch office of T.D. Ameritrade, in the State of Oregon, although William had never opened any T.D. Ameritrade accounts in the State of Oregon. As planned by the Defendants, this scheme was initiated in Oregon, but it was

aimed and targeted at the assets held by T.D. Ameritrade in Nebraska, which related to the

account William had opened at a T.D. Ameritrade branch located in Soquel, California.  The

defendants' scheme was successful, and they foisted off their Oregon Writ of Garnishment to

wrongfully reach assets controlled by Plaintiff William which were held by T.D. Ameritrade,

located in Nebraska, without compliance with the Nebraska Uniform Enforcement of Foreign

Judgments Act.  These wrongful collection activities resulted in Plaintiff William losing access

to more than $5,000.00 in assets, and control over the brokerage account.  The United States

Postal Service was utilized to carry out these wrongful collection activities, wherein defendant

Johansson falsely certified that the funds in Nebraska were "lawfully subject to collection by

this writ.".

99.     On November 3, 2011, in collaboration with defendants Whitman and

Johansson, who had knowledge of her plans, Defendant Susan filed the Oregon money

judgment for attorney fees she obtained in Clackamas County Circuit Court Case No.

CV10030497, concerning the Irene E. Rupert Trust, and commenced proceedings in the State of

California, Santa Cruz County Superior Court, under the California Sister-State Money

Judgment Act (as an In Pro Per litigant).  Upon filing her application, which had a copy of the

Oregon money judgment attached, Defendant Susan obtained a Clerk's Judgment, issued in

Santa Cruz County Superior Court Case No. CISCV172524.  Thereafter, she was required by

statute to _promptly_ serve the Clerk's Judgment, and a Summons, upon Plaintiff William, who

was entitled to a safe harbor period of 30 days (after the personal service of the Clerk's

Judgment and Summons), within which time to seek a stay or an order vacating and setting

aside the Clerk's Judgment, before Defendant Susan could lawfully obtain a Writ of Execution

upon the Clerk's Judgment.  Once Defendant Susan was armed with a Writ of Execution, she

would thereafter be in a position to give it to the County Sheriff, with instructions to levy upon Plaintiff's property, such as any known bank accounts.

100.    However, instead of following the correct procedures, to reach assets of plaintiff William which were held by financial institutions located in California, under the California Sister-State Money Judgment Act, Defendants Susan, Johansson, Whitman and Cartwright schemed to abuse the process of the State of Oregon, and violate the laws of the State of California, by having Defendant Johansson self-issue multiple Oregon Writs of Garnishment, which Defendant Johansson knew, or should have known, had no extra-territorial validity beyond the State of Oregon, and they were fraudulently foisted off upon J.P. Morgan Chase Bank, N.A., as legal process that required them to levy upon funds of plaintiff William, which were held at the Scotts Valley, California branch, of J.P. Morgan Chase Bank, N.A..   The Writs of Garnishment were self-issued by Defendant Johansson on November 4, 2011, and on November 8, 2011, copies were faxed and mailed to plaintiff William, in California.

101.    The initial delivery of 2 Writs of Garnishment to J.P. Morgan Chase Bank, N.A., on November 4, 2011, at a Portland, Oregon branch, took place in a state where William never had a bank account.  Although these enforcement actions were initiated in Oregon, they were aimed and targeted at William's funds that were held by the Scotts Valley, California branch of J.P. Morgan Chase Bank, N.A. (the account number of the California checking account was listed on the Writs of Garnishment, along with William's residential address and mailing address, in California).  These efforts were initiated with the expectation that the illegal enforcement efforts would cause wrongful levies to be made upon funds which were held in Plaintiff William's Scotts Valley, California checking account.  The wrongful levies were indeed made, on November 4, 2011, and November 7, 2011.  These wrongful levies resulted in

roughly $7,000.00 being transferred out of Plaintiff William's California checking account, and sent to Defendants Susan, Johansson, Whitman and  Cartwright, in Oregon.  Another damaging result of the wrongful collection activities of Defendants Susan, Johansson, Whitman and Cartwright was that J.P. Morgan Chase Bank, N.A. placed a hold on plaintiff William's California checking account, on November 10, 2011, in the amount of $9,999,999.99, which is not set to expire until December 31, 2099.  This hold has resulted in Plaintiff William being unable to access Social Security payments that were directly deposited into the California checking account in November and December of 2011.  This hold is still in effect.

102.    Following notification from J.P. Morgan Chase Bank, N.A., to Plaintiff William, on or about November 10, 2011, that Defendants Susan, Johansson, Whitman and Cartwright had caused wrongful levies to be made upon funds held in Plaintiff William's California checking account, Plaintiff William checked the on-line records for the State of California, Santa Cruz County Superior Court, and he discovered Defendant Susan had obtained a Clerk's Judgment on November 3, 2011, when she commenced Santa Cruz County Superior Court Case No. CISCV172524, under the California Sister-State Money Judgment Act.

103.    Thereafter, plaintiff William promptly applied for, and obtained, an *ex parte* Order Staying Enforcement Of Sister-State Judgment, Pending Appeal, which was entered in Santa Cruz County Superior Court Case No. CISCV172524 on November 17, 2011, signed by Santa Cruz County Superior Court Judge Timothy  R. Volkman.  No undertaking was required, as a condition for this stay order.

104.    Accordingly, if Defendants Susan, Johansson, Whitman and Cartwright would have fully complied with the California Sister-State Money Judgment Act, and the Nebraska Uniform Enforcement of Foreign Judgments Act, stays of enforcement (pending appeal), could

have been, and would have been, promptly obtained by Plaintiff William, and he would not

have lost roughly $7,000.00 in funds from his California checking account, or roughly

$5,000.00 in funds from the T.D. Ameritrade brokerage account in Nebraska.

## VII.    Federal Question Claims For Relief

### A.    First Claim For Relief  (Violations of RICO, 18 U.S.C. § 1962(c))
### (Against RICO Defendants - Susan, Downes, Zusman, Whitman, and Johansson)

105.    Plaintiff William re-alleges and incorporates herein by reference each and

every foregoing paragraph of this Complaint as if set forth in full.

106.    At all relevant times, Plaintiff William has been, and is, a person within the

meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

107.    At all relevant times, each RICO Defendant (Susan, Downes, Zusman, Whitman,

and Johansson), has been, and is, a person within the meaning of 18 U.S.C. §§ 1961(3) and

1962(c).

108.    Plaintiff William also contends a RICO action is particularly appropriate,

under the unique circumstances of the instant case (where the probate exception has no

application), because it provides a potential remedy for the property and economic damages

which were suffered by the Plaintiff, as a result of the fraudulent representations which were

made, not only to him (beginning on October 13, 2008), but also to: (1) his late mother, the late

Irene E. Rupert, who reasonably relied upon the fraudulent representations which were made to

her (by Defendants Susan, Downes, and Zusman; in 2009, using the mail); (2) Judge Jeremy

Fogel, who reasonably relied upon the fraudulent representations, and the fraudulent non-

disclosures by Susan as a fiduciary, that took place in the proceedings before him  (by

Defendants Susan, Downes, the late Irene E. Rupert, and Zusman, in 2009 and 2010, using the

mail and electronic filing); (3) Oregon attorneys Anthony Dal Ponte and Victoria Blachly, of

the Samuels Yoelin Kantor LLP law firm, by Defendant Whitman, on October 19, 2010; (4)

former Clackamas County, Oregon, Judge Steven L. Maurer, who reasonably relied upon the

fraudulent representations, and the wrongful *ex parte* communications which were made to him

(by Defendants Susan, James, Whitman and Johansson, in 2010, 2011 and 2012, using the mail,

electronic filing, and the telephone); (5) Clackamas County, Oregon, Senior Judge Elizabeth

Welch, who reasonably relied upon the fraudulent representations which were made to her (by

Defendants Susan, Downes, Whitman and Johansson, in 2010 and 2011, using the mail and

electronic filing); (6) Umpqua Bank in Oregon, which reasonably relied upon the fraudulent

representations which were made to it (by Defendant Susan and Whitman; beginning in 2009

and 2010, using the mail and telephone); (7) Eunice Attorney Services, located in Santa Cruz,

CA., which reasonably relied upon defendant Johansson's fraudulent certification that her

Oregon Writ of Garnishment, dated May 19, 2011, could lawfully be served upon William at his

residence in California, because his California property was "lawfully subject to collection by

this writ."; (8) JP Morgan Chase Bank, N.A., Scotts Valley, CA Branch, which reasonably

relied upon the fraudulent representations which were made to it (by Defendants Susan and

Johansson; in 2011, using the mail and fax transmissions as part of the scheme) ; (9) TD

Ameritrade, located in Bellevue, Nebraska, which reasonably relied upon the fraudulent

representations which were made to it (by Defendants Susan and Johansson; in 2011, using the

mail and fax transmissions as part of the scheme).  All of these fraudulent schemes, where 3rd

party reliance was obtained, were to plaintiff William's extreme detriment[31].  The late Irene E.

Rupert, following her formal diagnosis with Alzheimer's Disease, was deceived by her own

---

[31]  The United States Supreme Court recently determined that third-party reliance upon
alleged misrepresentations is all that is required to prove wire and mail fraud under the RICO
statutes, and it is not necessary for a plaintiff to plead and prove that the plaintiff relied upon
the alleged misrepresentation.  See *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 658-
59   (2008).

daughter (Defendant Susan, who convinced Irene that she and her late husband had supported William for his entire life, when that is an egregiously false statement of fact), and by her own attorneys (Defendants Downes and Zusman).  Irene E. Rupert was fraudulently induced to: (1) execute a false declaration (falsely claiming that she was the Successor Trustee of the Samuel Rupert Trust , Samuel J. Rupert's estate had no assets located in California, that she had no assets located in California), which was used to corruptly influence Judge Jeremy Fogel, and improperly derail plaintiff William's prior federal action (for lack of personal jurisdiction in a diversity suit); and, (2) to execute trust instruments, under which Plaintiff William Rupert was ultimately disinherited (for continuing to seek information about the assets, records and administration of the Samuel J. Rupert Trust, after it became irrevocable on October 12, 2008 and his trusteeship interest vested, along with his interest as a remainder beneficiary and permissible distributee  – *and* Susan put him on "inquiry notice", in April and May of 2009, of her breaches of trust).  In a normal civil action for fraud, a plaintiff must allege and prove that *they* were deliberately given false or misleading information, upon a material matter, and that *they* reasonably relied upon the false or misleading information, to their detriment. Accordingly, Plaintiff William cannot bring a normal civil action for fraud, to address the false and misleading information that was deliberately given to the late Irene E. Rupert, and many others (by Defendants Susan, Downes, and Zusman), which was reasonably relied upon, to the extreme detriment of the plaintiff.  However, mail and wire fraud under RICO can be based upon third-party reliance, causing injury to another, such that it has a broader scope, and does provide potential relief to Plaintiff William, under the facts alleged in the instant case.  Plaintiff William has been badly damaged by the unconscionable exploitation of his late mother, under the fraudulent obstruction of justice scheme carried out by Defendants Susan, Downes and

Zusman, in 2009 and 2010.  Moreover, because the schemes that commenced on October 13, 2008 were carried out through multiple acts of mail fraud, wire fraud, bank fraud, interstate transportation of stolen property, and obstruction of justice, trebled damages under RICO are entirely appropriate, and proper, in the instant case.

109.    Plaintiff William seeks damages against these RICO Defendants, for the damages to Plaintiff's trusteeship interest, to his property and to his economic interests, according to proof, as established by the evidence, at trial, based upon the fraudulent schemes that were utilized through overlapping and constantly changing patterns of racketeering activities which included numerous predicate acts of wire fraud, mail fraud, bank fraud, interstate transportation of stolen property, attempted extortion, and obstruction of justice (destruction or suppression of evidence, forgery and manufacture of false evidence, and perjury, to corruptly influence, or endeavor to corruptly influence United States District Court Judges), during the last four years, by these overlapping, associated RICO enterprises, whose activities have had an effect upon interstate commerce.

110.    Over the course of several years, as part of schemes that commenced on October 13, 2008, Defendant Susan and her co-defendants and co-conspirators have managed to defraud, embezzle, extort, squeeze-out, and otherwise tortuously injure Plaintiff William's trusteeship and property interests (vested and prospective), and economic relations, by means of a plan they conceived and executed through actions that had significant effects which were felt in the States of Michigan, Ohio, Oregon, Nebraska, and California.  It has been carried out by an Oregon/ California based association-in-fact RICO Enterprise, consisting of four individual racketeering enterprises, which have combined in various combinations, at various times, as needed to maintain and perpetuate defendant Susan's unjust enrichment, though her wrongful

intermeddling as a Trustee *de son tort* and misappropriation of trust assets. The common link, throughout the 5 RICO Enterprise Stages that are detailed herein, is that defendant Susan participated in all 5 RICO Enterprise Stages, as she directed the Trustee *De Son Tort* RICO Enterprise, through wrongful means, for a wrongful purpose, in a fraudulent manner (to William's extreme detriment, whose civil death has been declared in the Oregon proceedings, which are currently on appeal).

The wrongful activities of this association-in-fact RICO Enterprise are as follows:

### RICO Stage 1 - The Trustee *De Son Tort* RICO Enterprise

111. RICO Stage One concerns the misappropriation/conversion of trust assets, and breaches of trust, by an intermeddling trustee *de son tort,* defendant Susan, following her fraudulent and deceitful statements to William, during an interstate telephone conversation on October 13, 2008, the day after the late Samuel J. Rupert died. As part of her fraudulent schemes, Susan has engaged in wire fraud, mail fraud, bank fraud, and the interstate transportation of stolen property. Her false claim to be the authorized Successor Trustee caused William not to immediately accept his nominations to be in charge, under the amended estate plans Samuel and Irene Rupert executed on January 26, 2004. Her false claim to have more recently amended estate plans, that trumped William's amended estate plans from 2004, allowed her to gain control of approximately $900,000 in assets, none of which was real estate, belonging to the late Samuel Rupert and his surviving spouse at the time, Irene Rupert. Defendant Susan also gained complete control and possession of Samuel and Irene Rupert's estate plans and confidential financial records. Significant portions of these records, such as Samuel Rupert's thick Schedule A file (listing the assets assigned to the Trusts, at various times, subsequent to 1995), are still being wrongfully concealed and suppressed by defendant Susan

(despite her fiduciary duty to produce and disclose them); and/or she has destroyed the Schedule A file, to conceal what would be further evidence of her breaches of trust, as expressed in the totality of Samuel Rupert's estate plans, and the terms of his Trust, which Defendant Susan ignored and disregarded, while the acting Successor Trustee *de son tort,* for the first 7 months after Samuel Rupert died on October 12, 2008.

