WILLIAM RUPERT
P.O. Box 66403
Scotts Valley, CA 95067-6403
Phone:   (831) 336-9520
Fax:       (831) 336-9528
Email:    emfwtr@comcast.net

Plaintiff
Pro Se

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM RUPERT,<br><br>                      Plaintiff,<br><br>          vs.<br><br>SUSAN BOND; GILE R. DOWNES;<br>EDWARD S. ZUSMAN;  MATTHEW<br>WHITMAN; MICHELLE JOHANSSON;<br>JAMES RUPERT; SCHULTE, ANDERSON,<br>DOWNES, ARONSON & BITTNER, P.C.,<br>an Oregon Professional Corporation;<br>MARKUN ZUSMAN & COMPTON, LLP,<br>a Limited Liability Partnership Headquartered<br>in California; CARTWRIGHT WHITMAN<br>BAER PC, an Oregon Professional<br>Corporation; and DOES 1 to 20,<br><br>                      Defendants. | Case No.: **5:12-cv-05292 LHK (HRL)**<br>_____<br><br>**PLAINTIFF WILLIAM RUPERT'S<br>MEMORANDUM OF POINTS AND<br>AUTHORITIES IN OPPOSITION TO<br>FRCP 12 (b)(2) MOTION TO DISMISS<br>SECOND AMENDED COMPLAINT,<br>BY DEFENDANTS SUSAN BOND AND<br>JAMES RUPERT**<br><br>Date:    March 13, 2014<br>Time:    1:30 p.m.<br>Dept:    Courtroom 8<br>Judge:   Hon. Lucy H. Koh<br><br>Action Filed:   October 12, 2012 |

0

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES   .        .        .        .        .        .        .        .        ii

MEMORANDUM OF POINTS AND AUTHORITIES        .        .        .        .        1

I.      To Promote Efficiency, The Plaintiff Incorporates By Reference His
        Opposition Arguments And Contentions From His Oppositions To The
        2nd MTD Filed By Defendants Zusman And Markun (ECF 115), By
        Defendants Downes And Schulte (ECF 116),  Plus The Declaration Of
        William Rupert (ECF 117, 117-1); Plaintiff's Request For Judicial Notice
        (ECF 118); And Plaintiff's Table Of Exhibits #1-#61(ECF 119)..................        1

II.     LEGAL STANDARDS UNDER FRCP 12(b)(2)...........................................        1

        A.      Federal Question Personal Jurisdiction.............................................        1
        B.      Under 18 U.S.C. § 1965(a)(b) Of The RICO Statutes........................        2
        C.      Under California's Long-Arm Statute.................................................        4

III.    ARGUMENT.......................................................................................        6

        A.      The Factual Errors In The Court's September 17, 2013 Order
                Granting Motions To Dismiss, Misrepresenting The Allegations
                Of Plaintiff's FAC, Should Be Corrected, Not Expanded Upon,
                As The Sibling Defendants (Susan And James) Attempt To  Do.......        6

        B.      The Sibling Defendants Contacts With The United States Are
                Sufficient To Make The Exercise Of Venue And Jurisdiction In
                This District Reasonable, Under 18 U.S.C. § 1965(a)(b)....................        10

        C.      The Sibling Defendants Targeted The Plaintiff, Caused Negative
                Effects In California, And Availed Themselves Of The Privileges
                Of Conducting Business In California, Such That The Exercise
                Of Personal Jurisdiction Over Them Is Fair And Reasonable............        13

        D.      Judicial Estoppel Should Stop The Sibling Defendants From
                Being Heard To Argue That Oregon Is An Alternative Forum,
                Due To The General Judgment They Obtained In Oregon,
                Declaring Plaintiffs Civil Death, Before The Late Irene Rupert.......        21

        E.      All Defendants Are Combining, In Bad Faith, To Treat Judge Koh
                Like A Donkey, By Creating An Unnecessary Blizzard Of Papers,
                Combined With Misleading Contentions, To Plaintiffs Detriment...        22

IV.     CONCLUSION...................................................................................        24

i

1

## TABLE OF AUTHORITIES

2

**Page(s)**

**Cases**

3

Amoco Egypt Oil. Co. v. Leonis Nav. Co
      972 F.2d 261 (9th Cir. 1992).............................................   17

4

5

Avocent Huntsville Corp. v. Aten Int'l Co.,
      552 F.3d 1324, 1331 (Fed. Cir. 2008)..............................   5

6

Baughman v. Walt Disney World Co.,
      685 F.3d 1131, 1133 (9th Cir. 2012)..............................   21

7

8

Bell v. City of Boise,
      709 F.3d 890, 897 (9th Cir. 2013)..................................   19

9

Beverly Hills Fan Co. v. Royal Sovereign Corp.,
      21 F.3d 1558, 1565 (Fed. Cir. 1994)...............................   4,6

10

11

Breckenridge Pharm. Inc. v. Metabolite Labs., Inc.,
      444 F.3d 1356, 1362 (Fed. Cir. 2006)..............................   5

12

Burger King Corp. v. Rudzewicz
      471 U.S. 462, 478, 105 S.Ct. 2174, 2185 (1985)............   2-5

13

14

Butcher's Union Local No. 498 v. SDC Investment, Inc.,
      788 F.2d 535, 539 (9th Cir. 1986)..................................   2

15

16

Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.
      297 F.3d 1343, 1350-51 (Fed Cir. 2002).........................   5

17

18

Elecs. For Imaging, Inc. v. Coyle,
      340 F.3d 1344, 1349 (Fed. Cir. 2003)..............................   5

19

Evans v. Galardi,
      (1976) 16 Cal.3d 300, 308-09, 128 Cal.Rptr. 25, 546 P.2d 313........   11

20

21

Farmers Bank of the State of Delaware v. Bell Mortgage Corp (Farmers Bank II),
      577 F.Supp. 34, 35 (D. Del., 1978)..................................   3

22

23

Fujitsu Limited v. Belkin International, Inc.et.al.,
      USDC NDCA Case No. 5:10-cv-03972 LHK (March 29, 2011).......   4-6

24

Hanson v. Denckla,
      357 U.S. 235, 250-51 (1958)..........................................   11,24-25

25

Plaintiff's Mem. Of Pts. & Auths. In Opp. To MTD SAC, Under FRCP 12(b)(2)), By
Defendants Susan Bond And James Rupert [Case No. 5:12-cv-05292 LHK (HRL)]

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Hazel Atlas Co. v. Hartford Co.,
    322 U.S. 238 (1944)............................................................   19

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 408, 416, 104 S.Ct. 1868,   80 L.Ed.2d 404 (1984)........................   5

Inamed Corp. v. Kuzmak,
    249 F.3d 1356, 1360, 58 U.S.P.Q.2D (BNA)
    1774, 1776 (Fed. Cir. 2001)............................................   5

Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,
    456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)........................   2

International Shoe Co. v. Washington,
    326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed.95 (1945)........................   5

Kougasian v. TMSL, Inc.,
    359 F.3d 1136, 1140-41 (9th Cir. 2004)........................   19

Lazzarone v. Bank of America,
    181 Cal.App.3d 581 (1986)........................   25

Maldonado v. Harris,
    370 F.3d 945, 950 (9th Cir. 2004)........................   19

New Hampshire v. Maine,
    532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)........................   21,22

Noel v. Hall,
    341 F.3d 1148, 1164 (9th Cir. 2003)........................   19

Nuance Commc'ns, Inc. v. Abbyy Software House,
    626 F.3d 1222, 1230 (Fed. Cir. 2010)........................   4

Omni Capital  Int'l v. Rudolf Wolff & Co.,
    484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987)........................   1

Patent Rights Prof. Group, LLC v. Video Gaming Techs., Inc.,
    603 F.3d 1364,1369 (Fed. Cir. 2010)........................   4

Peay v. BellSouth Medical Assistance Plan,
    205 F.3d 1206, 1209-10 (10th Cir. 2000)........................   1,2

Plaintiff's Mem. Of Pts. & Auths. In Opp. To MTD SAC, Under FRCP 12(b)(2)), By
Defendants Susan Bond And James Rupert [Case No. 5:12-cv-05292 LHK (HRL)]

