| | |
|---|---|
| 1 | Edward S. Zusman (SBN 154366) |
| | ezusman@mzclaw.com |
| 2 | Kevin K. Eng (SBN 209036) |
| | keng@mzclaw.com |
| 3 | MARKUN ZUSMAN & COMPTON, LLP |
| | 465 California Street, Suite 500 |
| 4 | San Francisco, CA 94104 |
| | Telephone: (415) 438-4515 |
| 5 | Facsimile: (415) 434-4505 |

Counsel for Defendants EDWARD S. ZUSMAN and MARKUN ZUSMAN & COMPTON, LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM T. RUPERT, | CASE No. 5:12-cv-05292-LHK |
| Plaintiff, | **REPLY IN SUPPORT OF DEFENDANTS EDWARD S. ZUSMAN AND MARKUN ZUSMAN & COMPTON, LLP MOTION TO DISMISS** |
| vs. | |
| SUSAN BOND; GILE R. DOWNES; EDWARD S. ZUSMAN; MATTHEW WHITMAN; MICHELLE JOHANSSON; JAMES RUPERT; SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER, P.C., an Oregon Professional Corporation; MARKUN ZUSMAN & COMPTON, LLP, a Limited Liability Partnership Headquartered in California; CARTWRIGHT WHITMAN BAER PC, an Oregon Professional Corporation; and DOES 1 to 20, | **[FRCP 12(b)(6)]**<br><br>Date:     March 13, 2014<br>Time:    1:30 p.m.<br>Judge:   Hon. Lucy H. Koh<br>          Courtroom 8, 4th Floor |
| Defendants. | |

///
///
///
///
///
///
///
///

CASE NO. 5:12-cv-05292-LHK

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. DISCUSSION .........................................................................................................................2

    A. Plaintiff Has Failed To Rebut the Fact That the MZC Defendants' Conduct Arises Solely From Their Representation of Parties In *Rupert I*, And Thus Falls Squarely Within the Scope of the *Noerr-Penington* Doctrine ........................2

    B. Plaintiff Has Failed To Demonstrate That the Sham Exception to *Noerr-Pennington* Applies ...................................................................................................3

    C. Plaintiff's "RICO Stage 4" Allegations – the Only Alleged Conduct That Is Arguably Non-Litigation Related – Do Not Support RICO Claims .........................5

III. CONCLUSION .......................................................................................................................9

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*APL Co. Pte. Ltd. v. UK Aerosols Ltd., Inc.*,
   452 F. Supp. 2d 939 (N.D. Cal. 2006) ............................................................................... 9

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .................................................... 8

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ............................................................................................ 9

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639 (2008) ............................................................................................................ 7

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
   690 F.2d 1240 (9th Cir. 1982) ............................................................................................ 4

*Credit Bureau Servs., Inc. v. Experian Info. Solutions, Inc.*,
   SACV 12-2146 JGB, 2013 WL 3337676 (C.D. Cal. June 28, 2013) ................................. 9

*Favila v. Katten Muchin Rosenman LLP*,
   188 Cal. App. 4th 189 (Cal. Ct. App. 2010) ...................................................................... 8

*Hydranautics v. Film Tec Corp.*,
   70 F.3d 533 (9th Cir. 1995) ................................................................................................ 4

*Kottle v. Northwest Kidney Ctrs.*,
   146 F.3d 1056 (9th Cir.1998) ............................................................................................. 3

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*,
   431 F.3d 353 (9th Cir. 2005) .............................................................................................. 4

*Martinez v. Wells Fargo Bank, N.A.*,
   C-06-03327 RMW, 2007 WL 2019591 (N.D. Cal. July 10, 2007) .................................... 9

*Or. Natural Res. Council v. Mohla*,
   944 F.2d 531 (9th Cir. 1991) .............................................................................................. 6

*Reves v. Ernst & Young*,
   507 U.S. 170, 113 S. Ct. 1163 (1993) ................................................................................ 5

