1
2
3
4

William Rupert
P.O. Box 66403
Scotts Valley, CA 95067-6403
Phone: (831) 336-9520
Fax:    (831) 336-9528
Email: emfwtr@comcast.net

5
6

Plaintiff
Pro Se

7

UNITED STATES DISTRICT COURT

8

NORTHERN DISTRICT OF CALIFORNIA

9

SAN JOSE DIVISION

10

11
12
13
14
15
16
17
18
19
20
21
22
23

| | |
|---|---|
| WILLIAM RUPERT,<br><br>             Plaintiff,<br><br>      vs.<br><br>SUSAN BOND; GILE R. DOWNES;<br>EDWARD S. ZUSMAN; MATTHEW<br>WHITMAN; MICHELLE JOHANSSON;<br>JAMES RUPERT; SCHULTE, ANDERSON,<br>DOWNES, ARONSON & BITTNER, P.C.;  an<br>Oregon Professional Corporation; MARKUN<br>ZUSMAN & COMPTON, LLP, a Limited<br>Liability Partnership Headquartered in<br>California; CARTWRIGHT WHITMAN<br>BAER, PC, an Oregon Professional<br>Corporation; and DOES 1 to 20,<br><br>             Defendants. | Case No.: 5:12-cv-05292 LHK (HRL)<br><br>PLAINTIFF'S MEMORANDUM OF<br>POINTS AND AUTHORITIES IN<br>OPPOSITION TO 2ND MOTION FOR<br>SANCTIONS UNDER RULE 11, BY<br>DEFENDANTS GILE R. DOWNES AND<br>SCHULTE, ANDERSON, DOWNES,<br>ARONSON & BITTNER, P.C.<br><br><br>Date:     May 1, 2014<br>Time:     1:30 p.m.<br>Dept:     Courtroom 8<br>Judge:    Hon. Lucy H. Koh<br><br>Action Filed:  October 12, 2012 |

24
25
26
27
28

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES…………………………………………….    II

1.   STATEMENT OF FACTS……………………………………….    2

2.   THE OREGON CASES………………………………………….    4

3.   THE PROCEEDINGS IN *RUPERT I*, BEFORE JUDGE FOGEL…………    9

4.   THE 2ND RULE 11 MOTION IS FRIVOLOUS, BECAUSE NEW
     JURISDICTIONAL FACTS HAVE BEEN ALLEGED IN THE SAC,
     *AND THE COURT HAS ALREADY REJECTED THE RES JUDICATA*
     ARGUMENT, BASED UPON THE FINDING THAT *RUPERT I*, AND
     THE INSTANT CASE, *RUPERT II*, ARE NOT IDENTICAL CLAIMS….    12

     A.   New Jurisdictional Facts Are Alleged In The SAC, That Better
          Explain How The Obstruction Of Justice In *Rupert I*, Before Judge
          Fogel, Had Four (4) Components, Consistent With The Cases Of
          *Hanson v. Denckla*, 357 U.S. 235, 250-251 (1958), And *Lazzarone
          v. Bank of America,* 181 Cal.App.3d 581, 596-597 (1986)…………    12

     B.   The Same *Res Judicata* Argument Has Already Been Rejected By
          The Court, Based Upon Judge Koh's Finding That *Rupert I* And
          The Instant Case, *Rupert II*, Do Not Present Identical Claims……..    14

5.   THE SCHULTE DEFENDANTS' ARGUMENTS CONCERNING THE
     MAY 29, 2013 ORDER REMOVING PLAINTIFF WILLIAM'S NAME
     FROM THE CALIFORNIA VEXATIOUS LITIGANT LIST ARE ALSO
     IMPROPER, FRIVOLOUS, MISLEADING, AND LACKING IN MERIT.    14

6.   THE SAC QUITE PROPERLY LISTS THE LONG & LEVIT
     ATTORNEYS AS NON-PARTY CO-CONSPIRATORS, BASED UPON
     THEIR PRIOR, AND CONTINUED, MISREPRESENTATIONS OF
     MATERIAL JURISDICTIONAL FACTS, TO THE COURT……………..    17

7.   CONCLUSION…………………………………………………    18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Bell v. City of Boise
    709 F.3d 890, 897 (9th Cir. 2013)…………………………………….. 9,17

Hanson v. Denckla
    357 U.S. 235, 250-251 (1958)……………………………………… 10,12

Johnson v. Johnson
    302 Or. 382 (1986)…………………………………………………….. 8

Kougasian v.TMSL, Inc.
    359 F.3d 1136, 1140-41 (9th Cir. 2004)………………………………. 9,17

Lazzarone v. Bank of America
    181 Cal.App.3d 581, 596-597 (1986)…………………………………. 9,11,12

