William Rupert
P.O. Box 66403
Scotts Valley, CA 95067-6403
Phone: (831) 336-9520
Fax:     (831) 336-9528
Email: emfwtr@comcast.net

Plaintiff
Pro Se

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

WILLIAM RUPERT,

             Plaintiff,

     vs.

SUSAN BOND; GILE R. DOWNES;
EDWARD S. ZUSMAN; MATTHEW
WHITMAN; MICHELLE JOHANSSON;
JAMES RUPERT; SCHULTE, ANDERSON,
DOWNES, ARONSON & BITTNER, P.C.;
an Oregon Professional Corporation;
MARKUN ZUSMAN & COMPTON, LLP, a
Limited Liability Partnership Headquartered
in California; CARTWRIGHT WHITMAN
BAER, PC, an Oregon Professional
Corporation; and DOES 1 to 20,

            Defendants.

Case No.: 5:12-cv-05292 LHK (HRL)

PLAINTIFF'S MEMORANDUM OF
POINTS AND AUTHORITIES IN
OPPOSITION TO MOTION FOR RULE 11
SANCTIONS, AND A PRE-FILING
ORDER, BY DEFENDANTS' SUSAN
BOND AND JAMES RUPERT
&
COUNTER REQUEST FOR RULE 11
COSTS, AND SUGGESTION SANCTIONS
BE IMPOSED, SUA SPONTE, AGAINST
DEFENDANTS AND/OR AGAINST THEIR
ATTORNEY, DEVIN N. ROBINSON,
PAYABLE TO THE COURT,

Date:      June 19, 2014
Time:      1:30 p.m.
Dept:      Courtroom 8
Judge:    Hon. Lucy H. Koh

Action Filed:  October 12, 2012

1

# **TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES……………………………………………………   iii

I.      INTRODUCTION........................................................................      2

II.     PLAINTIFF INCORPORATES BY REFERENCE HIS PREVIOUSLY
        FILED OPPOSITION TO DEFENDANT DOWNES' MOTION FOR
        RULE 11 SANCTIONS AND A PRE-FILING ORDER (ECF 134), AND
        HIS OPPOSITIONS TO THE 2ND ROUND OF MOTIONS TO DISMISS
        UNDER FRCP 12(b)(2) (ECF 116-121), OR FRCP 12(b)(6) (ECF 115)....      4

III.    ARGUMENT...........................................................................      5

        A.      The motion is procedurally improper, for failure to properly
                serve the entire 17 page Rule 11 Motion on Plaintiff, after
                learning only 8 pages had been received by Plaintiff, prior to the
                filing of the Motion with the Court, contrary to FRCP 11(c)(2)........      5

        B.      The Rule 11 Motion for Sanctions, Etc., is infected with material
                misrepresentations with regards to significant matters....................      7

                1.      Plaintiff's litigation history is misrepresented......................      7

                2.      Plaintiff's removal from the California Vexatious
                        Litigant List on May 29, 2013 is misrepresented..................      8

                3.      Plaintiff did not file, and the Oregon's Courts did
                        not dismiss, any responsive pleading that sought
                        affirmative relief, or named Defendants Downes
                        Or Whitman, in the case Defendant Susan commenced
                        concerning the Samuel Rupert Trust, without bothering
                        to make the Trustee a party to the action...............................      9

                4.      Although Plaintiff timely requested special findings of
                        fact in the Oregon actions commenced by Defendants
                        Susan and James, no findings of fact or conclusions of
                        law were made upon his affirmative defenses of fraud,
                        breach of trust, and "unclean hands", against Defendant
                        Susan...................................................................      12

                5.      The late Irene Rupert was never the Successor Trustee
                        of the Samuel Rupert Trust, the Charles Schwab
                        Institutional accounts were not opened in Oregon, and
                        Plaintiff was not aware of these accounts in 2009................      13

I

## TABLE OF CONTENTS (Continued)

Page(s)

C.   The Plaintiff's FAC has been superseded by his SAC, so the allegations of the FAC cannot form a basis for Rule 11 Sanctions, because they have been effectively withdrawn, and are not before the court for any purpose............................................... 14

D.   The allegations of the SAC no longer permit the court to conclude personal jurisdiction over RICO Defendant Zusman "may" lie in the State of Oregon, because the SAC alleges Defendant Zusman has no jurisdictional contacts with Oregon, and this allegation has not been refuted or opposed by any party, or by any affidavit.......... 14

E.   By seeking a Prefiling Order under 28 U.S.C. § 1651(a), and by seeking findings that go to the merits of Plaintiff's FAC and SAC, to conclude they are "frivolous", Defendants Susan and James have submitted to this federal court's jurisdiction, and gone beyond what is permitted by FRCP 12(h)(1), or by a special appearance to contest personal jurisdiction........................... 16

F.   Plaintiff renews his request for jurisdictional discovery into Defendant Susan's unsupported claim that the Charles Schwab Institutional accounts were opened in Oregon, not in San Francisco, California, because the relevant documents and records are in her possession, or under her control.................... 17

G.   The Reporter's Transcript of the only hearing before Judge Fogel, in *Rupert I*, shows that Judge Fogel and Defendant Susan's prior lawyer, Defendant Zusman, both agreed that personal jurisdiction would lie if Defendant Downes' "cease and desist" type letter was combined with an Oregon judgment that the Defendants tried to use against Plaintiff in California; and that is the factual predicate alleged in the SAC, so personal jurisdiction is reasonable and proper.............. 18

H.   The Plaintiff's RICO action alleges the Oregon judgments were obtained through extrinsic fraud that maliciously abused the legal process of Oregon, to cheat the Plaintiff out of his full and fair day in court, and the fraudulent schemes relied upon mail and wire fraud, among the predicate acts......................... 23

I.   It is the Defendants' Rule 11 Motion for Sanctions, Etc. that is baseless, and a waste of the Court's judicial resources, warranting *sua sponte* sanctions, payable to the Court..................... 24

IV.   CONCLUSION............................................................ 25

II

1

## **TABLE OF AUTHORITIES**

**Page(s)**

2

**Cases:**

3

Bell v. City of Boise
4      709 F.3d 890, 897 (9th Cir. 2013)……………………………………..     4,24

5

California Overseas Bank v. French American Banking Corp.
6      154 Cal.App.3d 179, 184 (1984)........................................................     16

7

Continental Bank, N.A. v. Meyer,
8      10 F.3d 1293, 1296-97 (7th Cir. 1993).............................................     16

9

Forsyth v. Humana, Inc.,
     114 F.3d 1467, 1474 (9th Cir. 1997)................................................     14
10

11

Hanson v. Denckla
     357 U.S. 235, 250-251 (1958)……………………………………..     18,20
12

13

Kougasian v.TMSL, Inc.
     359 F.3d 1136, 1140-41 (9th Cir. 2004)…………………………….     4,24
14

15

Lazzarone v. Bank of America
     181 Cal.App.3d 581, 596-597 (1986)………………………………..     2,20

16

Maldonado v. Harris
17      370 F.3d 945, 950 (9th Cir. 2004)…………………………………….     4,24

