1

2

3           **UNITED STATES DISTRICT COURT**

4          **NORTHERN DISTRICT OF CALIFORNIA**

5              **SAN JOSE DIVISION**

6

7    WILLIAM TRICK RUPERT,                Case No.  12-cv-05292-BLF

           Plaintiff,
8
                                          **ORDER GRANTING DEFENDANTS'**
9        v.                               **MOTIONS TO DISMISS; DENYING**
                                          **DEFENDANTS GILE R. DOWNES AND**
10   SUSAN BOND, et al.,                  **SCHULTE, ANDERSON, DOWNES,**
                                          **ARONSON & BITTNER, P.C.'S**
           Defendants.                    **MOTION FOR SANCTIONS**
11

12

13          This case involves a family dispute over the Rupert siblings' inheritance rights under their

14   parents' wills and trusts. Plaintiff William Trick Rupert brings this Second Amended Compliant

15   ("SAC") against a number of Defendants, including two of his siblings, several attorneys, and

16   three law firms, alleging claims under the federal Racketeer Influenced and Corrupt Organizations

17   ("RICO") Act, the Oregon RICO Act ("ORICO"), and common law claims for conversion and

18   intentional interference with expected inheritance, arising out of a family dispute regarding the

19   disbursement of his parents' trust assets. The Defendants[1] can be divided into four groups: (1) the

20   "Sibling Defendants," including Plaintiff's sister, Susan Bond, and brother, James Rupert; (2) the

21   "Downes Defendants," including attorney Gile Downes and his law firm, Schulte, Anderson,

22   Downes, Aronson & Bittner, P.C.; (3) the "Zusman Defendants," including attorney Edward

23   Zusman and his law firm, Markun Zusman & Compton, LLC; and (4) the "Cartwright

24   Defendants," including attorneys Matthew Whitman and Michelle Johansson, as well as their law

25   _____

26   [1] In addition to the named Defendants, Plaintiff includes a lengthy list of "non-party co-
     conspirators, or aiders and abetters (sic)," which includes a number of attorneys, two other law
27   firms, Plaintiff's mother, two Oregon state court judges, and employees of several financial
     institutions. (SAC, ECF 106 ¶¶ 15a-15m)
28

United States District Court
Northern District of California

1    firm, Cartwright Whitman Baer P.C.

2        Plaintiff categorizes his RICO allegations against the Defendants into five stages, termed

3    "RICO Stage 1" through "RICO Stage 5," and alleges that the four groups of Defendants, through

4    repetition of a statement that Plaintiff terms "the Big Lie" and various other acts, conspired to

5    deprive him of his inheritance. Before the Court are Motions to Dismiss from each of the four

6    Defendant groups. The Zusman Defendants move to dismiss for failure to state a claim upon

7    which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 114) The

8    Downes Defendants, Sibling Defendants, and Cartwright Defendants each move to dismiss for

9    lack of personal jurisdiction, pursuant to Rule 12(b)(2). (ECF 107, 111, 113) The Downes

10   Defendants separately move for Sanctions under Rule 11. (ECF 130)

11       Having considered the briefing and oral argument of the parties, as well as the relevant

12   law, the Court GRANTS Defendants' Motions to Dismiss, WITH PREJUDICE. The Court,

13   however, DENIES the Downes Defendants' Motion for Sanctions.

14   **I.     BACKGROUND**

15       **A.     Procedural History**

16       Plaintiff filed his initial Complaint on October 12, 2012. (ECF 1)[2] Thereafter, Plaintiff

17   filed a First Amended Complaint ("FAC") on October 26, 2012. The four Defendant groups each

18   moved to dismiss the FAC on the same grounds as they do here: the Zusman Defendants for

19   failure to state a claim upon which relief can be granted (ECF 50), and the Downes, Sibling, and

20   Cartwright Defendants for lack of personal jurisdiction. (ECF 18, 33, 33) The Downes Defendants

21   also moved for sanctions. (ECF 65) After briefing, Judge Lucy H. Koh granted the Motions to

22   Dismiss without prejudice (ECF 100), and denied the Motion for Sanctions. (ECF 101)

23       Plaintiff filed the operative pleading, a Corrected Second Amended Complaint ("SAC"),

24   on October 7, 2013. (ECF 106) The four groups of Defendants again moved to dismiss: the

25   Downes Defendants (ECF 107), Sibling Defendants (ECF 111), and Cartwright Defendants (ECF

26

27   ───────────────
     [2] Plaintiff is pursuing this action pro se. This Court construes a pro se plaintiff's complaint so as to
     give the plaintiff the benefit of any doubt. *See, e.g.*, *Morrison v. Hall*, 261 F.3d 896, 899 n.2 (9th

28   Cir. 2001) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972), for the proposition that pro se
     pleadings are "subject to a lesser standard than pleadings drafted by lawyers").

United States District Court
Northern District of California

United States District Court
Northern District of California

113) claiming lack of personal jurisdiction, and the Zusman Defendants arguing failure to state a claim. (ECF 114) The Downes and Sibling Defendants, as well as Plaintiff, filed Requests for Judicial Notice. (ECF 109, 112, 118) Plaintiff opposed each Motion, and all Defendants timely filed Replies.

After the Motions were fully briefed, on April 17, 2014, this case was reassigned to the undersigned, who heard oral argument on the Motions on July 31, 2014. (*See* ECF 159)

### B.  Factual Allegations in the SAC

Having been granted leave to amend, Plaintiff has added nearly forty pages of new allegations to his SAC. (ECF 106) The Court has engaged in a painstaking review of the now-110 page pleading,[3] in order to ascertain whether Plaintiff has pled facts sufficient to overcome the jurisdictional and factual deficiencies cited in Judge Koh's Order dismissing the FAC.

The Court describes Plaintiff's allegations below, with particular emphasis on those allegations newly-added to the SAC. The factual allegations are presumed to be true for purposes of deciding the Motions to Dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

### 1.  Creation of the Rupert Trusts and the Dispute over Trust Management

Samuel Rupert, Plaintiff's father, created a revocable living trust in Michigan in 1995 ("the Samuel Rupert Trust"), which made Irene Rupert, his wife, the "life income beneficiary" and their three children, Susan, William, and James, remainder beneficiaries. (SAC ¶ 35) Irene was the first nominated successor trustee, and the three siblings were named, "jointly, as co-alternate successor trustees." (*Id.* at ¶ 36) That same year, Irene Rupert also created a trust ("the Irene Rupert Trust"). (*Id.*) In 2004, Plaintiff alleges that both trusts were amended to name Plaintiff as the "sole alternate successor trustee, with Susan [Bond] as the second choice, and James [Rupert] the third [choice]." (*Id.* at ¶ 37) In 2006, Samuel and Irene Rupert moved to Oregon, and in October 2008, Samuel Rupert died. (*Id.* at ¶¶ 41, 42)

---

[3] Plaintiff includes, along with the SAC, two appendices that outline every RICO and ORICO predicate act he claims occurred during the pendency of the alleged conspiracy, and the party or parties Plaintiff claims participated in the act: Appendix A, the "RICO – Predicate Acts Chart" (ECF 106 at 114-127), and Appendix B, the "ORICO – Predicate Acts Chart." (ECF 106 at 128-134)

After Samuel's death, a dispute arose between Plaintiff and Susan regarding the management of the trust (SAC ¶¶ 42-48), with Susan claiming that she had documents "subsequent to the 2004 amended estate plans" which placed her in charge of the trusts. (*Id.* at ¶ 42) Among other acts, Plaintiff alleges that Susan "used fraud and deceit to trick William into drafting a document entitled Amendment to Trust Agreement" (*id.* at ¶ 45), and caused four brokerage accounts containing trust assets "to be transferred from Michigan to California." (*Id.* at ¶ 47)

Plaintiff eventually informed his sister of her duty to "submit periodic accountings," and Susan provided such an accounting on May 12, 2009. (SAC ¶¶ 48-49) On May 17, 2009, Plaintiff objected in writing to the accounting as "inadequate and insufficient" (*id.* at ¶ 50), and demanded that Susan "relinquish control [of the trust] to William, fully account for her actions, and make whatever restitution might be necessary." (*Id.*) Susan refused, and retained an attorney, Mr. Downes. (*Id.* at ¶¶ 51-53)

### 2.    *"The Big Lie"*

Plaintiff alleges that Susan and Downes conspired to exploit Irene Rupert "through a scheme to interfere with William's trusteeships and expected inheritance" (*id.* at ¶ 55), and that Downes, through this scheme, "came up with the 'Big Lie' that has been so damaging to Plaintiff's trusteeship interests." (*Id.* at ¶ 7) "The Big Lie," according to Plaintiff, is the statement that Irene Rupert, and not Plaintiff, was the trustee of the Samuel Rupert Trust. (*See id.* at ¶ 7; *see also id.* at ¶ 56) Plaintiff alleges that Downes stated "the Big Lie" in a June 10, 2009 letter sent to Plaintiff ("June 10 Letter," *id.* at ¶¶ 58, 59a), and that "the Big Lie" was repeatedly invoked by Downes and others during Plaintiff's various lawsuits regarding this dispute over the Samuel Rupert Trust. (*See, e.g., id.* at ¶¶ 73, 74, 83, 108, 110) Plaintiff alleges that "the Big Lie" is untrue because Irene Rupert "rejected her nomination to be the successor trustee of the Samuel Rupert Trust." (*Id.* at ¶ 60a; *see also id.* at ¶ 60c ("[T]here has never been one scintilla of evidence to show a lawful acceptance [of her nomination].") )