**RICO Stage 2 - The Trustee *De Son Tort* RICO Enterprise &
The Associated *Schulte* RICO Enterprise**

112.   RICO Stage Two was the first cover-up/stonewall phase, concerning the Schulte RICO Enterprise, as directed by Defendant Downes (in association with the Trustee *De Son Tort* Enterprise, as directed by Defendant Susan), wherein Defendants Downes, Susan and James conspired to isolate the late Irene Rupert from William, and thereafter to exploit 90 year old Alzheimer's Disease stricken Irene Rupert, by fraudulently convincing her she needed to execute drastically different estate plans, which were exorbitantly expensive, to shield and protect Defendant Susan from Plaintiff William's written requests for information and documents.  All of these Defendants grossly misrepresented William's "inquiry notice" investigation efforts, to the late Irene Rupert, as if William was making unjustified, unreasonable, and socially intolerable "attacks and demands" upon Defendant Susan (which Susan was thereafter justified in resisting).  The late Irene Rupert was led to believe that she should protect Defendant Susan, and William should be disinherited to do so, unless he stopped asking Susan to account, and share the estate plans and financial records in her possession. Through such a disinheritance scheme, in the State of Oregon, they calculated, Plaintiff William would lose the necessary "standing" to be heard to complain about the administration of the overfunded Irene Rupert Trust, and thus would be entitled to no information.  The late Irene Rupert was fraudulently induced to sign new Oregon estate plans, at great expense, on June 9,

81

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

2009, and again on July 23, 2009, which contained specially crafted *in terrorem* provisions, which were designed to shield and benefit Defendant Susan, so she would never have to account for her wrongful intermeddling as a trustee *de son tort* who misappropriated/converted trust assets.

A.      Additionally, Defendants Susan, James and Downes all conspired to attempt to extort William's consent to the modification of the Samuel Rupert Trust (through use of the mail and by fax), in an effort to retroactively make Defendant Susan the Successor Trustee, effective June 9, 2009, and to eliminate the possibility that William could ever become the Successor Trustee, of the Samuel Rupert Trust.  Defendant Downes faxed and mailed his attempted extortion letter to William, on June 10, 2009.  This extortion letter from Defendant Downes also fraudulently asserted *inter alia* that: (1) Defendant Susan had not been the Successor Trustee of the Samuel Rupert Trust, because the late Irene Rupert "remains" as the Successor Trustee, so Defendant Susan had no duty to account; (2) William was not entitled to see any of Samuel Rupert's estate plans and confidential financial records; (3) all of Susan's actions had been ratified by the late Irene Rupert; (4) the Irene Rupert Trust held 90% of the Family Assets; and, (5) only 10% of the Family Assets belonged to the Samuel Rupert Trust. Defendant Downes subsequently faxed and mailed a second threatening attempted extortion letter to William, and, in conspiracy with Defendant Susan, he wrongfully interfered with William's efforts to obtain information from the Michigan law firm, and the Michigan attorney (Alan Price), who drafted and amended Samuel and Irene Rupert's estate plans.  Defendant Downes did this through his own faxed and mailed communication to the Michigan law firm, wherein it was falsely stated that the late Irene Rupert was the successor trustee of the Samuel Rupert Trust, Defendant Downes represented her in that capacity, and they did not want the

Michigan law firm to share any information with Plaintiff William.  The Michigan law firm

reasonably relied upon this fraudulent letter from Defendant Downes, in refusing to share any

information with Plaintiff William.  Thereafter, Plaintiff William commenced a diversity action

for the tort of intentional interference with economic relations, and conspiracy, as USDC

NDCA Case No. 5:09-cv-02758 JF, on June 20, 2009, against Defendants Susan, Downes and

Schulte.

        B.      On July 8, 2009, Plaintiff William's acceptance of trust papers were

delivered to the late Irene Rupert, and to Defendants Susan, James and Downes, for the Samuel

Rupert Trust, wherein Plaintiff William gave notice that he was filling the vacancy in the Office

of the Trustee, and the principal place of administration of the trust was going to be located at

plaintiff William's residence, in Ben Lomond, California, with a mailing address of P.O. Box

66403, Scotts Valley, CA 95067-6403.  Plaintiff William received no objections from any of the

qualified beneficiaries, to his transfer of the principal place of administration to California.

        C.      On July 23, 2009, Plaintiff William filed a First Amended Complaint

("FAC"), in the federal action, which sought a new declaratory relief remedy from the federal

court, and which named the late Irene Rupert as an additional defendant, solely with regards to

the declaratory relief remedy.  This new declaratory relief remedy asked the Court to make a

declarations that: (1) Defendant Susan had "unclean hands" as an intermeddling trustee *de son

tort*; (2) the Office of the Trustee, for the Samuel Rupert Trust, was technically vacant, as a

matter of law, while occupied by Defendant Susan, for the first 7 months, as an intermeddling

trustee *de son tort;* (3) the late Irene Rupert never was the Successor Trustee of the Samuel

Rupert Trust; and, (4) William effectively became the lawful Successor Trustee of the Samuel

Rupert Trust on July 8, 2009, when he filled the vacancy that followed the death of Samuel

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

Rupert on October 12, 2008.

D.     Also, on July 23, 2009, the late Irene Rupert was again exploited and fraudulently induced, by Defendants Susan, Downes, James and Schulte, to sign an amended Oregon trust instrument, again at great expense, with expanded *in terrorem* provisions that could trigger his disinheritance, which were expanded to include William's service of his federal complaint and/or a summons on the federal complaint which was filed on June 22, 2009. However, the original federal complaint was never served. Instead, Plaintiff William caused the FAC to be served upon all named defendants, and they all responded with a joint motion to dismiss for lack of personal jurisdiction, which was sent electronically to the Court, and mailed to Plaintiff William, on November 4, 2009. This federal tort action marked the end of RICO Stage 2, and the beginning of the litigation stages, RICO Stages 3 through 5, which are the obstruction of justice and abuse of process stages, concerning additional errant attorneys.

### RICO Stage 3 - The Trustee *De Son Tort* RICO Enterprise & The Associated *Schulte* RICO Enterprise & The Associated *Markun* RICO Enterprise

112.     RICO Stage 3, was the second cover-up/stonewall phase, and the first obstruction of justice/abuse of process phase, concerning the Markun RICO Enterprise, as directed by Defendant Zusman (in association with the Trustee *De Son Tort* RICO Enterprise, as directed by Defendant Susan, and in association with the Schulte RICO Enterprise, as directed by Defendant Downes), wherein the late Irene Rupert was again exploited, and fraudulently induced to sign a declaration that falsely represented she was the Successor Trustee of the Samuel Rupert Trust, and all assets and administration activities had been located in Oregon (although Irene Rupert had never become the Successor Trustee, and more than $400,000 in assets were located in California at the time). This false declaration was wired to

the federal court and mailed to Plaintiff William (who had no way of knowing its falsity, at the time, with regard to the location of assets), and it corruptly influenced Judge Jeremy Fogel, who relied upon the false representations of material facts (as presented in false and misleading declarations by the late Irene Rupert, by Defendants Susan and Downes, and in the false arguments presented by Defendant Zusman and non-party co-conspirator Jessica R. MacGregor on January 8, 2010), when he ruled the Northern District of California lacked personal jurisdiction over the Oregon defendants, and dismissed Plaintiff William's diversity action for interference with economic relations, conspiracy, and declaratory relief.

        A.     Defendants Zusman, and Markun represented both the late Irene Rupert and Defendant Susan, in this earlier federal action, despite the obvious conflict of interests, and in the papers they filed electronically with the Court and mailed to plaintiff William, Defendants Zusman and Markun falsely represented that Irene Rupert was the successor trustee of the Samuel Rupert Trust, without any reasonable basis for making that claim in the written papers they filed with the Court.  At the hearing on the Joint Motion to Dismiss, Defendant Zusman stated the following, to Judge Fogel:

> "Irene Rupert is still alive.  And she is still the trustee of the two trusts with all the rights, powers and authorities of a person in that position."
> (Reporter's Transcript; January 8, 2010; p. 21:18-21)

        B.     The above statement by Defendant Zusman misrepresented the identity of the Trustee, for both Trusts, because the late Irene Rupert was not the trustee of either Trust on January 8, 2010.  In fact, the trustee of the Irene Rupert Trust, on January 8, 2010, was Defendant Susan; while the Successor Trustee of the Samuel Rupert Trust, on January 8, 2010, was Plaintiff William.  Defendant Zusman also represented Defendant Susan, who either was the trustee, or had been the trustee, for both Trusts, such that his client, Defendant Susan, had a

fiduciary duty of full disclosure, which was violated by Defendant Susan, and by Defendant

Zusman's misrepresentations regarding Irene Rupert.  The violations, and failure to make full

disclosure, by a fiduciary with a duty to make full disclosure, represents extrinsic fiduciary

fraud.

> C.    Judge Fogel heard the motion to dismiss, and then took it under

submission, until mediation could take place, prior to his ruling upon the motion.  However,

unfortunately, the late Irene Rupert was diagnosed with terminal stage four lung cancer later in

January of 2010, and she died on March 12, 2010, before any mediation took place.  Ultimately,

8 months after taking the motion under submission, Judge Fogel granted the motion to dismiss,

in an order dated September 9, 2010, wherein Judge Fogel explained that there was not a

sufficient "nexus" between California, and the trustee, the trust assets and the trust

administration activities, all of which he believed to have been located in Oregon.  His Order

seems to imply that he believed the 5 attorneys from California[32], and the 2 law firms from

California[33], who all falsely stated Irene Rupert was the Successor Trustee of the Samuel Rupert

Trust (without a scintilla of evidence to support the material misrepresentation of fact).

> **RICO Stage 4   -    The Trustee *De Son Tort* RICO Enterprise &**
> **The Associated *Schulte* RICO Enterprise &**
> **The Associated *Markun* RICO Enterprise &**
> **The Associated *Cartwright* RICO Enterprise**

> 113.    RICO Stage 4, was the third cover-up/stonewall phase, and the second

obstruction of justice/abuse of process phase, this time concerning the Cartwright RICO

Enterprise, as directed by Defendants Whitman and Johansson (in association with the Trustee

---

[32]  These California attorneys are Defendant Zusman, and non-party co-conspirators Kevin K. Eng, Joseph P. McMonigle, Jessica R. MacGregor and John S. Hong.

[33]  These California law firms are Defendant Markun, and non-party co-conspirator Long & Levit, LLP.

*De Son Tort* RICO Enterprise, as directed by Defendant Susan; in association with the Schulte

RICO Enterprise, as directed by Defendant Downes; and, in association with the Markun RICO

Enterprise, as directed by Defendant Zusman). The planning for this RICO Stage 4 began on

February 10, 2010, in anticipation of the death of the late Irene Rupert. The scheme that was

agreed upon was to commence baseless and unfounded litigation, and to use the laws of the

State of Oregon as a bludgeon against Plaintiff, after corrupt General Judgments were obtained

through extrinsic frauds upon the courts of the State of Oregon, by repeating the same material

misrepresentations that were successful against Judge Fogel (as argued by Defendant Zusman

and non-party co-conspirator Jessica R. MacGregor), and by relying upon additional material

misrepresentations of fact, and extrinsic fraud.

### RICO Stage 5   - The Trustee *De Son Tort* RICO Enterprise & The Associated *Cartwright* RICO Enterprise

114. RICO Stage 5, was the third fraudulent abuse of process phase, again

concerning the Cartwright RICO Enterprise, as directed by Defendants Whitman and Johansson

(in association with the Trustee *De Son Tort* RICO Enterprise, as directed by Defendant Susan).

After corrupt General Judgments were obtain in Oregon, through both intrinsic and extrinsic

fraud, wrongful and fraudulent collection activities were commenced on May 11, 2011, through

the abuse and misuse of the Oregon garnishment process, by Defendant Johansson, which

utilized electronic communications and mailed documents, to wrongfully extract thousands of

dollars from Plaintiff William's California bank account, in November of 2011, contrary to

Oregon law (which gives no extra-territorial effect to Writs of Garnishment served upon

financial institutions, pursuant to ORS 18.655(1)(e)). These wrongful and fraudulent

extractions also took place in violation of the California Sister-State Money Judgment Act,

which Defendant Johansson should have been aware of, because she is licensed by both the

State of Oregon and the State of California, as an attorney-at-law (and the law has been well settled in this regard since the early 1800's).  Similarly, in October of 2011, Defendant Johansson misused an Oregon Writ of Garnishment to wrongfully and illegally extract funds from a T.D. Ameritrade brokerage account, and cause funds to be transmitted from Nebraska to Oregon.  In response to the cumulative damages to his property and economic relations, caused by RICO Stages 1 through 5, William commenced the instant action on October 12, 2012.

### The RICO Patterns and Predicate Acts

115.    The RICO Defendants' conduct violates the Racketeer Influenced and Corrupt Organizations Act, 28 U.S.C. § 1961 *et seq.,* with predicate acts of mail and wire fraud, bank fraud, interstate transportation of stolen property, extortion, and obstruction of justice, among others.  Plaintiff William incorporates by reference the attached Appendix A, which sets forth, in Chart form, RICO Stages 1-5, 25 RICO Events, and 54 individual RICO Predicate Acts, that occurred during the 4 years before the initial Complaint was filed, which represent violations of the RICO statute.  The Appendix A Chart provides 5 categories of information: (1) Name of Defendant or Defendants & Predicate Acts; (2) Statements, Documents or Misrepresentations; (3) Time, Place and Persons Responsible; (4) Content and Manner in Which Victims Were Misled; and, (5) What Defendants Gained by the Alleged Fraud.

116.    The RICO Defendants, the remaining Defendants, and their co-conspirators (and/or aiders and abetters), constitute an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  Each of the RICO Defendants participated in the operation or management of the Enterprise, at various times, as dictated by the needs that arose to perpetuate and maintain the fraudulent misappropriation and cover-up schemes, and retain the ill-gotten gains that came at the expense of the Samuel Rupert Trust, and plaintiff William's

property interests (vested and prospective, concerning his trusteeship interests and his expected inheritance).

117.    At all relevant times, the associated RICO Enterprises were engaged in, and their activities in this dispute affected, interstate commerce within the meaning of 18 U.S.C. § 1962(c).

118.    As illustrated in the Predicate Act Chart attached hereto as Appendix A, the RICO Defendants, the remaining Defendants, and the co-conspirators, conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c), to wit:

A.    Numerous instances of mail fraud, within the meaning of 18 U.S.C. § 1341,  within the 4 years preceding commencement of this action, by Defendants Susan, Downes, Zusman, Whitman and Johansson;

B.    Numerous instances of wire fraud, within the meaning of 18 U.S.C. § 1343,  within the 4 years preceding commencement of this action, by Defendants Susan, Downes, James, Zusman, Whitman, and Johansson;

C.    Numerous instances of bank fraud, within the meaning of 18 U.S.C. § 1344(2),  within the 4 years preceding commencement of this action, by Defendants Susan, Whitman, and Johansson;

D.    Multiple instances of interstate transportation of stolen property, under 18 U.S.C. § 2314,  within the 4 years preceding commencement of this action, by Defendants Susan, Whitman, and Johansson;

E.    Numerous instances of obstruction of justice (destruction or suppression

of evidence, forgery and manufacture of false evidence, and corrupt endeavors to influence a

United States District Court Judge, through extrinsic fraud by a fiduciary), within the

meaning of 18 U.S.C. § 1503, or 18 U.S.C. § 1505, within the 4 years preceding

commencement of this action, by Defendants Susan, Downes,  and Zusman.

119.    At the times material to this Complaint, Plaintiff William was, *inter alia,*

engaged in attempting to administer, as the Successor Trustee in California, the Samuel J.

Rupert (Family) Trust, u/a/d November 1, 1995, as Amended January 26, 2004, which is a

Michigan trust which had assets, in Michigan, when Samuel J. Rupert died on October 12,

2008, but the  assets in 4 Michigan (or Ohio) brokerage accounts were transferred to San

Francisco, California in February and March of 2009, where they became the assets of 3 new

California brokerage accounts, pursuant to the actions by Defendant Susan and/or non-party co-

conspirators Kenneth A. Dillon and Ronald Eppler.  As the Successor Trustee of an irrevocable

trust, with its principal place of administration located in Ben Lomond, California, with assets

in multiple states, which ultimately are to be distributed to remainder beneficiaries located in

the States of Michigan, Oregon and California, Plaintiff William has been engaged in fiduciary

activities that affect interstate commerce.