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,
     119 F.3d 935, 942 (11th Cir. 1997)................................................... 1

Rissetto v. Plumbers & Steamfitters Local 343,
     94 F.3d 597, 604-05 (9th Cir. 1996).................................................. 21

Russello v. United States,
     464 U.S. 16, 26-29 (1983)............................................................... 3

Schwarzenegger v. Fred Martin Motor Co.,
     374 F.3d 797, 801 (9th Cir. 2004)................................................... 4

Sedima, SP RL v. Imrex Co.,
     473 U.S. 479, 497-98, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)..................... 3

Sher. v. Johnson
     911 F.2d 1357, 1365 (9th Cir. 1990)................................................ 10,11

3D Sys., Inc. v. Aerotech Labs, Inc.
     160 F.3d 1373, 1376-77 (Fed. Cir. 1998).......................................... 4

Trintec Indus. v. Pedre Promotionl Prods.,
     395 F.3d 1275, 1282 (Fed. Cir. 2005).............................................. 5

United States v. Turkette,
     452 U.S. 576,  586-587 (1981)........................................................ 3

Willingway Hosp., Inc. v. Blue Cross & Blue Shield,
     870 F.Supp. 1102, 1104 (S.D.Ga. 1994)........................................... 2

**Constitutions**

UNITED STATES CONSTITUTION

     5th Amendment................................................................... 2,13
     14th Amendment.................................................................. 2,4,25

**Statutes**

FEDERAL RULES OF CIVIL PROCEDURE

     Rule 12(b)(2)..................................................................... 1,4,6-9

Plaintiff's Mem. Of Pts. & Auths. In Opp. To MTD SAC, Under FRCP 12(b)(2)), By
Defendants Susan Bond And James Rupert [Case No. 5:12-cv-05292 LHK (HRL)]

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes (Continued)**

UNITED STATES CODE

      18 USC § 1964(c)................................................................... 3

      18 USC § 1965(a)........................................................... 2,3,4,10,13

      18 USC § 1965(b)...........................................................2,3,4,8,10-13

OREGON REVISED STATUTES

      ORS 9.160(1)....................................................................... 24

      ORS 18.655(1)(e)................................................................ 9,15

v

Plaintiff's Mem. Of Pts. & Auths. In Opp. To MTD SAC, Under FRCP 12(b)(2)), By
Defendants Susan Bond And James Rupert [Case No. 5:12-cv-05292 LHK (HRL)]

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FRCP 12 (b)(2) MOTION TO DISMISS SECOND AMENDED COMPLAINT, BY DEFENDANTS SUSAN BOND AND JAMES RUPERT**

**I.    To Promote Efficiency, The Plaintiff Incorporates By Reference His Opposition Arguments And Contentions From His Oppositions To The 2nd MTD Filed By Defendants Zusman And Markun (ECF 115), By Defendants Downes And Schulte (ECF 116),  Plus The Declaration Of William Rupert (ECF 117, 117-1); Plaintiff's Request For Judicial Notice (ECF 118); And Plaintiff's Table Of Exhibits #1-#61(ECF 119)**

For ease of the Court, rather than repeat the same arguments and contentions that have already been covered in detail in the Plaintiff's Responses in opposition to: (A) the FRCP 12(b)(6) MTD filed by Defendants Zusman and MZC (ECF 115); and, (B) the FRCP 12(b)(2) MTD filed by Defendants Downes and Schulte (ECF 116); the Plaintiff hereby incorporates each and every averment stated therein, as though fully set forth at length herein.

The Plaintiff similarly incorporates by this reference: (C) the Declaration Of William Rupert, and Exhibits #57-#61 (ECF 117 & ECF 117-1); (D) the Plaintiff's Request For Judicial Notice (ECF 118); and, (E) the Plaintiff's Table of Exhibits #1-#61 (ECF 119), as though each and every averment stated therein is fully set forth herein.

**II.    LEGAL STANDARDS UNDER FRCP 12(b)(2)**

**A.    Federal Question Personal Jurisdiction**

The following case, *Peay v. BellSouth Medical Assistance Plan,* 205 F.3d 1206 (10th Cir. 2000), provides a useful discussion of the general principles applicable to federal question personal jurisdiction disputes, as in the instant case:

> "Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) 'whether the exercise of jurisdiction comports with due process.'  *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 942 (11th Cir. 1997); *see also Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) (finding, in a federal question case, that before a federal court may exercise personal

jurisdiction over a defendant, there must be 'a basis for the defendant's amenability to service of summons').

   While service of process and personal jurisdiction both must be satisfied before a suit can proceed, they are distinct concepts that require separate inquiries. *Willingway Hosp., Inc. v. Blue Cross & Blue Shield,* 870 F.Supp. 1102, 1104 (S.D.Ga. 1994) (citing 4 Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure § 1063 (1987)). In the federal system, service of process is governed by Rule 4 of the Federal Rules of Civil Procedure. By contrast, '"[t]he requirement that a court have personal jurisdiction flows . . . from the Due Process Clause . . . . It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty."' *Omni Capital Int'l,* 484 U.S. at 104, 108 S.Ct. 404 (quoting *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)). More specifically, in federal question cases, personal jurisdiction flows from the Due Process Clause of the Fifth Amendment. (fn. 2) *See id.* at 103-04, 108 S.Ct. 404 (assuming, in a federal question case, that a court's exercise of personal jurisdiction must comport with Fifth Amendment due process principles); *Republic of Panama,* 119 F.3d at 942 ('it is well established that when . . . a federal statute provides the basis for jurisdiction, the constitutional limits of due process derive from the Fifth, rather than the Fourteenth, Amendment.').''
<u>Peay v. BellSouth Medical Assistance Plan,</u>
      205 F.3d 1206, 1209-10 (10th Cir. 2000)

This same decision further provides as follows:

   "To establish that jurisdiction does not comport with Fifth Amendment due process Principles, a defendant must first demonstrate 'that his liberty interests actually have been infringed.' *Id.* at 946. The burden is on the defendant to show that the exercise of jurisdiction in the chosen forum will 'make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage in comparison to his opponent.' *Burger King Corp.,* 471 U.S. at 478, 105 S.Ct. 2174 (internal quotation marks and citations omitted); *accord Republic of Panama,* 119 F.3d at 948 (following *Burger King Corp.*)."
<u>Peay v. BellSouth Medical Assistance Plan,</u>
      205 F.3d 1206, 1212 (10th Cir. 2000)

**B.    Under 18 U.S.C. § 1965(a)(b) Of The RICO Statutes**

The significance of the nationwide service provisions of the RICO statutes (18 U.S.C. § 1965(a)(b)), are discussed and explained in the case of *Butcher's Union Local No. 498 v. SDC Inv., Inc.,* 788 F.2d 535 (9th Cir. 1986), where the following is stated:

   "As section 1965(b) makes clear, the right to nationwide service in RICO suits is not unlimited. For nationwide service to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict

2

conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators.  *See Farmers Bank II,* 577 F.Supp. at 35.  This standard does not create jurisdictional gaps because it does not prevent plaintiffs from pursuing separate suits against nonresident RICO defendants who did not participate in the single racketeering enterprise.  Thus, merely naming persons in a RICO complaint does not, in itself, make them subject to section 1965(b)'s nationwide service provisions."

<u>Butcher's Union Local No. 498 v. SDC Inv., Inc.,</u>
        788 F.2d 535, 539 (9th Cir. 1986)

18 U.S.C. § 1965(a) states the following:

   "(a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."

18 U.S.C. § 1965(b) states the following:

   "(b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof."

Additionally, as clearly explained in the following case of *Sedima, SP RL v. Imrex Co.,* 473 U.S. 479 (1985), the RICO statutes are to be construed expansively:

   "RICO is to be read broadly.  This is the lesson not only of Congress' self-consciously expansive language and overall approach, *see United States v. Turkette,* 452 U.S. 576, 586-587 (1981), but also of its express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes,' Pub. L. 91-452, § 904(a), 84 Stat. 947. The statute's 'remedial purposes' are nowhere more evident than in the provision of a private action for those injured by racketeering activity.  See also, n. 10, *supra*.  Far from effectuating these purposes, the narrow readings offered by the dissenters and the court below would in effect eliminate § 1964(c) from the statute.
   RICO was an aggressive initiative to supplement old remedies and develop new methods for fighting crime.  See generally *Russello v. United States,* 464 U.S. 16, 26-29 (1983).  While few of the legislative statements  about novel remedies and attacking crime on all fronts, see *ibid.,* were made with direct reference to § 1964(c), it is in this spirit that all of the Act's provisions should be read."