*Ruecker v. Sommer*,
   567 F. Supp. 2d 1276 (D. Or. 2008) ................................................................................... 5

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) .............................................................................................. 9

*Walter v. Drayson*,
   538 F.3d 1244 (9th Cir. 2008) ............................................................................................ 5

*Winters v. Jordan*,
  2:09-CV-00522JAMKJN, 2010 WL 2838634 (E.D. Cal. July 20, 2010) *report
  and recommendation adopted*, CIV-S-09-0522, 2010 WL 3636221 (E.D. Cal.
  Sept. 14, 2010) aff'd, 479 Fed. App'x 742 (9th Cir. 2012) ..................................................2, 3

**OTHER AUTHORITIES**

ESTATE, Black's Law Dictionary (9th ed. 2009) ..........................................................................5

**RULES**

FED. R. CIV. P. 12(b)(6)..............................................................................................................1, 9

FED. R. CIV. P. 9(b) ..........................................................................................................................6

## I.   INTRODUCTION

In his opposition to the MZC Defendants' Motion To Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff William T. Rupert offers no sound reasoning to show that his Second Amended Complaint ("SAC") adequately states a claim for relief upon which relief can be granted. As in the First Amended Complaint ("FAC"), which was dismissed pursuant to the MZC Defendants' prior 12(b)(6) motion (as well as the other Defendants' 12(b)(2) motions), the SAC continues to rely upon two RICO "stages" of conspiracy to support Plaintiff's claims against the MZC Defendants.

First, Plaintiff relies on "RICO Stage 3," which arises from the MZC Defendants' representation of Plaintiff's sister and late mother in *William T. Rupert v. Susan Bond, et al.*, Case No. 5:09-cv-02758-JF ("*Rupert I*"). (The history of *Rupert I* has been briefed previously by the MZC Defendants and the numerous other Defendants, so will not be repeated here.) As the Court held in its order granting the MZC Defendants' 12(b)(6) Motion To Dismiss the FAC, this alleged misconduct is barred by the *Noerr-Pennington* doctrine. Further, the Court rejected Plaintiff's contention that the MZC Defendants' conduct was subject to the "sham" litigation exception to the *Noerr-Pennington* doctrine. (Doc. 100, 11-15.)

Second, Plaintiff relies on "RICO Stage 4," which Plaintiff alleges "began on February 10, 2010, in anticipation of the death of the late Irene Rupert." (SAC, 87:3-11.) Plaintiff alleges that several defendants conspired to use Oregon law "as a bludgeon against Plaintiff" and worked "extrinsic frauds" on Oregon courts. (*Id.*) These are the same acts alleged in the FAC, which the Court dismissed for failing to state claims with the requisite specificity. (Doc. 100, 15-17.) However, the Court granted Plaintiff leave to amend his additional RICO claims in compliance with the heightened pleading standards of Rule 9(b). (Doc. 100, 17:10-14.) Plaintiff has failed to offer any sufficient factual allegations.

Plaintiff offers numerous misstatements of the law and legal conclusions, apparently believing that such allegations qualify as well-pled factual allegations. Plaintiff is mistaken. Despite having had ample opportunity to cure his allegations, Plaintiff has failed to do so. As such, dismissal without leave to amend is appropriate.

## II. DISCUSSION

### A. Plaintiff Has Failed To Rebut the Fact That the MZC Defendants' Conduct Arises Solely From Their Representation of Parties In *Rupert I*, And Thus Falls Squarely Within the Scope of the *Noerr-Pennington* Doctrine

Plaintiff cannot legitimately claim that the MZC Defendants' alleged misconduct arises entirely from their representation of Defendant Susan Bond and the late Mrs. Rupert, who were named as Co-Defendants in *Rupert I*. This alleged misconduct took place in what Plaintiff has termed "RICO Stage 3," and is alleged to be "the second cover-up/stonewall phase, and the first obstruction of justice/abuse of process phase . . . ." (SAC, 84:14-17.) This "phase" of the RICO conspiracy consists of alleged misrepresentations made to Judge Fogel in the course of the MZC Defendants' representation of parties in *Rupert I*. (SAC, 84-86; App. A, at pp. 6-7.)[1] This conduct falls squarely within the scope of *Noerr-Pennington*. (*See*, *e.g.*, *Winters v. Jordan*, No. 09-00522, 2010 WL 2838634, *8 (E.D. Cal., July 20, 2010) (holding claims arising against defendant's representation of client, including representing client in court proceedings and filing papers on client's behalf).