Maldonado v. Harris
    370 F.3d 945, 950 (9th Cir. 2004)……………………………………. 9,17

Noel v. Hall
    341 F.3d 1148, 1164 (9th Cir. 2003)…………………………………. 9,17

United States v. Throckmorton
    98 U.S. 61, 65-66 [25 L.Ed. 93,95] (1878)…………………………… 8,9

**Statutes:**

    CALIFORNIA BUSINESS & PROFESSIONS CODE

        § 6068(c)(d)……………………………………………………… 18

    CALIFORNIA CODE OF CIVIL PROCEDURE

        § 391.8……………………………………………………………. 15,16

    OREGON REVISED STATUTES

        § 130.505(5)……………………………………………………… 3

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**<u>Statutes (Continued):</u>**

<u>UNITED STATES CODE</u>

28 U.S.C. § 1738………………………………………………………… 5,9
18 U.S.C. § 1965(a)(b)…………………………………………………… 12

**<u>Rules</u>**

<u>FEDERAL RULES OF CIVIL PROCEDURE</u>

Rule 11……………………………………………………………………… 18
Rule 12(b)(2)……………………………………………………….. 12,14

**<u>Constitutions:</u>**

<u>UNITED STATES CONSTITUTION</u>

1st Amendment…………………………………………………………… 9,14
14th Amendment………………………………………………………. 9,14

## 1.    STATEMENT OF FACTS

*First,* by the time the Schulte Defendants, as represented by RICO Defendant Gile R. Downe ("Downes"), were first sought out by RICO Defendant Susan Bond ("Susan"), on May 20, 2009, after her brother Plaintiff William Rupert ("William"), had begun to attempt to investigate her possible breaches of trust and her possible breaches of her fiduciary duties, the key factual circumstances were the following four (4) factors, that should have caused RICO Defendant Downes (as a trusted Officer of the Court, licensed by the State of Oregon, and a partner in the law firm of Schulte, Anderson, Downes, Aronson & Bittner, P.C. ("Schulte")), to refuse to conspire with, and aid and abet, RICO Defendant Susan's wrongful and fraudulent schemes, as an intermeddling successor trustee *de son tort*, who had a duty, as alleged in the Second Amended Complaint ("SAC") (ECF 106, ¶¶ 53-54), to: (a) relinquish control to Plaintiff William; (b) fully account for her administration of nearly $900,000 in trust assets; and, (c) make whatever restitution of misappropriated trust assets as was shown to be necessary, by her full and complete accounting of her wrongful administration of trust assets:

(1)  RICO Defendant Susan's numerous breaches of trust, concerning Samuel and Irene Rupert's Michigan Trust instrument and wills, during the first 7 months after the death of Samuel Rupert on October 12, 2008, put Plaintiff William upon "inquiry notice", which created a duty for Plaintiff William to investigate RICO Defendant Susan's administration of Trust assets (stocks, bonds, and bank deposit accounts), she valued at $874,995, as of March 31, 2009 (ECF 106; SAC, ¶¶ 18, 49) (ECF 58; pp. 82-83);

(2) RICO Defendant Susan's Amendment to Trust Agreement document, dated January 11, 2009 (ECF 58; p. 75), which purported to  unilaterally make RICO Defendant Susan the successor trustee of the Irene Rupert Trust, u/a/d November 1, 1995, is void, and unenforceable

(ECF 106; SAC, ¶ 45), pursuant to Oregon Revised Statute 130.505(5), because Irene Rupert's Michigan Trust instrument (ECF 58; pp. 61-73), does not explicitly authorize amendments under the power-of-attorney document that RICO Defendant Susan used to cause the Amendment to Trust Agreement document to be executed, notarized, and used to transfer hundreds of thousands of dollars in assets.  The asset transfers took place both within Oregon (at Umpqua Bank, through non-party co-conspirator Carol Dickman), and from Michigan to California, in February and March of 2009 (through family friend, and non-party co-conspirator, Kenneth A. Dillon, who is a financial advisor located in Jackson, Michigan, who opened the Charles Schwab Institutional accounts in California, from Michigan, using his credentials as a Registered Financial Advisor, as authorized by RICO Defendant Susan);

**(3)**  by way of written correspondences to RICO Defendant Susan, from Plaintiff William, between May 8, 2009, and May 17, 2009 (ECF 106; SAC, ¶ 50) (ECF 58; pp. 87-92), Plaintiff William informed RICO Defendant Susan she had been using a void Amendment to Trust Agreement document, and he questioned her credentials to be the sole successor trustee for the trusts (instead of Plaintiff William), and he further demanded that she fully and completely account for her administration of nearly $900,000 in trust assets (including the gifts and/or compensation she received), which belonged to the Michigan Trusts of either Samuel Rupert or Irene Rupert; and,

**(4)** RICO Defendant Susan had a fiduciary duty (ECF 106; SAC, ¶ 54), based upon her performance as a successor trustee *de son tort* for over 7 months, to fully and completely account, and provide Plaintiff William with the information he requested from her concerning her administration of trust assets, and concerning Samuel Rupert's complete estate plans (including his Schedule A file, listing the specific assets that were assigned to the various

Michigan trusts, of both Samuel and Irene Rupert, between 1995 and 2008).