18

Molinski v. Evergreen Dynasty Corp.,
     500 F.3d 1047 (9th Cir. 2007)..........................................................     17
19

20

Nam Tai Electronics v. Titzer,
     93 Cal.App.4th 1301 (2001)..............................................................     16

21

Neirbo Co. v. Bethlehem Shipbuilding Corp.,
22      308 U.S. 165, 168 (1939)..................................................................     16

23

Noel v. Hall
24      341 F.3d 1148, 1164 (9th Cir. 2003)…………………………………     4,24

25

Peterson v. Highland Music, Inc.,
26      140 F.3d 1313, 1318 (9th Cir. 1998)................................................     16

27

Rupert v. U.S. Dept. of Navy,
     108 F.3d 1386 (9th Cir. 1997)..........................................................     7
28

PLTF'S OPP. TO MOTION FOR RULE 11 SANCTIONS, AND PRE-FILING ORDER, BY DEFENDANTS
SUSAN BOND AND JAMES RUPERT   [5:12-CV-5292 LHK (HRL)]

**TABLE OF AUTHORITIES (Continued)**

**Page(s)**

**Cases (Continued):**

Sher v. Johnson,
911 F.2d 1357, 1365 (9th Cir. 1990)........................................................ 15

United States v. Throckmorton
98 U.S. 61, 65-66 [25 L.Ed. 93,95] (1878)…………………………….... 2,20

Yedell v. Tutt,
913 F.2d 533, 538-39 (8th Cir. 1990)...................................................... 16

Yahoo!, Inc. v. La Lique Contre Le Racisme,
433 F.3d 1199 (2006)............................................................................. 21

Young v. City of Mount Ranier,
238 F.3d 567, 573 (4th Cir. 2001)........................................................... 14

**Statutes:**

CALIFORNIA CODE OF CIVIL PROCEDURE
§ 391(b)(1)……………………………………………………… 8
§ 391(b)(3)……………………………………………………… 8
§ 391.8……………………………………………………………… 9

UNITED STATES CODE
28 U.S.C. § 1257........................................................................ 3
28 U.S.C. § 1651(a)..................................................................... 16,17,25
28 U.S.C. § 1738………………………………………………… 3,9
18 U.S.C. § 1965(b)…………………………………………….... 15

**Rules**

FEDERAL RULES OF CIVIL PROCEDURE
Rule 11…………………………………………………………… 2,3,4
Rule 11(c)(2)…………………………………………………… 3,5,6,7
Rule 12(b)(2)…………………………………………………… 4,13,16
Rule 12(b)(6)…………………………………………………... 4
Rule 12(h)(1)…………………………………………………… 16,17

**Constitutions:**

UNITED STATES CONSTITUTION
1st Amendment………………………………………………… 3
6th Amendment........................................................................... 3
14th Amendment……………………………………………… 3,13

IV

## I.    INTRODUCTION

Throughout the Defendants' Rule 11 Motion for Sanctions and Pre-Filing Order they correctly inform the Court that the Oregon Supreme Court recently denied Plaintiff William's Petitions For Review, of the Court of Appeal's decisions to affirm without opinion, the Clackamas County Circuit Court's judgments and appealable orders against Plaintiff William and in favor of Defendants Susan and James, in the limited trust proceedings commenced by Defendants Susan and James in 2010 and 2011, concerning the Michigan Trust of Samuel Rupert and the Oregon Trust of Irene Rupert (where the merits of Plaintiff William's issues were not reached by the trial court, despite his request for special findings of fact, and affirmative defenses that alleged fraud, breaches of trust, and "unclean hands" by Defendant Susan).

The denials by the Oregon Supreme Court, dated January 30, 2014, were without explanation, as they declined to consider whether Oregon's narrow definition of "extrinsic fraud", based upon Oregon's narrow interpretation of the seminal case of *United States v. Throckmorton*, 98 U.S. 61 (1878), represents legal error, when compared with California's much broader interpretation of *Throckmorton*, that recognizes extrinsic fiduciary fraud, when information is wrongfully suppressed, that a fiduciary has a duty to disclose.  (See *Lazzarone v. Bank of America*, 181 Cal.App.3d 581, 596-597 (1986)).

However, the Defendants' Rule 11 Motion for Sanctions and Pre-Filing Order erroneously concludes that: "Plaintiff has no further options on litigating this matter," (ECF 145, p. 6:18-19), and that: "Now that the Oregon Supreme Court has denied review, he is completely forestalled from arguing the merits." (ECF 145, p. 7:26-27).

In fact, Plaintiff William has until April 30, 2014 to seek review before the United

PLTF'S OPP. TO MOTION FOR RULE 11 SANCTIONS, AND PRE-FILING ORDER, BY DEFENDANTS SUSAN BOND AND JAMES RUPERT   [5:12-CV-5292 LHK (HRL)]

States Supreme Court, pursuant to 28 U.S.C. § 1257, by way of a writ of certiorari.  The

Plaintiff intends to seek such relief, on the grounds that the Oregon proceedings are repugnant

to the Constitution of the United States, due to the extrinsic fraud that was relied upon to obtain

the Oregon judgments and orders, through violations of the 1st, 6th and 14th Amendments to the

United States Constitution.

Plaintiff's intention to file these writs of certiorari was set forth in his separate CMC

Statement, filed on March 6, 2014.

As will be explained below, this premature Rule 11 Motion for Sanctions and Pre-Filing

Order appears to have been filed without compliance with the safe-harbor requirements of

FRCP 11(c)(2), so as to interfere with Plaintiff's ability to prepare his writs of certiorari, by

requiring him to devote a substantial amount of time and energy to opposing this Rule 11

Motion for Sanctions and Pre-Filing Order, while time is running out to file the writs of

certiorari.

However, even if the writs of certiorari are not filed, or are denied, which is extremely

likely, it will have little impact upon the instant case, because the Plaintiff's operative pleading

alleges the Oregon judgments and orders were procured by extrinsic fraud, that prevented a real

contest from taking place, by depriving Plaintiff William of his full and fair day in state court,

such that the Oregon judgments and orders are not entitled to full faith and credit under 28

U.S.C. § 1738, within the State of California.

The allegations of the SAC entitle the Plaintiff to his day in a United States District

Court, for the Northern District of California, upon his claims that the Oregon judgments and

orders were procured through extrinsic fraud.

Numerous decisions by the Ninth Circuit Court of Appeals have recognized and upheld

PLTF'S OPP. TO MOTION FOR RULE 11 SANCTIONS, AND PRE-FILING ORDER, BY DEFENDANTS
SUSAN BOND AND JAMES RUPERT    [5:12-CV-5292 LHK (HRL)]

this right, when extrinsic fraud upon a state court is alleged by a federal plaintiff. (See

*Kougasian v.TMSL, Inc.,* 359 F.3d 1136, 1140-41 (9th Cir. 2004); *Maldonado v. Harris,* 370

F.3d 945, 950 (9th Cir. 2004); *Noel v. Hall,* 341 F.3d 1148, 1164 (9th Cir. 2003); and *Bell v.*

*City of Boise,* 709 F.3d 890, 897 (9th Cir. 2013)).