Plaintiff describes this June 10 Letter as "threatening and fraudulent." (SAC ¶ 58) He states that the misrepresentations contained in the letter were relied upon by his mother, causing

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Irene Rupert to retain Mr. Downes to prepare "drastically different Oregon estate plans" that

2  disinherited William from "the combined assets of the late Samuel and Irene Rupert." (*Id.* at ¶ 61)

3  ### 3.   *Plaintiff's First Lawsuit in this District (*Rupert I*)*

4  Following his dispute with Susan over the management of the family's trust assets, and the

5  exchange of letters between Plaintiff and Susan's attorneys, Plaintiff filed a tort suit in this

6  District, *Rupert I*, naming his sister, Mr. Downes, and the Schulte Anderson Downes law firm as

7  defendants. (*Id.* ¶ 64) This case was assigned to District Judge Jeremy Fogel. Plaintiff thereafter

8  joined Irene Rupert as a Defendant. (*Id.* at ¶¶ 64, 69) Plaintiff alleges that Mr. Downes and Susan,

9  after learning of the suit, schemed to "further deceive the late Irene Rupert, by telling her

10  William's federal lawsuit was unfounded, baseless and outrageous." (*Id.* at ¶ 66) Plaintiff further

11  argues that Susan paid Mr. Downes a "hidden bribe" of nearly $10,000 in order to make material

12  misrepresentations of fact to Irene Rupert. (*Id.* at ¶ 67)

13  Following the filing of an FAC, the *Rupert I* Defendants filed a joint motion to dismiss for

14  lack of personal jurisdiction. Ms. Bond and Ms. Rupert were represented by Mr. Zusman, among

15  others, and Mr. Downes and his firm were represented by two firms who are alleged to be non-

16  party co-conspirators. (*Id.* at ¶ 71) Judge Fogel granted this Motion.[4]  Plaintiff alleges that

17  "knowingly false declarations were procured and filed with the Court" (*id.*), including the

18  declarations of Irene Rupert, Susan Bond, and Mr. Downes, which made a number of statements

19  regarding the identity of the trustee of both family trusts, the location of the trust assets, and the

20  trust administration activity, which Plaintiff argues were false and amounted to "extrinsic fraud

21  upon the court." (*Id.* at ¶ 83) Plaintiff argues that the identity and location of the trustee and the

22  location of trust assets are "material jurisdictional facts" (*id.* at ¶ 72), and that but for these

23  misrepresentations regarding these jurisdictional facts, Judge Fogel would never have granted the

24  motion to dismiss. (*See* SAC ¶ 112(c); *see also* Opp. to Cartwright Mot. to Dismiss at 22)) In

25  responding to the instant Motions to Dismiss, Plaintiff claims that these activities amount to

26  

27  ─────────────
[4] Judge Fogel's short, 4-page order granting the motions to dismiss, which Plaintiff himself

28  describes as "a well-reasoned ruling" (SAC ¶ 81), is cited as *Rupert v. Bond (Rupert I)*, 2010 WL 3618662 (N.D. Cal. Sept. 9, 2010).

United States District Court
Northern District of California

1   purposeful "targeting" of Plaintiff in California. (*See, e.g.*, Opp. to Sibling Mot. to Dismiss at 23)

2       **4.  The Oregon State Court Proceedings**

3     Irene Rupert died on March 12, 2010. (SAC ¶ 77) Three days later, Susan Bond

4   commenced two proceedings in Oregon state court, Case No. CV10030497 (*In the Matter of the*

5   *Irene E. Rupert Trust*) and Case No. CV10030498 (*In the Matter of the Samuel J. Rupert Trust*),

6   seeking declaratory judgments. (*Id.* at ¶ 78) Plaintiff contends that Susan Bond committed perjury

7   in those proceedings by falsely verifying that the administration of the Samuel J. Rupert Trust was

8   located in Oregon, and not California. (*Id.*) Plaintiff states that he "formally accepted his

9   appointment to be successor trustee," after Irene Rupert allegedly declined her appointment, and at

10  that time moved the principal place of the administration of the trust to California. (*Id.*)

11    Plaintiff alleges that Defendants schemed to use "extrinsic and intrinsic fraud" to obtain

12  declaratory judgments from the Oregon courts (*id.* at ¶ 79), and that these fraudulent judgments

13  were successfully obtained: in one case because Plaintiff was unable to present his case because

14  the Defendants engaged in a wrongful *ex parte* communication with the judge, which resulted in

15  what he terms a "Bum's Rush Ambush Expedited Bench Trial" (*id.* at ¶ 87), and in another case

16  because the court believed false statements made in a declaration by Susan Bond that Irene Rupert

17  was the successor trustee of the Samuel Rupert Trust. (*Id.* at ¶ 89) Plaintiff further alleges that

18  Defendant Whitman used extrinsic fraud to trick an Oregon state court judge, Elizabeth Welch,

19  into "inadvertently" signing a General Judgment that found in favor of Ms. Bond. (*Id.* at ¶ 90) In

20  the *Irene Rupert Trust* case, the court found Plaintiff liable for attorney's fees. (*Id.* at ¶ 95)

21    After the completion of these two proceedings, Plaintiff alleges that Defendants Susan

22  Bond and James Rupert succeeded in obtaining yet a third "corrupt" judgment in Oregon courts

23  through the use of extrinsic fraud, in Case No. CV11050251, an action commenced by Ms. Bond

24  to remove Plaintiff from "his capacity as Successor Trustee" (*Id.* at ¶ 92; *see also id.* at ¶ 94

25  (where Plaintiff contends that James Rupert "fully supported all of the Oregon litigation

26  activities"))

27      **5.  Alleged Contacts with California After the Oregon Proceedings**

28    Following the Oregon proceedings, Plaintiff alleges that Susan "collaborated with

United States District Court
Northern District of California

Defendants Whitman and Johansson to engage in wrongful enforcement of judgment collection activities" by, among other things, mailing Plaintiff a document which demanded he pay the attorneys' fees judgment against him, and failing to domesticate the judgment pursuant to the California Sister-State Money Judgment Act. (*See id.* at ¶¶ 95, 99) Plaintiff also alleges that Defendants Susan, Johansson, Whitman, and Cartwright schemed to misuse another Oregon writ of garnishment, dated October 19, 2011, which targeted assets Plaintiff held in a T.D. Ameritrade account opened in Soquel, California (*id.* at ¶ 98), and resulted in Plaintiff losing access to over $5,000. (*Id.*) Additionally, Plaintiff contends that these Defendants caused wrongful levies to be placed upon his California checking account, resulting in the transfer of about $7,000 out of that account, and a hold being placed on his account that has "resulted in Plaintiff William being unable to access Social Security payments" directly deposited into that account. (*Id.* at ¶ 101) Plaintiff claims that these actions amounted to Defendants Susan, Johansson, Whitman, and Cartwright "schem[ing] to abuse the process of the State of Oregon, and violate the laws of the State of California" (*id.* at ¶ 100), thus showing that the Defendants targeted their activities at California. (*See, e.g.*, Opp. to Sibling Mot. to Dismiss at 23)

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) concerns what facts a plaintiff must plead on the face of his claim. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Any complaint that does not meet this requirement can be dismissed pursuant to Rule 12(b)(6). In interpreting Rule 8(a)'s "short and plain statement" requirement, the Supreme Court has held that a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which requires that "the plaintiff plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not ask a plaintiff to plead facts that suggest he will probably prevail, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted). The Court must "accept factual allegations in the

complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519, F.3d 1025, 1031 (9th Cir. 2008). The Court is not, however, forced to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1127 (N.D. Cal. 2014) (citing *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011)).

The Court, however, should liberally construe the pleadings of pro se plaintiffs. *See, e.g.*, *Balistreri v. Pacifica Police Dep't*, 901 F.3d 696 (9th Cir. 1988). Pro se plaintiffs "must follow the same rules of procedure that govern other litigants." *Brown v. Rumsfeld*, 211 F.R.D. 601, 605 (N.D. Cal. 2002).

## B.    Rule 12(b)(2)

Plaintiff bears the burden of establishing that the Court has personal jurisdiction over Defendants. *See, e.g.*, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004). If a defendant moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, a plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). When, as here, the motion is based on written materials, rather than an evidentiary hearing, Plaintiff "need only make a prima facie showing of jurisdictional facts." *Schwarzenegger*, 374 F.3d 797, 800. "Uncontroverted allegations in the complaint must be taken as true," *id.* at 800, though Plaintiff cannot "simply rest on the bare allegations of its complaint." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Conflicts between facts contained within the declarations or affidavits submitted by the parties are resolved in the plaintiff's favor for purposes of plaintiff's prima facie case. *See, e.g.*, *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 861-62 (9th Cir. 2003).

Federal courts, in the absence of a specific statutory provision conferring jurisdiction, apply the personal jurisdiction laws of the state in which they sit. California's long-arm jurisdictional statute is "coextensive with federal due process requirements." *Panavision Int'l, LP v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). To exercise jurisdiction over a non-resident defendant, the defendant must have "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."

United States District Court
Northern District of California

8

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Jurisdiction can be either general or specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).