### The Continuity of the Various RICO Enterprises

120.    With regards to the attorney RICO Defendants (Downes, Zusman, Whitman and

Johansson), and the RICO Enterprises they managed (the Schulte RICO Enterprise, the Markun

RICO Enterprise, and the Cartwright RICO Enterprise, respectively), their exploitation of their

positions as trusted Officers of the Court, to aid and abet, or conspire with, an errant trustee

(Defendant Susan), to wrongfully conceal information she has a continuing fiduciary duty to

disclose to Plaintiff (so as to avoid the duty to account, and make full restitution to the Samuel

Rupert Trust), in exchange for excessive and/or unnecessary legal fees (representing a co-conspirators share of the ill-gotten gains extracted by the errant trustee during her RICO Stage 1 activities), are continuing, open-ended racketeering activities.  These 4 attorney RICO Defendants are likely to continue to specialize in aiding and abetting errant trustees, whenever possible (because it is such a profitable niche to serve), through improper means that are either fraudulent or illegal, for the improper purpose of unjustly enriching the errant trustees, and themselves, at the expense of the qualified beneficiaries, by depriving the qualified beneficiaries of the information necessary to protect their beneficial interests, or to obtain relief from the Courts for the errant trustee's breaches of trust.  This continuing, open-ended nature of the lawyer racketeering activities is well illustrated by another collaboration between the Schulte RICO Enterprise, the Cartwright RICO Enterprise, and Defendant Whitman, in the representation of another faithless trustee who exploited an elderly, vulnerable individual who had Alzheimer's Disease, to the detriment of the qualified beneficiaries of the trust, in State of Oregon, Multnomah County Circuit Court Case No. 050707686, and in Oregon Court of Appeals No. A138032 (opinion filed December 19, 2012)[34].

121.    With regards to Defendant Susan, her racketeering activities are not similarly open-ended, and will presumably come to an end when the late Samuel and Irene Rupert's trust

---

[34] Similarly, in this other case, Defendant Whitman (and the Schulte RICO Enterprise, and the Cartwright RICO Enterprise), argued that the errant trustee's failure to account for the assets and administration of the trust, upon request by a qualified beneficiary, was justified, because a broadly worded disinheritance clause (which the errant trustee caused the vulnerable Settler to adopt), had allegedly been violated, by the qualified beneficiary, when issues were raised concerning the capacity of the Settler and possible undue influence which had been exerted upon the vulnerable Settlor, which, according to the errant trustee, as argued by his attorney, Defendant Whitman (and the Schulte RICO Enterprise and the Cartwright RICO Enterprise), destroyed Jon Frakes's "standing" to seek and obtain any information concerning the assets and administration of the trust, from the errant and faithless trustee, Tim Nay.

assets are finally, and properly, distributed.  However, her close-ended racketeering activities

have gone on for a substantial period of time, as they commenced on October 13, 2008, and still

have not ended.  Accordingly, sufficient continuity exists, with regards to Defendant Susan's

pattern of racketeering activities, which commenced more than 4 years ago, and continue,

unabated, at the present time.

### Damage to Plaintiff's Property and Economic Interests

122.   Plaintiff William has suffered damages to his property interests (vested and

prospective), employment opportunities (as a paid Successor Trustee), and economic relations,

in excess of $300,000.00, due to the wrongful activities of the RICO defendants and their co-

conspirators, for which the RICO defendants should be held jointly and severably liable for

trebled damages, according to proof at trial, plus punitive damages for the conscience shocking

behavior the above named defendants engaged in, in deliberate bad faith (fraud and deceit that

caused the unconscionable exploitation of grief-stricken 90 year old Irene E. Rupert, following

the loss of her husband of 67 years, and her formal diagnosis with Alzheimer's Disease, as the

defendants capitalized on Irene E. Rupert's vulnerability, for their own gain).

### B.   Second Claim For Relief

**(Conspiracy to Violate RICO, Violation of 18 U.S.C. § 1962(d))**
**(Against Defendants Susan, James, Downes, Schulte, Zusman, Markun,**
**Whitman, Johansson, and Cartwright)**

123.   Plaintiff William re-alleges and incorporates herein by reference each and every

foregoing paragraph of this Complaint as if set forth in full.

124.   During RICO Stage 2, by the time Defendant Susan had her first discussions

with Defendant Downes, on or about May 20, 2009, she had been the acting Successor Trustee

*de son tort*, for both the Samuel Rupert Trust and for the Irene Rupert Trust, for more than 7

months.  At that point in time, there was no lawful way for the late Irene Rupert to turn back the clock 7 months, and accept her nomination to become the Successor Trustee of the Samuel Rupert Trust.  Nonetheless, Defendant Susan and Defendant Downes agreed to falsely assert that the late Irene Rupert "remains" the Successor Trustee, and had been all along.  At first this material misrepresentation was just told to William and the late Irene Rupert, during RICO Stage 2.

125.    During RICO Stage 3, the above material misrepresentation of fact (the false assertion that Irene Rupert was the Successor Trustee of the Samuel Rupert Trust, after Samuel Rupert died) was repeated by Defendants Susan, Downes, Schulte, Zusman, and Markun, in the motions and declarations filed electronically, and served by mail on William, in the proceedings before Judge Fogel concerning *Rupert I*.  Additionally, at the hearing on their Joint Motion to Dismiss, Defendant Zusman again asserted falsely that Irene Rupert was the Successor Trustee (while also misrepresenting where the disputed trust assets were located)[36].  These were corrupt endeavors to influence Judge Jeremy Fogel, and obstructions of justice, by the above named 5 defendants, whose Joint Motion to Dismiss, and Supporting Declarations that were filed with the federal Court, represent evidence of this conspiracy to obstruct justice, in USDC NDCA Case No. 5:09-cv-02758 JF (RS), so as to deny William his full and fair day in federal court, in front of Judge Fogel, through extrinsic fiduciary fraud.  The reason why it is evidence of a conspiracy is because there has never been one scintilla of evidence to support the contention that the late Irene Rupert was the Successor Trustee of the Samuel Rupert Trust, after Samuel Rupert died on October 12, 2008.

---

[36]  Defendant Zusman stated the following to Judge Fogel, at the hearing on January 8, 2010:
    "Irene Rupert is still alive.  And she is still the trustee of the two trusts with all the rights, powers and authorities of a person in that position."
    (Reporter's Transcript; January 8, 2010; p. 21:18-21)

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

126.     During RICO Stage 4, the above material misrepresentation of fact (the false assertions that Irene Rupert was the Successor Trustee of the Samuel Rupert Trust, after Samuel Rupert died), was repeated by Defendants Susan, James, Downes, Schulte, Whitman, Johansson and Cartwright, in the petitions, papers, motions and declarations filed or transmitted electronically, and/or served by mail on William, regarding the Clackamas County, Oregon Circuit Court proceedings before Senior Judge Elizabeth Welch and former Judge Steven L. Maurer.  In these Oregon proceedings, during 2010 and 2011, the above named 7 defendants also corruptly relied upon Susan's forged Schedule A page of her Petitioner's Exhibit #70, to claim the Samuel Rupert Trust was only designed to be a small Family Trust.  These were corrupt endeavors to influence the Oregon judicial officers and an abuse of the legal process of the State of Oregon.  The petitions, motions, declarations, testimony given, and other papers filed, or electronically transmitted in these Oregon proceedings are evidence of the conspiracy to abuse the legal process in the State of Oregon, and this fraudulent scheme was carried out through multiple acts of mail fraud and wire fraud, by the above named 7 defendants.

127.     Known contacts among and between RICO Defendants Susan, Downes, Zusman and Whitman, and defendant James, and non-party co-conspirator Kenneth Dillon, and non-party co-conspirator Umpqua Bank's Bill Barber, as part of the RICO Stage 4 - Disinheritance and Obstruction of Justice Cartwright RICO Enterprise activities, that were directed by Defendant Whitman, include the following conspiratorial contacts, listed by date, defendants and/or non-party co-conspirators involved, and modes of communication:

(a)   February 11, 2010; Defendants Whitman, Susan & Downes; telephone call, and conference - billed as taking up 42 minutes of Defendant Whitman's time;

(b)   February 12, 2010; Defendants Whitman, Susan & Downes; phone

94

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

conferences - billed as taking up 36 minutes of Defendant Whitman's time;

(c)  March 15, 2010; Defendants Whitman, Susan & Downes; Email to Downes from Whitman, phone conferences with Downes and Susan - billed as taking up 1 hour and 42 minutes of Defendant Whitman's time;

(d)  March 22, 2010; Defendants Whitman & Susan; phone conference - billed as taking up 18 minutes of Defendant Whitman's time;

(e)  March 24, 2010; Defendants Whitman, Susan & Downes; Email to Downes, phone conferences with Downes and Susan; phone conference with Charles Schwab - billed as taking up 30 minutes of Defendant Whitman's time;

(f)  March 25, 2010; Defendant Whitman; phone call from non-party co-conspirator Kenneth Dillon ("Dillon"), phone call to Charles Schwab - billed as taking up 18 minutes of Defendant Whitman's time;

(g)  April 5, 2010; Defendants Whitman, Susan, Downes & Zusman; Emails to Downes, to Susan, and to Zusman, Email from Downes, phone conference with Susan - billed as taking up 51 minutes of Defendant Whitman's time;

(h)  April 6, 2010; Defendants Whitman & Susan; Email to Susan, Email from Susan - billed as taking up 24 minutes of Defendant Whitman's time;

(i)  April 8, 2010; Defendants Whitman, Susan & Downes; Email to Downes and to Susan, Email from Susan - billed as taking up 18 minutes of Defendant Whitman's time;

(j)  April 12, 2010; Defendants Whitman & Susan; Phone conference with Susan - billed as taking up 1 hour and 15 minutes of Defendant Whitman's time;

(k)  April 15, 2010; Defendants Whitman, Susan, Downes & Zusman; Emails to Susan & to Zusman, Email from Downes, phone call from Susan - billed as taking up 51 minutes of Defendant Whitman's time;

(l)  April 16, 2010; Defendants Whitman & Susan; Phone conference with Susan

95

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

- billed as taking up 9 minutes of Defendant Whitman's time;

(m)  April 29, 2010; Defendants Whitman & Susan; Phone conference with Susan - billed as taking up 6 minutes of Defendant Whitman's time;

(n)  May 12, 2010; Defendants Whitman, Susan & Downes; conference with Downes, conference with Susan - billed as taking up 1 hour and 18 minutes of Defendant Whitman's time;

(o)  May 14, 2010; Defendants Whitman & Susan; meeting with Susan - billed as taking up 1 hour and 18 minutes of Defendant Whitman's time;

(p)  May 18, 2010; Defendants Whitman & Susan; Email to Susan - billed as taking up 36 minutes of Defendant Whitman's time;

(q)  May 20, 2010; Defendants Whitman & Susan; meeting with Susan - billed as taking up 6 minutes of Defendant Whitman's time;

(r)  May 28, 2010; Defendants Whitman & Susan; Phone conference with Susan - billed as taking up 24 minutes of Defendant Whitman's time;

(s)  June 3, 2010; Defendants Whitman & Downes; Phone conference with Downes - billed as taking up 18 minutes of Defendant Whitman's time;

(t)  June 9, 2010; Defendants Whitman & Susan; Phone conference with Susan, conference with Susan - billed as taking up 12 minutes of Defendant Whitman's time;

(u)  June 10, 2010; Defendants Whitman & Downes; Phone conference with Downes' legal assistant Patti McIhagga, email from Ms. McIhagga, regarding Downes' file regarding taxes - billed as taking up 3 minutes of Defendant Whitman's time;

(v)  July 6, 2010; Defendants Whitman, Susan & Zusman; Phone conference with Susan, Email to Zusman - billed as taking up 12 minutes of Defendant Whitman's time;

(w)  July 7, 2010; Defendants Whitman, Susan & Downes; Emails to Susan and to Downes - billed as taking up 6 minutes of Defendant Whitman's time;

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

(x)  July 16, 2010; Defendants Whitman, Susan & Zusman; Phone conferences with Susan & Zusman - billed as taking up 12 minutes of Defendant Whitman's time;

(y)  July 22, 2010; Defendants Whitman, Susan & Zusman; Phone conferences with Susan & Zusman - billed as taking up 2 hours and 6 minutes of Defendant Whitman's time;

(z)  July 23, 2010; Defendants Whitman & Downes; Review documents at Downes' office - billed as taking up 1 hour and 42 minutes of Defendant Whitman's time;

(aa)  July 26, 2010; Defendants Whitman, Susan & Downes; Phone conferences with Susan & Downes' assistant, Patti McIhagga - billed as taking up 2 hours and 42 minutes of Defendant Whitman's time;

(ab)  July 27, 2010; Defendants Whitman, Susan & Downes; Phone conferences with Susan & Downes - billed as taking up 2 hours and 6 minutes of Defendant Whitman's time;

(ac)  August 2, 2010; Defendants Whitman, Susan & James; Phone conferences with Susan & James - billed as taking up 33 minutes of Defendant Whitman's time;

(ad)  August 4, 2010; Defendants Whitman & Susan; Email to Susan, Email from Susan - billed as taking up 9 minutes of Defendant Whitman's time;

(ae)  August 11, 2010; Defendant Whitman and non-party co-conspirator Umpqua Bank; Phone conference with Bill Barber - billed as taking up 15 minutes of Defendant Whitman's time;

(af)  September 2, 2010; Defendants Whitman & Susan; Meet with Susan - billed as taking up 45 minutes of Defendant Whitman's time;

(ag)  September 7, 2010; Defendants Whitman, Downes & non-party co-conspirator Umpqua Bank; Phone conference with Downes, phone messages to and from Bill Barber - billed as taking up 18 minutes of Defendant Whitman's time;

(ah)  September 8, 2010; Defendants Whitman, Cartwright & Downes; Conference with James R. Cartwright, Emails to and from Downes's attorney Dave Williams - billed as taking up 24 minutes of Defendant Whitman's time;

(ai)  September 13, 2010; Defendants Whitman & Susan; Phone conference with Susan - billed as taking up 48 minutes of Defendant Whitman's time;

(aj)  October 5, 2010; Defendants Whitman, Susan and Cartwright; Conferences with Susan and James R. Cartwright - billed as taking up 2 hours and 6 minutes of Defendant Whitman's time;

(ak)  October 8, 2010; Defendants Whitman & Downes; Meet with Downes, Email to Susan - billed as taking up 24 minutes of Defendant Whitman's time;

(al)  October 19, 2010; Defendants Whitman & Downes; Emails to and from Downes and Downes' attorney Dave Williams - billed as taking up 48 minutes of Defendant Whitman's time;

(am)  October 22, 2012; Defendants Whitman & Susan; Phone conference with Susan - billed as taking up 2 hours and 12 minutes of Defendant Whitman's time;

(an)  October 25, 2012; Defendants Whitman, Susan & Downes; Meet with Downes and Downes' attorney Dave Williams, meet with Susan - billed as taking up 7 hours and 36 minutes of Defendant Whitman's time;

(ao)  October 26, 2010; Defendants Whitman & Susan; *Ex Parte* phone contact with Clackamas County Circuit Court & Judge Maurer (by Defendant Whitman); Phone conference with Susan - billed as taking up 5 hours and 54 minutes of Defendant Whitman's time;

(ap)  October 29, 2010; Defendants Whitman & Susan; Phone conference with Susan - billed as taking up 24 minutes of Defendant Whitman's time;

(aq)  November 29, 2010; Defendants Whitman, Susan & Downes; Phone

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

conferences with Susan and Downes' attorney Dave Williams - billed as taking up 2 hours and 12 minutes of Defendant Whitman's time;

(ar) December 15, 2010; Defendants Whitman, Susan & Downes; Phone conferences with Susan and Downes - billed as taking up 30 minutes of Defendant Whitman's time.