<u>Sedima, SP RL v. Imrex Co.,</u>
        473 U.S. 479, 497-98, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)

Plaintiff contends personal jurisdiction is appropriate under the "ends of justice"

Plaintiff's Mem. Of Pts. & Auths. In Opp. To MTD SAC, Under FRCP 12(b)(2)), By
Defendants Susan Bond And James Rupert [Case No. 5:12-cv-05292 LHK (HRL)]

provisions of 18 U.S.C. § 1965(a)(b), and all he has to allege is minimum contacts with the United States, and a California Defendant, which he has done, because the SAC alleges all RICO Defendants, and RICO Conspiracy Defendants, are residents of the United States, residing or conducting their affairs in the States of California, Oregon or Michigan.

Alternatively, Plaintiff contends the exercise of specific personal jurisdiction under California's long-arm statute, over the out-of-state defendants, would still comport with notions of fair play and substantial justice under the 14th Amendment.  The legal standards under this more restrictive standard are set forth below, in the next section.

## C.      Under California's Long-Arm Statute

The following legal discussion is based upon the comments made by the Honorable Lucy H. Koh, in her March 29, 2011, Order, upon four separate motions to dismiss (under FRCP 12(b)(2),(5)&(6)), in the case of *Fujitsu Limited v. Belkin International, Inc.et al.,* USDC NDCA Case No. 5:10-cv-03972 LHK.  Pertinent to the instant case, where national borders are not concerned, Judge Koh set forth the following Legal Standards, concerning how a FRCP 12(b)(2) motion to dismiss should be evaluated.

>      "'Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process.' *Nuance Commc'ns, Inc. v. Abbyy Software House,* 626 F.3d 1222, 1230 (Fed. Cir. 2010) (quoting *3D Sys., Inc. v. Aarotech Labs, Inc.* 160 F.3d 1373, 1376-77 (Fed. Cir. 1998) (quotation marks omitted.)  (footnote 14).  'Because California's long-arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law federal law are the same.'  *Id.* at 1230-31 (citing *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 801 (9th Cir. 2004)).  'The "constitutional touchstone" of the due process inquiry "remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Patent Rights Prof. Group, LLC v. Video Gaming Techs., Inc.,* 603 F.3d 1364,1369 (Fed. Cir. 2010) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).  'The requirement for purposeful minimum contacts helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum.' *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1565 (Fed. Cir. 1994) (citations omitted).

Plaintiff's Mem. Of Pts. & Auths. In Opp. To MTD SAC, Under FRCP 12(b)(2)), By Defendants Susan Bond And James Rupert [Case No. 5:12-cv-05292 LHK (HRL)]

This 'minimum contacts' requirement can be satisfied in two ways.  First, the court may exercise general jurisdiction 'where the defendant has continuous and systematic contacts with the forum state, even if those contacts are not related to the cause of action'"  *Elecs. For Imaging, Inc. v. Coyle,* 340 F.3d 1344, 1349 (Fed. Cir. 2003) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).  Second, the court may exercise specific jurisdiction where 'the defendant "has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities."' *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.* 297 F.3d 1343, 1350-51 (Fed Cir. 2002) (quoting *Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1360, 58 U.S.P.Q.2D (BNA) 1774, 1776 (Fed. Cir. 2001)).

'Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice."'  *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (quoting from *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed.95 (1945)).         .         .         .         .         .         .         .         .         .

When no jurisdictional discovery has occurred, a plaintiff 'is required "only to make a prima facie showing" of jurisdiction to defeat the motion to dismiss.'  *Trintec Indus. V. Pedre Promotionl Prods.,* 395 F.3d 1275, 1282 (Fed. Cir. 2005) (quotation omitted).  '[A] district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor.'  *Electronics for Imaging,* 340 F.3d at 1349 (citations omitted).  'If the district court concludes that the existing record is insufficient to support personal jurisdiction, . . . [jurisdictional] discovery is appropriate where the existing record is "inadequate" to support personal jurisdiction and "a party demonstrates that it can supplement its jurisdictional allegations through discovery."'  *Trintec,* 395 F.3d at 1283 (quotation and citation omitted)."

Fujitsu Limited v. Belkin International, Inc.et al.,

USDC NDCA Case No. 5:10-cv-03972 LHK (March 29, 2011)

"The third prong of the test for specific jurisdiction requires that the assertion of personal jurisdiction is reasonable and fair.  *Synthes,* 563 F.3d at 1297.  'With respect to the [this] prong, the burden of proof is on the defendant, which must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" under the five-factor test articulated by the Supreme Court in *Burger King.*"  *Breckenridge Pharm. Inc. v. Metabolite Labs., Inc.,* 444 F.3d 1356, 1362 (Fed. Cir. 2006) (quoting *Burger King,* 471 U.S. at 476-77).  These factors are: '[1] the burden on the defendant, [2] the forum State's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief; [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [5] the shared interest of the several States in furthering fundamental substantive social policies.'  *Avocent Huntsville Corp. v. Aten Int'l Co.,* 552 F.3d 1324, 1331 (Fed. Cir. 2008) (quoting *Burger King,* 471 U.S. at 476 (quotation marks omitted).  In general, the presence of minimum contacts is enough.  Cases where the exercise of personal

5

jurisdiction is unreasonable are 'limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.'  *Beverly Hills,* 21 F.3d at 1568."

<u>Fujitsu Limited v. Belkin International, Inc.et al.,</u>

USDC NDCA Case No. 5:10-cv-03972 LHK (March 29, 2011)

With the above legal standards in mind, Plaintiff contends the current MTD, by the Sibling Defendants (Susan and James), should be denied, based upon the grounds discussed below, or otherwise set forth by the Plaintiff, in related opposition documents, filed herein.

## III.    ARGUMENT

### A.    The Factual Errors In The Court's September 17, 2013 Order Granting Motions To Dismiss, Misrepresenting The Allegations Of Plaintiff's FAC, Should Be Corrected, Not Expanded Upon, As The Sibling Defendants (Susan And James), Attempt To Do

During the 1st round of FRCP 12(b) MTDs, the Schulte Defendants dishonestly sandbagged the Plaintiff, when they egregiously misrepresented Paragraph 8 of the FAC, to the Honorable Lucy H. Koh, by stating the following:

"For example, **Plaintiff has pled that Zusman is a conspirator with six Oregon defendants and that the basis for Zusman's involvement in the conspiracy is his representation of an Oregon client (Irene Rupert) regarding an estate established under  Oregon law.  (FAC, ¶ 8)**  Plaintiff also excludes from his complaint the fact that Zusman's firm (in which he is a principal), has an Oregon office. (fn. 1)."
(ECF 39, p. 3:27-4:3)                    (bold emphasis added)

The footnote 1 states the following:

"Attached hereto as Exhibit 1 is a screen shot from MZC's website demonstrating that the firm has an Oregon presence."
(ECF 39; p. 4:28)

Because this misrepresentation was presented in a Reply document, and the FRCP 12(b) MTDs were decided without oral argument, the Plaintiff had no opportunity to correct the egregious misrepresentation of his FAC's ¶ 8, by the Schulte Defendants.  However, the facts have not changed, and the FAC's ¶ 8 states the following:

6

Plaintiff's Mem. Of Pts. & Auths. In Opp. To MTD SAC, Under FRCP 12(b)(2)), By Defendants Susan Bond And James Rupert [Case No. 5:12-cv-05292 LHK (HRL)]

"8.    Defendant Edward S. Zusman ("Zusman"), is a resident of California and an attorney-at-law licensed to practice in California.  Zusman represented both defendant Susan and the late Irene E. Rupert, in their individual capacities, in the federal tort diversity action that plaintiff William commenced on June 20, 2009, as USDC NDCA Case No.: 5:09-cv-02758 JF (RS).  As part of this representation, he participated in a successful motion to dismiss, under FRCP 12(b)(2), which was largely premised upon the false claims that Irene E. Rupert had never owned any property located in California, and none of Samuel J. Rupert's estate consisted of any property located in California.  A knowingly false Declaration of Irene E. Rupert was procured by Mr. Zusman, falsely stating there were no relevant assets located in California, and this false Declaration was served by mail and electronically filed in the case on November 4, 2009.  Exercise of personal jurisdiction over defendant Zusman is reasonable and proper in this District because defendant Zusman's actions had significant effects in California, and because some of the wrongful actions that damaged plaintiff took place within the State of California."
(ECF 3; FAC, ¶ 8,  p. 4:5-20).