Plaintiff makes a cursory attempt to distinguish *Winters*, a case that involved a situation closely analogous to the circumstances present in this case. There, the court held that an attorney's legal representation in prior litigation was absolutely privileged. Indeed, all of the attorney's alleged misconduct arose from "filings and appearances in court and communications with the court, all in relation to her representation" of one of the parties to the underlying litigation. Accordingly, the court found this conduct to be privileged. *Id.*, *6. Further, the court found that the plaintiff's federal claims "all arise out of [attorney's] representation of Jordan [a co-defendant], which includes acts of representing Jordan in court proceedings, filing papers with the court on Jordan's behalf, and communications with the Nevada County district attorney's office." *Id.*, *8. The court properly held that this was petitioning activity protected under *Noerr-Pennington*. The court also found no basis for the sham exception to the doctrine. *Id.*

///

---

[1] Plaintiff apparently misinterpreted this citation in the MZC Defendants' Motion To Dismiss as a reference to paragraph numbers, rather than page numbers. From that misapprehension, Plaintiff falsely accuses the MZC Defendants of disregarding his allegations as to RICO Stage 3 and RICO Stage 4.

Plaintiff argues out that the parties in *Winters* apparently did not brief the sham exception. Plaintiff fails to explain how that procedural difference renders the *Winters* holding inapposite. His only response is to offer the bare assertion that "there is a strong possibility that the 'sham defense' issue can be resolved in the Plaintiff's favor . . . ." (Opposition, Doc. 115, at 9.) This unsupported legal contention is entitled to no weight and should be disregarded. Moreover, as discussed below, Plaintiff does not make any showing that meets his burden of establishing the sham exception.

### B. Plaintiff Has Failed To Demonstrate That the Sham Exception to *Noerr-Pennington* Applies

As set forth in the MZC Defendants' Motion, a consistent line of legal authorities establishes the standards for application of the sham exception to the *Noerr-Pennington* doctrine. Plaintiff cannot avail himself of any of those standards. The relevant standards are set forth in *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir.1998).[2] Plaintiff fails to address these factors. Instead, he makes a series of disjointed arguments premised on the MZC Defendants' supposed false statements to the court. First, Plaintiff suggests that the MZC Defendants are attempting to apply blanket immunity under *Noerr-Pennington*. Plaintiff's assertion is false. In this case, *Noerr-Pennington* immunity applies because Plaintiff's own allegations show that all the alleged conduct is protected petitioning activity. Thus, Plaintiff's

---

[2] These standards were discussed in detail in the MZC Defendants' Motion. For ease of reference, the Ninth Circuit factors are:

> First, if the alleged anticompetitive behavior consists of bringing a single sham lawsuit (or a small number of such suits), the antitrust plaintiff must demonstrate that the lawsuit was (1) objectively baseless, and (2) a concealed attempt to interfere with the plaintiff's business relationships.
>
> Second, if the alleged anticompetitive behavior is the filing of a series of lawsuits, "the question is not whether any one of them has merit-some may turn out to, just as a matter of chance-but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival."
>
> Finally, in the context of a judicial proceeding, if the alleged anticompetitive behavior consists of making intentional misrepresentations to the court, litigation can be deemed a sham if "a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy."