*Second,* the story told by the Schulte Defendants completely overlooks the four (4) factors mentioned above, to suggest that the core dispute was between Plaintiff William and his mother, the late Irene Rupert, concerning Irene Rupert's phantom performance as the Successor Trustee of the Samuel Rupert Trust, and her alleged decision to disinherit Plaintiff William <u>after</u> he filed his FAC on July 23, 2009, in *Rupert I,* before Judge Jeremy Fogel[1].

*Third,* it is important to consider this dispute from the beginning, and the actions and inactions by the Schulte Defendants need to be seen through the lens that is created by the cumulative effect of the four (4) crucial background factors enumerated above, which establish the fact that RICO Defendant Susan had "unclean hands" when she first contacted RICO Defendant Downes, and sought his help (in opposing Plaintiff William's efforts to investigate her secretive and wrongful administration of trust assets worth nearly $900,000).

## 2.    THE OREGON CASES

With regards to the status of the related Oregon proceedings, things are not as alleged by the Schulte Defendants in their 2nd Motion for Sanctions Under Rule 11.  Contrary to what has been alleged by the Schulte Defendants, the highly irregular proceedings in Oregon have not yet concluded, because of the Petitions For Review that were timely filed on

---

[1] However, the correct chronology shows that Irene Rupert executed the Oregon Trust instruments, which were prepared by RICO Defendant Downes, on June 9, 2009 and again on July 23, 2009.  Whereas, Plaintiff William's complaint in *Rupert I* (that did not name Irene Rupert as a defendant), was filed on June 22, 2009 (in response to the first alleged Oregon trust instrument, that RICO Defendant Downes mentioned in his June 10, 2009 extortion letter, but refused to produce upon the Plaintiff's demand that he do so); and Plaintiff William's FAC in *Rupert I* was filed on July 23, 2009 (naming Irene Rupert solely in the declaratory relief remedy, to give the federal court the authority to declare who was, and who was not, the successor trustee of the Samuel Rupert Trust, after Samuel Rupert died on October 12, 2008).

PLTF'S OPP. TO SCHULTE DEFT'S MOTION FOR RULE 11 SANCTIONS    [5:12-CV-5292 LHK (HRL)]

December 18, 2013 and on December 26, 2013, by Plaintiff William Rupert, with the Oregon Supreme Court (seeking review of the proceedings in the appellate court, which affirmed the trial court proceedings, without opinion).

For instance, with regards to the two (2) cases concerning the Samuel Rupert Trust, u/a/d November 1, 1995, as Amended January 26, 2004, which were consolidated by the Oregon Court of Appeals as A148529 (Control), consolidating with A150014, Plaintiff timely filed and served his Petition For Review of William Rupert on December 18, 2013, which was assigned Oregon Supreme Court Case No. S061894.

With regards to the case concerning the Irene Rupert Trust, u/a/d July 23, 2009, Appeal A148714, Plaintiff timely filed and served his Petition For Review of William Rupert on December 26, 2013, which was assigned Supreme Court Case No. S061899.

However, the outcome of the Oregon cases is largely irrelevant to the instant case, because the SAC alleges the Oregon judgments were obtained by either traditional extrinsic fraud, or by extrinsic fiduciary fraud (as recognized in California, but not in Oregon), and Plaintiff William did not receive his full and fair day in court, in any of the Oregon cases, at either the trial court or appellate level, such that the Oregon judgments are not entitled to full faith and credit under 28 U.S.C. § 1738. The SAC's Prayer for Relief specifically seeks declarations to this effect (ECF 106; SAC, Prayer, p. 111:8-23), which would effectively invalidate the Oregon judgments, because of the deceitful manner in which they were obtained, that amounts to extrinsic fraud, under the laws of the State of California.

More specifically, in Clackamas County Case No. CV10030497, concerning the Irene Rupert Trust, u/a/d July 23, 2009, as alleged in the SAC, Plaintiff William was subjected to a Bum's Rush Ambush Trial, that forced him to go to trial without advance notice, without