   The *Kougasian* Court explained this as follows:

> "Extrinsic fraud on a court is, by definition, not an error by that court, it is, rather, a
> wrongful act committed by the party or parties who engaged in the fraud.  *Rooker-
> Feldman* therefore does not bar subject matter jurisdiction when a federal plaintiff
> alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state
> court judgment obtained by that fraud."
> Kougasian v.TMSL, Inc.,
>    359 F.3d 1136, 1141 (9th Cir. 2004)

   Therefore, the Oregon judgments are not yet 100% "final", although the litigation in

Oregon has come to an end, at this time.

## II. PLAINTIFF INCORPORATES BY REFERENCE HIS PREVIOUSLY FILED OPPOSITION TO DEFENDANT DOWNES' MOTION FOR RULE II SANCTIONS AND A PRE-FILING ORDER (ECF 134), AND HIS OPPOSITIONS TO THE 2ND ROUND OF MOTIONS TO DISMISS UNDER FRCP 12(b)(2) (ECF 116-121), OR FRCP 12(b)(6) (ECF 115)

   For ease of the Court, the Plaintiff hereby incorporates by this reference his previously

filed:

   (1) Memorandum of Points and Authorities in Opposition to the similar Rule 11 Motion

for Sanctions and Pre-Filing Order filed by Defendants Downes and Schulte, Anderson,

Downes, Aronson & Bittner, P.C., filed by Plaintiff on January 2, 2014 (ECF 134);

   (2) the Memorandum of Points and Authorities in Opposition to the FRCP 12(b)(6)

MTD SAC filed by Defendants Zusman and Markun Zusman & Compton, LLP, filed by

Plaintiff on November 3, 2014 (ECF 115);

   (3) the Memorandum of Points and Authorities in Opposition to the FRCP 12(b)(2)

MTD SAC filed by Defendants Downes and Schulte, Anderson, Downes, Aronson & Bittner, P.C., filed by Plaintiff on November 3, 2014  (ECF 116);

(4)  the Declaration of William Rupert in Opposition to the second round of FRCP 12(b) Motions to Dismiss the SAC, filed by Plaintiff on November 3, 2014  (ECF 117);

(5) Plaintiff William Rupert's Request for Judicial Notice in Opposition to the second round of FRCP 12(b) Motions to Dismiss the SAC, filed by Plaintiff on November 3, 2014 (ECF 118);

(6)  Plaintiff William Rupert's Appendix of Exhibits, in Opposition to the second round of FRCP 12(b) Motions to Dismiss the SAC, filed by Plaintiff on November 3, 2014  (ECF 119);

(7)  the Memorandum of Points and Authorities in Opposition to the FRCP 12(b)(2) MTD SAC filed by Defendants Whitman, Johansson and Cartwright Whitman Baer P.C., filed by Plaintiff on November 3, 2014  (ECF 120), and;

(8)  the Memorandum of Points and Authorities in Opposition to the FRCP 12(b)(2) MTD SAC filed by Defendants Susan Bond and James Rupert, filed by Plaintiff on November 3, 2014  (ECF 121).

### III.    ARGUMENT

**A.    The motion is procedurally improper, for failure to properly serve the entire 17 page Rule 11 Motion on Plaintiff, after learning only 8 pages had been received by Plaintiff, prior to the filing of the Motion with the Court, contrary to FRCP 11(c)(2)**

FRCP 11(c)(2) requires advance service of a draft Rule 11 Motion at least 21 days prior to the filing of the motion with the Court, to provide a safe-harbor period within which corrective action may be taken.  That did not happen in the instant case, because the Defendants' motion and attached memorandum of points and authorities consist of 17 pages,

5

and only 8 of the 17 pages were served upon the Plaintiff on February 25, 2014. Moreover, the Plaintiff informed the Defendants of the defective and incomplete service, in a letter dated March 11, 2014, as alleged in the contemporaneously filed Declaration of William Rupert in Opposition to the Rule 11 Motion for Sanctions and Pre-Filing Order filed by Defendants Susan and James, which has a true and correct copy of the March 11, 2014 letter attached thereto as Exhibit A.

However, the Defendants failed to serve the missing 9 pages of their moving papers upon the Plaintiff, prior to filing their Rule 11 Motion for Sanctions and Pre-Filing Order on April 2, 2014. Interestingly, the motion filed with the Court has been corrected to eliminate the numbering mistake (two pages marked as page 2), that was pointed out by the Plaintiff in his March 11, 2014 letter to the Defendants. Service of the renumbered moving papers were not made by the Defendants, in advance of their filing of the renumbered moving papers with the Court, on April 2, 2014.

Accordingly, the Defendants' Rule 11 Motion for Sanctions and Pre-Filing Order fails to specifically allege compliance with the safe harbor requirements of FRCP 11(c)(2). As such, the Defendants' have not filed a valid, *prima facie* Rule 11 Motion for Sanctions, and they cannot amend to allege compliance.

Nonetheless, the Defendants' moving papers dishonestly include a Proof of Service document (ECF 145-4, page 2), that falsely alleges the safe-harbor requirements were complied with on February 25, 2014, by the service that was purportedly made on that date.

Additionally based upon this knowingly false and mistaken Proof of Service, the Defendants' have submitted a Proposed Order to the court that seeks the following dishonest finding by the Court:

PLTF'S OPP. TO MOTION FOR RULE 11 SANCTIONS, AND PRE-FILING ORDER, BY DEFENDANTS
SUSAN BOND AND JAMES RUPERT [5:12-CV-5292 LHK (HRL)]

"7.   Defendants also served a copy of the draft Motion for Sanctions on Plaintiff more than 21 days prior to filing it;"
(ECF 145-3; p. 2:19-20)

The Defendants motion, premised upon this knowingly false Proof of Service document, must be denied, it is submitted, for failure to comply with FRCP 11(c)(2).

Ironically, it is the Defendants' Rule 11 Motion for Sanctions and Pre-Filing Order that appears to be frivolous (baseless and filed for an improper purpose), and improper.

**B.      The Rule 11 Motion for Sanctions, Etc., is infected with material misrepresentations with regards to significant matters**

A few of the Defendants' more egregious misrepresentations of material facts, without and adequate investigation, are set forth below.

**1.      Plaintiff's litigation history is misrepresented**

As set forth in the supporting Declaration of William Rupert in Opposition to the Defendants' Rule 11 Motion for Sanctions and Pre-Filing Order, which is being contemporaneously filed herein, the Plaintiff herein is not the same William Rupert who was the plaintiff in *Rupert v. U.S. Dept. of Navy,* 108 F.3d 1386 (9th Cir. 1997), contrary to the knowingly false or recklessly made allegations of the Defendants' Rule 11 Motion for Sanctions and Pre-Filing Order (ECF 145; p. 8, fn. 1).

As Plaintiff's brother and sister know, and he attests to in his contemporaneously filed Declaration, he has resided exclusively in Santa Cruz County, California, since moving to California in 1980.