### C.     Leave to Amend

Pursuant to Federal Rule of Civil Procedure 15(a), a court should grant leave to amend a complaint "when justice so requires," because "the purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). The Court may deny leave to amend, however, for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, *repeated failure to cure deficiencies by amendments previously allowed*, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] *futility of amendment*." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis added).

### D.     Judicial Notice

There are four Requests for Judicial Notice before the Court with regard to the instant motions. The Downes Defendants (ECF 109), the Sibling Defendants (ECF 112), and Plaintiff (ECF 118) each submit Requests for Judicial Notice with regard to the Motions to Dismiss. The Downes Defendants further submit a Request for Judicial Notice with regard to their Motion for Sanctions. (ECF 132) The Court considers each in turn.

In general, a court should not look beyond the four corners of a complaint when ruling on a motion to dismiss. *See, e.g.*, *Swartz v. KPMG, LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Pursuant to Federal Rule of Evidence 201, however, the Court is permitted to take judicial notice of adjudicative facts "not subject to reasonable dispute," and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Mack v. S. Bay Beer Distribs.*, 798 F.3d 1279, 1282 (9th Cir. 1986) (permitting a court to take judicial notice of "matters of public record").

The Downes Defendants request the Court take judicial notice of thirteen documents, including pleadings and declarations publicly filed with Oregon and California courts (ECF 109 Exhs. 1, 6, 8, 11, 12, and 13), orders and judgments issued by said courts (*id.* Exhs. 2, 4, 5, 7, 9,

United States District Court
Northern District of California

and 10), and an excerpt from a transcript of proceedings in *In the Matter of Irene E. Rupert Trust* (*id.* Exh. 3). (*See* ECF 109 at 2-3) A court may take judicial notice of documents filed in judicial or administrative proceedings, *see United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992), and documents that are public record. *See Mack*, 798 F.2d 1279, 1282. As such the Downes Defendants' Request for Judicial Notice is GRANTED.

The Sibling Defendants ask the Court to take judicial notice of two documents, the FAC filed in *Rupert I* and Judge Fogel's Order granting the Motion to Dismiss in *Rupert I*. (ECF 112). These documents are both matters of public record. As such, the Court GRANTS the Sibling Defendants Request for Judicial Notice. *See Mack*, 798 F.2d 1279, 1282.

Plaintiff asks the Court take judicial notice of five documents: (1) an email purportedly sent from James Rupert to Plaintiff on August 31, 2010; (2) a copy of the General Judgment issued in *In the Matter of the Irene E. Rupert Trust*; (3) a copy of the Declaration of James Rupert, filed in *In the Matter of the Irene E. Rupert Trust*; (4) an order granting reconsideration in the Oregon Court of Appeal, filed on March 7, 2013, regarding *In the Matter of the Irene E. Rupert Trust*; and (5) an order granting reconsideration in the Oregon Court of Appeal, also filed on March 7, 2013, regarding two other cases, including *In the Matter of the Samuel J. Rupert Trust*.

The Court GRANTS Plaintiff's request regarding Exhibits 2-5 because they are matters of public record. *See Mack*, 798 F.2d 1279, 1282. Plaintiff contends that the Court should judicially notice Exhibit 1, the James Rupert email, because the document is referenced in the SAC and the Defendants do not call into question its authenticity. Plaintiff is correct that the Sibling Defendants do not object to this Request for Judicial Notice. In this Circuit, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Plaintiff does reference the James Rupert email in his SAC and its Appendix (*see* SAC ¶ 94 n.30 (discussing an email sent from James to Plaintiff, though not stating the date of that email); *see also* SAC App'x A at 12) Therefore, Plaintiff's request that the Court notice Exhibit 1 falls within the ambit of the rule articulated in

United States District Court
Northern District of California

10

*Branch*, and the Court GRANTS Plaintiff's Request for Judicial Notice in its entirety.

Finally, the Downes Defendants seek judicial notice of sixteen documents with regard to their Motion for Sanctions. (*See* ECF 132) Several of these requests overlap with their Request for Judicial Notice filed with their Motion to Dismiss. The documents the Downes Defendants seek judicial notice for in this context include: pleadings and papers filed with courts in Oregon and California (*id*. Exhs. 1, 6, 8, 11, 12, 13, 15, and 16); orders and judgments issued by courts in Oregon and California (*id*. Exhs. 2, 4, 5, 7, 9, and 10); a copy of a transcript from proceedings in *In the Matter of the Irene E. Rupert Trust* (*id*. Exh. 3); and a copy of a page of the California Vexatious Litigant List, as it existed on November 1, 2012 (*id*. Exh. 14). These documents are either documents in the public record (*id*. Exhs. 1-13, 15, 16), *see Mack*, 798 F.2d 1279, 1282, or is information contained on a government website (*id*. Exh. 14). *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (judicially noticing information contained on a government website when neither party disputes either the website's authenticity or the accuracy of the information displayed therein). The Court GRANTS the Downes Defendants' Request for Judicial Notice with regard to the Motion for Sanctions.

The Court thus GRANTS each of the four Requests for Judicial Notice, and will consider these documents where applicable and relevant.

## III.   DISCUSSION

The Court is presented with four Motions to Dismiss and a Motion for Sanctions. The Court will first consider the Zusman Defendants' Motion to Dismiss for failure to state a claim. Then, the Court will consider the three Motions to Dismiss for lack of personal jurisdiction. Finally, the Court will consider the Downes Defendants' Motion for Sanctions.

### A.   The Zusman Defendants' Motion to Dismiss

The Zusman Defendants move this Court to dismiss Plaintiff's claims against them under two theories: first, that Plaintiff's federal RICO claims are barred by the *Noerr-Pennington* doctrine, in that Plaintiff's RICO claims are premised entirely on the Zusman Defendants' legal representation of Susan Bond and Irene Rupert in *Rupert I*, which constitutes protected petitioning activity; and second, that Plaintiff's other federal RICO claim, which does not involve the *Rupert I*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    litigation, fails to allege fraudulent conduct with the requisite specificity, as required under the

2    heightened pleading requirements of Rule 9(b). Plaintiff, in opposition, contends that the "sham

3    litigation" exception to the *Noerr-Pennington* doctrine precludes the Zusman Defendants from

4    invoking the doctrine's protection, and that he has pled his RICO claims with the necessary

5    specificity. The Court ultimately agrees with the Zusman Defendants, and GRANTS their Motion

6    to Dismiss.

7            Before engaging in the legal analysis, the Court first outlines the alleged wrongful

8    activities that Plaintiff pleads against the Zusman Defendants.[5]  In his SAC, Plaintiff alleges that

9    the Zusman Defendants participated in the following actions: (1) filing the Joint Motion to

10   Dismiss for lack of personal jurisdiction before Judge Fogel in *Rupert I* (*see, e.g.*, SAC ¶¶ 71, 81,

11   108, 112); (2) obtaining the declarations of Irene Rupert and Susan Bond, which stated that Irene

12   Rupert was the trustee of the Samuel Rupert Trust and that the trust assets of the Samuel Rupert

13   Trust were located in Oregon, and filing said declarations with the court in *Rupert I* (*see, e.g.*,

14   SAC ¶¶ 72, 83, 108, 112); (3) making material misrepresentations of fact before Judge Fogel at the

15   hearing on the Joint Motion to Dismiss in *Rupert I* (*see, e.g.*, SAC ¶ 74); and (4) "schem[ing]"

16   alongside Defendants Susan Bond, Gile Downes, and Matthew Whitman, "to wrongfully use . . .

17   extrinsic and intrinsic fraud to obtain corrupt Oregon Trust Code declaratory judgments"

18   concerning the Samuel Rupert and Irene Rupert trusts. (SAC ¶ 79)[6]

19           With this factual backdrop, the Court considers the Zusman Defendants' arguments in turn.

20       *1.    The **Noerr-Pennington** Doctrine Bars All of Plaintiff's Claims Arising*

21           *From Activities Undertaken by the Zusman Defendants in **Rupert I***

22           The Zusman Defendants argue that all of their actions as counsel in *Rupert I* are protected

23

24   [5] These allegations include any activities ascribed to Mr. Zusman himself, or the Markun Zusman
     law firm more generally.

25
26   [6] Plaintiff describes the Zusman Defendants' alleged participation in predicate acts on pages 6 and
     7 of Appendix A (predicate acts 23-25 and 32), and page 4 of Appendix B (predicate acts 16-18).
     However, the allegations in the two appendices do not include every allegation Plaintiff alleges in

27   the SAC – for example, it does not include the alleged scheme to obtain Oregon declaratory
     judgments outlined in paragraph 79 of the SAC – and thus the Court engaged in a reading of the
     entire SAC in order to determine the fullest extent of Plaintiff's claims against the Zusman

28   Defendants and the three other Defendant groups.

petitioning activities under the *Noerr-Pennington* doctrine. (*See, e.g.*, Zusman Mot. to Dismiss, ECF 114 at 4) *Noerr-Pennington* stands for the proposition that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (citing both *Eastern R.R. Presidents' Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965)). This doctrine arose in the context of antitrust law, *see, e.g.*, *Noerr*, 365 U.S. 127, but this Circuit has applied its protections to RICO actions. *See, e.g.*, *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643-48 (9th Cir. 2009) (applying *Noerr-Pennington* in an action brought against attorneys and law firms under RICO); *see also Winters v. Jordan*, 2010 WL 2836834, at *8 (E.D. Cal. July 20, 2010) ("The *Noerr-Pennington* doctrine applies to petitioning activity that gives rise to . . . a claim brought pursuant to the RICO statute.").  Such protected petitioning activity includes representing a party in a court proceeding – either in bringing suit or defending against a suit brought by another party – and filing papers with a court. *See, e.g.*, *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) (defining petitioning activity as any "communication to the court," and finding that *Noerr-Pennington* applies to defensive pleadings, "because asking a court to deny one's opponents' petition is also a form of petition"). "Conduct incidental to a petition is protected by *Noerr-Pennington* if the petition itself is protected." *Id.* (citing *Thoefel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004)).