128.   But for the conspiratorial conduct and intentional interference which is evidenced by the Electronically Stored Information described in the above paragraph, by Defendants Susan, James, Downes, Schulte, Zusman, Markun, Whitman, Johansson, and Cartwright (as aided and abetted by the non-party co-conspirators listed in Paragraph 15 of this SAC), plaintiff William would not have been damaged in his property interests (trusteeship and inheritance), and economic relations (vested and prospective), as set forth herein.

129.   Plaintiff William seeks trebled damages against the RICO Conspiracy Defendants named herein (Defendants Susan, James, Downes, Schulte, Zusman, Markun, Whitman, Johansson and Cartwright), for their conspiratorial misconduct that caused him to suffer severe financial damages to his property (vested and prospective), employment opportunities (as a paid Successor Trustee), and economic relations -  according to proof, as established by the evidence, at trial.  Joint and severable liability is sought, against all joint tortfeasors.

### VIII.   Pendent State Law Claims For Relief

### A.   Third Claim For Relief
### (Misappropriation/Conversion of Trust Assets)
### (Against defendant Susan, and defendant James)

130.   Plaintiff William re-alleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

131.   The terms of the Samuel J. Rupert Trust, u/a/d November 1, 1995, as Amended

January 26, 2004, clearly state that it is to be governed by Michigan Law.

132.   Michigan law contains a statutory provision, in Michigan Compiled Laws ("MCL") § 700.7813(4)  which permits a trustee, or trust beneficiary, to recover double the value of any trust assets which can be shown to have been wrongfully converted, if the wrongfully converted trust assets are not returned following demand that they be returned. California has a similar statute, which is Probate Code § 859.

133.   Plaintiff William first demanded that all misallocated trust assets, which had not been funded into the Samuel Rupert (Family) Trust, in accordance with the express written intentions of Samuel J. Rupert, be returned at once, in a letter he sent to Defendant Susan and Defendant James, and to Irene E. Rupert, dated June 24, 2009.  Subsequently, plaintiff William has sent numerous other demand letters to Defendant Susan and Defendant James, subsequent to the death of Irene E. Rupert on March 12, 2010, in his dual capacities as the Successor Trustee and a remainder beneficiary, wherein Plaintiff William continued to demand the return of the misallocated and wrongfully converted assets of the Samuel J. Rupert (Family) Trust. Another demand letter was dated June 17, 2011, and it informed Defendant Susan and Defendant James, who it was mailed to, that it was their last chance to return all of the ill-gotten gains which they had either received, or were going to receive, based upon: (1) Defendant Susan's misappropriation of assets, while wrongly functioning as a fiduciary for both Trusts, during the initial 7 months after the death of Samuel Rupert on October 12, 2008; and/or, (2) the Oregon Trust instruments that Defendants Susan, James and Downes fraudulently induced the late Irene Rupert to sign on June 9, 2009, and on July 23, 2009.  This last demand letter also advised them of the provisions of MCL § 700.7813(4), which states the following remedies for wrongful conversion, or embezzlement of trust property:

> "(4)  If a person embezzles or wrongfully converts trust property, or refuses, without colorable claim of right, to transfer possession of trust property to the current trustee upon demand, the person is liable in an action brought by the current trustee, or the

beneficiary of the trust for the benefit of the trust, for double the value of any property embezzled, converted, or wrongfully withheld from the current trustee."

134.    Neither Defendant Susan or Defendant James have returned any of the wrongfully converted trust assets, or records (including Samuel Rupert's thick Schedule A file, showing all the assets that were transferred to the various Trusts, from time to time, subsequent to 1995[37]), that were misappropriated and not funded into the Samuel J. Rupert Trust, as had been intended by the late Samuel J. Rupert, as clearly expressed in his estate plans (Trust and pour-over Will).

135.    Plaintiff William estimates that roughly $500,000.00 in assets were misappropriated/converted by Defendants Susan and James, from the Samuel Rupert Trust, and seeks statutorily doubled trust asset conversion damages, under MCL § 700.7813(4), and/or under California Probate Code § 859 (because there is no conflict of laws, between the Michigan and California statutory provisions), against Defendant Susan and Defendant James, according to proof, as established by the evidence at trial; or by the presumption that evidence willfully withheld would be adverse to the party willfully withholding the evidence (such as Samuel Rupert's thick Schedule A file, of property transferred to the Samuel Rupert Trust and/or to the Irene Rupert Trust, at various times, between November 1, 1995 and October 12, 2008; and Samuel and Irene Rupert's personal property inventory distribution lists – both of which defendant Susan has been willfully withholding and concealing, despite her continuing

[37] Defendant Susan admitted she had Samuel Rupert's thick Schedule A file in her possession, at her residence at 2430 SW Montgomery Drive, Portland, OR 97201, during a discussion with William, in her kitchen, on the morning of January 12, 2009, prior to any dispute, when William expressed concern that the Trusts may not have been funded, when Susan first showed him a copy of the terms of the Irene Rupert Trust, u/a/d 11/01/1995, and Plaintiff noticed the blank Schedule A page. Defendant Susan told William not to worry, because Samuel Rupert had a thick Schedule A file, which Susan found when she and her husband, non-party co-conspirator Robert Bond, wrongfully seized all of Samuel and Irene Rupert's estate plans, and confidential financial records, immediately after the death of Samuel Rupert on October 12, 2008.

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

fiduciary duty to disclose and produce these detailed estate planning documents, as repeatedly demanded by Plaintiff).

### B.     Fourth Claim For Relief
**(Intentional Interference With Expected Inheritance)**
**(Against Defendants Susan, James, Downes, Zusman,**
**Whitman, Johansson, Schulte, Markun, and Cartwright)**

136.     Plaintiff William re-alleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

137.     The above named Defendants (Susan, James, Downes, Zusman, Whitman, Johansson, Schulte, Markun, and Cartwright), had full knowledge of Samuel and Irene Rupert's estate plans, consisting of trust agreements and pour-over wills, which were executed on November 1, 1995 and amended on January 26, 2004, in Michigan.

138.     The above named defendants also knew Plaintiff William stood to inherit roughly $300,000.00 under the above Michigan estate plans, and that he was the first adult child of Samuel and Irene Rupert who they wanted to be the sole administrator of their trusts and estates (for which he was entitled to be compensated, under the terms of the trusts, in the same manner as a "corporate fiduciary").

139.     Nonetheless, the above named defendants wrongfully interfered with Plaintiff William's vested and prospective inheritance rights under these Michigan estate plans, through improper means that were independently wrongful, to either: (1) fraudulently induce the late Irene E. Rupert into executing drastically new estate plans, in Oregon, that were designed to disinherit Plaintiff William, based upon material misrepresentations of fact and law (to a vulnerable, confused, 90 year old woman with Alzheimer's Disease), so Defendant Susan would not have to account for her wrongful intermeddling as a trustee *de son tort* who overfunded the Irene Rupert Trust (100% of Samuel and Irene Rupert's assets), and badly

underfunded the Samuel Rupert Trust (0% of Samuel and Irene Rupert's assets); or, (2) prevent William from getting his day in court before Judge Jeremy Fogel (through the obstruction of justice and extrinsic fraud by a fiduciary), while the late Irene Rupert was still alive, so Judge Fogel could tell Irene Rupert that she was not the Successor Trustee of the Samuel Rupert Trust, and Defendants Susan and Downes were not giving her truthful or accurate information, concerning the terms of the Samuel Rupert Trust, Oregon law, and Michigan law; or, (3) obtain enforcement of the *in terrorem* provisions contained in the Irene Rupert Trust, u/a/d July 23, 2009, by the orchestration of the Bum's Rush Ambush Expedited Bench Trial that was foisted off on William during October and November of 2010, based upon extrinsic fraud, that prevented Plaintiff William from fully exhibiting his case (without the information and documents that Defendant Susan concealed, despite her fiduciary duty to disclose, after the information and documents were demanded by Plaintiff William, as a remainder beneficiary).

140.    The above named defendants' wrongful actions resulted in damages in excess of $300,000.00, pursuant to the General Judgment that was obtained through extrinsic fraud, which was entered on January 4, 2011, in State of Oregon, Clackamas County Circuit Court Case No. CV10030497.

141.    Plaintiff William seeks the recovery of the IIEI damages he suffered, through the wrongful actions of the above named defendants.

## C.    Fifth Claim For Relief
**(Violations of The Oregon Racketeering Influence And Corrupt Organizations Act)**
**(Against Defendants Susan, James, Downes, Zusman, Whitman, Johansson, Schulte, Markun, and Cartwright)**

142.    Plaintiff William re-alleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

143.    The wrongful conduct of the above named defendants has included deliberate and intentional violations of the Oregon Racketeering Influence And Corrupt Organizations Act (ORICO) (ORS 166.715 to ORS 166.735), which have cause substantial damages to plaintiff William's property interests, beginning on October 13, 2008, and continuing.

144.    Predicate acts under ORICO, by the above named defendants, subsequent to October 12, 2008, have included wrongful and damaging violations of ORS 162.065 (perjury), ORS 162.075 (false swearing), ORS 162.325 (hindering prosecution), ORS 164.057 (aggravated theft in the first degree, ORS 164.085 (theft by deception), ORS 164.095 (theft by receiving), ORS 165.013 (forgery in the first degree); ORS 165.022 (criminal possession of a forged instrument in the first degree); ORS 165.037 (criminal simulation); and ORS 165.042 (fraudulently obtaining a signature), ORS 165.080 (falsification of business records), ORS 165.095 (misapplication of entrusted funds), and ORS 165.102 (obtaining execution of documents by deception), that have resulted in substantial damages being suffered by Plaintiff William, to his property interests.  Plaintiff William incorporates by reference the attached Appendix B, which sets forth particular predicate acts that have occurred subsequent to October 12, 2008, which represent violations of the ORICO statute, in the form of a Chart, that details 9 ORICO Events, when 28 individual ORICO Predicate Acts were committed.

142.    Plaintiff William seeks trebled damages, according to proof at trial, pursuant to ORS 166.725(7)(a), and also punitive damages for the conscience shocking behavior (deception that relied upon the exploitation of grief-stricken 90 year old Irene E. Rupert, following the loss of her husband of 67 years, and her diagnosis with Alzheimer's Disease), which the above named defendants engaged in, or capitalized upon, in deliberate bad faith.

146.    Pursuant to ORS 166.725(1)(a), the above named defendants who are either

individual attorneys, or law firms, should be ordered to make a trebled divestiture of all attorney

fees which have been received for their participation in the ill-advised schemes to aid and abet,

or cover-up defendant Susan's trustee *de son tort* activities.  All attorney's fees received from

either defendant Susan, or from the late Irene E. Rupert, should be trebled, and then disgorged,

and returned (to the trust of the late Samuel J. Rupert), by the individual attorneys, or law firms,

named as defendants in this cause of action.

### D.      Sixth Claim For Relief
#### (Conspiracy)
#### (Against Defendants Susan, James, Downes, Zusman, Whitman, Johansson, Schulte, Markun, and Cartwright)

147.    Plaintiff William re-alleges and incorporates herein by reference each and every

foregoing paragraph of this Complaint as if set forth in full.

148.    The above named defendants conspired with one another, in various

combinations, as necessary, to: (1) convert, and/or wrongfully retain, trust assets that should

have been funded into the Samuel J. Rupert Trust, pursuant to the terms of his Trust or pour-

over Will; (2) to abuse the legal process of the State of Oregon, through improper means, and

for an improper purpose, with a wrongful ulterior motive; (3) to intentionally interfere with

Plaintiff William's expected inheritance (and performance as successor trustee), through

improper means, or for an improper purpose; and, (4) violate ORICO, for the purpose of

wrongfully damaging the property interests and economic relations (vested and prospective), of

Plaintiff William, and to cause the unjust enrichment of the various defendants, at William's

expense, or at the expense of the late Irene Rupert, or at the expense of the Samuel Rupert

Family Trust.

149.    Defendant Downes participated in the conversion schemes of Defendants Susan

and James, by deliberately turning a blind eye to Defendant Susan's overfunding of the Irene

Rupert Trust, u/a/d 11/01/1995, as Amended 01/26/2004.  Instead of independently examining

the estate plans and the Schedule A files, to accurately determine how the Samuel Rupert Trust and Irene Rupert Trust had been funded, from 1995 until Samuel Rupert's death on October 12, 2008, Defendant Downes simply pressured the late Irene Rupert to sign a blanket ratification of whatever Defendant Susan had done, which was contained in the Oregon Trust instruments he drafted during 2009.   Based upon the blanket ratifications, Defendant Downes blindly accepted the misappropriations by Defendant Susan, as having been "cleansed", and he accepted the transfers that had been made under Defendant Susan's erroneous belief that "everything went to Mom".  Based upon this unreasonable reliance upon the blanket ratification, the only restitution that was made to the Samuel Rupert Trust, as mentioned and outlined by Defendant Downes in his June 10, 2009 letter to Plaintiff, was the single brokerage account that was held in the name of the Samuel Rupert Trust.  Defendant Downes purported to be representing the Successor Trustee of the Samuel Rupert Trust, but he conspired with Defendants Susan and James, to cause the Samuel Rupert Trust to be badly underfunded, with less than 10% of the Family Assets.  Defendant Downes breached his independent duty not to defraud the Samuel Rupert Family Trust, or the Plaintiff, as a remainder beneficiary of the Samuel Rupert Family Trust, and his duty not to wrongfully interfere with Plaintiff's Trusteeship rights and obligations, in California.

150.    Plaintiff William seeks joint and severable liability, against the above named defendants, for their wrongful conspiratorial actions, according to proof, at trial.