Clearly, the FAC's ¶ 8 does not allege Zusman was a "conspirator with six Oregon defendants", and it makes no reference to "an estate established under Oregon law".

The phrase "and estate established under Oregon law" creates the false impression that either Samuel or Irene Rupert's Will was admitted to probate in the State of Oregon, thereby establishing an estate under Oregon law.  However, as more clearly alleged in the SAC, no Wills were admitted to probate in Oregon.  (ECF 106; SAC, ¶ 1, p. 4:12-14).

Nonetheless, for reasons that are perfectly reasonable and understandable, given the amount of paperwork that was before Judge Koh, in connection with the 6 motions that were disposed of in her September 17, 2013 Order Granting Motions To Dismiss, the egregious misrepresentation of the FAC's ¶ 8, by the Schulte Defendants, in their Reply document, found its way into the Court's Order (ECF 100), which includes the following egregious misrepresentation of the FAC's ¶ 8:

"Despite Plaintiff's claims that no other district will have jurisdiction over Zusman, **the FAC states that he was a member of a conspiracy with six Oregon defendants,** *see* **FAC ¶ 8, and that his involvement in the conspiracy was his representation of two Oregon residents in connection with an estate established under Oregon law,** *id.* Moreover, Zusman's law firm has an office in Oregon.  *See* Downes Reply at 4.

7

Plaintiff's Mem. Of Pts. & Auths. In Opp. To MTD SAC, Under FRCP 12(b)(2), By
Defendants Susan Bond And James Rupert [Case No. 5:12-cv-05292 LHK (HRL)]

Accordingly, the Court finds that an Oregon court may have jurisdiction over all of the RICO defendants.  As such, jurisdiction under 18 U.S.C. § 1965(b) is inappropriate, and these motions must turn on traditional personal jurisdiction analysis."

(bold emphasis added)

(ECF 100, p. 21:12-18; Order Granting Motions To Dismiss, September 17, 2013)

Accordingly, the Court's Order is infected with factual errors, which are significant because they convey a deeper misunderstanding of the gravamen of the Plaintiff's action against a faithless fiduciary, and the errant lawyers who have aided and abetted her schemes, with their own fraudulent schemes that have involved extrinsic fraud, obstruction of justice and abuse of process, in the states of California and Oregon.

All four groups of defendants are seeking to capitalize upon the fraudulent inroads they made during the first round of FRCP 12(b) MTDs, that misrepresented the gist of the FAC.  The Court's September 17, 2013 Order Granting Motions to Dismiss is cited by all the Defendants, for those passages where the Defendants' misrepresentations have been inadvertently and unwittingly adopted by the Court.

However, as an interlocutory Order at the pleadings stage, where no evidence has been submitted and nothing of substance has been adjudicated, the Court should decline the Defendants invitation to regard the interlocutory Order as if it carries the weight of a summary adjudication ruling, it is submitted.

Moreover, because the interlocutory Order is infected with factual error, remedial corrective action should be taken, in the interlocutory Order that will result from this 2nd round of FRCP 12(b) MTDs, it is submitted.

For instance, the Court's prior ruling, in the Order Granting Motions To Dismiss, filed September 17, 2013 (ECF 100), also contains another egregious misrepresentation, by adopting the Cartwright Defendants' misleading contentions and arguments, concerning the FAC's ¶¶

Plaintiff's Mem. Of Pts. & Auths. In Opp. To MTD SAC, Under FRCP 12(b)(2)), By Defendants Susan Bond And James Rupert [Case No. 5:12-cv-05292 LHK (HRL)]

86,87, during the first round of FRCP 12(b) MTDs.  The Cartwright Defendants' falsely argued that Plaintiff's FAC alleged RICO Defendant Johansson wrongfully "issued" Oregon Writs of Garnishment on November 4, 2011, and the Plaintiff was seeking to impose liability for merely "issuing" the Writs.  (ECF 36, MTD, p. 13:27-14:1), and the Court unwittingly adopted this misleading argument, as the truth, in its September 17, 2013 Order Granting Motions to Dismiss.  (See ECF 100, p. 23:10; p. 26:7-28:7).

In fact, ¶¶ 86, 87 of the FAC allege that the wrongful conduct was proceedings in a manner that violates the California Sister-State Money Judgment Act (ECF 3; FAC, ¶ 86, p. 45:20-46:6), and that this wrongful conduct, the abuse of the Oregon Writs to target property known to be located beyond the territorial limits of the State of Oregon, resulted in "wrongful levies" upon funds located in Plaintiff's California checking account.  (ECF 3; FAC, ¶ 87, p. 46:7-17).  The important point is that the Plaintiff has _never_ alleged that the mere "issuance" of the Oregon Writs of Garnishment was a wrongful act, because it wasn't.  However, Oregon Revised Statute 18.655(1)(e) limits the effectiveness of such a writ to funds on deposit at a financial institution which are  "located in this state."  (See ORS 18.655(1)(e)).  The Plaintiff's theory has always been that the Writs were properly issued, but they were abused and misused thereafter, by the Cartwright and Sibling Defendants, for a purpose that was not authorized or intended by the Oregon Legislature, and which violated the California Sister-State Money Judgment Act, to the Plaintiff's extreme detriment (as his funds were wrongly levied upon and sent to Oregon).  (See ECF 106; ¶¶ 98-104, pp. 75:19-79:3).

Quite clearly, the Plaintiff is being prejudiced by these earlier inadvertent judicial errors, concerning Plaintiffs theory of the case, through the arguments  and contentions now being presented in this 2nd round of MTDs (where all defendants cite to the Court's erroneous

Plaintiff's Mem. Of Pts. & Auths. In Opp. To MTD SAC, Under FRCP 12(b)(2)), By Defendants Susan Bond And James Rupert [Case No. 5:12-cv-05292 LHK (HRL)]

perceptions of the FAC, and then argue that nothing new is alleged in the SAC). Also, the record shows Plaintiff acted diligently to correct the errors, as soon as he read the Court's prior Order, by promptly seeking leave to file a motion for reconsideration (ECF 102; Motion, September 23, 2013), which was unfortunately denied (ECF 103; Order, September 25, 2013).

Accordingly, appropriate corrective and remedial action should be taken, to neutralize any lingering effects of the factual errors that unfortunately infect the Court's September 17, 2013 Order Granting Motions To Dismiss, it is respectfully submitted.

**B.**   **The Sibling Defendants Contacts With The United States Are Sufficient To Make The Exercise Of Venue And Jurisdiction In This District Reasonable, Under 18 U.S.C. § 1965(a)(b)**

During the 1st round of MTDs, the Schulte Defendants sandbagged the Plaintiff with new arguments and an exhibit they submitted to the Court, with their Reply Memorandum, that showed Defendant Markun has a branch location in Portland, Oregon. (ECF 39).

The Plaintiff timely filed an Objection To Reply Evidence (ECF 44), which was unfortunately never acted upon. However, it is certainly easy to see how this Objection To Reply Evidence could fall through the cracks, and not be noticed, given the excessive number of pages of filed documents that were generated during the 1st round of MTDs.

The Plaintiff's Objection To Reply Evidence (ECF) argued *inter alia* that the existence of a partnership branch in Portland, Oregon was not dispositive upon whether personal jurisdiction would also exist over individual partner Defendant Edward S. Zusman.