*Id.*

reliance on *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 364-65 (9th Cir. 2005) is misplaced. Moreover, *Living Designs* confirmed that "[f]inancial losses, in and of themselves, are insufficient to confer standing under RICO." *Id.* at 364. The plaintiffs were commercial nurserymen, who alleged harm to their businesses arising from the defendant's tainted fungicide. *Id.* at 356. In the instant case, Plaintiff can allege no such business interest.

Plaintiff next argues that the applicability of the sham exception can never be resolved at the pleadings stage. That proposition is false, and Plaintiff's cases do not support that spurious contention. *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1253 (9th Cir. 1982) simply states that whether conduct is genuine effort to influence governmental action, or a mere sham, is generally a question of fact. It does not stand for the proposition that the factual allegations of a complaint can never be challenged on a 12(b)(6) motion, even when plainly defective, as is the case with Plaintiff's SAC. *Hydranautics v. Film Tec Corp.*, 70 F.3d 533 (9th Cir. 1995) is similarly unsupportive of Plaintiff's position. *Hydranautics* involved specific allegations that, if true, would have established that a patent was obtained by fraud. *Id.* at 538-39. By contrast, in the instant case, the SAC shows that the alleged fraud had no bearing on Judge Fogel's granting of the defendants' motions to dismiss pursuant to 12(b)(2) in *Rupert I*. (Doc. 100, 13-15.)

Plaintiff concocts a further argument that the MZC Defendants falsely asserted that Mrs. Rupert was the trustee of the Samuel Rupert Trust. Plaintiff fails to indicate how this assertion impacted Judge Fogel's dismissal of *Rupert I* for lack of personal jurisdiction. In fact, the issue of who the proper trustee of the Samuel Rupert Trust was not at issue in the 12(b)(2) motions in *Rupert I*. Rather, that issue it was among the substantive claims for relief that Plaintiff was seeking in *Rupert I*, so could not have been resolved at the pleadings stage. (SAC, ¶26, at 28) ("On July 23, 2009, Plaintiff filed his First Amended Complaint ('FAC') in *Rupert I*, which added a new declaratory relief remedy, and added Irene Rupert as an additional defendant, solely with regards to the declaratory relief remedy (so the Court would be able to declare that: (1) Plaintiff was the Successor Trustee; (2) Irene Rupert had never been the Successor Trustee . . . ."). This purported "misrepresentation" had no effect on the dismissal of *Rupert I*. Furthermore,

Plaintiff fundamentally misunderstands the difference between legal arguments and assertions of fact. *See*, *e.g.*, *Ruecker v. Sommer*, 567 F. Supp. 2d 1276, 1300 (D. Or. 2008) (distinguishing between legal arguments and factual assertions for purposes of equitable estoppel). The statement that Mrs. Rupert was a proper trustee was a legal argument.[3]

Finally, Plaintiff's allegations demonstrate that the MZC Defendants were acting solely as attorneys for Ms. Bond and Mrs. Rupert, providing legal services. It is well established that such conduct cannot give rise to RICO liability:

> In sum, the pleadings show that [attorney] and her firm were part of the enterprise but fail to show that she or her firm had "some part in directing its affairs." . . . One can be "part" of an enterprise without having a role in its management and operation. Simply performing services for the enterprise does not rise to the level of direction, whether one is "inside" or "outside." Accordingly, neither reasonable inferences, nor triable issues, exist sufficient to subject [attorney] or her firm to liability under § 1962(c).

*Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) (citing *Reves v. Ernst & Young*, 507 U.S. 170, 179, 113 S. Ct. 1163 (1993)).

### C. Plaintiff's "RICO Stage 4" Allegations – the Only Alleged Conduct That Is Arguably Non-Litigation Related – Do Not Support RICO Claims

Plaintiff has also failed to cure the defects of his other RICO claims. Because Plaintiff's allegations in connection with "RICO Stage 3" – implicating conduct covered by the *Noerr-Pennington* doctrine – cannot form the basis for any RICO claims, the only conduct that could potentially support Plaintiff's RICO claims is contained in his allegations pertaining to "RICO Stage 4." (SAC, 86-87.) Plaintiff points to various communications, including telephone calls and email exchanges, that allegedly took place in 2010, among certain Defendants. These allegations do not salvage Plaintiff's RICO claims.