necessary discovery, and without legal representation, when his Oregon attorneys abandoned him, a mere 7 days prior to the ambush trial, which Plaintiff only learned of from his departing attorneys, in their withdrawal letter (following their discussion the day before with RICO Defendant Whitman, wherein he made material misrepresentations of fact to them, during a phone call, as part of the scheme to deprive Plaintiff William of a full and fair trial in Oregon, which succeeded) (ECF 106; SAC, ¶¶ 80,82,84-88).  Moreover, none of Plaintiff William's Affirmative Defenses or Counterclaims were determined on the merits (ECF 117; pp. 14-16), after the Oregon court effectively bifurcated RICO Defendant Susan's Petition (for Plaintiff William's disinheritance), from Plaintiff William's Affirmative Defenses and Cross-Petition; and then granted RICO Defendant Susan's Petition, and ruled that Plaintiff William's disinheritance destroyed his "standing" to obtain rulings upon the merits of his Affirmative Defenses and Cross-Petition claims, which were dismissed on procedural grounds (lack of standing), without reaching the merits of the claim that RICO Defendant Susan had "unclean hands" as an intermeddling trustee *de son tort* who misappropriated trust assets and refused to account for her administration of trust assets, despite her duty to do so, when requested by Plaintiff William (prior to RICO Defendant Downes involvement in this matter, and the two (2) Oregon trust instruments he and RICO Defendant Susan _**subsequently**_ persuaded the late Irene Rupert to sign, through allegedly fraudulent means, for the improper purposes of concealing RICO Defendant Susan's breaches of the Michigan Trust instruments, and interfering with Plaintiff William's trusteeship rights under the Samuel Rupert Trust)[2].  This purported

---

[2] In the Schulte Defendants' 2nd Motion for Sanctions Under Rule 11, they confuse the chronology, by falsely alleging the Oregon Trust instruments, dated June 9, 2009 and July 23, 2009, were in response to Plaintiff William's FAC in Rupert I, also filed on July 23, 2009.

judgment was obtained through a form of extrinsic fraud that is recognized in California, but not in Oregon, at the present time.

In Clackamas County Case No. CV10030498, concerning the Samuel Rupert Trust, u/a/d November 1, 1995, as Amended January 26, 2004, as alleged in the SAC, there wasn't any trial whatsoever, after the case became at-issue (ECF 106; SAC, ¶¶ 89-90). In that case, where Plaintiff William challenged Oregon's exercise of fundamental jurisdiction over the Samuel Rupert Trust, in the Answer & Affirmative Defenses he timely filed on April 4, 2011, the trial court failed to conduct any type of proceedings (after the case was at-issue), before it signed and entered a purported General Judgment on April 28, 2011 (ECF 48; pp. 42-43). This bogus judgment document was entered pursuant to the fraudulent scheme by RICO Defendants Susan and Whitman, to use the postal service to submit a proposed General Judgment document to Plaintiff William and to the court for Senior Judge Welch's signature, although: (1) no trial had been conducted; (2) no judgment had been rendered upon the disputed issues of fact which were joined by the pleadings (such as whether or not RICO Defendant Susan's alleged "unclean hands" should prevent her from obtaining any relief); and, (3) Senior Judge Welch had never instructed RICO Defendants Susan and Whitman to submit a proposed judgment document to the court, for her signature. This purported judgment (which is really an improper "advisory opinion"), was obtained through the classic form of extrinsic fraud (scheming to keep a party unaware that a trial is going to be conducted), that is recognized in both California and in Oregon.

In Clackamas County Case No. CV11050251, also concerning the Samuel Rupert Trust, u/a/d November 1, 1995, as Amended January 26, 2004, as alleged in the SAC, there was only a sneak attack trial, *in absentia*, after Plaintiff William gave written notice to the court, on

October 6, 2011, that he would not attend the motion hearing scheduled for October 12, 2011, upon William's reconsideration motion that had been rendered moot, when William subsequently filed his Answer & Affirmative Defenses in the case on September 23, 2011 (which continued to contest Oregon's exercise of fundamental jurisdiction over the Samuel Rupert Trust, and also continued to allege RICO Defendant Susan had "unclean hands" that should prevent her from obtaining any relief in the case).  However, in Plaintiff William's absence, and without any advance notice that a trial was going to be conducted, former Judge Maurer conducted an impromptu, sneak attack bench trial on October 12, 2011, which resulted in the entry of a General Judgment that purported to remove Plaintiff William as the successor trustee of the Samuel Rupert Trust, and to make RICO Defendant Susan the successor trustee. This purported judgment was also obtained through the classic and traditional form of extrinsic fraud (scheming to keep a party unaware that a trial is going to be conducted), that is recognized in both California and in Oregon.  (ECF 106; SAC, ¶ 92)

The SAC sufficiently alleges these Oregon judgments, out of the Clackamas County Circuit Court, were obtained through forms of extrinsic fraud (as recognized in California, through its broader reading and interpretation of the seminal case of *United States v. Throckmorton,* 98 U.S. 61, 65-66 [25 L.Ed. 93,95] (1878), than currently employed by the State of Oregon)[3], that unfairly prevented Plaintiff William from obtaining his constitutionally