However, the home address given by the William Rupert who was the appellant in *Rupert v. U.S. Dept. of Navy,* 108 F.3d 1386 (9th Cir. 1997), in the trial court proceedings from which the appeal was taken, USDC CDCA Case No. 2:87-cv-03597 TJH, was 10011 Gramercy Place, Los Angeles, CA 90047.   This fact is shown by the Exhibit B that is attached to the

7

Declaration of William Rupert in Opposition to the Rule 11 Motion for Sanctions and Pre-Filing Order, which was obtained by the Plaintiff through 20 minutes of internet research using his PACER account, to obtain the docket information from the trial court.

Obviously, the Defendants and their attorney, Mr. Robinson, also could have discovered that a different William Rupert was involved, if they had made a reasonable and competent investigation, or if Mr. Robinson would have simply consulted with his clients, or Plaintiff, before making their false accusations that misrepresent the Plaintiff's actual litigation history.

## 2.    Plaintiff's removal from the California Vexatious Litigant List on May 29, 2013 is misrepresented

The Defendants' Rule 11 Motion for Sanctions and Pre-Filing Order falsely alleges that:

"Plaintiff has filed so many unsuccessful suits in California's state courts that he was on the Vexatious Litigant List from 1991 through 2013. (Exh. 5.)"
(ECF 145; p. 8:3-4)

However, the above statement is false and misleading because the Plaintiff was removed from the California Vexatious Litigant List, by way of an Order that was entered by the Santa Cruz County Superior Court on May 29, 2013, a copy of which has previously been filed with the Court, and served on Defendants. (ECF 102; Ex. 1, p. 31)

Moreover, Plaintiff was not placed on the list for losing too many cases, under the objective standards that are set forth in CCP § 391(b)(1), if a litigant loses, or fails to timely prosecute, 5 cases within 7 years.

Rather, Plaintiff was placed on the list under the entirely subjective standards of CCP § 391(b)(3), for conduct deemed frivolous or solely designed to cause delay, although the trial court failed to specify just exactly what the conduct was, from earlier cases before other judges, that was deemed to be frivolous or solely designed to cause delay.

Nonetheless, although Plaintiff's name has been removed from the California Vexatious

8

Litigant List (which was impossible prior to 2012), the Defendants' Rule 11 Motion for Sanctions and Pre-Filing Order falsely implies he is still on the list, by falsely stating that the Plaintiff is still  "Recognized as a vexatious litigant in California," (ECF 145; p. 14:21).

Plaintiff's removal of his name from this wall of shame (ECF 102; Ex. 2, p. 32), is a significant and material fact, that should not be misrepresented to the Court.  Such removal orders are not easy to acquire, because a change in behavior must be demonstrated, and also that the interests of justice would be served by the removal of an individual's name from the list.  Plaintiff's motion under CCP § 391.8 met both prongs, and it was granted.

The Defendants are trying to deny the Plaintiff the benefits that go with not being on the California Vexatious Litigant List, by asking the Court to regard the Plaintiff as if he is still on the list, by giving no effect to the Order of Removal from the list, which they refuse to even acknowledge, in their deceptive Rule 11 Motion for Sanctions and Pre-Filing Order.

The Defendants are not acting in good faith, or in compliance with 28 U.S.C. § 1738, it is submitted.

**3.      Plaintiff did not file, and the Oregon's Courts did not dismiss, any responsive pleading that sought affirmative relief, or named Defendants Downes Or Whitman, in the case Defendant Susan commenced concerning the Samuel Rupert Trust, without bothering to make the Trustee a party to the action**

The Defendants' Rule 11 Motion for Sanctions and Pre-Filing Order also egregiously misrepresents the procedural history of the Oregon action commenced by Defendant Susan concerning the Samuel Rupert Trust, by asserting the following matters, that lack any evidentiary support:

"In the Oregon proceeding involving the Samuel Rupert Trust, Susan petitioned to compel distribution of the trust assets, and on July 24, 2010 William Rupert filed and served objections to the proposed distribution and made counterclaims against Susan

9

Bond, Gile Downes, and Matthew Whitman, all also sued herein.  Plaintiff's claims were ultimately dismissed as to Downes and Whitman, because he wouldn't pay a filing fee, and judgment was entered against Plaintiff as to Susan Bond, after a hearing on the merits. (FAC, ¶ 81.)."

However, Plaintiff is already on record with his denial that his proposed responsive pleading, from July of 2010, was ever "filed" in the case, because the Clerk's Office rejected the proposed pleading due to perceived mistakes going to both the form, and the contents of the pleading,  and also for additional filing fees (based upon regarding the probate department action as if it was an ordinary civil action, and disregarding the probate department fee schedule, in assessing the filing fees that had to be paid, before the pleading would be filed and processed by the Clerk's Office, and the probate department).

Also, this proposed pleading was not served along with a Summons upon either Defendant Downes or Defendant Whitman, so they had no duty to respond in the case.  Additionally, the motions to dismiss that they unnecessarily filed were disregarded and never acted upon by the Clerk's Office (who returned their filing fees to them, along with the notice of non-action on the filings). (ECF 30; Ex. 12, pp. 45-46)

However, the notice of non-action was not a dismissal, because there was nothing to dismiss, precisely because the Plaintiff's proposed responsive pleading seeking affirmative relief was never "filed" in the case.  If a dismissal actually took place, the Defendants should be able to produce the written, signed dismissal document.  No such document has been produced, or referred to by date of entry.  The Defendants are not telling the truth.

What happened is that the Plaintiff was horrified and alarmed when a non-lawyer Court Clerk began making erroneous judicial determinations she was not qualified to make, by telling him what he had to allege *within* the amended pleading she was demanding from the Plaintiff,

10

along with additional filing fees using the Civil Case Fee Schedule instead of the Probate Department Fee Schedule, for the probate department proceedings under the Oregon Trust Code.

Fearing that too much judicial power was being delegated to incompetent non-lawyer civil clerks by the Clackamas County Circuit Court, and fearing that the proceedings were being rigged unfairly against him, the Plaintiff decided against seeking his affirmative relief in the Oregon action concerning the Samuel Rupert Trust, and he changed his litigation tactics.

Plaintiff's initial response was going to be a motion to dismiss, before he prepared the responsive pleading that was rejected by the Clerk's Office. Following the rejection, the Plaintiff revisited his motion to dismiss, as an attack on the admitted "back-stop" proceedings, for failure to state a cause of action, by the failure to allege any ripe controversy for the Court to inquire into (ECF 48; Ex. 30, Petition, pp. 19-21), not to mention the failure to join the trustee as a party in the action, who can only lawfully appear through legal counsel.

Plaintiff's motion to dismiss was filed on October 12, 2010, and first heard on November 24, 2010, with a renewed hearing conducted on March 23, 2011, where Senior Judge Welch denied the motions, ruled discovery was still open, and scheduled a hearing for May 11, 2011, for a motion to compel Defendant Susan Bond to produce documents.