*Noerr-Pennington's* protections are not absolute, however, and there exists a "sham litigation" exception to the doctrine. *See, e.g.*, *Freeman*, 410 F.3d 1180, 1183-84 (holding that *Noerr-Pennington* immunity "is not so broad as to cover all litigation: 'Sham' petitions don't fall within the protection of the doctrine"). Plaintiff contends that the Zusman Defendants' activities in *Rupert I* constituted "sham litigation." (*See, e.g.*, Opp. to Zusman Mot. to Dismiss at 9-10)[7] The

---

[7] Plaintiff further asserts that the Court cannot determine whether or not the sham litigation exception applies in the context of a Rule 12(b)(6) motion to dismiss, contending that the Ninth Circuit has held that such a determination cannot be made at the pleadings stage. (*See* Opp. to Zusman Mot. to Dismiss at 10-11) Plaintiff cites for this proposition *Hydranautics v. FilmTec Corp.*, 70 F.3d 533 (9th Cir. 1995). In *Hydranautics*, however, the circuit court, recognizing that "the district court did not reach th[e] issue" of *Noerr-Pennington* immunity, *id.* at 538, declined to

United States District Court
Northern District of California

sham litigation exception has three formulations:

> First, if the alleged anticompetitive behavior consists of bringing a single sham lawsuit (or a small number of such suits), the antitrust plaintiff must demonstrate that the lawsuit was (1) objectively baseless, and (2) a concealed attempt to interfere with the plaintiff's business relationships.
>
> Second, if the alleged anticompetitive behavior is the filing of a series of lawsuits, "the question is not whether any one of them has merit-some may turn out to, just as a matter of chance-but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival."
>
> Finally, in the context of a judicial proceeding, if the alleged anticompetitive behavior consists of making intentional misrepresentations to the court, litigation can be deemed a sham if "a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy."

*Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998) (internal citations omitted).

Judge Koh's Dismissal Order found that none of the three formulations of the sham litigation exception applied in this case. (Dismissal Order, ECF 100 at 13-15) This Court finds that Plaintiff has not stated any additional facts in the SAC that would merit a finding that the representation mounted by Defendant in *Rupert I* was a sham. As to the first formulation, the Zusman Defendants succeeded in obtaining a dismissal in *Rupert I*. As such, their actions cannot be viewed as "objectively baseless." *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 n.5 (1993) ("A winning lawsuit is *by definition a reasonable effort* at petitioning for redress and therefore not a sham.") (emphasis added). The second formulation is inapplicable to this case, as it applies only to instances when a series of lawsuits or petitions are brought "for the purpose of injuring a market rival." *Kottle*, 146 F.3d 1056, 1060 (citing *USS-POSCO Indus. V. Contra Costa Cnty. Bldg. & Constr. Trades Council*, 31 F.3d 800, 810-11 (9th Cir. 1994)). As Judge Koh's Dismissal Order clearly states, "Plaintiff's interest in his inheritance [] has no relationship to market competition or business[,] [r]ather, it is a personal

---

affirm on that ground. The Ninth Circuit has, contrary to Plaintiff's argument, upheld dismissals under *Noerr-Pennington* immunity in a number of cases more recent than *Hydranautics*. *See, e.g.*, *Freeman*, 410 F.3d 1180 ("*Noerr-Pennington* immunity is a sufficient ground to dismiss the complaint as to all defendants.").

United States District Court
Northern District of California

1    financial relationship." (ECF 100 at 14)

2        Plaintiff contends that the third formulation of the sham exception should apply in this

3    case, because the Zusman Defendants in *Rupert I* "concealed and misrepresented the true identity

4    of the trustee of the Samuel Rupert Trust, the true location of this successor trustee, and the true

5    location of the trust assets which were in dispute." (Opp. to Zusman Mot. to Dismiss at 11)

6    Plaintiff argues that these "significant jurisdictional facts" were relied on by Judge Fogel in

7    granting the Motion to Dismiss in *Rupert I*, and that these misstatements thus constituted a fraud

8    upon the court that renders the Zusman Defendants' representation a sham. (*Id.* at 12, 13) Judge

9    Koh's Dismissal Order found that Plaintiff had not made an adequate showing with regard to any

10   of these alleged misrepresentations. (Dismissal Order at 14-15) This Court finds that Plaintiff still

11   fails to make such a showing, for the reasons set forth below.

12       First, Plaintiff fails to show how Judge Fogel in any way relied on the alleged

13   misrepresentations Plaintiff outlines when Judge Fogel decided *Rupert I*. Plaintiff insists,

14   repeatedly, that "Judge Fogel was deliberately misled" (*see, e.g.*, SAC ¶ 27), and that these

15   misrepresentations "caused Judge Fogel to grant [the] Motion to Dismiss, which most likely

16   would have been denied, if Judge Fogel had realized that he was being misled." (*Id.*)

17       A review of *Rupert I* finds absolutely no support for this allegation. In *Rupert I*, the Court,

18   applying the familiar three-prong test to determine specific jurisdiction, found that:

19           Defendants did communicate with William, who resides in
20           California. However, the communications concerned the estate
             planning decisions of Irene, an Oregon resident. Susan's alleged
21           mistreatment of Irene and alleged mismanagement of trust funds
             occurred in Oregon. Downes and the members of his law firm are
22           Oregon attorneys; their communications with William related solely
             to their representation of Irene under Oregon law. None of
23           Defendants' alleged conduct has any nexus with California other
             than the fact that William happens to reside in California. Under
24           these circumstances, the Court concludes that the "effects" test is not
             satisfied, and that it would be unreasonable for it to exercise
25           personal jurisdiction over Defendants.

26   *Rupert v. Bond (Rupert I)*, 2010 WL 3618662, at *4 (N.D. Cal. Sept. 9, 2010).

27       *Rupert I* makes no mention of Irene Rupert as the alleged successor trustee, but rather of

28   Susan Bond "misle[ading] William as to the scope of [Susan's] authority" to manage Irene

United States District Court
Northern District of California

Rupert's financial affairs. *Id.* at \*2. The decision further does not rely on the location of the trustee or any trust assets, contrary to Plaintiff's assertions. Even if it had, Plaintiff does not make a showing that Defendants misled the *Rupert I* court regarding the location of these assets – he insists that the brokerage accounts holding some of the assets of the Samuel Rupert Trust were located in California because they were held in Charles Schwab accounts, and Charles Schwab is headquartered in San Francisco. (SAC ¶ 47) Judge Koh's Dismissal Order noted that the FAC "allege[d] no facts that Susan or Irene were in California at the time the accounts were allegedly opened," and "no support for the proposition that simply because a department is headquartered in California, all accounts with that department are held there as well." (Dismissal Order at 14) Plaintiff makes no attempt in his SAC to cure these factual deficiencies. Instead, he merely repeats his allegation that these trust funds were "moved" from Michigan to California simply because brokerage accounts were opened with Charles Schwab, a company based in San Francisco. (*See, e.g.*, SAC ¶¶ 34, 47, 72)

Plaintiff asks this Court to read into Judge Fogel's reasoned decision a "blind trust" of the Zusman Defendants' arguments, which prevented him from coming to what Plaintiff views to be the correct decision. (Opp. to Zusman Mot. to Dismiss at 12) This Court refuses to do so. Plaintiff clearly disagrees with the ruling in *Rupert I*. Plaintiff has not, however, provided this Court any evidence that the rationale undergirding Judge Fogel's ruling was in any way caused by the alleged misrepresentations on the part of the Zusman Defendants. Instead, Plaintiff just repeatedly insists that these misrepresentations prevented Judge Fogel from making the decision that Plaintiff wishes he had made – insistences that have already once been rejected by this district in Judge Koh's Dismissal Order.

The Court finds that Plaintiff has not shown that the sham litigation exception to *Noerr-Pennington* applies here. He has made only vague allegations of misrepresentations, which are "insufficient to overcome *Noerr-Pennington* protection," *Kottle*, 146 F.3d 1036, 1046, and the misrepresentations he does allege were clearly not relied upon by Judge Fogel in his written order granting the Joint Motion to Dismiss. *See Rupert I* at \*4. As such, any alleged wrongdoing related to the Zusman Defendants' petitioning activity in *Rupert I* – which includes the filing of the

16

1    Motion to Dismiss, the obtaining and filing of the Irene Rupert and Susan Bond declarations, and

2    the statements made during oral argument – are all entitled to immunity under *Noerr-Pennington*.

3    *See Freeman*, 410 F.3d 1180, 1184.