///

///

///

///

///

///

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

### **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment as hereinafter set forth.

### **Upon the Federal Claims**

1.      For a money judgment for trebled damages, according to proof, together with interest on said amounts, for violations of the RICO statutes, causing injury to Plaintiff Williams property interests and economic relations, against the RICO Defendants (Susan, Downes, Zusman, Whitman, and Johansson), and the defendant co-conspirators (James, Schulte, Markun  and Cartwright); plus punitive damages against these RICO Defendants and defendant co-conspirators, in an amount to be determined by the Court, and a determination that all of the RICO Defendants and defendant co-conspirators, are jointly and severally liable, as joint tortfeasors;

2.      For a declaratory judgment remedy, establishing that:

       (A)      Irene Rupert was never the Successor Trustee of the Samuel Rupert Trust;

       (B)      the Office of the Trustee, for the Samuel Rupert Trust, was vacate after Samuel Rupert died, until William accepted his nomination on July 8, 2009;

       (C)      while the Office of the Trustee, for the Samuel Rupert Trust, was occupied by Defendant Susan Bond, from at least October 12, 2008 to May 12, 2009, it was technically and legally vacant, because her occupancy was merely as an intermeddling trustee *de son tort,* which was not a lawful occupancy, such that she has "unclean hands" in the matter,

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

based upon her wrongful intermeddling, misappropriation, and unjust enrichment, through her wrongful conduct;

(D)     Defendant Susan still has a fiduciary duty to account, and disclose and produce the detailed estate planning documents of the late Samuel and Irene Rupert, which the Plaintiff has been demanding for over 4 years, even though she was merely an intermeddling trustee *de son tort*;

(E)     The judgments which were obtained in Clackamas County, Oregon Case No. CV10030497, against Plaintiff William, were obtained through extrinsic fraud, such that they are invalid, not entitled to Full Faith and Credit under 28 U.S.C. § 1738, and they are unenforceable in the State of California, or any other state, against Plaintiff;

(F)     The judgments which were obtained in Clackamas County, Oregon Case No. CV10030498, against Plaintiff William, were obtained through extrinsic fraud, such that they are invalid, not entitled to Full Faith and Credit under 28 U.S.C. § 1738, and they are unenforceable in the State of California, or any other state, against Plaintiff;

(G)     The judgments which were obtained in Clackamas County, Oregon Case No. CV11025150, against Plaintiff William, were obtained through extrinsic fraud, such that they are invalid, not entitled to Full Faith and Credit under 28 U.S.C. § 1738, and they are unenforceable in the State of California, or any other state, against Plaintiff.

**Upon the Pendent State Claims**

3.     For statutorily doubled trust asset conversion damages, according to proof,

against Defendant Susan and Defendant James, under MCL § 700.7813(4) or under California Probate Code § 859, plus punitive damages in an amount to be determined by the Court, for their wrongful conversion of assets rightfully belonging to the Samuel Rupert Family Trust (and Plaintiff William's 1/3 interest therein);

4.    For a money judgment awarding all appropriate damages to Plaintiff William, according to proof at trial, for intentional interference with expected inheritance (IIEI), against Defendants Susan, James, Downes, Schulte, Zusman, Markun, Whitman, Johansson, and Cartwright, plus punitive damages in an amount to be determined by the Court.

5.    For a money judgment for trebled damages, and trebled disgorgement of all attorney fees received, according to proof, together with interest on said amounts, for violations of the ORICO statutes, causing injury to Plaintiff Williams property interests (or to the Samuel Rupert Family Trust), against Defendants Susan, James, Downes, Schulte, Zusman, Markun, Whitman, Johansson, and Cartwright, plus punitive damages in an amount to be determined by the Court.

6.    For a determination that Defendants Susan, James, Downes, Schulte, Zusman, Markun, Whitman, Johansson, and Cartwright, are jointly and severally liable, as co-conspirators and joint tortfeasors, for any and all damages awarded under the pendent state law causes of action for conspiracy to convert assets, or to commit the tort of intentional interference with expected inheritance (IIEI), or for conspiracy to violate ORICO.

7.    For costs of suit incurred;

8.    For reasonable attorney fees, if an attorney is retained; and

9.    For such other relief as is just and proper.

Dated: October 7, 2013

By:    __/s/   William Rupert_____
William Rupert
Plaintiff, Pro Se
P.O. Box 66403,
Scotts Valley, CA 95067-6403
Phone: (831) 336-9520
Fax:    (831) 336-9528
emfwtr@comcast.net

*Corrected* Second Amended Complaint  [5:12-cv-05292 LHK (HRL)]