As it turns out, the law is well settled, that personal jurisdiction has to be individually examined and established, over both a partnership, and over any partners, of that partnership. The case of *Sher v. Johnson,* 911 F.2d 1357 (9th Cir. 1990) is instructive, regarding federal law, and it confirms that personal jurisdiction over a partnership does not automatically create

personal jurisdiction over an individual partner.  In *Sher,* the court found personal jurisdiction over a partnership (and partnership liability for the acts of the partners), but not over the individual partners who were being sued (*Id.* at 1365-66), even though there had been some contact between two of the partners and the forum state.  California case law also requires that personal jurisdiction over partnerships, and over individual partners, be separately determined. (See *Evans v. Galardi,* (1976) 16 Cal.3d 300, 308-09, 128 Cal.Rptr. 25, 546 P.2d 313.)

In their current MTD, the Sibling Defendants basically repeat the same jurisdictional arguments they presented in the 1st round of MTDs, by stating the following:

> "Section 1965(b) jurisdiction is only appropriate if there is no other district in which a court would otherwise have jurisdiction over all of the alleged co-conspirators.  (ECF No. 100, pp. 20-21.)  Plaintiff's FAC failed to demonstrate that defendant Edward Zusman is *not*  subject to jurisdiction in Oregon.  As the Court explained:

>> the FAC states that he was a member of a conspiracy with six Oregon defendants, *see* FAC ¶ 8, and that his involvement in the conspiracy was his representation of two Oregon residents in connection with an estate established under Oregon law, *id.*  Moreover, Zusman's law firm has an office in Oregon.  *See* Downes Reply at 4.  Accordingly, the Court finds that an Oregon court may have jurisdiction over all of the RICO defendants.  As such, jurisdiction under 18 U.S.C. § 1965(b) is inappropriate . . . . . . . .

> (*Id.* at 21:12-17.)  Plaintiff has done nothing in his SAC to address the Court's concerns regarding jurisdiction under 1965(b).  Plaintiff's SAC should be dismissed for the same reasons as his FAC."
> (ECF 111, MTD, p. 14:16-26)

Then the Sibling Defendants turn their attention to the SAC, and state the following:

> "Like the plaintiffs in *Huntair,* Plaintiff here has again merely concluded that Zusman is not subject to personal jurisdiction in Oregon.  (*See* SAC, n.1.)  In doing so, Plaintiff continues to ignore this Court's ruling and the content of his own pleadings.  For example, **Plaintiff has pled that Zusman is a conspirator with eight Oregon defendants (five individuals and three entities) and that the basis for Zusman's involvement in the conspiracy is his representation of an Oregon client (Irene) regarding an estate established under Oregon law. (SAC, ¶ 8.)** Plaintiff also admits that Zusman is a named partner in a frim that has an Oregon office. (*id.*)"
> (ECF 111, MTD, p. 15:8-14)          (bold emphasis added)

However, just as the FAC's ¶ 8 was egregiously misrepresented during the 1st round of MTDs, the SAC's ¶ 8 is being egregiously misrepresented by these Sibling Defendants (along with the Cartwright Defendants), during the 2nd round of MTDs.  The SAC's ¶ 8 actually states the following:

"8.    Defendant **Edward S. Zusman** ("Zusman"), is a resident of California and an attorney-at-law licensed to practice in California (and only in California).  Defendant Zusman is a partner in the law firm of Markun Zusman Compton, LLP, ("MZFC"), who is only affiliated with the San Francisco, California partnership branch location. Although MZFC also has a partnership branch located in Portland, Oregon, only attorneys Amir Tadjedin and Andrew Harris work out of that branch, and plaintiff has no reason to believe these Oregon attorneys, or the Oregon partnership branch, has any involvement in the matters alleged herein.  Defendant Zusman represented both defendant Susan and the late Irene E. Rupert, in the federal tort diversity action that plaintiff William commenced on June 22, 2009, as USDC NDCA Case No.: 5:09-cv-02758 JF (RS).  In that action Defendant Zusman made material misrepresentations of significant jurisdictional facts (concerning a state's ability to exercise jurisdiction over an out-of-state trustee and over out-of-state trust assets, as established in the case of *Hanson v. Denckla,* 357 U.S. 235 (1958)), to Judge Fogel, by joining with, and adopting the "Big Lie" arguments presented by Defendant Downes in his supporting declaration, and asserting to Judge Fogel that the late Irene Rupert was the trustee of both trusts, at a time when she was not the trustee of either trust[1].  Through his knowingly false and misleading arguments to Judge Fogel, Defendant Zusman helped his other client in the case, Defendant Susan, avoid her fiduciary duty of full and complete disclosure to the Court, that there were significant assets which were located in California (and Irene Rupert wasn't the trustee of either Trust).  As such, extrinsic fraud was practiced upon Judge Fogel, by the fiduciary's suppression and concealment of the location of significant trust assets (and the true identities of the respective trustees).  Exercise of personal jurisdiction over defendant Zusman is reasonable and proper in this District, under either the "ends of justice" provisions of 18 U.S.C. § 1965(b), or because Defendant Zusman resides in, and/or conducts his business affairs in, this Northern District of California, where the damaging effects of his fraudulent and wrongful actions were felt.  Defendant Zusman's contacts with the State of Oregon are not sufficient to allow that state to exercise personal jurisdiction over him.
(ECF 106, p. 9:3-10:9; SAC, ¶ 8)

Quite clearly, the Sibling Defendants are egregiously misrepresenting the contents of

---

[1]  On January 8, 2010, when Defendant Zusman presented his false argument to Judge Fogel, the Trustee of the Irene Rupert Trust, u/a/d July 23, 2009, was Susan.  The Trustee of the Samuel Rupert Trust, u/a/d 11/01/1995, as Amended 01/26/2004, was Plaintiff, after he filled the vacancy in the Office of the Trustee, by his Acceptance of Trust, effective July 8, 2009.

¶ 8 of the SAC, hoping the Court will not notice, or double check to see if the Officers of the Court are complying with their duties of candor and honesty, to the Court.

The important point is that the SAC now more clearly alleges facts showing that RICO Defendant Zusman's jurisdictional contacts with the State of Oregon are insufficient, to make the exercise of personal jurisdiction over him, by the State of Oregon, comport with notions of substantial justice and fair play.  (ECF 106; SAC, ¶ 1, n. 1; ¶ 8).

Therefore, Plaintiff 's civil RICO claim sufficiently alleges general jurisdiction over a defendant in this District (RICO Defendant Zusman), and that there is no other district that would have jurisdiction over all the other RICO Defendants and RICO Conspiracy Defendants, who are variously located in Oregon, California and Michigan.  As such, the provisions of 18 U.S.C. § 1965(a)(b) are fully applicable, and should be relied upon.

Under these federal statutory provisions, sufficient contacts with the United States have been alleged, so the requirements of Due Process, under the 5th Amendment, have been met, and personal jurisdiction exists over all defendants appearing herein, in this federal question action, where  the statutes provide for nationwide service of summons.

**C.    The Sibling Defendants Targeted The Plaintiff, Caused Negative Effects In California, And Availed Themselves Of The Privileges Of Conducting Business In California, Such That The Exercise Of Personal Jurisdiction Over Them Is Fair And Reasonable**

*First,* the SAC describes a scheme that includes 54 individual specific RICO Predicate Acts, over the 4 year period of time prior to the commencement of the action on October 12, 2012.  The SAC's ¶ 115 (ECF 106, p. 91:8-18; SAC, ¶ 115), incorporates the Appendix A that is attached to the SAC, and this Appendix A (ECF 106, p. 114-127; SAC, App. A) lists the specific details concerning each of the alleged 54 RICO Predicate Acts.

13

The Sibling Defendants Motion to Dismiss the SAC does not fairly, accurately, or reasonably traverse the specific RICO Predicate Acts alleged against RICO Defendant Susan[2] or RICO Conspiracy Defendant James, as explained below.  The failure to controvert the allegations of ¶ 6 of the SAC, which gives the overview of RICO Defendant Susan's alleged schemes as an intermeddling trustee *de son tort,* is significant, it is submitted.