Plaintiff's mere recitation that these communications took place is insufficient. First, the mere allegation that communications took place does not set forth an adequate factual basis for

---

[3] In a similar vein, Plaintiff accuses the MZC Defendants of misconduct by referencing his parents' "estate" assets, which have given rise to the series of litigation involving Plaintiff and his family members. Plaintiff falsely accuses Defendants of trying to invoke the Probate Exception. Defendants have made no reference to the Probate Exception, contrary to Plaintiff's accusations. Nor is there any substance to his accusations of wrongdoing arising from the term "estate." That terms simply means "The amount, degree, nature, and quality of a person's interest in land or other property." ESTATE, Black's Law Dictionary (9th ed. 2009).

RICO claims. *See* Fed. R. Civ. P. 9(b); *Or. Natural Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991) ("Where a claim involves the right to petition governmental bodies under Noerr-Pennington, however, we apply a heightened pleading standard.")

Further, Plaintiff fails to allege how the communications could have led to any conduct that would have violated RICO. Mere communication does not violate the statute. Nor can Plaintiff connect these communications to any unlawful conduct. To the extent that he claims these communications were in furtherance of the alleged fraud on the court that supposedly took place in *Rupert I*, they would be covered by the *Noerr-Pennington* doctrine. These communications took place before Judge Fogel's order of dismissal in *Rupert I* was issued, at a time when the MZC Defendants were still representing parties in *Rupert I*.

To the extent Plaintiff is contending that the MZC Defendants engaged in these communications in connection with Co-Defendants' conduct in Oregon litigation, that contention also fails. As the Court noted in its Order granting the MZC Defendants' 12(b)(6) Motion, Plaintiff failed to allege how, if at all, the MZC Defendants supposedly participated in any Oregon proceedings. Despite having had the opportunity to cure this defect, Plaintiff has failed to do so. Moreover, Plaintiff's allegations, vague and ambiguous as they are, seem to suggest that the MZC Defendants did not take part in any misconduct in Oregon.

The SAC alleges the following as to "RICO Stage 4" (which appears to set forth Plaintiff's allegations of non-*Rupert I* conduct as to the MZC Defendants):

> RICO Stage 4, was the third cover-up/stonewall phase, and the second obstruction of justice/abuse of process phase, this time concerning the Cartwright RICO Enterprise, as directed by Defendants Whitman and Johansson (in association with the Trustee *De Son Tort* RICO Enterprise, as directed by Defendant Susan; in association with the Schulte RICO Enterprise, as directed by Defendant Downes; and, in association with the Markun RICO Enterprise, as directed by Defendant Zusman). The planning for this RICO Stage 4 began on February 10, 2010, in anticipation of the death of the late Irene Rupert. The scheme that was agreed upon was *to commence baseless and unfounded litigation*, and *to use the laws of the State of Oregon* as a bludgeon against Plaintiff, after corrupt General Judgments were obtained through extrinsic frauds upon the courts of the State of Oregon, *by repeating the same material misrepresentations that were successful against Judge Fogel (as argued by Defendant Zusman and non-party co-conspirator Jessica R. MacGregor)*, and by relying upon additional material misrepresentations of fact, and extrinsic fraud.

(SAC, ¶113, at 86-87) (emphases added).