---

[3] Pursuant to the Oregon case of *Johnson v. Johnson,* 302 Or. 382 (1986), the same conduct that California regards as a second species of extrinsic fraud (a fiduciary's concealment of information they have a duty to disclose), is merely regarded as intrinsic fraud in Oregon (such that Oregon is not an appropriate forum for this action).  Plaintiff William's Petitions For Review both suggest that Oregon should adopt California's broader reading and interpretation of *United States v. Throckmorton,* to recognize extrinsic fiduciary fraud, as explained in the case of *Lazzarone v. Bank of America*, 181 Cal.App.3d 581, 596-597 (1986).

guaranteed full and fair day in court, under the 1st and 14th Amendments to the United States Constitution, before he was deprived of his constitutionally guaranteed rights and economic interests (both vested and prospective inheritance property), and in the part time employment opportunities, to perform as the successor trustee, which was to be a paid position under Samuel and Irene Rupert's operative Michigan estate plans, which were in known, and in effect at the time of the Schulte Defendants first involvement in this family feud sibling rivalry between RICO Defendant Susan and Plaintiff William, on or about May 20, 2009.

As such, Plaintiff William has sufficiently alleged factual circumstances, which, if proven at trial, would show that no real contest took place in the Oregon proceedings, such that the judgments rendered are not entitled to full faith and credit under 28 U.S.C. § 1738.

Also, under the circumstances alleged in the SAC, the *Rooker-Feldman* Doctrine does not prohibit a federal district court from declaring that a state court judgment has been obtained through extrinsic fraud, such that it is invalid and not entitled to full faith and credit.  (See *Kougasian v.TMSL, Inc.,* 359 F.3d 1136, 1140-41 (9th Cir. 2004)[4]; *Maldonado v. Harris,* 370 F.3d 945, 950 (9th Cir. 2004); *Noel v. Hall,* 341 F.3d 1148, 1164 (9th Cir. 2003); and *Bell v. City of Boise,* 709 F.3d 890, 897 (9th Cir. 2013)).

### 3.    THE PROCEEDINGS IN *RUPERT I,* BEFORE JUDGE FOGEL

The SAC also alleges that the case known as *Rupert I,* before Judge Fogel, was

---

[4] The *Kougasian* Court explained this as follows:
> "Extrinsic fraud on a court is, by definition, not an error by that court, it is, rather, a wrongful act committed by the party or parties who engaged in the fraud.  *Rooker-Feldman* therefore does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud."  (*Id.* At 1141).

terminated at the pleadings stage, through an order dismissing the case without prejudice, based upon Judge Fogel's mistaken belief that it would be unreasonable for the State of California to exercise personal jurisdiction over RICO Defendants Downes and Susan, and the late Irene Rupert, under the circumstances alleged by the defendants from Oregon.

The SAC alleges Judge Fogel's order was also obtained through extrinsic fiduciary fraud (ECF 106; SAC, ¶¶ 81,83), whereby information RICO Defendants Susan, Downes and Edward S. Zusman ("Zusman"), had a duty to disclose to Plaintiff William, and to the Court, was instead suppressed and concealed, such that a full and fair hearing was not conducted, through no fault of Judge Fogel's.

More specifically, Judge Fogel was deceived (ECF 106; SAC, ¶¶ 72,74), into thinking that: (1) all trust property was located in Oregon; (2) the trustee of both trusts was Irene Rupert, who resided in Oregon; (3) the principal place of administration of both trusts was therefore in Oregon; and, (4) the dispute concerned Estates established under Oregon Law.  Pursuant to the case of *Hanson v. Denckla,* 357 U.S. 235, 250-251 (1958), if these material jurisdictional facts would have been truthful and correct, Judge Fogel's Order would have been properly obtained.

However, the SAC alleges that Plaintiff William subsequently discovered (ECF 106; SAC, ¶ 83) and confirmed that: (1) more than $400,000 in trust assets, and all of the assets belonging to the Samuel Rupert Trust, had been located in California, during *Rupert I*; (2) there has never been a scintilla of evidence to support the claim that the late Irene Rupert was ever the successor trustee of the Samuel Rupert Trust; (3) therefore, there has never been a scintilla of evidence to refute Plaintiff William's contention that he established the principal place of administration of the Samuel Rupert Trust, in California, on July 8, 2009, when he accepted his nomination and became the lawful successor trustee of the Samuel Rupert Trust; and, (4) no

estates were ever established under Oregon law (ECF 106; SAC, ¶ 1, p. 4:12-18), because no

Wills were ever admitted into evidence in any Oregon probate proceedings (so no inventories

of assets were prepared and approved by an Oregon court), and the limited trust proceedings

commenced by RICO Defendants Susan and Whitman did not result in any trust accountings

that were prepared, submitted, and approved by an Oregon court (to establish a trust estate).