Shortly thereafter, the Plaintiff timely filed his responsive pleading in the case, his Answer and Affirmative Defenses, on April 4, 2011 (without seeking affirmative relief or naming Defendant Downes or Defendant Whitman. (ECF 43; Ex. 16, pp. 11-24)

Through extrinsic fraud and gamesmanship by Defendants Susan and Whitman, they procured a General Judgment in the case, on April 28, 2011 (ECF 48; Ex. 32, pp. 42-43), even though: (1) no proceedings were conducted after the case became at-issue; (2) no trial in the

PLTF'S OPP. TO MOTION FOR RULE 11 SANCTIONS, AND PRE-FILING ORDER, BY DEFENDANTS SUSAN BOND AND JAMES RUPERT   [5:12-CV-5292 LHK (HRL)]

case had ever been commenced by Judge Welch; and, (3) no judgment had ever been rendered by Judge Welch, on the record in the case, as shown by the Reporter's Transcripts.

Moreover, the face of the purported General Judgment shows that none of the Plaintiff's issues and affirmative defenses were adjudicated by the Court.  Nor was any specific distribution ordered to take place by the Court.  As a matter of law, the purported General Judgment is really just an interlocutory order by the court, that anticipated further proceedings, as shown by it's *sua sponte* reservation of continuing jurisdiction in the case.  As a matter of law, the purported general judgment is just a prohibited "advisory opinion", that resolves nothing and is not a proper exercise of the judicial power anywhere in the United States.

       **4.**     **Although Plaintiff timely requested special findings of fact in the Oregon actions commenced by Defendants Susan and James, no findings of fact or conclusions of law were made upon his affirmative defenses of fraud, breach of trust, and "unclean hands", against Defendant Susan**

The Reporter's Transcript from the Oregon proceedings originally failed to contain the first 29 seconds of the hearing on October 27, 2010, when Plaintiff's request for special findings of fact was made to Senior Judge Welch.  However, because Plaintiff had his own audio recording of the hearing, he was able to make a motion for correction of the Reporter's Transcripts, that was granted.

The Reporter's Transcripts that were settled by the Court include the first 29 seconds, and the timely request for special findings of fact and conclusions of law, with regards to both cases (by the failure to limit the request). (ECF 117; Ex. 60, p. 21; Ex. 61, pp. 23-24)

However, the face of the Oregon General Judgments shows that no findings were made upon any of the affirmative defenses that concerned fraud, breaches of trust, and the alleged "unclean hands" of Defendant Susan.  (ECF 48; Ex. 32, pp. 42-43; ECF 117; Ex. 58, pp. 14-16)

12

Nonetheless, the Defendants' Rule 11 Motion for Sanctions and Pre-Filing Order attempts to mislead the Court, by alleging that:

"The vast majority of Plaintiff's claims were litigated on the merits, in Oregon." (ECF 145; p. 10:12-13)

In fact, _none_ of Plaintiff's claims were litigated on the merits, in Oregon, by way of the extrinsic fraud that was utilized to trample upon the Plaintiff's Due Process and Equal Protection rights under the 14th Amendment to the United States Constitution, by depriving him of his full and fair day in court, with the assistance of retained legal counsel.

**5.    The late Irene Rupert was never the Successor Trustee of the Samuel Rupert Trust, the Charles Schwab Institutional accounts were not opened in Oregon, and Plaintiff was not aware of these accounts in 2009**

The Defendants' Rule 11 Motion for Sanctions and Pre-Filing Order also falsely alleges that:

(1) Irene Rupert became the Successor Trustee of the Samuel Rupert Trust, and employed Defendant Downes in that capacity (ECF 145; p. 8:15-17);

(2)  The Charles Schwab Accounts that were opened after Samuel Rupert's death were were opened in Oregon, not in San Francisco, California  (ECF 145; p. 14:14);

(3)  Plaintiff was aware of the 3 Charles Schwab accounts in 2009, and when Judge Fogel conducted the one and only hearing in _Rupert I,_ on the FRCP 12(b)(2) MTD for lack of personal jurisdiction, on January 8, 2010.  (ECF 145; p. 14:20)

The Plaintiff disputes all of the 3 assertions listed directly above, as shown by the allegations of his operative pleading, the SAC.

As explained in more detail in subsection F, below, jurisdictional discovery could be beneficial in this case, focused upon the 3 assertions listed above, which have been made by

Defendants Susan and James, concerning matters where the documents supporting these assertions, if they exist, are exclusively in their possession, or under their control.

**C.     The Plaintiff's FAC has been superseded by his SAC, so the allegations of the FAC cannot form a basis for Rule 11 Sanctions, because they have been effectively withdrawn, and are not before the court for any purpose**

The instant Rule 11 Motion for Sanctions is solely and narrowly based upon:

"the grounds that the first amended complaint filed by plaintiff William Rupert against Susan Bond and James Rupert is both frivolous and filed for an improper purpose."
(ECF 145; p. 2:3-5)

However, the FAC has been entirely superseded by the Plaintiff's Corrected SAC, filed October 7, 2013 (ECF 106), which is his operative pleading.

Therefore, because the FAC has been effectively withdrawn by the Plaintiff, through the filing of his operative pleading on October 7, 2013, it cannot form the basis for the imposition of Rule 11 Sanctions upon the Plaintiff, it is submitted. (See *Forsyth v. Humana, Inc.,* 114 F.3d 1467, 1474 (9th Cir. 1997); *Young v. City of Mount Ranier,* 238 F.3d 567, 573 (4th Cir. 2001)).

Although the Rule 11 Motion for Sanctions is supported by a Memorandum of Points and Authorities that includes certain arguments and misrepresentations concerning the SAC, these matters are beyond the scope of the underlying motion, as stated upon the face of the motion itself. (ECF 145; p. 2:3-5).  Legally, because the Defendants' motion is directed at a superseded pleading, it is moot and should simply be dismissed.

**D.     The allegations of the SAC no longer permit the court to conclude personal jurisdiction over RICO Defendant Zusman "may" lie in the State of Oregon, because the SAC alleges Defendant Zusman has no jurisdictional contacts with Oregon, and this allegation has not been refuted or opposed by any party, or by any affidavit**

During the first round of FRCP 12(b) MTD's, the Plaintiff was sandbagged by

PLTF'S OPP. TO MOTION FOR RULE 11 SANCTIONS, AND PRE-FILING ORDER, BY DEFENDANTS SUSAN BOND AND JAMES RUPERT   [5:12-CV-5292 LHK (HRL)]

Defendant Downes, when he submitted evidence with his Reply Memorandum, and suggested personal jurisdiction might exist in Oregon concerning Defendant Zusman, a California resident, because Defendant Markun Zusman & Compton, LLP has a partnership branch that is located in Portland, Oregon.

Based thereupon, the Court ruled that jurisdiction "may" exist in Oregon, with regards to Defendant Zusman, as a basis for rejecting the Plaintiff's argument that national "ends of justice" RICO jurisdiction was appropriate, in the Northern District of California, under 18 U.S.C. § 1965(b), because of the inferences that should be made from the facts that were alleged in the FAC, concerning Defendant Zusman.