4    ### 2.    *Plaintiff Has Not Pled with the Requisite Specificity His Allegation That*

5    *Zusman "Schemed" to Obtain the Oregon Declaratory Judgments*

6            Judge Koh's Dismissal Order found that Plaintiff had not pled with the requisite specificity

7    his claims that the Zusman Defendants "violated RICO in other ways" beyond their activities in

8    *Rupert I*. In the SAC, Plaintiff makes an allegation implicating one of the Zusman Defendants that

9    goes beyond the representation of Susan Bond and Irene Rupert in *Rupert I*. Plaintiff alleges, in

10   paragraph 79, that Mr. Zusman "schemed . . . to wrongfully use, and in fact did wrongfully use,

11   both extrinsic and intrinsic fraud to obtain corrupt Oregon Trust Code declaratory judgments,

12   concerning both [the Samuel Rupert and Irene Rupert] trusts." (SAC ¶ 79)[8] The Court finds that

13   Plaintiff has not pled this allegation with the necessary specificity.[9]

14           Allegations under RICO must meet the heightened pleading requirements of Rule 9(b),

15   which demands that a party "state with particularity the circumstances constituting fraud." Fed. R.

16   Civ. P. 9(b); *see Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) ("We

17   have applied the particularity requirements of Rule 9(b) to RICO claims."). Rule 9(b) requires that

18   the pleader "state the time, place, and specific content of the false representations, as well as the

19   identities of the parties to the misrepresentation." *Schreiber Distrib. v. Serv-Well Furniture Co.*,

20   806 F.2d 1393, 1400 (9th Cir. 1986). Plaintiff has not done so.

21           Plaintiff's single allegation in paragraph 79 fails to state the time, place, or specific content

22   of the purported "scheme," though it does allege the identities of the parties. (SAC ¶ 79) Plaintiff

23

24   [8] Plaintiff includes with this allegation a footnote which describes activity undertaken by several
     Defendants in this matter, but which does not mention Mr. Zusman or the Markun Zusman

25   Compton firm. (*See* SAC ¶ 79 n.22 (mentioning activities by Susan Bond, Matthew Whitman, and
     non-party Judge Maurer of the Clackamas Circuit Court in Oregon))

26   [9] In his briefing, Plaintiff contends that his allegations regarding the Zusman Defendants' conduct

27   regarding their representation in *Rupert I* are pled with the requisite specificity under Rule 9(b).
     As the Court finds that this *Rupert I*-related conduct falls under the protection of *Noerr-*

28   *Pennington*, it does not reach this question.

United States District Court
Northern District of California

merely states that a series of emails were exchanged, sometime after March 15, 2010,[10] "to wrongfully use . . . both extrinsic and intrinsic fraud to obtain corrupt Oregon Trust Code declaratory judgments concerning both Trusts." (*Id.*) Plaintiff does not state with any particularity the content of the communications that comprised this alleged scheme. Such an "entirely general" allegation is insufficient for purposes of Rule 9(b) pleadings in the context of a RICO claim. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (finding insufficient a pleading that fails to allege any "specifics of . . . [the] nature of the alleged communications," and holding that such generalities constituted a "fatal defect" in the plaintiff's pleading).

Plaintiff was clearly informed by Judge Koh's Dismissal Order that any claims brought under RICO would need to be pled with the specificity required of Rule 9(b). (*See* Dismissal Order at 15) Plaintiff has not done so, instead choosing to couch his single non-*Rupert I*-related claim in vague allegations of "extrinsic fraud" and a "scheme[]" between Defendants Zusman, Downes, Whitman, and Susan Bond. (SAC ¶ 79) Such mere generalities are fatal to Plaintiff's additional RICO claim against the Zusman Defendants.

### 3. *Lacking Jurisdiction Over Plaintiff's Federal Causes of Action, the Court Does Not Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims Against the Zusman Defendants*

Plaintiff alleges in the SAC, as he did in the FAC, that this Court has supplemental jurisdiction over his pendant state law claims, arising under Oregon and California law, pursuant to 28 U.S.C. § 1367. (*See, e.g.*, SAC ¶ 1 ("[T]his Court also has supplemental jurisdiction over plaintiff William's state law claims under 28 U.S.C. § 1367."))

"A court may decline to exercise supplemental jurisdiction over state-law claims once it has dismissed all claims over which it has original jurisdiction." *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (citing 28 U.S.C. § 1367(c)(3)).

All of Plaintiff's federal claims against Edward Zusman and the Markun Zusman law firm are either barred by *Noerr-Pennington* or lack the particularity required under Rule 9(b). Plaintiff

---

[10] Plaintiff does not include a date with this allegation, but does state a date in paragraph 78, March 15, 2010, and opens paragraph 79 with the word "thereafter." (SAC ¶¶ 78-79)

United States District Court
Northern District of California

1    has been given the opportunity to amend his allegations, and has not remedied the factual and

2    jurisdictional deficiencies outlined by the Court in Judge Koh's Dismissal Order. This Court

3    further declines to exercise supplemental jurisdiction over Plaintiff's state law claims, pursuant to

4    28 U.S.C. § 1367(c)(3). As such, Plaintiff's SAC is DISMISSED WITH PREJUDICE as to the

5    Zusman Defendants.

### B.    The Sibling, Downes, and Cartwright Defendants' Motions to Dismiss

7         Plaintiff alleges that this Court has jurisdiction over the remaining three groups of

8    Defendants for two reasons: first, that the "ends of justice" jurisdictional provision of RICO (*see*

9    18 U.S.C. §1965(b)), which permits a court to exercise jurisdiction in certain instances over non-

10   resident participants in a RICO conspiracy even if the court otherwise lacks personal jurisdiction

11   over the defendant, applies here; and second, that the Court has specific jurisdiction over each

12   Defendant group under the three-prong effects test articulated in *Calder v. Jones*, 465 U.S. 783

13   (1984).[11] The Downes, Cartwright, and Sibling Defendants all move separately to dismiss

14   Plaintiff's SAC for lack of personal jurisdiction.

15        The Court first considers Plaintiff's "ends of justice" jurisdiction argument. The Court then

16   considers the actions that Plaintiff alleges give rise to specific jurisdiction over the remaining three

17   Defendant groups. The Court finds neither persuasive, and holds that it lacks personal jurisdiction

18   over the remaining Defendants.

### 1.    *This Court Does Not Have Jurisdiction Over the Remaining Defendants Under The Ends of Justice Provision of RICO, 18 U.S.C. § 1965(b)*

21        Under 18 U.S.C. § 1965(b), a court may exercise personal jurisdiction over non-resident

22   participants in an alleged RICO conspiracy, even if those parties would otherwise not be amenable

23   to jurisdiction in that court. This so-called "ends of justice" provision permits a court, consistent

24   with the purpose of the RICO statute, to "enable plaintiffs to bring all members of a nationwide

25   RICO conspiracy before a court in a single trial." *Butcher's Union Local No. 498, United Food &*

26

27   ────────────────

[11] Plaintiff does not allege that this Court has general jurisdiction over the Sibling, Downes, or
28   Cartwright Defendants. (*See* Opp. to Cartwright Mot. to Dismiss at 4; Opp. to Sibling Mot. to
     Dismiss at 4; Opp. to Downes Mot. to Dismiss at 3)

United States District Court
Northern District of California

*Comm. Workers v. SDC Inv., Inc. (Butcher's Union)*, 788 F.2d 535, 538 (9th Cir. 1986). This power is not unlimited, however. In order for a Court to exercise personal jurisdiction through the "ends of justice" provision, "the court must have personal jurisdiction over at least one of the participants in the alleged multi-district conspiracy and the plaintiff must show that there is *no other district* in which a court will have personal jurisdiction over *all* of the alleged co-conspirators." *Id.* at 539 (emphasis added). The burden is on the plaintiff to "adduce evidence that there is no other district" that could hale all of the alleged co-conspirators before its courts. *See Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 989, 990 (C.D. Cal. 2013) ("While it is not clear that there is another district that could exercise jurisdiction over all defendants, plaintiff has the burden of showing affirmatively that this is the case.").

In Judge Koh's Dismissal Order, the Court informed Plaintiff that, though it had jurisdiction over Mr. Zusman because he is a California resident, that Plaintiff had not sufficiently alleged that no other district could exercise jurisdiction over all the alleged co-conspirators. Judge Koh stated:

> Despite Plaintiff's claims that no other district will have jurisdiction over Zusman, the FAC states that he was a member of a conspiracy with six Oregon defendants, *see* FAC ¶ 8, and that his involvement in the conspiracy was his representation of two Oregon residents in connection with an estate established under Oregon law, *id.* Moreover, Zusman's law firm has an office in Oregon. *See* Downes Reply at 4. Accordingly, the Court finds that an Oregon court may have jurisdiction over all of the RICO defendants. As such, jurisdiction under 18 U.S.C. §1965(b) is inappropriate.

(Dismissal Order at 21)

Defendants contend that Plaintiff has not cured this deficiency, and does not sufficiently allege that no other district, namely the District of Oregon, could exercise jurisdiction over all of the alleged RICO co-conspirators. In response, Plaintiff contends that he has alleged enough facts to show that Edward Zusman is not subject to personal jurisdiction in Oregon. The Court agrees with Defendants.