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Susan Bond<br><br>18 USC § 1961(1)(B)<br>Wire Fraud<br>18 USC § 1343<br><br><br>**RICO - Stage 1,**<br>**RICO - Event 1**<br>**Predicate Act 1** | Susan Bond's material misrepresentations to William Rupert, made during a 23 minute phone conversation, which had been initiated by William Rupert | **Oct. 13, 2008;**<br>Ben Lomond, CA and Portland, OR<br><br>Susan Bond<br><br>William Rupert's 23 minute phone call from California, to Susan Bond in Oregon, to discuss administration of Samuel Rupert's affairs, following his death on October 12, 2008 | Susan Bond falsely claimed that under the late Samuel Rupert's estate plans: (1) all assets went to his surviving spouse at the time, the late Irene Rupert, and no distributions to the remainder beneficiaries were possible; & (2) she had amended estate planning documents, signed by Samuel and Irene Rupert after January 26, 2004, which put her in charge, and which trumped the amended estate planning documents dated January 26, 2004, by which Samuel and Irene Rupert designated William Rupert to be the adult child they wanted to be their sole administrator | Susan Bond gained possession of all estate planning documents and financial records, & control of all assets of Samuel and Irene Rupert, which were worth around $900,000.00 at the time; Susan Bond also gained occupancy of the Office of the Trustee & Personal Representative, for Samuel and Irene Rupert's trusts and estates. In reliance upon what he had been told, William Rupert failed to take the steps necessary to accept his appointments as the Personal Representative, and Successor Trustee, for the Estates and Trusts of Samuel and Irene Rupert |
| Susan Bond<br><br>18 USC § 1961(1)(A)<br>Aggravated Theft in the 1st Degree -ORS 164.057<br><br>18 USC § 1961(1)(B)<br>Wire Fraud<br>18 USC § 1343<br><br>**RICO - Stage 1,**<br>**RICO - Event 2**<br>**Predicate Acts 2-3** | Constructive fraud, or fiduciary fraud, through the failure to inform Beacon Investment Company, that Samuel Rupert died on October 12, 2008, and after his trust became irrevocable, the monthly draw of $2,000.00, for Samuel Rupert's living expenses, was no longer authorized, and had to be curtailed | **Nov., 2008 - March, 2009;** Portland, OR, Jackson, MI & Ann Arbor, MI<br><br>Susan Bond, Kenneth A. Dillon, Ronald Eppler | Beacon Investments was deceived by Susan Bond's intermeddling as a trustee *de son tort*, and tricked into honoring the instructions which Susan Bond, or her agent Kenneth A. Dillon, caused to be given to Ronald Eppler (to continue the monthly draws for living expenses, although Samuel Rupert was dead, his Trust was irrevocable, and the monthly draws represented a breach of the terms of his Trust ) | Susan Bond gained recognition as administrator, and control over the assets held by Beacon Investment Company (when William Rupert should have been in charge). At least $10,000.00 was improperly withdrawn and converted, from the assets that rightfully belonged to the Samuel Rupert Family Trust (& 1/3 to William Rupert), for the immediate benefit of Irene Rupert or her Trust, and for the ultimate benefit of Susan Bond and James Rupert |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Susan Bond<br><br>18 USC § 1961(1)(A)<br>Aggravated Theft in the 1st Degree -ORS 164.057<br>18 USC § 1961(1)(B)<br>Wire Fraud<br>18 USC § 1343, and/or<br>Mail Fraud<br>18 USC § 1341<br>**RICO - Stage 1,**<br>**RICO - Event 3**<br>**Predicate Acts 4-6** | Statement and directions to Beacon Investment Company to transfer all assets in Samuel Rupert's IRA Account to Irene Rupert's IRA Account (in reliance upon a Beneficiary Designation form that did not pertain to the IRA Account which was held by Beacon Investment Company) | **Dec.  , 2008;**<br>Portland, OR, Jackson, MI & Ann Arbor, MI<br><br>Susan Bond, Kenneth A. Dillon, Ronald Eppler | Beacon Investments was deceived by Susan Bond's intermeddling as a trustee *de son tort*, and the instructions she, or her agent Kenneth A. Dillon, caused to be given to them.  These fund were supposed to be ultimately funded into the Samuel  J. Rupert (Family) Trust, pursuant to this estate plans, which included beneficiary designations that were made without a donative intent. | More than $220,000.00 was improperly transferred and converted, through this improper transfer, which was contrary to the late Samuel Rupert's estate plans (Trust and pour-over Will), and concerned assets that rightfully belonged to the Samuel Rupert Family Trust (& 1/3 to William Rupert).  Ultimately, this has caused the unjust enrichment of Susan Bond and James Rupert, at William's expense |
| Susan Bond<br><br>18 USC § 1961(1)(A)<br>Aggravated Theft in the 1st Degree -ORS 164.057<br><br>18 USC § 1961(1)(B)<br>Wire Fraud<br>18 USC § 1343, and/or<br><br><br><br>**RICO - Stage 1,**<br>**RICO - Event 4**<br>**Predicate Acts 7-8** | Email messages exchanged between Susan Bond and William Rupert | **Jan 12-13, 2009;**<br>Portland, OR, Ben Lomond, CA<br><br>Susan Bond, Carol Dickman | William Rupert's email from California memorialized his mistaken belief, the day before, concerning Irene Rupert's estate plans naming different administrators, which was the motivation for the Amendment to Trust Agreement document he was tricked into  drafting for Susan Bond, making her the trustee for the Irene Rupert Trust;  the reply email from Susan Bond failed to correct this erroneous belief that there had been an inconsistency problem, regarding Irene Rupert's estate plans.  This was constructive fraud, or fiduciary fraud, because she had a duty to correct William, and make full disclosure. | William Rupert was tricked into thinking Irene Rupert's estate plans were inconsistent with the November 13, 2009 POA agreement Susan Bond caused her to sign.  Based thereupon, William Rupert was tricked into drafting an illegal Amendment to Trust document, which purported to unilaterally make Susan Bond the sole Successor Trustee of the Irene Rupert Trust, u/a/d November 1, 1995.  After Susan Bond had the illegal document notarized by Carol Dickman, she gained further control of all assets of Samuel and Irene Rupert, which were held by Umpqua Bank, and/or, by Beacon Investment Co. |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Susan Bond<br><br><u>18 USC § 1961(1)(B)</u><br>Wire Fraud<br>18 USC § 1343<br><br><br>**RICO - Stage 1,**<br>**RICO - Event 5**<br>**Predicate Acts 9** | Email message from Susan Bond to William Rupert | **Jan 17, 2009;**<br>Portland, OR,<br>Ben Lomond, CA<br><br>Susan Bond | Informed William Rupert that the table and 8 chairs he was to inherit, had been sold by Susan Bond (without mentioning that she kept the proceeds); which created the false impression that assets were being properly disposed of, according to the estate plans for the late Samuel Rupert and for Irene Rupert | Susan Bond gained the proceeds from the sale, as she kept the money for herself ($2,700), instead of transferring it to the Family Trust, as required by the estate plans for the late Samuel Rupert and for Irene Rupert, which were in existence at the time.  Additional assets, in an amount currently unknown, were also sold by Susan Rupert, who kept the entire proceeds from the sales of Samuel and Irene Rupert's personal property |
| Susan Bond<br><br><u>18 USC § 1961(1)(A)</u><br>Aggravated Theft in the 1st Degree -ORS 164.057<br><br><u>18 USC § 1961(1)(B)</u><br>Wire Fraud (18 USC § 1343); and/or Mail Fraud (18 USC § 1341); Bank Fraud (18 USC § 1344(2); Interstate Transportation of Stolen Property (18 USC § 2314)<br>**RICO - Stage 1,**<br>**RICO - Event 6**<br>**Predicate Acts 10-13** | Email or other electronic messages, and/or letters which were mailed to Beacon Investment Company; and/or to Charles Schwab & Co. Inc., and/or to Umpqua Bank | **Feb. - March, 2009;**<br>Portland, OR,<br>Jackson, MI,<br>Ann Arbor, MI,<br>San Francisco, CA<br><br>Susan Bond,<br>Kenneth A. Dillon,<br>Carol Dickman | Beacon Investments was deceived by Susan Bond's intermeddling as a trustee *de son tort*, and the instructions she caused to be given to them, to transfer 4 accounts in Michigan into 3 new accounts with Charles Schwab & Co., Inc., located in California.  Umpqua Bank was also tricked into transferring assets to the accounts Susan Bond controlled (which should have been funded into the Samuel Rupert Family Trust), based on the illegal Amendment to Trust document that Susan Bond tricked William Rupert into drafting for her | Susan Bond gained control over hundreds of thousands of dollars of assets, which were wrongfully funded into Irene Rupert's Trust or other personal accounts held in Irene Rupert's name (but controlled by Susan Bond, under the illegal Amendment to Trust document she tricked William Rupert into drafting for her, on January 11, 2009).  Through her actions, and inactions, hundreds of thousands of dollars in assets that Samuel Rupert wanted to be funded into the Samuel Rupert Family Trust, were wrongfully misappropriated, through Susan Bond's breaches of trust |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Susan Bond<br><br>18 USC § 1961(1)(A) Aggravated Theft in the 1st Degree -ORS 164.057<br><br>18 USC § 1961(1)(B) Mail Fraud 18 USC § 1341<br><br>**RICO - Stage 1, RICO - Event 7 Predicate Acts 14-15** | Financial Summary document, prepared by Susan Bond and her husband Robert Bond, purporting to show the assets of the Irene Rupert Trust, as of March 31, 2009 & the 05/12/2009 transmittal letter signed by Susan Bond, as Successor Trustee, which was mailed to William Rupert and James Rupert | **May 12, 2009;** Portland, OR, Ben Lomond, CA, Lake Leelanau, MI<br><br>Susan Bond, Robert Bond | Purported Financial Summary document showed all assets of the late Samuel Rupert and Irene Rupert, valued at $874,995, were assets of the Irene Rupert Trust (as administered by Susan Bond). The meager remaining assets of the Samuel Rupert Trust were also shown as having been funded into the Irene Rupert Trust (following 7 months of Susan Bond's fraudulent administration, as a trustee *de son tort*). However, Susan Bond did not account for all of her actions going back to October 12, 2008, or reveal her compensation, or the purported "gifts" she received | Susan Bond gained the ability to maintain her secrecy about her compensation and gifts, and she also concealed how she had administered the assets for 7 months, in a manner that was contrary to the terms of the irrevocable Samuel Rupert Trust, and his pour-over Will |
| Gile R. Downes; Susan Bond<br><br>18 USC § 1961(1)(A) Aggravated Theft in the 1st Degree -ORS 164.057<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343) & Mail Fraud (18 USC § 1341)<br><br>**RICO - Stage 2, RICO - Event 8 Predicate Acts 16-18** | Threatening and fraudulent "cease and desist" type Letter, and proposed Modification of Trust document for the Samuel Rupert Trust, which were premised upon fraudulent misrepresentations, sent by Fax to William Rupert, and by regular mail, to William Rupert and to Irene Rupert | **June 10, 2009;** Portland, OR, Ben Lomond, CA<br><br>Gile R. Downes, Susan Bond, James Rupert | The demand letter falsely stated that: (1) Irene Rupert "remains" the Successor Trustee of the Samuel Rupert Trust; (2) the assets of the Samuel Rupert Trust are less than $100,000.00; (3) the January 11, 2009 Amendment to Trust document concerned the Samuel Rupert Trust; and, (4) Irene Rupert could modify the Samuel Rupert Trust, under Oregon Law, even if William Rupert did not sign the Modification of Trust document, along with Susan Bond, James Rupert, and their children | Mr. Downes was over paid by at least $10,000.00, by Susan Bond, out of Irene Rupert's funds, for an unnecessary trust instrument that was signed by Irene Rupert based upon fraudulent statements that William Rupert was not entitled to trust asset and trust administration information, for the Samuel Rupert Trust. Susan Bond kept her sole control of all assets of the late Samuel Rupert and Irene Rupert, while avoiding her duty to account, as demanded by William Rupert, as a Permissible Distributee |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Gile R. Downes; Susan Bond<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343) & Mail Fraud (18 USC § 1341)<br><br>**RICO – Stage 2, RICO - Event 8 Predicate Acts 19-20** | Letter to the Michigan law firm, and attorney, Alan Price, who drafted Samuel and Irene Rupert's estate plans in 1995, and amended them in 2004, which was transmitted by regular mail and by fax transmission (or Email) | **June 16, 2009;** Portland, OR,<br><br>Gile R. Downes, Susan Bond | The Michigan law firm was misled by the purported instructions not to share any information with William, as these instructions were based upon the fraudulent claims that: (1) the late Irene Rupert was the successor trustee of the Samuel Rupert Trust; and, (2) Gile R. Downes represented Irene Rupert, in her capacity as the successor trustee of the Samuel Rupert Trust.  In fact, Irene Rupert was never the successor trustee. | The fraudulent communication to the Michigan law firm prevented William from obtaining any information concerning the estate plans which this law firm prepared in 1995, and amended in 2004. This wrongful interference helped conceal and suppress evidence that would have revealed Susan's "unclean hands" as a trustee *de son tort,* and would have shown the 6/10/09 letter from Downes to be inaccurate and fraudulent. |
| Gile R. Downes; Susan Bond<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343) & Mail Fraud (18 USC § 1341)<br><br>**RICO - Stage 2, RICO - Event 9 Predicate Acts 21-22** | 2nd threatening letter, premised upon fraudulent misrepresentations, sent by Fax to William Rupert, and by regular mail, to William Rupert and to Irene Rupert | **June 16, 2009;** Portland, OR, Ben Lomond, CA<br><br>Gile R. Downes, Susan Bond, James Rupert | Again repeated the deliberate misrepresentation of law and fact, concerning William Rupert not being entitled to trust asset and administration information for the Samuel Rupert Trust.  Irene Rupert was again fraudulently led to believe that: (1) William Rupert was acting unreasonably; (2) Susan Bond had no duty to account for her actions as a trustee *de son tort;* and, (3) Irene Rupert's "sham" successor trusteeship (over the Samuel Rupert Trust), was legitimate, despite her failure to accept her nomination, either formally or informally (through performance), within a reasonable time, or ever | Gile Downes gained the continued representation of Irene Rupert, and the excessive legal fees Susan Bond was willing to pay him (out of Irene Rupert's funds), for deceiving Irene Rupert, and for his help in concealing and suppressing Susan Bond's intermeddling misconduct as a trustee *de son tort.*  Susan Bond kept her sole control of all assets of the late Samuel  Rupert and Irene Rupert, while avoiding her duty to account, as demanded by William Rupert, as a Permissible Distributee.  Susan Bond and James Rupert gained  by the prospects that William could be disinherited in the future, giving them a windfall, at his expense. |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Edward S. Zusman;<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); Mail Fraud (18 USC § 1341); & Obstruction of Justice (18 USC § 1503 and/or 18 USC § 1505)<br><br>**RICO - Stage 3, RICO - Event 10 Predicate Acts 23-25** | Joint Motion to Dismiss, for Lack of Personal Jurisdiction, under FRCP 12(b)(2).   Declaration of Irene E. Rupert.  Both, served by mail and electronically filed in the United States District Court for the Northern District of California, Case No. 5:09-cv-02758 JR (RS) | **November 3-4, 2009;** Portland, OR, San Francisco, CA San Jose, CA & Scotts Valley, CA<br><br>Edward S. Zusman, Kevin K. Eng Susan Bond, | The knowingly false Declaration of Irene Rupert was electronically filed with the federal district court in San Jose, CA and mailed to plaintiff William Rupert's Post Office Box in Scotts Valley, CA.  90 year old, Alzheimer's Disease stricken Irene Rupert was allowed to falsely claim she was the Successor Trustee of the Samuel Rupert Trust; and that she had "never owned any property located in California", at a time when she owned or controlled over $400,000.00, in California assets | Defendants Susan, Downes, and Zusman gained a dismissal of plaintiff Williams federal lawsuit, based on lack of personal jurisdiction; thereby concealing from the late Irene E. Rupert the fact that defendant Downes and defendant Susan tricked her into executing new estate plans, through  misrepresentations of fact and law, including her "sham" trusteeship, that never existed, as a matter of law and fact.  If the truth had been known, Irene Rupert would have rescinded the new Oregon estate plans |
| Susan Bond;<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); Mail Fraud (18 USC § 1341); & Obstruction of Justice (18 USC § 1503 and/or 18 USC § 1505)<br><br>**RICO - Stage 3, RICO - Event 11 Predicate Acts 26-28** | Declaration of Susan Bond, served by mail and electronically filed in the United States District Court for the Northern District of California, Case No. 5:09-cv-02758 JR (RS) | **November 3-4, 2009;** Portland, OR, San Francisco, CA San Jose, CA & Scotts Valley, CA<br><br>Susan Bond; Edward S. Zusman, Kevin K. Eng | The knowingly false Declaration of Susan Bond was electronically filed with the federal district court in San Jose, CA and mailed to plaintiff William Rupert's Post Office Box in Scotts Valley, CA. , wherein Susan Bond falsely claimed she had not transacted any business in, or with, the State of California.  This false statement of fact deceived Judge Fogel, and caused him to believe personal jurisdiction would be unreasonable, due to an insufficient "nexus", between California, the parties, and the causes of action alleged. | Defendants Susan, Downes and Zusman gained a dismissal of plaintiff Williams federal lawsuit, based on lack of personal jurisdiction; thereby concealing from the late Irene E. Rupert the fact that defendant Downes and defendant Susan tricked her into executing new estate plans, through  misrepresentations of fact and law.  If the truth had been known, Irene Rupert would have rescinded the new estate plans. These defendants perpetrated a fraud on the court, that damaged the plaintiff's property interests. |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Gile R. Downes;<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); Mail Fraud (18 USC § 1341); & Obstruction of Justice (18 USC § 1503 and/or 18 USC § 1505)<br><br>**RICO - Stage 3,**<br>**RICO - Event 12**<br>**Predicate Acts 29-31** | Declaration of Gile R. Downes, served by mail and electronically filed in the United States District Court for the Northern District of California, Case No. 5:09-cv-02758 JR (RS) | **November 3-4, 2009;**<br>Portland, OR,<br>San Francisco, CA<br>San Jose, CA &<br>Scotts Valley, CA<br><br>Gile R. Downes;<br>Susan Bond,<br>Joseph P. McMonigle,<br>Jessica R. MacGregor,<br>John S. Hong | The knowingly false Declaration of Gile R. Downes was electronically filed with the federal district court in San Jose, CA and mailed to plaintiff William Rupert's Post Office Box in Scotts Valley, CA. , wherein defendant Downes falsely claimed the late Irene Rupert had been the Successor Trustee of the Samuel Rupert Trust, and he falsely claimed to have represented the late Irene Rupert in her capacity as the Successor Trustee. This false statement of fact was relied upon by Judge Fogel, causing a dismissal. | Defendants gained a corrupt dismissal of plaintiff Williams federal lawsuit, based on lack of personal jurisdiction; thereby concealing from the late Irene E. Rupert the fact that defendant Downes and defendant Susan tricked her into executing new estate plans, through misrepresentations of fact and law. If the truth had been known, Irene Rupert would have rescinded the new estate plans. These defendants perpetrated a fraud on the court, that damaged the plaintiff's property interests. |
| Edward S. Zusman;<br><br>18 USC § 1961(1)(B) Obstruction of Justice (18 USC § 1503 and/or 18 USC § 1505)<br><br>**RICO - Stage 3,**<br>**RICO - Event 13**<br>**Predicate Acts 32** | Oral argument before Judge Jeremy Fogel , in the United States District Court for the Northern District of California, Case No. 5:09-cv-02758 JR (RS), upon a Joint Motion to Dismiss under FRCP 12 (b)(2), for lack of personal jurisdiction. | **January 8, 2010;**<br>San Jose, CA<br><br>Jessica R. MacGregor;<br>Edward S. Zusman,<br>Susan Bond | Judge Jeremy Fogel was misled by defendants false representations that: (1) the late Irene Rupert was the successor trustee of both Trusts; (2) Gile R. Downes represented the late Irene Rupert in her capacity as the successor trustee of the Samuel Rupert Trust; (3) none of the disputed assets were located in California; and (4) none of the administration activities had been conducted in California. Judge Fogel relied upon these false statements, to find an insufficient "nexus" with the State of California | By depriving plaintiff William of his day in court to establish his trusteeship in California, and litigate the issue of defendant Susan's "unclean hands" and breaches of trust, as a faithless fiduciary. Defendant Zusman perpetuated Susan's fraudulent schemes, and her concealment of information she had a fiduciary duty to disclose. But for this interference with Plaintiff's petition rights, Irene Rupert would have rescinded her Oregon Trusts, and William would not have been disinherited. |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Matthew Whitman; Susan Bond<br><br>18 USC § 1961(1)(B)<br>Mail Fraud<br>(18 USC § 1341)<br><br><br><br>**RICO - Stage 4,**<br>**RICO - Event 14**<br>**Predicate Acts 33-34** | Petition For Instructions, filed to commence CV10030497, verified by Susan Bond; Petition For Instructions and to Compel Distribution, filed to commence CV10030498, verified by Susan Bond; Both pleadings were served by mail upon plaintiff William Rupert | **March 15, 2010;**<br>Portland, OR,<br>Scotts Valley, CA<br><br>Matthew Whitman;<br>Susan Bond;<br>Gile R. Downes; | In CV10030497, the pleading verified by Susan Bond falsely swore the principal place of administration of the Irene E. Rupert Trust was still in Clackamas County (when it was really in Multnomah County, at Susan Bond's residence);  Concerning CV10030498, the pleading  falsely swore the principal place of administration  was in Clackamas County (although it was really located in California, at the time) | Venue in Clackamas County, Oregon, instead of in Multnomah County, for CV10030497; and venue in Clackamas County, Oregon, for CV10030498, instead of at the principal place of administration for the Samuel Rupert Trust, which was lawfully transferred to California, by Plaintiff, when he became the Successor Trustee, on July 8, 2009. |
| Matthew Whitman; Susan Bond<br><br>18 USC § 1961(1)(A)<br>Forgery in the 1st Degree<br>-ORS 165.013; Criminal Possession of a Forged Instrument in the 1st Degree<br><br>18 USC § 1961(1)(B)<br>Mail Fraud<br>(18 USC § 1341)<br><br>**RICO - Stage 4,**<br>**RICO - Event 15**<br>**Predicate Acts 35-37** | The Original Trust instrument for the Samuel J. Rupert Trust, u/a/d November 1, 1995, with a forged Schedule  A page (as forged by Susan Bond), which grossly understated the assets of the Samuel Rupert Trust.  The forged Trust instrument was mailed to plaintiff William Rupert | **March 29, 2010**<br>Portland, OR,<br>Scotts Valley, CA<br><br>Matthew Whitman;<br>Susan Bond;<br>James Rupert;<br>Gile R. Downes; | The original trust document's Schedule A (asset inventory page), was forged by Susan Bond to make it appear that Samuel J. Rupert had funded his trust with Charles Schwab Brokerage Account #XXXX-5804, and with no other assets, prior to his death on October 12, 2008 (when the truth is that this particular brokerage account never existed during the lifetime of Samuel J. Rupert); this forged document was mailed to William Rupert in California.  This facilitated the scheme to suppress the entire Schedule A file, which Susan told William she had in her possession, when they spoke in her kitchen on January 12, 2009. | Purported evidentiary support for the fabricated story, first invented by Downes, that it had been Samuel and Irene Rupert's intentions to allocate only 10% of their combined assets to the Samuel J. Rupert (Family) Trust, and 90% of their combined assets to the Irene E. Rupert Trust.  The forged Trust instrument was used to perpetrate a fraud upon Senior Judge Welch and former Judge Maurer, resulting in corrupt General Judgments and a judgments for attorney fees, against William Rupert.  The actual Schedule A files possessed by Susan Bond, were suppressed, and she still will not produce them |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Matthew Whitman;<br><br>18 USC § 1961(1)(B)<br>Mail Fraud<br>(18 USC § 1341<br><br>**RICO - Stage 4,**<br>**RICO - Event 16**<br>**Predicate Acts 38** | Letter drafted by defendant Whitman, on the Cartwright law firm letterhead, which was not filed with the Court. | **May 18, 2010;**<br>Portland, OR,<br>Scotts Valley, CA<br><br>Matthew Whitman;<br>Susan Bond,<br>Gile R. Downes; | Matthew Whitman falsely promised to make discovery documents "flow freely" to plaintiff William, and make formal discovery unnecessary, as soon as the Oregon lawsuits were at issue | In reasonable reliance, William Rupert postponed the commencement of his formal discovery, and the retention of an Oregon attorney, until such time as the promised documents could be examined and analyzed, to see if Mr. Whitman's story was true. William was skeptical, but he gave Mr. Whitman the benefit of the doubt, because he was an Officer of the Court. |
| Matthew Whitman;<br><br>18 USC § 1961(1)(B)<br>Mail Fraud<br>(18 USC § 1341<br><br>**RICO - Stage 4,**<br>**RICO - Event 17**<br>**Predicate Acts 39** | Letter drafted by defendant Whitman, on the Cartwright law firm letterhead, which was not filed with the Court. | **May 28, 2010;**<br>Portland, OR,<br>Scotts Valley, CA<br><br>Matthew Whitman;<br>Susan Bond,<br>Gile R. Downes; | Matthew Whitman again falsely promised to make discovery documents "flow freely" to plaintiff William, and make formal discovery unnecessary, as soon as the Oregon lawsuits were at issue | Once again, in reasonable reliance, William Rupert postponed the commencement of his formal discovery, and the retention of an Oregon attorney, until such time as the promised documents could be obtained, examined and analyzed, to see if Mr. Whitman's story was true. William was skeptical, but he gave Mr. Whitman the benefit of the doubt, because he was an Officer of the Court. |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Matthew Whitman; Susan Bond<br><br>18 USC § 1961(1)(B)<br>Mail Fraud<br>(18 USC § 1341<br><br><br>**RICO - Stage 4,**<br>**RICO - Event 18**<br>**Predicate Acts 40** | Transmittal letter drafted by defendant Whitman, on the Cartwright law firm letterhead, which accompanied a CD disc containing 2,044 pages of scanned documents, which represented the promised voluntary production of all relevant documents, after a responsive pleading was filed by William Rupert, in the Oregon proceedings. This letter was not filed with the Court, nor was the CD containing 2,044 pages of scanned documents. | **July 20, 2010;**<br>Portland, OR,<br>Scotts Valley, CA<br><br>Matthew Whitman;<br>Susan Bond;<br>Gile R. Downes; | Matthew Whitman falsely asserted the documents scanned onto the enclosed CD provided support for his story that Samuel and Irene Rupert intended only 10% of their combined assets to go to the Samuel J. Rupert Trust, with the other 90% intended for the Irene E. Rupert Trust. The scanned documents, which took months to examine and analyze, actually contradict the story told by Mr. Whitman, showing that only about 10% of Samuel and Irene Rupert's assets were held as Joint Tenants With Right of Survivorship. | Once again, in reasonable reliance, William Rupert postponed the commencement of his formal discovery, and the retention of an Oregon attorney, until such time as the 2,044 pages of scanned documents were examined and analyzed, in detail. Mr. Whitman's false assertions were part of the scheme to take William Rupert by surprise, thru a  surprise, ambush trial, conducted before reasonable and necessary formal discovery could be completed,  by William Rupert.  Defendant Susan gained the ability to continue to conceal the details of her wrongful administration of both Trusts, despite her fiduciary duty to disclose the trust asset and administration information which had been requested by Plaintiff William, in his capacity as a remainder beneficiary of both Trusts. |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Matthew Whitman; Susan Bond<br><br>18 USC § 1961(1)(B)<br>Mail Fraud<br>(18 USC § 1341<br><br><br><br>**RICO - Stage 4,<br>RICO - Event 19<br>Predicate Acts 41** | Transmittal letter drafted by Defendant Whitman, on the Cartwright law firm letterhead, which accompanied Susan Bond's Response to plaintiff William Rupert's Counterclaims in Case No. CV 10030497, which was not filed with the Court. | **July 22, 2010;**<br>Portland, OR,<br>Scotts Valley, CA<br><br>Matthew Whitman;<br>Susan Bond;<br>Gile R. Downes; | Mr. Whitman's transmittal letter falsely stated, "We will end up doing a judicial settlement conference in these cases anyway, so isn't all this fighting about venue pointless?"<br>Mr. Whitman's false statement caused William Rupert to think the Oregon proceedings were not going to be rushed to trial, and he still had plenty of time to retain an attorney, for the purpose of conducting formal discovery, if necessary, after review of the 2,044 pages of informal discovery documents.<br>In fact, as things turned out, no judicial settlement conference was ever scheduled or conducted, and the cases were corruptly rushed to a Bum's Rush Ambush Expedited Bench Trial, at only the second hearing in the cases, and a corrupt judgments were obtained through extrinsic fraud. | William Rupert's postponement of his retention of an Oregon attorney, to commence formal discovery  - as Mr. Whtiman's false statement caused  William Rupert to think he would still have plenty of time to conduct formal discovery, and/or hire an Oregon attorney, if his review of the 2,044 pages scanned onto the CD disc ultimately failed to show there was support for Mr. Whitman's story, concerning why Samuel and Irene Rupert's assets were allocated by Susan Bond, and Gile R. Downes, with only 10% going to the Samuel J. Rupert (Family) Trust.  Plaintiff William was falsely led to believe the cases would not be rushed to trial, until after the required judicial settlement conference was conducted.  Given Mr. Whitman's representations during May and July of 2009, William Rupert reasonably entertained the belief that he might be telling the truth, as a trusted Office of the Court, such that William Rupert felt he had to review all of the informal discovery documents, prior to deciding whether to retain an attorney, or a forensic accountant |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| James Rupert<br><br>18 USC § 1961(1)(B)<br>Wire Fraud<br>(18 USC § 1343)<br><br><br><br>**RICO - Stage 4,**<br>**RICO - Event 20**<br>**Predicate Acts 42** | Email message with an undated letter as an attachment | **August 31, 2010;**<br>**8:42 a.m.**<br>Lake Leelanau, MI<br><br><br>James Rupert | The undated letter attached to the Email message berates William for being greedy, and proclaims James' support for all of Susan's actions as an intermeddling trustee *de son tort*.  The undated letter from James also grossly misrepresents the purpose of the Samuel Rupert Family Trust, by falsely alleging, "This was a small family trust intended primarily for the care of a surviving spouse." The letter also falsely alleges: "You weren't stonewalled, you were wrong." | The false assertion that Samuel Rupert Family Trust to be a "small family trust", provided a sense of legitimacy to the forged Schedule A page that is part of the Exhibit #70 that was used to perpetrate a fraud upon the Clackamas County Circuit Court, during 2010 and 2011.  It also creates the false impression that Susan has not suppressed, concealed, or destroyed, the Schedule A files, that were among Samuel Rupert's confidential financial records, that she seized. |
| Matthew Whitman<br><br>18 USC § 1961(1)(B)<br>Wire Fraud (18 USC § 1343)<br><br>**RICO - Stage 4,**<br>**RICO - Event 21**<br>**Predicate Acts 43** | Wrongful *ex parte* communication with former Judge Maurer, over the phone, to oppose William's Motion for Postponement of Trial; Motion for Designation as a Complex Case; and Request for a Settlement Conference – which former Judge Maurer had to decide, as the Presiding Judge at the time. | **October 26, 2010;**<br>Portland, Or,<br>Oregon City, Or<br><br>Matthew Whitman;<br>Former Clackamas County, Oregon,<br>Circuit Court Judge<br>Steven L. Maurer | Former Judge Maurer was led to believe,  based upon Whitman's wrongful *ex parte* communication, that the issue of William's disinheritance was a "no brainer", and the merits of the case required his disinheritance, and no amount of discovery could alter the ultimate outcome, on the merits, such that William would suffer no prejudice by being denied a fair trial, and the opportunity to hire another attorney, and conduct discovery, and any error would be harmless error, given the overwhelming case in favor of William's disinheritance. | A Bum's  Rush Ambush Expedited Bench Trial, which forced William to go to trial: (1)without reasonable and adequate advance notice of trial; (2)  without legal representation by an Oregon attorney; and, (3)  before his reasonable and necessary discovery was complete.  William was deprived of his constitutional right to a fair trial, including the right to obtain *inter alia* the late Irene Rupert's medical records from Susan, concerning the late Irene Rupert's Alzheimer's Disease diagnosis in early 2009, before she executed new Oregon estate plans. |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Michelle Johansson; Susan Bond<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); and/or Mail Fraud (18 USC § 1341);<br><br>**RICO - Stage 5 RICO - Event 22 Predicate Acts 44-45** | Ms. Johansson self-issued An Oregon Writ of Garnishment, naming William in his capacity as trustee of the Samuel Rupert Trust, and mailed, wired, or otherwise transmitted the document to Eunice Attorney Services, 212 Laurel Street, Suite 207, Santa Cruz, CA 95060, for personal service upon William Rupert, at his residence in Ben Lomond, California. | **May 27, 2011** Portland, OR; Santa Cruz, CA; Ben Lomond, CA<br><br>Michelle Johansson; Susan Bond; Matthew Whitman; | The California process serving company, and Harmony Kelley, Registration #75 Santa Cruz, CA., were erroneously led to believe that Ms. Johansson's self-issued Oregon Writ of Garnishment was legitimate process that could lawfully be served upon William Rupert at his residence in Ben Lomond, Ca., in order to directly enforce the Supplemental Judgment for attorney fees which was entered in Clackamas County, Oregon Circuit Court Case No. CV10030497, on April 28, 2011 | Harassment of William Rupert, by a reputable process serving company that belongs to NAPPS (National Association of Professional Process Servers), which would have declined to serve the Oregon Writ, but for Ms. Johansson's false certification of the Writ. The resulting personal service created the false impression that the judgment for attorney fees, issued by an Oregon Court, could be directly enforced in California, without compliance with the California Sister-State Money Judgment Act. |
| Michelle Johansson; Susan Bond<br><br>18 USC § 1961(1)(B) Wire Fraud (18 USC § 1343); and/or Mail Fraud (18 USC § 1341); Bank Fraud (18 USC § 1344(2); Interstate Transportation of Stolen Property (18 USC § 2314)<br><br>**RICO - Stage 5 RICO - Event 23 Predicate Acts 46-48** | Oregon Writ Of Garnishment, self-issued by Michelle Johansson; used to wrongfully reach assets located in a Nebraska brokerage account which was controlled by William Rupert, facilitated by electronic messages and transfers, and/or through the United States Postal Service | **October 19, 2011;** Portland, OR; Bellevue, NE Scotts Valley, CA<br><br>Michelle Johansson; Susan Bond; Matthew Whitman; | T.D. Ameritrade was falsely led to believe they had a duty to honor an Oregon Writ of Garnishment, and levy upon funds in a brokerage account controlled by William Rupert, located in Nebraska (without compliance with, and in violation of, the Nebraska Uniform Enforcement of Foreign Judgments Act (Revised Statutes § 25-1587.01 to 25-1587.09) | More than $5,000.00 was wrongfully and illegally levied upon (or otherwise seized), and transmitted from Bellevue, Nebraska to Michelle Johansson and Susan Bond, in Portland, OR, through the abuse of Oregon's legal process, within the State of Nebraska, to defeat the purposes of the Nebraska Uniform Enforcement of Foreign Judgments Act (under which William Rupert could have obtained a stay of enforcement, pending appeal, had he been informed in advance, as required by Nebraska Law) |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Michelle Johansson; Susan Bond<br><br>18 USC § 1961(1)(B)<br>Wire Fraud (18 USC § 1343); and/or Mail Fraud (18 USC § 1341); Bank Fraud (18 USC § 1344(2); Interstate Transportation of Stolen Property (18 USC § 2314)<br>**RICO - Stage 5,**<br>**RICO - Event 24**<br>**Predicate Acts 49-51** | Oregon Writ Of Garnishment, self-issued by Michelle Johansson, for Case No. CV10030497; designed to reach assets located in California, although a California Writ of Execution was required; Required service of the Writ upon  William Rupert was made by mail and fax, on November 8, 2011, which was 4 days after delivery of the Writ to the financial institution | **November 3-8, 2011;**<br>Portland, OR;<br>Scotts Valley, CA<br><br>Michelle Johansson;<br>Susan Bond;<br>Matthew Whitman; | J.P. Morgan Chase Bank, N.A.  was falsely led to believe, on November 4, 2011, they had a duty to levy upon William Rupert's funds located in a checking account located in Scotts Valley, CA, without compliance with, and in violation of, the California Sister-State Money Judgment Act (CCP § 1710.10 to 1710.65) | More than $6,000.00 was wrongfully and illegally levied upon, and transmitted from Scotts Valley, California to Michelle Johansson and Susan Bond, in Portland, OR, through the abuse of Oregon's legal process, within the State of California, contrary to, and in violation of, the California Sister-State Money Judgment Act.  The levy was also illegal because it came during the 30 day safe-harbor period, following Susan Bond's domestication of the Oregon judgment on Nov. 3, 2011. |
| Michelle Johansson; Susan Bond<br><br>18 USC § 1961(1)(B)<br>Wire Fraud (18 USC § 1343); and/or Mail Fraud (18 USC § 1341); Bank Fraud (18 USC § 1344(2); Interstate Transportation of Stolen Property (18 USC § 2314)<br><br>**RICO - Stage 5,**<br>**RICO - Event 25**<br>**Predicate Acts 52-54** | Oregon Writ Of Garnishment, self-issued by Michelle Johansson, for Case No. CV10030498; designed to reach assets located in California, although a California Writ of Execution was required; Required service of the Writ upon  William Rupert was made by mail and fax, on November 8, 2011, which was 4 days after delivery of the Writ to the financial institution | **November 4-8, 2011;**<br>Portland, OR;<br>Scotts Valley, CA<br><br>Michelle Johansson;<br>Susan Bond;<br>Matthew Whitman; | J.P. Morgan Chase Bank, N.A.  was falsely led to believe, on November 4, 2011, they had a duty to levy upon William Rupert's funds located in a checking account located in Scotts Valley, CA, without compliance with, and in violation of, the California Sister-State Money Judgment Act (CCP § 1710.10 to 1710.65) | Additional funds were wrongfully and illegally levied upon, and transmitted from Scotts Valley, California to Michelle Johansson and Susan Bond, in Portland, OR, through the abuse of Oregon's legal process, within the State of California, contrary to, and in violation of, the California Sister-State Money Judgment Act.  The wrongful enforcement actions also caused J.P. Morgan Chase Bank, N.A. to place a hold upon William's checking account, in the amount of $9,999,999.00, which will not expire until December 31, 2099. |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Susan Bond<br><br>ORS 166.715(6)(a)(P)<br>ORS 165.042 - Fraudulently Obtaining a Signature)<br>ORS 166.715(6)(a)(Q)<br>ORS 165.102 - Obtaining Execution Of Documents By Deception<br>**ORICO - Stage 1**<br>**ORICO - Event 1**<br>**Predicate Acts 1-2** | Power of Attorney (POA), Document, purporting to give Susan Bond the authority, *inter alia,* to unilaterally amend Irene Rupert's estate planning documents, including the Irene Rupert Trust, u/a/d 11/01/1995, as Amended 01/26/2004 | **Nov. 13, 2008**, Portland, OR, Milwaukie, OR<br><br>Susan Bond, | The overbroad and largely unenforceable POA agreement purported to give Susan Bond broad powers, including the right to unilaterally amend Irene E. Rupert's estate plans.  Irene E. Rupert was falsely led to believe her existing estate plans needed to be augmented with this agreement, and that this was a lawful POA agreement, when the amendment powers were illegal pursuant to ORS 130.050(5) | Susan Bond gained purported authority and control over Irene E. Rupert's financial affairs, and apparent authority to control assets held by Beacon Investment Company, Umpqua Bank, and various insurance companies, pursuant to the illegal POA agreement Irene E. Rupert was tricked into signing, through Susan Bond's direct, or indirect, misrepresentations of fact and law, to obtain her signature |
| Susan Bond<br><br>ORS 166.715(6)(a)(K)<br>ORS 164.085 - Theft By Deception<br>ORS 164.098 - Theft By Receiving<br><br>ORS 166.715(6)(a)(Q)<br>ORS 165.102 - Obtaining Execution Of Documents By Deception<br><br><br>**ORICO – Stage 1**<br>**ORICO - Event 2**<br>**Predicate Acts 3-5** | Amendment To Trust, u/a/d Jan. 11, 2009, which Susan Bond tricked William Rupert into drafting, which purported to unilaterally amend the Irene E. Rupert Trust, u/a/d November 1, 1995 (without Irene Rupert's knowledge or consent), to make Susan Bond the sole successor trustee | **Jan. 11, 2009, to May, 12, 2009;** Portland, OR, Milwaukie, OR, Ann Arbor, MI, Jackson, MI<br><br>Susan Bond, Ronald Eppler, Carol Dickman, Kenneth A. Dillon, | William Rupert was deceived by Susan Bond, when she chose to show him: (1) her illegal POA agreement from November 13, 2009; and, (2) Irene Rupert's Will and Trust, from 1995, without the January 26, 2004 Codicil and Amendment to Trust.   The 3 misleading documents created the false impressions that: (1) Irene Rupert had signed a valid POA; (2) there was a conflict among Irene Rupert's estate plans; and, (3) the POA gave  Susan Bond the power to unilaterally amend the Irene Rupert Trust instrument, to name herself the sole trustee, to resolve the apparent inconsistencies among the conflicting documents. | Susan Bond gained apparent authority to administer the Irene Rupert Trust, u/a/d November 1, 1995, as the sole successor trustee. After Susan Bond had the illegal Amendment to Trust document notarized by Umpqua Bank employee Carol Dickman, it was used  to transfer assets to  Irene E. Rupert or her Trust, that were supposed to be funded into  the Samuel J. Rupert Family Trust. Susan Bond gained apparent authority, which was recognized by brokerage companies, banks, and insurance companies, to the detriment of the Samuel Rupert Family Trust, and William Rupert's vested interest in the Family Trust |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Gile R. Downes; Susan Bond; Schulte law firm<br><br>ORS 166.715(6)(a)(K)<br>ORS 164.085 - Theft By Deception<br>ORS 164.098 - Theft By Receiving<br><br>ORS 166.715(6)(a)(P)<br>ORS 165.042 - Fraudulently Obtaining a Signature)<br><br>ORS 166.715(6)(a)(Q)<br>ORS 165.102 - Obtaining Execution Of Documents By Deception<br><br>ORS 166.715(6)(a)(Q)<br>ORS 165.095 - Misapplication Of Entrusted Funds<br><br><br>**ORICO – Stage 2**<br>**ORICO - Event 3**<br>**Predicate Acts 6-10** | Irene Rupert Trust, u/a/d 06/09/2009;<br>Will of Irene E. Rupert, u/a/d 06/06/2009 | **June 9, 2009;**<br>Portland, OR<br><br><br>Gile R. Downes, Susan Bond, Schulte law firm, James Rupert | Trust instrument executed for the primary purposes of using *in terrorem* clauses to extort William Rupert's agreement to modify the Samuel Rupert Trust (making Susan Bond trustee), and shielding Susan Bond from having to ever account for her action as a trustee *de son tort.*   The signature of Irene Rupert  was fraudulently obtained, through: (1) the knowingly false statements of Gile R. Downes, that William Rupert had no right to any documents or information regarding the Samuel Rupert Trust, and Susan Bond had no duty to account for her actions, involving her administration of the Samuel Rupert Trust; (2) Susan Bond's misrepresentations to 90 year old, Alzheimer's Disease stricken Irene Rupert, that Samuel and Irene Rupert had supported William Rupert for his entire life; and, (3) the coercive pressure that was placed upon Irene E. Rupert, by Susan Bond (and her children), and by James Rupert (and his children), to execute new and drastically different estate plans, that favored Susan Bond and James Rupert, at the expense of William Rupert | Gile R. Downes, and the Schulte law firm, gained excessive legal fees, as more than $8,000.00 was paid for a simple trust agreement worth no more than $2,000.00, at the most.  They received the extra fees, paid by Susan Bond out of Irene Rupert's funds, in exchange for misleading Irene Rupert about: (1) Susan Bond's duty to account, and William Rupert's right to trust asset and trust administration information, as a permissible distributee of the Samuel Rupert Trust; and, (2) the glaring conflict of interest among the various capacities in which Gile R. Downes was purporting to represent Irene Rupert.  Susan Bond gained the ability to suppress and conceal her misapplication of entrusted funds.  Susan Bond also gained by the provisions that were included to indemnify her, for any legal fees which she might incur.  Susan Bond and James Rupert gained from the prospective disinheritance of William Rupert, because they stood to gain his 1/3 share of the assets claimed to belong to the Irene Rupert Trust, which were looted from the Samuel  Rupert Trust |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Gile R. Downes; Susan Bond; Schulte law firm<br><br>ORS 166.715(6)(a)(K)<br>ORS 164.085 - Theft By Deception<br>ORS 164.098 - Theft By Receiving<br><br>ORS 166.715(6)(a)(P)<br>ORS 165.042 - Fraudulently Obtaining a Signature)<br><br>ORS 166.715(6)(a)(Q)<br>ORS 165.102 - Obtaining Execution Of Documents By Deception<br><br>ORS 166.715(6)(a)(Q)<br>ORS 165.095 - Misapplication Of Entrusted Funds<br><br><br>**ORICO – Stage 2**<br>**ORICO - Event 4**<br>**Predicate Acts 11-15** | Irene Rupert Trust, u/a/d 07/23/2009 | **July 23, 2009;**<br>Portland, OR<br><br><br>Gile R. Downes, Susan Bond, Schulte law firm, James Rupert | Amended Trust instrument executed to expand the scope of the *in terrorem* clause, to include service of a federal lawsuit upon Susan Bond or Gile R. Downes, which alleged breaches of fiduciary duty (by Susan  Bond), and interference with economic relations (by Susan Bond and Gile R. Downes).  Once again, Irene Rupert's signature was obtained through deception and knowingly false statements, regarding: (1) Gile R. Downes' statement  that William Rupert had no right to any documents or information, so it was unreasonable for him to ask Susan Bond to account for her actions, as a trustee *de son tort,* concerning the Samuel Rupert Trust; (2) William Rupert being supported his entire life by Samuel and Irene Rupert; and (3) Irene Rupert could lawfully claim to be the successor trustee of the Samuel Rupert Trust (without any duty to honor the terms of the Trust).   Had Irene Rupert not been misled and pressured by Susan Bond and James Rupert (and their children), she would not have signed the Oregon estate plans. | Gile Downes and the Schulte law firm gained additional excessive legal fees, in excess of $4,000.00 for a simple amended trust agreement worth no more than $1,000.00, at the most.  They received the extra fees, paid by Susan Bond out of Irene Rupert's funds, for continuing to  mislead Irene Rupert about Susan Bond's duty to account, and whether it was Susan Bond or William Rupert who was being unreasonable.  Susan Bond gained increased protection  from ever having to account for her intermeddling as a trustee *de son tort,* through the amended  *in terrorem* provisions (which would be triggered by service of William Rupert's federal lawsuit against Susan Bond and Gile R. Downes).  Susan Bond gained the ability to conceal her misapplication of entrusted funds.  Susan Bond and James Rupert gained from the prospective disinheritance of William Rupert, because they stood to gain his 1/3 share of the assets claimed to belong to the Irene Rupert Trust, which were wrongfully converted from the Samuel  Rupert Trust |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Edward S. Zusman; Markun law firm; Susan Bond; Gile R. Downes; Schulte law firm;<br><br>ORS 166.715(6)(a)(P)<br>ORS 165.042 - Fraudulently Obtaining a Signature<br><br>ORS 166.715(6)(a)(Q)<br>ORS 165.102 - Obtaining Execution Of Documents By Deception<br><br>ORS 166.715(6)(a)(B)<br>ORS 162.065 - Perjury<br><br><br>**ORICO – Stage 3**<br>**ORICO - Event 5**<br>**Predicate Acts16-18** | Declaration Of Irene E. Rupert executed on November 3, 2009. Declaration of Gile R. Downes executed on November 3, 2009. Declaration of Susan Bond, executed on November 3, 2009. | **November 3, 2009,** Portland, OR.<br><br>Edward S. Zusman; Kevin K. Eng; Markun law firm; Susan Bond; Gile R. Downes; Schulte law firm; Joseph P. McMonigle; Jessica R. MacGregor; John S. Hong; Long & Levit law firm. | The declarations were signed in Oregon, to support a joint Motion to Dismiss (for lack of personal jurisdiction), which was filed in USDC NDCA Case No. 5:09-cv-02758 JF (RS).  Irene Rupert, as a 90 year old with Alzheimer's Disease was coerced and tricked into: (1) thinking there was no conflict of interest in having Zusman, Eng, and the Markum law firm represent both her and Susan Bond; (2) falsely stating that she was the Successor Trustee of the Samuel Rupert Trust; (3) falsely stating neither she, or her late husband, the late Samuel Rupert, had ever owned any property located in California; when the truth was that more than $400,000.00 in assets were located in San Francisco, CA, at the time.  The declaration of Gile R. Downes falsely stated that Irene Rupert was the Successor Trustee of the Samuel Rupert Trust, and that Downes represented Irene Rupert in that capacity.  These knowingly false declarations misled Judge Jeremy Fogel , and influenced him to dismiss the case for a perceived lack of personal jurisdiction. | Susan,  Zusman,  Downes and the associated law firms, gained a dismissal of William  federal lawsuit, through extrinsic fraud, based on a perceived lack of personal jurisdiction; thereby concealing from the late Irene E. Rupert the fact that Susan and Downes tricked her into executing her new estate plans, through misrepresentations of fact and law, as William's Declaratory Relief remedy, contained in the FAC he filed on July 23, 2009, would have established, if it had proceeded to a determination on the merits.  The defendants avoided having a federal judge tell Irene Rupert that: (1) she was not the successor trustee of the Samuel Rupert Trust, because of her failure to accept her nomination, formally or informally, within a reasonable time, or ever; (2) William Rupert became the successor trustee of the Samuel Rupert Trust on July 8, 2009; and, (3) Gile R. Downes had been misrepresenting both the law and the facts to her, to favor Susan Bond, at the expense of William Rupert and the Samuel J. Rupert Family Trust, in bad faith. |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Susan Bond;<br><br>ORS 166.715(6)(a)(B)<br>ORS 162.065 - Perjury<br><br><br>**ORICO – Stage 4**<br>**ORICO - Event 6**<br>**Predicate Acts 19-20** | Petition For Instructions, filed to commence Oregon Case No. CV10030497, verified under penalty of perjury, by Susan Bond; Petition For Instructions and to Compel Distribution, filed to commence Oregon Case No. CV10030498, verified under penalty of perjury, by Susan Bond | **March 15, 2010;**<br>Portland, OR,<br>Scotts Valley, CA<br><br>Susan Bond;<br>Matthew Whitman;<br>Cartwright law firm; | In Case No. CV10030497, the pleading verified by Susan Bond falsely swore under penalty of perjury that the principal place of administration of the Irene E. Rupert Trust was still in Clackamas County (when it was really in Multnomah County, at Susan Bond's residence).  In Case No. CV10030498, the pleading verified by Susan Bond falsely swore under penalty of perjury that the principal place of administration of the Samuel J.  Rupert Trust was still in Clackamas County (when it was really in Santa Cruz County, California, at William Rupert's residence), although the truth is that it stopped being in Clackamas County on October 12, 2008, when Samuel Rupert died and Susan Bond started administering the Trust as a trustee *de son tort,* at her residence in Multnomah County (prior to William Rupert's acceptance of his nomination to be the sole successor trustee of the Samuel J. Rupert Trust, which became effective on July 8, 2009, when his acceptance papers were delivered to all permissible distributees of the Trust) | Venue in Clackamas County, Oregon, and a corrupt Bum's Rush Ambush Expedited Bench Trial, without adequate and reasonable notice of trial (without any case management activity, or the Settlement Conference that was required, by the Court's own local rules), as directed by  Judge Maurer, and as carried out by Senior Judge Welch.  The rush to trial deprived William Rupert of the opportunity to conduct reasonable and necessary discovery, resulting in corrupt General Judgments, and attorney fee judgments against him.  Through the extrinsic fraud upon the court, regarding the location of the trustee, the Trust assets, and the principle place of administration of the trusts, the defendants gained an assignment to a friendly judge,  Senior Judge Welch, whose personal belief is that no ripe controversy has to be alleged or proven, to invoke the judicial power of the State of Oregon,  to grant coercive relief concerning an out-of-state trustee, and out-of-state assets. |