*Second,* RICO Defendant Susan is alleged to be involved with RICO Predicate Acts #1-#15, all by herself, as RICO Stage 1 (See ECF 106, SAC; App. A. pp. 1-4), then she fell in with RICO Defendant Downes, and they committed RICO Predicate Acts #16-#22, during RICO Stage 2 (See ECF 106, SAC; App. A. pp. 4-5).  Next, RICO Defendant Susan was complicit in the RICO Stage 3 Obstructions of Justice, with RICO Defendant Zusman, before Judge Fogel in *Rupert I,* which the SAC references as RICO Predicate Acts #23-#32 (See ECF 106, SAC; App. A. pp. 6-7).  Thereafter, in RICO Stage 4, RICO Defendant Susan participated in further wrongful schemes with the RICO Defendant Whitman, or with RICO Conspiracy Defendant James, as alleged in RICO Predicate Acts #33-#41 (App. A, pp. 8-11).  Finally, RICO Defendant Susan schemed with the RICO Defendants Whitman and Johansson, or with RICO Conspiracy Defendant James, as alleged in RICO Predicate Acts #44-#54 (See ECF 106, SAC; App. A. pp. 13-14).

By way of example, RICO Defendants Whitman and Susan are alleged to have committed RICO Predicate Acts 33-34, on March 15, 2010, when they used the mails to send a fraudulent pleading (ECF 48, pp. 19-37; Ex 30, Petition for Instructions and to Compel

---

[2]  The allegations of the SAC, which RICO Defendant Susan should traverse in the Motion to Dismiss include the following: ¶¶ 6, 18, 34, 99, 100, 108, 110, 111 & 123-129.  The allegations of the SAC, which RICO Conspiracy Defendant James should traverse in the Motion to Dismiss include the following: 11, 92, 94, 112(A), 126 & 127.  However, the Sibling Defendants' MTD refers to only the following Paragraphs: 7-11, 15(*l*), 18, 27, 31, 34, 58, 59, 92-94, 111, 112, 118-129.

14

Plaintiff's Mem. Of Pts. & Auths. In Opp. To MTD SAC, Under FRCP 12(b)(2)), By Defendants Susan Bond And James Rupert [Case No. 5:12-cv-05292 LHK (HRL)]

Distribution), that repeats the "Big Lie" injurious falsehood that was first fabricated by RICO Defendant Downes on June 10, 2009, by falsely alleging the late Irene Rupert had been the Successor Trustee of the Samuel Rupert Trust (ECF 48, p. 20:4-8; Ex 30, Petition for Instructions and to Compel Distribution, ¶ 3), at a time when Plaintiff was the Successor Trustee, in California. (ECF 48, pp. 13-17; Ex 29, Acceptance of Trust). The false pleading is verified by RICO Defendant Susan. (ECF 48, p. 21:13-15; Ex 30, Petition for Instructions and to Compel Distribution; Verification).

RICO Defendants Whitman and Susan are also alleged to have committed RICO Predicate Acts 35-37, on March 29, 2010, when they used the mails to send the original Samuel Rupert Trust document, dated November 1, 1995 (ECF 48, pp. 63-75; Ex 40, Samuel Rupert Trust), from Oregon, to the Plaintiff in California, after they forged the Trust's Schedule A page (ECF 48, p. 75; Ex 40, Schedule A), to make it look as if the late Samuel Rupert had only funded his Trust with a single asset, which was "Schwab One Trust Account XXXX-5804". However, the Charles Schwab Institutional account in question, XXXX-5804, was not opened until February 26, 2009 more than 4 months after Samuel Rupert died (ECF 48, pp. 58-59; Ex 38, Account Verification Letter) (ECF 43, pp. 51-60; Ex. 24, Initial Brokerage Statement), so the Schedule A page is an obvious forgery, as orchestrated by RICO Defendants Whitman and Susan.

*Third,* RICO Conspiracy Defendant James is charged with RICO Predicate Acts #42 (See ECF 106, SAC; App. A. p. 12), for the fraudulent letter he Emailed from Michigan to Plaintiff in California, on August 31, 2010, where he repeated the false claim that the Samuel Rupert Family Trust was designed to be a small family trust, and expressed his complete support for the activities of RICO Defendant Susan, all of which he ratified. (See ECF 106,

SAC, ¶ 94).  The SAC further alleges RICO Conspiracy Defendant James participated in

obtaining one of the corrupt Oregon judgments, which was obtained through extrinsic fraud,

with regards to the Samuel Rupert Trust, u/a/d 11/01/95.  (See ECF 106, SAC, ¶ 92).   RICO

Conspiracy Defendant James also filed documents in Oregon ratifying the corrupt Oregon

judgment, which was also obtained by extrinsic fraud, declaring Plaintiff's civil death.

Furthermore, RICO Conspiracy Defendant James is alleged to have joined with RICO

Defendants Susan and Downes in the RICO Stage 2 activities that were directed by RICO

Defendant Downes, when they all tried to extort Plaintiff and cause him to agree to their

proposed Modification of Trust document, for the Samuel Rupert Trust, that would have made

RICO Defendant Susan the Successor Trustee of the Samuel Rupert Trust, and would have

converted the Michigan Trust into an Oregon Trust.  The proposed Modification of Trust

document is before the Court (ECF 30, pp. 11-14; Ex 1, [Proposed] Modification Of Trust), and

it shows signature lines for RICO Defendant James, and his children Benjamin Rupert, and

Sarah Johnson.  This document includes the language, "Under no circumstances shall William

Rupert be trustee."   (ECF 30, p. 12; Ex 1, [Proposed] Modification Of Trust)

     Accordingly, the Plaintiff was clearly targeted in California, for the purpose of

attempting to destroy and interfere with Plaintiff's Successor Trusteeship of the Samuel Rupert

Trust, in June of 2009, by RICO Conspiracy Defendants Susan and Downes, and by RICO

Conspiracy Defendant James, as alleged by the Plaintiff (See ECF 106, SAC, ¶ 6, 7, 11, 94 &

126).

     Moreover, the Plaintiff has separately filed a Request For Judicial Notice (ECF 118),

and among the 5 documents he asks the Court to Judicially Notice is: (1) the August 31, 2010

Email from RICO Conspiracy Defendant James, ratifying all of RICO Defendant Susan's

16

Plaintiff's Mem. Of Pts. & Auths. In Opp. To MTD SAC, Under FRCP 12(b)(2)), By
Defendants Susan Bond And James Rupert [Case No. 5:12-cv-05292 LHK (HRL)]

actions (See Declaration of William Rupert, Ex 57 (ECF 117, pp. 11-12; Ex 57)); and, (2) the Declaration of James Rupert (See Declaration of William Rupert, Ex 59 (ECF 117, pp. 18-19; Ex 59));, ratifying all of RICO Defendant Susan's actions in the Oregon action, CV10030497, where she obtained the declaration of Plaintiff's civil death (See Declaration of William Rupert, Ex 58 (ECF 117, pp. 14-16; Ex 58)).

Under these circumstances, the exercise of personal jurisdiction over the Sibling Defendants, in California, where they targeted and damaged the Plaintiff's property and economic relations (including his Successor Trusteeship employment interests), comports with notions of substantial justice and fair play.

Under the unique set of circumstances that exist in the instant case, including the fact that an Oregon Judgment exists that declares Plaintiff's civil death, prior to the late Irene Rupert (ECF 117, pp. 14-16, Ex. 58), specific personal jurisdiction in this District is reasonable.