Plaintiff alleges no direct conduct as to the MZC Defendants. He makes no allegation that the MZC Defendants ever commenced any litigation (baseless or otherwise), or that they participated in litigation by using Oregon law to "bludgeon" Plaintiff. Nor are there any specific allegations that the MZC Defendants made misrepresentations to Oregon courts to obtain "corrupt General Judgments." In contrast, Plaintiff makes numerous allegations that Ms. Bond allegedly initiated the Oregon litigation. (SAC, ¶¶ 29, 31.) Plaintiff's Appendixes, attached to the SAC, also confirm that the MZC Defendants played no part in this stage of the alleged RICO conspiracy. (SAC, App. A, at pp. 8-12; App. B, at pp. 5-6.) Furthermore, such allegations would be at odds with Plaintiff's allegation that the MZC Defendants did not undertake any activity in Oregon, in support of his argument that the MZC Defendants would not be subject to personal jurisdiction in Oregon. Finally, even if Plaintiff had properly alleged that the MZC Defendants were involved in any Oregon legal proceedings, he could not explain why the *Noerr-Pennington* doctrine would not cover such conduct.

In a further attempt to bridge the wide gulf that separates the SAC's factual allegations and adequately-pled RICO claims, Plaintiff offers faulty statements of the law. Plaintiff makes a bare assertion that the Court is bound by his allegation in the SAC that "third-party reliance upon alleged misrepresentations is all that is required to prove wire and mail fraud under the RICO statutes . . . ." (Doc. 115, 7:3-6; ¶108 & n.31, at 76-77)[4] (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658-69 (2008)). As an initial matter, Plaintiff badly misstates the law. A RICO plaintiff alleging mail or wire fraud must allege each of the elements of a RICO cause of action, not just third-party reliance. Moreover, Plaintiff plays fast and loose with his factual allegations in attempting to meet this spurious legal standard. He states that he lists 9 individuals or entities who were the alleged victims of fraud. Only two of these individuals are alleged to have had any involvement with the MZC Defendants: the late Mrs. Rupert, and Judge Fogel.[5]

---

[4] Plaintiff cites ¶108 as appearing on page 79 (*see* Doc. 115, at 7:7), but Doc. 106 shows ¶108 appears on the pages cited above.
[5] The remaining 7 purported victims are: (1) Plaintiff's former Oregon attorneys; (2) Oregon Judge Steven L. Maurer; (3) Oregon Judge Elizabeth Welch; (4) Umpqua Bank in Oregon; (5) Eunice Attorney Services; (6) JP Morgan Chase Bank; and (7) TD Ameritrade. Plaintiff's labeling Judges Maurer and Welch as "victims" is particularly curious, since he alleges that they are non-party RICO co-conspirators. (SAC, at 20-23.)

(SAC, ¶108 at 76.) This alleged misconduct, in the context of *Rupert I*, is protected activity under *Noerr-Pennington*. Further, Plaintiff offers no theory under which either Mrs. Rupert or Judge Fogel would be covered by a RICO pattern of racketeering. Plaintiff offers no theory as to how the MZC Defendants supposedly fraudulently induced either of them to part with money or property. Finally, it strains reason to suggest that Plaintiff would have standing to enforce any rights on behalf of these so-called "victims".

Plaintiff makes a last-ditch effort at his unsupported allegation of fraud by asserting that "Defendant Zusman breached his duty not to defraud the Plaintiff and his duty to refrain from express misrepresentations." (Opposition, Doc. 115, 14:24-25.) This conclusory statement, which appears for the first time in Plaintiff's SAC, is deficient because it is nothing more than a legal conclusion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In addition, the sole authority cited for this legal conclusion, *Favila v. Katten Muchin Rosenman LLP*, 188 Cal. App. 4th 189, 209 (Cal. Ct. App. 2010), does not support Plaintiff's contention. *Favila* stands for the proposition that an attorney may in certain circumstances owe an independent legal duty not to defraud those engaged in a business transaction with the attorney's client. There was no such business transaction in this case. In fact, the MZC Defendants were only involved as legal counsel for Ms. Bond and Mrs. Rupert – whom Plaintiff named as defendants in *Rupert I*. It is illogical for Plaintiff to suggest that adverse parties in litigation are parties to a business transaction, or that counsel of record could be deemed to owe a legal duty to an opposing party.