As such, the Order from Judge Fogel was also obtained by a form of extrinsic fraud,

which is recognized in California as a special type of extrinsic fiduciary fraud, as explained in

the case of *Lazzarone v. Bank of America,* 181 Cal.App.3d 581 (1986), where the following

pertinent and relevant explanation was provided:

> "A second species of extrinsic fraud has also been found where fiduciaries have
> concealed information they have a duty to disclose. (Citations.)  This variety of
> extrinsic fraud recognizes that, even if a potential objector is not kept away from the
> courthouse, the objector cannot be expected to object to matters not known because of
> concealment of information by a fiduciary."
> Lazzarone v. Bank of America,
>          181 Cal.App.3d 581, 596-597 (1986)

The extrinsic fiduciary fraud in *Rupert I,* was achieved by way of the Joint Motion to

Dismiss that was made by all defendants in the case, as supported by the misleading

Declaration of Susan Bond (ECF 106; SAC, ¶ 72), and the misleading Declaration of Gile R.

Downes (ECF 106; SAC, ¶ 73), that falsely and fraudulently vouched for the "sham" successor

trusteeship of Irene Rupert, located in Oregon, that in reality, never existed for a single second.

This conduct by RICO Defendant Downes, that implicates his law firm in addition to

himself, represents the obstruction of justice, which was carried out through mail fraud and

wire fraud, perpetrated in the Northern District of California.

As such, these predicate acts, detailed in the SAC, in the Appendix A Chart of

Predicate Acts, as Predicate Acts #16-#22, and #29-#31, on pages 4-5 and 7, provide a

sufficient basis to find that the exercise of specific personal jurisdiction over the Schulte

Defendants, under the RICO statutes, in the Northern District of California is not unreasonable,

pursuant to the RICO statute that provides for nationwide service of process (18 U.S.C. §

1965(a)(b) (when the ends of justice so require), and also pursuant to California's long arm

statute (regarding both purposeful direction and purposeful availment).  Quite simply, the

Schulte Defendants availed themselves of the privileges of California law, when they

obstructed justice through their knowing participation in the extrinsic fiduciary fraud schemes,

that succeeded in procuring a dismissal order they were not entitled to receive, and would not

have received, from Judge Fogel, but for the suppression and concealment of information that

was required to be disclosed, under the circumstances, to both Plaintiff William and to Judge

Fogel, by RICO Defendants Susan, Downes , and Zusman, it is submitted.

### 4. THE 2ND RULE 11 MOTION IS FRIVOLOUS, BECAUSE NEW JURISDICTIONAL FACTS HAVE BEEN ALLEGED IN THE SAC, AND THE COURT HAS ALREADY REJECTED THE *RES JUDICATA* ARGUMENT, BASED UPON THE FINDING THAT *RUPERT I,* AND THE INSTANT CASE, *RUPERT II,* ARE NOT IDENTICAL CLAIMS

#### A. New Jurisdictional Facts Are Alleged In The SAC, That Better Explain How The Obstruction Of Justice In *Rupert I,* Before Judge Fogel, Had Four (4) Components, Consistent With The Cases Of *Hanson v. Denckla,* 357 U.S. 235, 250-251 (1958), And *Lazzarone v. Bank of America,* 181 Cal.App.3d 581, 596-597 (1986)

The Schulte Defendants' 2nd Motion for Sanctions Under Rule 11 is based *inter alia*

upon the false premise that no new jurisdictional facts have been alleged in the SAC.  This

same erroneous contention was also the basis for the Schulte Defendants' pending FRCP

12(b)(2) Motion to Dismiss the Second Amended Complaint ("SAC"), which was filed on

October 21, 2013 (ECF 107).  On November 3, 2013, Plaintiff filed his Memorandum Of

Points and Authorities in Opposition to the Schulte Defendants' MTD (ECF 116), wherein he

discussed the new jurisdictional facts alleged in the SAC, which pertain to the Schulte

PLTF'S OPP. TO SCHULTE DEFT'S MOTION FOR RULE 11 SANCTIONS   [5:12-CV-5292 LHK (HRL)]

Defendants. Rather than burden the Court with a repetition of those same arguments, the Court is referred to Plaintiff's opposition memorandum, which is hereby incorporated by this reference, as though fully set forth at length herein.

In summary, new facts are alleged that establish why Oregon cannot reasonably exercise personal jurisdiction over California attorney-at-law Edward S. Zusman (which were lacking in the FAC). Also, new jurisdictional facts are alleged in the SAC, alleging *inter alia* that multiple fraudulent and actionable letters were sent by RICO Defendant Downes to Plaintiff William in California (ECF 106; SAC, ¶¶ 58-60), and also to the law firm in Michigan that prepared the Michigan estate plans for Samuel and Irene Rupert in 1995, and amended the plans in 2004. The fraudulent letter to the Michigan law firm, on or about June 16, 2009, repeated the "Big Lie" about Irene Rupert being the successor trustee of the Samuel Rupert Trust, and RICO Defendant Downes instructed the Michigan law firm not to share any information with Plaintiff William, concerning his father's irrevocable trust (ECF 106; SAC, ¶ 63). This was additional wrongful interference with Plaintiff William's trusteeship rights, his employment opportunities, and his vested rights as a remainder beneficiary, and permissible distributee, of the Samuel Rupert (Family) Trust.