Accordingly, in drafting the SAC the Plaintiff made it a point to specifically allege that Defendant Zusman has no jurisdictional contacts with the State of Oregon, because he has no affiliation with the partnership branch location in Portland, Oregon.  (ECF 106; SAC; ¶ 1, fn. 1, ¶ 8).  This distinction is significant pursuant to *Sher v. Johnson,* 911 F.2d 1357, 1365 (9th Cir. 1990), which holds that personal jurisdiction has to be separately considered and established for a law firm partnership defendant, and for an individual attorney defendant.   Personal jurisdiction over all employees or agents of a multi-state partnership is not implied or assumed by the Court, it must be determined separately for each defendant.

Significantly, the SAC now alleges sufficient facts, that have not been refuted or contested by affidavit, to establish national "ends of justice" RICO jurisdiction is appropriate, in the Northern District of California, under 18 U.S.C. § 1965(b).

Under this standard, appropriate for alleged multi-state conspiracies, the jurisdictional contacts merely have to be with the United States, not specifically with California.  All named defendants in this case have sufficient jurisdictional contacts with the United States.

15

**E.   By seeking a Prefiling Order under 28 U.S.C. § 1651(a), and by seeking findings that go to the merits of Plaintiff's FAC and SAC, to conclude they are "frivolous", Defendants Susan and James have submitted to this federal court's jurisdiction, and gone beyond what is permitted by FRCP 12(h)(1), or by a special appearance to contest personal jurisdiction**

In preparing the Defendants' Rule 11 Motion for Sanctions and Pre-Filing Order, Defendants' attorney, Mr. Robinson, was very careful to state upon all his papers that he is "Specially appearing for Defendants Susan Bond and James Rupert".

However, a true "special appearance" is one where only personal jurisdiction is argued and contested, without asking the Court to reach the merits of the action, or seeking any affirmative relief. (See *Nam Tai Electronics v. Titzer,* 93 Cal.App.4th 1301 (2001); *California Overseas Bank v. French American Banking Corp.* 154 Cal.App.3d 179, 184 (1984)).

Similarly, a true FRCP 12(b)(2) motion is only supposed to argue and contest the Court's exercise of personal jurisdiction over a specific party, without asking the Court to reach the merits of the action, or seeking any affirmative relief.  Submission through conduct has long been recognized in the federal system. (See *Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 168 (1939); *Peterson v. Highland Music, Inc.,* 140 F.3d 1313, 1318 (9th Cir. 1998); *Continental Bank, N.A. v. Meyer,* 10 F.3d 1293, 1296-97 (7th Cir. 1993); *Yedell v. Tutt,* 913 F.2d 533, 538-39 (8th Cir. 1990)).

A properly focused FRCP 12(b)(2) motion to dismiss is protected under FRCP 12(h)(1), from being considered a submission to the Court's fundamental jurisdiction, in a given case.

In the instant case, the Defendants' Rule 11 Motion for Sanctions and Pre-Filing Order is not such a properly focused motion, because *inter alia* the Defendants' ask for affirmative relief that requires rulings that go to the merits of the underlying action, by seeking a federal pre-filing order and a federal vexatious litigant determination, under the authority of the All

16

Writs Act, 28 U.S.C. § 1651(a)[1], and cases such as *Molinski v. Evergreen Dynasty Corp.,* 500 F.3d 1047 (9th Cir. 2007). (ECF 145; p. 14:11-14).

By seeking this affirmative relief, which would require the Court to determine that the instant action is baseless and filed for an improper purpose, the Court is being asked to reach the merits, or lack of merits, in the case.

Plaintiff contends this litigation conduct by the Defendants is a general appearance, and well beyond what is allowed by FRCP 12(h)(1), without constituting a waiver.

More properly, the Defendants have "forfeited" their lack of personal jurisdiction argument, by seeking affirmative relief that can only be granted by a court with fundamental jurisdiction over the cause, and the parties, after a consideration of the merits of the case.

The Court should rule that the Defendants have established the Court's jurisdiction over them, by their own litigation conduct, which was not properly focused.

> **F.    Plaintiff renews his request for jurisdictional discovery into Defendant Susan's unsupported claim that the Charles Schwab Institutional accounts were opened in Oregon, not in San Francisco, California, because the relevant documents and records are in her possession, or under her control**

As mentioned in subsection B, above, jurisdictional discovery could be beneficial in this case, focused upon the 3 assertions listed in subsection B, which have been made by Defendants Susan and James within their Rule 11 Motion for Sanctions and Pre-Filing Order, concerning matters where the documents supporting these assertions, if they exist, are

---

[1] 28 U.S.C. § 1651(a) states the following:

"The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

17

exclusively in their possession, or under their control.

If Defendant Susan cannot produce documents showing that: (1) Irene Rupert lawfully became the Successor Trustee of the Samuel Rupert Trust; (2) that the Charles Schwab accounts were opened in Oregon; and, (3) Plaintiff knew about these accounts during 2009 and during the brief litigation of *Rupert I,* then it will show that there was obstruction of justice in the proceedings before Judge Fogel, who was misled about crucial jurisdictional facts that would have been dispositive, in favor of personal jurisdiction, if the truth had been known, pursuant to the holdings from *Hanson v. Denckla,* 357 U.S. 235, 250-251 (1958).

In turn, if there was an obstruction of justice during *Rupert I,* by way of the "sham" defense presented to Judge Fogel, then that obstruction of justice, at the San Jose Division of the United States District Court for the Northern District of California is sufficient to create personal jurisdiction in this same federal court where the initial obstruction of justice took place, before Judge Fogel. (ECF 106; SAC; ¶ 112, pp. 87)

Jurisdictional discovery was previously requested in the case, and the Plaintiff renews his request for narrowly focused jurisdictional discovery, to force Defendant Susan to support her claims, or have them rejected by the Court.

> **G.    The Reporter's Transcript of the only hearing before Judge Fogel, in *Rupert I,* shows that Judge Fogel and Defendant Susan's prior lawyer, Defendant Zusman, both agreed that personal jurisdiction would lie if Defendant Downes' "cease and desist" type letter was combined with an Oregon judgment that the Defendants tried to use against Plaintiff in California; and that is the factual predicate alleged in the SAC, so personal jurisdiction is reasonable and proper**

The Defendants make much of Judge Fogel's comments, actions and rulings during the brief litigation that took place during *Rupert I,* which was the tort interference action Plaintiff brought against Defendants Downes and Susan, on June 22, 2009, under the Court's diversity

18

jurisdiction, in USDC NDCA Case No. 5:09-cv-02758 JF.

It was brought within 2 weeks of receiving a threatening letter from Defendant Downes (ECF 30, Ex. 1, pp. 9-14), on behalf of Defendant Susan, that made it clear Defendant Susan: (1) was not going to fully account for her administration of Samuel and Irene Rupert's separate Michigan Trusts, for the first 7 months after the death of Samuel Rupert; (2) was not going to share Samuel and Irene Rupert's financial records and estate plans with Plaintiff William; (3) was not going to produce the written credentials she claimed to possess, on October 13, 2008, when she fraudulently claimed to possess amended estate planning documents that put her in charge of both Michigan Trusts; and, (4) she was not going to relinquish control to Plaintiff William, as required under both Michigan Trust instruments.  The centerpiece of the stonewall scheme was the knowingly false claim that Irene Rupert "remains" the successor trustee of the Samuel Rupert Trust, when there has never been one scintilla of evidence to support this claim.