Plaintiff's SAC states that "Defendant Zusman's contacts with the state of Oregon are not sufficient to allow that state to exercise personal jurisdiction over him." (SAC ¶ 8) To support this conclusion, Plaintiff contends that, though Mr. Zusman's firm has an office in Portland, Oregon,

20

1   Zusman himself is "only affiliated with the San Francisco, California, partnership branch location"

2   (*id.*), is licensed to practice law "only in California" (*id.*), and that there is "no reason to believe"

3   that the Oregon attorneys affiliated with Markun Zusman's Oregon office were involved in the

4   alleged RICO conspiracy. (*Id.*)

5          Plaintiff's pleadings, though not quite cursory, do not meet his burden to show

6   affirmatively that the District of Oregon cannot exercise jurisdiction over Mr. Zusman. The factual

7   circumstances surrounding Plaintiff's expansive allegations against Mr. Zusman prevent the Court

8   from affirmatively finding that jurisdiction in Oregon would be unavailable. Plaintiff alleges, as he

9   did in his FAC, that Mr. Zusman was a member of a conspiracy with Oregon defendants, which

10  involved his representation of two Oregon residents – Susan Bond and Irene Rupert – in

11  connection with an Oregon estate. Mr. Zusman is a named partner in a law firm with an office in

12  Oregon – mere allegations that Mr. Zusman is only registered to practice in California, and that he

13  is "only affiliated with the San Francisco" location of his firm, are not sufficient to meet Plaintiff's

14  affirmative obligation to show that Mr. Zusman could not be haled to court in Oregon for his

15  contacts in this lawsuit: particularly as this Circuit has held that being an out-of-state attorney is

16  insufficient by itself to preclude personal jurisdiction over a lawyer. *See, e.g.*, *Sher v. Johnson*, 911

17  F.2d 1357, 1363 (9th. Cir. 1990).

18         A plaintiff seeking to exercise jurisdiction pursuant to RICO's "ends of justice" provision

19  faces a high hurdle. It is the plaintiff's burden to affirmatively show that no other district could

20  exercise jurisdiction over all the alleged co-conspirators. Here, Plaintiff contends that Mr.

21  Zusman's contacts with Oregon "are insufficient" for him to be subject to personal jurisdiction

22  there. (SAC ¶ 8) This Court finds that Plaintiff has not stated enough facts by which this Court

23  could find that the District of Oregon could not exercise jurisdiction over Mr. Zusman, a named

24  partner in a law firm with an office in Oregon, who allegedly participated in a conspiracy

25  regarding an Oregon estate while representing two Oregon residents. As such, the Court finds that

26  "there is no indication in this case that justice requires" the exercise of jurisdiction in this district,

27  *see LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820, 826 (N.D. Cal. 1992), and declines to

28  exercise jurisdiction under 18 U.S.C. § 1965(b). Jurisdiction over the three remaining groups of

United States District Court
Northern District of California

1    Defendants must be determined based on a traditional specific jurisdiction inquiry.

2        **2.      *Plaintiff Fails to Show that the Sibling, Downes, and Cartwright***

3               ***Defendants are Subject to Specific Jurisdiction in this Court***

4        Plaintiff contends that this Court has specific jurisdiction over each of the three remaining

5    Defendant groups. The Ninth Circuit has established a three-prong test for determining whether a

6    non-resident defendant is subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his
> activities or consummate some transaction with the forum or
> resident thereof; or perform some act by which he purposefully
> avails himself of the privilege of conducting activities in the forum,
> thereby invoking the benefits and protections of its laws;
> (2) the claim must be one that arises out of or relates to the
> defendant's forum-related activities;
> (3) the exercise of jurisdiction must comport with fair play and
> substantial justice, i.e. it must be reasonable.

12   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Lake v.*

13   *Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). Plaintiff bears the burden of proof with regard to the

14   first two elements, *see, e.g.*, *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990), and, if Plaintiff

15   satisfies his burden as to those elements, the burden then shifts to Defendants to "present a

16   compelling case" that exercising jurisdiction over them would be unreasonable. *See, e.g.*, *Burger*

17   *King Corp. v. Rudzewicz*, 471, U.S. 462, 476 (1985).

18       With regard to the first prong, when a case sounds in tort, the Court is concerned with

19   whether the Defendants have "purposefully directed" their activities at the forum state. To

20   determine purposeful direction, the Court engages in a three-part effects test, first articulated in

21   *Calder v. Jones*, 465 U.S. 783 (1984), which requires that the defendant in question "(1)

22   committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

23   defendant knows is likely to be suffered in the forum state." *See Yahoo! Inc. v. La Ligue Contre Le*

24   *Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc). Failing to sufficiently plead any one of

25   these three elements is fatal to Plaintiff's attempt to show personal jurisdiction. *Brayton Purcell*

26   *LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128-29 (9th. Cir. 2010). Though there are no

27   requirements that the defendant come into physical contact with the forum, *see id.* at 1129, the

28   Supreme Court has held that "the plaintiff cannot be the only link between the defendant and the

United States District Court
Northern District of California

22

1    forum." *Walden v. Fiore*, – U.S. –, 134 S. Ct. 1115, 1123 (2014). Further, "mere injury to a forum

2    resident *is not a sufficient connection to the forum*." *Id.* at 1125 (emphasis added).

3         In Judge Koh's Dismissal Order, the Court noted that Plaintiff's FAC included six

4    intentional acts that could suffice for purposes of specific personal jurisdiction (Dismissal Order at

5    23), but found that none of the acts were sufficient to confer jurisdiction in a California court. (*Id.*

6    at 23-28) As the Plaintiff has been given the opportunity to amend, the Court now engages in an

7    analysis of the acts Plaintiff contends were committed by each of the three Defendant groups, as

8    pled in the SAC and as described further in his briefing, and finds that none of the acts is

9    purposefully directed at California such that this Court can exercise jurisdiction over the Downes,

10   Cartwright, or Sibling Defendants.

                         *i.    Acts Allegedly Committed by the Downes Defendants*

11

12        In his Opposition to the Downes Motion to Dismiss (ECF 116), Plaintiff argues that his

13   SAC pleads personal jurisdiction over the Downes Defendants based on three acts: (1) "the

14   purposeful direction and targeting of Plaintiff in June of 2009," (2) "the knowingly false

15   declaration Downes submitted to a California Federal Court to Support the Joint Motion to

16   Dismiss in *Rupert I*," and (3) the "extrinsic fraud that was successfully practiced on Judge Fogel"

17   during *Rupert I.* (ECF 116 at 24 (capitalization omitted))

18        Plaintiff does not specifically articulate which acts he alleges amount to Defendants'

19   "purposeful direction and targeting" of him in June 2009, but from a review of his SAC, the Court

20   construes this to mean the two letters sent by Mr. Downes, in his capacity representing Susan

21   Bond and Irene Rupert, to Plaintiff in California. Judge Fogel's Order has already held that these

22   two letters are insufficient to confer jurisdiction. *Rupert I*, 2010 WL 3618662, at *4 ("None of

23   Defendants' alleged conduct [in sending the letters] has any nexus with California other than the

24   fact that William happens to reside in California."). Plaintiff pleads no new jurisdictional facts

25   about the letters in his SAC (*see* SAC ¶¶ 59-62), and as such the Court agrees with Judge Fogel's

26   finding that the sending of these two letters fails to amount to purposeful direction toward

27   California.

28        Plaintiff's two other personal jurisdiction allegations describe conduct that took place

United States District Court
Northern District of California

before Judge Fogel in *Rupert I:* a declaration submitted by Mr. Downes, and the general act of litigating the case, which Plaintiff contends resulted in the Downes Defendants practicing "extrinsic fraud" on the court. (*See, e.g.*, ECF 116 at 24) However, neither of these activities can reasonably confer jurisdiction upon the Downes Defendants. Plainly, a plaintiff cannot sue out-of-state defendants in his home forum and then contend that activities undertaken by defendants and their lawyers in that litigation is "purposefully directed" at that forum state. In *Rupert I*, Plaintiff forced Defendants to appear in California court by virtue of his filing a lawsuit. The Downes Defendants appeared as counsel in *Rupert I* for the purpose of challenging personal jurisdiction. Defendants succeeded in having the case dismissed for lack of personal jurisdiction. It would be downright strange for a court to exercise personal jurisdiction over a party based on that party's conduct, as defendants, in successfully challenging personal jurisdiction on a Rule 12(b)(2) motion to dismiss. Such a reading would permit the conduct of plaintiffs, rather than the purposeful actions of defendants, to drive the personal jurisdiction analysis, an approach clearly rejected by the Supreme Court in *Walden v. Fiore*. *See* 134 S. Ct. 1115, 1125.[12]

As such, none of the actions undertaken by Mr. Downes in representing Susan Bond and Irene Rupert is sufficient for this Court to exercise jurisdiction over him, or his law firm. As such, Plaintiff's claims against the Downes Defendants are DISMISSED WITH PREJUDICE.

ii.     *Acts Allegedly Committed by the Cartwright Defendants*

Plaintiff contends, in his Opposition to the Cartwright Defendants' Motion to Dismiss, that Mr. Whitman and Ms. Johansson have committed a number of acts with regard to the alleged

---

[12] In his Opposition to the Downes Defendants' Motion to Dismiss, Plaintiff briefly argues that the Defendants have consented to jurisdiction because they "have not presented a narrowly focused challenge to personal jurisdiction," instead making additional arguments as to why the claims should be dismissed that go beyond a Rule 12(b)(2) motion to dismiss. (*See* Opp. to Downes Mot. to Dismiss at 25) Plaintiff cites no law for this proposition. A party does not waive a jurisdictional defense simply because that defense is raised *concurrently* with other defenses. *See United States v. Ligas*, 549 F.3d 497 (7th Cir. 2008) ("[T]he federal rules permit defendants to simultaneously seek relief and raise a jurisdictional defense without waiving that defense.") (compiling cases); *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330 (9th Cir. 1984). The Downes Defendants did not seek to dismiss under Rule 12(b)(2) after bringing a motion to dismiss on other grounds. As such, their jurisdictional defense was raised concurrently with their other arguments regarding reasons to dismiss this action, and the Court does not find that they have consented to jurisdiction before it.