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Susan Bond; Matthew Whitman; <br><br> <u>ORS 166.715(6)(a)(K)</u> ORS 164.085 - Theft By Deception ORS 164.098 - Theft By Receiving <u>ORS 166.715(6)(a)(P)</u> ORS 165.037 - Criminal Simulation ORS 165.080 - Falsification Of Business Records **ORICO - Stage 4** **ORICO - Event 7** **Predicate Acts 21-24** | Copy of forged original of the Samuel J. Rupert Trust, u/a/d November 1, 1995, which was submitted to the Clackamas County Circuit Court, and received into evidence on October 27, 2010 by Senior Judge Welch, as Susan Bond's Exhibit #70, in the proceedings Senior Judge Welch conducted in Case No. CV10030497 and Case No. CV10030498 | **October 27, 2010;** Portland, OR, Oregon City, OR.; <br><br> Susan Bond; Matthew Whitman; Cartwright law firm; | The Clackamas County Circuit Court, State of Oregon, and both Senior Judge Welch and former Judge Maurer, were falsely led to believe, by forged Exhibit #70, that there was evidentiary support for the story that: (1) Samuel and Irene Rupert intended only 10% of their combined assets to go to the Samuel J. Rupert Trust, with the other 90% intended for the Irene E. Rupert Trust; and, (2) no other Schedule A, trust asset list was ever prepared by the late Samuel J. Rupert, or in the possession of Susan Bond | A General Judgment, granting Susan Bond's Petition For Instructions and to Compel Distribution, entered on April 28, 2011, in Case No. CV10030498, by Senior Judge Welch; and also the General Judgment, entered on October 12, 2011, by Judge Maurer in Case No. CV11050251, declaring the assets of the Samuel J. Rupert Trust were only the assets in Charles Schwab brokerage account XXXX-5804, of roughly $90,000.00 (consistent with the forged Schedule A that was part of Susan Bond's Exhibit #70) |
| Michelle Johansson; Cartwright law firm; Susan Bond <br><br> <u>ORS 166.715(6)(a)(K)</u> ORS 164.085 - Theft By Deception ORS 164.098 - Theft By Receiving <br><br> **ORICO – Stage 5** **ORICO - Event 8** **Predicate Acts 25-26** | Oregon Writ Of Garnishment, self-issued by Michelle Johansson, designed to wrongfully reach assets, or wrongfully gain control of assets, located in a Nebraska brokerage account which was controlled by William Rupert | **October 19, 2011;** Portland, OR; Bellevue, NE <br><br> Michelle Johansson; Matthew Whitman; Cartwright law firm; Susan Bond | T.D. Ameritrade was falsely led to believe they had a duty to levy upon (or otherwise seize), funds in a brokerage account controlled by William Rupert, located in Nebraska (without compliance with, and in violation of, the Nebraska Uniform Enforcement of Foreign Judgments Act (Revised Statutes § 25-1587.01 to 25-1587.09**)** | Roughly $6,000.00 was wrongfully and illegally levied upon (or seized), and transmitted to Michelle Johansson, Matthew Whitman, the Cartwright law firm and Susan Bond, in Portland, OR, through the abuse of Oregon's legal process, to defeat the purposes and provisions of the Nebraska Uniform Enforcement of Foreign Judgments Act (under which a stay of enforcement can be obtained by a judgment debtor, if an appeal is pending in the state which entered the judgment) |