As the Sibling Defendants correctly point out, in the Ninth Circuit, seven factors are to be balanced in determining whether the exercise of personal jurisdiction over a particular defendant would be reasonable:

> "[1] the extent of purposeful interjection, [2] the burden on the defendant to defend the suit in the chosen forum, [3] the extent of conflict with the sovereignty of the defendant's state, [4] the forum state's interest in the dispute, [6] the importance of the chosen forum to the plaintiff's interest in convenient and effective relief, and [7] the existence of an alternative forum."
> Amoco Egypt Oil. Co. v. Leonis Nav. Co
>      972 F.2d 261 (9th Cir. 1992)

*First,* the Sibling Defendants purposefully interjected themselves into Plaintiff's California based Successor Trusteeship of the Samuel Rupert Trust, and into his economic relations, through their fraudulent schemes that originated and thereafter repeated, the "Big Lie" about the late Irene Rupert being the Successor Trustee (when there has never been a scintilla of

1   evidence to support the injurious falsehood that was maliciously created and subsequently

2   broadcast, in multiple state and federal court proceedings).  The Sibling Defendants could have

3   honored the late Samuel Rupert's express wishes to have the Plaintiff be his Successor Trustee,

4   ahead of Susan or James, but they refused to do so, and they actively interfered with the

5   Plaintiff's ability to effectively function.  However they did not eliminate the fact that the

6   Plaintiff became the lawful occupant of the Office of the Trustee, on July 8, 2009 (ECF 48, pp.

7   13-17; Ex 29, Acceptance of Trust).   Based upon the wrongful interference by the Sibling

8   Defendants, they should expect to be haled into a California court, under these circumstances.

9   This factor favors personal jurisdiction in this District.

10          *Second,* admittedly the burden would be slightly greater for the Sibling Defendants to

11  litigate in California than in Oregon, but only slightly so.  No one has suggested Michigan as an

12  alternative forum, so RICO Conspiracy Defendant James would have to travel to California or

13  Oregon in any event, if his personal attendance was required.  However, this case can be

14  resolved upon Plaintiff's dispositive motions, after only minimal discovery.  Documents from

15  the Oregon proceedings already exist, including the extensive Reporter's Transcripts, which the

16  Plaintiff has obtained, for every minute of every hearing that was conducted in Oregon.

17  Moreover, no further discovery will be required before adjudicating the dispositive issue in this

18  case, which is whether there has ever been a scintilla of evidence to support the alleged "Big

19  Lie" that was first fabricated, and broadcast to the Plaintiff,  by RICO Defendants Downes and

20  Susan, and RICO Conspiracy Defendant James, on June 10, 2009, when they caused the

21  fraudulent letter to be mailed and faxed to Plaintiff, that falsely alleged that the late Irene Rupert

22  "remains" the Successor Trustee of the Samuel Rupert Trust.  (ECF 106, p. 8:2-12; SAC, ¶ 7).

23  (ECF 30, pp. 9-14; Ex 1, Threatening Letter, with [Proposed] Modification of Trust).  This

24

25

second factor only slightly favors the Sibling Defendants.

*Third,* there is no conflict with the sovereignty of the State of Oregon, because the Plaintiff has alleged that the Oregon judgments were procured through extrinsic fraud, and thus not entitled to full faith and credit in the State of California.  Both Oregon and California share a common interest in not allowing extrinsic fraud to corrupt the proper administration of justice, as explained in the case of *Hazel Atlas Co. v. Hartford Co.,* 322 U.S. 238, 246 (1944).

The SAC includes a Prayer for Relief that asks the Court to declare that the Oregon Judgments were procured by extrinsic fraud, and therefore not entitled to full faith and credit, in California.  Plaintiff's attacks on these state court judgments, on grounds amounting to extrinsic fraud, is not barred by the *Rooker-Feldman* doctrine, pursuant to cases such as *Kougasian v. TMSL, Inc.,* 359 F.3d 1136, 1140-41 (9th Cir. 2004)[3]; *Maldonado v. Harris,* 370 F.3d 945, 950 (9th Cir. 2004); *Noel v. Hall,* 341 F.3d 1148, 1164 (9th Cir. 2003); and *Bell v. City of Boise,* 709 F.3d 890, 897 (9th Cir. 2013), and it should be allowed in the instant case, it is submitted, because extrinsic fraud has been sufficiently alleged, and is plausible.

Moreover, California has an interest in protecting its citizens from the enforcement of out-of-state judgments that have been procured by extrinsic fraud, and that is one of the purposes of the "safe-harbor" provisions of the California Sister-State Money Judgment Act.

*Fourth,* California has an interest in protecting its citizens from fraudulent schemes that target and cause unjustified damages to the property and employment opportunities of its

---

[3]  The *Kougasian* Court explained this as follows:

> "Extrinsic fraud on a court is, by definition, not an error by that court, it is, rather, a wrongful act committed by the party or parties who engaged in the fraud.  *Rooker-Feldman* therefore does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud."  (*Id.* at 1141)

Plaintiff's Mem. Of Pts. & Auths. In Opp. To MTD SAC, Under FRCP 12(b)(2)), By Defendants Susan Bond And James Rupert [Case No. 5:12-cv-05292 LHK (HRL)]

citizens.  Further, California has an interest in regulating the conduct of the members of its Bar that engage in obstructions of justice in Courts located in the State of California, as occurred during the RICO Stage 3 activities, when 5 California lawyers and 1 Oregon lawyer, from 2 California law firms and 1 Oregon law firm, all conspired to repeat the "Big Lie" injurious falsehood to Judge Fogel, during *Rupert I,* when they caused him to believe that the late Irene Rupert had been the Successor Trustee of the Samuel Rupert Trust (although there has never been a scintilla of evidence to support the contention).   This factor favors California.

*Fifth,* California is just as efficient a forum as Oregon would be, and assuming the liability and damages issues are bifurcated, the liability phase can readily be decided through motions for summary judgment or summary adjudication of issues, it is submitted.  Live testimony from witnesses does not appear to be necessary, until and unless the issue of damages has to be addressed.  The court records and transcripts from the Oregon proceedings can just as efficiently be reviewed in this civil RICO action in California, as they could be in a civil RICO action in Oregon.  This factor does not favor one side over the other, it is submitted.

*Sixth,* due to the Plaintiff's limited resources, and his status as a pro se litigant, adjudicating this matter in California is extremely important to the Plaintiff.  This factor, not surprisingly, favors California as the forum.

*Seventh,* this should be the dispositive factor, it is submitted, because the Cartwright Defendants, along with Defendants Susan and James, the Sibling Defendants, procured a General Judgment in Oregon that declares the Plaintiffs civil death, prior to the late Irene Rupert (ECF 117, pp. 14-16; Ex 58, General Judgment, January 4, 2011).  Judicial Notice of this General Judgment has been requested. (ECF 118).  In the Oregon proceedings, the Cartwright Defendants successfully argued, on behalf of the Sibling Defendants, that Plaintiff cannot be

heard to complain about the administration of the Irene Rupert Trust, for lack of standing, based

on his civil death.  As such, due to the legal strategy utilized by the Cartwright and Sibling

Defendants, the State of Oregon is not a plausible alternative forum (due to Plaintiff's lack of

standing in Oregon), in which to adjudicate Plaintiff's civil RICO action, that alleges RICO

Defendant Susan overfunded the Irene Rupert Trust, and underfunded the Samuel Rupert Trust,

during the first seven months after Samuel Rupert died, through her wrongful intermeddling as

a trustee *de son tort.*  (ECF 106, p. 27:9-28:15; SAC, ¶ 18).  This factor favors California.

> **D.      Judicial Estoppel Should Stop The Sibling Defendants From
> Being Heard To Argue That Oregon Is An Alternative Forum,
> Due To The General Judgment They Obtained In Oregon,
> Declaring Plaintiffs Civil Death, Before The Late Irene Rupert**

As argued in the preceding section, the Sibling and Cartwright Defendants argued

successfully in the Oregon disinheritance action, that it was not necessary to reach the merits

of Plaintiff  William's Affirmative Defenses and Counterclaims against RICO Defendant

Susan; because enforcement of the *in terrorem* provisions against Plaintiff William destroyed

all his rights, including his standing.

The record shows the Oregon Court accepted the lack of standing arguments (See

Decl. of Wm. Rupert (ECF 117, pp. 14-16, Ex 58), and never made any findings upon the

merits of Plaintiff's Counterclaims against defendant Susan, in Case No. CV10030497,  for

her misappropriation, unjust enrichment and "unclean hands" as a trustee *de son tort*.