Lastly, Plaintiff makes a conclusory statement that he should be permitted to conduct discovery into communications between parties and/or their attorneys:

> Plaintiff requests jurisdictional discovery, and an *in camera* review of these Emails, and phone conference records, which are identified above, as the Plaintiff asserts that these documents will show how the alleged association-in-fact RICO Enterprise schemed to all repeat the "Big Lie", to judicial officers, by claiming the late Irene Rupert became the Successor Trustee of the Samuel Rupert Trust.

(Doc. 115, 5 n.7.)

Plaintiff's "request" is defective in multiple aspects. First, the MZC Defendants have not made a jurisdictional challenge to Plaintiff's claims. The suggestion that he is entitled to conduct

"jurisdictional" discovery to oppose a 12(b)(6) motion is meritless.  Indeed, Plaintiff's request "is unsupported and defies common sense.  The purpose of F.R. Civ.P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery."  *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).  This District was presented with a plaintiff's request for additional discovery so that it could allege additional facts in support of its claim.  The court rejected that contention: "The problem with this is that plaintiff is required to state a viable claim at the outset, not allege deficient claims and then seek discovery to cure the deficiencies." *APL Co. Pte. Ltd. v. UK Aerosols Ltd., Inc.*, 452 F. Supp. 2d 939, 945 (N.D. Cal. 2006).

Discovery has also been rejected where a plaintiff sought "targeted discovery" to obtain evidence of an alleged conspiracy.  *Credit Bureau Servs., Inc. v. Experian Info. Solutions, Inc.*, SACV 12-2146 JGB, 2013 WL 3337676 (C.D. Cal. June 28, 2013).  Discovery is not to be used to oppose a defendant's motion to dismiss.  *Martinez v. Wells Fargo Bank, N.A.*, C-06-03327 RMW, 2007 WL 2019591 (N.D. Cal. July 10, 2007).  Lastly, even when jurisdictional issues are properly implicated, jurisdictional discovery may be permitted only as to pertinent facts bearing on jurisdiction.  There is no such showing here.  *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (affirming denial of plaintiff's request for discovery, "which was based on little more than a hunch that it might yield jurisdictionally relevant facts . . . .").

## III.   CONCLUSION

Plaintiff premises his claims against the MZC Defendants on an alleged conspiracy.  After having ample opportunities to amend his pleadings and set forth sufficient allegations, Plaintiff is still unable to state claims for which relief can be granted.  Plaintiff alleges that the MZC Defendants took part in conduct during "RICO Stage 3" – all of which arose during *Rupert I*.  The allegations confirm that all the alleged misconduct occurred in the course of the MZC Defendants' serving as legal counsel for defendants in *Rupert I* (Ms. Bond and Mrs. Rupert).  All such conduct is petitioning activity and thus privileged under *Noerr-Pennington*.  Further, Plaintiff attempts to hang his RICO claims on "RICO Stage 4" – conduct that he fails to allege with sufficient specificity.  This latter stage generally involves activity undertaken in Oregon, in

which certain defendants allegedly commenced baseless litigation in Oregon state court, used Oregon law as a "bludgeon" against Plaintiff, and obtained "corrupt General Judgments" against him. Plaintiff fails to identify how the MZC Defendants took part in this conduct. Indeed, the SAC suggests that the MZC Defendants played no part in this phase of the supposed conspiracy. Moreover, Plaintiff's own arguments with respect to jurisdiction suggest that he knows the MZC Defendants played no role in the Oregon proceedings. Plaintiff's pleading deficiencies have persisted through numerous opportunities to state adequate claims. Accordingly, the motion to dismiss should be granted, with prejudice.

Dated: November 11, 2013                MARKUN ZUSMAN & COMPTON LLP

                                        By    /s/ Kevin K. Eng
                                              EDWARD S. ZUSMAN
                                              KEVIN K. ENG
                                              Counsel for Defendants
                                              Edward S. Zusman and Markun Zusman
                                              & Compton LLP