These new jurisdictional facts are sufficient to show a multi-district conspiracy to violate the RICO statutes, through fraudulent schemes designed to inflict damage upon Plaintiff Williams economic relations, property interests, employment income, and successor trusteeship rights, within the State of California.

As such, there is nothing unreasonable about the State of California, and this federal district court located in the State of California, exercising specific personal jurisdiction over the Schulte Defendants, it is submitted.

Therefore, there is no legitimate basis for the imposition of Rule 11 Sanctions against Plaintiff William, who is properly exercising his right to seek redress for his grievances against the Schulte Defendants (and others), and to obtain his first full and fair day in court, in an appropriate forum (under the 1st and 14th Amendments). That forum is the Northern District of California, where much of his damages were suffered, and where the initial obstructions of justice took place, before Judge Fogel, during November of 2009 and January of 2010.

**B.  The Same *Res Judicata* Argument Has Already Been Rejected By The Court, Based Upon Judge Koh's Finding That *Rupert I* And The Instant Case, *Rupert II,* Do Not Present Identical Claims**

Although not a proper ground for a FRCP 12(b)(2) Motion to Dismiss, the Schulte Defendants are again repeating the same fatuous *res judicata* argument that they previously presented to the Court, and which the Honorable Lucy H. Koh properly rejected in her Order Denying Rule 11 Sanctions, dated September 18, 2013. (ECF 101; p.8:22-25)

The basis for the Court's earlier order was that the claims presented in *Rupert I* did not seek any relief under the RICO statutes, so the claims could not properly be regarded as identical, such that the current RICO claims could not be prohibited under the *res judicata* doctrine. Because nothing has changed since the Court's earlier ruling, the Schulte Defendants have brought a frivolous repeat motion, in bad faith, it is submitted.

**5.  THE SCHULTE DEFENDANTS' ARGUMENTS CONCERNING THE MAY 29, 2013 ORDER REMOVING PLAINTIFF WILLIAM'S NAME FROM THE CALIFORNIA VEXATIOUS LITIGANT LIST ARE ALSO IMPROPER, FRIVOLOUS, MISLEADING, AND LACKING IN MERIT**

Quite improperly, the Schulte Defendants appear to be attempting to use their 2nd Motion for Sanctions Under Rule 11 to launch a collateral attack upon a California Order that was entered on May 29, 2013, in Santa Cruz County Superior Court Case No. 117792, entitled "William Rupert vs. Leland and Marian Zeidler", that had the effect of removing Plaintiff

William's name from the California Vexatious Litigant List (where it had been placed pursuant to a pre-filing order entered on August 2, 1991).

*First,* the Schulte Defendants lack the necessary "standing" to be heard to complain about the proceedings in this California case, that does not concern them, or affect their rights.

*Second,* if the Schulte Defendants did have the necessary "standing" to be heard to complain about the California order, the proper forum would be the Santa Cruz County Superior Court, in Case No. 117792, not through a FRCP Rule 11 Motion for Sanctions brought in the Northern District of California.

*Third,* even if the Schulte Defendants did have the necessary "standing", and even if this district court was a proper forum for their collateral attack, they have not presented this court with an adequate and complete record of the motion that was made (the Declaration of William Rupert, and the attached Exhibits #1-#5 have been excluded), and the proceedings that conducted upon the motion (no reporter's transcript has been provided to the Court).

*Fourth,* the collateral attack lacks merit, because it is based upon the false premise that use of an "optional" California Judicial Council Form was mandatory and required.

*Fifth,* the collateral attack lacks merit because Plaintiff William did not mislead the Santa Cruz Superior Court in any way, by his motion that discussed the 10 California state court proceedings that got him placed upon the California Vexatious Litigant List in 1991, and the subsequent 2 California state court actions he was involved in, in 2007 and 2011.  Plaintiff William's motion properly and accurately discussed his actions that were filed in the courts *of* the State of California (not his actions filed in the courts located *in* the State of California).