Unfortunately, the merits of *Rupert I* were not reached, and no discovery was permitted by the Court, before it conducted a hearing on January 8, 2010, on the FRCP 12(b)(2) Motion to Dismiss that was jointly brought by all the defendants in that case, and then took the matter under submission, pursuant to a stipulation by all the parties to participate in ADR efforts, while the motion was under submission.  Judge Fogel waited for 8 months, but the ADR efforts were not successful, after the Defendants reneged on their stipulation to participate in ADR efforts, in good faith, before actively litigating the case.

Instead, following the death of Irene Rupert on March 12, 2010, Defendants Susan and Whitman commenced litigation in Oregon on March 15, 2010, that was designed to create a windfall for Defendants Susan and James, and to cover-up and conceal Defendant Susan's fraud, breaches of trust, and "unclean hands", by procuring a declaration of Plaintiff William's

19

PLTF'S OPP. TO MOTION FOR RULE 11 SANCTIONS, AND PRE-FILING ORDER, BY DEFENDANTS
SUSAN BOND AND JAMES RUPERT   [5:12-CV-5292 LHK (HRL)]

"civil death", before he could obtain replacement legal representation after his initial attorneys were fraudulently induced to withdraw on the eve of trial, and before reasonable and necessary discovery could be conducted.  A Bum's Rush, Ambush Expedited Bench trial was orchestrated, and judgments were obtained through extrinsic fraud, that resulted in the enforcement of the *in terrorem* clause contained in the Oregon Trust instruments that Defendant Downes, Susan and James fraudulently induced the late Irene Rupert to execute, on June 9, 2009 and July 23, 2009 (months after Irene Rupert's Alzheimer Disease diagnosis was made, in Oregon).  (ECF 106; SAC; ¶¶ 84-96)

Consequently, Plaintiff William was at a severe disadvantage during *Rupert I,* on January 8, 2010, when Judge Fogel conducted the one and only hearing in *Rupert I,* because of Defendant Susan's failure to disclose information she had a fiduciary duty to disclose to Plaintiff William (because she had been the acting trustee, as shown by the defective accounting she sent on May 12, 2009. (ECF 58; Ex. 48, pp. 82-83).  This is exactly the species of extrinsic fraud that is recognized in California, but not in Oregon, under California's broader definition and interpretation of the seminal case of *United States v. Throckmorton*, 98 U.S. 61 (1878).  California's broader interpretation is well explained in the case of *Lazzarone v. Bank of America*, 181 Cal.App.3d 581, 596-597 (1986), wherein the following is stated:

> "A second species of extrinsic fraud has also been found where fiduciaries have concealed information they have a duty to disclose. (Citations.)  This variety of extrinsic fraud recognizes that, even if a potential objector is not kept away from the courthouse, the objector cannot be expected to object to matters not known because of concealment of information by a fiduciary."
> Lazzarone v. Bank of America,
> 181 Cal.App.3d 581, 596-597 (1986)

The record shows that Judge Fogel was misled about the crucial *Hanson v. Denckla,* 357 U.S. 235, 250-251 (1958) jurisdictional factors (identify of trustee, location of trustee, and

20

location of trust property), by all the attorneys appearing before him, at a time when Plaintiff also was being misled and denied information by Defendants Downes, Susan and Zusman.

Fortunately, the Reporter's Transcript of the January 8, 2010 hearing is before the Court (ECF 58; Ex. 41; pp. 12-37), and it shows that Judge Fogel and Defendant Susan's attorney, Mr. Zusman, had a revealing discussion of how the "effects test" should be applied to the facts that were conceded by the parties, as of the hearing on January 8, 2010. The record shows that after Ms. MacGregor finished her arguments on behalf of Defendant Downes, Judge Fogel then turned to Mr. Zusman, and the following discussion transpired, where the case of *Yahoo!, Inc. v. La Lique Contre Le Racisme,* 433 F.3d 1199 (2006), was discussed at length. Interestingly, the comments by Mr. Zusman show that he was fully aware Judge Fogel had been the trial court judge in the *Yahoo* case, whose ruling in favor of specific personal jurisdiction under the "effects" test was affirmed by the 9th Circuit, in an En Banc decision. The pertinent portions of this extremely significant colloquy are set forth below, wherein Mr. Zusman agreed that personal jurisdiction would exist, under the "effects test", if legal instrumentalities were to be obtained in Oregon, and used against Plaintiff William in California, to interfere with his ability to perform as the trustee of the Samuel Rupert Trust, in California.

> "THE COURT:      Okay, All right.  Thank you.
> Counsel, you want to add to that:
> MR. ZUSMAN:      I do, Your Honor, Thank You.  Distinguishing *Calder* would probably be helpful.  *Calder* is a case that involved a National Enquirer article directed at a person of  note in the State of California.  So it was a hundred percent about commenting on, speaking to and possibly even causing injury to a person in California – it's a one-to-one relationship between the acts of the editors and the writers of the article and the victim of their alleged slander or libel.
>          The situation here is all the acts relate to the administration of the estate in Oregon.  Irene Rupert is still alive.  And she is still  the trustee of the two trusts with all the rights, powers and authorities of a person in that position.  Everything she and her agents are doing relates to the proper administration of her trust.
>          And so communications with others relating to the proper administration of her trust are relating to the trust in Oregon.

THE COURT: Let me just play this out though.  I agree with you *Calder* is not the best analogy, but maybe *Yahoo* is a better one.

The fight in the *Yahoo* case is in France.  It's about compliance with France in the internet content.  But one of the things that happens is the French Court and the French plaintiffs come to the  -- they tell Yahoo and the U.S., you need to change the way your servers are configured.  And both the Court and the Ninth Circuit found that was enough to create jurisdiction.

So what I hear Mr. Rupert saying is, I have this 2004 document that makes me the trustee, and what these letters that are coming from my sister are telling me is to forget about that and we are doing something else and you need to sign these letters.

All right.  I mean, I'm trying to give his argument the most favorable framing that I can.  That seems to me to be closer than what  creates jurisdiction in the *Yahoo* case.

MR. ZUSMAN:        Reading the *Yahoo* test is helpful because we do have some of the same steps that a French entity is attempting to get *Yahoo* to eliminate the sale of Nazi artifacts on their website.

We have some of those same elements here.  We have, for  example, the element of cease and desist letters.  And if you look at evidence that Mr. Rupert provided attached to his declaration, what they are really essentially saying is you have an elderly mother, she is trying to administer the statement that she can.  She has her daughter and law firm helping here, please stop what you're doing.  Please stop the barrage of letters, please stop the harassing phone calls.  It's essentially the cease and desist component between the French and what we have here.