*United States District Court*
*Northern District of California*

1   RICO conspiracy. Plaintiff argues that these acts confer upon this Court jurisdiction over the

2   various Cartwright Defendants. Plaintiff is incorrect.

3       Specifically, Plaintiff contends that Mr. Whitman committed nine "RICO predicate acts."

4   (*See* SAC App'x A at 8-12) These acts can be summarized as (1) serving Plaintiff, in California,

5   with several documents from the proceedings in Oregon court, (2) sending an allegedly "forged"

6   Schedule A from the Samuel Rupert Trust to Plaintiff in California, (3) sending several letters to

7   Plaintiff, at his address in California, regarding the Oregon proceedings, and (4) engaging in an

8   allegedly improper *ex parte* communication with an Oregon judge regarding the Oregon

9   proceedings. (*See* Opp. to Cartwright Mot. to Dismiss at 13-14)

10       These acts each fall squarely within the type of communications that Judge Fogel's Order

11   in *Rupert I* found do not confer jurisdiction upon this Court, as the communications concerned the

12   estate planning decisions of Oregon trusts and an Oregon proceeding. *Rupert I* at *4. As Judge

13   Koh held in her Dismissal Order, "the fact that Plaintiff received papers in California does not

14   convert these Oregon-based activities into express aiming at California." (Dismissal Order at 26

15   (finding further that Oregon law *required* Defendants to mail notices to Plaintiff regarding the

16   Oregon proceedings, *see* Or. Rev. Stat. § 130.035 (2010)) This Court is presented with no new

17   information in the SAC or its Appendix A that would cause it to rule contrary to these two

18   reasoned orders, which comport with the Supreme Court's recent holding in *Walden v. Fiore*, 131

19   S. Ct. 1115 (2014).

20       Plaintiff further contends that Ms. Johansson committed eleven different "RICO predicate

21   acts," which can be summarized as the sending of writs of garnishment to California and

22   Nebraska, to enforce an Oregon state court judgment demanding that Plaintiff pay attorneys' fees.

23   These acts ultimately resulted in funds being removed from Plaintiff's checking account. (*See*

24   SAC App'x A at 14 (discussing RICO Predicate Acts 52-54); *see also* SAC ¶ 114)) Judge Koh's

25   Dismissal Order has already held that these actions do not confer jurisdiction, holding that "any

26   harm which occurred to Plaintiff occurred during the Oregon Proceedings when an Oregon Court

27   ordered him to pay attorney's fees and costs." (Dismissal Order at 26) Plaintiff's contention that

28   the sending of these writs of garnishment violates the California Sister-State Money Judgments

1   Act also fails to show personal jurisdiction. *See, e.g.*, *Michael v. New Century Fin. Servs.*, – F.

2   Supp. 2d. –, 2014 WL 4099010, at *8 (N.D. Cal. Aug. 20, 2014) (citing *Menken v. Emm*, 503 F.3d

3   1050 (9th Cir. 2007), for the proposition that "[m]ere allegations that the Defendants have failed to

4   domesticate a foreign judgment" do not permit a court to exercise personal jurisdiction over those

5   defendants).

6          The Cartwright Defendants are Oregon lawyers and an Oregon law firm whose contacts

7   with California were limited to their representation of clients in Oregon litigation. They did not

8   avail themselves of California as a forum. Plaintiff has not shown that their actions amount to the

9   necessary contacts by which it would be just for the Cartwright Defendants to be haled into

10  California court in this litigation. *Cf. Sher v. Johnson*, 911 F.2d 1357, 1363 (9th Cir. 1990).

11         As such, the Court GRANTS the Cartwright Defendants' Motion to Dismiss, WITH

12  PREJUDICE.

13                  *iii.    Acts Allegedly Committed by the Sibling Defendants*

14         Finally, Plaintiff alleges that his siblings, Susan Bond and James Rupert, committed

15  myriad acts in the alleged RICO conspiracy. The Court has reviewed the entirety of the allegations

16  against Susan Bond and James Rupert in order to determine which acts can be considered to be in

17  any way "directed at" California. The allegations against Susan Bond can be summarized to

18  include: (1) the acts comprising "RICO Stage 1," regarding Susan's management of the trust

19  assets; (2) the acts comprising "RICO Stage 2," where Susan Bond and Gile Downes are alleged

20  to have repeated "the Big Lie" in letters sent to Plaintiff; (3) her actions during the litigation

21  before Judge Fogel in *Rupert I*, comprising "RICO Stage 3"; and (4) her participation with the

22  Cartwright Defendants in the sending of documents to Plaintiff in California regarding the Oregon

23  litigation, comprising "RICO Stage 4." The allegations against James Rupert are less numerous,

24  comprising only (1) the sending of an email to Plaintiff where he allegedly repeats "the Big Lie"

25  and expresses his support for Susan's actions, and (2) his participation in "obtaining one of the

26  corrupt Oregon judgments." (Opp. to Sibling Mot. to Dismiss at 16)

27         The Court finds that these activities do not confer personal jurisdiction over either of the

28  Sibling Defendants. Many of these allegations have already been found insufficient in both *Rupert*

1    *I* and Judge Koh's Dismissal Order. Despite being provided the opportunity to amend his claims in

2    the SAC in order to state facts supporting jurisdiction, Plaintiff has instead mainly re-alleged the

3    same arguments that have now been twice rejected by judges of this District. The Court addresses

4    each of Plaintiff's allegations in turn.[13]

5         First, Susan's actions in managing trust assets have been found insufficient to confer

6    jurisdiction upon this Court by both Judge Fogel in *Rupert I* and Judge Koh in the Order

7    dismissing the FAC. (*See, e.g.*, *Rupert I* at *4; *see also* Dismissal Order at 23-24) The Court

8    agrees with their findings: that the alleged trust mismanagement took place in Oregon, and that

9    any alleged emails or letters sent from Oregon to California were with regard to Oregon estate

10   planning decisions, undertaken on behalf of an Oregon resident. (*See id.* at 24) Plaintiff pleads no

11   new facts that tie Ms. Bond's management of the trust to this forum.

12        In his SAC and briefing, Plaintiff again reiterates his argument that Susan "moved" trust

13   assets to California from Michigan (SAC ¶ 47). Plaintiff failed, however, to engage in any way

14   with the finding in Judge Koh's Order, which held that Plaintiff did not show *how* the trust assets

15   were "located" in California. (Dismissal Order at 14-15) In his SAC, Plaintiff reasserts that the

16   trust assets, at the time held by Beacon Investment Company, were transferred to three accounts

17   held by Charles Schwab Institutional, which was "located solely in San Francisco, California."

18   (SAC ¶ 47) A single allegation that a Defendant opened an investment account with a company

19   located in California is not sufficient to subject a party to personal jurisdiction in California.

20   Plaintiff cites no law supporting this proposition, and the Court is aware of none. Courts

21   addressing *general* jurisdiction over corporate entities have concerned themselves with whether

---

[13] In his Opposition to the Sibling Defendants' Motion to Dismiss, Plaintiff argues that "judicial estoppel should stop the Sibling Defendants from being heard to argue that Oregon is an alternative forum" in which this case can be heard. (Opp. to Sibling Mot. to Dismiss at 21) (original capitalization omitted). Plaintiff contends in his briefing, as he did at oral argument, that he is civilly dead in Oregon. (*See, e.g.*, *id.* at 22) Plaintiff, however, misapprehends the nature of the Court's jurisdictional inquiries. The Court needs to determine, for Plaintiff's § 1965(b) jurisdiction argument, whether *any* other forum could possibly hale all Defendants before it. *See LeDuc*, 814 F. Supp. 820, 826. Having found that Oregon could possibly have jurisdiction over all Defendants in this action, the Court then must engage in a specific jurisdiction inquiry with regard to the Downes, Cartwright, and Sibling Defendants. There is no reason why judicial estoppel would cause this Court to find personal jurisdiction over any of the Defendants in California.

1   those entities hold bank accounts in the forum state as one piece of the jurisdictional inquiry. *See,*

2   *e.g.*, James M. Brogan, *Personal Jurisdiction After* Goodyear *and* McIntyre*: One Step Forward;*

3   *One Step Backward?*, 34 U. Penn. J. Int'l L. 811, 816 (2013) (discussing relevant facts in general

4   jurisdiction inquiries over corporate defendants). In this case, however, the Court is engaged in a

5   specific jurisdiction inquiry, regarding a non-corporate Defendant, and is faced with only the

6   allegation that several investment accounts were opened with a company based in California.

7   Plaintiff does not allege that Susan Bond traveled to California to open the accounts, nor even that

8   Susan Bond knew that Charles Schwab was a California corporation when the accounts were

9   opened. He further does not cite case law in support of his argument. As such, Plaintiff again fails

10  to show any reason why the act of opening these investment accounts suffices for purposes of

11  haling Susan Bond into any California court.