<u>Rupert v. Bond, et al.</u>   Case No. 5:12-cv-05292 LHK (HRL)

ORICO - Predicate Acts Chart                               **PAGE 6**

Second Amended Complaint  -  **APPENDIX B**

| Name of Defendant Or Defendants; & Predicate acts | Statements, Documents or Misrepresentations | Time, Place and Persons Responsible | Content and Manner in which victims were misled | What Defendants gained by the alleged fraud |
|---|---|---|---|---|
| Michelle Johansson; Cartwright law firm; Susan Bond<br><br>ORS 166.715(6)(a)(K)<br>ORS 164.085 - Theft By Deception<br>ORS 164.098 - Theft By Receiving<br><br>**ORICO – Stage 5**<br>**ORICO - Event 9**<br>**Predicate Acts 27-28** | Oregon Writs Of Garnishment, self-issued by Michelle Johansson, for Case No. CV10030497 & Case No. CV10030498; designed to wrongfully reach assets held by a California Financial Institution, although a California Writ of Execution was required, under the circumstances | **November 4, 2011;**<br>Portland, OR;<br>Scotts Valley, CA<br><br>Michelle Johansson;<br>Matthew Whitman;<br>Cartwright law firm;<br>Susan Bond | J.P. Morgan Chase Bank, N.A.  was falsely led to believe they had a duty to levy upon William Rupert's funds located in a checking account located in Scotts Valley, CA, without compliance with, and in violation of, the California Sister-State Money Judgment Act (CCP § 1710.10 to 1710.65) | Roughly $7,000.00 was wrongfully and illegally levied upon, and transmitted from Scotts Valley, California to Michelle Johansson, Matthew Whitman, the Cartwright law firm, and Susan Bond, in Portland, OR, through the abuse of Oregon's legal process, to defeat the purposes of the California Sister-State Money Judgment Act, which entitled William Rupert to a stay of enforcement, pending his appeals before the Oregon Court of Appeals.  Such a Stay was obtained on November 17, 2011, from the Superior Court of Santa Cruz County, California, but the stolen funds, obtained through deception, were not returned, despite William Rupert's demands for restitution. |