Therefore, the doctrine of judicial estoppel[4] should prevent the Cartwright Defendants,

or Defendants Susan and James, from now arguing, inconsistently, to the extreme detriment

---

[4]  See *Rissetto v. Plumbers & Steamfitters Local 343,* 94 F.3d 597, 604-05 (9th Cir. 1996);
*Baughman v. Walt Disney World Co.,* 685 F.3d 1131, 1133 (9th Cir. 2012); *New Hampshire v.
Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)

Plaintiff's Mem. Of Pts. & Auths. In Opp. To MTD SAC, Under FRCP 12(b)(2)), By
Defendants Susan Bond And James Rupert [Case No. 5:12-cv-05292 LHK (HRL)]

of Plaintiff William, that the State of Oregon, which has declared Plaintiff William's civil

death prior to the late Irene Rupert, is an alternative forum in which he may effectively and

fairly adjudicate his allegations concerning the overfunding of the Irene Rupert Trust, and the

underfunding of the Samuel Rupert Trust.

> "[W]here a party assumes a certain position in a legal proceeding, and
> succeeds in maintaining that position, he may not thereafter, simply because
> his interests have changed, assume a contrary position . . . ."
> New Hampshire v. Maine,
> 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)

Consistent with the above case, because the Cartwright and Sibling Defendants

successfully destroyed the Plaintiff's "standing", within the State of Oregon, and his ability to

be heard to complain about RICO Defendant Susan's alleged misappropriation of trust assets,

through her overfunding of the Irene Rupert Trust, they should not now be allowed to change

their position, by now inconsistently arguing that Oregon is an available alternative forum,

where the entire controversy can fairly and fully be adjudicated.

> **E.    All Defendants Are Combining, In Bad Faith, To Treat Judge Koh
> Like A Donkey, By Creating An Unnecessary Blizzard Of Papers,
> Combined With Misleading Contentions, To Plaintiff's Detriment**

The Plaintiff fully appreciates the time constraints that busy federal district court judges

have to work within, however, the mountains of unnecessary, and/or redundant documents that

have been filed in support of the 1st and 2nd round of MTDs, by these 4 groups of defendants,

appear to suggest they have adopted a common strategy to treat the Honorable Lucy H. Koh as

if she is a donkey, and overburden her with a blizzard of paper, so she will be more likely to

recoil at the unreasonable burden placed upon her, and sit down and go to sleep on the Plaintiff

(as opposed to devoting the excessive amount of time which would be necessary to directly

determine if the Defendant's representations of what has been alleged by the pro se Plaintiff in

his FAC, and in his SAC, are accurate and truthful).   No disrespect for the Court is intended (by the donkey reference), but it is just a fact of life that clever and resourceful attorneys are not above taking advantage of busy federal judges and crowed judicial dockets, when they are confronted with a pro se opponent, who just happens to have both the truthful facts, and the relevant law, on his side.  One of the accepted litigation strategies in such a situation (which is rare, because pro se litigants are usually wrong on either the facts or the law), when all else fails, that is routinely used by  successful litigation attorneys, is to overload the judicial officer, and hope they act the same way as a donkey would act, when overburdened with an unreasonably excessive load to carry[5].  Judges have to rule, and they have deadlines they have to comply with.  Attorneys know that by creating an unnecessary blizzard of paper they increase the odds that the judge will find an alternative manner of deciding the issue before them (without personally slogging through a 6 inch stack of pleadings and papers).  A common alternative method, especially when the plaintiff is proceeding *pro se*, is to trust and rely upon the Officers of the Court to accurately and honestly inform the Court, as to what the gravamen of the *pro se* pleading is all about.

However, in the instant case, the trusted Officers of the Court are betraying the system, by deliberately making material misrepresentations to the Court, with regards to what is actually alleged in specific Paragraphs of the Plaintiff's FAC and SAC.

Appropriate action should be taken by the Court, to disapprove the litigation tactics

---

[5]  For the record, the Plaintiff once lived with a former girlfriend who had a horse and two donkeys that resided with them, upon the rural property they rented together.  During this time, Plaintiff came to realize that the donkeys were much smarter than the horse.  Based upon his personal experiences, Plaintiff considers donkeys to be extremely intelligent, sensitive, and reasonable animals, and holds them in high regard.  The fact that they have a tendency to sit down and go to sleep, when the burden placed upon them is too much, is a sign of their intelligence and reasonableness.  They know how to use the veto power.

23

Plaintiff's Mem. Of Pts. & Auths. In Opp. To MTD SAC, Under FRCP 12(b)(2)), By
Defendants Susan Bond And James Rupert [Case No. 5:12-cv-05292 LHK (HRL)]

which are being employed by the Defendants, in concert with one another, to deprive the Plaintiff of his full and fair day in court, to vindicate his Successor Trusteeship rights, and obtain appropriate damages for the injuries to his property and economic relations.

## IV.   CONCLUSION

The obstructions of justice that took place before Judge Fogel, during *Rupert I,* can only be fully understood, if one is aware of the case of *Hanson v. Denckla,* 357 U.S. 235, 249 (1958), in which the United States Supreme Court determined that the location of trust assets and the identity and location of the trustee, are extremely significant jurisdictional facts.  In *Hanson v. Denckla*, the high court rejected the "domicile at death" ground, when the question was Florida's fundamental jurisdiction over a trust, the trust assets (in Delaware), and the trust's trustee (in Delaware), in an action brought by beneficiaries and legatees in Florida, where the settler had been domiciled when she died.

The dispute reached the high court after: (1) Florida relied upon the "domicile at death" ground, for asserting jurisdiction over the Delaware assets and the Delaware trustee, even though the trustee had not been joined as a party in the action (*Id.* at 238); and, (2) the courts in Delaware refused to give the Florida judgment full faith and credit, because the trustee had not been joined as a party in the Florida action. (*Id.* at 238).

The jurisdictional facts in the instant case are very similar to those that were presented in *Hanson v. Denckla,* 357 U.S. 235, 249 (1958), except the connections between the late Samuel Rupert, and Oregon (where no wills were admitted to probate) (See ECF 106, SAC, ¶ 1, p. 4:12-14), are much weaker than the connections were between Florida and the settler in *Hanson v. Denckla,* (where the Settler's Will was admitted to probate), which were still found to be insufficient, by the United States Supreme Court.

24

Based upon the holdings from *Hanson v. Denckla,* 357 U.S. 235, 249 (1958)[6], the ultimate results should be the same, and the Oregon judgments affecting the Samuel Rupert Trust should also be invalidated, because Oregon's exercise of fundamental jurisdiction, over the Samuel Rupert Trust, without joining the Plaintiff, in his capacity as the Trustee, in the action (who can only appear through counsel), also does not comport with due process under the 14th Amendment to the United States Constitution.

Accordingly, pursuant to the jurisdictional standards established in *Hanson v. Denckla,* 357 U.S. 235 (1958), material jurisdictional facts, concerning the Samuel Rupert Trust, and the identity and location of the Successor Trustee of said Trust, were misrepresented to Judge Fogel, which are alleged to amount to the obstruction of justice, and extrinsic fraud[7]. Such an issue deserves to be litigated in this District. Because Judge Fogel's ruling in *Rupert I* was the foundation for the actions the Cartwright and Sibling Defendants subsequently commenced in Oregon, these matters are all intertwined and should all be adjudicated in this District.

Dated:  November 4, 2013

   __/s/ William Rupert_____
             William Rupert
        Plaintiff        Pro Se

---

[6] Plaintiff hereby incorporates by this reference the more detailed discussion of the case of *Hanson v. Denckla,* 357 U.S. 235, 249 (1958), and its applicability to the instant case, to show a "sham defense" was presented to Judge Fogel in *Rupert I,* which appears in the Opposition the Plaintiff filed to the 2nd MTD filed by the Cartwright Defendants (ECF 120, MTD, pp. 28:22-31:4), as though fully set forth at length herein.

[7]      "A second species of extrinsic fraud has also been found where fiduciaries have concealed information they have a duty to disclose.  (Citations.).  This variety of extrinsic fraud recognizes that, even if a potential objector is not kept away from the courthouse, the objector cannot be expected to object to matters not known because of concealment of information by a fiduciary."
           Lazzarone v. Bank of America,
                 181 Cal.App.3d 581, 596-597 (1986)

Plaintiff's Mem. Of Pts. & Auths. In Opp. To MTD SAC, Under FRCP 12(b)(2)), By Defendants Susan Bond And James Rupert [Case No. 5:12-cv-05292 LHK (HRL)]