*Sixth,* Plaintiff William's motion fully complied with the provisions of CCP § 391.8, because it alleged a change in the circumstances that caused Plaintiff Williams name to be

placed upon the list in the first place (California state court proceedings), and it alleged

granting the motion would be in the interests of justice (to provide Plaintiff William with a

level playing field in pending Workers' Compensation proceedings).  Plaintiff William had no

knowledge of the optional Judicial Council Form, when he drafted his motion, and he was not

required to use the Judicial Council Form that states upon it face, in the lower left hand corner,

that the use of the form is "optional".   Because use of the form is optional, it does not create an

independent duty to provide all the information requested on the form, going back 5 year in

time.  Plaintiff William prepared his own motion, that discussed 12 state court cases, going

back to 1981, and the motion he prepared and filed and served (as supported by the Declaration

of William Rupert and the attached Exhibits #1-#5, which RICO Defendant Downes has failed

to produce or discuss), was in full compliance with the requirements of CCP § 391.8.  CCP §

391.8 does not require that all litigation activity be disclosed for the past 5 years, it merely

requires a showing of changed circumstances and that the interests of justice would be served

by granting the motion.  Plaintiff William's motion was not misleading, and Santa Cruz County

Superior Court Judge Robert B. Atack, who signed the Order, was not deceived or mislead, by

Plaintiff William's Motion.   There was no fraud of any type, not intrinsic fraud and not

extrinsic fraud.  Review of the complete moving papers would establish this fact, which is why

RICO Defendant Downes, and his attorneys from Long & Levit, failed to produce the complete

moving papers, for this Court's review and inspection.

It is RICO Defendant Downes, and his attorneys from Long & Levit, who are trying to

mislead this Court, with their false premise arguments and scurrilous accusations against

Plaintiff William, that are unfounded, and a waste of this Court's time and energy.

*Seventh,* the type of extrinsic fraud that is necessary, to successfully challenge a state

court order or judgment in federal court, has not been alleged by the Schulte Defendants (who

have only alleged intrinsic fraud, at best, and even that argument is based upon a false premise,

and lacking in merit). (See *Kougasian v.TMSL, Inc.*, 359 F.3d 1136, 1140-41 (9th Cir. 2004);

*Maldonado v. Harris*, 370 F.3d 945, 950 (9th Cir. 2004); *Noel v. Hall*, 341 F.3d 1148, 1164

(9th Cir. 2003); and *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013)).

Accordingly, the Schulte Defendants collateral attack upon the California Order of May

29, 2013 is not well taken, and should be ignored, it is submitted, as another bad faith effort by

the Schulte Defendants to mislead the court upon material and significant matters, to Plaintiff

William's detriment.

### 6. THE SAC QUITE PROPERLY LISTS THE LONG & LEVIT ATTORNEYS AS NON-PARTY CO-CONSPIRATORS, BASED UPON THEIR PRIOR, AND CONTINUED, MISREPRESENTATIONS OF MATERIAL JURISDICTIONAL FACTS, TO THE COURT

The Schulte Defendants' 2nd Motion for Sanctions Under Rule 11 includes a footnote 4,

on page 7, wherein they mention the fact that their lawyers from Long & Levit are named in the

SAC as non-party co-conspirators.

That is a correct observation, and it reflects the fact that they also participated in the

obstruction of justice that transpired in the brief proceedings which were conducted by Judge

Fogel, and they have continued to falsely contend, in the instant case, that: (1) the late Irene

Rupert was the successor trustee of the Samuel Rupert Trust for seventeen (17) months

(although their client, RICO Defendant Downes, is unable to articulate any coherent theory as

to how, and when, the late Irene Rupert accepted her nomination, and purportedly became the

successor trustee (ECF 106; SAC, ¶ 7, p. 8:2-12); and, (2) estates were established under

Oregon law, which falsely implies that either Samuel Rupert's Will, or Irene Rupert's Will, was

admitted into evidence in Oregon probate proceedings (when the truth is that neither Will was

admitted into evidence under the Oregon Probate Code (ECF 106; SAC, ¶ 1, p. 4:12-18), because there have not been any proceedings, and hearings, which were conducted under the Oregon Probate Code.  Only limited Oregon proceedings were conducted, under the Oregon Trust Code, where no accountings were prepared, submitted or approved by the court).

As such, because the Long & Levit attorneys continue to breach their duties as trusted Officers of the Court, under both FRCP Rule 11 and under California Business & Professions Code § 6068(c)(d), they are quite properly listed as current non-party co-conspirators in the case.  If, and when, the SAC survives this second round of FRCP 12(b) Motions to Dismiss, Plaintiff intends to again seek permission to add the Long & Levit attorneys as additional RICO Defendants, based upon their misconduct and predicate acts before Judge Fogel, and in the instant case, before the Honorable Lucy H. Koh.

## 7.    CONCLUSION

Based upon all of the matters stated at length above, and based upon the documents mentioned in the FAC and in the SAC which were previously submitted to the Court by Plaintiff William during the first and second round of FRCP 12(b) Motions to Dismiss, as Exhibits #1-#61, that already appear of record in this case (which are hereby incorporated by this reference as though fully set forth at length herein), both the Schulte Defendants' misleading Request For Judicial Notice (ECF 132), and the Schulte Defendants' misleading 2nd Motion for Sanctions, Under Rule 11 (ECF 130), should be denied, it is respectfully submitted.

Dated: January 2, 2014

/s/ William Rupert
William Rupert
Plaintiff
Pro Se