And what Your Honor found is stopping at the side of the cease and desist would not constitute the purposeful direction of activity into the State of California.

**What put it over the line was when the French entities sought to have *Yahoo* physically change what it was doing on its servers and change its behavior located in California and to do so by legal instrumentalities in the State of California.  And that further effort is what crossed the line.**

**Nothing here has taken us from step two to step three that was sufficient for the jurisdictional question to be answered favorably in the *Yahoo* Case, Your Honor.**

**THE COURT:        If the defendants in this case got a court order in Oregon that precluded Mr. Rupert from exercising any of the rights he claims under this 2004 trust agreement, that might be more analogous, but they haven't done that.**

**MR. ZUSMAN:        I would say yes with the full faith and credit argument where a California court would be obligated to honor an Oregon order.**

Hypothetically speaking, had it been a French Court making that Order and that was brought to Mr. Rupert and was sought here, then you would have your analogy.

THE COURT: Thank you, counsel."     (bold emphasis added)
(ECF 58; Ex. 41; Reporter's Transcript, 1/8/10; pp. 21:2-24:15)

Significantly, the factual predicate that Judge Fogel and Mr. Zusman agreed would be

sufficient to establish personal jurisdiction under the "effects test" is alleged in the SAC (ECF

PLTF'S OPP. TO MOTION FOR RULE 11 SANCTIONS, AND PRE-FILING ORDER, BY DEFENDANTS
SUSAN BOND AND JAMES RUPERT   [5:12-CV-5292 LHK (HRL)]

106; SAC; ¶¶ 84-96), so the motions to dismiss for lack of personal jurisdiction should all fail, pursuant to the *Yahoo* "effects test" that was discussed by Judge Fogel and Mr. Zusman on January 8, 2010, it is submitted.

> ### H.   The Plaintiff's RICO action alleges the Oregon judgments were obtained through extrinsic fraud that maliciously abused the legal process of Oregon, to cheat the Plaintiff out of his full and fair day in court, and the fraudulent schemes relied upon mail and wire fraud, among the predicate acts

The instant case is about the misappropriation of trust assets and then the malicious abuse of the legal process to rewrite history and turn a bold face lie into a judicial truth, by gaining judicial acceptance for false claim that the late Irene Rupert was the trustee of the Samuel Rupert Trust, so as to cover up and conceal the misconduct by the faithless fiduciary who was really the acting trustee after Samuel Rupert died, Defendant Susan Bond.

Samuel Rupert's estate plans clearly stated he wanted Plaintiff William to be in charge of his affairs.  Samuel Rupert left written instructions for Plaintiff William to follow, but. Defendant Susan intercepted those written instructions and she still has not turned them over, or shared a copy of them, with Plaintiff William.

The SAC alleges extrinsic fraud was utilized to obtain tainted judgments from the Clackamas County Circuit Court, in rigged proceedings, where he was forced to trial without advance notice, without the continuance he sought, without replacement legal counsel, and without reasonable and necessary discovery sufficient to prove the "undue influence" claim he raised in his responsive pleading.  (ECF 106; SAC; ¶¶ 84-86)

The SAC alleges the Plaintiff did not receive his full and fair day in court, in the Clackamas County Circuit Court, the Oregon Court of Appeals, or in the Oregon Supreme Court.  All courts in Oregon seem to regard Plaintiff as a dead person, who lacks the standing,

23

or capacity, to be heard, upon any subject (as suggested by Defendant Whitman, who successfully argued it was unnecessary to reach the merits – ECF 43; Ex. 18, pp. 29-30).

As such, the instant RICO action seeks to address the fraudulent schemes that were used to perpetrate the extrinsic fraud upon the Oregon Courts, which involved predicate acts of mail and wire fraud, that are not privileged activities.  Because no real contest took place in the Oregon Courts, the instant action is not a forbidden *de facto* appeal of the rulings by the Oregon Courts.  Ninth Circuit cases permit a federal plaintiff to challenge a state court judgment obtained through extrinsic fraud.  (See *Kougasian v.TMSL, Inc.,* 359 F.3d 1136, 1140-41 (9th Cir. 2004)[2]; *Maldonado v. Harris,* 370 F.3d 945, 950 (9th Cir. 2004); *Noel v. Hall,* 341 F.3d 1148, 1164 (9th Cir. 2003); and *Bell v. City of Boise,* 709 F.3d 890, 897 (9th Cir. 2013)).

### I.    It is the Defendants' Rule 11 Motion for Sanctions, Etc. that is baseless, and a waste of the Court's judicial resources, warranting *sua sponte* sanctions, payable to the Court

The Defendants' Rule 11 Motion for Sanctions and Pre-Filing Order is based almost entirely upon their attorney's subjective opinions, which are mixed in with his material misrepresentations of significant facts.  The motion repeats the "Big Lie" that is identified in the SAC (ECF 106; SAC; ¶ 7; p. 8:2-12), concerning the "sham" trusteeship of the late Irene Rupert, which has never had any evidentiary support, or a coherent theory.  This motion is another obstruction of justice predicate act, by seeking to influence a federal judge through

---

[2] The *Kougasian* Court explained this as follows:
"Extrinsic fraud on a court is, by definition, not an error by that court, it is, rather, a wrongful act committed by the party or parties who engaged in the fraud.  *Rooker-Feldman* therefore does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud." (*Id.* At 1141).

24

knowingly false statements of material jurisdictional facts, it is submitted.

Under these circumstances, the Court should seriously consider imposing sanctions upon the Defendants, and/or on their attorney, on a *sua sponte* basis, payable to the Court, for the time and energy necessary to process and rule upon the Defendants' Rule 11 Motion for Sanctions and Pre-Filing Order, which is both frivolous and fraudulent.  The filing of this motion represents an unreasonable interference with the orderly and proper administration of justice, and it should not be tolerated or condoned, from a trusted Officer of the Court.

## IV.   CONCLUSION

The Defendants' Motions should be denied, and the Court should rule that the Defendants have forfeited their lack of personal jurisdiction arguments, by seeking affirmative relief under 28 U.S.C. § 1651(a) and asking the Court to make rulings that go to the merits.

Based upon the knowingly false statements of material facts that infect the Defendant's meritless motion, sanctions should be imposed upon the Defendants, payable to the Court, in an amount to be determined by the Court, following notice and an opportunity to be heard.

Additionally, Defendants should be ordered to reimburse Plaintiff for his reasonable expenses and costs in preparing and filing his Memorandum of Points and Authorities in Opposition, and his Declaration in Opposition, to Defendants baseless motion.  As set forth in the Plaintiff's supporting Declaration, these expenses amount to $20.00 (for paper, printing, and travel expenses, including gasoline and parking fees, necessary to transmit the required Chambers Copy of these opposition papers, to the San Jose Branch).

Dated: April 14, 2014

　　　　　　　　　　　　　　　　　/s/ William Rupert
　　　　　　　　　　　　　　　　　　　William Rupert
　　　　　　　　　　　　　　　　　　　　Plaintiff　　　Pro Se

25