12      Second, as this Court has already found above, any actions Susan allegedly took alongside

13  Mr. Downes in regard to sending letters to Plaintiff that included "the Big Lie" were found by

14  Judge Fogel in *Rupert I* not to confer jurisdiction. *Rupert I* at *4. This Court agrees with Judge

15  Fogel, and finds that exercising jurisdiction over Susan Bond because of her role in these letters

16  would not comport with *Walden v. Fiore*. 134 S. Ct. 1115, 1122 ("[The] minimum contacts

17  analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts

18  *with persons who reside there*. . . . [T]he plaintiff cannot be the only link between the defendant

19  and the forum.") (emphasis added).

20      Third, any actions undertaken by Susan Bond before Judge Fogel in *Rupert I*, including the

21  filing of her declaration in that action (*see* SAC App'x A at 6 (discussing RICO Predicate Acts 26-

22  28)), fail to confer jurisdiction for the same reasons as noted above with regard to the Downes

23  Defendants – it would require a tortured reading of the law of personal jurisdiction to allow

24  Plaintiff to hale Susan Bond into court in this District merely because she filed a declaration and

25  participated in litigating a successful motion to dismiss *for lack of personal jurisdiction* after

26  Plaintiff sued her in this district. Responding to a lawsuit, particularly when that response

27  contends that the court lacks personal jurisdiction over the party, is not purposeful availment. *Cf.*

28  *Walden*, 134 S. Ct. 1115, 1123 (describing the personal jurisdiction inquiry as focused on

United States District Court
Northern District of California

1   "intentional conduct by the defendant that creates the necessary contacts with the forum"). Here,

2   Plaintiff created Defendants' contacts with the forum by virtue of filing suit here.

3   Fourth, and finally, Plaintiff contends that Susan's participation in the sending of

4   documents regarding the Oregon litigation, including the allegedly fraudulent Schedule A, writs of

5   garnishment, and various pleadings, confers jurisdiction. They do not, for the reasons articulated

6   above regarding Ms. Johansson. (*See supra* at 21)

7   The only acts Susan Bond committed in California were those attendant to her

8   responsibilities in trust management in Oregon, in response to litigation undertaken in Oregon

9   courts, or to challenge the lack of personal jurisdiction in this District. None of these contacts were

10   "expressly aimed" at California sufficient to meet the requirements of the *Calder* effects test. The

11   focus, pursuant to the Supreme Court's ruling in *Walden*, must be on the forum, not the plaintiff.

12   Here, Plaintiff is attempting to have his own actions drive the jurisdictional analysis, which they

13   simply cannot do. *Walden*, 134 S. Ct. 1115, 1126 ("*[I]t is the defendant*, not the plaintiff or third

14   parties, *who must create* contacts with the forum state.") (emphasis added).

15   The allegations against James Rupert, in contrast with those against Susan Bond, are new

16   in the SAC. Though new, they are not persuasive. First, Plaintiff alleges that James Rupert sent

17   him an email in which he repeated "the Big Lie" and expressed his support for Susan Bond's

18   actions in the Oregon court proceedings. (SAC App'x A at 12 (RICO Predicate Act 42); SAC ¶

19   94) Courts have been clear that the sending of a single email, or even a series of emails, by itself,

20   does not amount to purposeful availment. *See, e.g.*, *Barrett v. Catacombs Press*, 44 F. Supp. 2d

21   717, 729 (E.D. Pa. 1999) (finding that two emails sent from a defendant to a plaintiff resident in

22   the forum "d[id] not show purposeful availment"); *Machulsky v. Hall*, 210 F. Supp. 2d 531, 542

23   (D.N.J. 2002) (holding that "minimal correspondence" via email "does not constitute sufficient

24   minimum contacts" for purposes of personal jurisdiction). Though the Supreme Court reserved the

25   question of virtual contacts and their effects on personal jurisdiction in *Walden*, a recent circuit

26   court addressing this question has found that "[t]he connection between the place where an email

27   is opened and a lawsuit is entirely fortuitous," and that "as a practical matter, email does not exist

28   in any location at all." *Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d

1   796, 802-03 (7th Cir. 2014). This Court by no means holds that emails can never give rise to

2   purposeful availment of a forum, but rather finds that in this case, where an undated letter was sent

3   as an attachment to an email, from a defendant to a forum-resident plaintiff, that such a singular

4   contact does not constitute purposeful availment.

5       Second, the allegation that James Rupert "participated in obtaining one of the corrupt

6   Oregon judgments" does not give rise to jurisdiction for the reasons offered above regarding Ms.

7   Johansson and Ms. Bond. (*See, e.g.*, *supra* at 21, 23) Plaintiff does not plead that James Rupert

8   undertook any actions directed at California with regard to his participation as a party in this

9   Oregon case, Case No. CV11050251 (SAC ¶ 92), but instead claims that "James fully supported

10  all of the Oregon litigation activities" and "ratified" those activities in the email he sent to Plaintiff

11  discussed above. (*See id.* at ¶ 94)

12      The Sibling Defendants have not purposefully availed themselves of California as a forum,

13  and as such the exercise of jurisdiction over them would be improper under *Calder v. Jones* and

14  *Walden v. Fiore*. As such, the Court GRANTS the Sibling Defendants' Motion to Dismiss, WITH

15  PREJUDICE.

16      **C.      Downes Defendants' Motion for Sanctions**

17      The Downes Defendants bring a Motion for Sanctions, pursuant to Rule 11, alleging that

18  Plaintiff's SAC "adds no new factual allegations concerning the [Downes] Defendants' ties to this

19  jurisdiction." (Mot. for Sanctions at 7) Claiming that "a reasonable inquiry" would have revealed

20  to Plaintiff that his claims are barred in this Court for a lack of personal jurisdiction, the Downes

21  Defendants request that this Court award them monetary sanctions and impose upon Plaintiff a

22  pre-filing order. (*Id.* at 19)[14] Defendants' Motion is similar to a motion for sanctions previously

23  denied by Judge Koh with regard to the first round of motions to dismiss Plaintiff's FAC. (ECF

24

25  _____

[14] Defendants also argue that Plaintiff's "history of vexatious litigation" and prior placement on
the California Vexatious Litigant list is relevant to the Motion for Sanctions. (*See, e.g.*, Reply,
ECF 135 at 3) Plaintiff states that he has been removed from the California Vexatious Litigant list
as of May 29, 2013. (Opp. to Mot. for Sanctions at 14) The Court is not persuaded that Plaintiff's
26  former placement on the Vexatious Litigant list is relevant to this Motion for Sanctions, and the
Court declines to engage with the Downes Defendants' argument that Plaintiff obtained his
27  removal from the list by "omitting from the record at least five other cases to which he was a
party." (Reply at 3)

28

United States District Court
Northern District of California

101)

Rule 11 "provides for the imposition of sanctions when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *See Estate of Blue v. Cnty. of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997). However, "what is objectively reasonable for a *pro se* litigant and for an attorney may not be the same." *Yack v. Wash. Mut. Inc.*, 2008 WL 3842918, at *2 (N.D. Cal. Aug. 14, 2008).

The Court ultimately declines to award sanctions in this instance. Plaintiff was granted leave to amend in Judge Koh's Dismissal Order. Though this Court's Order dismissing Plaintiff's action is the third Order granting motions to dismiss for lack of personal jurisdiction, Plaintiff has attempted in each circumstance to amend his complaints to allege new facts. He has ultimately been unsuccessful, and this Court is dismissing the entirety of his action, with prejudice.

Judge Koh's prior Order expressed a concern that Plaintiff's "repeated lawsuits may suggest that Plaintiff is bringing this action in 'bad faith' in response to the California and Oregon judgments" issued against him. (Order Denying Defs.' Mot. for Sanctions, ECF 101 at 10 n.1) The undersigned shares Judge Koh's concern. Plaintiff obviously disagrees with the outcomes in *Rupert I* and the Oregon litigation. He has expressed in numerous documents before this Court his belief that "the Big Lie" has prevented him from receiving his rightful disbursement of his parents' trust assets and from fulfilling the role of successor trustee. Plaintiff's arguments have been unsuccessful, and the Court now dismisses his action with prejudice. California courts simply do not have jurisdiction over Plaintiff's claims – nor will they, even if Plaintiff sought, as he suggested during oral argument and in his briefing on the Motion for Sanctions, to add new "RICO Stage 6" Defendants regarding the instant proceedings. (*See* Opp. to Mot. for Sanctions at 18)

However, any attempt by Plaintiff to refile this action against these parties in this District, or another California court, having been told by three different judges that these courts lack personal jurisdiction over three sets of Defendants, would show bad faith, harassment, and a desire to needlessly increase the cost of litigation for the parties involved, such that an appropriate sanction, including monetary sanctions, would likely be warranted.

## IV.   ORDER

Plaintiff clearly disagrees with at least four other courts' rulings regarding his parents' trusts and their management. Plaintiff, however, fails to state a claim against the Zusman Defendants and this Court lacks personal jurisdiction over the Downes, Cartwright, and Sibling Defendants. For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The Zusman Defendants' Motion to Dismiss is GRANTED, WITH PREJUDICE.

2. The Downes Defendants' Motion to Dismiss is GRANTED, WITH PREJUDICE.

3. The Cartwright Defendants' Motion to Dismiss is GRANTED, WITH PREJUDICE.

4. The Sibling Defendants' Motion to Dismiss is GRANTED, WITH PREJUDICE.

5. The Downes Defendants' Motion for Sanctions is DENIED.

The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 22, 2014

BETH LABSON FREEMAN
United States District Judge